**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

CITIZENS FOR RESPONSIBILITY AND ) 
ETHICS IN WASHINGTON, )
  )
            Plaintiff, )
  )
         v. )       Civil No. 1:07cv1707 (HHK)
  )
EXECUTIVE OFFICE OF THE )
PRESIDENT, et al., )
  )
           Defendants. )
_____)

**PLAINTIFF'S MOTION**
**<u>FOR A TEMPORARY RESTRAINING ORDER</u>**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and LCvR 65.1, plaintiff

Citizens for Responsibility and Ethics in Washington ("CREW") hereby moves the Court to

enter a temporary restraining order requiring defendants to immediately preserve under

appropriate archival conditions all back-up copies of any and all emails deleted from White

House servers from March 2003 through the present, including copies stored on back-up or

disaster recovery tapes, disks, DVDs and CDs.  CREW also moves the Court to order the

defendants to refrain from transferring any of these back-up copies out of their custody and

control during the pendency of this litigation.  As grounds for this motion, the Court is

respectfully referred to the attached memorandum of points and authorities.

                  Respectfully submitted,

                  _____/s/_____
                  Anne L. Weismann
                  (D.C. Bar No. 298190)
                  Melanie Sloan
                  (D.C. Bar No. 434584)
                  Citizens for Responsibility and Ethics

in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20530
Phone:  (202) 408-5565
Fax:  (202) 588-5020

Attorneys for Plaintiff

Dated:  October 11, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
CITIZENS FOR RESPONSIBILITY AND    )
ETHICS IN WASHINGTON,              )
                                   )
    Plaintiff,    )
                                   )
    v.    )  Civil No. 1:07cv1707 (HHK)
                                   )
EXECUTIVE OFFICE OF THE            )
PRESIDENT, et al.,                 )
                                   )
    Defendants.    )
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR A TEMPORARY RESTRAINING ORDER**

**PRELIMINARY STATEMENT**

  This is an action under the Administrative Procedure Act ("APA") and the Federal

Records Act ("FRA") challenging as contrary to law the defendants' knowing failure to recover,

restore and preserve millions of electronic communications created and/or received within the

White House.  As of October 2005, at least five million email were missing from White House

servers and that number has probably grown exponentially, given the ongoing failure of the

White House to implement an effective electronic records management system.

  At present the missing email records exist only on back-up tapes and other mediums, if at

all.  Thus, those back-up tapes[1] contain the only copies of important historical evidence of this

presidency, evidence that by law must be preserved for public access.  Yet such preservation is

by no means assured, particularly given the deletion of millions of electronic records from White

---

[1] CREW has recently been advised that in addition to back-up tapes, back-up information
from White House servers is also stored on disks, DVDs and CDs.  For purposes of this motion
the term "back-up tapes" encompasses all of these mediums.

House servers that has already occurred and the White House's failure to date to take steps to prevent further losses of such records.

Accordingly, to guard against further loss, CREW requested adequate written assurances from defendant Alan Swendiman, director of defendant Office of Administration ("OA"), that the OA has taken, and will continue to take, all steps necessary to preserve all existing back-up copies and ensure their integrity and ability to be used in restoring the missing email. CREW sought these assurances contemporaneously with the filing of its lawsuit.

In response, the OA through its counsel has stated only that it will preserve those "disaster recovery tapes" in its possession as of September 25, 2007, and has insisted that any preservation obligation it is under stems from Rule 26 of the Federal Rules of Civil Procedure. The OA has refused CREW's follow-up request for additional information and assurances and refused to discuss this matter further with CREW's counsel.

Under these circumstances, as described more fully below, CREW is entitled to a temporary restraining order to prevent any further document destruction. Far from offering adequate assurances that all back-up copies are being appropriately preserved, the OA's response raises a serious question as to whether all of the back-up copies containing any of the missing emails still exist or whether, instead, they have been destroyed along with the original emails stored on the White House servers or transferred out of the OA's control. Absent an injunction, CREW and the public will suffer irreparable harm, specifically the risk that the last remaining copies of important historical documents will not be preserved. Moreover, CREW is likely to prevail on the merits of the lawsuit and the balance of harms tips decidedly in CREW's favor.

## FACTUAL BACKGROUND

In 1994, the Executive Office of the President ("EOP") implemented the Automated Records Management System ("ARMS") for White House emails. <u>See</u> U.S. General Accounting Office, Electronic Records: Clinton Administration's Management of Executive Office of the President's E-Mail System (2001), p. 2, available at <u>www.gao.gov/new.items/d01446.pdf</u>. ARMS was an electronic records management system that automatically captured, preserved and categorized all email sent through the White House email system. <u>Id.</u>; Complaint, ¶ 31. ARMS was used to archive separately records subject to the Presidential Records Act ("PRA") and records subject to the FRA. ARMS also had certain controls in place to maintain the security of the archival system, which prevented the accidental or intentional deletion of stored email. <u>Id.</u>

In 2002, the EOP discontinued the use of ARMS, but never replaced it with any system for automatically preserving White House email or for separately categorizing and archiving federal and presidential electronic records. <u>Id.</u> at ¶ 32. Instead, email records are now stored on White House servers. <u>Id.</u> at 33. As a result, there are no longer any controls in place to ensure the continued preservation of email records. In other words, since 2002, it has been possible for anyone with access to White House servers to delete or alter any emails housed on those servers. <u>Id.</u> In addition, because the White House is no longer separating federal and presidential email records for archival purposes, the two exist in commingled form on both White House servers and back-up tapes of those servers. <u>Id.</u> at 33.

In October 2005, in the course of responding to government subpoenas, the OA discovered that at least five million emails -- and most likely many millions more -- were missing from the White House servers where they had been dumped for storage. <u>Id.</u> at 34. The

missing emails include emails from hundreds of days spanning a two and one-half year period

(March 2003 until October 2005) from multiple components of the EOP.  Id.; see also

*WITHOUT A TRACE:  The Story Behind the Missing White House E-Mails and the Violations of*

*the Presidential Records Act*, available at

www.citizensforethics.org/files/041207WithoutATraceFullReport.pdf.

In response to this discovery, the OA -- on its own initiative -- conducted a detailed

analysis, prepared multiple assessments documenting the full extent of the problem and provided

a plan to recover the missing email from back-up tapes.  Complaint at ¶¶ 34, 36.  See also Letter

from Henry A. Waxman, Chairman, House Committee on Oversight and Government Reform to

Fred F. Fielding, Counsel to the President, August 30, 2007 (attached as Exhibit 1).[2]  There were

at least two potential causes of the millions of deleted emails:  (1) a malfunction in the servers,

which at least some in the OA did not consider likely given the magnitude of the problem, and

(2) manual deletion by users.  Id. at ¶ 35.  Both causes would have been prevented had the White

House put in place an electronic records management system similar in function to ARMS, with

appropriate safeguards against the intentional or inadvertent deletion of archived email records.

