# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY ) | |
| AND ETHICS IN WASHINGTON, ) | |
| 1400 Eye Street, N.W., Suite 450 ) | |
| Washington, D.C. 20005, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EXECUTIVE OFFICE OF THE ) | |
| PRESIDENT, ) | |
| ) | |
| EXECUTIVE OFFICE OF THE ) | |
| PRESIDENT, OFFICE OF ) | |
| ADMINISTRATION, ) | |
| ) | |
| ALAN R. SWENDIMAN, HEAD OF ) | Civil Action No: 1:07-cv-01707 (HKK) |
| THE OFFICE OF ADMINISTRATION ) | |
| (in his official capacity), ) | |
| Eisenhower Executive Office Building ) | |
| 725 17th Street, N.W. ) | |
| Washington, D.C. 20503, ) | |
| ) | |
| THE NATIONAL ARCHIVES AND ) | |
| RECORDS ADMINISTRATION (NARA), ) | |
| ) | |
| and ) | |
| ) | |
| DR. ALLEN WEINSTEIN, ARCHIVIST ) | |
| OF THE UNITED STATES ) | |
| (in his official capacity), ) | |
| 8601 Adelphi Road ) | |
| College Park, MD 20740, ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR A TEMPORARY RESTRAINING ORDER

**INTRODUCTION**

On three separate occasions over the span of only one week, defendants have assured plaintiff that they are preserving, and will continue to preserve, <u>all</u> documents in defendants' possession relevant to plaintiff's lawsuit – including disaster recovery tapes.  Despite defendants' repeated written assurances, and notwithstanding the fact that this lawsuit (and motion) could have been filed over six months ago, plaintiff nevertheless presses this Court to exercise its extraordinary emergency powers to assist plaintiff in obtaining what defendants have already provided: a commitment to maintain "back-up tapes in the White House defendants' possession."  (Pl.'s Mot. for a Temporary Restraining Or. ("Pl.'s Mot.") at 12.)

This Court should deny plaintiff's request, as other courts have done in analogous circumstances, including in cases involving this plaintiff.  <u>See, e.g.</u>, <u>CREW v. United States Dep't of Homeland Security</u>, No. 06-1912, Or. (D.D.C. March 14, 2007) (Penn, J.) (denying as moot motion for a temporary restraining order requesting preservation of records because defendants had provided assurances that it was preserving relevant records).  Because defendants have provided plaintiff all assurances to which it could be entitled under its motion, plaintiff cannot establish the touchstone required for interim injunctive relief:  irreparable harm.  This is particularly so where, as here, plaintiff has not provided a single affidavit, declaration, or anything more than bare allegation to support its claim of irreparable injury.  That absence of harm, alone, is sufficient to deny plaintiff's requested relief.  <u>See, e.g.</u>, <u>Wis. Gas Co. v. Fed. Energy Regulatory Comm'n</u>, 758 F.2d 669, 674 (D.C.Cir.1985) (requiring evidence of imminent irreparable harm and rejecting bare allegations for injunctive relief, in that case a stay of an order).

Plaintiff goes further, however, by requesting not only temporary relief, but the Court's assistance in conducting premature discovery about defendants' disaster recovery tape system, a function wholly improper under Federal Rule of Civil Procedure 65. Because plaintiff cannot establish even irreparable harm, let alone "extreme or very serious damage," plaintiff cannot obtain additional relief to the extent it disturbs – rather than maintains – the status quo. See, e.g., Judicial Watch, Inc. v. Dep't of Commerce, 501 F. Supp. 2d 83, 91 (D.D.C. 2007) ("[B]ecause the plaintiff seeks a mandatory injunction that would alter the status quo, the plaintiff must demonstrate beyond the familiar 4-part test for injunctive relief that he is 'clearly' entitled to the relief he seeks, or 'extreme or very serious damage will result.'").

Plaintiff's request would also harm the public interest by wasting court resources in the superfluous task of reiterating preservation obligations already imposed by the pendency of litigation, and which defendants already have acknowledged in writing. Enmeshing the Court in determining whether it should enter injunctive relief that duplicates the obligations stemming from the filing of a lawsuit would waste judicial resources and render those obligations a nullity. A preservation order, particularly when defendants have provided assurances of compliance with their obligations, is simply unnecessary. Cf. Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002) ("The presumption that government officials act in good faith is nothing new to our jurisprudence."); Citizens to Preserve Overton Park, 401 U.S. 402, 415 (1971) (presumption of regularity for agency action). Although plaintiff contends without support that "defendants' preservation obligations go well beyond what the discovery rules may require" under the Federal Records Act, 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24

("FRA"), that is flatly untrue.[1]  (Pl.'s Mot. at 20.)  Under the FRA, defendants would be

permitted to recycle disaster recovery tapes every 90 days.  (See Ex. 1 at 4 ¶ 8 ("Approved

Schedule for the Records Created or Received on the Office of Administration.").)  In contrast,

defendants are maintaining, and not recycling, all disaster recovery tapes in its possession as of

the filing of the lawsuit.  The public interest in ensuring appropriate use of judicial resources

would be ill served by the order plaintiff requests now, especially when plaintiff has adduced no

evidence that defendants are proceeding in bad faith.

     Finally, even though the above factors are sufficient to preclude relief, plaintiff cannot

establish a substantial likelihood of success on the merits of those claims relating to the

requested emergency relief.  Although plaintiff is ambiguous about which claims in its complaint

merit the preservation of "all back-up copies of any and all emails deleted from White House

servers from March 2003 through the present"[2] (Pl.'s Mot. at 1), it is clear, at a minimum, that

Claims Five through Eight – relating to the future "establishment of an adequate electronic

---

[1]  Plaintiff also contends that the Presidential Records Act, 44 U.S.C. §§ 2201-2207 ("PRA"),
imposes additional obligations justifying emergency relief.  (Pl.'s Mot. at 20.)  Under prevailing
D.C. Circuit authority, any claims about record keeping duties under the PRA are not
reviewable.  See Armstrong v. Bush, 924 F.2d 282, 287 (D.C. Cir. 1991) ("[T]he PRA precludes
judicial review.").

[2]  Rule 65(d) requires that all temporary injunctions "shall describe in reasonable detail, and not
by reference to the complaint or other document, the act or acts sought to be restrained."  Fed. R.
Civ. P. 65(d).  By requesting a preservation of "back-up copies of any and all emails deleted
from White House servers from March 2003 through the present," but without identifying what
emails are actually deleted or missing, the preservation duty under plaintiff's request would be
unknown.  Although the Office of Administration may preserve all disaster recovery tapes in its
possession, plaintiff's failure to identify what "back-up copies" are required for its order is fatal
to plaintiff's request.  See S.E.C. v. Washington Inv. Network, 475 F.3d 392, 398 (D.C. Cir.
2007) (remanding under Rule 65(d) for imprecise contours of injunction).

records management system" – are unrelated to the preservation of any disaster recovery tapes.[3]

See, e.g., Adair v. England, 193 F. Supp. 2d 196, 200 (D.D.C. 2002) ("Even when a motion for a

preliminary injunction is predicated on a complaint, if the motion raises issues different from

those presented in the complaint, the court has no jurisdiction over the motion."). Thus, those

claims cannot support plaintiff's instant request for immediate relief.

