## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND          )
ETHICS IN WASHINGTON,                            )
                                                              )
                  Plaintiff,            )
                                                              )
            v.                                    )          Civil No. 1:07cv1707 (HHK) (JMF)
                                                              )
EXECUTIVE OFFICE OF THE                       )
PRESIDENT, et al.,                                    )
                                                              )
              Defendants.          )
_____)

### PLAINTIFF'S RESPONSE TO DEFENDANTS' LOCAL RULE 72(b) OBJECTIONS TO REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

After full briefing and oral argument Magistrate Judge John Facciola issued a carefully considered Report and Recommendation ("Report") recommending that this Court issue an injunction[1] to prevent the destruction of back-up copies of the millions of deleted emails that are at the center of this litigation. The defendants have now filed objections to this Report on two grounds: (1) plaintiff CREW[2] failed to establish irreparable injury absent the requested TRO and (2) Judge Facciola's proposed order sweeps too broadly because it applies to all defendants and requires that they preserve the back-up copies under conditions that will permit their eventual

_____

[1] Although plaintiff brought its motion as a request for a temporary restraining order ("TRO"), Judge Facciola treated it as a motion for a preliminary injunction "[s[ince notice has been given and a hearing has been held . . ." Report at 1 n.1. Injunction and TRO are used herein interchangeably.

[2] CREW is the acronym for plaintiff Citizens for Responsibility and Ethics in Washington.

use.[3]  As discussed below, each of these objections is unfounded and this Court's de novo

review[4] should compel it to conclude that a TRO is necessary here to prevent irreparable injury

and advance the public interest.

Defendants' objections essentially ask this Court to ignore their past conduct and

systemic failure to comply with their record-keeping obligations, a failure that led directly to the

destruction of millions of email records.  Moreover, the objections are based on unsworn

statements of counsel, which are no substitute for admissible evidence, are a complete distortion

of the record before the Court and raise more questions than they answer.

## BACKGROUND[5]

After filing a complaint based on the defendants' conduct over the course of years of

ignoring, if not outright flouting, their statutory obligations to ensure the preservation of White

House electronic records, plaintiff also sought assurances that during the pendency of this

lawsuit, back-up copies of the deleted emails would be preserved.  With no direct knowledge of

what back-up copies might exist and in what form, plaintiff sent a letter to the director of the

Office of Administration ("OA") requesting "immediate written assurances that the OA has

taken, and will continue to take, all steps necessary to preserve the back-up tapes and ensure

---

[3] See Defendants' Local Rule 72.3(b) Objections to Report and Recommendations on Plaintiff's Motion for a Temporary Restraining Order ("Ds' Objections").

[4] Under LCvR 72.3(c), this Court is to make "a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made . . ." Moreover, the Court is free to make this determination "based solely on the record developed before the magistrate judge, or may conduct a new hearing and receive further evidence." Id.

[5] Plaintiff incorporates herein its memorandum in support of its motion for a TRO as well as its reply brief and adds below supplemental background to put defendants' objections in the proper context.

their integrity and ability to be used in restoring any missing e-mail."  Letter to Alan R. Swendiman from Anne L. Weismann, September 25, 2007 (Exhibit 2 to Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order) ("P's TRO Mem.").

By letter dated October 2, 2007, defendants' counsel responded as follows:  "The Office of Administration is maintaining, and will continue to maintain for the pendency of this litigation, unless otherwise permitted by the court or agreed upon or stipulated to by the parties, all disaster recovery tapes that were in its possession as of September 25, 2007."  Letter to Anne Weismann from Helen H. Hong, October 2, 2007 (Exhibit 3 to P's TRO Mem.).  Of note, the letter used the term "disaster recovery tapes," a term not used by the plaintiff, with no explanation of what that term means.

Given the significant concerns and questions this letter raises, plaintiff again wrote to defendants on October 2, 2007.  Letter to Helen H. Hong from Anne L. Weismann, October 2, 2007 (Exhibit 4 to P's TRO Mem.).  First, CREW explained that the "back-up tapes" referenced in its initial letter "were all of those tapes that contain any of the emails missing from White House servers from March 2003 through the present."  Id.  In light of defendants' use of a different term, CREW asked for an explanation of what defendants meant by "disaster recovery tapes" and how that term differs, if at all, from "back-up tapes" as defined therein by CREW.  Id. CREW explained that this information is "especially critical information as it will dictate whether and to what extent the OA and the EOP are preserving all of the back-up tapes that contain any of the missing emails."  Id.  Second, CREW asked if there are additional back-up tapes or disaster recovery tapes that may contain the deleted emails and that were not in the OA's possession as of September 27, 2007.  Id.  CREW further requested assurances "that the

tapes are being maintained in an appropriate environment that assures their continued integrity."
Id.

CREW's questions went unanswered.  Instead, by letter dated October 3, 2007,
defendants' counsel reiterated that the OA "is maintaining and will continue to maintain for the
pendency of this litigation . . . and in a manner that complies in all respects with Rule 26, all
disaster recovery tapes -- the Office of Administration's only so-called "back up" tapes, as
referenced in your letters -- that were in the Office of Administration's possession as of
September 25, 2007."  Letter to Anne Weismann from Helen H. Hong, October 3, 2007 (Exhibit
5 to P's TRO Mem.).

The defendants' refusal to given written responses to plaintiff's questions led plaintiff to
propose a telephone discussion.  See Email from Anne Weismann to Helen H. Hong, October 5,
2007 (Exhibit 6 to P's TRO Mem.).  As a starting point for such discussion, plaintiff identified a
list of questions still unanswered, that included the following:  (1) an explanation of what
"disaster recovery tapes" are and how they differ, if at all, from "customary back-ups of the EOP
e-mail system"; (2) the time period covered by the disaster recovery tapes; (3) whether there are
disaster recovery tapes elsewhere, including in the possession of a third-party contractor; (4)
whether there are back-up copies of disaster recovery tapes elsewhere; (5) the mediums on which
back-up copies are stored; and (6) whether those other mediums are also being preserved.  Id.

Defendants refused to have a telephone discussion or otherwise answer plaintiff's
questions, beyond stating that disaster recovery tapes for emails generated within EOP
components after September 25, 2007, have been maintained.  Email from Helen Hong to Anne
Weismann, October 9, 2007 (Exhibit 7 to P's TRO Mem.).

In view of the defendants' complete failure to provide adequate assurances that back-up copies of the deleted emails are being preserved, plaintiff filed a motion for a TRO seeking a preservation order. After full briefing, a hearing on plaintiff's motion was held on October 17, 2007, before Magistrate Judge John Facciola. At that hearing, counsel for the defendants admitted that "there are additional backup tapes in addition to the ones that were in the Office of Administration's possession on September 25th." Transcript of Motions Hearing, October 17, 2007, p. 5 ("Transcript") (attached as Exhibit 1). Defendants' counsel, however, never explained what those additional back-up tapes consist of. Defendants' counsel also reiterated that "all of the backup tapes, or the disaster recovery tapes, in the Office of Administration's possession before September 25th, 2007, are being and will continue to be maintained during the course of this litigation." Id. at 7. Plaintiff's counsel, in turn, explained that plaintiff was seeking preservation of "whatever backup media the institution of the Executive Office of the President, through the Office of Administration, is our understanding, uses to preserve data that can be used forensically for . . . recovery." Id. at 10. At no time during the hearing did defendants' counsel identify anything about the universe of tapes it was proposing to preserve, including the time-period of those tapes and whether they are the only potential source of copies of the deleted emails. See id. at 25.

