# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
          )
          Plaintiff, )
          )
          v. )      Civil No. 1:07cv1707 (HHK) (JMF)
          )
EXECUTIVE OFFICE OF THE )
PRESIDENT, et al., )
          )
          Defendants. )
_____)

## PLAINTIFF'S MOTION
## FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY
## AND TO COMPEL RULE 26(f) CONFERENCE

Pursuant to Rules 26(d) and 34(b) of the Federal Rules of Civil Procedure, plaintiff Citizens for Responsibility and Ethics in Washington hereby moves the Court to enter an order granting plaintiff leave to conduct expedited discovery. Plaintiff also moves the Court to compel the defendants to meet and confer as Rule 26(f) of the Federal Rules of Civil Procedure requires. As grounds for this motion, the Court is respectfully referred to the attached memorandum of points and authorities.

Pursuant to LCvR 7(m), counsel for plaintiff contacted counsel for defendants and left a voice-mail message requesting defendants' position on this motion. Plaintiff has not heard back from defendants' counsel.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)

1

Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20530
Phone:  (202) 408-5565
Fax:  (202) 588-5020

Attorneys for Plaintiff

Dated:  October 26, 2007

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND   )
ETHICS IN WASHINGTON,             )
                                  )
           Plaintiff,                )
                                  )
          v.                        )       Civil No. 1:07cv1707 (HHK) (JMF)
                                  )
EXECUTIVE OFFICE OF THE           )
PRESIDENT, et al.,                )
                                  )
          Defendants.               )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY[1] AND MOTION TO COMPEL RULE 26(f) CONFERENCE

### STATEMENT

Through this lawsuit CREW[2] seeks to preserve for history the records of the Bush

presidency. The historical importance of a president's records cannot be gainsaid; they offer

invaluable insight into the decisions of a president and his administration and remain relevant

long after a president leaves office. Books about our earliest presidents continue to be best-

sellers and often are based on treasure troves of information mined from their letters and papers.

With a year left in the Bush presidency and great uncertainty about the status of his

---

[1] On this same date the National Security Archive will also be filing a motion for leave to serve expedited discovery requests in a lawsuit virtually identical to this one, The National Security Archive v. Executive Office of the President, Civil No. 07-1577 (HHK). The discovery that the National Security Archive will seek is identical to the discovery CREW is seeking here. Given the pending unopposed motion to consolidate the two cases, CREW requests that the Court consider the two motions together and grant both CREW and the National Security Archive leave to conduct expedited discovery of the defendants.

[2] CREW is the acronym for plaintiff Citizens for Responsibility and Ethics in Washington.

records, CREW hereby requests leave to conduct expedited targeted discovery while there is still time to take action to prevent further record destruction and ensure that the greatest number of records are preserved. Specifically, CREW seeks to ascertain with more precision the universe of email records deleted from White House servers, the universe of still-existing back-up copies that could be used to restore the deleted records and to obtain documents created by defendant Office of Administration when it discovered the missing emails, which would assist the Court in determining what needs to be preserved on an interim basis. All this discovery has one goal: preserving the records of this presidency for their rightful owner, the American people.

Plaintiff had hoped, through the vehicle of a Rule 26(f) conference, to work with the defendants to, among other requirements of the rule, develop a proposed discovery schedule an discuss further issues related to preserving discoverable information. While this would not have eliminated the need for the expedited discovery requested here, it may have helped narrow the issues for discovery and any discovery disputes. Defendants, however, have refused to meet as Rule 26(f) requires.

## BACKGROUND

On September 25, 2007, CREW filed its eight-claim complaint in this action against the Executive Office of the President ("EOP"), the Office of Administration ("OA") and its director, the National Archives and Records Administration ("NARA") and the archivist. The complaint challenges as contrary to law the knowing failure of the defendants to recover, restore and preserve millions of email records created and/or received within the White House and the failure of the archivist and head of OA to take enforcement action to ensure adequate preservation of all federal records. Complaint, ¶ 1. Plaintiff also seeks an order compelling the

defendants to implement an adequate electronic records management system in compliance with federal law.  Id. at ¶ 2.  This complaint is nearly identical to a complaint filed on September 5, 2007, by the National Security Archive against the same defendants, The National Security Archive v. Executive Office of the President, Civil No. 07-1577 (HKK) (D.D.C.).

The factual background to the complaint includes the OA's discovery in October 2005 that millions of email records covering a two and one-half year period were missing from White House servers where they had been dumped for archival storage, id. at ¶¶ 32-34, a discovery the White House has not denied.  After analyzing the problem and determining the extent of the missing emails, the periods of time covered by the missing emails and the Executive Office of the President ("EOP") components from which the missing emails originated, the OA developed a recovery plan that called for restoring the deleted emails from then-existing back-up tapes.  Id. at ¶ 36.  The White House, however, never implemented this plan or any other; to date, the White House has failed to restore any of the deleted emails.  Id. at ¶¶ 36, 39.  As a result, the back-up copies created by the White House are the only repository for the deleted emails.  Id. at ¶ 41.  Those tapes contain both presidential and federal records in a commingled form.  Id.

The deleted emails had been stored on White House servers as a substitute for the previous electronic record-keeping system in place, ARMS ("Automated Records Management System").  Complaint, ¶ 32.  There were and continue to be no controls in place to protect against anyone with access to the servers altering or destroying the electronic records stored on these servers.  Id.  Despite the expenditure of significant sums of money and the development of several electronic record-keeping management systems to replace ARMS, the White House has

to date failed to implement an appropriate and effective electronic records management system. Id. at ¶¶ 36-40.

Contemporaneously with filing this lawsuit CREW sent a letter to the OA seeking assurances that all back-up copies of the deleted records would be preserved pending the resolution of this litigation. When the OA's counsel refused to provide those assurances,[3] CREW sought a temporary restraining order ("TRO") to compel the defendants to preserve all back-up copies.

On October 17, 2007, the matter was heard by United States Magistrate Judge John Facciola, who issued a report and recommendation on October 19, 2007, recommending that this Court enter the requested TRO. Judge Facciola concluded that absent this relief, CREW will suffer irreparable harm; as he noted, the threat that back-up media would be destroyed "is a text book example of irreparable harm." Report and Recommendation, October 19, 2007, p. 2. He further found that the public interest favored preservation "since the e-mails at issue may have historical and public importance." Id. Finally, Judge Facciola weighed the irreparable harm to CREW, the absence of harm to the defendants and the "substantiality of the legal questions presented" to conclude that the TRO should be issued. Id. at 4-5. In particular on the merits of the defendants' claim that the OA is not an agency and therefore not subject to the requirements of the Federal Records Act, Judge Facciola found that after reviewing the briefs presented in another case on this issue, "I certainly cannot say that CREW has no likelihood of prevailing on

---

[3] Among other things, the White House defendants refused to explain what they meant by "disaster recovery tapes," to what extent they included back-up copies stored on other mediums such as CD ROMs and disks, the time-frame covered by the disaster recovery tapes they were agreeing to preserve, and whether or not they had already transferred custody, possession or control of any back-up copies to other non-EOP entities.

that issue." Id. at 4.  On October 23, 2007, the defendants filed objections to this report and recommendation.

On October 18, 2007, CREW sent a letter to defendants' counsel requesting that, pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, counsel provide CREW with dates and times on which she is available to confer.  Letter to Helen H. Hong from Anne L. Weismann, October 18, 2007 (attached as Exhibit 1).  The letter noted that Rule 26(f) directs the parties to confer "as soon as practicable" and suggested any time during the entire week of October 22 through 26 for holding such a conference.  Id.

