# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No: 1:07-cv-01707 (HKK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | ) ) ) ) | |
| Defendants. | ) ) | |
| NATIONAL SECURITY ARCHIVE, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No: 1:07-cv-01577 (HKK) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTIONS FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND MOTION TO COMPEL RULE 26(f) CONFERENCE

### INTRODUCTION

Before even the deadline for defendants to respond to plaintiffs' respective complaints had passed, plaintiffs National Security Archive ("NSA") and Citizens for Responsibility and Ethics in Washington ("CREW") filed motions for leave to conduct expedited discovery and to compel Rule 26(f) conferences. Permitting defendants to conduct such premature discovery, however, would be improper given defendants' intent to file on November 29, 2007 a motion to

dismiss both complaints for lack of subject matter jurisdiction.[1]  Courts have consistently exercised their discretion to stay discovery where it appears that a case is subject to a potentially dispositive motion, and particularly where, as here, the motions will challenge the court's jurisdiction to hear all counts of the complaint.  Judicial efficiency is best served by considering those motions first, before ordering the parties to embark on a discovery schedule likely to produce several disputes that will require this Court's intervention before it has even determined whether it has jurisdiction.

Aside from being premature, plaintiffs' discovery requests are unwarranted given the claims raised in their complaints.  Both NSA and CREW acknowledge that their lawsuits are brought "under the Administrative Procedure Act ("APA") . . . and the Federal Records Act ("FRA")."  (CREW Compl. ¶ 1; see also NSA Compl. ¶ 1.)  Under the APA, of course, consideration of whether any of defendants' actions or inaction was arbitrary, capricious, or otherwise contrary to law is a purely legal question to be decided on the basis of the administrative records produced by the defendants.  Thus, only after this court has resolved defendants' jurisdictional defenses, and only after defendants have been provided an opportunity to assemble the administrative records to justify any remaining claims on summary judgment, may plaintiffs attempt to seek additional discovery to supplement the administrative records.  Even then, discovery in an APA action is allowed only in limited circumstances that are not

---

[1]  On November 5, 2007, defendants filed a motion for an enlargement of time to respond to plaintiff NSA's complaint.  Defendants seek to file a consolidated response to the related complaints on the date that a response to CREW's complaint is due, consistent with NSA's request to consolidate its action with the action filed by CREW.

present here.  Requiring discovery before defendants have even filed a response, let alone before

they have provided an administrative record for review, would be plainly inappropriate.

Moreover, although plaintiffs do not define the precise scope of their discovery requests,

they appear to largely relate to defendants' preservation obligations to determine "the extent to

which the missing email records can be reconstructed and therefore the extent to which the

plaintiff can be afforded full and effective relief."  (CREW Mot. at 7; see also NSA Mot. at 7.)

In seeking discovery for such purposes, plaintiffs fundamentally misunderstand the limits of

judicial review under the Federal Records Act and what relief may be afforded by the Court here.

To the extent plaintiffs' discovery requests are tethered to an ultimate request for this Court to

order the retrieval or recovery of records from the disaster recovery tapes or "other copies, . . .

whether in hard drives or other repositories" (CREW Mot. at 9), the Court is without jurisdiction

to do so.  (See also CREW Compl. at 28 (seeking that the Court order "all defendants . . . to

restore deleted e-mails from the back-up tapes and to separately maintain and preserve the

federal and presidential records comprised therein"); NSA Compl. at 27 (same).)  The Court of

Appeals has held that the FRA precludes APA claims seeking this sort of injunctive relief

because under the FRA such relief can be sought, if at all, only by the government through the

FRA's detailed and exclusive administrative enforcement system.  Whether and how restoration

efforts will be undertaken is action committed to the administrative scheme and plaintiffs may

not conduct premature discovery to dictate the mechanics of recovery action, if any, that the

government should undertake.

