**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | ) ) ) | |
| Defendants. | ) ) | |
| NATIONAL SECURITY ARCHIVE, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No: 1:07-cv-01577 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' CONSOLIDATED MOTION**
**TO DISMISS PLAINTIFFS' COMPLAINTS**

**INTRODUCTION**

Plaintiffs National Security Archive ("NSA") and Citizens for Responsibility and Ethics in Washington ("CREW") each raise eight claims in their consolidated actions, seeking relief for defendants' alleged inadequacies in past recordkeeping practices and for current recordkeeping guidelines. None of the claims is properly before this Court. First, plaintiffs have made clear that they bring their complaints to challenge defendants' recordkeeping practices for Presidential records. As they have claimed,

> Presidential records belong in history because they help provide insight into the decisions made by a president and his administration.  More important, because they are the byproducts of work done on behalf of the nation, those records belong to the people of the United States.  This lawsuit is all about protecting those records and ensuring that the American public will have future access to them.

(CREW's Reply in Support of Pl's Mot. for Temporary Restraining Or. at 1 (emphases added).)  It is clearly established law, however, that the President's recordkeeping practices are not judicially reviewable.  The D.C. Circuit announced long ago that the type of claims raised in plaintiffs' lawsuits – seeking retrieval of Presidential records and review of archival systems for Presidential records included among "White House emails" – are nonjusticiable and must be dismissed.

Putting aside plaintiffs' focus on Presidential records, this Circuit has made plain that the Federal Records Act ("FRA") also limits judicial review to address only a narrow class of perceived harms.  Plaintiffs nonetheless seek broad-reaching relief that is not permitted by the FRA.  This Court may not, as plaintiffs request, order the restoration and retrieval of any allegedly missing federal records.  The D.C. Circuit has held that such relief must be achieved, if at all, through the administrative and legislative scheme set forth by Congress.  Plaintiffs' broader claims under the FRA, therefore, must be dismissed.

Plaintiffs also lack constitutional standing to bring their suits.  Under prevailing standing law, neither NSA nor CREW may bring claims for potential, future denial of access to federal records that plaintiffs speculate may be missing.  Yet that is the sole ground upon which both NSA and CREW seek relief.  Neither NSA nor CREW is a proper plaintiff and neither presents a constitutional case or controversy because they do not allege the distinct, palpable, actual and

threatened injury required under the Constitution.  As the Supreme Court recently remarked, "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."  <u>DaimlerChrysler v. Cuno</u>, 126 S. Ct. 1854, 1860-61 (2006).

Even assuming standing, however, plaintiffs' claims for writs of mandamus (NSA Compl. claims 3, 4, 7, 8; CREW Compl. claims 3, 4, 7, 8), must be dismissed as duplicative. Plaintiffs allege causes of action under the Administrative Procedure Act ("APA").  This court has held that where plaintiffs raise causes of action under the APA, requests for writs of mandamus must be dismissed.  Finally, both plaintiffs have sued improper parties who cannot be before this Court on plaintiffs' causes of action.  Instead of naming the "Executive Office of the President" as an agency defendant, plaintiffs must name any individual component they deem to be subject to the FRA.

At base, both the jurisdictional and merits considerations prevent this Court from adjudicating plaintiffs' claims.  Accordingly, both complaints should be dismissed in their entirety.

## **BACKGROUND**

## I.    **FACTUAL BACKGROUND**

Plaintiff National Security Archive ("NSA") states in its complaint that it is a "non-profit . . . public interest research institute and library based at George Washington University."  (NSA Compl. ¶ 5.)  NSA "collects, catalogues, indexes and publishes declassified and unclassified government documentation on national security and foreign affairs policy, practices and

activities, and makes such records available to historians, researchers, and individuals throughout the country." (Id.) NSA states that "[t]hrough its research and publication activities, [it] intends to use, and make available to historians, journalists, and researchers, records on White House policies, management and administration created by the Office of Administration and other federal agencies and offices." NSA also states that it "has a direct interest in ensuring that these records are maintained, preserved, and made accessible to the public in accordance with federal law." (Id.)

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") states in its complaint that it is a "non-profit, non-partisan corporation . . . committed to protecting the right of citizens to be informed about the activities of government officials and ensuring the integrity of government officials." (CREW Compl. ¶ 5.) CREW "seeks to empower citizens to have an influential voice in governmental decisions and in the governmental decision-making process through the dissemination of information about public officials and their actions." (Id.) Moreover, to conduct its research, CREW "frequently uses government records made available to it under the Freedom of Information Act." (Id. ¶ 6.) "Through its research and dissemination activities, CREW" states that it "intends to use and make available to the public records that are created by the Office of Administration and other federal agencies and offices, including agencies within the Executive Office of the President[.]" (Id.) CREW states that it has a "direct interest in ensuring that these records are maintained, preserved, and made accessible to the public in accordance with federal law," and that it currently has FOIA requests pending with the Office of Administration and the Council on Environmental Quality. (Id.)

