**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | ) ) ) ) |
| Defendants. | ) ) |
| NATIONAL SECURITY ARCHIVE, | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No: 1:07-cv-01577 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF**
**CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

**INTRODUCTION**

In their opening brief, defendants established that each of plaintiffs' claims must be

dismissed on one or more of the following bases:  plaintiffs (1) brought impermissible

Presidential Records Act ("PRA") claims; (2) sought relief broader than allowed under the

Federal Records Act ("FRA"); (3) lacked standing; (4) could not raise duplicative mandamus

claims; or (5) improperly named the "EOP" as a defendant.  In their oppositions, plaintiffs offer

several concessions that evidently narrow the focus of their suits, apparently trying to bring their actions into conformity with prevailing law.

Plaintiffs now concede that they seek in counts one through four, for example, only that defendants notify the Attorney General and Congress under the FRA to initiate action to recover any missing federal – and not Presidential – records.  For counts five through eight, plaintiffs again concede that they do not seek relief related to Presidential records, but only that defendants establish an "archival system" for federal records.  Accordingly, plaintiffs' imprecise and overbroad requests for relief going to "government" or "White House" records must be dismissed – and only federal records requests may even potentially remain.

Nonetheless, even with such concessions, plaintiffs still lack Article III standing to pursue those limited FRA-based claims here.  CREW lacks adequate injury-in-fact to pursue <u>any</u> of its eight counts because it is not the type of organization that may bring such claims under D.C. Circuit law.  Although NSA provides declarations to show that it is a research organization that may maintain standing for some claims, NSA may not pursue counts five through eight because any injury is too speculative and does not constitute adequate injury-in-fact.  NSA is precluded from pursuing the first four claims as well, because any injury is not redressable as those claims depend on the actions of a third-party.  Because even plaintiffs' narrowed claims continue to suffer jurisdictional defects, defendants' motion to dismiss should be granted.  Similarly, because plaintiffs' mandamus claims are duplicative of their APA-based claims and not based on ministerial duties under the FRA, counts three and four and seven and eight must be dismissed.  Finally, plaintiffs offer no justification for maintaining "EOP" as a party defendant

when they intend only to include in the suit those EOP components subject to the FRA.

Accordingly, "EOP" must be dismissed as a defendant.

## I.     PLAINTIFFS HAVE SUBSTANTIALLY NARROWED THE RELIEF THEY SEEK IN THEIR COMPLAINTS WITH RESPECT TO ALL EIGHT CAUSES OF ACTION AND HAVE CONCEDED THAT THEY CANNOT SEEK RELIEF THAT WOULD BE BARRED BY THE PRA

Plaintiffs substantially narrow the scope of all eight claims in their complaints by conceding that they seek no relief related to Presidential – as opposed to federal – records. Plaintiffs' filings are replete, nonetheless, with references to "White House" records or emails, "White House email servers," "White House defendants," and "government records" that, by their terms, would impermissibly sweep in Presidential records to the lawsuits. Indeed, in their complaints, plaintiffs sought relief directed at such Presidential records. In the face of defendants' motion to dismiss, plaintiffs now represent that they seek relief related only to federal records. To the extent plaintiffs have narrowed their complaints to relate only to federal records – but given the overbroad language used in their complaints and the repeated vague references to "White House" records and defendants – this Court must make unambiguously clear through an order that only federal records are at issue in this case.

In contrast to their assertions in prior court filings, the language in their complaints and their prayers for relief, plaintiffs substantially narrow their requests for relief in their oppositions, contending now that they seek in their first four counts only an order requiring defendants to initiate action through the Attorney General to recover any missing federal records, and nothing more. See NSA Opp'n at 16 ("The first four counts of the Archive's Complaint, which speak for themselves and are not 'tethered' to anything else, in fact seek an order 'to require the agency

head and the Archivist to fulfill their statutory duty to notify Congress and ask the Attorney

General to initiate legal action.'"); CREW Opp'n at 2 ("[P]laintiffs are not challenging the White

House defendants' failure to comply with their obligations under the Presidential Records Act.").

Indeed, despite plaintiffs' express request for a broader order compelling the maintenance and

preservation of <u>Presidential records,</u> plaintiffs now both recognize that "there are strict limits on

this Court's ability to review violations of th[e] [PRA]."  CREW Opp'n at 17 n.15; NSA Opp'n

at 20 ("[T]here is no judicial review 'at the behest of private citizens' of the 'adequacy of the

President's records management practices or [to] overrule his record creation, management, and

disposal decision[.]").  Accordingly, plaintiffs' prayers seeking relief beyond what is permitted

by the FRA for the first four causes of action must be dismissed.[1]  <u>See, e.g.</u>, NSA Compl. at 27

---

[1]  CREW's claim that it did not seek the preservation of Presidential records in its prayer for
relief is not supported by the language of its Complaint.  CREW's Opp'n at 16.  As CREW
recognizes, this Court may not require the maintenance or preservation of Presidential records at
all.  <u>Armstrong v. EOP</u>, 924 F.2d 282, 294 (D.C. Cir. 1991).  If CREW sought merely the
separate maintenance of federal records, it would have requested an Order requesting the
separate maintenance and preservation of federal records <u>from</u> Presidential records, not <u>and</u>
Presidential records.  As made clear by CREW's filings to date, it seeks through imprecise
phrasing and terminology to sweep Presidential records and compliance with the PRA into its
Complaint and requested relief.  Through the motion to dismiss, defendants sought to make clear
that plaintiffs may not do so.

