# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY | ) | |
| AND ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| | ) | |
| EXECUTIVE OFFICE OF THE | ) | |
| PRESIDENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NATIONAL SECURITY ARCHIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:07-cv-01577 (HHK/JMF) |
| | ) | |
| EXECUTIVE OFFICE OF THE | ) | |
| PRESIDENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF FILING

Pursuant to this Court's January 8, 2008 Memorandum Order, undersigned counsel submits this Notice of Filing that the Declaration of Theresa Payton is submitted in accordance with the Court's instructions.

//


//

The Declaration of Theresa Payton is attached to this Notice of Filing as Exhibit A.

Respectfully submitted this 15th day of January, 2008.


JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2008, a true and correct copy of the foregoing Notice of Filing was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Helen H. Hong
HELEN H. HONG

Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY<br>AND ETHICS IN WASHINGTON,<br><br>     Plaintiff,<br><br>    v.<br><br>EXECUTIVE OFFICE OF THE<br>PRESIDENT, et al.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No: 1:07-cv-01707 (HHK/JMF)<br>)<br>)<br>)<br>)<br>)<br>) |
| NATIONAL SECURITY ARCHIVE,<br><br>     Plaintiff,<br><br>    v.<br><br>EXECUTIVE OFFICE OF THE<br>PRESIDENT, et al.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>) Civil Action No: 1:07-cv-01577 (HHK/JMF)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF THERESA PAYTON**

I, Theresa Payton, declare as follows:

  1.  My name is Theresa Payton and I currently hold the position of Chief Information

Officer (CIO) in the Office of Administration (OA), Executive Office of the President (EOP). In

this capacity, I am responsible for providing strategic and operational leadership within the

Office of the Chief Information Officer (OCIO). I have held the position of CIO in OA since

May 2006.

  2.  I submit this Declaration on behalf of the Defendant OA pursuant to the Order of

Magistrate Judge John M. Facciola dated January 8, 2008. The statements contained in this

Declaration are based on my personal knowledge and on information provided to me by members of my staff in the performance of my official duties.

**A.    *OA and the OCIO***

3.    OA was created by Reorganization Plan No. 1 of 1977 and Executive Order 12028. Its primary functions include providing common administrative and support services for the EOP components.

4.    The OCIO, which is an operating unit of OA, provides around-the-clock customer service for all EOP components and the Office of the Vice President, consisting of more than 3000 users and customers, in excess of 200 servers, and over 100 applications. Specifically, the OCIO is responsible for providing EOP components with unified enterprise services such as production support, application development and support, office automation, e-mail, disaster recovery back-up information, Continuity of Operations (COOP) support, and intranet capabilities. It also provides coordination of compliance programs for Federal Records, Federal Enterprise Architecture, and Information Assurance. The OCIO is also charged with protecting and safeguarding the complex, sensitive but unclassified EOP network (EOP Network) (including the infrastructure, web sites, remote access, and data).

5.    As part of its email record-keeping responsibilities, the OCIO employs an archiving process. Since the phased deployment of Microsoft Exchange as the email system for the EOP Network, that process has entailed saving journaled emails to .pst files that are then maintained on the EOP Network.

**B.    *The EOP's Disaster Recovery System***

6.    As a matter of good business practices, the EOP Network has been and continues to be regularly "backed-up" onto disaster recovery back-up tape media as part of the EOP's

2

disaster recovery system. The back-ups occur as a protective measure for purposes of restoring EOP operations in the event of a disaster or catastrophic incident resulting in the partial or total loss of operating systems and data. OA's process for creating disaster recovery back-up tapes ("tapes" or "back-up tapes") has changed over time, undergoing periodic upgrades, enhancements and improvements. The data-types contained on the tapes include the server software, such as operating systems and applications. The data-types also include files saved on the server such as, for example, email databases and/or email environment information.

7.      The purpose of the tapes created and maintained by OA is to create a "snapshot" of the EOP Network, including its operating systems, as well as applications and data thereon, at the point in time of the back-up. For example, the snapshot captures all email information present on the EOP Network in the journals, the .pst archives, and the customer mailboxes at the time the back-up is created. In the event of a disaster or catastrophic incident that results in the partial or total loss of operating systems and data, these tapes could be used to reconstruct the data on the EOP Network as it existed at the time of the last back-up. Thus, any reconstruction following a disaster or catastrophic incident should reflect the EOP Network at the time of the last back-up. Configuration changes, system patches, anti-virus updates and other changes made after the latest back-up but prior to the disaster or catastrophic incident would not be included on tapes and, thus, would not be reflected in a reconstructed system. Similarly, any emails sent or received after the latest back-up but prior to the disaster or catastrophic incident may not be backed up on tapes and, thus, may not be reflected in a reconstructed system. This limitation in the disaster recovery back-up process is consistent with industry standards for these types of disaster recovery systems.

