IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SECURITY ARCHIVE,  Plaintiff,  v.  EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,  Defendants. | Civil Action No. 07-1577 (HKK/JMF)  (Consolidated with Civil Action No. 07-1707 (HKK/JMF)) |

## NATIONAL SECURITY ARCHIVE'S RESPONSE TO DECLARATION OF THERESA PAYTON

In attempting to resolve Plaintiff's Motion for Leave to Serve Expedited Discovery Requests and to Compel Rule 26(f) Conference ("Motion"), Magistrate Judge Facciola on January 8, 2008 issued a Memorandum Order directing the Defendants to provide, by sworn declaration within five business days, answers to four questions regarding their back-up media and the missing Executive Office of the President ("EOP") e-mails. On January 15, 2008, Defendants submitted a Declaration of Theresa Payton, the current Chief Information Officer in the Office of Administration ("OA"), Executive Office of the President. [Docket #48] While the Payton Declaration purports to answer the Court's four questions regarding Defendants' back-up media and the e-mails that the White House has already admitted were "lost," the Declaration leaves unanswered key information sought by the Court in its effort to ascertain whether

discovery is necessary to ensure the preservation, in a recoverable form, of all the lost e-mails at issue in this case.[1]

***First,*** the Payton Declaration states that the Office of the Chief Information Officer (OCIO) "is also charged with protecting and safeguarding the complex, sensitive but unclassified EOP network," Payton Decl. ¶ 4, and answers the Court's questions only with respect to the back-ups that are created from that "EOP Network." What the Declaration fails to provide, however, is information or assurance that the "unclassified EOP network" from which the back-ups were created is the *only* e-mail system used by *any and all staff* of any of the Defendant agencies. For example, the Declaration fails to address whether there are other e-mail systems in addition to Microsoft Exchange that are used for the EOP Network, such as remaining Lotus Notes systems which the EOP was gradually migrating away from as it moved to the Microsoft Exchange system, or whether there are networks, other than the EOP Network, at any of the components of the EOP that use other e-mail systems. Without such information, the Declaration fails to answer the Court's fourth (and most important) question — whether the back-ups are the only potential repository of all the e-mails said to be missing that are the subject of this lawsuit. Without a full answer to that question, neither the parties nor this Court can be certain that all potential back-up repositories for the lost e-mails have and will continue to be preserved until the merits of this case can be decided.[2]

---

[1] A similar response has been filed by Citizens for Responsibility and Ethics in Washington ("CREW"), plaintiffs in the case that has been consolidated with the Archive's. *See* Plaintiff CREW's Response to Defendants' Notice of Filing [Docket #49] (Jan. 17, 2007).

[2] The Payton Declaration seems to allude to other "classified" servers, possibly for presidential records, within the EOP that the Declaration does not address. Payton Decl. ¶ 4. If that is the case, the Declaration is deficient because the Defendants under the relevant statutes and this Court's November 12, 2007 Preservation Order, must also preserve those classified and/or presidential records. In *Armstrong II*, the Court of Appeals held that "courts may review guidelines outlining what is, and what is not, a 'presidential record' to ensure that materials that are not subject to the PRA are not treated as presidential records." *Armstrong v. Executive Office of President (Armstrong II)*, 1 F.3d 1274, 1294 (D.C. Cir. 1993). This review of PRA guidelines "is absolutely essential to preventing the PRA from becoming a potential presidential *carte blanche* to shield materials from the reach of the

