IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SECURITY ARCHIVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1577 (HKK/JMF) |
| ) | |
| EXECUTIVE OFFICE OF THE ) | (Consolidated with |
| PRESIDENT, *et al.*, ) | Civil Action No. 07-1707 (HKK/JMF)) |
| ) | |
| Defendants. ) | |
| ) | |

## SURREPLY

On December 13, 2007, Plaintiff National Security Archive (the "Archive") filed its Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Opp.") [Docket #42]. On December 17, 2007, Judge Lamberth of the District Court issued an opinion in *Citizens for Responsibility & Ethics in Washington v. Department of Homeland Security*, Civil Action No. 06-883, 2007 U.S. Dist. LEXIS 91901 (D.D.C. Dec. 17, 2007) (Lamberth, J.) (*CREW v. DHS*), that addresses some of the legal issues raised in this case, and that involves the other Plaintiff in this case, Citizens for Responsibility and Ethics in Washington ("CREW").[1] The Archive submits this Surreply to briefly address the impact of Judge Lamberth's reasoning on this case, which does nothing to change the fact that the Archive has standing.

In *CREW v. DHS*, CREW filed a Freedom of Information Act ("FOIA") request with the Secret Service for records related to former lobbyist Jack Abramoff. When the Secret Service failed to timely respond, CREW filed suit against the Department of Homeland Security, of

---

[1] The same day, Judge Lamberth issued another opinion in a related case. *Citizens for Responsibility & Ethics in Washington v. Dep't of Homeland Security*, Civil Action No. 06-1912, 2007 U.S. Dist. LEXIS 91927 (D.D.C. Dec. 17, 2007) (Lamberth, J.). Both opinions should be considered together.

1

which the Secret Service agency is a component. CREW brought its suit under FOIA, the Federal Records Act ("FRA") and the Administrative Procedure Act ("APA"). Count Four of CREW's complaint sought a declaration that the DHS recordkeeping policy for White House visitor records is arbitrary and capricious, and injunctive relief ordering that "[the DHS] immediately take all necessary steps to cease destruction of WAVES records and to secure the return of the WAVES records [previously transferred] to the White House." *Id.* at *5 (brackets in original).

Judge Lamberth granted the Government's motion to dismiss Count Four, on the grounds that CREW did not have constitutional standing to seek prospective declaratory and injunctive relief. While Judge Lamberth agreed that CREW had properly alleged a past injury-in-fact, he held that it had not adequately alleged the kind of imminent future injury necessary to provide standing for prospective relief. *Id.* at *10. CREW had alleged that if DHS continued a policy of destroying WAVES records, future FOIA requests by CREW would be fruitless, and thus CREW would be injured in its "ability to provide full, accurate, and current information to the public." *Id.* at *13. While Judge Lamberth acknowledged that these alleged future injuries were "certainly plausible," he held that the injuries, as alleged, were too speculative.

CREW had alleged that it "uses a combination of research, litigation and advocacy" to "advance its mission" of "protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." *Id.* at *13. Judge Lamberth held that the "Court cannot discern when, if ever, CREW will seek access to WAVES records in the DHS's possession" in the future, *id.* at *16, because:

> nothing in the record before the Court suggests how frequent these
> requests are made, which agencies are subject to these requests,
> and whether (or when) CREW expects to file future FOIA requests.
> Most notably, CREW does not allege anywhere in its complaint or

> opposition brief that it has a FOIA request pending with the DHS
> or that it intends to file a specific FOIA request with the DHS for
> WAVES records in the near future. Without this information, the
> Court cannot say that the alleged injury is either real or imminent.

*Id.* at *13-14.

By contrast, in this case the Archive has established that it "is a frequent FOIA requester and has requested federal records from the EOP and OA; it presently has records requests pending in front of multiple EOP components, including OA; and it is certain to request federal records from EOP components in the future."[2] Opp. at 23 (citing Blanton Decl. ¶¶ 3, 10, 11, 15, 25-33; Compl. ¶¶ 5, 88, 96). In its Complaint, Opposition, and the Declaration of Thomas S. Blanton, the Archive has thoroughly addressed each of the elements that Judge Lamberth found were lacking in *CREW v. DHS*:

**Frequency of Requests.** The Archive has filed approximately 250 requests with EOP and/or its components, and has over 90 FOIA requests currently pending at EOP or its components. *Id.* ¶¶ 26-27. As made clear by the Blanton Declaration, federal records are the Archive's stock in trade. Id. ¶¶ 3, 30. Moreover, because case law in this Circuit requires searches for agency records pursuant to FOIA requests to be conducted for records that exist as of the date of the search, rather than as of the date of the FOIA request, *Public Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002), the continuing failure to archive e-mail records constitutes an ongoing injury stemming from the 90 pending FOIA requests regardless of the specific future FOIA requests that the Archive will file.

**Which Agencies Are Subject to Requests.** The Archive has demonstrated that it frequently makes requests not simply to the federal government at large, but to the EOP and its

---

[2] As Judge Lamberth noted, CREW did have an actual injury in the form of current denial of access to records, which supported standing to pursue its other counts. *Id.* at *10. This supports the Archive's argument that it has actual injury that can be redressed by the relief sought in the first four counts of its Complaint. *See* Opp. at 14-17.

