**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, et al., <br><br> Defendants. | ) ) ) ) ) ) ) Civil No. 07-01707 (HHK/JMF) ) ) ) ) ) ) ) |
| NATIONAL SECURITY ARCHIVE, <br><br> Plaintiff, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, et al., <br><br> Defendants. | ) ) ) ) ) ) ) Civil No. 07-01577 (HHK)(JMF) ) ) ) ) ) ) ) |

**PLAINTIFF CREW'S[1] REPLY IN SUPPORT OF PLAINTIFF'S**
**MOTION TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT**
**BE HELD IN CONTEMPT AND FOR SANCTIONS**

Far from resolving any inconsistencies, inaccuracies and falsehoods in the declaration of Theresa Payton, defendants' opposition to plaintiff CREW's motion to show cause demonstrates precisely why a show cause hearing is necessary. Defendants do not dispute the clear and unambiguous obligations that the Court's order imposed on them. Instead, defendants argue that they satisfied those obligations merely by filing a sworn declaration, that any inaccuracies and falsehoods in that declaration are of no consequence to the extent they do not relate directly to

---

[1] CREW is the acronym for Citizens for Responsibility and Ethics in Washington.

the Court's four questions and that the presumption of good faith that attaches to Ms. Payton's declaration overrides any and all indicia that the declaration is false, incomplete or misleading.

Each of defendants' arguments is demonstrably false. At bottom defendants offer no legitimate refutation to the evidence that they are in contempt of this. Their heated rhetoric and a professed weariness with accounting for their actions are simply no substitute for proving good faith substantial compliance with the Court's order.

### 1. This Court's Order Required More Than The Mere Submission Of A Sworn Declaration Purporting To Answer The Court's Four Questions.

The carelessness with which defendants appear to have approached their obligations to this Court is revealed in their defense to the charge that they violated the Court's January 8, 2008 Order. There was no violation, defendants argue, because the Court directed them to file a sworn declaration answering four questions and they did so. Defendants' Opposition to CREW's Motion to Show Cause Why Defendants Should Not Be Held in Contempt And For Sanctions (Ds' Opp.), p. 15. In other words, it matters not that their answers were false, misleading and incomplete; that they gave answers at all through the vehicle of a sworn declaration is sufficient.

Such a position is patently unreasonable and does not come close to meeting defendants' burden of proving "good faith substantial compliance" with the Court's January 8, 2008 Order. Food Lion, Inc. v. United Food & Commercial Workers Internat'l Union, 103 F.3d 1007, 1017 (D.C. Cir. 1997). Specifically, defendants must demonstrate that they "'took all reasonable steps within [their] power to comply with the court's order.'" Id., *quoting* Glover v. Johnson, 934 F.2d 703, 708 (6th Cir. 1991) (internal quotation omitted). Moreover, "good faith alone is not sufficient to excuse contempt." Food Lion, 103 F.3d at 1017.

Full compliance with the Court's Order here required defendants not only to submit a sworn declaration, but one that answered as completely and accurately as possible all of the Court's questions. Accepting defendants' defense that the mere filing of a sworn declaration that included answers to the Court's four questions satisfies their obligations -- no matter how incomplete, misleading or false those answers are -- would make a mockery of the Court's processes and undermine the very purpose that the Order was intended to serve. The Court required defendants to provide specific information because the Court deemed that information necessary to resolve plaintiffs' pending motions for discovery. By its very terms the Order was not intended to be a meaningless procedural exercise, as defendants suggest, but rather a substantive vehicle to fill in critical information that would guide the Court in resolving the pending motions.

At a minimum, defendants must demonstrate that they provided the Court with complete and accurate answers that reflect all of the information available to the defendants, not simply that they provided answers in the format dictated by the Court. Defendants have failed to meet their burden of demonstrating that they took all reasonable steps to comply with the Order. This alone is reason to issue a show cause order.

**2. This Court's Order Required More Than A Declaration Based On Ms. Payton's Personal Knowledge And Information She Gained From Her Staff.**

Defendants also argue that the declaration is accurate because it is based on what "Ms. Payton understood," Ds' Opp. at 16 and reflects "her personal knowledge and information gained from her staff." Id. at 7. This seriously misapprehends the obligations that the Court order imposed on the defendants collectively, and not on Ms. Payton individually.

