UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>　　　　**Plaintiff,**<br>　**v.**<br><br>**EXECUTIVE OFFICE OF THE PRESIDENT, et al.,**<br><br>　　　　**Defendants.** | Civil Action No. 07-1707 (HHK/JMF) |
| **NATIONAL SECURITY ARCHIVE,**<br><br>　　　　**Plaintiff,**<br>　**v.**<br><br>**EXECUTIVE OFFICE OF THE PRESIDENT, et al.,**<br><br>　　　　**Defendants.** | Civil Action No. 07-1577 (HHK/JMF) |

**MEMORANDUM ORDER and**
**FIRST REPORT AND RECOMMENDATION**

Before the Court is plaintiff National Security Archive (the "Archive")'s Emergency Motion to Extend TRO/Preservation Order and for Depositions [#58] ("TRO"), which was referred to me on March 14, 2008, by Judge Henry H. Kennedy, Jr. for issuance of a Report and Recommendation.

**I.    Background**

On March 18, 2008, this Court ordered the Executive Office of the President ("EOP") to show cause "why it should not be ordered to create and preserve a forensic copy of any media that has been used or is being used by any former or current employee

who was employed at any time between March 2003 and October 2005." <u>Memorandum Order</u>, Mar. 18, 2008 [#62] at 3. EOP was also ordered to "include an affidavit describing the costs that would be incurred and any other facts that would bear on the burden of such an obligation." <u>Id.</u> Both EOP and the Archive filed briefs in response to the Court's Order. <u>See</u> <u>EOP Defendants' Response To March 18, 2008 Order To Show Cause</u> [#64] ("EOP Resp."); <u>Plaintiff National Security Archive's Reply on March 18, 2008 Order to Show Cause</u> [#65].

## II. <u>Discussion</u>

### A. <u>Forensic Imaging</u>

As an initial matter, the Court is not persuaded by EOP's argument that a preservation order requiring EOP to conduct forensic imaging would exceed the "jurisdictional bounds of the FRA [Federal Records Act]," or that such an order would alter the status quo and thus require plaintiffs to establish "clear" entitlement to relief. EOP Resp. at 4, 6. Like the preservation order requiring EOP to preserve back-up tapes, which EOP concedes does not violate the "jurisdictional proscriptions of the FRA," id., conducting forensic imaging simply maintains the status quo by further preserving the *res* of this litigation so that the relief sought by plaintiffs, if they are ultimately held to be entitled to it, is not illusory.

While the Court has conceded that such an order would not be without its costs, and that those costs might be too burdensome to justify injunctive relief, forensic imaging would preserve, rather than alter, the status quo by ensuring that the *res* – <u>i.e.</u> e-mails – are not deleted prior to the resolution of defendants' dispositive motions. EOP's argument that the status quo is altered because affirmative action is contemplated would

necessarily cast any efforts to preserve the subject matter of a lawsuit as alterations of the status quo because some form of affirmative action is always necessary to preserve the *res*. It is how such affirmative action affects the defendant that is to be balanced as part of the injunctive relief analysis. See Serono Labs, Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998).

It is for that reason that this Court ordered EOP to "describe[e] the costs that would be incurred and any other facts that would bear on the burden of such an obligation." Memorandum Order, Mar. 18, 2008 [#62] at 3. Unfortunately, given the lack of precision in EOP's Response,[1] the Court is unable to conduct the necessary balancing test. The Court will therefore order EOP, on or before May 5, 2008, to supplement its Response with more precise information concerning the costs of the proposed preservation order, and to answer the following questions with specificity:

1.  How many current EOP employees were employed at any time between March 2003 and October 2005?

2.  How many hard drives are in the possession or custody of EOP that were in use between March 2003 and October 2005?[2]

---

[1]  See, e.g., EOP Resp. at 2 (workstations in use today "very unlikely" to have been used before October 2005); id. (workstations in use during period in question "unlikely" to still be in use); Second Declaration of Theresa Payton [#64-2] ("Second Decl.") at ¶ 4 (hard drives from period in question not "likely" to be available); EOP Resp. at 2-3 (forensic copies of current workstations "not likely" to contain data from time in question); id. at 2 n.1 (costs of creating forensic copies "cannot be quantified at this time"); id. at 3 (creating active data copies would create "significant" burdens); Second Decl. at ¶ 4 ("up to one-third" of workstations replaced each year); id. (hard drives "generally" destroyed when workstations are retired); id. at ¶ 5 (it is "expected" that a "vast majority" of workstations would have been replaced); id. (a "small number" of relevant computers may still be in use); id. at ¶ 6 (remotely querying workstations is "time consuming and labor intensive"); id. at ¶ 9 (copying potentially relevant active data "might" require the use of workstations presently assigned to users); id. at 10 ("hundreds of hours of work" required to copy all active data on relevant workstations).