Id.

The White House elected not to implement the recovery plan developed by the OA or any

other recovery plan.  Id. at ¶¶ 36, 39.  Nor did the White House implement an electronic records

---

[2] Among other things, Chairman Waxman's letter memorializes a briefing of his Committee staff by Keith Roberts, then-deputy general counsel at the OA, which took place on May 29, 2007.  At that time Mr. Roberts told committee staff of the discovery in 2005 of the missing emails and the subsequent review conducted by the OA's Office of the Chief Information Officer.  According to Mr. Roberts, the OA provided the White House Counsel's Office with a report summarizing its findings.

management system, despite overwhelming evidence that absent such a system emails were and could continue to be destroyed.  Id.

Since the abandonment of ARMS, the back-up tapes are the only repository of deleted email records currently in the possession of the EOP and the OA.  Id. at ¶ 41.  These back-up tapes contain commingled presidential and federal records that have been deleted from the White House servers at least since March 2003 through the present.  Id.

On September 25, 2007, CREW filed this action against the EOP, OA, OA Director Alan R. Swendiman ("the White House defendants"), the National Archives and Records Administration ("NARA") and Archivist Dr. Allen Weinstein for declaratory, injunctive and mandamus relief.  CREW's lawsuit is based on the defendants' knowing failure to recover, restore and preserve the millions of missing White House emails, all in violation of their obligations under the Federal Records Act and the Presidential Records Act.

On that same day, CREW also sent a letter to Mr. Swendiman requesting that he give CREW "immediate written assurances that the OA has taken, and will continue to take, all steps necessary to preserve the back-up tapes and ensure their integrity and ability to be used in restoring any missing e-mail."  Letter from Anne L. Weismann to Alan R. Swendiman, September 25, 2007 (attached as Exhibit 2).

By letter dated October 2, 2007, counsel for the OA responded to CREW's request for assurances as follows:

> The Office of Administration is maintaining and will continue to maintain for the pendency of this litigation, unless otherwise permitted by the court or agreed upon or stipulated to by the parties, *all disaster recovery tapes that were in its possession as of September 25, 2007.*

5

<u>Letter from Helen H. Hong to Anne Weismann</u>, October 2, 2007 (attached as Exhibit 3) (emphasis added).

In light of the serious questions and concerns this letter raises, CREW sent a follow-up letter to OA's counsel on October 2, 2007.  Specifically, CREW requested answers and information in response to the following questions:  (1) the difference, if any, between "disaster recovery tapes" and back-up tapes; (2) what body of tapes were in the OA's possession as of September 25, 2007, which would reveal the extent of the OA's preservation commitment; (3) whether there are any additional back-up tapes or disaster recovery tapes beyond those referenced in the OA's letter; and (4) whether the tapes are being maintained in an appropriate environment that assures their continued integrity.  <u>Letter from Anne L. Weismann to Helen H. Hong</u>, October 2, 2007 (attached as Exhibit 4).  CREW also requested that the parties reduce any agreement to a stipulation to be filed with the Court.

The OA did not answer CREW's questions.  Instead, by letter dated October 3, 2007, the OA stated that it "is complying with its document preservation obligations under Federal Rule of Civil Procedure" and repeated what it had said in its earlier letter, namely that it was "maintaining, and will continue to maintain for the pendency of this litigation . . . all disaster recover tapes -- the Office of Administration's only so-called 'back up' tapes, as referenced in your letters -- that were in the Office of Administration's possession as of September 25, 2007." <u>Letter from Helen H. Hong to Anne Weismann</u>, October 3, 2007 (attached as Exhibit 5).

Given the OA's failure to provide CREW with adequate assurances or answer CREW's questions, CREW proposed by email dated October 5, 2007, that the parties have a discussion by telephone on Tuesday morning, October 9, to address a number of CREW's questions.  <u>Email</u>

from Anne Weismann to Helen Hong, October 4, 1007 (attached as Exhibit 6).  CREW's specific

questions included the following:

> 1. What are "disaster recovery tapes"? Do they differ from customary
> back-ups of the EOP e-mail system?
> 2. What time period is covered by the "disaster recovery tapes" in OA's
> possession?  We want information on the time period from 2003, when the
> White House instituted its new email system, through the present. Our suit
> concerns that universe of emails and so we want to make sure whatever
> data that could be preserved and restored is protected until our suit is resolved.
> A failure to take steps to preserve data that the EOP may have transferred to
> another entity would undermine our ability to obtain full relief. Accordingly,
> as a result of the suits, EOP should take steps to secure the data, wherever it
> currently resides.
> 3. Are there "disaster recovery tapes" containing data from EOP e-mails
> elsewhere (including but not limited to a third-party contractor, another
> government office or agency, or other entity)?
> 4. If yes, where/with whom?
> 5. If yes, when were they transferred?
> 6. Are there back-up copies of "disaster recovery tapes" elsewhere (including
> but not limited to a third-party contractor, another government office or agency,
> or other entity)?
> 7. If yes, where/with whom?
> 8. If yes, when were they transferred?
> 9. Is OA maintaining back-up copies of emails created after 9/25/07?
> 10. If not, who is maintaining such emails?
> 11. Under what conditions are copies being maintained (e.g., temperature,
> etc.)?
> 12. What are all the mediums on which back-up copies are stored?
> 13. Are these other mediums also being preserved (and all of the questions
> above as to these other mediums)?

Id.  In addition, CREW explained that it is not seeking preservation for purposes of discovery but

rather to ensure the ability of this Court to award full and effective relief should CREW prevail.

Id.

By email dated October 9, 2007, the OA refused to participate in a telephone discussion

or otherwise answer CREW's questions.  See Email from Helen Hong to Anne Weismann,

October 9, 2007 (attached as Exhibit 7).  The OA continued to insist that it had provided

adequate assurances, but did clarify that it was not recycling disaster recovery tapes for emails generated within EOP components after September 25, 2007.  Id.

## STATUTORY BACKGROUND

### The Federal Records Act

The FRA is a collection of statutes that governs the creation, management and disposal of federal records.  See generally 44 U.S.C. §§ 2101 et seq., 2901 et seq., 3010 et seq., and 3301 et seq.  Among other things, the FRA ensures "[a]ccurate and complete documentation of the policies and transactions of the Federal Government," as well as "judicious preservation and disposal of records."  44 U.S.C. § 2902.

To fulfill this purpose, the FRA requires the head of each agency to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency."  Id. at § 3101.  Under the statute, each agency must also "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," id. at § 3102, and must "establish safeguards against the removal or loss of records" the agency head determines are necessary and required by regulations of the archivist.  Id. at § 3105.