Claims One and Two, in turn, request that the Court compel defendants to "request that

the attorney general initiate action or seek other legal redress to recover the deleted emails."[4]

(Compl. at 16-21.) Without addressing in depth the reasons those claims lack merit, defendants

merely note that serious questions exist about plaintiff's standing to pursue them. And to the

extent plaintiff suggests in its motion that it ultimately will request an order from this Court

requiring the defendants to restore any missing emails, that claim is non-justiciable. Simply put,

the FRA does not authorize a plaintiff to seek such a restoration order, which would go beyond,

---

[3] Accordingly, defendants do not address here why those claims lack merit, though plaintiff may be jurisdictionally barred from raising Claims Five through Eight, and those claims fail on the merits as well.

[4] The statutory provisions referenced in Claims One through Four cover only the "head of the Federal agency" or "the Archivist," not the other defendants. See 44 U.S.C. §§ 2905, 3106. The other defendants therefore must be dismissed for those claims and plaintiff establishes no likelihood of success on its claims against them. To the extent that plaintiff seeks the Director of the Office of Administration to comply with the FRA for records created by the Office of Administration, plaintiff cannot pursue that claim because the Office of Administration does not fall within the definition of "agency" under the FRA.

Plaintiff also cannot bring Claims Three and Four, which are substantially identical to Claims One and Two but are brought as requests for writs of mandamus, because APA review could be available for the types of asserted claims. See, e.g., Am. Chiropractic Ass'n v. Shalala, 108 F. Supp. 2d 1, 11 (D.D.C. 2000) (noting that availability of review under APA precludes alternative relief for a writ of mandamus).

and therefore exceed, the waiver of sovereign immunity provided in the APA.  <u>See</u> <u>Armstrong</u>, 924 F.2d at 294-95 (describing limited review of FRA claims); 5 U.S.C. § 701(a)(1) (no waiver of sovereign immunity if "statut[e] preclude[s] judicial review").

At base, plaintiff's requested relief is not the type of extraordinary, narrow relief permitted under Rule 65, particularly in light of defendant's assurances and plaintiff's failure to establish any imminent harm.  Indeed, defendants regret that this Court must even address this motion.

<u>**BACKGROUND**</u>

**I.    Factual Background**

In April 2007, plaintiff published a report alleging that millions of emails from White House servers were missing in violation of federal law.  (Pl.'s Mot. at 3; Compl. ¶ 34.)  Plaintiff asserted then that the allegedly missing emails resulted from an inadequate archival system for Executive Office of the President components, and concluded that allegedly missing emails were caused either by a malfunction in the servers or by manual deletion by persons with access to the server.  (Compl. ¶ 35.)  Plaintiff filed suit six months later on September 25, 2007, raising eight claims relating to the recovery, restoration, and preservation of certain electronic communications created and/or received by Executive Office of the President components.

On September 25, 2007, plaintiff sent defendant Director of the Office of Administration a letter threatening to seek a judicially enforceable order of preservation if he did not respond within five business days to plaintiff's demands.  (<u>See</u> Pl.'s Mot., Ex. 3.)  Specifically, plaintiff requested written assurances that the "OA has taken, and will continue to take, all steps necessary to preserve the back-up tapes and ensure their integrity and ability to be used in

restoring any missing e-mail." (Id.)  By letter dated October 2, 2007, the Director, through

counsel, responded to plaintiff's demands, explaining that the "Office of Administration is

maintaining, and will continue to maintain for the pendency of this litigation, unless otherwise

permitted by the court or agreed upon or stipulated by the parties, all disaster recovery tapes that

were in its possession as of September 25, 2007," the date on which plaintiff filed suit.  (See id.,

Ex. 4.)

      Notwithstanding defendants' express commitments, plaintiff responded by letter on

October 2, 2007, again threatening court action if plaintiff alone determined that it had not been

provided adequate assurances that "back-up tapes" were being properly preserved.  (Id., Ex. 5.)

Plaintiff demanded a response less than one business day later, and set forth various detailed

inquiries in the nature of discovery requests.  Plaintiff asked, inter alia, (1) how, if at all, the term

"disaster recovery tape" differed from "back up tape" as defined as "those tapes that contain any

of the emails missing from White House servers from March 2003 through the present;" (2) what

universe of tapes the Office of Administration possessed as of September 25, 2007; (3) whether

additional back-up tapes or disaster recovery tapes may contain any deleted emails that were not

in the Office of Administration's possession as of September 25, 2007; (4) the type of

environment in which the tapes were being maintained; and (5) requested a written stipulation to

file with the Court relating to defendants' preservation efforts.  (Id.)

      Defendants responded on October 3, 2007.  (Id., Ex. 6.)  Defendants' counsel explained

that "the Office of Administration is complying with its document preservation obligations under

Federal Rule of Civil Procedure 26," and identified specifically that defendants were maintaining

all disaster recovery tapes in the Office of Administration's possession as of the filing of the suit.

(<u>Id.</u>)  In specific response to plaintiff's question about the difference between "back-up tapes"

and "disaster recovery tapes," counsel explained that disaster recovery tapes included the "only

so-called 'back-up' tapes, as referenced in [plaintiff's] letters."  (<u>Id.</u>)

Despite these additional assurances, plaintiff's counsel followed up with an email on

October 5, 2007, this time demanding responses to thirteen enumerated questions and suggesting

a telephone call the next business morning, Tuesday, October 9, 2007, to discuss those questions.

(<u>Id.</u>, Ex. 7.)  Plaintiffs' new questions included requests, among others, for information about the

time period covered by the disaster recovery tapes in the Office of Administration's possession,

whether any other entity maintained back-up copies of emails, whether back-up copies of emails

created after September 25, 2007 were being maintained, the preservation conditions of the

tapes, and on what mediums any back-up tapes were stored.  (<u>See</u> <u>id.</u>)  Defendants' counsel

responded by email on October 9, 2007, explaining that counsel would be unavailable for a

conference call that morning, but again assuring plaintiff that the "letter response of October 3,

2007 addresses [plaintiff's] concerns."  (<u>Id.</u>, Ex. 8.)  Moreover, defendants' counsel informed

plaintiff that

> Although we appreciate the difference between discovery under the Federal Rules
> of Civil Procedure and the ultimate relief that plaintiff seeks, our representation
> about the Office of Administration's Rule 26 preservation compliance should
> address your concerns.  <u>In addition, to the extent your questions suggest that the
> Office of Administration has been recycling disaster recovery tapes for emails
> generated within EOP components after September 25, 2007, please be assured
> that those disaster recovery tapes have been maintained, not recycled.  Defendants
> are aware of the ongoing litigation and are proceeding in good faith compliance
> with their attendant obligations</u>.