On October 23, 2007, defendants filed objections to the report and recommendations of Judge Facciola. In that document defendants, through their counsel, offered a new definition of disaster recovery tapes, namely those "relating to the official, unclassified Executive Office of the President email system" that "are media in the care, custody *and* control of the Office of Administration created with the intention of restoring *systems* in the event of a disaster and [that]

may potentially be used to restore data that may not have been otherwise preserved." Ds'
Objections at 2 n.1 (emphasis added). Defendants did not explain what the unclassified EOP
email system is.

### 1. Judge Facciola Properly Concluded That Absent the Requested TRO, Plaintiff is Threatened With Irreparable Injury.

According to the defendants, Judge Facciola's recommended order is "wholly improper,"
Ds' Objections at 4, because it was not based on any declaration or evidence of harm and ignores
"defendants' repeated commitments to plaintiff to maintain the disaster recovery tapes" and their
"offer to provide a declaration -- under penalty of perjury -- committing to continue to preserve
disaster recovery tapes." Id. at 4. Citing to cases where courts have found no irreparable harm
to justify a preliminary injunction, defendants argue that the same conclusion is compelled here.
Id. at 3-4. Defendants are wrong as a matter of fact and law.

First, defendants conveniently ignore the genesis of this lawsuit: a course of conduct
over at least two and one-half years in which a huge volume of email records inexplicably went
missing and the defendants' concomitant refusal to restore the deleted emails or install an
appropriate and effective electronic records management system that would prevent further
deletions of White House records. In other words, defendants' flagrant disregard for their
record-keeping obligations, a disregard that has already resulted in a loss of important historical
records, more than justifies the threat plaintiff and the public face that the only remaining copies
of the deleted emails will also go missing absent a preservation order.

Moreover, in the face of plaintiff's repeated and legitimate requests for adequate
assurances and information, defendants offered something far short of what they now
characterize as "unambiguous commitments." Ds' Objections at 2. To the contrary, defendants

committed only to maintain whatever "disaster recovery tapes" the OA had it its possession on September 25, 2007 (the date this lawsuit was filed) and refused to identify anything about that universe of tapes, including what time-periods they cover or whether they are the only back-up copies that exist for the deleted emails. As plaintiff's counsel explained at the hearing, the so-called assurances of the defendants cannot be deemed "adequate" where "we still do not know what the body of existing backup recovery tapes, whether we call them disaster recovery tapes or backup tape[s] . . we don't know what they are" and whether "any and all copies, if they exist, would still be [with the OA]." Transcript at p. 25.

Defendants' latest iteration[6] of what they are voluntarily willing to preserve (disaster recovery tapes for the "official, unclassified EOP email system"), made at the proverbial 11th hour, not only falls far short of answering critical questions but, in fact, raises a host of red flags that suggest defendants are attempting to narrow their commitment even further. For example, defendants now define disaster recovery tapes as those "created with the intention of restoring *systems* in the event of a disaster." Ds' Objections at 2 n.1 (emphasis added). Read literally, this could refer to tapes that back up programs used for data recovery, not the actual data itself. Plaintiff's TRO, by contrast, seeks the preservation of the actual data, specifically copies of the millions of deleted emails.

Also unknown is whether these newly defined disaster recovery tapes are back-ups of the email system itself, which will capture only those email messages currently in the system, or are back-ups of the file server files in which the emails at issue here were stored after being

_____

[6] In fact, it is the inadmissible iteration of their counsel, completely unsupported by any factual evidence of record.

extracted from the email system.  Only back-ups of the file server files will provide a comprehensive set of emails.

Further, the defendants have still not identified precisely what the OA had in its "possession, custody *and* control"[7] as of September 25, 2007, a date they selected based on their assessment that any obligation they have to preserve evidence pursuant to Rule 26 of the Federal Rules of Civil Procedure commences when this suit was filed.  As set forth in CREW's briefs in support of its TRO, the preservation order CREW seeks is not premised on discovery obligations, but rather on the significant threat that absent such relief CREW will not be able to get full and effective relief if it prevails in this lawsuit.  Accordingly, if the OA did not have in its possession, custody or control the full complement of back-up copies for the deleted emails, it is necessary and appropriate to consider all other copies that may exist, whether or not they are on "disaster recovery tapes."  The defendants' persistence in withholding obviously critical information belies their claim that an injunction is unwarranted because they have offered adequate assurances.

Defendants' objections are also without legal support.  All of the cases defendants cite are either inapposite or actually support Judge Facciola's conclusion that absent an injunction plaintiff will suffer irreparable injury.  In District 50, UMW v. UMW, for example, the D.C. Circuit reversed a grant of preliminary injunctive relief because there was no support in the

---

[7] The defendants' latest commitment is tied to tapes "in the care, custody and control" of the OA.  Id.  The obligation that Judge Facciola's proposed order imposes on the defendants, however, would extend to those tapes in the care, custody *or* control of any defendant and not just the OA.  This wording difference is not insignificant; to the extent the EOP has transferred back-up copies off-site they could be construed as no longer in the custody of the OA and so would fall outside the OA's commitment, but not that which Judge Facciola recommends imposing.

record for the plaintiff's claim that the embarrassment and confusion that would result absent an injunction would be irreparable.  412 F.2d 165, 167 (D.C. Cir. 1969).  In other words, the issue was whether the alleged harm was irreparable, not whether it was too speculative.  Similarly in Nichols v. AID, 18 F.Supp.2d 1, 5 (D.D.C. 1998) (cited at Ds' Objections, p. 4), the court was considering whether an allegation of a temporary lack of income was irreparable.  See also Judicial Watch, Inc. v. U.S. Dep't of Homeland Security, 2007 U.S. Dist. LEXIS 70446, *2-3 (D.D.C. 2007) (cited at Ds' Objections, p. 4) (agency delay in processing plaintiff's Freedom of Information Act request was not irreparable where information was not time-sensitive).  By contrast, the threat that the back-up media will be obliterated here is "a text book example of irreparable harm."  Report at p. 3.

In Wis. Gas Co. v. FERC, also cited by defendants (Ds' Objections at 4), the D.C. Circuit explained that an adequate showing that irreparable harm was "'likely' to occur" was made where the movant demonstrates "that the harm has occurred in the past and is likely to occur again . . . "  758 F.2d 669, 674 (D.C. Cir. 1985).  This is precisely the showing plaintiff has made here.  As explained above, plaintiff's request for a preservation order is premised on the millions of email records that have already been deleted and a course of conduct that includes defendants' failure to give adequate assurances that absent the requested relief all necessary and appropriate back-up copies will be preserved.