On the evening of October 22, 2007, defendants' counsel sent an email response to this letter which stated in pertinent part:  "we are currently considering your request[] and we will be in touch soon."  Email from Helen Hong to Anne Weismann, October 22, 2007 (attached as Exhibit 2).  The following day CREW sent an email to defendants' counsel requesting, pursuant to Rule 26(f), that counsel advise CREW by close of business October 25 "whether you will be able to meet either this week or next . . "  Email from Anne Weismann to Helen Hong, October 23, 2007 (attached as Exhibit 3).  Defendants's counsel never responded to this email or otherwise advised CREW of her availability to meet.

## ARGUMENT

### I.  EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE TO ENSURE THE GREATEST POSSIBLE PRESERVATION OF THE RECORDS OF THE BUSH PRESIDENCY.

As with any civil litigation, this Court has broad discretion on whether and particularly what discovery CREW should be granted.  See, e.g., SafeCard Servs., Inc. v. Securities and Exchange Commission, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  That discretion includes the

ability to expedite discovery.  <u>Ellsworth Associates, Inc. v. U.S.</u>, 917 F.Supp. 841, 844 (D.D.C.

1996).  "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief

because of the expedited nature of injunctive proceedings."  <u>Id.</u>  Moreover, where, as here, "one

party has an effective monopoly on the relevant information" the need for discovery is especially

acute.  <u>Founding Church of Scientology v. National Security Agency</u>, 610 F.2d 824, 833 (D.C.

Cir. 1979).

    While the courts are split as to the standard that a party seeking expedited discovery must

satisfy,[4] the courts in this district generally apply a good cause standard.  <u>See</u>, <u>e.g.</u>, <u>Ellsworth</u>

<u>Associates, Inc.</u>, 917 F.Supp. at 844.  Under that standard, a litigant is entitled to expedited

discovery unless the opposing party can show good cause for why discovery should be denied.

<u>Id.</u>  Moreover, a party's need for timely information constitutes good cause to grant a request for

expedited discovery.  <u>Whitkop v. Baldwin</u>, 1 F.R.D. 169 (D. Mass. 1939); <u>Optic-Electronic</u>

<u>Corp. v. U.S.</u>, 683 F.Supp. 269, 271 (D.D.C. 1987).

    Here, expedited discovery is warranted under either standard based on the compelling

and urgent need to ensure the greatest possible preservation of the records of President Bush.  As

even the White House admits, at least five million email records generated over at least a two

and one-half year period from multiple components of the EOP are missing.  The missing

electronic records span critical years of the Bush presidency, from the United States' invasion of

Iraq to Hurricane Katrina and the administration's formulation of a position on global warming.

---

[4] Some courts apply the same standard as that required to obtain a preliminary injunction,
<u>see</u>, <u>e.g.</u>, <u>Notaro v. Koch</u>, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), while other courts apply a
"reasonableness" or "good cause" standard.  <u>See</u> <u>Special Situations Cayman Fund v. Dot Com</u>
<u>Entertainment Group, Inc.</u>, 2003 U.S. Dist. LEXIS 25083 *5 (W.D.N.Y. 2003).

Plaintiff's request for a TRO was premised on the urgent need to ensure preservation of all back-up copies of the deleted emails pending resolution of this lawsuit because without this assurance, plaintiff and the public risk losing access to this important body of historical documents.  As Judge Facciola recognized, if the only remaining copies of these records are not preserved this lawsuit becomes essentially an academic exercise.  Transcript of Motions Hearing Before the Honorable John M. Facciola, October 17, 2007, p. 6 (attached as Exhibit 4).

While the preservation order recommended by Judge Facciola protects against the loss of valuable historical records, it leaves unanswered critical questions that cannot be answered without additional factual inquiry.  Most fundamentally, the White House defendants have refused to identify anything about the still-existing body of back-up copies, including what time period they cover, the extent to which they contain any of the missing emails and whether there are other copies beyond what the defendants have referred to as "[d]isaster recovery tapes relating to the official, unclassified Executive Office of the President email system."[5]  Nor have the White House defendants identified the precise number of deleted emails and the extent to which back-up copies of the deleted emails were destroyed prior to September 2007.  This missing information is crucial in determining the extent to which the missing email records can be reconstructed and therefore the extent to which the plaintiff can be afforded full and effective relief.

This information is also very time-sensitive.  In just 14 months there will be a new administration and there is no assurance that in the ensuing transition copies of deleted emails

---

[5] Defendants' Local Rule 72.3(b) Objections to Report and Recommendations on Plaintiff's Motion for a Temporary Restraining Order ("Ds' Objections"), p. 2 n.1.

and other documents necessary or useful to restoration will be preserved.[6]  These same concerns led the court in Bush v. Armstrong to enter a TRO at the end of the Reagan administration as well as a TRO at the close of the Bush administration in 1992.  See 807 F.Supp. 816, 820 (D.D.C. 1992) ("[I]f records are erased at the end of the Bush Administration, the public's right to access the subject records will be irreparably lost and harmed.").  See also Express One Int'l, Inc. v. U.S. Postal Service, 814 F.Supp. 87, 92 (D.D.C. 1992) (recognizing need for quick discovery in light of upcoming transition to new contractor).

Accordingly, it is critical to ascertain what time period is covered by the presently existing back-up copies and, in particular, the "disaster recovery tapes relating to the official, unclassified [EOP] email system."  To the extent this particular set of tapes does not encompass all of the missing emails, it is essential that other copies are preserved, whether or not they were created specifically for disaster recovery efforts and whether or not they are currently in the OA's possession, custody or control.

This information may also reveal the extent to which any of the defendants has already destroyed any back-up copies of the deleted email records or transferred them out of the OA's possession, custody or control.[7]  Separate and apart from the illegality of any such action, it is

---

[6] If defendants have their way, any preservation order will require them to preserve only disaster recovery tapes for the "official, unclassified [EOP] email system" currently in the OA's possession, custody or control, Ds' Objections at pp. 2 n.1, 8, leaving them free to destroy other copies that may exist, including what may be the only remaining copies of deleted emails.

[7] The likelihood that such destruction has already occurred may be inferred from the defendants' opposition to plaintiff's motion for a TRO ("Ds' Oppos."), in which they attach a single exhibit:  a November 5, 1995 schedule authorizing the destruction of backup tapes which contain "records that are duplicated elsewhere for preservation and disposition."  Ds' Oppos., Exhibit 1, p. 4, ¶ 8.  From this the White House defendants argue that the OA "was permitted under the FRA [Federal Records Act] to recycle, or delete, backup tapes 'when 90 days old.'"

critical to ascertain what back-up copies may have been destroyed to determine what additional

steps can and should be taken to replicate those copies before the end of President Bush's term in

office.  These other copies, however, whether in hard drives or other repositories, are only

accessible for the duration of President Bush's term, after which they will be cleaned out for the

incoming president.  Accordingly, it is critical to pinpoint what back-up copies are presently

available and what back-up copies have been destroyed to explore, in the short time that remains,

alternative methods of restoring the millions of deleted email records.

It is also essential to secure the documentation assembled by the OA when it first

discovered the missing email problem in October 2005.  This documentation will shed light on

the scope of the missing email problem and how it can be redressed.  In particular, the recovery

plan that the OA developed after it discovered the deleted emails, which called for restoring the

deleted emails from then-existing back-up tapes, will confirm what back-up copies must

presently be preserved  for a successful restoration effort.  Given the current dispute between the

parties as to precisely what should be preserved to prevent irreparable injury, this document

would streamline the court's processes, would limit or eliminate altogether lengthy satellite

litigation over threshold preservation issues, and would present no hardship for the White House

defendants to produce.

CREW has sought this information under the Freedom of Information Act ("FOIA") and

its FOIA request is the subject of a separate lawsuit, <u>CREW v. OA</u>, Civil No. 07-0964 (CKK)

(D.D.C.), in which the White House has argued that the OA is not an agency and therefore is not

---

Ds' Oppos. at 11.

subject to the FOIA.[8]  The status of these documents as agency or non-agency records for purposes of the FOIA, however, does not place them beyond CREW's reach in this litigation, where they are clearly fair game for discovery.  As highly relevant evidence of the scope of the email problem and what needs to be preserved to ensure the Court's ability to award plaintiff full and effective relief, these documents should be disclosed at the outset of this litigation.