Even if some discovery were appropriate, plaintiffs would not be entitled to expedited

discovery.  This court has previously used two separate tests for evaluating such requests.  The

first test, more commonly applied in cases seeking discovery in <u>advance</u> of a preliminary injunction hearing,[2] assesses the "reasonableness" of the request using five separate factors. The second test closely parallels the requirements for obtaining a preliminary injunction, which plaintiffs fail to meet for the reasons set forth in defendants' opposition to CREW's motion for a temporary restraining order. For the reasons set forth below, plaintiffs' request should be denied under either standard. Defendants have repeatedly assured plaintiffs and the Court in writing that they are preserving, and will continue to preserve, all documents in defendants' possession relevant to plaintiffs' lawsuits.[3] Such assurances make unnecessary and improper plaintiffs' expedited requests designed to confirm the preservation of those documents.

## BACKGROUND

I.    **Statutory Framework**

    A.    **Federal Records Act**

The Federal Records Act is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." <u>Public Citizen v. Carlin</u>, 184 F.3d 900, 902 (D.C. Cir. 1999). <u>See</u> 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. The FRA "authorizes the head of each Federal agency to establish a records management program and to define the extent to which documents are appropriate for preservation as agency records." <u>Kissinger v. Reporters Committee For Freedom of the Press</u>, 445 U.S. 136, 147 (1980). Agency heads are directed by

---

[2]  Neither plaintiff expressly contends that the expedited discovery is sought in connection with any preliminary injunction request.

[3]  Defendants have offered even to provide those assurances in a declaration, though plaintiff CREW has deemed a declaration inadequate and instead presses for a preliminary injunction.

the FRA to "establish and maintain an active, continuing program for the economical and

efficient management of the records of the agency," and "shall establish safeguards against the

removal or loss of records [they] determine[] to be necessary and required by regulations of the

Archivist." Id. § 3105. Additionally, the Act "provides the exclusive means for record

disposal."[4] Id.; see 44 U.S.C. § 3303(a).

> Records covered by the FRA include
>
> all books, papers, maps, photographs, machine readable materials, or other
> documentary materials, regardless of physical form or characteristics, made or
> received by an agency of the United States Government under Federal law or in
> connection with the transaction of public business and preserved or appropriate
> for preservation by that agency . . . as evidence of that organization, functions,
> policies, decisions, procedures, operations, or other activities of the Government
> or because of the informational value of the data in them.

44 U.S.C. § 3301. By regulation, records under the FRA are deemed either "permanent" or

"temporary." Permanent records include any federal record that "has been determined by [the

National Archives Record Administration ("NARA")] to have sufficient value to warrant its

preservation in the National Archives of the United States." 36 C.F.R. § 1220.14 (2006).

Temporary records are any records "which have been determined by the Archivist of the United

States to have insufficient value . . . to warrant its preservation by [NARA]." Id.

The FRA also establishes an administrative enforcement scheme, comprised of two

complementary mechanisms for protecting records. Armstrong v. Bush, 924 F.2d 282, 294 (D.C.

Cir. 1991). Under 44 U.S.C. § 2905, if the Archivist learns that documents are being mishandled

---

[4] The Records Disposal Act, 44 U.S.C. § 3101, et seq., controls the disposition of records, but as
the D.C. Circuit has treated the RDA as a portion of the FRA, Public Citizen v. Carlin, 184 F.3d
900, 902 (D.C. Cir. 1999) (referring to "the RDA portion of the FRA"), defendants do so as well.

in certain material ways, then he or she may notify the relevant agency head, assist the agency

head in initiating an action through the Attorney General (or initiate the action himself or herself

if the agency head refuses), and (in certain situations) notify Congress:

> "[The Archivist] shall notify the head of a Federal agency of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to his attention, and assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law. In any case in which the head of the agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made."

44 U.S.C. § 2905(a).  Under 44 U.S.C. § 3106, in turn, each agency head may alert the Archivist

of the material mishandling of documents and seek to initiate an action through the Attorney

General to put a stop to the improper practice(s):  "The [agency head] shall notify the Archivist

of any actual, impending, or threatened unlawful removal . . . or destruction of records in the

custody of the agency. . . [and] shall initiate action through the Attorney General for the recovery

of records he knows or has reason to believe have been unlawfully removed from his agency[.]"

44 U.S.C. § 3106.

Only limited review of compliance with the FRA is available.  Although a plaintiff may

seek (under the APA in certain circumstances) judicial review of an "agency head's or

Archivist's refusal to seek the initiation of an enforcement action by the Attorney General," or

the adequacy of an agency's record-keeping guidelines, the Court of Appeals has made clear that

the FRA does not authorize judicial review in order to enjoin "an agency official from

improperly destroying or removing records."  Armstrong, 924 F.2d at 294, 295.