On September 5, 2007, NSA filed an eight-count complaint, charging in the first four counts that defendants "Executive Office of the President," the Office of Administration, the Director of the Office of Administration, the National Archives and Records Administration, and the Archivist of the United States had failed their duties to initiate action through the Attorney General to preserve and restore federal and Presidential records allegedly missing "from the White House servers since March 2003 through the present." (NSA Compl. ¶¶ 36, 44-68.) NSA defined defendant Executive Office of the President to include "the agency known as EOP, as well as its individual agency components that are subject to the Federal Records Act." (NSA Compl. ¶ 7.) Specifically, in counts one and two, NSA alleges that defendants violated 44 U.S.C. §§ 2905 and 3106 by failing to "request that the attorney general initiate action or seek other legal redress to recover" emails allegedly deleted or missing from "White House servers." (NSA Compl. ¶ 18.) NSA contends that defendants' inaction has harmed it by "denying it future access to these important historical documents." (NSA Compl. ¶¶ 48, 53.) In counts three and four, NSA seeks a writ of mandamus ordering defendants to request the Attorney General to initiate action under 44 U.S.C. §§ 2905 and 3106 to recover the allegedly deleted or missing emails. (NSA Compl. ¶¶ 61, 68.)

In the latter four counts, NSA seeks to compel defendants to establish an "adequate archival system . . . for the archival and preservation of e-mails." (Id. ¶¶ 69-98.) NSA contends specifically in counts five and six that defendants have failed install an "adequate system for preserving and archiving" federal records, thereby "harming [NSA] by denying it future access to these important historical documents." (NSA Compl. ¶¶ 74, 81.) In counts seven and eight, NSA requests a writ of mandamus ordering defendants to comply with provisions of the FRA.

Among its other requests for relief, NSA sought an order requiring all defendants "to restore deleted e-mails from the back-up tapes and to maintain and preserve the federal and presidential records comprised therein." (NSA Compl. at 27.)

On September 25, 2007, plaintiff CREW filed its own eight-count complaint, raising the same claims NSA raised on September 5. CREW alleged the same causes of action, claiming that defendants' inaction has harmed CREW by "denying it current and future access to important historical documents that would shed light on the conduct of public officials." (CREW Compl. ¶¶ 53, 58, 65, 72, 79, 86, 94, 102.) CREW, too, requested an order requiring all defendants "to restore deleted e-mails from back-up tapes and to separately maintain and preserve the federal and presidential records comprised therein." (CREW Compl. at 28.)

## II.    FEDERAL RECORDS ACT

The FRA, the only records statute through which a plaintiff may seek judicial review of the recordkeeping practices of federal agencies, is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." Public Citizen v. Carlin, 184 F.3d 900, 902 (D.C. Cir. 1999), cert denied 529 U.S. 1003 (2000); see 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. The FRA "authorizes the head of each Federal agency to establish a records management program and to define the extent to which documents are appropriate for preservation as agency records." Kissinger v. Reporters Committee For Freedom of the Press, 445 U.S. 136, 147 (1980). Agency heads are directed by the FRA to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," and "shall establish safeguards against the removal or loss of records

[they] determine[] to be necessary and required by regulations of the Archivist." Id. § 3105.

Additionally, the Act "provides the exclusive means for record disposal."[1] Id.; see 44 U.S.C. § 3303(a).

> Records covered by the FRA include
>
> all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of that organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of the data in them.

44 U.S.C. § 3301. By regulation, records under the FRA are deemed either "permanent" or "temporary." Permanent records include any federal record that "has been determined by [the National Archives Record Administration ("NARA")] to have sufficient value to warrant its preservation in the National Archives of the United States." 36 C.F.R. § 1220.14 (2006). Temporary records are any records "which have been determined by the Archivist of the United States to have insufficient value . . . to warrant its preservation by [NARA]." Id.