Moreover, even if CREW's allegation that defendants commingle federal and Presidential
records were true, nothing requires the absolute segregation of federal and Presidential records
as CREW contends.  CREW Opp'n at 16.  The FRA contains no segregability requirement, and
the PRA provides only that Presidential records "shall, to the extent practicable, be categorized
as Presidential records or personal records upon their creation or receipt and be filed separately."
44 U.S.C. § 2203(b).  Of course, that provision is inapplicable here.  Thus CREW's contention
that it merely seeks the "separate" maintenance of federal and Presidential records is without
basis in law and must be dismissed as requested relief.  <u>See also</u> CREW Compl. ¶ 102
(contending that defendants have duty to establish an adequate archival system "for the
preservation of federal and presidential records[.]").

¶ 1 (seeking declaration that "inaction of all Defendants to restore deleted email records [is] a violation of federal law," which should be stricken and amended to seek declaration regarding federal records under the FRA only); ¶ 3 (seeking order that defendants "maintain and preserve the federal and presidential records"); CREW Compl. ¶ 1 (same as NSA Compl. at 28 ¶ 1); ¶ 3 (same as NSA Compl. at 28 ¶ 3); see also Hopkins v. Women's Div., General Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.).

For the latter four counts of plaintiffs' complaints, defendants established in their opening brief that plaintiffs may not seek relief going to archival systems for "White House emails" that comprise Presidential records. Defs.' Mot. at 10-11. Both NSA and CREW request in counts five through eight broad relief that sweeps in Presidential records. Plaintiffs request an order compelling defendants to establish an "adequate archival system" for the preservation of "government email records," without limitation to federal records, and which would include Presidential records. See NSA Compl. at 27 ¶ 2; CREW Compl. at 28 ¶ 2. Accordingly, defendants moved to dismiss those counts to the extent plaintiffs seek relief with respect to documents that are covered by the PRA. See also CREW Compl. ¶ 79 ("By failing to ensure the installation of such a system, defendant Archivist as violated his duty . . . to establish an adequate system for the preservation of federal and presidential records.") (emphasis added); NSA Compl. ¶ 74 (same). Plaintiffs concede now, however, in contrast to the requested relief and allegations in their complaints, that while "'White House emails' may be an imprecise term"

(yet which they continue to use throughout their opposition briefs), they "have not requested relief under the PRA." CREW Opp'n at 17; NSA Opp'n at 20 ("Archive's Complaint does not call on the Court to review the President's decisions regarding the management of presidential records."). In light of the express prohibitions on the review of the recordkeeping guidelines in place for Presidential records and plaintiffs' concessions[2], the portions of counts five through eight calling for relief about "government" or "White House" emails that are not federal records must be dismissed as well. See, e.g., NSA Compl. ¶¶ 74-75, 81-82, 89-90, 97-98; at 28 ¶¶ 2, 4 ; CREW Compl. ¶¶ 78-79, 86-87, 94-95, 102-103; at 28 ¶¶ 2, 4. It must be made abundantly clear that only federal records may be at issue in any of plaintiffs' claims.

## II. PLAINTIFFS HAVE SUBSTANTIALLY NARROWED THEIR REQUESTED RELIEF UNDER THE FRA FOR ALL EIGHT COUNTS AND CANNOT SEEK RELIEF THAT EXCEEDS THE LIMITS OF REMEDIES AVAILABLE UNDER THE FRA

As with their claims impermissibly seeking relief prohibited by the PRA, plaintiffs substantially narrow the relief they seek under the FRA in their opposition briefs as well. Defendants moved to dismiss claims one through four to the extent that plaintiffs requested an order "in the form of injunctive and mandamus relief, to restore deleted e-mails from the back-up tapes and to separately maintain and preserve the federal and presidential records comprised therein." CREW Compl. at 28 ¶ 3; NSA Compl. at 27 ¶ 3. As explained by the D.C. Circuit, however, such injunctive relief is not available under the limited review permissible pursuant to

---

[2] Although NSA contends that "the initial classification of existing materials" as PRA records or not may be subject to judicial review, it does not contest the D.C. Circuit's unambiguous holding that the President's "compliance with the PRA" is not judicially reviewable. NSA Opp'n at 21-22. In counts five through eight, plaintiffs do not raise whether a record is properly classified as Presidential or not, but challenge defendants' compliance with recordkeeping laws. Accordingly, any request for review of compliance with the PRA is not justiciable.