8. The back-up tapes have been used to restore information that is not otherwise available on the EOP Network. When applied to email recovery, the process is complex, labor intensive and costly. By way of hypothetical example, a request to recover a specific file(s) from a particular date or date range within the period of 2003-2005 would be forwarded to the OCIO. The OCIO would then ordinarily consult a media database, similar to a catalogue or back-up tape index, to identify a range of tapes that correspond to that request. In this process, the OCIO may pull tape sets backed up prior to and/or subsequent to the target date period to ensure they have the full population of potential tape sets that may contain the requested file. Additionally, the OCIO would then restore the data-type environment, applicable software, and/or information, and then conduct a search for the information requested.

## C. *Plaintiffs' Claims*

9. As I understand the Complaint, plaintiffs allege that the EOP failed to electronically archive some emails in the period 2003-2005. Plaintiffs allege that OA created a "detailed analysis" of this alleged problem. *See* CREW Comp., ¶ 34; NSA Comp., ¶ 32.

10. I am aware of a chart created by a former employee within the OCIO that purports to identify certain dates and EOP components for which the chart's creator appears to have concluded that certain EOP components were missing emails on certain dates in the 2003-2005 time period. Specifically, the chart appears to have concluded that some components on some dates had either (i) a lower-than-expected number of emails preserved in the normal electronic archiving process, or (ii) no emails preserved in the normal electronic archiving process. I believe this is what Plaintiffs refer to as the "detailed analysis."

11. The OCIO has reviewed the chart and has so far been unable to replicate its results or to affirm the correctness of the assumptions underlying it. Accordingly, this office has

4

serious reservations about the reliability of the chart. Given these concerns, and the apparent lack of supporting documentation, this office has undertaken an independent effort to determine whether there may be anomalies in Exchange email counts for any particular days resulting from the potential failure to properly archive emails for the 2003-2005 time period. That process is underway and we expect the independent assessment to be completed in the near term.

**D.    *Responding to the Court's Questions***

12.    In light of this background, I now turn to the four questions posed by the Court:

a.    **Question No. 1: Are the back-ups catalogued, labeled or otherwise identified to indicate the period of time they cover?**

It is possible to discern an approximate time period of the latest information backed up to a tape set by examining the information in the media database and reviewing the information for the last date on which data was written to an individual back-up tape. The media database does not display information that indicates fixed, identifiable periods of time. However, the tapes are labeled with a barcode, which correlates to an entry in the media database and, in turn, to the information about the last back-up to a particular tape.

b.    **Question No. 2: Are the back-ups catalogued, labeled or otherwise identified to indicate the data contained therein?**

For each back-up tape, the media database contains a field identifying the type of server that is backed up. Although the information in this field does not reveal details about the data itself, it does identify whether a particular back-up tape should contain data relating to Microsoft Exchange emails and/or email environment information.

5

c.  **Question No. 3: Do the back-ups contain emails written and received between 2003-2005?**

Prior to October 2003 and continuing through 2005 and to the present, this office has regularly created back-up tapes for the EOP Network, which includes the system's email servers. Consistent with industry best practices relating to tape media management for disaster recovery back-up systems, these tapes were recycled prior to October 2003. In October 2003, this office began preserving and storing all back-up tapes and continues to do so. For that reason, emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes.

d.  **Question No. 4: Do the back-ups contain the emails said to be missing that are the subject of this lawsuit? [Footnote omitted.]**

As I understand the Complaint, some emails are alleged to be missing from electronic archives in the period 2003-2005. At this stage, this office does not know if any emails were not properly preserved in the archiving process. We are continuing our efforts to determine whether there may be anomalies in Exchange email counts for any particular days in 2003-2005 resulting from the potential failure to properly archive emails. However, in view of this office's practice in the 2003-2005 time period of regularly creating back-up tapes for the EOP Network, which includes servers containing emails, and in view of this office's practice of preserving all such back-up tapes from October 2003 to the present, the back-up tapes should contain substantially all the emails sent or received in the 2003-2005 time period.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, the foregoing to be true and correct.

Executed the _15_ day of January, 2008.

THERESA PAYTON
Chief Information Officer
Office of Administration, Executive Office
of the President

7