***Second,*** the Payton Declaration states that "[s]ince the phased deployment of Microsoft Exchange as the email system for the EOP Network, that [archiving] process has entailed saving journaled emails to .pst files that are then maintained on the EOP Network." Payton Decl. ¶ 5. The Declaration, however, does not identify the time period during which the "phased deployment of Microsoft Exchange" took place, or what was done to archive or save e-mails prior to that phased deployment. For example, if the phased deployment of Microsoft Exchange took place after 2003, the un-recycled back-up tapes referred to in the Declaration may not contain the lost e-mails. Moreover, the Declaration does not even purport to definitively answer the question of whether the back-up tapes at issue contain the universe of e-mails in question. Payton merely declares that "the back-up tapes *should* contain substantially all the emails sent or received in the 2003-2005 time period." Payton Decl. ¶ 12.d.; *see also id.* at ¶ 12.c. (emphasis added). Her double-qualified answer only raises more questions, such as why Payton can only say that the e-mails "should" be on the back-ups, and why she can only testify that "substantially all" e-mails in the 2003-2005 period "should" be on the back-ups even though the back-ups were recycled for most of 2003. And, since Payton concedes that other e-mails may not be on the tapes, the Declaration provides no indication where those e-mails may be found. Without such information, the Declaration cannot reliably answer this Court's third and fourth questions — whether the back-ups contain e-mails written and received between 2003-2005 and whether the back-ups contain the emails said to be missing that are the subject of this lawsuit.

---

(continued...)

FOIA," because "a non-presidential document subject to the FOIA could be forever removed from that statute's provisions if it were improperly classified as a presidential record and destroyed." *Id.* at 1292-93. Thus, in reviewing the PRA guidelines, information regarding the documents that were categorized as presidential records, including the records themselves, must be preserved. If it is determined that federal records were impermissibly swept into the presidential record repositories, those presidential record repositories must be preserved in full in the event that the Archivist and agency head, with assistance from the Attorney General, ultimately take action – or are compelled to take action – to recover those federal records from the presidential record repositories.

***Third,*** despite the Declaration's revelation that back-up tapes prior to October 2003 were recycled, the data contained on these pre-October 2003 back-ups may still be recoverable. For example, if the recycling only wrote over a portion of the data on the tape, the data that was not written over will still exist on the tape. The Declaration thus leaves open questions regarding what Defendants are doing to ensure continued preservation of whatever data may remain on the pre-October 2003 back-ups.[3] And it makes clear that the parties and this Court should start taking immediate action to preserve other potential sources for the data that was recycled. As such, the Declaration again does not reliably answer Magistrate Judge Facciola's third and fourth questions and makes the need for immediate expedited discovery to determine, locate and preserve additional sources for the lost data of paramount importance.

## CONCLUSION

For the reasons stated above and set forth in the National Security Archive's Motion for Leave to Serve Expedited Discovery Requests and to Compel Rule 26(f) Conference and the Memorandum of Law in support thereof, and the motion and accompanying memorandum of CREW, the Motion should be granted to ensure complete preservation of all the records that are the underlying subject matter of this lawsuit until such time as the Court can resolve this case on the merits. The National Security Archive respectfully requests that a hearing be held prior to resolution of the Motion.

---

[3] It also leaves open the crucial question of whether Defendants are taking steps not merely to retain the back-up tapes, but to preserve them "under conditions that will permit their eventual use," as ordered by the Court. *See* Order [Docket #18] (Nov. 12, 2007). Because the quality of magnetic back-up tapes erodes over time, the long-term preservation of the data on the tapes may require that they be copied or otherwise rendered into a different medium with greater durability over time.

- 5 -

Respectfully Submitted,

DATED: January 17, 2008           /s/ Sheila L. Shadmand

*Attorneys for Plaintiff The National Security Archive*

JOHN B. WILLIAMS (D.C. Bar No. 257667)
SHEILA L. SHADMAND (D.C. Bar No. 465842)
THOMAS A. BEDNAR (D.C. Bar No. 493640)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
202.879.3939

MEREDITH FUCHS (D.C. Bar No. 450325)
THE NATIONAL SECURITY ARCHIVE
The Gelman Library
2130 H Street, N.W., Suite 701
Washington, D.C., 20037
202.994.7059

## CERTIFICATE OF SERVICE

I hereby certify that, on this 17th day of January 2008, I caused a copy of the foregoing National Security Archive's Response to Declaration of Theresa Payton to be served electronically by the United States District Court for the District of Columbia's Electronic Case Filing ("ECF") system and that this document is available on the ECF system.

/s/    Sheila L. Shadmand
Sheila L. Shadmand