3

agency components—the specific agencies at issue here. Blanton Decl. ¶¶ 26-27. At least a thousand records originating from EOP and its components have been used in recent Archive publications. *Id.* ¶ 28. Moreover, the Archive's requests cover the type of records at issue here: all federal records, including e-mails. *Id.* ¶ 27. The case before Judge Lamberth concerned only a narrow category of records which, Judge Lamberth found, the plaintiff had failed to plead it would request in the future.

**Whether the Archive Expects to File Future FOIA Requests.** The Archive established that it will make FOIA requests in the future.[3] The Archive has identified specific document sets that it is compiling which are likely to call for records maintained by EOP or its components, and has identified specific areas of ongoing research that are highly likely to call for records maintained by EOP or its components, including records that will be created in the future. Blanton Decl. ¶¶ 14, 30. Another strong indication of the likelihood that the Archive will file FOIA requests in the future is the fact that the Archive has filed at least five FOIA requests with the EOP and/or its components in just the few months since this lawsuit was filed. Blanton Decl. ¶ 27.

**Pending Requests.** The Archive has established that it has over 90 FOIA requests pending before the EOP and/or its components. Blanton Decl. ¶ 27. The Archive will inevitably suffer injury in relation to these requests if EOP e-mails are forever deleted from backup media,

---

[3] Because CREW had only professed to have an interest in contemporary documents for immediate use in connection with its advocacy work, Judge Lamberth confined his analysis to whether CREW would make FOIA requests in the future. But as the Archive has demonstrated, it has an interest in preserving federal records that it might access through means other than FOIA and at times well into the future. For instance, the Archive makes use of documents released through the mandatory declassification review ("MDR") procedure, which would not be released in response to FOIA requests. Blanton Decl. ¶¶ 3, 10, 11. Judge Lamberth did not have occasion to consider the standing of institutional historians, such as the Archive, who face future injury in the form of denial of access to records through FOIA and additional means.

4

because records responsive to those requests are likely to be destroyed and, at the very least, the Archive will be unable to confirm whether it has received all responsive documents.

The elements listed above are simply proxies for determining whether a plaintiff alleges the requisite "injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *CREW v. DHS*, 2007 U.S. Dist. LEXIS 91901 at *8 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). The Archive has demonstrated an actual injury and has established that further future injury is imminent. That imminent injury turns not on future actions about which the Court can only speculate, but on the simple continuation of the status quo. The Archive faces imminent injury in two forms: (1) if the e-mails that were already deleted are not preserved, the Archive will be denied access to records responsive to its pending FOIA requests and further requests that it will make in the future; and (2) if additional e-mails are destroyed – which is likely given that no improvements have been made to a system that allowed the deletion of millions of e-mails – the Archive will be denied access to records responsive to its pending FOIA requests and further requests that it will make in the future.

As noted in its Opposition, the Archive has been found to have standing to pursue prospective relief "in circumstances almost identical to those here" where similar injury was alleged. Opp. at 25 (citing *Armstrong I*, 924 F.2d at 287-88, 297; *Armstrong II*, 1 F.3d at 1280). Indeed, as Defendants now concede (Reply at 9), the Archive meets the criteria that courts found sufficient to establish standing in other cases where journalists, historians, and librarians with research interests similar to the Archive were pursuing prospective relief aimed at preserving the historical record. *See* Opp. at 25-26 (citing *Public Citizen v. Carlin*, 2 F. Supp. 2d 1, 6-7 (D.D.C. 1997) (Friedman, J.), *rev'd on other grounds*, 184 F.3d 900 (D.C. Cir. 1999)); *Am. Friends Serv.*

*Comm. v. Webster*, 485 F. Supp. 222, 226 (D.D.C. 1980); *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 47 n.24, 57 (D.C. Cir. 1983).[4] The Archive has demonstrated more than enough to establish standing under the guidelines set forth by Judge Lamberth, and nothing in his reasoning supports Defendants' standing argument in this case. The Defendants' Motion to Dismiss must still be denied.

**Federal Records Act**

Judge Lamberth also endorsed the straightforward reading of the nature of judicial review available under the APA to private litigants to enforce compliance with FRA requirements. Relying on the Court of Appeals opinion in *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991) (*Armstrong I*), Judge Lamberth held that:

> [T]he APA authorizes judicial review of a claim – properly pleaded, of course – that the DHS's recordkeeping policies are arbitrary and capricious and do not comport with the requirements of the FRA. The APA also authorizes the Court to entertain a claim that the head of the DHS or the Archivist have breached their statutory obligations to take enforcement action to prevent an agency official from improperly destroying records or to recover records unlawfully removed from the agency. The FRA, however, precludes a private action, like this one, that seeks to require agency staff to comply with the agency's recordkeeping guidelines or the FRA, or to retrieve records lost. This relief is only available via the FRA's enforcement scheme.