3

Under the Court's Order "*defendants*" were directed "to provide answers to the following questions . . ." Order of January 8, 2008 at p. 4 (emphasis added). The Order also directed that "[t]he answers are to be provided by counsel in a sworn declaration within the next five business days." Id. With the exception of the reference to counsel, the Order was completely silent as to who the declarant was to be. Thus, it was solely defendants' choice to have Ms. Payton serve as their declarant, but this choice did not alter the fact that the obligations stated in the Order run to all of the defendants, not Ms. Payton individually.

Accordingly, defendants' degree of compliance with the Court Order is measured not against what Ms. Payton personally does or does not know, but rather the wealth of information available to the Executive Office of the President ("EOP"), its constituent components and the National Archives and Records Administration. As the evidence made available by the House Committee on Government Oversight and Reform makes clear, that information extends well beyond Ms. Payton's purportedly limited knowledge. See Plaintiff CREW's Memorandum of Points and Authorities in Support of Plaintiff's Motion to Show Cause Why Defendants Should Not Be Held In Contempt ("P's Mem."), pp. 9-13. Thus, by failing to incorporate the full extent of available information in their answers defendants did not take all reasonable steps to comply with the Order.

    **3. Defendants' False Statements About The Lack Of Supporting Documentation For A Chart Documenting Millions Of Missing White House Emails, The Lack Of Analyses Of The Millions Of Missing Emails And The Role That A Former Employee Had In That Analysis Are Sanctionable**.

In its motion to show cause, CREW explained how Ms. Payton's claim that there is an "apparent lack of supporting documentation" as to "whether there may be anomalies in Exchange email counts for any particular days resulting from the potential failure to properly

archive emails for the 2003-2005 time period,"[2] is false. CREW also explained that Ms. Payton's description of the "detailed analysis" of the missing email problem as consisting of "a chart created by a former employee" that she "believe[s] is what Plaintiffs refer to as the 'detailed analysis,'"[3] is also false. In response, defendants argue that these statements cannot form the basis of a contempt finding because they "are wholly irrelevant to the inquiries pursued by the court in its Order." Ds' Opp. at 15.

To the contrary, as Judge Paul Friedman recognized in <u>Young v. Office of the U.S. Senate Sergeant at Arms</u>, "seeking to obtain or manufacture false testimony 'strikes at the heart of the judicial system. Lying cannot be condoned in any formal proceeding . . . Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts.'" 217 F.R.D. 61, 71 (D.D.C. 2003), *quoting* <u>Quela v. Payco-General Am. Credits, Inc.</u>, 2000 U.S. Dist. LEXIS 6932, *20, 82 Fair Empl. Prac. Cas. (BNA) 18787 (N.D. Ill. 2000). The falsehoods in Ms. Payton's declaration, even if not directly responsive to the Court's four questions, obstruct an "honest and true airing of the real facts" in this proceeding and strike at the core of our legal system. Accordingly, they may properly form the basis for a contempt citation.

Moreover, contrary to defendants' characterization, these statements are not "wholly irrelevant" to this Court's order but instead go to the heart of why CREW has requested expedited discovery. From the very outset of this litigation defendants have been completely unwilling to even acknowledge a problem with missing email, much less a problem with the

---

[2] Declaration of Theresa Payton ("Payton Decl.") at ¶ 11.

[3] Payton Decl. at ¶ 10.

breadth of what they are preserving on back-up copies pursuant to this Court's preservation order. Despite their acknowledgment of missing White House email to both Special Counsel Patrick Fitzgerald and the House Committee on Government Oversight and Reform,[4] here defendants have gone so far as to question whether there are any "anomalies in Exchange email counts" at all. Defendants have been equally reticent to advise the Court or plaintiffs as to the scope of what is covered under the Court's current preservation order, a reticence that borders on obstruction to the extent it is designed to provide cover for the destruction of yet more emails pending a final resolution of this case. The statements in Ms. Payton's declaration were a transparent attempt to challenge the underlying bases for the Court's initial preservation order in hopes of staving off any further preservation obligations. They are clearly relevant to this proceeding and the pending motions for expedited discovery.