[2]  EOP is "able to remotely query computer workstations currently in use on the EOP Network to detect technical characteristics from which it may infer generally how long a particular workstation has been available for use in the EOP, and whether it may have been used before October 2005." Second Decl.

Upon receipt and consideration of this information, the Court will revisit this issue and issue a Second Report and Recommendation.

**B.     Other Methods of Preservation**

**1.     Collecting and Preserving E-Mails from .PST Files**

Apart from the issue of forensic imaging, it has become clear from the briefing that a preservation option is available – remotely obtaining .PST files from employee workstations – that may yield positive results while causing minimal burden or disruption to EOP and its employees.

It is common practice for a user to move e-mails from his inbox to a personal folder. The motive for such action may involve, for example, that user's personal method of organization (i.e. the user moves all messages relating to "Project A" to a personal folder labeled "Project A e-mails," making them easier to locate at a later date), or an attempt to reduce the size of the user's inbox while preserving e-mails (networks often impose "quotas" which serve as limitations on the size of each user's inbox; as a user's inbox approaches that quota, that user is instructed to delete e-mails or move them to personal folders; if the user exceeds the quota, his ability to send and receive e-mail is suspended).

When a user moves an e-mail to a personal folder, that e-mail is likely transferred from the network to a .PST file on that user's hard drive. It would remain there until deleted or destroyed, and would likely survive the replacement of the user's workstation. Second Decl. at ¶ 4 ("[I]f a user saved .pst files in their profile, those .pst files should be copied over."). It is possible, then, that an individual who was employed at EOP at any

---

at ¶ 6. The Court acknowledges EOP's proffer that this process would be "time consuming and labor intensive." Id. Such a conclusory statement cannot, however, relieve EOP of its obligation to provide the information ordered by the Court.

point between March 2003 and October 2005, and who remains employed at EOP, would have e-mails from that time period on his or her workstation.

EOP is able to remotely query workstations on its network and copy .PST files located therein. Id. at ¶¶ 6, 8. Performing this function is within the capacity of the Office of the Chief Information Officer ("OCIO"), and thus would not require outsourcing or a long procurement process. Id. at ¶ 8. Moreover, it appears that this process can be automated, reducing labor costs – and, in fact, it can be executed in such a way as to cause no disruption to, and require no affirmative action by, EOP employees. See Declaration of Al Lakhani [#65-3] ("Lakhani Decl.") at ¶ 21 ("[I]t is possible to create and automate a process by which emails from PST files stored on networked PCs are automatically located, inventoried, copied to a central location, and QC'd for accuracy.").[3] This process could be constructed so as to copy only those e-mails sent or received between March 2003 and October 2005, and would not require any individuals to open or review the e-mails. Id.

The burden on EOP to conduct such a focused and automated procedure is minimal in terms of cost, labor, and employee downtime, and no e-mails preserved as a result of this procedure would be read or produced unless the plaintiffs prevail. Compared to the likelihood that e-mails at the heart of this litigation would be recovered and preserved,[4] the procedure easily meets the standards required for injunctive relief. See Serono, 158 F.3d at 1317-18. For these reasons, it is my recommendation that EOP

---

[3] This process utilizes "Mail Attendant," software that is already owned by EOP; an update may need to be purchased, however. See Lakhani Decl. at ¶ 22 (estimating the cost at $25,000).

[4] The Court notes that EOP has not disclosed the number of individuals who were employed by EOP between March 2003 and October 2005 and are still employed by EOP.

be ordered to search the workstations, and any .PST files located therein, of any individuals who were employed between March 2003 and October 2005, and to collect and preserve all e-mails sent or received between March 2003 and October 2005.

### 2. **Preservation Notice**

On November 12, 2007, Judge Kennedy ordered EOP to "preserve media, no matter how described, presently in their possess[ion] or under their custody or control, that were created with the intention of preserving data in the event of its inadvertent destruction." Order, Nov. 12, 2007 [#18] ("Kennedy Order"). It is common for employees to copy data from their workstations onto portable media such as flash drives or floppy disks for purposes of preservation or remote access, but it appears that EOP does not consider such data to be within the scope of the Kennedy Order:

> The Court's Order also mentions hardware other than workstations (e.g. "hard or external drives, CDs, DVDs, jump, zip, hard, or floppy disks"). OCIO does not have a formal process to provide such media to its customers or users, nor does it have any process in place for tracking or monitoring the use of such media. This is left to the discretion of the user and the components to track and manage.