The FRA also prescribes the exclusive mechanism for the disposal of federal records, which it defines to include:

> all books, papers, maps, photographs, machine readable
> materials, regardless of physical form or characteristics,
> made or received by an agency of the United States
> Government under Federal law or in connection with
> the transaction of public business and preserved or
> appropriate for preservation by that agency . . as evidence
> of the organization, functions, policies, decisions, procedures
> operations, or other activities of the Government or because

of the informational value of data in them.

44 U.S.C. § 3301.  No records may be "alienated or destroyed" except pursuant to the disposal provisions of the FRA.  Id. at § 3314.

The archivist administers the provisions of the FRA and may authorize an agency to dispose of records that the agency no longer needs and that do not have "sufficient administrative, legal, research, or other value to warrant their continued preservation by the Government."  44 U.S.C. § 3303a(a).  Only if the archivist determines that agency records do not have administrative, legal, research, or other value can the archivist authorize their disposal.  Id. at §§ 3303a(a), (d) and (e).

An agency wishing to dispose of records must first submit to the archivist either lists of records the agency head determines "are not needed by it in the transaction of its current business," 44 U.S.C. § 3303a(2), or "schedules proposing the disposal after the lapse of specified periods of time of records of a specified form or character" that the agency head determines will not have "sufficient administrative, legal, research, or other value to warrant their further preservation by the Government."  Id. at § 3303a(3).  Upon receipt of such a request, the archivist must issue a notice requesting public comment on the agency's proposal and the archivist's staff must conduct its own assessment of the value of the records the agency is proposing to destroy.  Id. at § 3303a(a).  The archivist is free to accept or reject an agency's proposal.  Id.  In addition, the archivist may request advice and counsel from Congress regarding the disposal of any federal records the archivist believes may be of special interest to Congress or where the disposal of those particular federal records is in the public interest.  44 U.S.C. § 3301a(c).

9

If the archivist learns of "any actual, impending, or threatened unlawful removal . . . or destruction of records in the custody of [an] agency," the archivist is required to notify the head of the agency and assist the agency head "in initiating action through the Attorney General for the recovery of records wrongfully removed and for other redress provided by law." 44 U.S.C. § 2905(a). If the agency head does not initiate such action, the archivist "shall request the Attorney General to initiate such action, and shall notify the Congress when such a request has been made." Id.

The FRA places a similar and independent duty on the head of each federal agency to "initiate action through the Attorney General for the recovery of records he knows or has reason to believe have been transferred to his legal custody." 44 U.S.C. § 3106. If the agency head refuses to pursue legal remedies himself, the Archivist -- as discussed above -- must request that the attorney general take action and must inform Congress that he has made this request. Id.

The archivist also has an affirmative duty to guide and assist federal agencies to ensure the adequate and proper documentation of the policies and transactions of each agency. 44 U.S.C. § 2904(a). In furtherance of these duties, the archivist must promulgate standards and guidelines for federal agency records management, must establish standards for selective retention of records containing value and must assist the agencies in applying the standards to records in the agencies' custody. 44 U.S.C. §§ 2904(b), (c)(1), 2905(a).

At the same time, heads of federal agencies are under an affirmative duty to implement the standards and guidelines for the retention of federal records. Specifically, each agency head must maintain an active records management program that provides for effective controls over the creation and use of federal records and that ensures the application of the archivist's

standards and procedures for the preservation of federal records.  44 U.S.C. § 3102.  In addition,

agency heads are required to establish safeguards against the removal or loss of records

determined by the agency to be necessary and required by regulations of the Archivist.  44

U.S.C. § 3105.

### The Presidential Records Act

Congress enacted the PRA in 1978, following a protracted legal battle between President

Nixon and the government about his ability to control the records of his presidency after leaving

office.[3]  The PRA, which first took effect on January 20, 1981, directs the president to "take all

such steps as may be necessary to assure that the activities, deliberations, decisions, and policies

that reflect the performance of his constitutional, statutory, or other official or ceremonial duties

are adequately documents and that such records are maintained as Presidential records . . ."  44

U.S.C. § 2203.

The statute defines "presidential records" as

> documentary materials . . . created or received by the President,
> his immediate staff, or a unit or individual in the Executive
> Office of the President whose function is to advise and assist
> the President, in the course of conducting activities which relate
> to or have an effect upon carrying out of the constitutional,
> statutory, or other official or ceremonial duties of the President.

Id. at § 2201(2).  Records of components of the Executive Office of the President that do not

advise or assist the president are governed by the FRA.  The records of the vice president are

subject to the same provisions as those of the president under the PRA.  44 U.S.C. § 2207.

---

[3] Congress first enacted the Presidential Recordings and Materials Act in 1974 to transfer control of President Nixon's presidential records to the Administrator of the General Services Administration (later changed to the archivist) and to address the issue of public access to the materials.  See 44 U.S.C. § 2111 note.

The PRA also dictates that an incumbent president may dispose of any of his presidential records only where they "no longer have administrative, historical, informational, or evidentiary value." Id. at § 2203(c). If an incumbent president has made such a determination, he may destroy presidential records only after obtaining the written views of the archivist and only after the archivist states in writing that he does not intend to take action. Id. Although neither the archivist nor Congress can veto a president's decision to destroy records, if the archivist notifies Congress of a president's intent to dispose of records, the president must submit a disposal schedule to the appropriate congressional committees and wait 60 days before destroying the records. Id. at §§ 2203(c), 2203(d).

Once a president has left office, the archivist assumes full custody and control over all remaining presidential records and has the sole responsibility for preserving those records and preparing them for public access. 44 U.S.C. § 2203(f)(1). Once the records are in the archivist's custody, the archivist has an "affirmative duty to make such records available to the public as rapidly and completely as consistent with the provisions of this Act." Id.

## ARGUMENT

Plaintiff is seeking a temporary restraining order to guard against the destruction or degradation of back-up tapes in the White House defendants' possession, which are the only repository for the missing emails and which can be used to restore those records. The prior conduct of the White House -- which led to the improper deletion of millions of electronic records -- coupled with its refusal to give adequate assurances that all of the back-up tapes are being properly preserved present a serious risk that valuable records will be forever lost absent this Court's immediate intervention. The rights CREW is seeking to protect here are not only

those of CREW, but the rights of the American public to access -- either now or in the future --

the records of the Bush presidency.  Under these circumstances, this Court should enter the

requested emergency relief.

## I. CREW IS ENTITLED TO A TEMPORARY RESTRAINING ORDER.

### A. Legal Standards for Entry of a Temporary Restraining Order.

In ruling on a motion for a temporary restraining order, the Court must consider four

factors:  (1) plaintiff's likelihood of success on the merits; (2) the irreparable injury to plaintiff

absent a preliminary injunction; (3) the burden on other interested parties that an injunction

would impose; and (4) whether the public interest would be furthered by an injunction.  Katz v.