(<u>Id.</u> (emphasis added).)

-8-

Notwithstanding the Office of Administration's representation on three separate occasions that it is maintaining, and will continue to maintain, all disaster recovery tapes (the only so-called back-up tapes referenced in plaintiff's letters) that were in the Office of Administration's possession as of the date the lawsuit was filed, as well as the further assurances that defendants were proceeding in good faith compliance with the attendant obligations of pending litigation, plaintiff filed the present motion on October 11, 2007, seeking a "temporary restraining order to guard against the destruction or degradation of back-up tapes in the White House defendants' possession[.]" (Pl.'s Mot. at 12.)  Plaintiff submitted no affidavits, declarations or testimony in support of its motion.

## II.    Statutory Framework[5]

The Federal Records Act is "a collection of statutes governing the creation, management, and disposal of records by federal agencies."  Public Citizen v. Carlin, 184 F.3d 900, 902 (D.C. Cir. 1999).  See 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24.  The FRA "authorizes the head of each Federal agency to establish a records management program and to define the extent to which documents are appropriate for preservation as agency records."  Kissinger v. Reporters Committee For Freedom of the Press, 445 U.S. 136, 147 (1980).  Agency heads are directed by the FRA to "establish and maintain an active, continuing program for the economical and

---

[5]  As noted above, Presidential Records Act recordkeeping practices and decisions are unreviewable.  Plaintiff's suggestion that it may be afforded relief owing to defendants' obligations under the PRA is therefore misplaced.  Armstrong, 924 F.2d at 47 ("Allowing judicial review of President's general compliance with the PRA at the behest of private litigants would substantially upset Congress' carefully crafted balance of presidential control of records creation, management, and disposal during the President's term."); see also Pl.'s Mot. at 5 ("CREW's lawsuit is based on [defendants'] . . . violation of their obligations under the Federal Records Act and the Presidential Records Act.") (emphasis added).

efficient management of the records of the agency," and "shall establish safeguards against the

removal or loss of records [they] determine[] to be necessary and required by regulations of the

Archivist." Id. § 3105. Additionally, the Act "provides the exclusive means for record

disposal."[6] Id.; see 44 U.S.C. § 3303(a).

> Records covered by the FRA include
>
> all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of that organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of the data in them.

44 U.S.C. § 3301. By regulation, records under the FRA are deemed either "permanent" or

"temporary." Permanent records include any federal record that "has been determined by [the

National Archives Record Administration ("NARA")] to have sufficient value to warrant its

preservation in the National Archives of the United States." 36 C.F.R. § 1220.14 (2006).

Temporary records are any records "which have been determined by the Archivist of the United

States to have insufficient value . . . to warrant its preservation by [NARA]." Id. Temporary

records may be disposed based on schedules authorized by NARA. By schedule dated

November 8, 1995, "backup tapes created [by the Executive Office of the President DATA

Center] after July 15, 1994 . . . consisting of copies of temporary records authorized for

destruction, nonrecord materials, and records that are duplicated elsewhere for preservation and

---

[6] The Records Disposal Act, 44 U.S.C. § 3101, et seq., controls the disposition of records, but as the D.C. Circuit has treated the RDA as a portion of the FRA, Public Citizen v. Carlin, 184 F.3d 900, 902 (D.C. Cir. 1999) (referring to "the RDA portion of the FRA"), defendants do so as well.

disposition" were designated as "TEMPORARY" records.  (Ex. 1 at 4 ¶ 8.)  By schedule,

therefore, the Office of Administration was permitted under the FRA to recycle, or delete,

backup tapes "when 90 days old."  (Id.)

The FRA also establishes an administrative enforcement scheme, comprised of two

complementary mechanisms for protecting records.  Armstrong v. Bush, 924 F.2d 282, 294 (D.C.

Cir. 1991).  Under 44 U.S.C. § 2905, if the Archivist learns that documents are being mishandled

in certain material ways, then he or she may notify the relevant agency head, assist the agency

head in initiating an action through the Attorney General (or initiate the action himself or herself

if the agency head refuses), and (in certain situations) notify Congress:

> "[The Archivist] shall notify the head of a Federal agency of any
> actual, impending, or threatened unlawful removal, defacing,
> alteration, or destruction of records in the custody of the agency that
> shall come to his attention, and assist the head of the agency in
> initiating action through the Attorney General for the recovery of
> records unlawfully removed and for other redress provided by law.
> In any case in which the head of the agency does not initiate an action
> for such recovery or other redress within a reasonable period of time
> after being notified of any such unlawful action, the Archivist shall
> request the Attorney General to initiate such an action, and shall
> notify the Congress when such a request has been made."

44 U.S.C. § 2905(a).  Under 44 U.S.C. § 3106, in turn, each agency head may alert the Archivist

of the material mishandling of documents and seek to initiate an action through the Attorney

General to put a stop to the improper practice(s):  "The [agency head] shall notify the Archivist

of any actual, impending, or threatened unlawful removal . . . or destruction of records in the

custody of the agency. . . [and] shall initiate action through the Attorney General for the recovery

of records he knows or has reason to believe have been unlawfully removed from his agency[.]"

44 U.S.C. § 3106.

-11-

Only limited review of compliance with the FRA is available.  Although a plaintiff may seek (under the APA) judicial review of an "agency head's or Archivist's refusal to seek the initiation of an enforcement action by the Attorney General," or the adequacy of an agency's record-keeping guidelines, the Court of Appeals has made clear that the FRA does not authorize judicial review in order to enjoin "an agency official from improperly destroying or removing records." <u>Armstrong</u>, 924 F.2d at 294, 295.

## <u>ARGUMENT</u>

A request for emergency injunctive relief is an extraordinary remedy, and the power to issue such an injunction "should be sparingly exercised." <u>Dorfmann v. Boozer</u>, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (quotation marks omitted).  For a plaintiff to prevail in its motion for a temporary restraining order, it "must demonstrate: 1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." <u>CityFed Fin. Corp. v. Office of Thrift Supervision,</u> 58 F.3d 738, 746 (D.C. Cir. 1995).  The plaintiff must satisfy each of these four factors separately, and the court must further find that these four factors together justify the drastic intervention of a preliminary injunction. <u>See</u> <u>CityFed Fin. Corp.</u>, 58 F.3d at 747; <u>Chaplaincy of Full Gospel Churches v. England</u>, 454 F.3d 290, 304 (D.C. Cir. 2006).  Nonetheless, while courts may balance weakness in one or more prongs against strong showings in others, <u>CityFed Financial Corp.</u>, 58 F.3d at 747, two prongs of the familiar four-part inquiry – the likelihood of success on

the merits and irreparable harm – must be established.  See <u>District 50, United Mine Workers of Am. v. International Union, United Mine Workers of Am.</u>, 412 F.2d 165, 167 (D.C. Cir. 1969).[7]

**I.    The Court Should Deny Plaintiff's Motion for a Temporary Restraining Order Because Plaintiff Has Not Established Imminent, Certain, and Irreparable Injury**