In sum, Judge Facciola properly concluded that a preservation order is both necessary and appropriate given the irreparable harm that would fall to the plaintiff (and the public) absent such relief.  The defendants' objections, far from offering a basis to reject that conclusion, highlight even further the need for injunctive relief.

**2. The Proposed Order Fully Complies With Rule 65(d).**

Defendants also object to Judge Facciola's proposed order, arguing that it sweeps too broadly because it is not limited to the OA and requires them to "preserve the media under conditions that will permit their eventual use, if necessary[.]" Ds' Objections at p. 7. These objections are equally unfounded.

First, the defendants in this lawsuit include not only the OA, but the Executive Office of the President ("EOP")"and its multiple components.[8] As alleged in the complaint, the deleted emails came from multiple EOP components. Complaint, ¶¶ 33-34. Absent definitive evidence that the only still-existing copies of these deleted emails are in the possession, custody or control of the OA, there is no basis to limit any preservation obligation to the OA.[9]

Second, the defendants' objections to the requirement that they "preserve the media under conditions that will permit their eventual use . . ." make no sense. Defendants state[10] that the OA already "is taking reasonable and appropriate steps to preserve the disaster recovery tapes under conditions that will permit their eventual use, if necessary . . ." Ds' Objections at p. 7. How, then, can there be any legitimate ambiguity about what this proposed order would

---

[8] Included within the EOP are the following offices and agencies: Council of Economic Advisers, Council on Environmental Quality, Office of Administration, Office of Management and Budget, Office of National Drug Control Policy, Office of Science and Technology Policy, President's Foreign Intelligence Advisory Board, United States Trade Representative and White House Office.

[9] The written statement by defendants' counsel that the OA "has the care, custody and control of all existing disaster recovery tapes that may contain emails from the official, unclassified [EOP] system," Ds' Objections at p. 7, not only fails to speak to all existing copies or explain precisely what is covered by the existing disaster recovery tapes, but is not admissible evidence. See, e.g., Rule 801 of the Rules of Evidence.

[10] Again, this statement is through their counsel with no factual support in the record to back it up.

10

require?

If clarification is warranted, however, plaintiff suggests that the order be modified to state that defendants are required to "preserve the media under conditions that will permit their eventual use, if necessary, *including conditions that will allow the extraction and reading of the data stored on the media*." This additional language will eliminate any claimed ambiguity.

## **CONCLUSION**

For the foregoing reasons and those set forth in plaintiff's motion for a TRO and reply brief, plaintiff's motion should be granted and the Court should enter Judge Facciola's recommended order. If the Court determines that a hearing on these issues would be useful, plaintiff is prepared to offer expert testimony to explain what preservation obligations make sense in this case and why.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20530
Telephone:  202-408-5565
Fax:  202-508-506

Attorneys for plaintiff

Dated:  October 26, 2007

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
                                :
In the Matter of:               :
                                :
CITIZENS FOR RESPONSIBILITY AND :
  ETHICS IN WASHINGTON, D.C.    :
                                :
     Plaintiff,                 :
                                :
        vs.                     : Civil Action No. 07-1707
                                :
THE EXECUTIVE OFFICE OF         :
  THE PRESIDENT, et al.,        :
                                :
     Defendants.                :
                                : Washington, D.C.
- - - - - - - - - - - - - - - x October 17, 2007


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:        ANNE L. WEISMANN, ESQ.
                          MELANIE SLOAN, ESQ.

For the Defendants:       HELEN HONG, ESQ.
                          JOHN TYLER, ESQ.
                          CARL NICOLS, ESQ.


Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M2085V/bf

**P R O C E E D I N G S**

1

2        THE CLERK:  Civil Case 07-1707, Citizens for

3  Responsibility and Ethics in Washington, D.C., versus the

4  Executive Office of the President, et al.  Anne Weismann

5  for the Plaintiff, Helen Hong for the Defendants.  This is

6  a motions hearing on a temporary restraining order for

7  Ms. Weismann (inaudible).

8        MS. WEISMANN:  Good morning, Your Honor, and I'm

9  here also with Melanie Sloan, our executive director.

10       THE MAGISTRATE JUDGE:  Good morning.  Good

11  afternoon, I'm sorry.

12       MS. HONG:  Good afternoon, Your Honor.  Helen Hong

13  on behalf of the United States Defendants, and along with me

14  are John Tyler and Carl Nicols.

15       THE MAGISTRATE JUDGE:  Good afternoon.

16       All right.  I've reviewed the papers here and I

17  was wondering if it is possible at this point to forge a

18  stipulation that would be similar to the stipulation that

19  the late Judge Penn brought about in 2006.

20       As I understand it -- and this is what confuses me

21  -- is the problem at this point and the difference between

22  you, the difference between backup tapes and disaster

23  recovery backup tapes?  And if so, what is the difference

24  between those two things, if there is a difference.

25       MS. WEISMANN:  May I address that, Your Honor?

1        THE MAGISTRATE JUDGE:  Please.

2        MS. WEISMANN:  Thank you.  Your Honor, that's one

3   issue, but let me tell you --

4        THE MAGISTRATE JUDGE:  Well, it's the issue I want

5   to talk about right now.

6        MS. WEISMANN:  Right, okay, yes.  Because --

7        THE MAGISTRATE JUDGE:  If you -- let me ask you

8   this.  As your understanding is, we know that effective on

9   September 27 when this lawsuit got started, the government -

10  - I'll use the word as broadly as I can, because there are

11  so many Defendants here -- stopped recycling tapes because

12  of the existence of this lawsuit.  Do you understand that

13  any other backup tapes exist that came into existence before

14  September 27th, 2007, and have not been recycled?  And if

15  that's so, why can't we just put them to one side for the

16  time being?  Would that resolve your concern?

17       MS. WEISMANN:  I am answering your question, but

18  with a little latitude because here's the problem.  What we

19  don't know and what we have been trying to get from the

20  White House Defendants is an explanation of what the

21  existing body of backup tapes and copies are.  And I say

22  "copies" because it's our understand that they may exist in

23  other mediums besides tapes, but all that we have been told

24  is the word "disaster recovery tape," and we don't know if

25  that encompasses these other mediums.

4

1          And of course there is a disagreement, just so you

2     appreciate, Your Honor, between them saying their only

3     obligation is under the Federal Rules of Civil Procedure and

4     our position, which is by law you are required to preserve a

5     much larger universe of tapes than just what was in your

6     possession as of September 25th.

7          So the only representation that we have today,

8     and this is all I can tell you because this is all that the

9     government has told us, is that whatever they had in their

10    hands as far as disaster recovery tapes on September 25th

11    they will keep, I have no idea what that encompasses.  If it

12    does not encompass all of the backup copies that they have,

13    we say that it is patently deficient.