Finally, documents about the architecture of the email storage system that the EOP used between March 2003 and October 2005, the period during which the millions of emails were deleted, and the email storage system currently in use by the EOP (to the extent, if any that it differs) would be enormously useful in sharpening the focus of this litigation, especially as the Court grapples with what preservation obligations it should impose on the defendants.  The White House defendants have made it clear that absent discovery, they will not provide answers to even the most basic questions.  See, e.g., Defendants' Opposition to Plaintiff's Motion for a Temporary Restraining Order, p. 17.  Yet basic information about how the email storage system works will go a long way towards assessing what must currently be preserved and why.  And, as with the recovery plan developed by the OA, production of these documents will not be a hardship for the defendants.

In sum, the backdrop of this case presents compelling reasons why expedited discovery is warranted.  Under this administration's watch, millions of email have gone missing and the White House has done nothing to reconstruct those historically important federal records or take

---

[8] In arguing that it is not an agency subject to the FOIA, the OA reversed the course it has followed since its inception of holding itself out as an agency and complying with all of the FOIA's requirements, including the promulgation of FOIA regulations (found at 5 C.F.R. Part 2502).

steps to prevent further document destruction.  When confronted with requests for information about the missing email problem, the White House has unilaterally removed itself from the public arena altogether by declaring that the OA is no longer an agency subject to government sunshine laws.  In the short life of this lawsuit the White House defendants have refused to give adequate assurances of document preservation, refused to provide basic information and refused to meet with plaintiff's counsel to plan for discovery.  Most recently, in their objections to Judge Facciola's report and recommendation, the defendants have objected to preserving back-up copies under conditions that will permit their eventual use.  Defendants' Objections, p. 7. Clearly the defendants do not share the plaintiff's goal of preserving these documents for future public access.  The defendants' conduct coupled with the risk that critical evidence will not be preserved provide ample support for the limited discovery plaintiff seeks to conduct at this juncture.

## II.  THE COURT SHOULD COMPEL THE DEFENDANTS IMMEDIATELY TO MEET AND CONFER AS RULE 26(f) REQUIRES.

Rule 26(f) of the Federal Rules of Civil Procedure states in clear, unambiguous terms that the parties to a civil lawsuit "must, as soon as practicable" confer on a number of issues, including "the nature and basis of their claims and defenses," to arrange for the initial disclosures that Rule 26(a)(1) requires of the parties, "to discuss any issues relating to preserving discoverable information, and to develop a proposed discovery plan . . ."  The Rule further provides that "[t]he attorneys of record . . . are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan."  Fed. R. Civ. P. 26(f)(6).

Courts interpreting this rule have emphasized that "[t] responsibility for arranging this conference and initiating discovery is placed squarely on the shoulders of the attorneys of record and not on the district court." <u>Scott v. Graphic Communications Internat'l Union</u>, 2004 U.S. App. LEXIS 4979 *3 (3d Cir. 2004). Moreover, "[w]hile Rule 26(f) does not state with precision when such a conference between the parties must occur, it does provide that it should take place 'as soon as practicable' . . ." <u>OMG Fidelity, Inc. v. Sirius Technologies, Inc.</u>, 239 F.R.D. 300, 303 (N.D.N.Y. 2006).

Pursuant to this mandatory obligation, CREW has attempted more than once to arrange for a conference, proposing complete availability within a two-week window of time. To date, however, defendants' counsel has refused to respond substantively to this request, refused to identify her availability to meet and refused to provide alternative dates. This conduct is a complete abrogation of the responsibilities that defendants' counsel shares with plaintiff's counsel under Rule 26(f).

It may be that defendants are attempting to avoid discovery, given the prohibition in Rule 26(d) on conducting discovery prior to the Rule 26(f) conference, absent agreement of the parties or court order. This, of course, would be highly improper, particularly given that one of the purposes that the Rule 26(f) conference is intended to serve is to identify the parties' positions on discovery.

Under these circumstances and particularly in view of the pressing need for discovery and the time-sensitive nature of this lawsuit, as discussed herein, defendants should be ordered to meet and confer immediately with plaintiff pursuant to Rule 26(f), whether or not the Court also grants plaintiff leave to conduct expedited discovery.

## **CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that its motion for expedited

discovery be granted.  Plaintiff further requests that defendants be ordered to immediately meet

with plaintiff pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20530
Phone:  (202) 408-5565
Fax:  (202) 588-5020

Attorneys for Plaintiff

Dated:  October 26, 2007

**EXHIBIT 1**

# CREW | citizens for responsibility and ethics in washington

October 18, 2007

**Via Facsimile and Email**

Helen H. Hong
U.S. Department of Justice
Civil Division
Room 6132
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
Fax:  (202) 616-8460

       Re:  <u>CREW v. EOP, et al.</u>

Dear Helen:

      As mandated by Rule 26(f) of the Federal Rules of Civil Procedure, I write to request that you provide me as soon as possible with dates and times that you are available to confer.  Under the express language of Rule 26(f), the parties are to confer "as soon as practicable" to discuss a variety of issues, including the development of a proposed discovery plan and to make or arrange for the disclosures required by Rule 26(a)(1).

      I am available all of next week (October 22-26) and can meet in-person or am available for a telephone conference.  Given the pendency of the related case, <u>National Security Archive v. Executive Office of the President</u>, Civil No. 07-1577 (HKK), it would be most efficient if counsel in that case were also included in our conference.

      I look forward to your prompt reply.

             Sincerely,

             ANNE L. WEISMANN
             Chief Counsel



**EXHIBIT 2**

## Anne Weismann

**From:** Hong, Helen (CIV) [Helen.Hong@usdoj.gov]
**Sent:** Monday, October 22, 2007 6:53 PM
**To:** Anne Weismann
**Subject:** RE: CREW v. EOP, et al.

Dear Ms. Weismann:

We have received your letter request for a Rule 26(f) conference.  As I explained to Ms. Fuchs for NSA by email earlier today, we are currently considering your requests and we will be in touch soon.

Sincerely,

Helen

**From:** Anne Weismann [mailto:aweismann@citizensforethics.org]
**Sent:** Thursday, October 18, 2007 11:14 AM
**To:** Hong, Helen (CIV)
**Subject:** CREW v. EOP, et al.

Helen, please see enclosed letter.

Anne Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
202-408-5565

This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential.  Any distribution, printing or other use by anyone else is prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete this email and attachments.  Thank you.

# EXHIBIT 3

**Anne Weismann**

**From:**    Anne Weismann
**Sent:**    Tuesday, October 23, 2007 9:18 AM
**To:**      'Hong, Helen (CIV)'
**Subject:** RE: CREW v. EOP, et al.

Helen:  Please advise me by COB Thursday, October 25, whether you will be able to meet either this week or next pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.  As my letter of October 18 explained, Rule 26 (f) imposes on the parties an obligation to meet "as soon as practicable."  Thank you for your prompt response. Anne Weismann

**From:** Hong, Helen (CIV) [mailto:Helen.Hong@usdoj.gov]
**Sent:** Monday, October 22, 2007 6:53 PM
**To:** Anne Weismann
**Subject:** RE: CREW v. EOP, et al.

Dear Ms. Weismann:

We have received your letter request for a Rule 26(f) conference.  As I explained to Ms. Fuchs for NSA by email earlier today, we are currently considering your requests and we will be in touch soon.

Sincerely,

Helen

**From:** Anne Weismann [mailto:aweismann@citizensforethics.org]
**Sent:** Thursday, October 18, 2007 11:14 AM
**To:** Hong, Helen (CIV)
**Subject:** CREW v. EOP, et al.

Helen, please see enclosed letter.