**B.     Presidential Records Act**

The Presidential Records Act ("PRA") sets forth a scheme for the preservation and disclosure of Presidential and Vice-Presidential records.  44 U.S.C. §§ 2201, 2207.  "Presidential records" covered by the PRA include "documentary materials, or any reasonably segregable portion thereof, created or received by the President, his immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise and assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President."  44 U.S.C. § 2201(2).  Under the PRA, the President is tasked with "tak[ing] all such steps as may be necessary to assure that the activities, deliberations, decisions and policies that reflect the performance of his constitutional and statutory, or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records[.]" Id. § 2203(a).

The PRA imposes upon the Archivist of the United States ("Archivist") "an affirmative duty to make [Presidential] records available to the public as rapidly and completely as possible consistent" with limitations under the PRA.  Id. § 2203(f)(1).  However, private parties generally have no public access to Presidential records for a period of five years after the President leaves office, unless the records are compelled by subpoena or other judicial process.[5]  Id.

_____

[5]  The legislative history of the PRA explains the rationale behind the delayed disclosure of restricted Presidential records and the mechanisms for ensuring Presidential review.  In passing the bill that became the PRA, Congress recognized that "premature disclosure" of Presidential records could have a "chilling effect on presidents and the frankness of advice they could expect from their staffs."  H.R. Rep. No. 95-1487, at 8.  It was felt, in fact, that the failure to recognize that potential "might eventually diminish the completeness of the written record created and left

§§ 2204(b)(2), 2205.  In addition, the President may, before leaving office, "specify durations, not to exceed 12 years, for which access shall be restricted with respect to information" within one of six enumerated categories.  See 44 U.S.C. §§ 2204(a)(1) – (a)(6).

Significantly, the Court of Appeals has expressly held that a private party may not challenge or seek judicial review of the government's compliance with the PRA.  See Armstrong v. Bush, 924 F.2d 282, 290 (D.C. Cir. 1991).  As the D.C. Circuit has instructed, "permitting judicial review of the President's compliance with the PRA would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional concerns."  Id.  Recognizing that the PRA provides neither the Archivist nor Congress with "the authority to veto the President's disposal decision" or "any authority to interfere with his records management practices," the Court of Appeals has held that "the PRA precludes judicial review of the President's recordkeeping practices and decisions."  Id. at 291.

## II.    FACTUAL BACKGROUND

On September 5, 2007, NSA filed an eight-count complaint, charging in the first four counts that defendants had failed their duties to initiate action through the Attorney General to preserve and restore FRA and PRA records allegedly missing "from the White House servers since March 2003 through the present."  (NSA Compl. ¶¶ 36, 44-68.)  The latter four counts

---

by chief executives."  Id.  Congress acknowledged, in passing the PRA, the need to consider the "expectation of confidentiality of executive communications to avoid the prospect of a constitutional infirmity."  Id.  Thus, the PRA sought to balance these considerations against the desire for "ready availability" of Presidential records.  Id.; see also id. at 15 (Congress sought to balance "the objectives of assuring availability with the concern that the premature disclosure of sensitive presidential records will eventually result in less candid advice being place on paper and a depleted historical record").

sought to compel defendants to establish an "adequate archival system . . . for the archival and preservation of e-mails." (Id. ¶¶ 69-98.)  Among its other requests for relief, NSA sought an order requiring all defendants "to restore deleted e-mails from the back-up tapes and to maintain and preserve the federal and presidential records comprised therein."  (NSA Compl. at 27.)  On September 25, 2007, plaintiff CREW filed its own eight-count complaint, raising the same claims NSA raised on September 5.  CREW, too, requested an order requiring all defendants "to restore deleted e-mails from back-up tapes and to separately maintain and preserve the federal and presidential records comprised therein."  (CREW Compl. at 28.)