The FRA also establishes an administrative enforcement scheme, comprised of two complementary mechanisms for protecting records. Armstrong v. Bush, 924 F.2d 282, 294 (D.C. Cir. 1991). Under 44 U.S.C. § 2905, if the Archivist learns that federal records are being mishandled in certain material ways, then he or she may notify the relevant agency head, assist

---

[1] The Records Disposal Act, 44 U.S.C. § 3101, et seq., controls the disposition of records, but as the D.C. Circuit has treated the RDA as a portion of the FRA, Public Citizen, 184 F.3d at 902 (referring to "the RDA portion of the FRA"), defendants do so as well.

the agency head in initiating an action through the Attorney General (or initiate the action

himself or herself if the agency head refuses), and (in certain situations) notify Congress:

> "[The Archivist] shall notify the head of a Federal agency of any
> actual, impending, or threatened unlawful removal, defacing,
> alteration, or destruction of records in the custody of the agency that
> shall come to his attention, and assist the head of the agency in
> initiating action through the Attorney General for the recovery of
> records unlawfully removed and for other redress provided by law.
> In any case in which the head of the agency does not initiate an action
> for such recovery or other redress within a reasonable period of time
> after being notified of any such unlawful action, the Archivist shall
> request the Attorney General to initiate such an action, and shall
> notify the Congress when such a request has been made."

44 U.S.C. § 2905(a).  Under 44 U.S.C. § 3106, in turn, each agency head may alert the Archivist

of the material mishandling of federal records and seek to initiate an action through the Attorney

General to put a stop to the improper practice(s):  "The [agency head] shall notify the Archivist

of any actual, impending, or threatened unlawful removal . . . or destruction of records in the

custody of the agency. . . [and] shall initiate action through the Attorney General for the recovery

of records he knows or has reason to believe have been unlawfully removed from his agency[.]"

44 U.S.C. § 3106.

## ARGUMENT

Plaintiffs complaints should be dismissed under Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure.  Rule 12(b)(1) permits defendants to move to dismiss a claim

on the ground that the court lacks subject matter jurisdiction because the plaintiffs lack standing,

for example, or because the United States has not waived its sovereign immunity.  In contrast to

a motion to dismiss brought under Rule 12(b)(6), when a party moves to dismiss a complaint for

lack of subject matter jurisdiction under Rule 12(b)(1), a court may consider the motion based on the complaint standing alone or, where necessary, on the complaint "supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992). Upon motion, the plaintiff then bears the burden to prove by a preponderance of the evidence that the court has jurisdiction to hear its claims. See Made in the USA Found. v. Gen. Motors Corp., 2005 WL 3676030, No. 4-0553, at *1 (D.D.C. March 31, 2005) (Robertson, J.). Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss for lack of jurisdiction, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commun. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). In the court's analysis, plaintiffs' "factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion." Blancett v. United States Bureau of Land Mgmt., No. 04-2152, 2006 WL 696050 (D.D.C. March 20, 2006) (internal quotations and citations omitted). Because plaintiffs have failed to establish standing, and because they have failed to raise justiciable claims, their complaints must be dismissed pursuant to Rule 12(b)(1).

       To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)

(footnote omitted) (citations omitted).  In evaluating the sufficiency of the complaints, the Court

considers only "the facts alleged in the complaint, any documents either attached to or

incorporated in the complaint and matters of which [the Court] may take judicial notice."  See

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  The rules of

pleading require factual allegations "plausibly suggesting," and "not merely consistent with," the

elements of a valid claim for relief, and plaintiffs must comply with the "threshold requirement

of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled

to relief.'"  See Bell Atl. Corp., 127 S. Ct. at 1966.

I.      **PLAINTIFFS' CLAIMS SEEKING RESTORATION AND RETRIEVAL OF
        RECORDS GOVERNED BY THE PRESIDENTIAL RECORDS ACT, AND
        REVIEW OF ARCHIVAL SYSTEMS FOR "WHITE HOUSE EMAILS" THAT
        ARE PRESIDENTIAL RECORDS, MUST BE DISMISSED**

        Although NSA and CREW do not specifically reference the Presidential Records Act

("PRA") as the basis for any one cause of action, they have made clear that they seek to use their

complaints to seek relief relating to Presidential records.  For example, both plaintiffs devote

significant time in their complaints in describing the PRA (NSA Compl. ¶¶ 22-28; CREW

Compl. ¶¶ 24-30), describing alleged harms arising under the PRA (NSA Compl. ¶ 37

("Although these federal and presidential records are not currently preserved as mandated by the

FRA and the PRA, they are recoverable and capable of being preserved."); CREW Compl. ¶ 42

(same)), and requesting relief under the PRA.  Accordingly, both NSA and CREW seek an

"[o]rder, in the form of injunctive and mandamus relief, [requiring] Defendants to restore deleted

e-mails from the back-up tapes and to maintain and preserve the federal and presidential records

comprised therein."  (See NSA Compl. at 27 ¶ 3; CREW Compl. at 28 ¶ 3 (emphases added).)