the FRA. "Because it would clearly contravene the system of administrative enforcement to authorize private litigants to prevent an agency official from improperly destroying or removing records, we hold that the FRA precludes judicial review of such actions." Armstrong I, 924 F.2d at 290. Indeed, faced with similar requests, this court recently dismissed a claim seeking court-ordered retrieval of records. See Citizens for Responsibility and Ethics in Washington v. United States Dep't of Homeland Security, No. 06-0883, Slip Op. (D.D.C. Dec. 17, 2007) (RCL). In response to CREW's request for court-ordered retrieval of records, the court there held that:

> Given the firm language in Armstrong I, CREW is precluded from suing the DHS to enjoin the agency from acting in contravention of its own recordkeeping guidelines or the FRA. The Court may not, in other words, prohibit the DHS from improperly discarding agency records, see Armstrong I, 924 F.2d at 294 (noting "private litigants" may not "invoke federal courts to prevent an agency official from improperly destroying or removing records"), or require the DHS to retrieve records that have already been transferred to the White House, see Kissinger, 445 U.S. at 148 (noting "the Federal Records Act establishes only one remedy for the improper removal of a 'record' from the agency. The head of the agency is required . . . to notify the Attorney General"). If any remedy is to be had, it will come from the statutory safeguards devised by Congress.

Id. at 17-18.[3]

The identical principle applies here. Plaintiffs now contend – in contrast to the relief requested in their complaints – that the "sole remedy" sought in their first four claims is to

_____

[3] The court in CREW v. DHS recognized that in limited circumstances, a court may, "temporarily, order an agency to preserve records until the Archivist is able to ensure that federal records are not destroyed." No. 06-0883, Slip Op. at 18 n.15. Such a preservation order – to preserve the court's ability to afford full relief – does not include the retrieval of allegedly lost records, which is left to the administrative scheme under the FRA. What CREW and NSA seek, however in their prayer for relief, is the retrieval and restoration of "deleted emails." NSA Compl. at 27 ¶ 3; CREW Compl. at 28 ¶ 3. Under prevailing case law, CREW and NSA are precluded from obtaining such relief. See also CREW Opp'n at 22 (stating that they seek an injunction that would require defendants to "adopt a 'full-scale method' for preventing the destruction of federal electronic records" for the latter four counts); NSA Opp'n at 18 (similar).

compel the defendants to "initiate action, through the attorney general, for the restoration of deleted federal records." NSA Opp'n at 14; CREW Opp'n at 18. Plaintiffs now claim that they do not "attempt to short-circuit the FRA's administrative remedies" by seeking court-sanctioned restoration and retrieval of records, "but rather to jump-start" administrative relief. NSA Opp'n at 14. In light of plaintiffs' concessions and the governing law, plaintiffs' request for Court-ordered retrieval of records on their first four causes of action must be dismissed. See, e.g., NSA Compl. at 27 ¶ 3; CREW Compl. at 28 ¶ 3.

As for counts five through eight, defendants acknowledge that a party may, in certain circumstances, seek judicial review of recordkeeping guidelines and directives under the FRA and APA, if the party has standing.[4] See Defs.' Mot. at 14. What parties may not request, however, is precisely what plaintiffs have requested here: a specific injunction requiring the establishment of a records system, "similar in function to ARMS." See, e.g., CREW Compl. ¶¶ 80, 87, 95, 103; NSA Compl. ¶¶ 75, 82, 90, 98. As recognized in Armstrong II, it is up to the "agencies [to come] up with new, adequate records management guidelines to replace the ones voided by the district court's declaratory order," to the extent some guidelines are held to be inadequate. Armstrong v. Executive Office of the President, et al., 1 F.3d 1274, 1288 n.12 (D.C. Cir. 1993) (emphasis added); cf. Vermont Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances, . . . administrative agencies should be free to fashion their own rules of procedure . . . [in a manner that facilitates] the discharge [of] their multitudinous duties."). The parties may

---

[4] As shown in defendants' opening motion and below, neither CREW nor NSA has standing to assert claims five through eight.

not request that any specific recordkeeping practice or specific type of system, like ARMS, be

ordered.  Even Armstrong II, which plaintiffs rely on for support, see NSA Opp'n at 18-20;

CREW Opp'n at 21-22, did not sanction the type of specific injunctive relief requested here by

the plaintiffs.  Rather, in Armstrong II, the court sanctioned broad directives that enjoined the

defendants from destroying federal records until an adequate system could be implemented.  Id.

Accordingly, plaintiffs' broader requests for relief in claims five through eight – seeking an

order for an archival system, like ARMS – must be dismissed.