*Id.* at *29-30. At the same time, Judge Lamberth recognized that "in some circumstances the Court may, temporarily, order an agency to preserve records until the Archivist is able to ensure

---

[4] The only records case cited by Judge Lamberth in support of his standing holding was *American Historical Association v. National Archives and Records Administration*, 310 F. Supp. 2d 216, 218 (D.D.C. 2004). As the Archive has pointed out, that opinion is inapposite here, and was vacated when Judge Kollar-Kotelly granted a motion to reconsider due to changed circumstances. *See* Opp. at 29 n.16 (citing *American Historical Association v. National Archives and Records Administration*, 402 F. Supp. 2d 171 (D.D.C. 2005) (Kollar-Kotelly, J.)). In that case, the alleged future injury was deemed too hypothetical to support standing because the future denial of access to records would turn on presidential decisions that could not be known and were not even scheduled to occur until some time in the future. In this case, to the contrary, "there is a current, actual injury, and the risk of further records destruction is ongoing and turns not on some remote future decision, but simply on the continued operation of a system that is designed to fail." *Id.*

6

that federal records are not destroyed." *Id.* at *30 n. 15 (citing *Armstrong v. Executive Office of President*, 810 F.Supp. 335, 349 (D.D.C. 1993) (Richey, J.), *aff'd Armstrong II*, 1 F.3d at 1288 n.12). Judge Lamberth acknowledged the APA cause of action allowed under the FRA and recognized by *Armstrong I*, and identified forms of relief available thereunder.[5] *See* Opp. at 12-20. The Archive's Complaint pleads the *exact* causes of action that Judge Lamberth also recognizes are available under the APA, and seeks the *very* relief that he also held was available. Judge Lamberth's opinion is, in fact, further evidence that Defendants' addled interpretation of the FRA and *Armstrong I* cannot stand, and that their Motion to Dismiss should be denied.

**Mandamus**

In their Reply, Defendants advance – for the first time – the argument that mandamus cannot issue because Defendants' statutory duties under the FRA are not "ministerial." Reply at 18-21. As the Archive alleged in its Complaint and stated in its Opposition, the FRA makes clear that the Archivist and the agency heads have absolutely no discretion as to *whether* they will comply with the FRA's requirements regarding enforcement action and the promulgation of adequate recordkeeping policies. Defendants have disregarded these statutory mandates, and they do not possess the discretion to do so. Where an executive official *must* take enforcement action when certain conditions are present, mandamus can issue even though the official has the discretion to determine *which* sanctions to impose, so long as he has the mandatory, non-discretionary duty to take *some* enforcement action. *American Cetacean Soc'y v. Baldrige*, 768 F.2d 426 (D.C. Cir. 1985). Similarly, even if Defendants have some leeway in crafting recordkeeping policies that in their opinion ensure compliance with the FRA, this does not

---

[5] It bears noting that the action Judge Lamberth disallowed was injunctive relief directly compelling DHS to retrieve and restore records, which relief Judge Lamberth held unavailable under *Armstrong I*. In this case, the relief sought is one that would compel the agency to initiate the administrative process to retrieve and restore records, which relief is expressly available under *Armstrong I* and in accord with Judge Lamberth's recent opinion.

foreclose mandamus relief, because "[t]he Supreme Court [has] concluded that it would 'greatly impair [ ] the value of this writ if [e]very executive officer whose duty is plainly devolved upon him by statute might refuse to perform it, and when his refusal is brought before the court he might successfully plead that the performance of the duty involved the construction of a statute by him . . . .'" *13th Regional Corp. v. Dep't of Interior*, 654 F.2d 758, 761 (D.C. Cir. 1980) (quoting *Roberts v. United States*, 176 U.S. 221, 231 (1900)). The fact that Defendants will be left, in the first instance, to draft recordkeeping policies that in their view comply with the FRA does not make any less clear or ministerial the FRA's command that they *must* promulgate such policies. The fact that compliance with a mandatory statutory duty might involve interpretation of the statutory command does not change the fact that each Defendant "has no authority, no discretion, to ignore that legislative directive when interpreting" the statute. *Id.*

## CONCLUSION

For the reasons stated above and set forth in Plaintiffs' Opposition, Defendants' motion to dismiss should be denied.

Respectfully Submitted,

DATED: December 28, 2007

/s/ Sheila L. Shadmand

JOHN B. WILLIAMS (D.C. Bar No. 257667)
SHEILA L. SHADMAND (D.C. Bar No. 465842)
THOMAS A. BEDNAR (D.C. Bar No. 493640)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
202.879.3939

*Attorneys for Plaintiff The National Security Archive*

MEREDITH FUCHS (D.C. Bar No. 450325)
THE NATIONAL SECURITY ARCHIVE
The Gelman Library
2130 H Street, N.W., Suite 701
Washington, D.C., 20037
202.994.7059

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of December, 2007, I caused a copy of the foregoing Surreply to be served electronically by the United States District Court for the District of Columbia's Electronic Case Filing ("ECF") and that this document is available on the ECF system.

                                                      /s/    Sheila L. Shadmand
                                                     Sheila L. Shadmand