Defendants also suggest that CREW has taken issue with the false statements in Ms. Payton's declaration to justify conducting merits discovery. Ds' Opp. at 15-16. CREW takes issue with these false statements because they do violence to the Court's processes and plaintiff's legitimate quest for the truth behind the many millions of missing White House emails. As for the discovery CREW has requested, it is aimed at ensuring the broadest possible preservation of records that belong to the American public, an issue independent of the merits of CREW's

---

[4] See Letter from Special Counsel Patrick Fitzgerald to Counsel, January 23, 2006, p. 7 (attached as Exhibit 5 to Plaintiff CREW's Response to Defendants' Notice of Filing (Document 32-2)) ("we have learned that not all email of the Office of Vice President and the Executive Office of President for certain time periods in 2003 was preserved through the normal archiving process on the White House computer system."); Committee on Oversight and Government Reform, Memorandum to Members of the Committee, Supplemental Information for Full Committee Hearing on White House E-mails, February 26, 2008 ("Comm. Memo") (Exhibit 3 to P's Mem.), pp. 19-20 (describing multiple briefings from the White House on missing email problem).

underlying claims.

Finally, defendants claim that Ms. Payton's statements are not false, misleading or incomplete because they reflect Ms. Payton's understanding and are actually corroborated -- not contradicted -- by Mr. McDevitt's written statements.[5]  Ms. Payton's understanding or lack thereof, however, simply cannot be squared with the full evidence before the EOP.  That defendants have allowed Ms. Payton to remain blissfully ignorant of the full facts ("Ms. Payton . . . still understands . . . any 'analysis' and chart creation was the product of Mr. McDevitt's efforts," Ds' Opp. at 16), does not excuse their failure to accurately represent to this Court what detailed analyses and documentation of the missing White House emails were created by a 15-person team when the EOP first discovered the problem.

Moreover, defendants' insistence that Ms. Payton's statement regarding the role of former OA employee Steven McDevitt in creating the chart is not false given Mr. McDevitt's own description of his role is nothing short of remarkable.  As even defendants concede, Mr. McDevitt explained his involvement as directing and leading the effort to design and create a chart, Ds' Opp. at 16.   This is a far cry from being the sole creator of a chart that, as Mr. McDevitt explained, "was the result of many weeks of analysis that involved over a dozen people."  Exhibit 5 to CREW's Mem., p. 4, no. 19.

---

[5] Defendants emphasize the "unsworn" nature of Mr. McDevitt's written answers, see Ds' Opp. at 3, 16, in an apparent effort to discount their significance here.  Conveniently defendants ignore the fact that it was only because the White House refused to authorize Mr. McDevitt to testify to anything of relevance that the Committee was forced to resort to unsworn written responses from Mr. McDevitt in response to questions posed by both the majority and minority staff.  Mr. McDevitt is, however, available to testify under oath before this Court regarding answers he provided to the Committee and to provide any other information the Court might require.

Defendants also insist that Ms. Payton's statement about the "apparent lack of supporting documentation" for the chart is neither untruthful nor misleading because "Ms. Payton never stated that there was no documentation relating to the chart." Ds' Opp. at 17 (emphasis in original). CREW, however, is not merely quibbling over whether an "apparent lack of supporting documentation" is the equivalent of "no documentation." Rather, the conflict here is whether the thousands of pages of documentation and the painstaking validation and verification process that Mr. McDevitt described can properly be characterized as anything less than robust supporting documentation.[6]

### 4. Defendants' False Statements About The Back-Up Copies Of The Missing Email And Their Failure To Acknowledge Known Problems With Both The Back-Up Tapes And The EOP Archiving Process Are Sanctionable.

Most egregious of all, Ms. Payton's declaration contains false and misleading statements that go to the heart of why the Court sought the information in the first place: to ascertain the extent to which "the missing emails are not on those back-ups [the ones preserved pursuant to Judge Kennedy's order] . . ." Order of January 8, 2008, p. 3. In response, defendants

---

[6] Defendants also assert that "to date, OA has been unable to locate any narrative documentation explaining the assumptions or operating procedures for the creation of the 2005 chart or data collection . . ." Ds' Opp. at 17. The truth or falsity of Ms. Payton's statements, however, does not depend on the existence of a "narrative documentation." Moreover, there is no factual support in the record for this claim and on this basis alone it cannot properly be considered in deciding whether defendants have met their burden of showing good faith substantial compliance with the Court's Order. Defendants also claim that "OA produced many thousands of pages relating to the chart to the House Committee on Oversight and Government Reform." Ds' Opp. at 17 n.10. Not only is this assertion without factual support in the record, but it is directly contradicted by the committee's own statements. The committee report noted "a lack of cooperation from the White House," including the fact that "the White House has produced only a small number of documents, including no documents from either of the White House hearing witnesses, Theresa Payton, Chief Information Officer, and Alan Swendiman, Director of the Office of Administration." Comm. Memo at p. 3.