Second Decl. at ¶ 4 n.1.[5]

EOP's position likely stems from the language in the Kennedy Order limiting the preservation obligation to media "created with the intention of preserving data in the event of its inadvertent destruction." Kennedy Order at 1 (emphasis added). As mentioned above, however, employees may move or copy e-mails to portable media for reasons other than preservation. In light of the possibility that EOP employees have

---

[5] One would hope that the components have filled the void left by OCIO by implementing policies and procedures to "track and manage" the removal and/or transfer of EOP data, much of which is likely to include highly classified information.

within their possession e-mails that are the subject of this litigation on portable media not otherwise covered by the Kennedy Order, the Court recommends that an order be issued requiring EOP to issue a preservation notice to its employees directing them to surrender any media in their possession – irrespective of the intent with which it was created – that may contain e-mails sent or received between March 2003 and October 2005, and for EOP to collect and preserve all such media. This process is a common feature of modern litigation.[6]

### B.  Back-up Tapes

In its Order issued on March 18, 2008, this Court noted that it appeared to be the case that no back-up tapes exist for the period between March 2003 and October 2003. Memorandum Order, Mar. 18, 2008 [#62], at 2. The Court based its assertion on, and cited to, the following statement in the Declaration of Theresa Payton [#48-2]:

> Prior to October 2003 and continuing through 2005 and to the present, this office has regularly created back-up tapes for the EOP Network, which includes the system's email servers. Consistent with industry best practices relating to tape media management for disaster recovery back-up systems, these tapes were recycled prior to October 2003. In October 2003, this office began preserving and storing all back-up tapes and continues to do so. For that reason, emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes.

Id. at 6. EOP takes issue with the Court's assertion, stating that "it is simply incorrect that the Office of Administration does not possess back-ups tapes for back-ups of the EOP Network before October 2003. Rather, in October 2003, the Office of

---

[6] See, e.g., THE SEDONA CONFERENCE COMMENTARY ON LEGAL HOLDS at 3, Guideline No. 6, available at http://www.thesedonaconference.org/content/miscFiles/Legal_holds.pdf ("When a duty to preserve arises, reasonable steps should be taken to identify and preserve relevant information as soon as is practicable. Depending on the circumstances, a written legal hold (including a preservation notice to persons likely to have relevant information) should be issued."); Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 434 (S.D.N.Y. 2004) ("[C]ounsel should instruct all employees to produce electronic copies of their relevant active files.").

Administration began to preserve all disaster recovery back-up tapes that existed on that date, including back-up tapes predating October 2003." EOP Resp. at 5.

The Court must admit that it is still unclear which back-up tapes are being preserved and stored by EOP. As noted above, it has been proffered by EOP that it first "began preserving and storing all back-up tapes" in October 2003, and prior to that time back-up tapes were recycled. Id. EOP has now offered the additional proffer that, when it began preserving back-up tapes in October 2003, back-up tapes were still in existence – and were preserved – that "predat[ed] October 2003." EOP Resp. at 5.

To resolve any ambiguities once and for all, EOP is ordered to inform the Court on or before May 5, 2008, whether all back-up tapes created between March 2003 and October 2003 have been preserved – and, to the extent that they have not, to state the specific dates within that period for which no back-up tapes exist.

### C. Depositions

In addition to a supplemental preservation order, the Archive seeks in its TRO an order compelling "emergency, court-supervised depositions" of Theresa Payton, TRO at 1, and "a supervised deposition of a NARA [National Archives and Records Administration] witness." Memorandum of Points and Authorities in Support of Emergency Motion to Extend TRO/Preservation Order and for Depositions [#58-2] ("Memo") at 18. In support of this request, the Archive cites numerous examples of what it alleges are inconsistencies between Ms. Payton's statements to this Court, her testimony before the United States House of Representatives Committee on Oversight and Government Reform on February 26, 2008, and documents produced at that hearing. Memo at 2, 7. The Archive argues that this relief will enable it to "determine the

accuracy of the Payton Declaration and the true state of the missing emails and their potential repositories." Memo at 3. It specifically seeks to explore alleged contradictions in her testimony pertaining to (1) whether the back-up tapes governed by the Kennedy Order contain the missing emails; (2) a 2005 analysis of the missing emails; (3) the completion date of an assessment and audit of the White House emails.

A court has the power to direct expedited discovery in limited circumstances, and courts have developed two approaches: a stringent standard and one based on reasonableness. Disability Rights Council v. WMATA, 234 F.R.D. 4, 7 (D.D.C. 2006). Judged by either standard, I cannot recommend the taking of the depositions sought. The central focus as this point is preserving the *res*; coupled with the Kennedy Order, this can be accomplished by Judge Kennedy based on the information already provided by the parties in their many briefs, the recommendations made here, and any future recommendation that I may make after receipt and consideration of the additional information EOP is now ordered to provide.

Failure to file timely objections to the findings and recommendations set forth in this report may waive the right to appeal from an order of the District Court adopting such findings and recommendations. See Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**


Date:   April 24, 2008                                  /s/
                                        JOHN M. FACCIOLA
                                        UNITED STATES MAGISTRATE JUDGE