Georgetown Univ., 246 F.3d 685, 687-88 (D.C. Cir. 2001).

Although courts are to consider all four factors, a stronger showing on one factor can

overcome a lesser showing on another factor.  CityFed Fin. Corp. v. Office of Thrift Supervision,

58 F.3d 738, 747 (D.C. Cir. 1995).  For example, in assessing the likelihood of success on the

merits, "the court is not required to find that ultimate success by the movant is a mathematical

probability . . ."  Morgan Stanley v. Rothe, 150 F.Supp. 2d 67, 72 (D.D.C. 2001) (quotations

omitted).  Moreover, one of the more salient factors is irreparable injury; a party requesting a

preliminary injunction must "demonstrate at least 'some injury.'"  CitiyFed Fin. Corp., 53 F.3d

at 747 (quotation omitted).

### B. CREW is Likely to Prevail on the Merits.

Plaintiff's lawsuit rests on the straight-forward and unassailable fact that each of the

defendants knowingly ignored, if not outright flouted, its statutory obligations to ensure the

preservation of White House electronic records.   The FRA imposes on the White House

defendants an affirmative duty to preserve federal records, including electronic records.

Similarly, the PRA directs the president to adequately document and maintain records that

document how he performs his duties.  The deletion of millions of White House emails --

consisting of both federal and presidential records -- and the knowing failure of the White House

defendants to take any steps to restore and preserve those records are in direct conflict with their

statutory obligations.  Similarly, the archivist's knowing failure to take any action once informed

of the illegal practices of the White House defendants violates his statutory obligations under the

FRA.

       1.  *The Defendants Have Violated Their Statutory Record-Keeping*
           *Responsibilities.*

     The White House defendants' failure to maintain an active records management program

that provides for effective controls over the White House's creation and use of electronic records

is in direct violation of their statutory duties under 44 U.S.C. § 3102.  The abandonment of

ARMS and the failure of the White House defendants to replace ARMS with an electronic

records management system that guarded against the removal or loss of email records directly

contravenes defendants' obligations under 44 U.S.C. § 3105.  This conclusion is inescapable

given the loss of over five million emails from White House servers and the corresponding

failure of the White House defendants to take any action in light of that loss to implement an

effective electronic records management system.

     In addition, none of the defendants has taken any action to recover the missing agency

records.  The White House defendants, for their part, were provided at least one plan of recovery

two years ago yet, to date, have done nothing to recover or restore the missing emails.  Nor has

the director of the OA attempted to initiate an action through the attorney general for the

recovery of the missing records, contrary to his obligation under 44 U.S.C. § 3106.

Similarly, the archivist has failed to meet any of his statutory obligations to take action to recover the missing emails either through the agency head or, if that is unsuccessful, through the attorney general.  At least two individuals at NARA, including at least one in NARA's Office of General Counsel, are aware of the deleted emails and the gross deficiencies in the White House's electronic records management system.  Complaint, ¶ 43.  Moreover, the fact of the deleted email has been specifically and publicly acknowledged by the White House and widely reported in the press.  Id.  Despite being put on notice of the serious deficiencies in the electronic record-keeping practices of the White House -- deficiencies that have already led to the loss of millions of valuable historical records -- the archivist has done nothing.

Under these circumstances, plaintiff has a strong likelihood of prevailing on its claim that the defendants record-keeping practices are contrary to law.

### 2.  A Defense That The Court Lacks Jurisdiction Cannot Prevail.

With no defense on the factual merits of plaintiff's claims, the defendants are likely to argue that because the FRA does not contain a waiver of sovereign immunity the lawsuit must be dismissed and further that CREW lacks standing.[4]  Each of these claims is without merit.

First, this lawsuit is brought under the Administrative Procedure Act to challenge the defendants' record-keeping policies as contrary to law.  As set forth in the complaint, plaintiff is challenging the defendants' knowing failure to have an effective electronic records management

---

[4] The government on behalf of the U.S. Department of Homeland Security raised these defenses in another pending lawsuit, CREW v. U.S. Dep't of Homeland Security, Civil No. 06-1912 (JGP), also brought under the FRA to challenge the unlawful policy of the Secret Service to destroy without appropriate authorization records of White House visitors.  The government's motion to dismiss is pending.

system in place and their knowing use of a system that destroys, or at least fails to preserve, agency records.  Under these circumstances the APA clearly provides the Court with jurisdiction to hear plaintiff's claims.  See American Friends Service Comm. v. Webster, 720 F.2d 29 (D.C. Cir. 1983) (holding that even though the FRA does not provide private right of action, the court could review a challenge to an agency's record destruction program under the APA where the agency was destroying records plaintiffs alleged were required to be preserved under the FRA); see also Armstrong v. Bush, 924 F.2d 292 (D.C. Cir. 1991).

In this respect, CREW's lawsuit is similar to that brought by the plaintiffs in Armstrong. The Armstrong plaintiffs included individuals and organizations that sued to prevent the government from erasing any material stored on the National Security Council computer during the last two weeks of the Reagan administration.  In expressly rejecting the government's claim that the FRA precluded judicial review the D.C. Circuit stated:  "we find that there is APA review of the NSC's recordkeeping guidelines and instructions, but only limited APA review of claims that records are being destroyed in violation of such guidelines."  924 F.2d at 291.

Here CREW, like the Armstrong plaintiffs, is challenging the propriety of the White House defendants' record-keeping policies to maintain electronic records on a system that has failed in the past and continues to fail to properly preserve those records.  CREW seeks to prevent the destruction of agency and presidential records that by law must be preserved but are not being preserved because of the White House defendants' unlawful record-retention policies and practices.  That the policy at issue is one of document destruction does not remove this claim from the court's review.  As the Armstrong court noted, "Courts review the adequacy and conformity of agency regulations and guidelines with statutory directives every day."  Id. at 294.

16

That is precisely what CREW has asked this Court to review, issues that are well within the scope of the Court's judicial review.

Second, CREW unquestionably has standing to maintain this suit. To invoke the Court's jurisdiction under Article III of the Constitution, a plaintiff must demonstrate, as an "irreducible constitutional minimum," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), an injury-in-fact that is "fairly traceable" to the challenged act and "likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). CREW's injury, an inability to obtain through the Freedom of Information Act ("FOIA") information necessary to accomplish CREW's mission, is directly traceable to the White House defendants' unlawful document retention policies and procedures. Accordingly, CREW has standing to sue.