"[I]rreparable harm to the moving party is 'the basis of injunctive relief in the federal courts,'" <u>Almurbati v. Bush</u>, 366 F. Supp. 2d 72, 77-8 (D.D.C. 2005), <u>citing</u> <u>CityFed Financial Corp.</u>, 58 F.3d at 747 (<u>quoting</u> <u>Sampson v. Murray</u>, 415 U.S. 61, 88 (1974)), and the absence of irreparable injury, alone, is adequate to deny preliminary relief.  See <u>Wis. Gas Co.</u>, 758 F.2d at 674; <u>CityFed Fin. Corp.</u>, 58 F.3d 738, 747.  "To obtain injunctive relief, the petitioners must show that the threatened injury is not merely 'remote and speculative'." <u>Almurbati</u>, 366 F.Supp.2d 72, 78, <u>quoting</u> <u>Milk Indus. Found. v. Glickman</u>, 949 F.Supp. 882, 897 (D.D.C. 1996).  Proving irreparable injury is a considerable burden, requiring <u>proof</u> that the movant's injury is "<u>certain</u>, <u>great</u> and <u>actual</u> - not theoretical - and <u>imminent</u>, creating a clear and present need for extraordinary equitable relief to prevent harm." <u>Wisc. Gas Co.</u>, 758 F.2d at 674 (emphasis added).  Bare allegations are insufficient to prove irreparable injury.  See <u>id.</u>; <u>see also</u> <u>Roth v. Rufus</u>, 2003 WL 25152300, *1 (D.D.C. June 2, 2003) (same).

---

[7]  In addition, when a movant seeks mandatory injunctive relief, <u>i.e.</u>, an injunction that "would alter, rather than preserve, the status quo . . . the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." <u>Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.</u>, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (<u>quoting</u> <u>Phillip v. Fairfield Univ.</u>, 118 F.3d 131, 133 (2d Cir. 1997)), <u>aff'd</u>, 159 F.3d 636 (D.C. Cir 1998).  "A district court should not issue a mandatory preliminary injunction unless the facts and the law clearly favor the moving party." <u>Nat'l Conference on Ministry to Armed Forces v. James</u>, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (internal quotations omitted).

-13-

Plaintiff falls far short of its burden to establish that certain, great, actual and imminent harm will result if the Court denies the "extraordinary" and "unusual" emergency injunctive relief plaintiff seeks. Lehman, 623 F. Supp. at 334; Role Models Am., Inc. v. White, 193 F. Supp. 2d 76, 80 (D.D.C. 2002). Indeed, plaintiff has not established that any harm at all will accrue if relief is not granted.[8] Relying only on the allegations in its Complaint, plaintiff offers only rank speculation to claim that "preservation [of disaster recovery tapes] is by no means assured," and merely asserts that the "prior conduct of the White House – which led to the improper deletion of millions of electronic records – coupled with its refusal to give adequate assurances that all of the back-up tapes are being properly preserved present a serious risk that valuable records will be forever lost absent the Court's immediate intervention." (Pl.'s Mot. at 12; see also id. at 20-21 (offering only allegations, with no citations to any record evidence).) It is well established, however, that "[b]are allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Wisc. Gas Co., 758 F.2d at 674 (emphasis added).

Plaintiff itself appears to recognize the speculativeness of its allegations of harm. It does not refer to "actual," "certain," "great," or "imminent harm," but merely a "risk that the last remaining copies of important historical documents will not be preserved." (Pl.'s Mot. at 2.)

---

[8] Indeed, plaintiff contends that it suspected FRA violations as far back as April 2007, when it published a full report about the allegedly missing emails. (Pl.'s Mot. at 4.) Plaintiff comes only now, six months later, advancing claims of "immediate" and "irreparable harms." At a minimum, plaintiff's delay in filing suit or seeking injunctive relief belies its claims of immediate, irreparable harm.

Risk alone, especially of the most remote sort, is insufficient to merit temporary, emergency relief and plaintiff's reflexive, unsupported claims to the contrary do not merit injunctive relief.

The absence of any evidence of irreparable harm is underscored when juxtaposed against the assurances that the Office of Administration <u>has</u> provided to plaintiff.  Although regularity in an agency's or government official's dealings is typically presumed absent contrary evidence, <u>see</u> <u>Citizens to Preserve Overton Park</u>, 401 U.S. at 415, plaintiff has been provided with significantly more:  (1) plaintiff has been assured that the Office of Administration is complying with its document preservation obligations under the Federal Rules of Civil Procedure; (2) plaintiff has been assured that the Office of Administration is maintaining – and will continue to maintain for the pendency of this litigation, and in a manner that complies in all respects with Rule 26 – all disaster recovery tapes (which are the "only so-called 'back up' tapes, as referenced in plaintiff's letters") that were in the Office of Administration's possession as of the filing of the lawsuit; (3) plaintiff has been assured that the Office of Administration has been maintaining, and not recycling, disaster recovery tapes for emails generated within EOP components after the filing of the lawsuit; and (4) plaintiff has been assured that defendants are aware of the ongoing litigation and are proceeding in good faith compliance with their attendant obligations.  (<u>See</u> Pl.'s Mot., Exs. 4, 6, 8.)  Those specific and express commitments are more than sufficient to resist emergency relief.

Courts have denied preservation orders in analogous circumstances, even without the type of assurances described above.  In <u>Hester v. Bayer Corporation</u>, for example, the court vacated a preservation order imposed in state court prior to removal to federal court because the plaintiff there "provided the state court with no evidence suggesting the possibility that evidence

was at risk; the one page request for the preservation order was based entirely upon 'information

and belief.'" 206 F.R.D. 683, 686 (M.D. Ala. 2001). The court explained that

> Whenever a lawsuit is filed, the defendant is automatically required to take all
> appropriate steps to preserve any and all information which might be relevant to
> that litigation. See Fed. R. Civ. P. 26. To supplement every complaint with an
> order requiring compliance with the Rules of Civil Procedure would be a
> superfluous and wasteful task, and would likely create no more incentive upon the
> parties than already exists. The possibility that a document preservation order
> might induce a cavalier defendant to elect the moral high road, however,

was inadequate to justify entry of an order absent "some evidence . . . to justify such an extreme

remedy." Id. at 685, 686. The court used similar reasoning in Schnall v. Annuity & Life Re

(Holdings) Ltd., XL, in denying a preservation order given extant statutory preservation duties,

and defendants' affirmative statements that they were fully aware of their statutory obligations

and sanctions for failure to comply. No. 302-2133, 2004 WL 51117, *2 (D. Conn. Jan. 2, 2004)

(citing also for same proposition In re Tyco Int'l, Ltd. Sec. Litig., 2000 WL 33654141, at *2

(D.N.H. 2000)). The logic of such cases applies with equal force here. (See Pl.'s Mot. at 20

(claiming that "defendants' preservation obligations are rooted in the FRA and PRA," which

may provide extant statutory obligations, like the Federal Rules, similar to the obligations

discussed in the cases above).) Defendants have provided express assurances that they are

complying with their obligations to maintain the disaster recovery tapes in the Office of

Administration's possession as of the filing of the lawsuit.[9] Nothing more can be provided in

---

[9] For that reason and others, this case differs significantly from Armstrong v. Bush, 807 F. Supp.
816, 820-21 (D.D.C. 1992), where a preservation order was entered to preserve back-up tapes
during a change in Presidential administrations. In Armstrong, unlike here, defendants did not
provide assurances that records would be maintained during the transition between
administrations, when past history showed that records were lost during such transitions.
Moreover, in Armstrong, the court stated that "[a]ll the relief that is required . . . is that the

response to plaintiff's motion.[10]  (Id. at 21 ("The immediate relief that CREW seeks will require nothing more of the defendants than what the law already mandates . . ..") (emphasis added).).