14         So because -- and I think that is -- we had hoped,

15    Your Honor, and that's why we went back to them again and

16    again, to be able to forge some kind of a stipulation, but

17    we just couldn't get the necessary information.  So I

18    certainly welcome this opportunity if this Court is more

19    successful than we are.

20         THE MAGISTRATE JUDGE:  Let's see.  Let's assume

21    this was the ordinary civil case, Suzie Smith against Joe

22    Blow or something.  All right.  We know, under the amended

23    Federal Rules, parties would be obliged to get together and

24    talk about preservation.  The issue would quickly arise, I

25    suppose, what kind of backup tapes are in existence.  And

1    that's my question to you.  And it's the same question I

2    just asked her.

3            Independently of the backup tapes that were in

4    existence on September 27, 2007, are there other backup

5    tapes that are present in existence and, if they are, would

6    you be willing to preserve those until Judge Kennedy can

7    rule more substantively on the issues presented.

8            MS. HONG:  Sure.  Your Honor, I think --

9            THE MAGISTRATE JUDGE:  "Sure," you will?

10           MS. HONG:  Well, let me address that in two parts.

11   The first is, we have represented what we mean by disaster

12   recovery tapes.  In Exhibit 5 to Plaintiff's motion, we've

13   indicated to Plaintiff that the disaster recovery tapes are

14   the backup tapes to which CREW referred in their first and

15   second letters.  Second, there are additional backup tapes

16   in addition to the ones that were in the Office of

17   Administration's possession on September 25th.

18           We have represented that to the extent that there

19   are backup tapes for e-mails generated by EOP components

20   after September 25th, that those backup tapes are not being

21   recycled and will be maintained by the Office of

22   Administration consistent with its preservation obligations.

23           THE MAGISTRATE JUDGE:  Well, let me -- you can

24   help me here.  Let me tell you what happens in this

25   courthouse.  All right?

1          On Tuesday evening, the backup tapes for our

2    operation on Monday and Tuesday are delivered to IMM and

3    taken from the premises.  On Thursday, the same people come

4    back and bring the tapes they have and exchange them for the

5    ones that have been created for Wednesday and Thursday.

6    That constant recycling process is always going on.  Which

7    leads me to believe that on Thursday, the backup tape that

8    was used on Tuesday has been obliterated and recycled.

9          Is that what you mean?

10         MS. HONG:  The backup tapes that have been created

11   after September 25th, 2007, have not been recycled.

12         THE MAGISTRATE JUDGE:  So they are sitting

13   somewhere, and there's no doubt in anyone's mind that you

14   will preserve those and you will not recycle them.

15         MS. HONG:  As we have indicated to Plaintiff on

16   numerous occasions.

17         THE MAGISTRATE JUDGE:  All right, but you see

18   Plaintiff's problem.  She wants to know about all these

19   other backup tapes that are in existence that are somewhere

20   in that office that came into existence before

21   September 25th, 2007.  And what I thought she was trying to

22   get with her letters was an assurance from you that whether

23   or not they are subject to the FRA, they will be preserved

24   so that her lawsuit doesn't become an academic exercise.

25   Because they will be the only depository of that which is --

1    it may be gone.  And therefore, you will keep them.

2            In a sense, the same obligation I would at least

3    consider imposing on ordinary civil litigants before me.

4    All right, don't destroy that stuff just yet.  I don't know

5    if they're entitled to it, I don't know if they'll ever get

6    near the backup tapes, but there's no reason to worry about

7    that.  All we got to do is put them in a separate drawer so

8    they can't be recycled.  Are you willing to do that?

9            MS. HONG:  We have represented to the Plaintiff

10    that all of the backup tapes, or the disaster recovery

11    tapes, in the Office of Administration's possession before

12    September 25th, 2007, are being and will continue to be

13    maintained during the course of this litigation.

14            THE MAGISTRATE JUDGE:  And they will not be

15    recycled.

16            MS. HONG:  They will not be recycled and have not

17    been recycling -- recycled.

18            THE MAGISTRATE JUDGE:  Does that satisfy you,

19    ma'am?

20            MS. WEISMANN:  No, Your Honor, it doesn't.  I

21    still think -- excuse me -- what we're getting is --

22            THE MAGISTRATE JUDGE:  Why don't you sit down,

23    counsel.

24            MS. WEISMANN:  We're getting a very -- I think if

25    you listen carefully, we're getting a --

1          THE MAGISTRATE JUDGE:  I'm trying to listen

2    carefully.

3          MS. WEISMANN:  -- very narrowly tailored response.

4    Because first of all, let me point out that the Defendants

5    in this case include the others beyond the Office of

6    Administration.  And if I heard correctly, I heard an

7    admission from White House counsel -- from their counsel

8    that there are documents or backup copies in other entities'

9    possession.  So we believe that what they must be

10   accountable here for is the -- whatever backup copies were

11   created from 2003 forward.  And if they have been

12   transferred to contractors, if they've been transferred to

13   other entities with the Executive Office of the President,

14   which is itself a named Defendant here, they must be

15   accountable for them.

16          And I guess my concern, Your Honor, is that what

17   I'm hearing is this very -- what to me sounds like a very

18   narrow representation.  Which, again, comes down to,

19   whatever they physically had in their possession they will

20   continue to preserve, but what they haven't said is, beyond

21   that what's the universe.

22          And I go back to, in our minds there is still not

23   a common understanding of what disaster recovery tapes

24   means.  And when we asked very specifically, what about

25   disks, what about DVDs, what about CDs, we didn't get a

1   straight answer, and that's not a complicated question.

2        THE MAGISTRATE JUDGE:  Well, I think we'd all

3   agree we would put DVDs and CDs in a very different category

4   of disaster recovery tapes.  Disaster recover tapes are what

5   I talk about when Iron Mountain comes here.  The large

6   magnetic tapes on which data is recorded.  CDs and DVDs, I

7   agree -- I think we all agree, do not fall within the

8   definition of disaster recovery tapes.  But you want them

9   preserved as well.

10        MS. WEISMANN:  Well, it's my understanding -- and

11   I have no way to test this unless the government is willing

12   to give me this information -- that some of what we would

13   call disaster recovery tapes may be stored in mediums like

14   DVD that in fact -- I know in the corporate world they are

15   going toward these optical things.  So I'm still talking

16   about what we would call the backup copies that were

17   intended, you know, to be a backup copy in the wake of a

18   disaster where the material is deleted.

19        THE MAGISTRATE JUDGE:  But, you know, but that's

20   not semantic.  That's very different.  The process I'm

21   talking about, the Iron Mountain process, that happens

22   independently of my will as a participant in the network.

23   But as recently as yesterday, to keep the clutter of my

24   e-mail from driving me crazy, I transferred quite a few of

25   the e-mails to a DVD.  Now, I put that away.