Anne Weismann
Chief Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
202-408-5565

This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential.  Any distribution, printing or other use by anyone else is prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete this email and attachments.  Thank you.

**EXHIBIT 4**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
                                 :
In the Matter of:                :
                                 :
CITIZENS FOR RESPONSIBILITY AND  :
  ETHICS IN WASHINGTON, D.C.     :
                                 :
      Plaintiff,                 :
                                 :
           vs.                   : Civil Action No. 07-1707
                                 :
THE EXECUTIVE OFFICE OF          :
  THE PRESIDENT, et al.,         :
                                 :
      Defendants.                :
                                 : Washington, D.C.
- - - - - - - - - - - - - - - x October 17, 2007


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:        ANNE L. WEISMANN, ESQ.
                          MELANIE SLOAN, ESQ.

For the Defendants:       HELEN HONG, ESQ.
                          JOHN TYLER, ESQ.
                          CARL NICOLS, ESQ.


Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M2085V/bf

P R O C E E D I N G S

THE CLERK:  Civil Case 07-1707, Citizens for Responsibility and Ethics in Washington, D.C., versus the Executive Office of the President, et al.  Anne Weismann for the Plaintiff, Helen Hong for the Defendants.  This is a motions hearing on a temporary restraining order for Ms. Weismann (inaudible).

MS. WEISMANN:  Good morning, Your Honor, and I'm here also with Melanie Sloan, our executive director.

THE MAGISTRATE JUDGE:  Good morning.  Good afternoon, I'm sorry.

MS. HONG:  Good afternoon, Your Honor.  Helen Hong on behalf of the United States Defendants, and along with me are John Tyler and Carl Nicols.

THE MAGISTRATE JUDGE:  Good afternoon.

All right.  I've reviewed the papers here and I was wondering if it is possible at this point to forge a stipulation that would be similar to the stipulation that the late Judge Penn brought about in 2006.

As I understand it -- and this is what confuses me -- is the problem at this point and the difference between you, the difference between backup tapes and disaster recovery backup tapes?  And if so, what is the difference between those two things, if there is a difference.

MS. WEISMANN:  May I address that, Your Honor?

1          THE MAGISTRATE JUDGE:  Please.

2          MS. WEISMANN:  Thank you.  Your Honor, that's one

3   issue, but let me tell you --

4          THE MAGISTRATE JUDGE:  Well, it's the issue I want

5   to talk about right now.

6          MS. WEISMANN:  Right, okay, yes.  Because --

7          THE MAGISTRATE JUDGE:  If you -- let me ask you

8   this.  As your understanding is, we know that effective on

9   September 27 when this lawsuit got started, the government -

10  - I'll use the word as broadly as I can, because there are

11  so many Defendants here -- stopped recycling tapes because

12  of the existence of this lawsuit.  Do you understand that

13  any other backup tapes exist that came into existence before

14  September 27th, 2007, and have not been recycled?  And if

15  that's so, why can't we just put them to one side for the

16  time being?  Would that resolve your concern?

17          MS. WEISMANN:  I am answering your question, but

18  with a little latitude because here's the problem.  What we

19  don't know and what we have been trying to get from the

20  White House Defendants is an explanation of what the

21  existing body of backup tapes and copies are.  And I say

22  "copies" because it's our understand that they may exist in

23  other mediums besides tapes, but all that we have been told

24  is the word "disaster recovery tape," and we don't know if

25  that encompasses these other mediums.

1          And of course there is a disagreement, just so you

2     appreciate, Your Honor, between them saying their only

3     obligation is under the Federal Rules of Civil Procedure and

4     our position, which is by law you are required to preserve a

5     much larger universe of tapes than just what was in your

6     possession as of September 25th.

7          So the only representation that we have today,

8     and this is all I can tell you because this is all that the

9     government has told us, is that whatever they had in their

10    hands as far as disaster recovery tapes on September 25th

11    they will keep, I have no idea what that encompasses.  If it

12    does not encompass all of the backup copies that they have,

13    we say that it is patently deficient.

14         So because -- and I think that is -- we had hoped,

15    Your Honor, and that's why we went back to them again and

16    again, to be able to forge some kind of a stipulation, but

17    we just couldn't get the necessary information.  So I

18    certainly welcome this opportunity if this Court is more

19    successful than we are.

20         THE MAGISTRATE JUDGE:  Let's see.  Let's assume

21    this was the ordinary civil case, Suzie Smith against Joe

22    Blow or something.  All right.  We know, under the amended

23    Federal Rules, parties would be obliged to get together and

24    talk about preservation.  The issue would quickly arise, I

25    suppose, what kind of backup tapes are in existence.  And

1  that's my question to you.  And it's the same question I

2  just asked her.

3         Independently of the backup tapes that were in

4  existence on September 27, 2007, are there other backup

5  tapes that are present in existence and, if they are, would

6  you be willing to preserve those until Judge Kennedy can

7  rule more substantively on the issues presented.

8         MS. HONG:  Sure.  Your Honor, I think --

9         THE MAGISTRATE JUDGE:  "Sure," you will?

10         MS. HONG:  Well, let me address that in two parts.

11  The first is, we have represented what we mean by disaster

12  recovery tapes.  In Exhibit 5 to Plaintiff's motion, we've

13  indicated to Plaintiff that the disaster recovery tapes are

14  the backup tapes to which CREW referred in their first and

15  second letters.  Second, there are additional backup tapes

16  in addition to the ones that were in the Office of

17  Administration's possession on September 25th.

18         We have represented that to the extent that there

19  are backup tapes for e-mails generated by EOP components

20  after September 25th, that those backup tapes are not being

21  recycled and will be maintained by the Office of

22  Administration consistent with its preservation obligations.

23         THE MAGISTRATE JUDGE:  Well, let me -- you can

24  help me here.  Let me tell you what happens in this

25  courthouse.  All right?

1           On Tuesday evening, the backup tapes for our

2   operation on Monday and Tuesday are delivered to IMM and

3   taken from the premises.  On Thursday, the same people come

4   back and bring the tapes they have and exchange them for the

5   ones that have been created for Wednesday and Thursday.

6   That constant recycling process is always going on.  Which

7   leads me to believe that on Thursday, the backup tape that

8   was used on Tuesday has been obliterated and recycled.

9           Is that what you mean?

10          MS. HONG:  The backup tapes that have been created

11  after September 25th, 2007, have not been recycled.

12          THE MAGISTRATE JUDGE:  So they are sitting

13  somewhere, and there's no doubt in anyone's mind that you

14  will preserve those and you will not recycle them.

15          MS. HONG:  As we have indicated to Plaintiff on

16  numerous occasions.

17          THE MAGISTRATE JUDGE:  All right, but you see

18  Plaintiff's problem.  She wants to know about all these

19  other backup tapes that are in existence that are somewhere

20  in that office that came into existence before

21  September 25th, 2007.  And what I thought she was trying to

22  get with her letters was an assurance from you that whether

23  or not they are subject to the FRA, they will be preserved

24  so that her lawsuit doesn't become an academic exercise.

25  Because they will be the only depository of that which is --

1    it may be gone.  And therefore, you will keep them.

2         In a sense, the same obligation I would at least

3    consider imposing on ordinary civil litigants before me.

4    All right, don't destroy that stuff just yet.  I don't know

5    if they're entitled to it, I don't know if they'll ever get

6    near the backup tapes, but there's no reason to worry about

7    that.  All we got to do is put them in a separate drawer so

8    they can't be recycled.  Are you willing to do that?

9         MS. HONG:  We have represented to the Plaintiff

10   that all of the backup tapes, or the disaster recovery

11   tapes, in the Office of Administration's possession before

12   September 25th, 2007, are being and will continue to be

13   maintained during the course of this litigation.

14        THE MAGISTRATE JUDGE:  And they will not be

15   recycled.

16        MS. HONG:  They will not be recycled and have not

17   been recycling -- recycled.