Both parties requested assurances from the Director of the Office of Administration that he would "preserve all back-up media, including but not limited to ['tapes, computer disks, compact discs, and digital video discs'], and protect them from interference."  (Oct. 3, 2007 Letter from NSA to the Director of the Office of Administration.)  Through a series of correspondence, defendants, through counsel, provided both NSA and CREW with assurances that defendants were maintaining and would continue to maintain for the pendency of the litigation, all disaster recovery tapes that were in the Office of Administration's possession as of the respective filing dates of plaintiffs' lawsuits, and further clarified that defendants were complying with their litigation preservation obligations.  In response to a follow-up letter by CREW, defendants further expressed that

> to the extent your questions suggest that the Office of Administration has been recycling disaster recovery tapes for emails generated within EOP components after September 25, 2007, please be assured that those disaster recovery tapes have been maintained, not recycled.  Defendants are aware of the ongoing litigation and are proceeding in good faith compliance with their attendant obligations.

Notwithstanding defendants' express commitments, CREW filed a motion for a temporary restraining order seeking to preserve all "back-up copies" of allegedly deleted emails that had been stored on White House servers. At a hearing on the motion on October 17, 2007, defendants, through counsel, reiterated their commitment to preserve all disaster recovery tapes relevant to the action that were in the Office of Administration's possession, custody or control as of the filing of CREW's lawsuit (and, in fact, as of the filing of NSA's lawsuit as well). Consistent with defendants' earlier representation to the parties that they were <u>also</u> preserving all disaster recovery tapes for emails generated within EOP components <u>after</u> September 25, 2007, defendants represented to the court at the hearing that "additional back up tapes in addition to the ones that were in the Office of Administration's possession on September 25th" – namely, "back up tapes for e-mails generated by EOP components after September 25th" – were also being preserved.[6] (CREW Mot. Ex. 4 at 5.) Defendants offered to memorialize and describe their commitments in a declaration, which CREW rejected as inadequate.

On October 18, 2007, both NSA and CREW sent letters requesting a Rule 26(f) conference during the week of October 22, in advance of defendants' deadline to respond to either complaint. On October 26, 2007, both NSA and CREW filed the instant requests for expedited discovery. At base, both NSA and CREW seek discovery purportedly "to ensure that

---

[6] NSA justifies its request for expedited discovery in part, by claiming that the Office of Administration may not be in possession, custody or control of all relevant disaster recovery tapes. (NSA Mot. at 8.) As counsel explained at the hearing (and as made clear by the transcript), the "additional back-up" tapes referenced by NSA in its motion are the tapes that have been generated after both lawsuits were filed. Only the Office of Administration has care, custody or control of, and maintains all existing disaster recovery tapes relating to the electronic communications systems referenced in plaintiffs' complaints. (<u>See also</u> Defs.' Local Rule 72.3 Obj. to Report and Recommendations on Pl's Mot. for TRO at 6 n.4.)

plaintiff[s'] rights to ultimate relief will be preserved," and seek answers to "questions regarding what back-ups of EOP emails still exist and how their preservation is ensured." (NSA Mot. at 7.) Specifically, plaintiffs request discovery about "any details about the still-existing body of back-up copies, including what time period they cover, the extent to which they contain any of the missing emails, and whether there are multiple copies" of back-ups that exist outside of defendants' express preservation commitments. (Id. at 8; CREW Mot. at 7.) Plaintiffs also request leave to conduct discovery on whether "deleted emails are missing from the existing back-up media," so that they may request the preservation of other speculated backup sources, including workstations and hard-drives. (NSA Mot. at 9-10; CREW Mot. at 9.) Apart from their "preservation discovery" requests, NSA and CREW also seek more far-reaching discovery about "documentation assembled by OA when it first discovered the missing email problem in October 2005" (CREW Mot. at 9), and "documents about the architecture of the email storage system that the EOP used between March 2003 and October 2005, . . . and the email storage system currently in use by the EOP[.]" (NSA Mot. at 11.)

## ARGUMENT

### I. DISCOVERY IS INAPPROPRIATE WHERE DEFENDANTS HAVE NOT YET RESPONDED TO THE COMPLAINTS AND WHERE DEFENDANTS WILL BE FILING A MOTION TO DISMISS THE COMPLAINTS FOR LACK OF SUBJECT MATTER JURISDICTION

This case presents no reason to deviate from the well-established practice of staying discovery before the anticipated filing of, and during the pendency of, a dispositive motion.[7]

---

[7] Indeed, defendants had not been afforded the time provided by Rule 12(a)(3)(A) to respond to the complaint when plaintiffs' filed their motions.