Moreover, plaintiffs seek an order requiring defendants to establish an "adequate electronic records management system, similar in function to ARMS, for archiving and preserving White House emails."  (See, e.g., CREW Compl. ¶ 103.)  Such relief is beyond this Court's reach. Judicial review of compliance with the PRA is simply unavailable.

"Presidential records" covered by the PRA include "documentary materials, or any reasonably segregable portion thereof, created or received by the President, his immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise and assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President."  44 U.S.C. § 2201(2).  It is well-settled that "[n]o record is subject to both the FRA and the PRA."  Armstrong v. Executive Office of the President, 90 F.3d 553, 556 (D.C. Cir. 1996).  Significantly, the Court of Appeals has expressly held that a private party may not challenge or seek judicial review of the President's compliance with the PRA, including recordkeeping practices and compliance.  See Armstrong v. Bush, 924 F.2d at 290.  As the D.C. Circuit has instructed, "permitting judicial review of the President's compliance with the PRA would upset the intricate statutory scheme Congress carefully drafted to keep in equipoise important competing political and constitutional concerns."  Id.  Accordingly, plaintiffs' claims seeking relief relating to PRA-covered records must be dismissed.[2]

---

[2]  Alternatively, this Court may strike all of plaintiffs' allegations and requests for relief relating to the PRA under Federal Rule of Civil Procedure 12(f).

## II.    PLAINTIFFS' CLAIMS SEEKING RELIEF UNDER THE FEDERAL RECORDS ACT MUST BE DISMISSED

Plaintiffs' claims must be dismissed as non-justiciable under the FRA as well.  Only limited review of compliance with the FRA is available.  To the extent plaintiffs' preservation requests in counts one through four are tethered to a request for this Court to order the retrieval of federal records from disaster recovery tapes, the Court is without jurisdiction to do so.  (See NSA Compl. at 27 ¶ 3; CREW Compl. at 28 ¶ 3.)  The Court of Appeals has held that the FRA precludes APA claims seeking this sort of injunctive relief because under the FRA such relief can be sought, if at all, only by the government through the FRA's detailed and exclusive administrative enforcement system.  Armstrong, 924 F.2d at 294; see also 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24.

The plaintiffs in Armstrong sued the President, the Archivist, and the National Security Council to prohibit them from erasing certain materials stored on the Council's computer system. 924 F.2d at 284.[3]  Plaintiffs alleged, among other things, that some Council officials and staff members were destroying federal records in violation of the Council's regulations governing the treatment of federal records, which were promulgated pursuant to the FRA.  Id. at 291, 294.  To remedy this alleged violation of the FRA, plaintiffs brought a claim under the APA seeking an injunction against the destruction of such records.  Id.  The Armstrong court dismissed that APA claim, holding that it was precluded by the FRA.  924 F.2d at 294.  Under the FRA, the court held, an order enjoining the destruction or removal (or relatedly, requiring the retrieval) of

---

[3]  The National Security Council was subsequently held to be a PRA, and not FRA, entity and its recordkeeping practices not justiciable under the FRA. See Armstrong v. Executive Office of the President, 90 F.3d 553, 567 (D.C. Cir. 1996), cert denied 520 U.S. 1239 (1997).

records could be sought only by the government through the FRA's carefully crafted system of administrative enforcement:  "Because it would clearly contravene [the] system of administrative enforcement to authorize private litigants to prevent an agency official from improperly destroying or removing records, we hold that the FRA precludes judicial review of such actions."  Id.

There is no relevant difference under Armstrong between a request for an order enjoining removal and a request for an order requiring retrieval because an action for retrieval upsets the system of administrative enforcement, Kissinger v. Reporters Committee For Freedom of the Press, 445 U.S. 136, 148-50 (1980), just as an action for an injunction preventing removal does, Armstrong, 924 F.2d at 294.  Armstrong acknowledges this fact by relying on Kissinger, 445 U.S. at 148, which involved a request for an order of retrieval. Armstrong, 924 F.2d at 294.  To the extent that plaintiffs seek in claims one through four relief broader than that permitted by this Circuit, the FRA or the APA, plaintiffs' claims must be dismissed.[4]