### III.    PLAINTIFFS LACK ARTICLE III STANDING TO PURSUE ANY COUNT OF THEIR COMPLAINTS

Even having narrowed the FRA claims, and in addition to the foregoing reasons,

plaintiffs are barred from pursuing this action for lack of standing.  Plaintiff CREW is barred

from pursuing any count because it makes no claim to the professional or occupational need for

the type of historians, journalists, teachers, film writers or attorneys for whom the court in

Webster I found standing and adequate injury-in-fact.  As an organization with political

purposes, it has not established that it suffers the type of injury sufficient to confer constitutional

standing.  Accordingly, CREW must be dismissed from the action in its entirety.

NSA, on the other hand, provides a declaration to establish for the purposes of the motion

to dismiss that it may not suffer from the same Webster I bars as CREW.  However, NSA

nonetheless lacks adequate injury-in-fact to pursue the latter four causes of action.  Because its

claims of future harm are speculative, it does not possess standing to request prospective

injunctive relief for those latter four claims.  And it is barred also from pursuing the first four

causes of action because it has not established redressability since those claims depend on the

actions of a third-party who is not present in this action.  CREW, too, putting aside <u>Webster I</u>

standing bars, would not have standing for the same reasons to pursue any of its counts.

**A.  Plaintiffs Have Not Established An Adequate Injury-in-Fact: NSA, For the Latter Four Counts, and CREW, For Any of its Eight Counts**

Plaintiffs contend that they have suffered adequate injuries-in-fact to justify both

historical and prospective relief.  In so doing, plaintiffs ignore and mischaracterize the court's

statements in <u>Webster</u>, and seek to relax the constitutional requirements for injury-in-fact

adequate to furnish constitutional standing.

NSA's declarations establish for the purposes of the Court's consideration of defendants'

motion to dismiss, that it may be the type of organization whose "claimed need for . . .

documents arises out of their professions as historians, journalists, teachers, film writers or

attorneys."  <u>Webster I</u>, 485 F. Supp. at 226; <u>see also</u> Blanton Decl. ¶¶ 3-24.  Nonetheless, NSA

may not pursue relief for future prospective injunctive or declaratory relief in their latter four

causes of action because it has not established a sufficient threat of future harm that is not either

speculative or remote.  Without adequate threat of injury for those latter four counts, those

claims for relief must be dismissed.

In <u>CREW v. Department of Homeland Security</u>, this court recently dismissed a case for

CREW's lack of standing for prospective declaratory and injunctive relief.  Civ. No. 06-0883,

Slip. Op. at 7-10 (D.D.C. Dec. 17, 2007) (RCL).  Although the court acknowledged that CREW

had alleged past injuries arising from denial of access to records because of allegedly inadequate

recordkeeping practices, it stated that such "past injury-in-fact . . . does not in of itself give

CREW standing to seek prospective relief."  <u>Id.</u> at 7.  In concluding that CREW lacked standing,

the court dismissed CREW's claims that it would be subject to continuing injury because it

would continue to use FOIA to gain access to agency records.

> These alleged future injuries – while certainly plausible – are too speculative and
> remote at this point to give CREW standing to seek prospective relief. . . .  Most
> notably, CREW does not allege anywhere in its complaint or opposition brief that
> it has a FOIA request pending with the DHS or that it intends to file a specific
> FOIA request with the DHS for WAVES records in the near future.  Without this
> information, the Court cannot say that the alleged future injury is either real or
> imminent.  That CREW may one day file another FOIA request with the DHS
> does not represent a cognizable, palpable injury which presents a case or
> controversy for the Court to consider.

Id. at 24.  Thus, although informational injury could be adequate for some claims, the court

concluded that prospective relief required a further showing.[5]  "While there [was], admittedly, a

reasonable probability that CREW will seek these records in the future, this presumption is not

enough to establish an imminent, non-speculative injury-in-fact."  Id.

NSA's declaration falls short of establishing adequate injury-in-fact for counts five

through eight.  NSA establishes that it has filed 250 FOIA requests with EOP components, and

that it currently has 90 FOIA requests with EOP components.  Blanton Decl. ¶¶ 26, 27.  NSA

contends that it will request additional records going forward because of its research missions.

Id. ¶ 33.  Nonetheless, there is no concrete showing of immediate or actual harm, as required by

the Constitution for prospective relief or any indication about "specific FOIA requests" it will

---

[5]  For that reason, the "informational injury" cases cited by plaintiffs are inapposite because the
relief requested related to the past informational injury.  See. e.g., CREW Opp'n at 25; NSA
Opp'n at 27-28.

file  "with the [EOP components] for [federal] records in the near future."[6] <u>DHS</u>, Civ. No. 06-0883, Slip. Op. at 24.

CREW's declaration here, too, as before the court in <u>CREW v. DHS</u>, falls short of establishing a real or imminent threat of future injury.  Although CREW identifies that CREW "has filed hundreds of FOIA requests with a wide variety of government agencies," Sloan Decl. ¶ 3, CREW identifies only that it has currently pending requests before the CEQ, OA, and past requests of OMB.  <u>Id.</u> ¶¶ 3, 5, 6, 7.  While CREW provides in conclusory fashion that it will "continue to file FOIA requests in the future, including requests of EOP components," such abstract commitments do not provide enough to conclude that real and imminent harm would injure CREW going forward.[7]  <u>Id.</u> ¶ 7; <u>see</u> <u>CREW v. DHS</u>, Civ. No. 06-0883, Slip. Op. at 24.