mischaracterize the arguments CREW has made and assert that Ms. Payton's declaration passes muster under a "presumption of good faith." Ds' Opp. at 18. Both approaches fail to come to terms with the clear evidence that defendants have offered false, misleading and incomplete responses to the Court's questions and both reflect a lack of good faith substantial compliance with the Court order.[7]

First, contrary to defendants' assertion, CREW never suggested that the OVP restoration process involved restoring emails "from individual mail boxes *on computers . . .*" Ds' Opp. at 18-19 (emphasis added). Rather, CREW explained that according to a recently disclosed memorandum, "OA had to restore '[t]he Exchange serve that contained the OVP mailboxes" *from a backup that was performed on 10/21/2003*,' and from which email 'was extracted from each of the 70 OVP mailboxes and copied to a .PST file." CREW's Mem. at 13, *quoting* Supp. Info. at p. 46 (emphasis added).[8] CREW never referred to the restoration of "individual mail boxes *on computers*," because that was never CREW's understanding of what the documentation showed.

---

[7] That these records are vice presidential emails subject to the Presidential Records Act and not at issue, Ds' Opp. at 4 n.5, does not excuse defendants' submission of an untruthful, misleading and incomplete declaration. Both the White House servers and the back-up copies contain commingled federal and presidential records, Complaint at ¶ 33, something the White House has not denied. Accordingly, the fact that the back-up disaster recovery system failed to capture all OVP emails for a critical period is highly relevant to the issue of whether, as a general matter, the back-up copies of the missing emails are sufficiently incomplete to warrant a broader preservation order.

[8] CREW also explained that according to the documentation, because "the .pst archives containing the journaled files that she [Ms. Payton] represented were captured by back-up tapes were missing . . . OA could recover only those emails in the personal email accounts of officials in the vice president's office that had not been deleted by the individual users *by the time the back-up was created.*" Id. (emphasis added).

Second, any presumption of good faith that would otherwise attach to Ms. Payton's declaration must give way in the face of clear evidence that Ms. Payton's statements are false, misleading and incomplete. No amount of careful wording can obscure the fact that, as defendants well knew when they filed Ms. Payton's declaration, there is good reason to question the completeness of the White House back-up copies subject to the Court's preservation order. Defendants offer no evidence to the contrary.

As CREW explained in its opening brief, a three-page memorandum prepared by the OA documents the following critical facts:

- For the period September 30 through October 6, 2003, all emails on the White House servers for the OVP are missing, i.e., there are no .pst files with OVP emails on the server for this period.

- A back-up tape created on October 21, 2003, contained no emails in the journal mailboxes for OVP for the period September 30 through October 6, 2003.

- The only source for OVP emails for the period September 30 through October 6, 2003, was a back-up tape created on October 21, 2003, that contained whatever email in the 70 individual OVP mailboxes had not yet been deleted by the individual users at the time the back-up was created.

See P's Mem. at pp. 12-14. The memorandum also raises a question, unanswered by either Ms. Payton's declaration or the defendants' response to the motion to show cause, as to why OA used a back-up tape created on October 21, 2003, to locate email for the period September 30 through October 6, 2003.[9]

---

[9] It is CREW's understanding that OA was unable to use earlier back-ups because they were unreadable. If this understanding is correct it would bear directly on the issue addressed by the Court's four questions, namely whether the current back-ups contain all the missing emails.

Hiding behind a presumption of good faith does nothing to explain away these facts, facts that identify unmistakably false and misleading statements in Ms. Payton's declaration. That OA was able to recover some emails from a October 21, 2003 back-up tape, Ds' Opp. at 19, does not explain or excuse the discrepancies between the disaster recovery process Ms. Payton attested to in her declaration and the disaster recovery process that was actually used to locate OVP email responsive to a subpoena from Special Counsel Patrick Fitzgerald in his investigation into the actions of high-level OVP officials in disclosing Valerie Plame Wilson's covert CIA identity. Nor does it explain or excuse why defendants did not advise the Court, in response to two direct questions, that the back-up copies do not contain all the emails "written and received between 2003-2005," and do not contain "the emails said to be missing that are the subject of this lawsuit . . ." Order of January 8, 2008, p. 4, nos. 3, 4. Defendants' unjustified failure to answer the Court's questions accurately and completely warrants the issuance of a show cause order as to why defendants should not be held in contempt.