First, CREW has met its burden of establishing an injury-in-fact for Article III purposes. CREW is an organization dedicated to informing and educating the public about the conduct of public officials. Toward that end, CREW uses the FOIA to gather relevant information. Complaint, ¶ 6. Among the hundreds of FOIA requests CREW has filed since its inception are several pending requests with the OA, the Council on Environmental Quality and other agencies within the EOP. Id. CREW therefore has a direct interest in ensuring that White House records are maintained, preserved and made accessible to the public in accordance with federal law.

The White House defendants' policy of knowingly using an email storage system that is susceptible to electronic records being destroyed has deprived and will continue to deprive CREW of access to documents responsive to its FOIA requests. As a result, because of the White House defendants' policies, CREW has been and continues to be frustrated in achieving its mission. In short, defendants' refusal to comply with the requirements of the FRA has

17

hindered CREW's ability to report and publish information in furtherance of its programmatic activities. Article III requires nothing more. Compare <u>Spann v. Colonial Village, Inc.</u>, 899 F.2d 24, 27 (D.C. Cir. 1990) ("if an organization points to a concrete and demonstrable injury to its activities . . .the organization passes through the first [standing] gateway"). <u>See</u> <u>also</u> <u>American Friends Service Comm.</u>, 720 F.2d at 46 (plaintiff group that included organizations seeking to further civil liberties and civil rights who argued that the destruction of government documents deprived them of research materials that they could disseminate had standing).

As a frequent FOIA user, CREW's interests are also within the zone-of-interests of the FRA. CREW has used and will continue to use the FOIA to gain access to agency records that relate to the propriety of government activity. By adopting a policy whereby White House records are not adequately preserved, the White House defendants have denied CREW access to requested records. This policy is arbitrary, capricious, and contrary to law because it results in the failure to preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures and essential transactions of the agency. 44 U.S.C. § 3101. Moreover, the information sought by CREW has an undeniable effect upon CREW's ability to inform and to educate the public, which it does on a continuing, ongoing basis. <u>See</u> <u>Armstrong</u>, 924 F.2d at 288 (plaintiff researchers and historians who made extensive use of government documents were within the zone-of-interests of the records creation and management provisions of the FRA).

In sum, CREW's inability to obtain information it seeks through its FOIA requests for White House documents has led and will continue to lead to "concrete damage" to CREW's mission. Through this impairment, CREW has met its burden of establishing an injury-in-fact

18

for Article III standing purposes.

### C. CREW and the Public Will Suffer Irreparable Injury Absent the Requested Injunction.

The backdrop of this case highlights the need for a temporary restraining order to ensure continued and appropriate preservation of the White House back-up tapes pending the outcome of this litigation. Despite being advised two years ago that a massive amount of electronic records were missing from a system that had no safeguards in place to prevent tampering with the electronic records it housed, none of the defendants has taken any steps to recover and restore the deleted records or to ensure that the problem will not reoccur. The White House continues to use a completely deficient method for preserving electronic records, namely dumping those records on White House servers undifferentiated by type of records and subject to no safeguards to prevent their deletion or alteration.

Just as troubling, the White House defendants have taken no steps to act on the recovery plan they were provided two years ago, leaving the mounting pile of White House back-up tapes as the only repository for information concerning two and one-half years worth of activities by many White House components. Defendants' complete derogation of their statutory obligations has placed at risk valuable historical evidence that is the property not of this individual president, but the public at large.

Moreover, defendant OA -- the White House agency with responsibility for maintaining the electronic records of the EOP -- has refused to provide adequate assurances that all of the back-up copies are being properly preserved. Despite CREW's repeated requests for information

and assurances,[5] the OA through its counsel has represented only that the agency is preserving any "disaster recovery tapes" in the OA's possession as of September 25, 2007, the date that plaintiff filed this lawsuit. Further, the OA claims that the source of any preservation obligation defendants are under flows from Rule 26 of the Federal Rules of Civil Procedure. See Exhibit 5.

CREW, however did not seek assurances that all back-up copies are being preserved to enable CREW to conduct discovery, which is the underlying purpose of the document preservation requirements of the Federal Rules of Civil Procedure. Rather, as CREW explained to defendants' counsel,[6] CREW seeks preservation to ensure this Court's ability to award full and effective relief should CREW prevail. Moreover, the defendants' preservation obligations are rooted in the FRA and PRA, both of which mandate the preservation of all agency and presidential records. Under these circumstances, defendants' preservation obligations go well beyond what the discovery rules may require.

In addition, this lawsuit concerns a course of conduct dating back at least to 2003, when the White House eliminated the ARMS record-keeping system and instituted a new practice whereby emails were dumped onto White House servers for storage, which resulted in a loss of email records dating from March 2003 forward. Thus, plaintiff can be afforded full and effective relief only if all back-up copies are being preserved, not simply those in the possession of the OA as of September 25, 2007.

The OA's refusal to give adequate assurances as to preservation and its concomitant refusal to answer any of CREW's questions -- including, *inter alia*, what the universe of disaster

---

[5] See Exhibits 2, 4 and 6.

[6] See Exhibit 6.

20

recovery tapes in the OA's possession as of September 25 consists of, whether back-up copies on other mediums are being preserved, whether back-up copies have been transferred to other entities and whether the copies the OA is preserving are being kept in an appropriate environment to ensure their continued use[7] –  raise very troubling questions about the defendants' conduct and the extent to which they continue to violate their preservation obligations under the FRA and PRA.  Under these circumstances, absent judicial intervention there is a very real likelihood that White House electronic records will continue to be destroyed with no hope of recovery.  Accordingly, a temporary restraining order is plainly warranted to prevent the loss of a valuable body of historical evidence.

### D.  The Defendants Will Not be Harmed by the Requested Temporary Restraining Order.

The immediate relief that CREW seeks will require nothing more of the defendants than what the law already mandates -- preservation of all back-up copies of the deleted electronic records, which are the only remaining documentation of many White House activities during a two and one-half year period -- pending the Court's resolution of this lawsuit.  See Judicial Watch v. U.S. Dep't of Commerce, 34 F.Supp.2d 28, 42-43 (D.D.C. 1998).  Requiring the defendants to comply with the law cannot properly be characterized as a burden.  Courts have recognized that in circumstances similar to those present here, a temporary restraining order requiring document preservation is appropriate "where the parties dispute the adequacy of the government's record keeping procedures . . ."  Armstrong v. Bush, 807 F.Supp. 816, 823 (D.D.C. 1992); see also American Friends Service Comm. v. Webster, 485 F.Supp. 222 (D.D.C.

---

[7] Id.

1980).

## E.  The Public Interest Favors The Requested Relief.

The PRA was enacted to make clear the public's ownership rights in the papers of a presidency and to provide a process of public access to those papers once a president leaves office.  See 44 U.S.C. § 2202.  Likewise, the FRA is a series of laws that, among other things, ensures preservation of agency records that document the business of the agency or are otherwise of informational value.  44 U.S.C. § 3301.  It is self-evident that non-compliance with the statutes' directives frustrates the purposes of both statutes.