Given that "the showings made fall so far short that [its] petition should not have been filed," and that plaintiff's failure "to provide any substantiation is a clear abuse of this court's time and resources," Wisc. Gas Co., 758 F.2d at 674, one wonders what motivation drives plaintiff's instant request.  Based on plaintiff's follow-up communications when defendants provided assurances of preservation, it appears that plaintiff really wants far-reaching discovery concerning defendants' disaster recovery system.  Plaintiff is simply not entitled to such relief at this time.  Defendant respectfully submits that such discovery is not appropriate in this case at any time, but even if it were, plaintiff's efforts are premature.  See, e.g., Fed. R. Civ. P. 26(d) (describing discovery timing).  Plaintiff may not attempt to use the temporary restraining order as a vehicle for discovery, as such action alters, rather than maintains, the status quo.  See Columbia Hosp. for Women Found., Inc., 15 F. Supp. 2d at 4.

---

Defendants save these tapes instead of reusing (and thereby erasing) them," assurances that defendants have already provided here.  Id. at 821 n.7.  Finally, in Armstrong, the court presumed that back-up tapes constituted actual permanent records within the meaning of the statutes and could therefore be preserved as back-up tapes themselves, rather than as means from which to restore any other records.  Id. at 821 n.8.  Here, plaintiff has not contended that the disaster recovery tapes are permanent records, but that missing records may be restored off of the tapes.  In any case, the most material difference is in the presence of actual harm from an administration change in Armstrong, and the absence of like circumstance here.

[10]  Plaintiff's complaint that defendants failed to provide an inventory of all disaster recovery tapes in its possession is entirely unrelated to any status-quo-maintaining relief it could seek. (Pl.'s Mot. at 20.)  And absent any evidence of harm, plaintiff would be unable to provide the more stringent proof required to disturb the status quo, even if that were possible.

-17-

Plaintiff has simply failed to establish imminent, irreparable, and certain harm.  For that reason alone, its motion for an extraordinary emergency injunction to preserve any records should be denied.  See CityFed Fin. Corp., 58 F.3d at 747.

## II.    The Court Should Deny Plaintiff's Motion for Preliminary Injunction Because The Public Interest Would Not be Furthered and Relief Would Impose an Undue Burden on Defendants By Sanctioning Routine Preservation Orders Based on Mere Allegation, and Not Evidence, of Bad Faith

The public's interest in appropriate, and non-wasteful, use of judicial resources would be harmed by the issuance of a temporary restraining order here.  As described above, "[t]o supplement every complaint with an order requiring compliance with the Rules of Civil Procedure would be a superfluous and wasteful task, and would likely create no more incentive upon the parties than already exists."  Hester, 206 F.R.D. at 686.  Such disregard for extant obligations, including any obligations due to the pendency of litigation and duties under the FRA, would demote the significance of the independent statutory obligations in favor of expensive and time-consuming court-ordered preservation responsibilities.  A preservation order, particularly when defendants have provided assurances of compliance with their obligations, is simply unnecessary and would deprive those obligations of independent significance.

The public's interest in ensuring that interim injunctive relief is not abused would be harmed by the issuance of an injunction here as well.  Allowing a party to obtain emergency relief based on allegations alone – without a hint of any real evidence – would greatly expand the possibility of Rule 65 abuse.  Wisc. Gas Co., 758 F.2d at 756 ("The fact that petitioners have not attempted to provide any substantiation is a clear abuse of this court's time and resources.").  Although defendants do not address here the blatant mischaracterizations and unsupported

allegations littering plaintiff's complaint and motion – because they are immaterial to the resolution of the instant motion – it suffices to say that conferring mere allegations with enough weight to support injunctive relief would "be an affront to the proper gamesmanship inherent in the adversarial system." Hester, 206 F.R.D. at 686. Conversely, plaintiff would not be harmed by the absence of any injunction because defendants are obligated to comply with their litigation obligations and plaintiff has all the assurances to which it could be entitled.

Defendants, for the same reason, would be burdened by the issuance of an injunction. Creating precedent for the unsuppported issuance of a preservation order would subject countless government agencies or officials to prophylactic motions at the outset of cases to reiterate legal burdens based on allegation alone. Allowing an injunction to issue without supporting evidence would harm defendants' institutional interests, and run afoul of the well-established presumption that government officials and agencies act in good faith and according to the dictates of law, no matter how inflammatory the mere allegation. See Am-Pro Protective Agency, 281 F.3d at 1239 ("The presumption that government officials act in good faith is nothing new to our jurisprudence."); Citizens to Preserve Overton Park, 401 U.S. at 415 (presumption of regularity for agency action).

**III.  The Court Should Deny Plaintiff's Motion for a Temporary Restraining Order Because Plaintiff Cannot Establish the Likelihood of Success on the Merits of the Relevant Underlying Claims**

The first three factors addressed above unambiguously establish that plaintiff has no right to temporary Rule 65 relief. See, e.g., Judicial Watch, Inc. v. United States Dep't of Homeland Security, No. 07-506, 2007 WL 2791371, *2-3 (D.D.C. Sept. 24, 2007) (rejecting motion for preliminary injunction because plaintiff had not established irreparable harm, defendant would

-19-

be burdened, and the public interest would not be served, and not analyzing the last prong

regarding likelihood of success on the merits). Thus, there is no reason to dwell long on the

merits prong for awarding injunctive relief. Nonetheless, by way of example,[11] and for the only

claims of the complaint relevant to plaintiff's injunctive request, see supra at 4-5, there is a

serious question about plaintiff's standing to maintain its APA cause of action under the FRA, as

well as whether plaintiff may seek a judicially enforceable order of restoration from the disaster

recovery tapes. Accordingly, plaintiff cannot establish the likelihood of eventual success on the

merits of its underlying claims. District 50, UMWA, 412 F.2d at 167.

Article III, § 2, of the Constitution "extends the 'judicial power' of the United States only

to 'Cases' and 'Controversies.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102

(1998). Article III standing requires that a plaintiff have suffered "an (1) injury in fact--an

invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical--(2) which is fairly traceable to the challenged act, and

(3) likely to be redressed by a favorable decision." Nat'l Treasury Employees' Union v. United

States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation marks and citation omitted); see

also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The doctrine of standing is

"an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan,

504 U.S. at 560, and "the party invoking federal jurisdiction bears the burden of establishing its

existence." Steel Co., 523 U.S. at 104.