1          MS. WEISMANN:  Right.

2          THE MAGISTRATE JUDGE:  But I would not consider

3    that any sort of a backup tape in the same sense that if,

4    God forbid, there was a tragedy here and the court system

5    collapsed, we could still open tomorrow morning because

6    these tapes are in existence.  That DVD doesn't have the

7    same function.  And I would not call it part of a disaster

8    backup tape.  It's a different thing.  I think it's fair to

9    say it is other media designed, intended or capable of

10   preserving information, and you want that preserved, as

11   well.

12          MS. WEISMANN:  What we want preserved is whatever

13   backup media the institution of the Executive Office of the

14   President, through the Office of Administration, is our

15   understanding, uses to preserve data that can be used

16   forensically for discovery recovery.

17          If individuals within the White House create

18   separately their own DVDs, we had not intended that to be

19   encompassed, but I just want to be clear, because I feel

20   like there's been such a reluctance to engage in a dialogue

21   or have information flow, that when we say "tapes," if in

22   fact, as an institutional matter, they automatically back up

23   things in a DVD and it happens beyond the will of any

24   individual, that that would be encompasses, as well.

25          We just want those assurances, or else to be told,

1  "Well, as it turns out, the only medium we use is tapes,"

2  and that's what we've been after.  I'm not asking that every

3  individual within the White House must preserve every copy.

4  And we haven't gotten that kind of assurance.

5          THE MAGISTRATE JUDGE:  Is that clear now?

6          MS. HONG:  You know, I don't know how the White

7  House Defendants could have made more clear --

8          THE MAGISTRATE JUDGE:  Okay.  Maybe -- I've looked

9  at the exchange of correspondence between you.  Is it

10  helpful to look at the -- I assume there's a -- there must

11  be, I know I saw this, so I assume it's correct -- there is

12  an order in here that Defendants proposed?

13          MS. HONG:  There was a proposed order, Your Honor.

14          THE MAGISTRATE JUDGE:  All right.  If we could

15  find that, maybe you could show me where its deficiency is

16  and we could get down to practical cases and talk

17  specifically about what we're going to say and resolve it.

18  Give me a moment.  I'll have to find it.

19          MS. HONG:  You know, I'm thinking that I may not

20  have it.  I'm sorry.

21          THE MAGISTRATE JUDGE:  No, here's the proposed

22  order here.

23          MS. HONG:  No, I know we submitted it.  I'm just

24  not sure I brought the copy with me.

25          THE MAGISTRATE JUDGE:  All right.  Let me read it

1    so we both have it.  Did you want me to -- why don't we take

2    two minutes and get copies for everybody.

3            MS. HONG:  I apologize.

4            THE MAGISTRATE JUDGE:  Get copies of this for

5    everyone.  We'll get a copy for you, counsel.  Just a

6    moment.  Thank you.

7            All right, let's look at the proposed order.

8    Okay.  What I was thinking of doing, since the surest way to

9    destroy a document is have it drafted by a committee, I was

10   thinking of taking a ten-minute recess to see if you can

11   maybe work this out.  If you can, I'll come back.  So why

12   don't we say 2:30, okay?  I'm sure sweet reason will

13   prevail.

14           We'll be in recess till 2:30.  Talk to each other,

15   okay?

16           (Whereupon, a brief recess was taken.)

17           THE CLERK:  We're back on the record, Judge.

18           THE MAGISTRATE JUDGE:  How are we doing?

19           MS. WEISMANN:  Well, Your Honor, speaking for the

20   Plaintiff, we made two proposals, neither of which was

21   accepted.

22           First, we were advised about midway through, that

23   in fact the White House Defendants are both completely

24   unwilling to --

25           THE MAGISTRATE JUDGE:  Why don't you sit down,

1    counsel, so she can --

2            MS. WEISMANN:  Completely unwilling to agree to a

3    Court-ordered -- to a Court order.

4            THE MAGISTRATE JUDGE:  Okay.

5            MS. WEISMANN:  And that we also then proposed what

6    about a stipulation between the parties that's submitted to

7    the Court for _____ and were told that that also was

8    not acceptable.

9            Before that we had proposed some modifying

10   language to our own order to address what we understood

11   their concerns were.  And in addition, the offer they have

12   made and I'm certainly happy to let them explain it, is

13   they're willing to do a declaration _____ that they

14   would provide to us.  And that's unacceptable and I can tell

15   the Court why, but we're happy to _____.  But as I said

16   --

17           THE MAGISTRATE JUDGE:  Why don't you tell me why

18   so I can tell Judge Kennedy.

19           MS. WEISMANN:  Okay.  Really, there's a couple of

20   reasons.  First of all, as we've tried to explain to them,

21   we believe we're talking about the -- we are talking about

22   the body of backup copies that exists throughout the EOP,

23   and it's difficult to imagine what declarant they could get

24   that would have the authority to talk to all that.

25           But I think more significant, Your Honor, we

1    really need something that, if it's not complied with, we

2    have some mechanism to seek relief.  And we also think, Your

3    Honor, just the course of the dealings between the parties

4    on this issue so far really, you know, brings very

5    heightened concerns, you know, that there's so much

6    wordsmithing and parsing going on, we think what's critical

7    this point, we just need a crystal-clear order that both

8    parties understood exactly what it means.

9           And, you know, what I don't want to happen and I'm

10   sure nobody does, is that we have a lot of satellite

11   litigation over this issue.  So we think the best way is

12   through a Court order or, as I said, we're willing to agree

13   to a stipulation that's entered as a Court order . Either

14   way.

15          THE MAGISTRATE JUDGE:  But that's not acceptable

16   to the United States, is that true?

17          MS. HONG:  Yes, Your Honor.  Our position is that

18   the Plaintiff has not presented the predicate case for an

19   order on a temporary restraining order to --

20          THE MAGISTRATE JUDGE:  Okay, well, let's -- I

21   understand your position.  Let me then turn to that issue.

22          We're all agreed that the standards are well

23   articulated in the case law of this jurisdiction.  So we

24   have, first of all, likelihood of success on the merits, we

25   have a threat of irreparable harm, we have to ascertain

 1    where the public interest lies.

 2            Now, in terms of irreparable harm and the public

 3    interest, would you concede that obviously if information is

 4    destroyed that is at the very heart of a lawsuit, that the

 5    harm threatened, at least, to the Plaintiffs is irreparable

 6    and that there is a public interest in its preservation at

 7    least until Judge Kennedy can act?

 8            MS. HONG:  And there is no harm threatened here,

 9    Your Honor.  The Defendants have made the representation

10    that it would preserve and maintain the backup tapes or the

11    disaster recovery tapes that were in existence as of

12    September 25th, 2007.  In our discussions, we offered to

13    provide a declaration to that effect.  The Office of

14    Administration maintains possession and control --

15            THE MAGISTRATE JUDGE:  Counsel, can I ask you

16    something?  What's so terribly significant about

17    September 27?  Admittedly, the Federal Rules of Civil

18    Procedure as amended direct our attention to the

19    commencement of the lawsuit.