18        THE MAGISTRATE JUDGE:  Does that satisfy you,

19   ma'am?

20        MS. WEISMANN:  No, Your Honor, it doesn't.  I

21   still think -- excuse me -- what we're getting is --

22        THE MAGISTRATE JUDGE:  Why don't you sit down,

23   counsel.

24        MS. WEISMANN:  We're getting a very -- I think if

25   you listen carefully, we're getting a --

1          THE MAGISTRATE JUDGE:  I'm trying to listen

2   carefully.

3          MS. WEISMANN:  -- very narrowly tailored response.

4   Because first of all, let me point out that the Defendants

5   in this case include the others beyond the Office of

6   Administration.  And if I heard correctly, I heard an

7   admission from White House counsel -- from their counsel

8   that there are documents or backup copies in other entities'

9   possession.  So we believe that what they must be

10  accountable here for is the -- whatever backup copies were

11  created from 2003 forward.  And if they have been

12  transferred to contractors, if they've been transferred to

13  other entities with the Executive Office of the President,

14  which is itself a named Defendant here, they must be

15  accountable for them.

16          And I guess my concern, Your Honor, is that what

17  I'm hearing is this very -- what to me sounds like a very

18  narrow representation.  Which, again, comes down to,

19  whatever they physically had in their possession they will

20  continue to preserve, but what they haven't said is, beyond

21  that what's the universe.

22          And I go back to, in our minds there is still not

23  a common understanding of what disaster recovery tapes

24  means.  And when we asked very specifically, what about

25  disks, what about DVDs, what about CDs, we didn't get a

1    straight answer, and that's not a complicated question.

2           THE MAGISTRATE JUDGE:  Well, I think we'd all

3    agree we would put DVDs and CDs in a very different category

4    of disaster recovery tapes.  Disaster recover tapes are what

5    I talk about when Iron Mountain comes here.  The large

6    magnetic tapes on which data is recorded.  CDs and DVDs, I

7    agree -- I think we all agree, do not fall within the

8    definition of disaster recovery tapes.  But you want them

9    preserved as well.

10           MS. WEISMANN:  Well, it's my understanding -- and

11    I have no way to test this unless the government is willing

12    to give me this information -- that some of what we would

13    call disaster recovery tapes may be stored in mediums like

14    DVD that in fact -- I know in the corporate world they are

15    going toward these optical things.  So I'm still talking

16    about what we would call the backup copies that were

17    intended, you know, to be a backup copy in the wake of a

18    disaster where the material is deleted.

19           THE MAGISTRATE JUDGE:  But, you know, but that's

20    not semantic.  That's very different.  The process I'm

21    talking about, the Iron Mountain process, that happens

22    independently of my will as a participant in the network.

23    But as recently as yesterday, to keep the clutter of my

24    e-mail from driving me crazy, I transferred quite a few of

25    the e-mails to a DVD.  Now, I put that away.

1          MS. WEISMANN:  Right.

2          THE MAGISTRATE JUDGE:  But I would not consider

3    that any sort of a backup tape in the same sense that if,

4    God forbid, there was a tragedy here and the court system

5    collapsed, we could still open tomorrow morning because

6    these tapes are in existence.  That DVD doesn't have the

7    same function.  And I would not call it part of a disaster

8    backup tape.  It's a different thing.  I think it's fair to

9    say it is other media designed, intended or capable of

10   preserving information, and you want that preserved, as

11   well.

12         MS. WEISMANN:  What we want preserved is whatever

13   backup media the institution of the Executive Office of the

14   President, through the Office of Administration, is our

15   understanding, uses to preserve data that can be used

16   forensically for discovery recovery.

17         If individuals within the White House create

18   separately their own DVDs, we had not intended that to be

19   encompassed, but I just want to be clear, because I feel

20   like there's been such a reluctance to engage in a dialogue

21   or have information flow, that when we say "tapes," if in

22   fact, as an institutional matter, they automatically back up

23   things in a DVD and it happens beyond the will of any

24   individual, that that would be encompasses, as well.

25         We just want those assurances, or else to be told,

1   "Well, as it turns out, the only medium we use is tapes,"

2   and that's what we've been after.  I'm not asking that every

3   individual within the White House must preserve every copy.

4   And we haven't gotten that kind of assurance.

5         THE MAGISTRATE JUDGE:  Is that clear now?

6         MS. HONG:  You know, I don't know how the White

7   House Defendants could have made more clear --

8         THE MAGISTRATE JUDGE:  Okay.  Maybe -- I've looked

9   at the exchange of correspondence between you.  Is it

10   helpful to look at the -- I assume there's a -- there must

11   be, I know I saw this, so I assume it's correct -- there is

12   an order in here that Defendants proposed?

13         MS. HONG:  There was a proposed order, Your Honor.

14         THE MAGISTRATE JUDGE:  All right.  If we could

15   find that, maybe you could show me where its deficiency is

16   and we could get down to practical cases and talk

17   specifically about what we're going to say and resolve it.

18   Give me a moment.  I'll have to find it.

19         MS. HONG:  You know, I'm thinking that I may not

20   have it.  I'm sorry.

21         THE MAGISTRATE JUDGE:  No, here's the proposed

22   order here.

23         MS. HONG:  No, I know we submitted it.  I'm just

24   not sure I brought the copy with me.

25         THE MAGISTRATE JUDGE:  All right.  Let me read it

1    so we both have it.  Did you want me to -- why don't we take

2    two minutes and get copies for everybody.

3             MS. HONG:  I apologize.

4             THE MAGISTRATE JUDGE:  Get copies of this for

5    everyone.  We'll get a copy for you, counsel.  Just a

6    moment.  Thank you.

7             All right, let's look at the proposed order.

8    Okay.  What I was thinking of doing, since the surest way to

9    destroy a document is have it drafted by a committee, I was

10   thinking of taking a ten-minute recess to see if you can

11   maybe work this out.  If you can, I'll come back.  So why

12   don't we say 2:30, okay?  I'm sure sweet reason will

13   prevail.

14            We'll be in recess till 2:30.  Talk to each other,

15   okay?

16            (Whereupon, a brief recess was taken.)

17            THE CLERK:  We're back on the record, Judge.

18            THE MAGISTRATE JUDGE:  How are we doing?

19            MS. WEISMANN:  Well, Your Honor, speaking for the

20   Plaintiff, we made two proposals, neither of which was

21   accepted.

22            First, we were advised about midway through, that

23   in fact the White House Defendants are both completely

24   unwilling to --

25            THE MAGISTRATE JUDGE:  Why don't you sit down,

1   counsel, so she can --

2            MS. WEISMANN:  Completely unwilling to agree to a

3   Court-ordered -- to a Court order.

4            THE MAGISTRATE JUDGE:  Okay.

5            MS. WEISMANN:  And that we also then proposed what

6   about a stipulation between the parties that's submitted to

7   the Court for _____ and were told that that also was

8   not acceptable.

9            Before that we had proposed some modifying

10  language to our own order to address what we understood

11  their concerns were.  And in addition, the offer they have

12  made and I'm certainly happy to let them explain it, is

13  they're willing to do a declaration _____ that they

14  would provide to us.  And that's unacceptable and I can tell

15  the Court why, but we're happy to _____.  But as I said

16  --

17           THE MAGISTRATE JUDGE:  Why don't you tell me why

18  so I can tell Judge Kennedy.

19           MS. WEISMANN:  Okay.  Really, there's a couple of

20  reasons.  First of all, as we've tried to explain to them,

21  we believe we're talking about the -- we are talking about

22  the body of backup copies that exists throughout the EOP,

23  and it's difficult to imagine what declarant they could get

24  that would have the authority to talk to all that.