See, e.g., Patterson v. United States, 901 F.2d 927, 929 (11th Cir. 1990) (holding that a district

court did not abuse its discretion in entering protective order prohibiting discovery pending

determination of motion to dismiss or for summary judgment); Jarvis v. Regan, 833 F.2d 149,

155 (9th Cir. 1987); Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir. 1987) (citing Landis v. North

Am. Co., 299 U.S. 248, 254 (1936)); Klingschmitt v. Winter, Civ. No. 06-1832, Slip. Or.

(D.D.C. Feb. 28, 2007) (HKK) (granting motion for protective order to stay discovery during

pendency of motion to dismiss); Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt.

Assistance Auth., 201 F.R.D. 1, 2 (D.D.C. 2001) ("It is well settled that discovery is generally

considered to be inappropriate while a motion that would be thoroughly dispositive of the claims

in the Complaint is pending."); 8 C. Wright, A. Miller, & R. Marcus, Federal Practice and

Procedure § 2040 (2d ed. 1994) ("[A] a court may decide that in a particular case it would be

wise to stay discovery on the merits until challenges to jurisdiction have been resolved.").  To

the contrary, defendants' anticipated jurisdictional and Rule 12(b)(6) defenses counsel for a stay

of all discovery until the threshold jurisdictional questions and dispositive motions are first

resolved.  As the Supreme Court has taught, "[i]t is a recognized and appropriate procedure for a

court to limit discovery proceedings at the outset to a determination of jurisdictional matters."

U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 79-80 (1988).

This is particularly true where plaintiffs seek, as here, discovery from the Executive Branch that

could be obviated by a jurisdictional motion.  See, e.g., Cheney v. United States District Court

for the District of Columbia, 542 U.S. 367, 385 (2004) ("The high respect that is owed to the

office of the Chief Executive . . . is a matter that should inform the conduct of the entire

proceeding, including the timing and scope of discovery.") (quoting Clinton v. Jones, 520 U.S.

681, 707 (1997)).  "[J]urisdiction is power to declare the law," and without it, "the only function

remaining to the court is that of announcing the fact and dismissing the cause."  Steel Co. v.

Citizens for a Better Env't, 523 U.S. 83, 94 (1998).

     As will be explained fully in defendants' motions to dismiss the complaints and outlined

here for illustrative purposes, defendants will challenge the Court's subject matter jurisdiction to

entertain all of plaintiffs' claims.[8]  First, defendants will challenge plaintiffs' standing to pursue

their FRA claims.  As previewed in Defendants' Opposition to CREW's Motion for a Temporary

Restraining Order, this case squarely presents a question left open in prior FRA cases, namely,

whether denial of access to records is sufficient "injury in fact" for standing purposes.  Courts in

this Circuit have suggested that its sufficiency is "questionable."  See Am. Friends Serv. Comm.

v. Webster, 720 F.2d 29, 46 (D.C. Cir. 1983); Am. Friends Serv. Comm. v. Webster, 485 F.

Supp. 222, 227 (D.D.C. 1980).  Both NSA and CREW are precisely the type of organizations

whose standing is "questionable" under D.C. Circuit law.  (NSA Compl. ¶¶ 5-6; CREW Compl.

¶¶ 5-6.)

     In addition, defendants will show in their forthcoming motion to dismiss that plaintiffs

have not established, and cannot establish, redressability.  To the extent that plaintiffs request

that the Archivist and Director of the Office of Administration request that the Attorney General

initiate some action to redress plaintiffs' perceived wrongs, redressing plaintiffs' claimed injury

---

[8]  The bulk of plaintiffs' requested discovery, which relates to preservation obligations of back-up media for allegedly missing emails, is wholly unrelated to Counts Five through Eight of plaintiffs' complaints, which relate to forward-looking orders for "adequate" archival systems. Thus, even if defendants' jurisdictional defenses were limited only to Counts One through Four, plaintiffs would have no grounds on which to seek their preservation-related discovery demands.