---

[4]  In addition, because no cause of action exists to order the restoration of records, plaintiffs' claims are barred by sovereign immunity as well.  Plaintiffs' claims are non-reviewable to the extent they seek court-ordered restoration of records because the lack of an applicable waiver of sovereign immunity is a jurisdictional defect.  See, e.g., Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 661 (D.C. Cir. 2006).  Where, as here, a statute precludes review under the APA, the APA does not waive the United States' sovereign immunity.  See 5 U.S.C. § 701(a)(1) (explaining that the APA applies except to the extent that "statutes preclude judicial review"); Heckler v. Chaney, 470 U.S. 821, 828 (1985) (noting that APA review is inappropriate unless a plaintiff "clear[s] the hurdle of § 701(a)"); High Country Citizens Alliance v. Clarke, 2006 WL 2037154, at *2 (10th Cir. July 21, 2006) ("In other words, before the waiver of sovereign immunity under § 702 applies, 'a party must first clear the hurdle of § 701(a).' "); Tozzi v. EPA, 148 F. Supp. 2d 35, 43 (D.D.C. 2001) ("The APA's sovereign immunity waiver does not apply where a statute has explicitly precluded judicial review.").  And the FRA itself does not waive the United States' sovereign immunity.  See 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24.  Without a waiver of sovereign immunity, the Court lacks subject matter jurisdiction and the claims must be dismissed pursuant to Federal Rule of Civil Procedure

-13-

Similarly, plaintiffs seek relief in counts five through eight that is not permitted under the FRA or APA. Plaintiffs argue that they are entitled to an injunction compelling defendants to "ensure the establishment of an adequate electronic records management system, similar in function to ARMS, for archiving and preserving White House emails." (See, e.g., CREW Compl. ¶ 80, 87, 95, 103; NSA Compl. ¶¶ 75, 82, 90, 98.) Under the FRA, however, plaintiffs are not entitled to such specific injunctive relief. Rather, they are permitted under the APA only to "judicial review of [whether defendants'] recordkeeping guidelines and directives" are arbitrary and capricious, or contrary to law. Armstrong, 924 F.2d at 296. Plaintiffs do not seek judicial review of defendants' current recordkeeping guidelines and directives in counts five through eight. Instead, they impermissibly seek further sweeping relief for an order requiring an archival system "similar in function to ARMS." Accordingly, counts five through eight must be dismissed to the extent they seek such far-reaching relief.

## III.    PLAINTIFFS LACK ARTICLE III STANDING

Even if plaintiffs raised justiciable claims, they lack standing to assert them. Accordingly, plaintiffs' claims must be dismissed under Rule 12(b)(1) for failure to establish constitutional standing as well. "The judicial power of the United States . . . is not an unconditioned authority" but is limited by Article III of the Constitution. Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 471 (1982). That Article "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984). In the absence of an actual case or controversy, the Court is

---

12(b)(1).

without jurisdiction to decide the case.  See Warth v. Seldin, 422 U.S. 490, 499 (1975); see also

Poe v. Ullman, 367 U.S. 497, 502 (1961).  Thus, a court must ensure that its authority is invoked

where there is "a lively conflict between antagonistic demands, actively pressed, which make

resolution of the controverted issue a practical necessity," id. at 503 – a requirement "founded in

concern about the proper – and properly limited – role of the courts in a democratic society."

Warth, 422 U.S. at 498.  Otherwise, "the courts would be called upon to decide abstract

questions of wide public significance even though other governmental institutions may be more

competent to address the questions and even though judicial intervention may be unnecessary to

protect individual rights."  Id. at 500.

        In an effort to give meaning to Article III's case-or-controversy requirement, "courts

have developed a series of principles termed 'justiciability doctrines,' among which are standing,

ripeness, mootness, and the political question doctrine."  Nat'l Treas. Employees Union v.

United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996).  These doctrines consist of both "prudential

elements which Congress is free to override and core component[s] which are essential and

unchanging part[s] of the case-or-controversy requirement of Article III."  Id. (internal

quotations omitted).  This action implicates a core component of that requirement – standing –

whose absence requires dismissal of counts one through eight in both complaints for lack of

jurisdiction.

        Article III standing requires that a plaintiff have suffered "an (1) injury in fact--an

invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical--(2) which is fairly traceable to the challenged act, and

(3) likely to be redressed by a favorable decision."  Nat'l Treasury Employees' Union v. United

States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation marks and citation omitted); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan, 504 U.S. at 560, and "the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 104.  Plaintiffs here fail to establish that they have a concrete and particularized, as well as actual or imminent injury for all of their claims; and additionally fail to establish that their alleged injuries may be redressed in their first four causes of action.

### A.    Plaintiffs Have Not Alleged An Adequate Injury in Fact

To satisfy the injury in fact requirement, plaintiffs must establish that they have suffered a particularized, "distinct and palpable injury" to themselves, rather than one "shared in substantially equal measure by all or a large class of citizens." Warth, 422 U.S. at 499, 501.  The injury requirement of the standing analysis is "to give the plaintiff a personal stake in the outcome," Baker v. Carr, 369 U.S. 186, 204 (1962), sufficient to ensure "that the issues will be contested with the necessary adverseness and that the litigation will be pursued with the necessary vigor to assure that the . . . challenge will be made in a form traditionally thought to be capable of judicial resolution." Flast v. Cohen, 392 U.S. 83, 106 (1968).