Although plaintiffs both rely heavily on <u>Armstrong I</u> to suggest that they have standing for historical and prospective relief, the court in <u>Armstrong I</u> did not address constitutional standing, but analyzed merely prudential standing.  <u>But see</u> <u>New York v. Microsoft Corp.</u>, 209 F. Supp. 2d 132, 144-145 (D.D.C. 2002) ("This Court is loathe to presume . . . that the Court of Appeals did not consider the jurisdictional issue of standing.  Rather, because Article III courts

---

[6]  In <u>Public Citizen</u>, the court did not examine whether future harms were too speculative, but appeared, instead, to focus on the distinction drawn in <u>Webster I</u> between organizations with researchers, historians and journalists and others.  2 F. Supp. 2d at 6 ("The government claims that plaintiffs have not met the first prong of the standing test – injury-in-fact – because their interest in this case is 'ideological and abstract.' . . .  The court disagrees.").  Accordingly, it is not instructive on whether NSA's injuries are too remote to support prospective relief.

[7]  Moreover, the fact that CREW has pending requests with OA and CEQ, which are limited to materials as they existed on the date of the request, does not establish that CREW will suffer injuries from any perceived inadequacies in the archival system going forward.  Of course, the request of OA does not bear on the issues before this court either, because those records are not governed by the FRA.

are required to satisfy themselves of their own jurisdiction before proceeding to the merits of a case . . . it seems far more appropriate to conclude, 'by necessary implication,' that the threshold of constitutional standing . . . was resolved prior to the Court of Appeals' evaluation of the merits of plaintiffs' claims.").  Because NSA and CREW's speculation about future harm is too remote, they may not pursue the latter four causes of action.  As shown below, their claims for relief in their first four counts must be dismissed as well because of the absence of redressability. Without standing to pursue any of the counts, the complaints must be dismissed in their entirety.

CREW suffers also from a more fundamental flaw.  As an initial matter, CREW is not a proper plaintiff under the courts' reasoning in Webster.  At base, CREW's interest in the case and alleged injuries arise from purported "organizational political purposes."  Accordingly, the teaching of Webster I, 485 F. Supp. at 227, bars CREW from pursuing any of its claims.

CREW nonetheless suggests that Webster is not instructive, contending that Webster "focuses exclusively" on prudential standing only.  CREW Opp'n at 25.  In Webster I, of course, the district court examined whether organizations had pled adequate injury-in-fact for constitutional standing.  485 F. Supp. at 227.  As the court explained:

> The injury claimed by the third group of plaintiffs for standing purposes is more questionable.  That group consists of organizations which assert that their activities include the furtherance of civil liberties; civil rights; social, cultural, and economic change; and world peace.  These organizations, suing on their own behalf and on behalf of their members claim to have a need for access to FBI files under the FOIA to pursue their various goals, and they contend that if the files are destroyed, they will be deprived of raw material for primary research in the areas of their activities.  It is unsettled whether requisite injury-in-fact standard is met by a claim that government documents, earmarked for destruction, are needed for organizational political purposes.

Id.

As CREW explains, it operates for organizational political purposes much like the organizations addressed in Webster I.  CREW claims a "commitment to transparency in government, [with] efforts to combat actions of this administration to undermine transparency in government and CREW's commitment to educating citizens about how President Bush and his administration perform their duties and responsibilities."  CREW Opp'n at 23; Sloan Decl. ¶¶ 2, 3, 8.  Like the organizational plaintiffs in Webster whose standing was questionable, CREW claims to be deprived of "raw material for primary research" to further its organizational purposes, Webster I, 485 F. Supp. at 227, but makes no claim to professional or occupational need for the type of historians, journalists, teachers, film writers or attorneys for whom the court in Webster I found standing.  Sloan Decl. ¶¶ 2, 3, 8; see also Webster I, 485 F. Supp. at 227 n.8 (noting that organizations claiming informational need for professional or occupational purposes would plead adequate injury in fact).  Accordingly, for the reasons set forth in defendants' motion to dismiss and above, CREW lacks standing to pursue any of its claims and must be dismissed as a party plaintiff.[8]

**B.    Plaintiffs Have Not Met and Cannot Meet the Requirement of Redressability for Standing on Their First Four Causes of Action**

Defendants set forth in their opening brief that plaintiffs, aside from other standing bars, failed to establish standing on their first four causes of action because of redressability concerns.