### 5. The Remedies CREW Seeks Are Well Within This Court's Power To Redress Defendants' Contumacious Conduct.

Finally, defendants argue that the remedies CREW seeks for defendants' contumacious conduct -- attorneys' fees, costs, and the deposition of Ms. Payton -- are barred by sovereign immunity and otherwise not within the scope of permissible remedies for civil contempt. Ds' Opp. at 19. Defendants rely on a decision of the First Circuit that has not been adopted by the D.C. Circuit and overlook precedent from this Court that is directly on point.

The D.C. Circuit has recognized explicitly that civil contempt may be used both to compel compliance with a court order and "to compensate the complainant for losses sustained through a fine payable to the complainant." U.S. v. Waksberg, 112 F.3d 1225, 1226 (D.C. Cir.

11

1997) (quotation omitted).  See also Food Lion, 103 F.3d at 1017 n.14 ("we see no reason why a district court should not be authorized to include legal fees specifically associated with the contempt as part of the compensation that may be ordered to make the plaintiff whole . . ."); Shepherd v. Am. Broadcasting Cos., Inc., 62 F.3d 1469, 1479 (D.C. Cir. 1995) (recognizing court's inherent power to sanction includes power to issue fines); Landmark Legal Found. v. EPA, 272 F.Supp.2d 70, 76 (D.D.C. 2003) (EPA found in contempt and ordered to pay plaintiff's legal fees and costs as a compensable remedy).  Indeed, the D.C. Circuit has stated that monetary damages, attorneys' fees and costs "are commonly awarded in civil contempt actions."  In re: Sealed Case, 151 F.3d 1059, 1070 (D.C. Cir. 1998) (citations omitted).

Defendant cites to none of this authority, relying instead on a First Circuit decision, U.S. v. Horn, 29 F.3d 754 (1st Cir. 1994), that itself acknowledges contrary law from this Court.  Id. at 763, *citin*g Armstrong v. Executive Off. of the Pres., 821 F.Supp. 761, 773 (D.D.C. 1993).  Moreover, Horn did not involve an issue of civil contempt, but rather whether a district court under its supervisory power could award attorneys' fees and costs against the federal government in a criminal case.  29 F.3d at 764.  And at least one court here has expressly declined to follow the Horn view of sovereign immunity, reasoning that if a court's inherent powers in a civil contempt proceeding do not include the power to award attorneys' fees and expenses in the face of "the willful disobedience of a court order," then the court would be made "a mere supplicant of the executive branch," a result inconsistent with "the tripartite framework established by the Constitution, or the applicable case law."  Cobell v. Norton, 226 F.Supp.2d 1, 154-55 (D.D.C. 2002), *vacated in part and remanded*, 334 F.3d 1128 (D.C. Cir. 2003).

Defendants cite no case law in support of their position that the non-monetary relief

CREW seeks -- the deposition of Ms. Payton -- exceeds this Court's power to remedy civil contempt. As the Supreme Court has recognized, a court has the authority to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991). It is difficult to imagine conduct more abusive of the judicial process than responding falsely and in an incomplete and misleading manner to a court order.

Moreover, the deposition of Ms. Payton -- taken at the defendants' expense -- is an especially appropriate remedy given the nature of defendants' contumacious conduct. Defendants submitted a declaration undoubtedly fashioned by lawyers and seemingly designed to reveal as little as possible while giving lip-service to answering the Court's questions. Testimony adduced through a deposition, by contrast, ensures the Court will receive answers that are not molded by others or carefully crafted to avoid disclosure. Of course, an alternative to a deposition would be a Court hearing at which Ms. Payton was directed to appear and answer to both the Court's and the plaintiff's questions.

## CONCLUSION

CREW's motion to show cause is not premised on its mere "dissatisfaction" with the statements in defendants' responses to the Court's order as defendants suggest (Ds' Opp. at 2-3), but the demonstrably false, misleading and incomplete nature of those answers. In its opening brief, CREW demonstrated why a show cause order should issue. In response, defendants have not met their burden of demonstrating that they took all reasonable steps to comply with the

Court's Order.  Accordingly, for the foregoing reasons and those set forth in CREW's opening brief, the Court should issue a show cause order.

                                                Respectfully submitted,

                                                _____/s/_____
                                                Anne L. Weismann
                                                (D.C. Bar No. 298190)
                                                Melanie Sloan
                                                (D.C. Bar No. 434584)
                                                Citizens for Responsibility and Ethics
                                                   in Washington
                                                1400 Eye Street, N.W., Suite 450
                                                Washington, D.C.  20530
                                                Phone:  (202) 408-5565
                                                Fax:  (202) 588-5020

                                                Attorneys for Plaintiff CREW

Dated:  March 18, 2008