The emergency relief CREW is requesting is designed expressly to ensure that the public's right and ability to access these important documents is preserved, not thwarted.  Under these circumstances the public interest favors granting the requested temporary restraining order, which will preserve the status quo as well as the rights of CREW and the public in the records of the Bush presidency.  Indeed, there is no countervailing interest whatsoever that weighs against granting the requested relief.

## CONCLUSION

For the foregoing reasons, CREW's motion for a temporary restraining order should be granted.  Further, CREW requests, pursuant to Local Rule 65.1(d), that the Court schedule a hearing on this motion at the Court's earliest convenience.

Respectfully submitted,


_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)

22

Citizens for Responsibility and Ethics
 in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20530
Phone:  (202) 408-5565
Fax:  (202) 588-5020

Attorneys for Plaintiff

Dated:  October 11, 2007

**EXHIBIT 1**

HENRY A. WAXMAN, CALIFORNIA,
CHAIRMAN

TOM LANTOS, CALIFORNIA
EDOLPHUS TOWNS, NEW YORK
PAUL E. KANJORSKI, PENNSYLVANIA
CAROLYN B. MALONEY, NEW YORK
ELIJAH E. CUMMINGS, MARYLAND
DENNIS J. KUCINICH, OHIO
DANNY K. DAVIS, ILLINOIS
JOHN F. TIERNEY, MASSACHUSETTS
WM. LACY CLAY, MISSOURI
DIANE E. WATSON, CALIFORNIA
STEPHEN F. LYNCH, MASSACHUSETTS
BRIAN HIGGINS, NEW YORK
JOHN A. YARMUTH, KENTUCKY
BRUCE L. BRALEY, IOWA
ELEANOR HOLMES NORTON,
DISTRICT OF COLUMBIA
BETTY McCOLLUM, MINNESOTA
JIM COOPER, TENNESSEE
CHRIS VAN HOLLEN, MARYLAND
PAUL W. HODES, NEW HAMPSHIRE
CHRISTOPHER S. MURPHY, CONNECTICUT
JOHN P. SARBANES, MARYLAND
PETER WELCH, VERMONT

ONE HUNDRED TENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

MAJORITY  (202) 225–5051
FACSIMILE  (202) 225–4784
MINORITY  (202) 225–5074

www.oversight.house.gov

TOM DAVIS, VIRGINIA,
RANKING MINORITY MEMBER

DAN BURTON, INDIANA
CHRISTOPHER SHAYS, CONNECTICUT
JOHN M. McHUGH, NEW YORK
JOHN L. MICA, FLORIDA
MARK E. SOUDER, INDIANA
TODD RUSSELL PLATTS, PENNSYLVANIA
CHRIS CANNON, UTAH
JOHN J. DUNCAN, JR., TENNESSEE
MICHAEL R. TURNER, OHIO
DARRELL E. ISSA, CALIFORNIA
KENNY MARCHANT, TEXAS
LYNN A. WESTMORELAND, GEORGIA
PATRICK T. McHENRY, NORTH CAROLINA
VIRGINIA FOXX, NORTH CAROLINA
BRIAN P. BILBRAY, CALIFORNIA
BILL SALI, IDAHO
JIM JORDAN, OHIO

August 30, 2007

Mr. Fred F. Fielding
Counsel to the President
The White House
Washington, DC 20500

Dear Mr. Fielding:

Last week, in an apparent effort to keep the public from learning the extent of missing White House e-mails, the White House took the unusual position that the Office of Administration is not subject to the Freedom of Information Act. Because Congress also has an interest in this issue, I am writing to request information about the reports that millions of e-mails may have been lost from the White House e-mail system.

On May 29, 2007, Keith Roberts, the Deputy General Counsel of the White House Office of Administration, and Emmet Flood, Special Counsel to the President, briefed Committee staff on the White House e-mail system and the missing e-mails. At the briefing, Mr. Roberts informed Committee staff that the White House had discovered in 2005 that an unknown number of e-mails may not have been preserved in the White House archive, as required by the Presidential Records Act. According to Mr. Roberts, the Office of the Chief Information Officer then conducted a review of the e-mail system to determine the scope of the potential loss. He said that this review apparently found some days with a very small number of preserved e-mails and some days with no e-mails preserved at all. He also stated that a report summarizing these findings had been presented to the White House Counsel's office.

In addition, Mr. Roberts informed the Committee that an unidentified company working for the Information Assurance Directorate of the Office of the Chief Information Officer was responsible for daily audits of the e-mail system and the e-mail archiving process. Mr. Roberts was not able to explain why the daily audits conducted by this contractor failed to detect the problems in the archive system when they first began.

At the conclusion of the briefing, Committee staff requested a copy of the analysis presented to White House Counsel and the identity of the contractor responsible for daily audits and archiving. Mr. Flood told Committee staff that he would take the two requests under consideration. Since then, Committee staff have repeatedly requested that the White House

Mr. Fred F. Fielding
August 30, 2007
Page 2

provide this information without success. Given that three months have passed since your office first received this request, I am writing to ask that you provide the information to the Committee by September 10, 2007.

The Committee on Oversight and Government Reform is the principal oversight committee in the House of Representatives and has broad oversight jurisdiction as set forth in House Rule X. An attachment to this letter provides additional information on how to respond to the Committee's request.

If your staff has any questions about this request, they should contact David Rapallo with the Committee staff at (202) 225-5420.

Sincerely,

*Henry A. Waxman*

Henry A. Waxman
Chairman

Enclosure

cc:    Tom Davis
       Ranking Minority Member

**EXHIBIT 2**

# CREW | citizens for responsibility and ethics in washington

September 25, 2007

Alan R. Swendiman
Director
Office of Administration
Executive Office of the President
725 17th Street, N.W.
Washington, D.C. 20503

**BY FAX:** 202-456-6512

Dear Mr. Swendiman:

Today, Citizens for Responsibility and Ethics in Washington ("CREW") filed a lawsuit against you, the Office of Administration ("OA"), the Executive Office of the President ("EOP"), the Archivist and the National Archives and Records Administration, challenging as contrary to law your and the other defendants' knowing failure to recover, restore and preserve millions of electronic communications created and/or received within the White House. As explained in CREW's complaint, the e-mails at issue were improperly deleted from servers that your office maintains and currently exist only on back-up tapes, if at all.

The missing e-mails consist of both presidential and federal records that, by law, must be preserved. The failure of your office to ensure compliance with the EOP's record-keeping responsibilities means that a large volume of historically important documents may be lost forever. To guard against future loss and preserve the ability to restore the missing e-mails from back-up tapes, it is imperative that your office preserve all back-up tapes and protect them from interference of any kind.