---

[11] Defendants certainly do not intend these examples to be an exhaustive analysis of plaintiff's
jurisdictional and merits bars to suit.

Even assuming that plaintiff had pleaded a specific injury,[12] and even if plaintiff were able to show that it such injury was caused by the actions it challenges, plaintiff would still be unable show redressability – "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000) (internal citation omitted). Where "the necessary elements of causation . . ..hinge on the independent choices of a . . . third party . . .  it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 938 (D.C. Cir. 2004) (quoting Lujan, 504 U.S. at 562) (internal quotation marks omitted). Thus, to the extent that plaintiff requests that the Archivist and Director of the Office of Administration request that the Attorney General initiate some action to redress plaintiff's perceived wrongs, plaintiff's relief is dependent on a third party not subject to

---

[12]  This case squarely presents a question left open in prior FRA cases, namely, whether denial of access to records in the public interest, is sufficient for standing purposes.  Courts in this Circuit have suggested that its sufficiency is "questionable."  See Am. Friends Serv. Comm. v. Webster, 720 F.2d 29, 46 (D.C. Cir. 1983); Am. Friends Serv. Comm. v. Webster, 485 F. Supp. 222, 227 (D.D.C. 1980).  In Webster, three categories of plaintiffs brought an action to challenge the FBI's record destruction program.  One category of plaintiffs included "organizations whose goals and purposes are alleged to require access to the files and records of the FBI in order to enable them to disseminate information for organizational, educational, and political purposes." Id.  These plaintiffs claimed that if the FBI's files were destroyed, "they w[ould] be deprived of raw material for primary research in the areas of their activities."  Id.  The district court regarded that claimed injury as "questionable" for standing purposes.  Id.  However, because the other plaintiffs had adequately shown injury for standing purposes, the district court concluded that it was "not necessary to decide that question."  Id.  In the subsequent appeal, the D.C. Circuit also refrained from deciding that question "[s]ince the district court based its finding of standing only on the injuries . . . [of the other] groups of plaintiffs."  Webster, 720 F.2d at 282.  Thus, it is "unsettled whether the requisite injury-in-fact standard is met" by an organization's claimed need for files to "disseminate information" for organizational, educational, or political purposes. See Webster, 485 F. Supp. at 227.

this suit.  The Court of Appeal has left open the question about the reviewability of the Attorney

General's decision to initiate an enforcement action at the request of the Archivist or head of an

agency.  Armstrong, 924 F.2d at 296 n.11.  It is likely that such decision would be unreviewable

under 5 U.S.C. § 701(a)(2) and committed to the Attorney General's discretion by law.  See

Heckler v. Chaney, 470 U.S. 821, 833 (1985).  But plaintiff has not even sued the Attorney

General, so its injury may not be redressed here.

    Moreover, to the extent plaintiff's preservation request is tethered to a request for this

Court to order the retrieval of records from the disaster recovery tapes, the Court is without

jurisdiction to do so.  The Court of Appeal has held that the FRA precludes APA claims seeking

this sort of injunctive relief because under the FRA such relief can be sought, if at all, only by

the government through the FRA's detailed and exclusive administrative enforcement system.[13]

---

[13]  The plaintiffs in Armstrong sued the President, the Archivist, and the National Security
Council to prohibit them from erasing certain materials stored on the Council's computer system.
924 F.2d at 284.  Plaintiffs alleged, among other things, that some Council officials and staff
members were destroying federal records in violation of the Council's regulations governing the
treatment of federal records, which were promulgated pursuant to the FRA.  Id. at 291, 294.  To
remedy this alleged violation of the FRA, plaintiffs brought a claim under the APA seeking an
injunction against the destruction of such records.  Id.

The Armstrong court dismissed that APA claim, holding that it was precluded by the FRA.  924
F.2d at 294.  Under the FRA, the court held, an order enjoining the destruction or removal (or
relatedly, requiring the retrieval) of records could be sought only by the government through the
FRA's carefully crafted system of administrative enforcement:  "Because it would clearly
contravene [the] system of administrative enforcement to authorize private litigants to prevent an
agency official from improperly destroying or removing records, we hold that the FRA precludes
judicial review of such actions."

There is no relevant difference under Armstrong between a request for an order enjoining
removal and a request for an order requiring retrieval because an action for retrieval upsets the
system of administrative enforcement, Kissinger v. Reporters Committee For Freedom of the
Press, 445 U.S. 136, 148-50 (1980), just as an action for an injunction preventing removal does,

Armstrong v. Bush, 924 F.2d 282, 294 (D.C. Cir. 1991); see also 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24.

As a result, plaintiff's APA claim is non-reviewable to the extent it seeks court-ordered restoration of records because the lack of an applicable waiver of sovereign immunity is a jurisdictional defect. See, e.g., Council on American Islamic Relations v. Ballenger, 444 F.3d 659, 661 (D.C. Cir. 2006). Where, as here, a statute precludes review under the APA, the APA does not waive the United States' sovereign immunity. See 5 U.S.C. § 701(a)(1) (explaining that the APA applies except to the extent that "statutes preclude judicial review"); Chaney, 470 U.S. at 828 (noting that APA review is inappropriate unless a plaintiff "clear[s] the hurdle of § 701(a)"); High Country Citizens Alliance v. Clarke, 2006 WL 2037154, at *2 (10th Cir. July 21, 2006) ("In other words, before the waiver of sovereign immunity under § 702 applies, 'a party must first clear the hurdle of § 701(a).'"); Tozzi v. EPA, 148 F. Supp. 2d 35, 43 (D.D.C. 2001) ("The APA's sovereign immunity waiver does not apply where a statute has explicitly precluded judicial review."). And the FRA itself does not waive the United States' sovereign immunity. See 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. Without a waiver of sovereign immunity, the Court lacks subject matter jurisdiction.

*   *   *

Defendants already have assured plaintiff that they are complying, and will continue to comply, with their obligations to preserve documents in their possession relevant to plaintiff's lawsuit. That reason alone is sufficient to deny plaintiff's request to seek extraordinary relief,

---

Armstrong, 924 F.2d at 294. Armstrong acknowledges this fact by relying on Kissinger, 445 U.S. at 148, which involved a request for an order of retrieval. Armstrong, 924 F.2d at 294.

needlessly, from this Court.  Moreover, plaintiff's motion for a temporary restraining order

should be denied because plaintiff fails to establish irreparable injury, because an injunction

would ill serve the public interest and impose systemic burdens on defendants, and because

plaintiff's have not established a likelihood of success on the merits of the relevant claims.  For

all these reasons, defendants respectfully request that the Court deny all injunctive relief

requested in plaintiff's motion.

//

//

//

//

//

//

//

//

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a temporary restraining order should be denied.

Respectfully submitted this 12th day of October, 2007.