20            But at common law, as the many cases on spoliation

21    indicate to us, parties have a common law responsibility to

22    preserve what may be evidence.  So it would follow, then,

23    that electronic evidence that came into existence prior to

24    the inception of this lawsuit may nevertheless have to be

25    preserved at the risk of there being spoliation.

 1              Do you disagree with that?

 2              MS. HONG:  In all of the evidence that was in

 3    existence at that time -- we're not stating that we will

 4    preserve only those tapes that came into existence on

 5    September 25th going forward.  But all of those tapes that

 6    were in the Office of Administration's possession or custody

 7    or control will be maintained throughout the pendency of

 8    this litigation.

 9              THE MAGISTRATE JUDGE:  But you won't agree to that

10    in a stipulation.

11              MS. HONG:  What we would be willing to agree to is

12    offer a declaration, signed under penalty of perjury, that

13    would, as in the other cases in which Plaintiff litigated,

14    that would moot out the need for any motion for a temporary

15    restraining order.

16              THE MAGISTRATE JUDGE:  Okay --

17              MS. HONG:  Even absent that declaration, though,

18    Your Honor, we believe that the Plaintiff has not made out

19    the predicate --

20              THE MAGISTRATE JUDGE:  Well, let's talk a little

21    about the other predicates.  I think I have your issue on

22    irreparable harm.  How about the public interest?  Wouldn't

23    that be a public interest, at least in terms of conservation

24    of judicial resources?  That this stuff, whatever media it

25    is, would be preserved pending Judge Kennedy's decision?

1          MS. HONG:  Yeah, and based on the representations

2     that Defendants have made, there is no need to again enmesh

3     the Court in that type of determination.

4          THE MAGISTRATE JUDGE:  And finally, on success on

5     the merits.  This may take a bit of time.  I apologize if I

6     keep you up there too long.

7          But as I understand your position, and I hope I'm

8     getting it right, we'd all agree in light of the Circuit's

9     decision in Armstrong versus the Executive Office of the

10    President, that there are two statutes at issue, the

11    Presidential Records Act and the Federal Records Act are

12    mutually exclusive.  It's impossible for a document to be

13    in both places.  It's either one or the other.

14          Plaintiffs contend, nevertheless, that there is

15    an independent statutory responsibility under the Federal

16    Records Act that would pertain to the maintenance of records

17    by this part, section or division within the White House,

18    it's Defendant called the Executive Office of the President,

19    Executive Office of the Present Office of Administration.

20          But as I understand your position from your

21    papers, you drop a footnote and you contest whether those

22    entities are agencies for the purposes of the application of

23    the Federal Records Act.  Is this a true statement of your

24    position?

25          MS. HONG:  For the Office of Administration

1   specifically.  The Office of Administration does not fall

2   within the definition of agency as used in the FRA.  Yes,

3   Your Honor.

4              THE MAGISTRATE JUDGE:  Well, and that's what

5   concerns me.  Because I found Judge Richey's decision in

6   1995, in which he stated, quotes, "In a related case,

7   Armstrong v. Executive Office of the President --" for

8   purposes of the record it should note that I'm reading from

9   876 Fed. Sup., 1300, what's said to be page 3 here in the

10  Lexis copy of this.

11             I read again, "In a related case, Armstrong versus

12  Executive Office of the President --" delete citations --

13  "this Court held that electronic records created by the

14  agency components of the Executive Office of the President

15  are subject to the Federal Records Act and enjoin the

16  archivist to take all necessary steps to preserve the

17  electronic federal records generated by the executive

18  agencies in this system."  Then he goes on to say, "This

19  injunction did not apply to presidential records that are

20  subject to the Presidential Records Act rather than the

21  FRA."

22             When I read that along with the Court of Appeals'

23  decision in Armstrong versus the Executive Office of the

24  President, isn't it fair to say that at least Plaintiffs

25  have some likelihood of success upon prevailing upon their

1    contention that the two Defendants here, the Executive

2    Office of the President, the Executive Office of the

3    President's Office of Administration, are in fact agencies

4    subject to FRA?

5         MS. HONG:  No, I think if you look at the specific

6    claims that are at issue for the temporary restraining order

7    here, Counts 1 through 4, they claim there that the head of

8    the agencies as well as the archivist has failed in their

9    what they call a mandatory duty to initiate action to

10   recover perhaps missing or deleted records.  Those statutes,

11   by their terms, apply to the head of the agencies or to the

12   archivists, not necessarily to the agencies in toto.

13        To the extent that there are obligations for

14   agency components of the Executive Office of the President

15   to maintain records under the Federal Records Act, certainly

16   we would agree that the Federal Records Act does apply to

17   certain agencies within the Executive Office of the

18   President.  There is currently ongoing litigation, however,

19   about whether the Office of Administration falls within the

20   definition of an agency within the meaning of the FRA.

21        THE MAGISTRATE JUDGE:  Current ongoing

22   administration, is that the case before Judge Penn?

23        MS. HONG:  No, Your Honor.

24        THE MAGISTRATE JUDGE:  The case before Judge Penn

25   involves what agency or component of the President's Office?

1          MS. HONG:  The case before Judge Penn involved the

2     Department of Homeland Security.

3          THE MAGISTRATE JUDGE:  Oh, that's right.  I

4     thought that involved the Secret Service, is that --

5          MS. HONG:  And the Secret Service, you're correct.

6          THE MAGISTRATE JUDGE:  And Armstrong versus the

7     EO, Executive Office of the President, involved the National

8     Security Council.

9          MS. HONG:  As one of the agency components of the

10    Executive Office of the President, although --

11         THE MAGISTRATE JUDGE:  But again, is Judge Richey

12    wrong in his interpretation of FRA?  This Court held that

13    electronic records created by the agency components of the

14    Executive Office of the President are subject to the Federal

15    Records Act.  Are not the Executive Office of the President

16    Office of Administration, is that not an agency component to

17    which Judge Richey was referring?

18         MS. HONG:  The agencies within the Executive

19    Office of the President include, for example, OMB or CEQUA.

20    The Office of Administration, however, is not one of those

21    agencies that falls within the definition of an agency

22    within the meaning of the FRA.

23         THE MAGISTRATE JUDGE:  In the cases before the

24    Court of Appeals and Judge Richey's decisions, there was

25    specific reference to the statutes that created NSC in terms

1   of attempting to understand what the Court of Appeals called

2   whether they had independent statutory responsibility.

3   Where would I find the statutory definition of the

4   responsibilities of the Executive Office of the President,

5   the Office of Administration?

6           MS. HONG:  If you hold on one moment, Your Honor.

7   If I may?

8           THE MAGISTRATE JUDGE:  Well, I didn't mean to put

9   you on the spot, but is it congressionally created or was it

10  created by the president pursuant to a CFR.  From where does

11  it draw its authority?