25           But I think more significant, Your Honor, we

1  really need something that, if it's not complied with, we

2  have some mechanism to seek relief.  And we also think, Your

3  Honor, just the course of the dealings between the parties

4  on this issue so far really, you know, brings very

5  heightened concerns, you know, that there's so much

6  wordsmithing and parsing going on, we think what's critical

7  this point, we just need a crystal-clear order that both

8  parties understood exactly what it means.

9          And, you know, what I don't want to happen and I'm

10  sure nobody does, is that we have a lot of satellite

11  litigation over this issue.  So we think the best way is

12  through a Court order or, as I said, we're willing to agree

13  to a stipulation that's entered as a Court order . Either

14  way.

15          THE MAGISTRATE JUDGE:  But that's not acceptable

16  to the United States, is that true?

17          MS. HONG:  Yes, Your Honor.  Our position is that

18  the Plaintiff has not presented the predicate case for an

19  order on a temporary restraining order to --

20          THE MAGISTRATE JUDGE:  Okay, well, let's -- I

21  understand your position.  Let me then turn to that issue.

22          We're all agreed that the standards are well

23  articulated in the case law of this jurisdiction.  So we

24  have, first of all, likelihood of success on the merits, we

25  have a threat of irreparable harm, we have to ascertain

1    where the public interest lies.

2            Now, in terms of irreparable harm and the public

3    interest, would you concede that obviously if information is

4    destroyed that is at the very heart of a lawsuit, that the

5    harm threatened, at least, to the Plaintiffs is irreparable

6    and that there is a public interest in its preservation at

7    least until Judge Kennedy can act?

8            MS. HONG:  And there is no harm threatened here,

9    Your Honor.  The Defendants have made the representation

10   that it would preserve and maintain the backup tapes or the

11   disaster recovery tapes that were in existence as of

12   September 25th, 2007.  In our discussions, we offered to

13   provide a declaration to that effect.  The Office of

14   Administration maintains possession and control --

15           THE MAGISTRATE JUDGE:  Counsel, can I ask you

16   something?  What's so terribly significant about

17   September 27?  Admittedly, the Federal Rules of Civil

18   Procedure as amended direct our attention to the

19   commencement of the lawsuit.

20           But at common law, as the many cases on spoliation

21   indicate to us, parties have a common law responsibility to

22   preserve what may be evidence.  So it would follow, then,

23   that electronic evidence that came into existence prior to

24   the inception of this lawsuit may nevertheless have to be

25   preserved at the risk of there being spoliation.

1          Do you disagree with that?

2          MS. HONG:  In all of the evidence that was in

3  existence at that time -- we're not stating that we will

4  preserve only those tapes that came into existence on

5  September 25th going forward.  But all of those tapes that

6  were in the Office of Administration's possession or custody

7  or control will be maintained throughout the pendency of

8  this litigation.

9          THE MAGISTRATE JUDGE:  But you won't agree to that

10  in a stipulation.

11          MS. HONG:  What we would be willing to agree to is

12  offer a declaration, signed under penalty of perjury, that

13  would, as in the other cases in which Plaintiff litigated,

14  that would moot out the need for any motion for a temporary

15  restraining order.

16          THE MAGISTRATE JUDGE:  Okay --

17          MS. HONG:  Even absent that declaration, though,

18  Your Honor, we believe that the Plaintiff has not made out

19  the predicate --

20          THE MAGISTRATE JUDGE:  Well, let's talk a little

21  about the other predicates.  I think I have your issue on

22  irreparable harm.  How about the public interest?  Wouldn't

23  that be a public interest, at least in terms of conservation

24  of judicial resources?  That this stuff, whatever media it

25  is, would be preserved pending Judge Kennedy's decision?

1        MS. HONG:  Yeah, and based on the representations

2   that Defendants have made, there is no need to again enmesh

3   the Court in that type of determination.

4        THE MAGISTRATE JUDGE:  And finally, on success on

5   the merits.  This may take a bit of time.  I apologize if I

6   keep you up there too long.

7        But as I understand your position, and I hope I'm

8   getting it right, we'd all agree in light of the Circuit's

9   decision in Armstrong versus the Executive Office of the

10  President, that there are two statutes at issue, the

11  Presidential Records Act and the Federal Records Act are

12  mutually exclusive.  It's impossible for a document to be

13  in both places.  It's either one or the other.

14       Plaintiffs contend, nevertheless, that there is

15  an independent statutory responsibility under the Federal

16  Records Act that would pertain to the maintenance of records

17  by this part, section or division within the White House,

18  it's Defendant called the Executive Office of the President,

19  Executive Office of the Present Office of Administration.

20       But as I understand your position from your

21  papers, you drop a footnote and you contest whether those

22  entities are agencies for the purposes of the application of

23  the Federal Records Act.  Is this a true statement of your

24  position?

25       MS. HONG:  For the Office of Administration

 1   specifically.  The Office of Administration does not fall

 2   within the definition of agency as used in the FRA.  Yes,

 3   Your Honor.

 4          THE MAGISTRATE JUDGE:  Well, and that's what

 5   concerns me.  Because I found Judge Richey's decision in

 6   1995, in which he stated, quotes, "In a related case,

 7   Armstrong v. Executive Office of the President --" for

 8   purposes of the record it should note that I'm reading from

 9   876 Fed. Sup., 1300, what's said to be page 3 here in the

10   Lexis copy of this.

11          I read again, "In a related case, Armstrong versus

12   Executive Office of the President --" delete citations --

13   "this Court held that electronic records created by the

14   agency components of the Executive Office of the President

15   are subject to the Federal Records Act and enjoin the

16   archivist to take all necessary steps to preserve the

17   electronic federal records generated by the executive

18   agencies in this system."  Then he goes on to say, "This

19   injunction did not apply to presidential records that are

20   subject to the Presidential Records Act rather than the

21   FRA."

22          When I read that along with the Court of Appeals'

23   decision in Armstrong versus the Executive Office of the

24   President, isn't it fair to say that at least Plaintiffs

25   have some likelihood of success upon prevailing upon their

1    contention that the two Defendants here, the Executive

2    Office of the President, the Executive Office of the

3    President's Office of Administration, are in fact agencies

4    subject to FRA?

5         MS. HONG:  No, I think if you look at the specific

6    claims that are at issue for the temporary restraining order

7    here, Counts 1 through 4, they claim there that the head of

8    the agencies as well as the archivist has failed in their

9    what they call a mandatory duty to initiate action to

10   recover perhaps missing or deleted records.  Those statutes,

11   by their terms, apply to the head of the agencies or to the

12   archivists, not necessarily to the agencies in toto.

13        To the extent that there are obligations for

14   agency components of the Executive Office of the President

15   to maintain records under the Federal Records Act, certainly

16   we would agree that the Federal Records Act does apply to

17   certain agencies within the Executive Office of the

18   President.  There is currently ongoing litigation, however,

19   about whether the Office of Administration falls within the

20   definition of an agency within the meaning of the FRA.

21        THE MAGISTRATE JUDGE:  Current ongoing

22   administration, is that the case before Judge Penn?

23        MS. HONG:  No, Your Honor.

24        THE MAGISTRATE JUDGE:  The case before Judge Penn

25   involves what agency or component of the President's Office?

1          MS. HONG:  The case before Judge Penn involved the

2    Department of Homeland Security.

3          THE MAGISTRATE JUDGE:  Oh, that's right.  I

4    thought that involved the Secret Service, is that --

5          MS. HONG:  And the Secret Service, you're correct.

6          THE MAGISTRATE JUDGE:  And Armstrong versus the

7    EO, Executive Office of the President, involved the National

8    Security Council.

9          MS. HONG:  As one of the agency components of the

10   Executive Office of the President, although --

11         THE MAGISTRATE JUDGE:  But again, is Judge Richey

12   wrong in his interpretation of FRA?  This Court held that

13   electronic records created by the agency components of the

14   Executive Office of the President are subject to the Federal

15   Records Act.  Are not the Executive Office of the President

16   Office of Administration, is that not an agency component to

17   which Judge Richey was referring?