– the failure of records to be available – is dependent on the actions of a third party (the Attorney General) not subject to this suit.  And the Court of Appeals has left open the question about the reviewability of the Attorney General's decision to initiate an enforcement action at the request of the Archivist or head of an agency.  Armstrong, 924 F.2d at 296 n.11.  It is likely that such decision would be unreviewable under 5 U.S.C. § 701(a)(2) and committed to the Attorney General's discretion by law.  See Heckler v. Chaney, 470 U.S. 821, 833 (1985).  But plaintiffs have not even sued the Attorney General, so their injuries may not be redressed here.

By way of another example, plaintiffs' claims seeking court-ordered retrieval of records from disaster recovery tapes are impermissible.  As described above, the Court of Appeals has held that the FRA precludes APA claims seeking this sort of injunctive relief.  For the same reasons, plaintiffs' claims resting on the PRA and seeking restoration or archival of Presidential records must be dismissed.  As described above, the PRA precludes judicial review of the President's recordkeeping practices and decisions.  Accordingly, the Court lacks subject matter jurisdiction over those claims and requests for relief.

Plaintiffs' requested discovery is purportedly designed to determine "alternative methods of restoring the millions of deleted email records," and whether "it may be necessary . . . to recover the missing records from other sources, including individual workstation, or through other forensic means."  (CREW Mot. at 9; NSA Mot. at 9.)  Even construing plaintiffs' proposed discovery as "limited discovery" to determine the propriety of preliminary injunctive relief – which, significantly, plaintiffs do not contend – does not change the analysis.  But "a preliminary injunction is just that – preliminary."  Disability Rights Council of Greater Washington v. Washington Metro. Transit Auth., 234 F.R.D. 4, 7 (D.D.C. 2006) (HHK/JMF) (internal quotation

and citation omitted).  As this Court has stated "[s]urely, plaintiffs are not seeking expedited

discovery to gain evidence to get the court to preserve the status quo.  They want to gather all the

evidence they would need to radically transform the status quo.  But that is not the purpose of a

preliminary injunction, nor of the limited discovery that the courts traditionally permit a plaintiff

to have to secure it."  Id.

## II.    THE REQUESTED DISCOVERY IS INAPPROPRIATE IN AN APA REVIEW CASE

It is also appropriate to stay discovery because plaintiffs' causes of action arise only

under the APA.  See, e.g., Nat'l Wildlife Fed. v. Browner, Civ. No. 95-1811, 1996 WL 601451,

*2 (D.D.C. Oct. 11, 1996) (APA review is limited to administrative record); see also Fed. R. Civ.

P. 26(f) (excepting actions for review on an administrative record from discovery obligations

under Rule 26(f)).  Absent extraordinary circumstances not present here, however, discovery is

not permitted in such an action.  "It is well settled that judicial review of agency action is

normally confined to the full administrative record before the agency at the time the decision

was made.  The focal point for judicial review should be the administrative record already in

existence, not some new record compiled initially in the reviewing court."  Env't Defense Fund

v. Cottle, 657 F.2d 275, 284 (D.C. Cir. 1981).  Because the Court is, as a general matter, limited

to a review of the administrative record in a case arising under the APA, it would serve no

purpose to permit plaintiffs to seek discovery of additional extra-record materials.  For this

reason, courts generally refuse to permit discovery to proceed in actions brought under the APA.

See Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1, 7 (D.C. Cir. 1998) (the

APA "limits review to the administrative record, except where there has been a strong showing

-15-

of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review") (internal quotation and citations omitted); see also Trudeau v. FTC, 384 F. Supp. 2d 281, 293-94 (D.D.C. 2005), aff'd, 456 F.3d 178 (D.C. Cir. 2006).

Plaintiffs have not shown, and cannot show, that discovery could be justified in this action at this juncture. Defendants' motion to dismiss will soon be pending, and will likely be dispositive of plaintiffs' claims as a matter of law. Defendants would be obliged to answer the complaint or to submit an administrative record only in the event that the motions to dismiss were to be denied. Because defendants are not yet obliged to file an administrative record, it is, at a minimum, premature for plaintiffs to seek to supplement the record through discovery in this action.[9]

## III. EVEN IF DISCOVERY WERE PROPER IN THIS LITIGATION, PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY SHOULD BE DENIED