Plaintiffs fail to show that they have suffered distinct and palpable injury to themselves, rather than one "shared in substantially equal measure by all or a large class of citizens." Warth, 422 U.S. at 499, 501.  Plaintiffs' only alleged injuries are that they have been denied "future access to . . . important historical documents" which are necessary for the "dissemination of

-16-

information about public officials and their actions."[5]  (See, e.g., CREW Compl. ¶¶ 5, 53, 58;

NSA Compl. ¶¶ 74, 81.)  This case squarely presents a question left open in prior FRA cases,

namely, whether such generalized injury is sufficient for standing purposes.  Courts in this

Circuit have suggested that its sufficiency is "questionable."  See Am. Friends Serv. Comm. v.

Webster, 720 F.2d 29, 46 (D.C. Cir. 1983) (Webster II); Am. Friends Serv. Comm. v. Webster,

485 F. Supp. 222, 227 (D.D.C. 1980) (Webster I).  In Webster I, three categories of plaintiffs

brought an action to challenge the FBI's record destruction program.  One category of plaintiffs

included "organizations whose goals and purposes are alleged to require access to the files and

records of the FBI in order to enable them to disseminate information for organizational,

educational, and political purposes."  Id. at 226.  These plaintiffs, as plaintiffs here, claimed that

if the FBI's files were destroyed, "they w[ould] be deprived of raw material for primary research

in the areas of their activities."  Id. at 227.  The district court regarded that claimed injury as

---

[5]  CREW contends that it has been denied "current access" to records as well.  (See, e.g., CREW Compl. ¶ 58.)  Although CREW provides a conclusory allegation that it presently has FOIA requests pending with the Office of Administration and the Council on Environmental Quality, CREW does not allege that either of their requests encompass federal records that have purportedly been deleted between March 2003 and the present.  "[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commun. Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In any event, a request pending before the Office of Administration would not provide any harm because the Office of Administration does not fall within the definition of "agency" under the Freedom of Information Act, and therefore the FRA.  See CREW v. Office of Administration, Civ. No. 07-964, Dkt. #20 (Def.'s Mot. for Judgment on the Pleadings and associated briefing) (Aug. 21, 2007) (D.D.C.) (CKK).  Because the Office of Administration's records are not subject to the FRA, any purported injury in being denied access to the Office of Administration's records is not cognizable under the FRA.  Cf. Armstrong v. Executive Office of the President, 90 F.3d at  567-68.

"questionable" for standing purposes.  Id.  However, because other plaintiffs had adequately

shown injury for standing purposes, the district court concluded that it was "not necessary to

decide that question."  Id.  In the subsequent appeal, the D.C. Circuit also refrained from

deciding that question "[s]ince the district court based its finding of standing only on the injuries

. . . [of the other] groups of plaintiffs."  Webster II, 720 F.2d at 46 n.23.  Thus, it is "unsettled

whether the requisite injury-in-fact standard is met" by an organization's claimed need for files

earmarked for destruction to "disseminate information" for organizational, educational, or

political purposes.  See Webster I, 485 F. Supp. at 226-27.

       The court in Webster I contrasted the organizational plaintiffs with another group of

"individuals and organizations whose claimed need for FBI documents arises out of their

professions as historians, journalists, teachers, film writers, or attorneys."  Webster I, 485 F.

Supp. at 226.  Those plaintiffs, the court noted, were professionals whose economic livelihoods

would be harmed by a lack of access to records necessary for their professional careers and who

suffered personal harm by barred access to records.  Id.  To the contrary, plaintiffs here have not

alleged that they are professional organizations of historians, journalists, teachers, film writers,

or attorneys.  Instead, plaintiffs allege that they are "non-profit . . . public interest research

institutes" or "non-profit corporation . . . committed to protecting the right of citizens to be

informed about the activities of government officials" (NSA Compl. ¶ 5; CREW Compl. ¶ 5) – a

description that clearly makes plaintiffs more like the Webster I plaintiffs whose claim of injury

was "questionable."  Compare id. with Webster I, 485 F. Supp. at 226 (describing that group of

plaintiffs as "organizations whose goals and purpose are alleged to require access to

[government records] . . . to disseminate information for organizational, educational, and political purposes").

As controlling authority on standing shows, the open question in Webster I and Webster II should be answered in the negative: the alleged abstract harms suffered by organizations like NSA and CREW are inadequate to furnish standing to bring suit under the FRA. Plaintiffs do not allege the type of "distinct and palpable injury" to themselves required for standing, but rather one "shared in substantially equal measure by all or a large class of citizens." Warth, 422 U.S. at 499, 501.