---

[8]  For that reason, Public Citizen does not assist CREW either.  In Public Citizen, the court found standing, in part on the finding that plaintiffs were "historians, researchers, journalists and authors," citing Webster II.  Moreover, even though some courts proceed with claims if they find that at least one plaintiff has standing, it would be inappropriate to proceed further – if NSA is found to have standing for any of its claims – with CREW as a plaintiff here.  The plaintiffs have filed motions seeking discovery, for example, and permitting a party without standing to participate in the litigation process would be wholly improper.

Defs.' Mot. at 22 (emphasis added).  Nonetheless, plaintiffs' oppositions suggest that their latter four claims – which do not require the "actions of a third party" or implicate redressability concerns – confer plaintiffs with constitutional standing for the entirety of their actions. Plaintiffs therefore do not directly address defendants' arguments on redressability.  Rather, they imply that defendants' failure to raise redressability concerns with respect to counts five through eight somehow results in plaintiffs having standing for all of their claims.   See CREW Opp'n at 28; NSA Opp'n at 31.

    Standing for the first four causes of action may not be manufactured, however, by the bootstrapping method plaintiffs propose.  The Supreme Court has "insisted, for instance, that a plaintiff must demonstrate standing separately for each form of relief sought."  DaimlerChrysler Corp. v. Cuno, 126 S.Ct. 1854, 1867 (2006) (internal citations and quotations omitted). "[S]tanding cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press," given that standing is not commutative or "dispensed in gross."  Id.  Because plaintiffs' first four claims depend on the actions of a third-party to redress plaintiffs' claimed injuries (from a lack of access to allegedly missing records), plaintiffs lack standing to pursue the first four causes of action.  The latter four causes of action do nothing to remedy that deficiency.

    Plaintiffs also suggest that the Congressional notification provision of § 2905 "increases the likelihood that adequate relief will result" and that redressability is therefore guaranteed, even for their first four causes of action.  NSA Opp'n at 31 n.17; see also CREW Opp'n at 28. Of course, by relying on political pressures that may be imposed by Congress, plaintiffs again rely on the "independent choices of a . . . third party," creating the same redressability concerns outlined in the opening motion and above.  Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,

366 F.3d 930, 938 (D.C. Cir. 2004). Moreover, the redressability prong of standing examines whether <u>judicial relief</u> will redress any injury suffered, not whether political pressure or political relief can redress any injury.[9] Article III of the Constitution requires parties to establish that disputes are appropriate for judicial intervention – not political intervention. <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975) (without standing requirement, "courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights").

Finally, <u>Armstrong I</u> did not address whether the parties there would have constitutional standing or analyze any redressability concerns, as plaintiffs suggest. <u>Cf.</u> CREW Opp'n at 25 (claiming that the court in <u>Webster</u> focused exclusively on prudential standing and implying therefore that <u>Webster</u> has no bearing on constitutional standing issues). Rather, the court in <u>Armstrong I</u> examined whether, in all instances, a party would be prevented from seeking APA review of the enforcement provisions of the FRA. In response to the defendants' arguments in <u>Armstrong I</u> that the notification provisions were not judicially reviewable or provided for action committed to agency discretion by law, the court responded that "it would not be inconsistent with <u>Kissinger</u> or the FRA to permit judicial review of the agency head's or Archivist's refusal to seek an initiation of enforcement action by the Attorney General." 924 F.2d at 295. But the

_____

[9] By suggesting also that the Congressional notification provisions of the FRA "increase[] the likelihood that adequate relief will result," plaintiffs suggest that Congress is not currently aware of this pending litigation and plaintiffs' allegations. NSA Opp'n at 31 n.17. As plaintiffs are well aware, that is not the case. In ordinary cases, the notification provisions operate to inform an otherwise unaware Congress and Attorney General of unlawfully removed or destroyed federal records. <u>See</u> <u>Armstrong I</u>, 924 F.2d at 295.

court did not purport to address redressability. Indeed, the plaintiffs had not raised notification claims and the court remanded with instructions to allow plaintiffs to amend their complaints, if desired. Id. at 295. In Armstrong I, therefore, the Court did not reach the merits of any notification claim as plaintiffs seek in their first four claims.

Given the likelihood that any enforcement decision by the Attorney General would be committed to his discretion, Heckler v. Chaney, 470 U.S. 821, 833 (1985), and that plaintiffs' claimed injuries flow from the absence of allegedly missing records that the Attorney General is charged with retrieving, if at all, plaintiffs fail to establish redressability on their first four causes of action and therefore lack standing. Thus, putting aside plaintiffs' other standing bars, plaintiffs may not proceed on those claims. Counts One through Four must be dismissed for lack of redressability and therefore standing by either NSA or CREW.