Toward that end, we ask that you give us immediate written assurances that the OA has taken, and will continue to take, all steps necessary to preserve the back-up tapes and ensure their integrity and ability to be used in restoring any missing e-mail. If we do not hear from you within five business days, we will have no option but to seek a judicially enforceable order of preservation.

Sincerely,

Anne L. Weismann
Chief Counsel

Mr. Alan R. Swendiman
September 25, 2007
Page two


cc: Dr. Allen Weinstein
    Archivist of the United States

**EXHIBIT 3**



**U.S. Department of Justice**
Civil Division

*First Class Mail*                        *Courier Delivery*
P.O. Box 883                              Room 6132
Washington, DC  20044                     20 Massachusetts Avenue, NW,
                                          Washington, DC  20530

Helen H. Hong                  *Telephone*      (202) 514-5838
Trial Attorney                 *Fax*            (202) 616-8460
                               *Email*          Helen.Hong@usdoj.gov

October 2, 2007

## VIA FIRST CLASS MAIL AND FACSIMILE

Anne Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
Fax:  (202) 588-5020

      Re:     September 25, 2007 Letter from CREW to Alan R. Swendiman

Dear Ms. Weismann:

      I represent the defendants, including Mr. Alan R. Swendiman, in <u>CREW v. Executive Office of the President, et al.</u>, Civil Action No. 07-1707 (HKK) (D.D.C.).  I write in response to your letter addressed to Mr. Swendiman dated September 25, 2007, requesting a written response about "back-up tapes" in the possession of the Office of Administration.  The Office of Administration is maintaining, and will continue to maintain for the pendency of this litigation, unless otherwise permitted by the court or agreed upon or stipulated to by the parties, all disaster recovery tapes that were in its possession as of September 25, 2007.  By this letter, defendants do not waive any defenses to or make any other representations about the above-referenced matter.

      Please let me know if you have any questions or concerns.

                    Sincerely,

                    Helen H. Hong

**EXHIBIT 4**

# CREW | citizens for responsibility and ethics in washington

October 2, 2007

**Via Facsimile and Email**

Helen H. Hong
U.S. Department of Justice
Civil Division
Room 6132
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
Fax:  (202) 616-8460

Re:  CREW v. EOP, et al.

Dear Ms. Hong:

I write in response to your letter of today advising me that the Office of Administration (OA) is maintaining, and will continue to maintain during the pendency of this litigation, "all disaster recovery tapes that were in its possession as of September 25, 2007." You made this representation in response to my request of the OA for its written assurances that "the OA has taken, and will continue to take, all steps necessary to preserve the back-up tapes and ensure their integrity and ability to be used in restoring any missing e-mail." The back-up tapes referenced in my letter were all of those tapes that contain any of the emails missing from White House servers from March 2003 through the present.

Your letter raises several concerns and questions. First, what is meant by "disaster recovery tapes" and how does this term differ, if at all, from back-up tapes? Second, what is the body of tapes that were in the OA's possession as of September 25, 2007? This is especially critical information as it will dictate whether and to what extent the OA and the EOP are preserving all of the back-up tapes that contain any of the missing emails. Please also advise me if there are additional back-up tapes or disaster recovery tapes that may contain any of the deleted emails referenced in our complaint and that were not in the OA's possession as of September 25, 2007. In addition, we need adequate assurances that the tapes are being maintained in an appropriate environment that assures their continued integrity.

Finally, if CREW receives adequate assurances that all of the back-up tapes implicated by our complaint are being adequately preserved pending the outcome of this litigation, we will need to have this reduced to a written stipulation that would be filed with the Court.

Helen H. Hong
Page two
October 2, 2007

Without this information, CREW and the public cannot be assured that the EOP is taking all necessary steps to ensure that the only remaining copies of an important body of historical evidence of this presidency are being preserved, as required by law.  Moreover, your letter raises a serious question of whether all of the back-up tapes still exist, a question to which the public is entitled to have an answer.

I look forward to hearing from you as soon as possible, but no later than COB tomorrow, October 3, 2007.  As I am sure you can appreciate, without adequate assurances that all of the back-up tapes are being properly preserved we will have to seek immediate assistance from the Court.

Sincerely,

ANNE L. WEISMANN
Chief Counsel

**EXHIBIT 5**



**U.S. Department of Justice**
Civil Division

*First Class Mail*                     *Courier Delivery*
P.O. Box 883                           Room 6132
Washington, DC  20044                  20 Massachusetts Avenue, NW,
                                       Washington, DC  20530

Helen H. Hong         *Telephone*    (202) 514-5838
Trial Attorney        *Fax*          (202) 616-8460
                      *Email*        Helen.Hong@usdoj.gov

October 3, 2007

## VIA FIRST CLASS MAIL, FACSIMILE AND ELECTRONIC MAIL

Anne Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
Fax: (202) 588-5020

     Re:    October 2, 2007 Follow Up Letter to September 25, 2007 Letter from CREW to
               Alan R. Swendiman

Dear Ms. Weismann:

    I write in response to your letter of October 2, 2007.  Please be assured that the Office of Administration is complying with its document preservation obligations under Federal Rule of Civil Procedure 26.  In particular, as I explained by letter dated October 2, 2007, the Office of Administration is maintaining, and will continue to maintain for the pendency of this litigation, unless otherwise permitted by the court or agreed upon or stipulated to by the parties, and in a manner that complies in all respects with Rule 26, all disaster recovery tapes – the Office of Administration's only so-called "back up" tapes, as referenced in your letters – that were in the Office of Administration's possession as of September 25, 2007.

                              Sincerely,

                              Helen H. Hong

**EXHIBIT 6**

## Anne Weismann

**From:**     Anne Weismann
**Sent:**     Friday, October 05, 2007 2:44 PM
**To:**       'helen.hong@usdoj.gov'
**Subject:** CREW v. EOP, et al.