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

LISA OLSON
Senior Trial Counsel

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2007, a true and correct copy of the foregoing Defendant's Motion to Dismiss was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Helen H. Hong
HELEN H. HONG

## CERTIFICATION OF FAMILIARITY WITH LOCAL RULES

I, Helen H. Hong, pursuant to Local Civil Rule 83.2(j), hereby certify that I am familiar with the Local Rules of the United States District Court for the District of Columbia, and other materials set forth in Local Civil Rules 83.8(b) and 83.9(a).

/s/ Helen H. Hong
HELEN H. HONG

EXHIBIT 1

*National Archives* at College Park

8601 Adelphi Road    College Park, Maryland 20740-6001

NOV 8 1995

FILE

Mr. James B. Wright
Acting Director
Information Systems and
   Technology Division
Office of Administration
Executive Office of the President
Washington, DC 20503

Dear Mr. Wright:

I am happy to enclose your copy of the approved schedule for the
records created or received on the Office of Administration OASIS
ALL-IN-1 electronic communication system after July 14, 1994.

There are two provisions of this schedule that I would like to
highlight.

1.  Transfer of the records to NARA.  As indicated in item 1A of
    the schedule, OA will transfer the records to us in
    accordance with the provisions of 36 CFR 1228.188.  We are
    in the process of revising these transfer standards and
    expect that they will be in place by the end of next year.
    The proposed changes will provide more detailed instructions
    for the transfer of electronic text files.  We will keep you
    informed of developments during the process of revising the
    regulations.

2.  Implmentation of item 1B.  Since only the records in item 1A
    have sufficient value for transfer to NARA, it is essential
    that OA implement item 1B of the schedule.  We will not
    accept transfer of the permanent records in this schedule
    until the temporary records identified in item 1B have been
    separated from them.

Approval of this schedule is a milestone for both of our
agencies.  We will be happy to provide any further guidance you
may need as you take the necessary steps to implement it.

Sincerely,

JAMES W. MOORE
Assistant Archivist for
Records Administration

enclosure

FILE

| REQUEST FOR RECORDS DISPOSITION AUTHORITY | LEAVE BLANK (NARA use only) |
|---|---|
| *(See Instructions on reverse)* | JOB NUMBER  N1-429-95-2 |

TO: NATIONAL ARCHIVES and RECORDS ADMINISTRATION (NIR)
WASHINGTON, DC 20408

DATE RECEIVED  6-6-95

1. FROM (Agency or establishment)
   EXECUTIVE OFFICE OF THE PRESIDENT

NOTIFICATION TO AGENCY

2. MAJOR SUBDIVISION
   OFFICE OF ADMINISTRATION

In accordance with the provisions of 44 U.S.C. 3303a the disposition request, including amendments, is approved except for items that may be marked "disposition not approved" or "withdrawn" in column 10.

3. MINOR SUBDIVISION
   RECORDS MANAGEMENT OFFICE

| 4. NAME OF PERSON WITH WHOM TO CONFER | 5. TELEPHONE | DATE | ARCHIVIST OF THE UNITED STATES |
|---|---|---|---|
| Nell Doering | (202) 395-6471 | 11-8-95 | John W. Carl |

6. AGENCY CERTIFICATION

I hereby certify that I am authorized to act for this agency in matters pertaining to the disposition of its records and that the records proposed for disposal on the attached __8__ page(s) are not now needed for the business of this agency or will not be needed after the retention periods specified; and that written concurrence from the General Accounting Office, under the provisions of Title 8 of the GAO Manual for Guidance of Federal Agencies,

[X] is not required;    [ ] is attached; or    [ ] has been requested.

| DATE | SIGNATURE OF AGENCY REPRESENTATIVE | TITLE |
|---|---|---|
| 5/30/95 | Nell Doering | EOP RECORDS MANAGEMENT OFFICER |

| 7. ITEM NO. | 8. DESCRIPTION OF ITEM AND PROPOSED DISPOSITION | 9. GRS OR SUPERSEDED JOB CITATION | 10. ACTION TAKEN (NARA USE ONLY) |
|---|---|---|---|
| | Executive Office of the President, Office of Administration, OASIS ALL-IN-1 Applications and other VAX Cluster Applications records schedule attached. | | |

115-109

EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF ADMINISTRATION

This schedule applies to the VAX Cluster in the EOP DATA Center at the Office of Administration, Executive Office of the President.

OASIS ALL-IN-1 APPLICATIONS

The following applies to the records of the Executive Office of the President that are created or received on the Office of Administration OASIS ALL-IN-1 electronic communications system after July 14, 1994.

1.  E-Mail Records. E-mail messages that are created or received on the OASIS ALL-IN-1 electronic communications system that have been determined to be Federal records. E-mail records include transmission data (identities of sender and recipient, and the date of transmittal), and receipt data, where necessary. The records consist of the message and any attachments (including drafts). Nonrecord material will be deleted after monitoring. All Federal records will be transferred to an electronic recordkeeping system for preservation.

    A.  Master File of Recordkeeping System Data. (Not authorized for disposal as described under 1.B.).

        DISPOSITION:  PERMANENT

        Transfer data file to NARA at the end of each Presidential Administration in accordance with 36 CFR 1228.188. A separate Master File of Recordkeeping System Data will be transferred to NARA for each EOP Federal component.

    B.  Records in the Recordkeeping System containing temporary Federal records about routine, short-term, day-to-day administrative matters such as civilian personnel, fiscal accounting, procurement, travel and transportation, communications, printing, and other internal housekeeping activities that are unrelated to the official program functions of an office and add no substantial information to the agency official administrative records.

1

DISPOSITION:    TEMPORARY

Delete when the agency determines that they are no longer needed for administrative, legal, audit, or other operational purposes.

C.    E-Mail Records Documentation.

The documentation for each data file will include any additional information about the format of the data file and/or the context in which the data file was created.

DISPOSITION:    PERMANENT

Transfer a copy of the E-mail records documentation to NARA with the records described in 1.A (above). Transfer any updates to the documentation with subsequent transfers of records.

NOTE:  All transfers of documentation will conform with requirements in 36 CFR 1228.

D.    Electronic Version of the E-Mail Federal Records on the "Live" OASIS ALL-IN-1 System.

DISPOSITION:    TEMPORARY

Delete when Federal records have been copied to the recordkeeping system.

2.    Federal Record Calendars and Task Tracking Created on the OASIS ALL-IN-1 System of Designated High-Level Officials.

Federal calendars created by the Executive Office of the President designated high-level officials.

A.    Electronic Version.

DISPOSITION:    TEMPORARY

Delete after printing and filing calendar in appropriate file.

B.    Paper Version.

DISPOSITION:    PERMANENT

Interfile with official records and transfer to NARA according to the approved schedule controlling those records.

2

3.    Indices.  Lists maintained on the system of the contents of electronic folders of OASIS All-IN-1 users.

DISPOSITION:   TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

4.    Distribution Lists.  Mailing lists on the OASIS ALL-IN-1 System created by users for sending e-mail messages to groups of recipients.  All recipients of e-mail messages are identified in full on the message itself.