12          MS. HONG:  I haven't had an opportunity to review

13  all of those materials --

14          THE MAGISTRATE JUDGE:  All right.

15          MS. HONG:  -- and I can confer with my counsel

16  here, if you would like.  You know --

17          THE MAGISTRATE JUDGE:  But the point I'm trying to

18  make is Judge Richey's decision, as the man who, after all,

19  decided Armstrong versus EOP, is that the agency components

20  of the EO, the Executive Office, are subject to the FRA.

21          MS. HONG:  Right, and the agency components, to

22  the extent they are agencies within the meaning of the

23  Federal Records Act.  We wouldn't contest --

24          THE MAGISTRATE JUDGE:  But he said agency -- but

25  he said agency components.  Did he mean something different?

1          MS. HONG:  Because the Federal Records Act defines

2    what an agency is, I don't -- you know, I'm not sure what

3    Judge Richey meant, but to be consistent with the statute he

4    would have meant, or he would have had to mean agencies

5    within the meaning or that fell within the definition of the

6    Federal Records Act.

7          THE MAGISTRATE JUDGE:  If the Executive Office

8    of the President is not an agency, who would bear the

9    responsibility for compliance with the FRA?  Within the

10   Executive Office.

11         MS. HONG:  Right, and just to make clear, we're

12   not contending that the Executive Office of the President is

13   not necessarily an agency within the meaning of the Federal

14   Records Act.  It's that the Office of Administration does

15   not fall within the definition of agency within the FRA.

16         THE MAGISTRATE JUDGE:  But if they're not doing

17   it, who will do it?

18         MS. HONG:  No, and the Executive Office of the

19   President does have agency components, including OMB, for

20   example, or CEQUA, and those agencies, the head of those

21   agencies and the Office of Administration maintains custody

22   and possession and control over, in this instance, the

23   disaster recovery tapes for e-mails generated from those EOP

24   components.  Accordingly, the Office of Administration has

25   made the representation that all of the disaster recovery

1  tapes in its possession as of September 25th, 2007, are

2  being maintained.

3       I think that Judge Richey's order in the first

4  Armstrong case, the 807 F. Sup., 816 case decided in 1992,

5  is instructive for our purposes here.  There, the Court's

6  order, understanding the certain narrow and emergency relief

7  that was requested in the temporary restraining order

8  motion, there Judge Richey ordered, "Defendants hereby are

9  directed and ordered from this day forward to preserve all

10  the current and existing computer backup tapes in their

11  custody as of the date of this order or hereafter created

12  from the electronic communication systems.  It is further

13  ordered that the Defendants are not to write over, erase or

14  destroy any of the information on the aforementioned tapes."

15       Defendants here, the Office of Administration, has

16  provided to Plaintiff precisely that representation.  Has

17  offered to provide that information in a declaration.  And

18  Plaintiff has found that inadequate.  To the extent that

19  they seek the Court to exercise its emergency powers here,

20  they have provided not a shred of evidence indicating that

21  irreparable harm would accrue, particularly in light of the

22  representations that the Defendants have made.

23       THE MAGISTRATE JUDGE:  But I think you'd have to -

24  - as I understand what they're saying is, there is still a

25  possibility that without a Court order that may happen.  And

1   since the burden on you is not that great; indeed, it is no

2   greater than the burden you are willing to undertake, then

3   how can you say that the public interest is not advanced by

4   doing that.

5           I mean, if the TRO standards are, as we know,

6   an ever-sliding calculus, the burden to you is either

7   nonexistent, because you say you're willing to undertake it,

8   or infinitesimal.  There is at least a complicated legal

9   issue with reference to whether or not the Office of

10  Administration is an agency subject to FRA.  There is no

11  downside risk to the public interest by the preservation.

12  Haven't they made out their case for a TRO?

13          MS. HONG:  No, the legal standard requires that

14  Plaintiff present a convincing presentation or persuasive

15  demonstration that irreparable is likely, and it's not only

16  likely but it will and imminently occur.  Based on

17  Defendants' representations to the Plaintiff and its further

18  assurances to provide what is more than -- what is required

19  more than under the law, by providing a declaration,

20  Plaintiff has simply not made out a case at all for the

21  issuance of a temporary restraining order, because they have

22  provided no evidence and they can't provide evidence based

23  on Defendants' representations that irreparable harm would

24  accrue to them.

25          THE MAGISTRATE JUDGE:  Thank you.  Counsel?

 1          MS. WEISMANN:  I'd like to start off by talking

 2    about what we still don't know, because I think that's

 3    important on the relief issue and on the merits of our

 4    request for relief.  With all of the words that have been

 5    exchanged with the Court today, we still do not know what

 6    the body of existing backup recovery tapes, whether we call

 7    them disaster recovery tapes or backup tape -- I mean,

 8    assuming we mean the same thing, we don't know what they

 9    are.  All we have are representations about what is in the

10    OA's custody and control.  And as we have explained to them,

11    in trying to craft a stipulated order, that the relief we

12    are seeking is broader than that.

13          Unless they can tell us that any and all copies,

14    if they exist, would only be there, and they haven't been

15    willing to say that.  This is not a suit brought only

16    against the Office of Administration.  They have not been

17    willing to tell us, for example, if tapes were transferred

18    off-site to contractors, et cetera.  You made reference to

19    the fact that the tapes for the courthouse are stored off-

20    site.  It is just not simply -- it's not true, Your Honor,

21    it's simply not true that they have provided adequate

22    assurances.  And that alone, we think, is enough for our

23    relief.

24          I want to, without sort of being too piecemeal

25    about this, I want to address the issue that was in the

1    Armstrong Court that counsel has asked this Court to use as

2    a model.  The factual setting was very different, and I

3    think that's critical.  Armstrong came about because there

4    was about to be a presidential transition.  And the concern

5    was not what had happened in the past, but the fact, the

6    likelihood that in the course of that transition records

7    would get lost.  And that is why the emergency relief that

8    was sought and awarded was prospective going forward.

9          We have a very different case, Your Honor.  As you

10   know, our lawsuit is premised on what has happened, in part,

11   over the last three years.  The fact that millions of e-mail

12   have been deleted from White House servers, the fact that

13   the White House has refused to take steps to recover those

14   tapes, to preserve, restore those tapes.  The fact that to

15   this date the White House still does not have an appropriate

16   and effective electronic record-keeping system.  That's what

17   the core of our lawsuit is about.  It's a very, very

18   different factual situation than Armstrong, which is why we

19   don't think the same order is appropriate here.

20          I also want to talk a little --

21          THE MAGISTRATE JUDGE:  How would it be improved,

22   in your point of view?

23          MS. WEISMANN:  I think, again, it can't -- it has

24   -- well.  Looking from our language, I mean, it just has to

25   say everything that's in their possession, custody and

1    control as of a date-certain will be preserved.  And just

2    to be, you know -- so let me tell you what exactly it is,

3    looking at our order, the tweaks that we had proposed.

4         One was that in the fourth line, it says "Archival

5    condition backup copies in existence as of --" and the date

6    that we would propose is September 5th, 2007, the reason

7    being that the National Security Archive has also filed a

8    lawsuit also before Judge Kennedy.  Their lawsuit was filed

9    on September 5th.  So that seems the appropriate date to

10   begin with.