18         MS. HONG:  The agencies within the Executive

19   Office of the President include, for example, OMB or CEQUA.

20   The Office of Administration, however, is not one of those

21   agencies that falls within the definition of an agency

22   within the meaning of the FRA.

23         THE MAGISTRATE JUDGE:  In the cases before the

24   Court of Appeals and Judge Richey's decisions, there was

25   specific reference to the statutes that created NSC in terms

1   of attempting to understand what the Court of Appeals called

2   whether they had independent statutory responsibility.

3   Where would I find the statutory definition of the

4   responsibilities of the Executive Office of the President,

5   the Office of Administration?

6           MS. HONG:  If you hold on one moment, Your Honor.

7   If I may?

8           THE MAGISTRATE JUDGE:  Well, I didn't mean to put

9   you on the spot, but is it congressionally created or was it

10  created by the president pursuant to a CFR.  From where does

11  it draw its authority?

12          MS. HONG:  I haven't had an opportunity to review

13  all of those materials --

14          THE MAGISTRATE JUDGE:  All right.

15          MS. HONG:  -- and I can confer with my counsel

16  here, if you would like.  You know --

17          THE MAGISTRATE JUDGE:  But the point I'm trying to

18  make is Judge Richey's decision, as the man who, after all,

19  decided Armstrong versus EOP, is that the agency components

20  of the EO, the Executive Office, are subject to the FRA.

21          MS. HONG:  Right, and the agency components, to

22  the extent they are agencies within the meaning of the

23  Federal Records Act.  We wouldn't contest --

24          THE MAGISTRATE JUDGE:  But he said agency -- but

25  he said agency components.  Did he mean something different?

1          MS. HONG:  Because the Federal Records Act defines

2     what an agency is, I don't -- you know, I'm not sure what

3     Judge Richey meant, but to be consistent with the statute he

4     would have meant, or he would have had to mean agencies

5     within the meaning or that fell within the definition of the

6     Federal Records Act.

7          THE MAGISTRATE JUDGE:  If the Executive Office

8     of the President is not an agency, who would bear the

9     responsibility for compliance with the FRA?  Within the

10    Executive Office.

11         MS. HONG:  Right, and just to make clear, we're

12    not contending that the Executive Office of the President is

13    not necessarily an agency within the meaning of the Federal

14    Records Act.  It's that the Office of Administration does

15    not fall within the definition of agency within the FRA.

16         THE MAGISTRATE JUDGE:  But if they're not doing

17    it, who will do it?

18         MS. HONG:  No, and the Executive Office of the

19    President does have agency components, including OMB, for

20    example, or CEQUA, and those agencies, the head of those

21    agencies and the Office of Administration maintains custody

22    and possession and control over, in this instance, the

23    disaster recovery tapes for e-mails generated from those EOP

24    components.  Accordingly, the Office of Administration has

25    made the representation that all of the disaster recovery

1   tapes in its possession as of September 25th, 2007, are
2   being maintained.
3          I think that Judge Richey's order in the first
4   Armstrong case, the 807 F. Sup., 816 case decided in 1992,
5   is instructive for our purposes here.  There, the Court's
6   order, understanding the certain narrow and emergency relief
7   that was requested in the temporary restraining order
8   motion, there Judge Richey ordered, "Defendants hereby are
9   directed and ordered from this day forward to preserve all
10  the current and existing computer backup tapes in their
11  custody as of the date of this order or hereafter created
12  from the electronic communication systems.  It is further
13  ordered that the Defendants are not to write over, erase or
14  destroy any of the information on the aforementioned tapes."
15         Defendants here, the Office of Administration, has
16  provided to Plaintiff precisely that representation.  Has
17  offered to provide that information in a declaration.  And
18  Plaintiff has found that inadequate.  To the extent that
19  they seek the Court to exercise its emergency powers here,
20  they have provided not a shred of evidence indicating that
21  irreparable harm would accrue, particularly in light of the
22  representations that the Defendants have made.
23         THE MAGISTRATE JUDGE:  But I think you'd have to -
24  - as I understand what they're saying is, there is still a
25  possibility that without a Court order that may happen.  And

 1    since the burden on you is not that great; indeed, it is no

 2    greater than the burden you are willing to undertake, then

 3    how can you say that the public interest is not advanced by

 4    doing that.

 5         I mean, if the TRO standards are, as we know,

 6    an ever-sliding calculus, the burden to you is either

 7    nonexistent, because you say you're willing to undertake it,

 8    or infinitesimal.  There is at least a complicated legal

 9    issue with reference to whether or not the Office of

10    Administration is an agency subject to FRA.  There is no

11    downside risk to the public interest by the preservation.

12    Haven't they made out their case for a TRO?

13         MS. HONG:  No, the legal standard requires that

14    Plaintiff present a convincing presentation or persuasive

15    demonstration that irreparable is likely, and it's not only

16    likely but it will and imminently occur.  Based on

17    Defendants' representations to the Plaintiff and its further

18    assurances to provide what is more than -- what is required

19    more than under the law, by providing a declaration,

20    Plaintiff has simply not made out a case at all for the

21    issuance of a temporary restraining order, because they have

22    provided no evidence and they can't provide evidence based

23    on Defendants' representations that irreparable harm would

24    accrue to them.

25         THE MAGISTRATE JUDGE:  Thank you.  Counsel?

1          MS. WEISMANN:  I'd like to start off by talking

2    about what we still don't know, because I think that's

3    important on the relief issue and on the merits of our

4    request for relief.  With all of the words that have been

5    exchanged with the Court today, we still do not know what

6    the body of existing backup recovery tapes, whether we call

7    them disaster recovery tapes or backup tape -- I mean,

8    assuming we mean the same thing, we don't know what they

9    are.  All we have are representations about what is in the

10   OA's custody and control.  And as we have explained to them,

11   in trying to craft a stipulated order, that the relief we

12   are seeking is broader than that.

13         Unless they can tell us that any and all copies,

14   if they exist, would only be there, and they haven't been

15   willing to say that.  This is not a suit brought only

16   against the Office of Administration.  They have not been

17   willing to tell us, for example, if tapes were transferred

18   off-site to contractors, et cetera.  You made reference to

19   the fact that the tapes for the courthouse are stored off-

20   site.  It is just not simply -- it's not true, Your Honor,

21   it's simply not true that they have provided adequate

22   assurances.  And that alone, we think, is enough for our

23   relief.

24         I want to, without sort of being too piecemeal

25   about this, I want to address the issue that was in the

1    Armstrong Court that counsel has asked this Court to use as

2    a model.  The factual setting was very different, and I

3    think that's critical.  Armstrong came about because there

4    was about to be a presidential transition.  And the concern

5    was not what had happened in the past, but the fact, the

6    likelihood that in the course of that transition records

7    would get lost.  And that is why the emergency relief that

8    was sought and awarded was prospective going forward.

9         We have a very different case, Your Honor.  As you

10   know, our lawsuit is premised on what has happened, in part,

11   over the last three years.  The fact that millions of e-mail

12   have been deleted from White House servers, the fact that

13   the White House has refused to take steps to recover those

14   tapes, to preserve, restore those tapes.  The fact that to

15   this date the White House still does not have an appropriate

16   and effective electronic record-keeping system.  That's what

17   the core of our lawsuit is about.  It's a very, very

18   different factual situation than Armstrong, which is why we

19   don't think the same order is appropriate here.

20        I also want to talk a little --

21        THE MAGISTRATE JUDGE:  How would it be improved,

22   in your point of view?

23        MS. WEISMANN:  I think, again, it can't -- it has

24   -- well.  Looking from our language, I mean, it just has to

25   say everything that's in their possession, custody and

1   control as of a date-certain will be preserved.  And just

2   to be, you know -- so let me tell you what exactly it is,

3   looking at our order, the tweaks that we had proposed.