This court has applied two different tests for determining whether discovery should be expedited. See Disability Rights Council, 234 F.R.D. 4 at 6; In re Fannie Mae Derivative Litigation, 227 F.R.D. 142, 142 (D.D.C. 2005). Under the first test, more commonly applied in cases seeking discovery in connection with a pending motion for preliminary injunction, courts determine whether the request is "reasonable" by considering a list of factors including, but not limited to, "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants

---

[9]  Rule 26(f) also excepts administrative record review cases from conference obligations as well. Because plaintiffs' claims under the APA are for administrative record review, the parties are excepted from any Rule 26(f) conference obligations and plaintiffs' requests for one are improper.

to comply with the requests; and (5) how far in advance of the typical discovery process the request was made."  Disability Rights Council, 234 F.R.D. at 6.  Under the second, more stringent test, set forth in Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982), the party seeking expedited discovery must satisfy a standard that closely resembles the standard for obtaining preliminary injunctive relief:  "courts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer is the expected relief is granted."  Notaro, 95 F.R.D. at 405; see also Disability Rights Council, 234 F.R.D. at 6. Plaintiffs are not entitled to expedited discovery under either test.

A.    **Plaintiffs Cannot Satisfy the "Reasonableness" Test Used for Discovery In Aid of a Motion for a Preliminary Injunction**

Plaintiffs cannot satisfy the "reasonableness" inquiry for expedited discovery.[10]  First, although CREW's motion for preliminary injunction is pending, neither CREW nor NSA contend that the expedited discovery is necessary for the purposes of establishing any entitlement to CREW's requested emergency relief.  Indeed, CREW has consistently and

_____

[10]  Contrary to plaintiffs' contention, Express One Int'l v. U.S. Postal Serv., 814 F. Supp. 87, 92 (D.D.C. 1992) does not establish that expedited discovery is proper.  Although NSA claims that the court in Express One "grant[ed] expedited discovery in order to expedite resolution of the case," the court stated instead that neither party would be harmed by a preliminary injunction, in part because the parties mutually agreed to handle the case "expeditiously."  (NSA Mot. at 11.) The court noted that it "plan[ned] on a very limited discovery period and then a quick resolution the of the merits of the case," not that it would grant or permit expedited discovery at all. Express One, 814 F. Supp. at 92.  Similarly, Whitkop v. Baldwin, cited by both plaintiffs as support, does not address expedited discovery at the outset of a case, but discovery required given the imminence of trial.  1 F.R.D. 169, 169 (D. Mass. 1939).  Accordingly, it is inapposite.

adamantly maintained that it has sufficiently supported its request for a preliminary injunction. Moreover, defendants have offered to provide their preservation assurances in a declaration, and have represented that only the Office of Administration has care, custody or control of, and maintains all existing disaster recovery tapes relating to the electronic communications systems referenced in plaintiffs' complaints. Such assurances obviate the need for any discovery.

Second, the breadth of plaintiffs' requests go beyond the preservation obligations that CREW seeks to impose. See Disability Rights Council, 234 F.R.D. at 6 (court should consider "the breadth of the discovery requests"). The discovery requests related to the Office of Administration's records and the email architecture in place between 2003 and the present are not tailored to any request for preliminary injunctive relief. Instead, plaintiffs seeks discovery on the merits of their claims. That is not the purpose of the limited discovery courts sometimes allow in aid of a motion for preliminary injunction. See Disability Rights Council, 234 F.R.D. at 7. Courts regularly deny expedited discovery requests that "appear to be a thinly veiled attempt to circumvent the normal litigation process." Fannie Mae, 227 F.R.D. at 143. That is exactly what plaintiffs attempt to do here. Finally, due to their breadth and irrelevance, plaintiffs' requests would impose a substantial burden upon defendants. See id. at 6 (court should consider "the burden on the defendants to comply with the requests"). Defendants would be forced immediately to respond to plaintiffs' extensive discovery even before it has a chance to file its dispositive motions or otherwise answer the complaint. As explained below, the normal discovery time line would allow defendants the opportunity to file such a motion before engaging in time consuming and costly discovery – and even then, only if the administrative record were deemed inadequate.

Plaintiffs' request for expedited discovery threatens to waste not only the parties' but also this Court's valuable resources. As noted above, defendants intend to file a dispositive motion that could eliminate the need for any discovery or substantially focus the issues on which discovery is warranted. By waiting to consider defendants' dispositive motion, this court could resolve the action with only one additional round of briefing.