Moreover, plaintiffs fail to establish that they have suffered real and immediate harms, and allege only speculative claims of future harm. First, unlike all the plaintiffs in Webster I and II, plaintiff NSA has not alleged that it has any pending FOIA requests for federal records covering any allegedly missing federal records. It is well established that speculative or hypothetical claims of injury are insufficient to confer standing. See Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 44 (1976) ("unadorned speculation will not suffice to invoke the federal judicial power"). Rather, the alleged injury "must be certainly impending," Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (internal quotation marks and citations omitted), and "real and immediate." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Without claims of any harm from actual denied access to federal records because of defendants' actions, NSA cannot complain of the actual or impending injury required to furnish constitutional standing to sue.[6] Similarly, though CREW alleges that it currently has pending

---

[6] Nor may NSA attempt to use CREW's conclusory allegation that CREW suffers from "current" denial of access to records to manufacture standing for itself. Daimler Chrysler, 126 S.

FOIA requests, it does not allege that any requests are pending that would cover the allegedly

missing federal records.[7]  Accordingly, both plaintiffs' speculative claims of future harm through

denial of "future access" to records are inadequate.  "Although the fact that harm or injury may

occur in the future is not necessarily fatal to a claim of standing[,] ... [such circumstances can]

lessen the concreteness of the controversy and thus mitigate against a recognition of standing."

United Transp. Union v. I.C.C., 891 F.2d 908, 913 (D.C. Cir.1998) (internal quotation marks

omitted).  Thus, when a party alleges future injury alone, the party "must demonstrate a realistic

danger of sustaining a direct injury[.]"  Id. (quoting Babbitt v. United Farm Workers Nat'l

Union, 442 U.S. 289, 298 (1979)).

Plaintiffs' standing to assert adequate injury for the latter four causes of action suffers

even more defects.  In requesting an "adequate system for preserving and archiving" emails,

plaintiffs merely speculate 1) that federal records will go missing under the current archival

system; and 2) that they will suffer future harms through denial of access to those federal

records.  As above, such speculative claims of future harm are inadequate.

This court rejected in similar circumstances the plaintiffs' standing to challenge the lack

of an executive order governing records disposition based on the speculativeness of future harm.

Although the court recognized that there existed "a significant likelihood that plaintiffs will

---

Ct. at 1867 (quoting Allen, 468 U.S. at 752 ("The standing inquiry requires careful judicial
examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to
an adjudication of the particular claims asserted.")).  NSA's suit must be dismissed in its
entirety.

[7]  As noted in footnote 5 above, CREW's claim of harm stemming from any pending FOIA
request to the Office of Administration is irrelevant because the Office of Administration does
not fall within the definition of "agency" under the FRA.

again seek access to presidential records, and face indeterminate delays in accessing them," it did

not find such allegations sufficient for standing. Am. Historical Ass'n v. Nat'l Archives &

Records Admin., 310 F. Supp. 2d 216, 228 (D.D.C. 2004), later opinion Am. Historical Ass'n v.

Nat'l Archives & Records Admin, Civ. No. 01-2447, 2007 WL 2822027 (D.D.C. Oct. 1, 2007).

As the court explained,

> [T]he Court cannot find that this future injury is sufficiently imminent, and not
> conjectural and hypothetical. At this stage, Plaintiffs have no outstanding
> requests for presidential records . . . . This Court, however, is not prescient, and
> cannot know at this point in what way the facts will reveal themselves when
> Plaintiffs themselves, or indeed other interested parties, seek the records . . . .

Id. 310 F. Supp. 2d at 228. Plaintiffs here, too, suffer from the same defect. Because claims of

speculative future harm are inadequate to confer standing, plaintiffs lack standing as to all of its

FRA claims, which are predicated on the same speculation.

**B.    Plaintiffs Have Not Met And Cannot Meet The Requirement Of
        Redressability**

Even if plaintiffs had pled a specific injury, and were able to show that it was caused by

the complained of actions, plaintiffs would still be unable to show redressability for their first

four causes of action – "a 'substantial likelihood' that the requested relief will remedy the

alleged injury in fact." Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529

U.S. 765, 771 (2000) (internal citation omitted). Where "the necessary elements of causation . . .

hinge on the independent choices of a . . . third party . . . it becomes the burden of the plaintiff to

adduce facts showing that those choices have been or will be made in such manner as to produce

causation and permit redressability of injury." Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,

366 F.3d 930, 938 (D.C. Cir. 2004) (quoting Lujan, 504 U.S. at 562) (internal quotation marks

omitted).  Thus, to the extent that plaintiffs request that the Archivist and Director of the Office

of Administration request that the Attorney General initiate some action to redress plaintiffs'

perceived wrongs, plaintiffs' relief is dependent on a third party not subject to this suit.  The

Court of Appeals has left open the question about the reviewability of the Attorney General's

decision to initiate an enforcement action at the request of the Archivist or head of an agency.