## IV.    PLAINTIFFS' CLAIMS SEEKING WRITS OF MANDAMUS MUST BE DISMISSED

Despite plaintiffs' contention that it is premature to dismiss their duplicative mandamus claims because the Court must determine the merits of its other claims first, caselaw provides otherwise. This Court has dismissed duplicative mandamus claims on motions to dismiss when alternative claims seeking similar relief are brought under the APA.[10] See PDK Labs, Inc. v. Reno, 134 F. Supp. 2d 24, 34 (D.D.C. 2001) (HHK) ("In this case, the mandamus relief sought by plaintiff is essentially identical to that which plaintiff seeks under the APA . . . . The court,

---

[10]  In Bland v. Sec'y of the Army, this Court did not hold that it was required to adjudicate the merits of APA claims first before dismissing duplicative mandamus claims as NSA suggests. (NSA Opp'n at 33.)  Rather, this Court simply denied mandamus relief because APA review was available, and because the plaintiff had "not shown a clear right to relief he seeks," as required for mandamus relief.  Civ. No. 05-2143, 2007 WL 902302, at * 5 n.8 (D.D.C. March 23, 2007).

therefore, elects to analyze plaintiff's entitlement to relief under its other claims, and defendants' motion to dismiss count VI shall be granted."). As plaintiffs recognize, their mandamus claims are no different than their claims brought under the APA, and must, accordingly, be dismissed. See, e.g., CREW Opp'n at 18 (acknowledging that the "relief requested in Claims One through Four is directed at compelling the defendants to initiate action," which is the same relief sought under the APA or mandamus); NSA Opp'n at 14 ("[T]he sole remedy sought by the first four claims in the Archive's Complaint, which seek to 'compel agency action unlawfully withheld or unreasonably delayed.'").

Even if the mandamus claims were not duplicative of plaintiffs' other claims, they must be dismissed. A writ of mandamus is a "drastic remedy, to be invoked only in extraordinary situations." PDK Labs, 134 F. Supp. 2d at 34. Mandamus relief is appropriate only if a plaintiff has a clear right to relief, the defendants have a clear duty to act, and there is no other adequate remedy available to the plaintiff. See id. The duty "to be performed by the agency must be 'ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." Id. A ministerial duty "is one that admits of no discretion, so that the official in question has no authority to determine whether to perform the duty." Swan v. Clinton, 100 F.3d 973, 977 (D.C. Cir. 1996). Even if all three factors for mandamus relief are satisfied, it nonetheless remains within the court's discretion to deny mandamus. See PDK Labs, 134 F. Supp. 2d at 34.

Although plaintiffs claim that 44 U.S.C. §§ 2905 and 3106 – as interpreted by the court in Armstrong I – impose "mandatory, non-discretionary duties" to justify mandamus relief in claims three and four of their complaints, NSA Opp'n at 33; CREW Opp'n at 30 n.26, neither

provision requires the type of ministerial duty for which mandamus relief may be available.

Indeed, in Armstrong I, the court made clear that the so-called "mandatory statutory" language

of §§ 2905 and 3106 do not require immediate action by the Archivist or heads of the agencies to

initiate action through the Attorney General.  The court stated that although

> We emphasize the mandatory language because it indicates that the agency head
> and Archivist are required to take action to prevent the unlawful destruction or
> removal of records and, if they do not, private litigants may sue under the APA to
> require them to do so.  We do not mean to imply, however, that the Archivist and
> agency head must initially attempt to prevent the unlawful action by seeking the
> initiation of legal action.  Instead, the FRA contemplates that the agency head and
> the Archivist may proceed first by invoking the agency's 'safeguards against the
> removal or loss of records,' 44 U.S.C. § 3105, and taking such intra-agency
> actions as disciplining the staff involved in the unlawful action, increasing
> oversight by higher agency officials or threatening legal action.

924 F.2d at 296 n.12.

The statutory provisions, too, speak of discretion.  For example, section 2905 provides

that "[i]n any case in which the head of the agency does not initiate an action for such recovery

or other redress within a reasonable period of time after being notified of any such unlawful

action, the Archivist shall request the Attorney General to initiate such an action, and shall notify

the Congress when such a request has been made."  44 U.S.C. § 2905.   By its terms, the

Archivist is afforded the discretion to determine whether a "reasonable period of time" has

elapsed before initiating action through the Attorney General.  See also 44 U.S.C. § 3106

(similar).  And as the D.C. Circuit has articulated, even the agency heads need not initially seek

action through the Attorney General, but have discretion to pursue intra-agency actions first.

Absent "ministerial" duties, therefore, plaintiffs' mandamus claims must be dismissed.

Armstrong I, 924 F.2d at 296 n.12.

The statutory bases for the mandamus claims in counts seven and eight similarly fail to require ministerial acts. Plaintiffs claim, for example, that the FRA imposes a "ministerial" duty upon the Archivist to "establish an adequate system for the preservation of federal and presidential records." CREW Compl. ¶ 94; NSA Compl. ¶ 89. Yet even plaintiffs' recitation of the relevant statutory provisions reveal no such "ministerial" duties. For example, plaintiffs contend that the Archivist "shall" provide guidance and assistance to agencies on proper records disposition, "shall" promulgate standards and guidelines for federal agency records management, "shall" establish standards for selective retention of records containing value. See, e.g., NSA Opp'n at 4 (citing 44 U.S.C. § 2904). None of those provisions, however, requires the Archivist to "establish an adequate system" for federal agencies to preserve federal records as plaintiffs request. See also Blancett v. United States Bureau of Land Mgmt., No. 04-2152, 2006 WL 696050, *9 (D.D.C. March 20, 2006) ("[W]hether 'shall' commands or merely authorizes is determined by the objectives of the statute[.]"). Absent such duty, plaintiffs' mandamus claim must be dismissed.