Ms. Hong:  to avoid a further exchange of letters that does not sufficiently advance the issues of concern to us, I propose that we have a  discussion by telephone on Tuesday morning.  We have the following questions to which we need answers or additional information beyond what you have provided to date.  Also, there seems to be a fundamental disconnect between the parties on the source of the defendants' preservation obligations.  We are not seeking preservation for purposes of discovery and, accordingly, the Federal Rules of Civil Procedure do not provide the basis for our request.  Rather, we seek preservation to ensure the ability of the court to award full and effective relief if we prevail.  Our questions follow.  Please advise me when on Tuesday morning you are available to discuss.  Thank you for your prompt consideration.  Anne Weismann

Questions:

1.  What are "disaster recovery tapes"?  Do they differ from customary back-ups of the EOP e-mail system?
2.  What time period is covered by the "disaster recovery tapes" in OA's possession?  We want information on the time period from 2003, when the White House instituted its new email system, through the present.  Our suit concerns that universe of emails and so we want to make sure whatever data that could be preserved and restored is protected until our suit is resolved.  A failure to take steps to preserve data that the EOP may have transferred to another entity would undermine our ability to obtain full relief.  Accordingly, as a result of the suits, EOP should take steps to secure the data, wherever it currently resides.
3.  Are there "disaster recovery tapes" containing data from EOP e-mails elsewhere (including but not limited to a third-party contractor, another government office or agency, or other entity)?
4.  If yes, where/with whom?
5.  If yes, when were they transferred?
6.  Are there back-up copies of "disaster recovery tapes" elsewhere (including but not limited to a third-party contractor, another government office or agency, or other entity)?
7.  If yes, where/with whom?
8.  If yes, when were they transferred?
9.  Is OA maintaining back-up copies of emails created after 9/25/07?
10.  If not, who is maintaining such emails?
11.  Under what conditions are copies being maintained (e.g., temperature, etc.)?
12.  What are all the mediums on which back-up copies are stored?
13.  Are these other mediums also being preserved (and all of the questions above as to these other mediums)?

Anne Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
202-408-5565

This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential.  Any distribution, printing or other use by anyone else is prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete this email and attachments.  Thank you.

# EXHIBIT 7

# Anne Weismann

**From:** Hong, Helen (CIV) [Helen.Hong@usdoj.gov]
**Sent:** Tuesday, October 09, 2007 8:22 AM
**To:** Anne Weismann
**Subject:** RE: CREW v. EOP, et al.

Dear Ms. Weismann:

Thank you for your response (and please call me Helen going forward). Unfortunately, I will not be able to get on a phone call this morning to discuss the questions you have outlined below. Nonetheless, I believe our letter response of October 3, 2007 addresses your concerns. Although we appreciate the difference between discovery under the Federal Rules of Civil Procedure and the ultimate relief that plaintiff seeks, our representation about the Office of Administration's Rule 26 preservation compliance should address your concerns. In addition, to the extent your questions suggest that the Office of Administration has been recycling disaster recovery tapes for emails generated within EOP components after September 25, 2007, please be assured that those disaster recovery tapes have been maintained, and not recycled. Defendants are aware of the ongoing litigation and are proceeding in good faith compliance with their attendant obligations.

Sincerely,

Helen

**From:** Anne Weismann [mailto:aweismann@citizensforethics.org]
**Sent:** Friday, October 05, 2007 2:44 PM
**To:** Hong, Helen (CIV)
**Subject:** CREW v. EOP, et al.

Ms. Hong: to avoid a further exchange of letters that does not sufficiently advance the issues of concern to us, I propose that we have a discussion by telephone on Tuesday morning. We have the following questions to which we need answers or additional information beyond what you have provided to date. Also, there seems to be a fundamental disconnect between the parties on the source of the defendants' preservation obligations. We are not seeking preservation for purposes of discovery and, accordingly, the Federal Rules of Civil Procedure do not provide the basis for our request. Rather, we seek preservation to ensure the ability of the court to award full and effective relief if we prevail. Our questions follow. Please advise me when on Tuesday morning you are available to discuss. Thank you for your prompt consideration. Anne Weismann

Questions:

1. What are "disaster recovery tapes"? Do they differ from customary back-ups of the EOP e-mail system?
2. What time period is covered by the "disaster recovery tapes" in OA's possession? We want information on the time period from 2003, when the White House instituted its new email system, through the present. Our suit concerns that universe of emails and so we want to make sure whatever data that could be preserved and restored is protected until our suit is resolved. A failure to take steps to preserve data that the EOP may have transferred to another entity would undermine our ability to obtain full relief. Accordingly, as a result of the suits, EOP should take steps to secure the data, wherever it currently resides.
3. Are there "disaster recovery tapes" containing data from EOP e-mails elsewhere (including but not limited to a third-party contractor, another government office or agency, or other entity)?
4. If yes, where/with whom?
5. If yes, when were they transferred?
6. Are there back-up copies of "disaster recovery tapes" elsewhere (including but not limited to a third-party contractor, another government office or agency, or other entity)?
7. If yes, where/with whom?
8. If yes, when were they transferred?
9. Is OA maintaining back-up copies of emails created after 9/25/07?

10. If not, who is maintaining such emails?
11. Under what conditions are copies being maintained (e.g., temperature, etc.)?
12. What are all the mediums on which back-up copies are stored?
13. Are these other mediums also being preserved (and all of the questions above as to these other mediums)?

Anne Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
202-408-5565

This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential.   Any distribution, printing or other use by anyone else is prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete this email and attachments.  Thank you.

10/9/2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

CITIZENS FOR RESPONSIBILITY AND   )
ETHICS IN WASHINGTON,             )
                                  )
            Plaintiff,            )
                                  )
        v.                        )          Civil No. 1:07cv1707 (HHK)
                                  )
EXECUTIVE OFFICE OF THE           )
PRESIDENT, et al.,                )
                                  )
            Defendants.           )
_____)

**[PROPOSED] ORDER**

The Court having considered plaintiff's request for a temporary restraining order,

defendants' opposition thereto and the entire record herein, it is hereby ORDERED that

plaintiff's motion is GRANTED, and defendants are ORDERED to immediately preserve under

appropriate archival conditions back-up copies of any and all emails deleted from White House

servers from March 2003 through the present, including copies stored on back-up or disaster

recovery tapes, disks, DVDs and CDs.  Defendants are ORDERED to preserve these documents

under conditions that ensure the continued integrity of the medium in which they are stored.

Defendants are further ORDERED not to transfer any of these back-up copies out of their

custody and control during the pendency of this litigation, except with leave of the Court.


Dated: _____          _____
                                   HENRY H. KENNEDY, JR.
                                   United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON,                         )
                                                                  )
                        Plaintiff,                             )
                                                                  )
            v.                                                   )            Civil No. 1:07cv1707 (HHK)
                                                                  )
EXECUTIVE OFFICE OF THE                  )
PRESIDENT, et al.,                                )
                                                                  )
                        Defendants.                       )
                                                                  )

## CERTIFICATE OF COUNSEL

I, Anne L. Weismann, am counsel for the plaintiff in the above-captioned case.  On

October 11, 2007, at 10:20 a.m., I contacted Helen H. Hong, counsel for the defendants, by

telephone to advise her that plaintiff was filing a motion for a temporary restraining order.  Ms.

Hong was not available and so I left her a voice-mail message advising her of the filing and that I

would serve her electronically with plaintiff's papers as well as by first-class mail.

Dated:  10-11-07                                          _____
                                                                        ANNE L. WEISMANN