DISPOSITION:   TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

5.    EOP Directory.  The data on the EOP Directory contains names of individuals, their organization affiliation, room number, and telephone numbers.  This is a dynamically changing list of EOP personnel.

A.    Electronic Copy.

DISPOSITION:   TEMPORARY

Print out paper copy quarterly.  Delete and/or update as necessary.

B.    Paper Copy.

DISPOSITION:   PERMANENT

Retire printed copy with Office of Administration, Information System and Technology Division official files in accordance with NARA approved records schedules.

6.    Phone Messaging.  The Desk Management function allows the user to send phone messages through the computer.  Phone messages that are records because they contain substantive information on agency activities must be documented and incorporated into the agencies official files.

A.    Electronic Copy.

DISPOSITION:   TEMPORARY

Delete when one month old.

3

B.    Paper Copy.

Interfile with official records and handle according to the approved schedule controlling those records.

7.    Pager Requests.  The Desk Management function allows the user to send paging requests.

DISPOSITION:    TEMPORARY

Delete when one month old.


OASIS ALL-IN-1 AND OTHER VAX CLUSTER APPLICATIONS

8.    Backup Tapes.  Backup tapes created after July 15, 1994, of the VAX Cluster which includes VMS System related software, user directories, training packages for system operators, and Presidential and Federal applications, consisting of copies of temporary records authorized for destruction, nonrecord materials, and records that are duplicated elsewhere for preservation and disposition.  See Information Note concerning Presidential records.

DISPOSITION:    TEMPORARY

Daily Backup Tapes.  Delete when set of weekly backup tapes has been created without error.

Weekly Backup Tapes.  Delete when 90 days old.

4

INFORMATION NOTE:  The following applications are authorized for disposition under the NARA General Records Schedules.

OASIS ALL-IN-1 APPLICATIONS

1.    User Directory.  The user directory is an electronic feature of the system that provides users with a short-cut to entering the name of the intended recipient of a message. This is a dynamically changing list of system users.

DISPOSITION:    TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

2.    WAVES Appointment Requests.  Requests to the Secret Service to clear visitors into the White House complex.  The Secret Service preserves all requests that it receives.

A.    Electronic Requests.

DISPOSITION:    TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

B.    Requests made on Paper Forms.

DISPOSITION:    TEMPORARY

Destroy when no longer needed for administrative, legal, audit, or other operational purposes.

3.    Bulletin Board.  The bulletin board is used to notify OASIS All-IN-1 users of scheduled events such as blood drives, classroom training, and insurance open seasons.  The record copy of announcements is maintained in the recordkeeping system of the originating office and is separately scheduled.

DISPOSITION:    TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

4.    Suggestion Box.  Electronic messages from OASIS All-IN-1 users suggesting improvements to the system.

DISPOSITION:    TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

5

OASIS ALL-IN-1 APPLICATIONS (continued)

5.  User Set-up.  Consists of user passwords, locations, work
    hours, calendar and date formats, and log-in/log-out data.

    DISPOSITION:    TEMPORARY

    Delete when no longer needed for administrative, legal,
    audit, or other operational purposes.

6.  Federal Record Calendars and Task Tracking of Staff (Other
    than Designated High-Level Officials).

    DISPOSITION:    TEMPORARY

    Delete when two years old.

7.  System Distribution Lists.  Mailing lists created by system
    managers to facilitate system messages to users.

    DISPOSITION:    TEMPORARY

    Delete when no longer needed for administrative, legal,
    audit, or other operational purposes.


OTHER VAX CLUSTER APPLICATIONS

8.  DB/2 Services Request Form.  This application allows clients
    to request DB/2 system and data base administration
    services.

    DISPOSITION:    TEMPORARY

    Delete when no longer needed for administrative, legal,
    audit, or other operational purposes.

9.  Security Files.  These are system generated data that are
    used to monitor user attempts to access any computer
    resource from outside the EOP complex; also contains a log
    file of all accesses to the system using dial-up and a
    security report file on every day log-in errors.

    DISPOSITION:    TEMPORARY

    Delete when no longer needed for administrative, legal,
    audit, or other operational purposes.

OTHER VAX CLUSTER APPLICATIONS (continued)

10.  **Supply Order Form.**  This application is accessed through the Desk Management function and allows the user to order supplies.

DISPOSITION:    TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

11.  **Training Schedules (SCHED).**  This function allows customer support to register clients for computer classes and produce attendance reports.

DISPOSITION:    TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

12.  **Weekly Usage Reports.**  This is system generated data used to monitor system usage.

DISPOSITION:    TEMPORARY

Delete when no longer needed for administrative, legal, audit, or other operational purposes.

NOTE:    A data tape that conforms with 36 CFR 1228 of OASIS ALL-IN-1 electronic communications that contain Presidential records (excluding nonrecord materials) will be transferred to the White House Office of Records Management at the end of each year or more often should the volume exceed more than one data tape per year.

7

INFORMATION NOTE:   The following applications are nonrecord:

## OASIS ALL-IN-1 APPLICATIONS

1.  **Calculator.**  The Desk Management function provides access to a calculator for the users personal use.

2.  **Information Management.**  This function displays commercial and other non-agency information such as the news and weather.

3.  **Lock Keyboard.**  This function allows the user to insert a special password to lock the keyboard when not in use.

4.  **Personal Rolodex.**  The Personnel Directory function provides this feature that allows users to create personal address and telephone lists for ready reference and not for circulation.

5.  **Training Routines and HELP Files.**  The interactive training routines allows the users to become familiar with the various functions on the system.  The HELP file contains text to assist users as they are executing their applications.

6.  **World Wide Time.**  The Desk Management function allows the user to find the time in major foreign and United States cities.


## OTHER VAX CLUSTER APPLICATIONS

7.  **Personnel Vacancy Search Request.**  This function provides access to specific lists of government-wide vacancies.

8.  **Presidential Remarks On-Line.**  This is a Library application used by the library staff to access Presidential public statements and speeches.

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) Plaintiff, ) v. ) ) EXECUTIVE OFFICE OF THE PRESIDENT, ) ) OFFICE OF ADMINISTRATION, ) ) ALAN R. SWENDIMAN, HEAD OF THE OFFICE OF ADMINISTRATION, ) ) THE NATIONAL ARCHIVES AND RECORDS ADMINISTRATION (NARA), ) ) DR. ALLEN WEINSTEIN, ARCHIVIST OF THE UNITED STATES, ) ) Defendants. ) | Civil Action No: 1:07-cv-01707 (HKK) |

**[PROPOSED] ORDER DENYING PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Upon consideration of the papers filed by all the parties and arguments of counsel, it is hereby

ORDERED that Plaintiff's Motion for a Temporary Restraining Order be, and hereby is, DENIED.

Dated this _____ day of _____, 2007.

_____
HONORABLE HENRY K. KENNEDY
United States District Court Judge