11        We would include language that says that this

12   obligation applies to any and all copies in the possession,

13   custody or control of any and all of the White House

14   Defendants.

15        And finally, Your Honor, we would want language

16   at the end that makes it clear that by agreeing to that date

17   the Plaintiff reserves the right to seek relief for any

18   destruction of backup tape or documents that occurred prior

19   to that date.

20        But those are the minor -- what I think are

21   relatively minor tweaks.  And then I think we have an order

22   that I think appropriately provides us the kind of relief

23   we're seeking here, so we can litigate and get to the

24   merits.

25        And I just want to make a -- Your Honor had

1  started out with Judge Penn's order.  I'm counsel of record

2  in that case.  I'm also counsel of record in the Office of

3  Administration case, which is before Judge Kollar-Kotelly.

4  That's the case that raises the issue of the OA status as an

5  agency.  So I'm pretty well versed in those arguments and

6  would be happy to answer your questions.

7         But Judge Penn's case, again, was a very different

8  case.  We were sort of in the midst, you know, ongoing

9  litigation when a document that the government filed raised

10 a concern to us that they were not preserving documents.

11 We brought a motion.  And what happened there, we had

12 argument, the Judge -- I mean, there's a written transcript,

13 so what I'm saying is reflected in the transcript.  The

14 Court was very concerned that the government had not

15 provided any proof, they wanted to rest simply on the

16 statements of counsel.  Once the government offered sworn

17 declarations -- and there was an order that accompanied them

18 -- we did agree voluntarily that the case was moot.

19         I mean, the concern we have here, as I said

20 earlier, however, is that we just feel like there's been so

21 much wordsmithship and narrowness, and just on a real basic

22 level a refusal to provide sort of basic information, that

23 we just -- we feel that a Court order is critical.

24         And I would say that in the case before Judge

25 Penn, the other thing that was so different than here is we

1    knew exactly what they were talking about.  They came in

2    with declarations that said, "These are all the records we

3    have, and this is where they're being preserved and how

4    they're being preserved."  And in fact, every time in that

5    case that the Secret Service or one of its components has

6    discovered new records, they have come into Court with a new

7    declaration, making it clear this is what's in existence.

8         Here we can't even get the most basic explanation,

9    even if we have an order, of what that's going to cover, and

10   we think that would be critical.  We think everybody needs

11   to know what are their obligations and, you know, are they

12   complying with them.

13        On the merits, I think -- to answer some of your

14   questions about the Office of Administration.  It was

15   created by President Carter by an executive order.  It's a

16   creation of executive order.  And since its inception, it

17   has always acted as an agency.  Until our litigation it has

18   had a whole FOIA scheme, it published regulations.  If you

19   went to the White House web site, until quite recently, it

20   in fact said very expressly that the Office of

21   Administration is an agency.  It listed it along with the

22   EQ101B.

23        But, Your Honor, I don't even think you need to

24   delve too deeply into that issue, because whether or not the

25   Office of Administration is an agency, we're talking about

1    records that include federal records, and the government

2    can't deny that.  The problem is, they're commingled.

3    Unlike the Clinton administration, which had an effective

4    electronic record-keeping system called ARMS, which dumped

5    things in buckets, either it was a federal record or a

6    presidential record, this administration has dumped them in

7    servers, they're all commingled.  So whether or not the

8    Office of Administration is an agency, it can't be denied

9    that the missing e-mails include federal records and that

10   the backup tape include federal records. So I think in some

11   respects it's sort of a red herring to go down that road.

12          I'd be happy to answer any questions you have on

13   the merits.

14          THE MAGISTRATE JUDGE:  I mean, I think you've

15   answered all of them.  What I would like you to do, if you

16   would, is, if you'd be so kind, is, in light of today's

17   discussion, if you wanted to send me a revised proposed

18   order by e-mail, I'd like to take a look at it.

19          MS. WEISMANN:  Yes, I will do that this afternoon,

20   Your Honor.  Thank you.

21          THE MAGISTRATE JUDGE:  Anything else?

22          MS. HONG:  I just want to address one of the first

23   points that Ms. Weismann raised, which was her concern that

24   there are disaster recovery tapes or other tapes outside of

25   the Office of Administration's custody, possession or

1   control that are relevant to this lawsuit.  The Office of

2   Administration has made the representation that it will

3   maintain and preserve all backup tapes in its possession,

4   custody or control, which include all the relevant disaster

5   recovery tapes.

6          THE MAGISTRATE JUDGE:  Yes, I don't know, and

7   obviously would have no way of knowing whether the model we

8   used here is the same one used there.  I don't know if they

9   off-site.

10          MS. HONG:  Unless you have any further questions,

11  (inaudible) Your Honor.

12          THE MAGISTRATE JUDGE:  No, I don't.  I just would

13  be, frankly, very surprised if they didn't go off-site.

14  That's why you send them off-site, so in the event of a

15  disaster you can (inaudible).  Okay.  Thank you very much.

16  I appreciate your _____ answer.

17          I take it that in the next couple of days, as I

18  formulate what I'm going to do for Judge Kennedy, thee will

19  be no destruction.  I have your assurance that nothing will

20  change, is that true?

21          MS. HONG:  The representations we have made remain

22  true, that the Office of Administration will maintain and

23  will continue to maintain for the pendency of this

24  litigation the disaster recovery tapes that were in

25  existence as of September 25th or September 5th, 2007.

1        THE MAGISTRATE JUDGE:  Thank you.

2        MS. WEISMANN:  Your Honor, I don't mean to be

3   difficult here, but can we take that to mean anything within

4   the custody, possession or control of the White House

5   Defendants?

6        THE MAGISTRATE JUDGE:  That's the way I'm

7   interpreting it, yes.  I mean, all I can do here is resort

8   to ordinary principles in the interpretation of the Federal

9   Rules of Civil Procedure.  And they have, since 1938, been

10  interpreted to extend to information or documents which are

11  a party's possession, custody or control.

12        MS. WEISMANN:  But I just wanted to --

13        THE MAGISTRATE JUDGE:  So I give notice that I

14  interpret those words in the same exact way.

15        MS. WEISMANN:  Okay.  And for all the White House

16  Defendants and not (inaudible).

17        THE MAGISTRATE JUDGE:  For all the Defendants in

18  this case, yes.

19        MS. WEISMANN:  Thank you.

20        THE MAGISTRATE JUDGE:  Until I rule.  That's my

21  understanding.  If I'm mistaken in that understanding, I

22  expect somebody to tell me very soon.  Thank you.

23        The Court will be in recess.

24        (Whereupon, proceedings were concluded)

UNITED STATES OF AMERICA )
                        ) Civil Action No. 07-1707
DISTRICT OF COLUMBIA    )

      I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

_____
PAUL R. CUTLER

      I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

_____
BONNIE FURLONG