4          One was that in the fourth line, it says "Archival

5   condition backup copies in existence as of --" and the date

6   that we would propose is September 5th, 2007, the reason

7   being that the National Security Archive has also filed a

8   lawsuit also before Judge Kennedy.  Their lawsuit was filed

9   on September 5th.  So that seems the appropriate date to

10  begin with.

11         We would include language that says that this

12  obligation applies to any and all copies in the possession,

13  custody or control of any and all of the White House

14  Defendants.

15         And finally, Your Honor, we would want language

16  at the end that makes it clear that by agreeing to that date

17  the Plaintiff reserves the right to seek relief for any

18  destruction of backup tape or documents that occurred prior

19  to that date.

20         But those are the minor -- what I think are

21  relatively minor tweaks.  And then I think we have an order

22  that I think appropriately provides us the kind of relief

23  we're seeking here, so we can litigate and get to the

24  merits.

25         And I just want to make a -- Your Honor had

1   started out with Judge Penn's order.  I'm counsel of record

2   in that case.  I'm also counsel of record in the Office of

3   Administration case, which is before Judge Kollar-Kotelly.

4   That's the case that raises the issue of the OA status as an

5   agency.  So I'm pretty well versed in those arguments and

6   would be happy to answer your questions.

7          But Judge Penn's case, again, was a very different

8   case.  We were sort of in the midst, you know, ongoing

9   litigation when a document that the government filed raised

10  a concern to us that they were not preserving documents.

11  We brought a motion.  And what happened there, we had

12  argument, the Judge -- I mean, there's a written transcript,

13  so what I'm saying is reflected in the transcript.  The

14  Court was very concerned that the government had not

15  provided any proof, they wanted to rest simply on the

16  statements of counsel.  Once the government offered sworn

17  declarations -- and there was an order that accompanied them

18  -- we did agree voluntarily that the case was moot.

19          I mean, the concern we have here, as I said

20  earlier, however, is that we just feel like there's been so

21  much wordsmithship and narrowness, and just on a real basic

22  level a refusal to provide sort of basic information, that

23  we just -- we feel that a Court order is critical.

24          And I would say that in the case before Judge

25  Penn, the other thing that was so different than here is we

1    knew exactly what they were talking about.  They came in

2    with declarations that said, "These are all the records we

3    have, and this is where they're being preserved and how

4    they're being preserved."  And in fact, every time in that

5    case that the Secret Service or one of its components has

6    discovered new records, they have come into Court with a new

7    declaration, making it clear this is what's in existence.

8         Here we can't even get the most basic explanation,

9    even if we have an order, of what that's going to cover, and

10   we think that would be critical.  We think everybody needs

11   to know what are their obligations and, you know, are they

12   complying with them.

13        On the merits, I think -- to answer some of your

14   questions about the Office of Administration.  It was

15   created by President Carter by an executive order.  It's a

16   creation of executive order.  And since its inception, it

17   has always acted as an agency.  Until our litigation it has

18   had a whole FOIA scheme, it published regulations.  If you

19   went to the White House web site, until quite recently, it

20   in fact said very expressly that the Office of

21   Administration is an agency.  It listed it along with the

22   EQ101B.

23        But, Your Honor, I don't even think you need to

24   delve too deeply into that issue, because whether or not the

25   Office of Administration is an agency, we're talking about

1  records that include federal records, and the government

2  can't deny that.  The problem is, they're commingled.

3  Unlike the Clinton administration, which had an effective

4  electronic record-keeping system called ARMS, which dumped

5  things in buckets, either it was a federal record or a

6  presidential record, this administration has dumped them in

7  servers, they're all commingled.  So whether or not the

8  Office of Administration is an agency, it can't be denied

9  that the missing e-mails include federal records and that

10  the backup tape include federal records. So I think in some

11  respects it's sort of a red herring to go down that road.

12          I'd be happy to answer any questions you have on

13  the merits.

14          THE MAGISTRATE JUDGE:  I mean, I think you've

15  answered all of them.  What I would like you to do, if you

16  would, is, if you'd be so kind, is, in light of today's

17  discussion, if you wanted to send me a revised proposed

18  order by e-mail, I'd like to take a look at it.

19          MS. WEISMANN:  Yes, I will do that this afternoon,

20  Your Honor.  Thank you.

21          THE MAGISTRATE JUDGE:  Anything else?

22          MS. HONG:  I just want to address one of the first

23  points that Ms. Weismann raised, which was her concern that

24  there are disaster recovery tapes or other tapes outside of

25  the Office of Administration's custody, possession or

1   control that are relevant to this lawsuit.  The Office of

2   Administration has made the representation that it will

3   maintain and preserve all backup tapes in its possession,

4   custody or control, which include all the relevant disaster

5   recovery tapes.

6            THE MAGISTRATE JUDGE:  Yes, I don't know, and

7   obviously would have no way of knowing whether the model we

8   used here is the same one used there.  I don't know if they

9   off-site.

10           MS. HONG:  Unless you have any further questions,

11  (inaudible) Your Honor.

12           THE MAGISTRATE JUDGE:  No, I don't.  I just would

13  be, frankly, very surprised if they didn't go off-site.

14  That's why you send them off-site, so in the event of a

15  disaster you can (inaudible).  Okay.  Thank you very much.

16  I appreciate your _____ answer.

17           I take it that in the next couple of days, as I

18  formulate what I'm going to do for Judge Kennedy, thee will

19  be no destruction.  I have your assurance that nothing will

20  change, is that true?

21           MS. HONG:  The representations we have made remain

22  true, that the Office of Administration will maintain and

23  will continue to maintain for the pendency of this

24  litigation the disaster recovery tapes that were in

25  existence as of September 25th or September 5th, 2007.

 1            THE MAGISTRATE JUDGE:  Thank you.

 2            MS. WEISMANN:  Your Honor, I don't mean to be

 3    difficult here, but can we take that to mean anything within

 4    the custody, possession or control of the White House

 5    Defendants?

 6            THE MAGISTRATE JUDGE:  That's the way I'm

 7    interpreting it, yes.  I mean, all I can do here is resort

 8    to ordinary principles in the interpretation of the Federal

 9    Rules of Civil Procedure.  And they have, since 1938, been

10    interpreted to extend to information or documents which are

11    a party's possession, custody or control.

12            MS. WEISMANN:  But I just wanted to --

13            THE MAGISTRATE JUDGE:  So I give notice that I

14    interpret those words in the same exact way.

15            MS. WEISMANN:  Okay.  And for all the White House

16    Defendants and not (inaudible).

17            THE MAGISTRATE JUDGE:  For all the Defendants in

18    this case, yes.

19            MS. WEISMANN:  Thank you.

20            THE MAGISTRATE JUDGE:  Until I rule.  That's my

21    understanding.  If I'm mistaken in that understanding, I

22    expect somebody to tell me very soon.  Thank you.

23            The Court will be in recess.

24            (Whereupon, proceedings were concluded)

UNITED STATES OF AMERICA )
                         ) Civil Action No. 07-1707
DISTRICT OF COLUMBIA     )

      I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

_____
PAUL R. CUTLER

      I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

_____
BONNIE FURLONG

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
                               )
              Plaintiff, )
                               )
                 v. )       Civil No. 1:07cv1707 (HHK) (JMF)
                               )
EXECUTIVE OFFICE OF THE )
PRESIDENT, et al., )
                               )
            Defendants. )

_____)

## [PROPOSED] ORDER

The Court having considered plaintiff's motion for leave to conduct expedited discovery and to compel a Rule 26(f) conference, defendants' opposition thereto and the entire record herein, it is hereby ORDERED that plaintiff's motion is GRANTED, and that plaintiff is hereby given leave to conduct expedited discovery and it is further

ORDERED that the parties meet and confer within three business days of this order pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.

Dated: _____

_____
HENRY H. KENNEDY, JR.
United States District Judge