**B.    Plaintiffs' Request for Expedited Discovery Fails the More Stringent <u>Notaro</u> Standard**

The "reasonableness" test is more commonly used in evaluating requests for expedited discovery in aid of a pending motion for preliminary injunction. <u>Disability Rights Council</u>, 234 F.R.D. at 6. Absent any tie between expedited discovery and a pending motion for preliminary injunction, as here, this Court has also applied the <u>Notaro</u> test. <u>See, e.g.</u>, <u>Sinclair Nat'l Bank v. Comptroller of the Currency</u>, Civ. No. 00-2398, 2000 WL 34012862 (D.D.C. 2000) (HKK/DAR). <u>Notaro</u> requires movants to demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." <u>Notaro</u>, 95 F.R.D. at 405. These requirements closely "parallel those showings necessary to obtain a preliminary injunction." <u>Id.</u> n.4. "A preliminary injunction is another, more extreme way of speeding relief to plaintiffs, and these prerequisites have been established by courts to protect defendants from the potential damages of speeded up remedies." <u>Id.</u>

In <u>Sinclair</u>, this Court rejected an expedited discovery request because the movant could not establish irreparable injury.  Instead, this Court stated that "plaintiff offers only speculative references to any harm, and does not allege that any of the feared harm is imminent, or even has been threatened."  This Court therefore rejected the "speculative and conclusory affidavits" in denying the motion for expedited discovery.  Additionally, this Court held that the plaintiff in <u>Sinclair</u> had failed to establish a likelihood of success on the merits.

For the reasons explained in defendants' opposition to CREW's motion for a temporary restraining order and similar to <u>Sinclair</u>, plaintiffs cannot demonstrate either irreparable injury or a probability of success on the merits of their claims.  Unlike <u>Sinclair</u>, plaintiffs here have provided no affidavits or declarations upon which to find irreparable harm.  But even if they had, defendants' representations and offer to provide a declaration setting forth their preservation commitments negates plaintiffs' contrary contentions.  Plaintiffs' unfounded fear of harm is speculative at best and does not justify premature, far-reaching discovery.

//

//

//

//

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motions for leave to conduct expedited discovery and to compel a Rule 26(f) conference should be denied.  Discovery should be stayed, at a minimum, until defendants' anticipated motion to dismiss is ruled on by this Court.

Respectfully submitted this 9th day of November, 2007.

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2007, a true and correct copy of the foregoing

Defendants' Consolidated Opposition to Plaintiffs' Motions for Leave to Conduct Expedited

Discovery and Motion to Compel Rule 26(f) Conference was served electronically by the U.S.

District Court for the District of Columbia Electronic Document Filing System (ECF) and that

the document is available on the ECF system.


/s/ Helen H. Hong
HELEN H. HONG

-22-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No: 1:07-cv-01707 (HKK/JMF)<br>)<br>)<br>)<br>)<br>)<br>) |
| NATIONAL SECURITY ARCHIVE,<br><br>Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No: 1:07-cv-01577 (HKK)<br>)<br>)<br>)<br>)<br>)<br>) |

## [PROPOSED] ORDER DENYING PLAINTIFFS' MOTIONS FOR EXPEDITED DISCOVERY AND TO COMPEL RULE 26(f) CONFERENCE

Upon consideration of the papers filed by all the parties and arguments of counsel, it is hereby

ORDERED that CREW's Motion for Leave to Conduct Expedited Discovery and Motion to Compel Rule 26(f) Conference in Civil Action number 07-1707 be, and hereby is, DENIED. It is further

ORDERED that NSA's Motion for Leave to Serve Expedited Discovery Requests and to

Compel Rule 26(f) Conference in Civil Action number 07-1577 be, and hereby is, DENIED.  It

is further

      ORDERED that discovery in Civil Action Numbers 07-1577 and 07-1707 be, and hereby

is, STAYED pending a determination on defendants' anticipated motions to dismiss both cases.

      Dated this _____ day of _____, 2007.


                                                  _____

                                                  HONORABLE HENRY K. KENNEDY
                                                  United States District Court Judge