Armstrong, 924 F.2d at 296 n.11.  It is likely that such decision would be unreviewable under 5

U.S.C. § 701(a)(2) and committed to the Attorney General's discretion by law.  See Heckler v.

Chaney, 470 U.S. 821, 833 (1985).  But plaintiff has not even sued the Attorney General, so its

injury may not be redressed here.  For this additional reason, plaintiffs' first four causes of action

must be dismissed.

## IV.     PLAINTIFFS' CLAIMS SEEKING WRITS OF MANDAMUS MUST BE DISMISSED

Claims three and four, and claims seven and eight of both complaints must be dismissed.

Both sets of claims are substantially identical to claims one and two, and claims five and six

respectively, but are brought as requests for writs of mandamus, rather than under the APA.

Plaintiffs' duplicative mandamus claims must be dismissed because they have raised claims

under the APA seeking the same relief.  See, e.g., Am. Chiropractic Ass'n v. Shalala, 108 F.

Supp. 2d 1, 11 (D.D.C. 2000) (noting that availability of review under APA precludes alternative

relief for a writ of mandamus).

## V.     PLAINTIFFS NAME IMPROPER PARTIES THAT MUST BE DISMISSED

Plaintiffs may not sue the "Executive Office of the President," rather than individually

naming and serving whatever components plaintiffs contend are subject to the Federal Records

Act.  Each component must be named specifically in order to bring that component properly within the Court's jurisdiction.  As made clear by this Circuit, the coverage of the FRA "does not include EOP units whose sole function is to advise and assist the President or that do not exercise 'substantial independent authority.'"  Armstrong v. Executive Office of the President, 90 F.3d 553, 567-68 (D.C. Cir. 1996).  By naming the "Executive Office of the President," plaintiffs therefore sweep in components that are not subject to the FRA.  Requiring plaintiffs to sue specific components furthers the pleading goal of defining the scope of the complaint and the litigation.  Plaintiffs therefore err by defining defendant EOP to include "the agency known as the EOP," and must, rather, name any "individual agency components that are subject to the Federal Records Act."[8]  (NSA Compl. ¶ 7; CREW Compl. ¶ 9.)  Accordingly, this Court must dismiss the "Executive Office of the President" as a defendant in this action.

---

[8]  That the EOP was a named defendant in Armstrong does not end the analysis.  In that case, defendants had not raised the propriety of naming EOP as a defendant at the district court and the D.C. Circuit considered the issue waived on appeal.  Armstrong v. EOP, 1 F.3d 1274, 1282 n. 4 (D.C. Cir. 1993) ("[T]he appellants contend that the EOP is not a proper party to this action because it is the subparts of the EOP that are 'agencies' under the APA. The appellants, however, never raised this argument in their briefs to the district court; accordingly, it has been waived.").

## **CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss must be granted.

Respectfully submitted this 29th day of November, 2007.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C. 20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

### **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2007, a true and correct copy of the foregoing

Defendants' Consolidated Motion to Dismiss Plaintiffs' Complaints was served electronically by

the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF)

and that the document is available on the ECF system.


/s/ Helen H. Hong
HELEN H. HONG

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY<br>AND ETHICS IN WASHINGTON,<br><br>                            Plaintiff,<br><br>                  v.<br><br>EXECUTIVE OFFICE OF THE<br>PRESIDENT, et al.,<br><br>                   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No: 1:07-cv-01707 (HHK/JMF)<br>)<br>)<br>)<br>)<br>) |
| NATIONAL SECURITY ARCHIVE,<br><br>                            Plaintiff,<br><br>                  v.<br><br>EXECUTIVE OFFICE OF THE<br>PRESIDENT, et al.,<br><br>                   Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No: 1:07-cv-01577 (HHK/JMF)<br>)<br>)<br>)<br>)<br>) |

**[PROPOSED] ORDER GRANTING DEFENDANTS'**
**CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

Upon consideration of the papers filed by all the parties and arguments of counsel, it is hereby

ORDERED that Defendants' Consolidated Motion to Dismiss Plaintiffs' Complaints be, and hereby is, GRANTED.

The complaints in Civil Action Numbers 07-1707 and 07-1577 are DISMISSED.

Dated this _____ day of _____, 2007.

_____
HONORABLE HENRY H. KENNEDY
United States District Court Judge