Similarly, the FRA does not impose a ministerial duty on the heads of agencies to "establish an adequate archival system, similar in function to ARMS, for the preservation of federal and presidential records." CREW Compl. ¶ 102; NSA Compl. ¶ 97. The agencies are afforded discretion to determine what standards and procedures may be implemented to comply with any FRA obligations. "Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary (i.e. ministerial) if it involves enforcement or administration of a mandatory duty at the operation level." Swan, 100 F.3d at 977 (quoting Beatty v. Washington Metro. Area Transit Auth., 86-0 F.2d 1117, 1127 (D.C. Cir. 1988)); see

also <u>Kaur v. Chertoff</u>, 489 F. Supp. 2d 52, 66 (D.D.C. 2007) (RBW) (noting the implementation

of a mandatory duty is not subject to mandamus actions because of discretion permitted in the

implementation of the duty).  The judgments, planning and policy decisions required for

administering provisions of the FRA require dismissal of claims seven and eight.

## V.        THE EOP MUST BE DISMISSED AS AN IMPROPERLY NAMED PARTY

Plaintiffs' complaints and previous court filings muddy whether plaintiffs also intend to

add requests for relief under the PRA.  Whether intentional or not, the admittedly imprecise

language about "government e-mails," "White House e-mails," and specific requests for relief

going to both federal and Presidential records serve only to obfuscate whether plaintiffs'

inclusion of "EOP" as a defendant "will not affect components of the EOP that are not governed

by the FRA."  <u>Public Citizen v. Carlin</u>, 2 F. Supp. 2d 1, 9 (D.D.C. 1997).  As established in

defendants' opening brief, "EOP" includes components that do not fall within the definition of

"agency" under the FRA.  In <u>Public Citizen</u>, the court was asked to determine the adequacy of a

general records schedule, that by its terms, governed only federal records.  Accordingly, the

court permitted a suit to proceed against "EOP" as a catch-all defendant because "[i]t should be

clear to those components traditionally governed by the PRA therefore that they are not

implicated in this action, which involves a General Records Schedule promulgated pursuant to

the FRA."[11]  <u>Id.</u>

---

[11]  Defendants appealed the court's decision in <u>Public Citizen</u>, contending that the EOP was not a
proper defendant in the action.  The Court of Appeals did not reach whether the EOP was a
proper party to an action brought under the Records Disposal Act because it reversed the district
court on other grounds.  <u>Public Citizen v. Carlin</u>, 184 F.3d 900, 911 (D.C. Cir. 1999).
Accordingly, <u>Public Citizen</u> does not settle whether EOP is a proper party to an FRA action.

Such clarity is absent here.  Pursuant to plaintiffs' request for relief, an order, for example, requiring the "EOP" to "promulgate and implement an effective records management system that ensures against the loss or destruction of government e-mail records," could by its terms require certain EOP components to implement records systems over "government e-mail records" that are governed only by the PRA.[12]  NSA Compl. at 27 ¶ 4.  Plaintiffs have justified, in part, requests for emergency injunctive relief and for expedited discovery by referring to the significance of Presidential records.  It is imperative that the contours of this case be made clear by excluding all PRA components of the EOP and including only those components of EOP that are governed by the FRA.[13]  EOP must be dismissed as a defendant in this action.  Plaintiffs would not be prejudiced as they have already stated that they intend to include only those components that are subject to the FRA and do not intend to "sweep[] in components that are not subject to the FRA."  CREW Opp'n at 30.

---

[12]  Even if the PRA claims are dismissed, increased clarity is gained by dismissing EOP as a catch-all defendant.

[13]  Plaintiffs separately sue the Office of Administration, which is a component of the EOP, but does not fall within the meaning of "agency" under the FRA.  Nonetheless, plaintiffs' express inclusion of the Office of Administration makes clear plaintiffs' intent to sue the Office of Administration and request relief from it.  To the contrary, plaintiffs' catch-all "EOP" makes ambiguous the scope of plaintiffs' requested relief.

**<u>CONCLUSION</u>**

For the reasons set forth above and in their opening brief, defendants' motion to dismiss must be granted.

Respectfully submitted this 26th day of December, 2007.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 26, 2007, a true and correct copy of the foregoing

Defendants' Consolidated Motion to Dismiss Plaintiffs' Complaints was served electronically by

the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF)

and that the document is available on the ECF system.


/s/ Helen H. Hong

HELEN H. HONG