## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL SECURITY ARCHIVE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 07-1577 (HKK/JMF) |
| | ) | |
| EXECUTIVE OFFICE OF THE | ) | (Consolidated with |
| PRESIDENT, *et al.,* | ) | Civil Action No. 07-1707 (HKK/JMF)) |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## OPPOSITION TO DEFENDANTS' OBJECTIONS, RESPONSES AND REQUEST FOR RECONSIDERATION OF THE FIRST REPORT AND RECOMMENDATION ON PLAINTIFF NSA'S MOTION TO EXTEND TRO/PRESERVATION ORDER

Defendants' most recent two filings expose a desperate litigant legally cornered by its own injudiciousness.[1]  Defendants, having waived their right to object to or appeal conclusions of fact and law found by this Court as long ago as November 2007, now attempt to lodge their objections to those conclusions in what can only be described as an attempt to resurrect a time-barred appeal.  The time for that, however, has long passed.  This Court already has found that Plaintiffs will suffer irreparable harm if the missing emails are obliterated from backup tapes or other media.  Defendants did not appeal that finding and cannot object to it now.  The only question that remains at this late procedural stage of the National Security Archive's ("the Archive") Emergency Motion to Extend the Preservation Order [58] is whether the burden to Defendants (necessitated by Defendants' own conduct) resulting from an extension of the

---

[1] This filing is made in opposition to Defendants' Responses to and Request for Reconsideration of the First Report and Recommendation [69] (May 5, 2008), pursuant to Local Civil Rule 7(b), and in opposition to the EOP Defendants' Local Rule 72.3(b) Objections to the Magistrate Judge's First Report and Recommendation [72] (May 12, 2008), pursuant to Local Civil Rules 72.3(b) and 7(b).  Though Defendants separately filed their Request for Reconsideration and their Objections, the Archive is filing a joint opposition, meaning that Defendants must file any Reply to this Opposition within five days of this date.  LCvR 7(d).  Under Rule 6 of the Federal Rules of Civil Procedure, Defendants' Reply, if any, is due no later than May 30, at which time no further briefing on the First Order and Report and Recommendation is allowed under the Rules.

Preservation Order to ensure protection against obliteration of the missing emails outweighs the irreparable harm to Plaintiffs of those emails being permanently eliminated. Defendants have failed to produce evidence that any burden outweighs the already-found irreparable harm, and the Archive has produced evidence that any alleged burden to Defendants is nominal. The necessary result is thus simpler than Defendants would have this Court believe: the burden to Defendants of extending the Preservation Order is far outweighed by the irreparable harm that would result to Plaintiffs from not extending it, and the Magistrate Judge's recommendations should therefore be adopted by this Court, and the Preservation Order extended.

Because Defendants are attempting to reargue findings that were argued, decided and waived long ago, a thorough recitation of the procedural history may assist the Court in returning to the only issue before it — burden.

## BACKGROUND

In September 2007, the Archive filed its Complaint under the Administrative Procedure Act for review of Defendants' Federal Records Act compliance, alleging that several million email messages have been improperly deleted from Defendants' computer servers, and seeking declaratory relief and injunctive orders compelling Defendants "to request that the Attorney General initiate action, or seek other legal redress, to recover the deleted e-mails," and compelling Defendants "to establish an adequate archival system." Complaint [1] (Sept. 25, 2007) ¶¶ 49, 54, 61, 68, 75, 82, 90, 98.

### *First Pronouncement on Irreparable Harm from Obliteration of Emails from Backup Tapes: October 2007 Report & November Preservation Order*

In October 2007, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") sought the issuance of a Temporary Restraining Order prohibiting Defendants from destroying backup tapes or similar media, which may contain the emails this lawsuit alleges have

been lost, until the merits of the case can be decided. Motion for Temporary Restraining Order [4] (Oct. 11, 2007). CREW alleged that without an order protecting such media, Plaintiffs would suffer irreparable harm: preservation of the *res* is necessary to ensure that, if Plaintiffs win on the merits, relief ordered by the Court will not be illusory. *Id.* at 19-21.

The Court referred the TRO Motion to Magistrate Judge Facciola for a report and recommendation. Order [6] (Oct. 3, 2007). After holding a hearing on the motion (Oct. 17, 2007) (Transcript at [15]), the Magistrate Judge issued his first of several orders, reports and recommendations on the backup tape issue, Report and Recommendation [11] (Oct. 19, 2007) ("October 2007 Report"), which decided several factual and legal issues argued by the parties.

First, the Magistrate Judge stated that he was considering the issuance of a preliminary injunction, October 2007 Report at 1 n.1, then set forth the standard for injunctive relief, which calls on a court to "'examine whether (1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the public interest will be furthered by the injunction,'" and to balance these factors. *Id.* at 3 (quoting *Ellipso v. Mann*, 480 F.3d 1153, 1157 (D.C. Cir. 2007) (internal quotation marks omitted)). In balancing these factors, the Magistrate Judge held that "if, as CREW contends, the e-mails have been deleted, then the backup media are the only place where they may be and the obliteration of this backup media obviously threatens CREW with irreparable harm." *Id.* at 3. He concluded that, "[i]ndeed, the threat of such obliteration is a text book example of irreparable harm." *Id.*

The Magistrate Judge further held that an injunction "will not injure the government or burden it in any way," and that while "there is no public interest in the destruction of the backup media . . . there is a public interest in their preservation, at least until this Court rules, since the e-

mails at issue may have historical and public importance." *Id.* Finally, he held that "there are

several legal issues" in the case that "are substantial and warrant careful consideration," such that

he "certainly cannot say that CREW has no likelihood of prevailing." *Id.* at 4. Weighing each

factor, the Magistrate Judge held that "weighing the substantiality of the legal questions

presented against the irreparable harm that CREW may suffer and the clear absence of any harm

to the government justifies" the Order he recommended to this Court. *Id.* at 4-5.

This Court then issued the recommended Order (the "Preservation Order") adopting the

Magistrate Judge's October 2007 Report in full and overruling Defendants' objections thereto.

Order [18] (Nov. 12, 2007); *see also* Defendants' Local Rule 72.3(b) Objections to Report and

Recommendations [12] (Oct. 23, 2007). In doing so, this Court adopted the finding that

obliteration of the backup tapes where the missing emails might be found "is a text book

example of irreparable harm," and ordered Defendants to:

> . . . preserve media, no matter how described, presently in their possess[ion] or
> under their custody or control, that were created with the intention of preserving
> data in the event of its inadvertent destruction. Defendants shall preserve the
> media under conditions that will permit their eventual use, if necessary, and shall
> not transfer said media out of their custody or control without leave of this court.

Order at 2. Although Defendants had an appeal as of right, they did not appeal the Court's Order.

### *Second Pronouncement on Irreparable Harm from Obliteration of Emails from Backup Tapes: January 2008 Order*

After the October 2007 Report but prior to the issuance of the November Preservation

Order, the Archive filed a motion to compel discovery seeking an order compelling a 26(f)

conference and allowing discovery of information necessary to ensure that the backup tapes in

Defendants' possession would be sufficient to protect against the irreparable harm found by this

Court. Motion to Expedite Service of Discovery Requests and to Compel Rule 26(f) Conference

[Case No. 07-1577 Docket #5] (Oct. 26, 2007). Although the Preservation Order was issued

before the Archive's motion for discovery was decided, the Magistrate Judge ordered the

Defendants to answer the backup tape questions raised in the Archive's Motion, because "[i]f the

missing emails are not on those back-ups" under the protection of the Preservation Order, the

relief the Archive would have to seek to protect it from irreparable harm would be time-sensitive.

Memorandum Order [46] (Jan. 8, 2008) ("January 2008 Order").

       Thus, the Magistrate Judge ordered the Defendants to answer four questions designed to

elicit the information necessary to determine whether additional relief would be needed to

protect against what he found to be time-sensitive, irreparable harm. Specifically, the Magistrate

Judge asked whether the backup tapes: (1) indicate the time period covered by each tape; (2)

indicate the data contained on each tape; (3) contain emails written between 2003-2005; and (4)

contain the emails said to be missing. January 2008 Order at 4. In response to the Magistrate

Judge's Order, Defendants filed the Declaration of Theresa Payton, ("First Payton Declaration")

[48-2] (Jan. 15, 2008), the Office of Administration's Chief Information Officer ("CIO") and

head of its Office of Chief Information Officer ("OCIO"). In that Declaration, and as pointed out

by the Archive in its response to the Declaration, Defendants did not answer the Magistrate

Judge's questions; instead Defendants only provided unsupported, qualified statements that the

backup tapes in the Defendants' possession, whatever those may be, "should contain

substantially all" of the emails alleged to be missing by the Archive. *Id.* ¶ 12.d. The First

Payton Declaration also revealed that all the missing emails *may not* be on the backup tapes,

because prior to October 2003, backup tapes were recycled. *Id.* ¶ 12.c. In addition, the First

Payton Declaration raised, for the first time, the possibility that that OA "does not know if any

emails were not properly preserved." First Payton Decl. ¶ 12.d. Thus, the First Payton

Declaration raised more doubts about the completeness of the backup tapes than it resolved. *See*

National Security Archive's Response to Declaration of Theresa Payton [50] (Jan. 17, 2008).

### Third Pronouncement on Irreparable Harm from Obliteration of Emails from Backup Tapes: March 2008 Show Cause Order

While the motion to expedite discovery was still pending,[2] additional evidence came to

light strongly indicating both that a significant number of the emails that the Preservation Order

is designed to protect are not contained on the backup tapes and that the Defendants have not

been protecting all media envisioned by the Court to be protected thereunder. Specifically, the

testimony of Ms. Payton and others, as well as documents from the Defendants, disclosed to

Congress that the backup tapes that had not been recycled may not contain the missing emails

and that Defendants have recycled and continue to recycle employee workstations from the

relevant period. These additional disclosures caused the Archive to file its Emergency Motion to

Extend TRO/Preservation Order and for Depositions ("Emergency Motion") [58] (Mar. 11,

2008), which is the motion presently before the Court.

In its Emergency Motion, which was supported by extensive evidence supporting the

facts summarized above, the Archive argued that an extension of the Preservation Order was thus

necessary to make clear that email data residing on media other than backup tapes was likewise

being preserved to adequately protect Plaintiffs from the irreparable harm found in that

Preservation Order. Emergency Motion at 7-14, 19-23. Defendants opposed the motion,

offering only the argument that the Preservation Order should not be extended because the

Archive "cannot demonstrate irreparable harm or a likelihood of success on the merits" — even

though this Court had already adopted the Magistrate Judge's finding that the Archive had

---

[2] The January 2008 Order on the motion to expedite discovery deferred ruling pending additional briefing. That briefing was completed in January 2008, and the Magistrate Judge's disposition of all of the issues raised therein is still pending.

already successfully demonstrated those elements.  Defendants' Opposition to NSA's 'Emergency' Motion to Extend TRO/Preservation Order and For Depositions [60] (Mar. 14, 2008) at 4.  The Emergency Motion was then referred to the Magistrate Judge for a report and recommendation.  (Mar. 14, 2008 Minute Entry).

The Magistrate Judge then issued the third pronouncement on the backup tape issue, issuing a Memorandum Order deferring ruling on the Emergency Motion and ordering the Defendants to show cause why they should not be ordered to preserve forensic copies of workstations and external media devices.  Memorandum Order [62] (Mar. 18, 2008) ("March 2008 Show Cause Order").  In the March 2008 Show Cause Order, the Magistrate Judge found that "if e-mails have not been properly archived as plaintiffs allege, and copies of those e-mails do not exist on back-up tapes, then the obliteration of data on which those e-mails may be reconstructed threatens the plaintiffs with irreparable harm," and cited his October 2007 Report, which had already found irreparable harm to have been established.  *Id*. at 2.  The Magistrate Judge went on to find that irreparable harm continues to exist to the extent that there are no backup tapes between March and October 2003, and to the extent other emails were improperly archived and thus not on the backup tapes between October 2003 and October 2005.  *Id*.  The Magistrate Judge thus concluded that additional information, regarding the costs of extending the Preservation Order to include preserving workstations and other media, would be necessary to balance the burden of extending the Preservation Order "against the irreparable harm faced by the Plaintiffs," and again cited the four factors considered for injunctive relief.  *Id*. at 2-3 (citing *Serono Labs, Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)).  To balance any burden against the already-found irreparable harm, the Magistrate Judge ordered the Defendant EOP to show cause "why it should not be ordered to create and preserve a forensic copy of any media"

used by employees during the relevant period, along with an affidavit describing the costs and any other facts that would bear on such a burden. *Id.*

Defendants filed their Responses to the Show Cause Order, arguing that the relief contemplated in the Show Cause Order "would exceed the jurisdictional bounds of the FRA" and would "impose significant costs for speculative, marginal value." EOP Defendants' Response to March 18, 2008 Order to Show Cause [64] (Mar. 21, 2008) at 4. Along with their Responses, the Defendants filed another declaration from Ms. Payton. ("Second Payton Declaration") [64-2]. The Second Payton Declaration provided no evidence of burden, but simply made conclusory, unsupported statements that the costs "are not presently knowable, but they must be expected to be substantial." *Id.* ¶ 8. The Second Payton Declaration also revealed additional evidence that preservation of the incomplete backup tapes is not sufficient to protect against the Archive's irreparable harm, including statements that the OCIO does not monitor or track workstations from the relevant period and that it does not monitor, track or take steps to preserve additional external media that may contain the missing emails. *Id.* ¶¶ 4-5. The Second Payton Declaration also revealed, contrary to its assertions of burden, that OCIO has a remote-query capability that can detect technical characteristics of workstations currently in use on the EOP network. *Id.* ¶ 6.

Against the backdrop of Defendants' unsupported claims of burden, the Archive submitted its Reply on the Show Cause Order, along with the Declaration of Al Lakhani ("Lakhani Declaration") [65, 65-3] (Mar. 25, 2008). The Lakhani Declaration established that the costs for various methods of copying email data to ensure its preservation were both knowable and reasonable, and that the remote copying option revealed by OA could most likely be accomplished at minimal cost. Lakhani Decl. ¶¶ 23-26, 21-22.

***Fourth Pronouncement on Irreparable Harm from Obliteration of Emails from
Backup Tapes: April 2008 Order and Report***

The Magistrate Judge then issued his fourth pronouncement on the backup tape issue.

Memorandum Order and First Report and Recommendation [67] (Apr. 24, 2008) ("April 2008

Order and Report").[3]  The Magistrate Judge stated that "[i]t is how . . . affirmative action affects

the defendant that is to be balanced as part of the injunctive relief analysis," and noted that "[i]t

is for that reason that this Court ordered EOP to 'describe[e] the costs that would be incurred and

any other facts that would bear on the burden of such an obligation,'" April 2008 Order and

Report at 3 (quoting March 2008 Show Cause Order at 3), having already found "the irreparable

harm faced by the plaintiffs" to have been established.  March 2008 Show Cause Order at 2.  The

Magistrate Judge also correctly rejected Defendants' argument that forensic imaging is beyond

the reach of the FRA, noting that forensic imaging serves the same purpose as the Preservation

Order already in place, which Defendants had conceded to be consistent with the FRA:

> As an initial matter, the Court is not persuaded by EOP's argument that a
> preservation order requiring EOP to conduct forensic imaging would exceed the
> "jurisdictional bounds of the FRA [Federal Records Act]," or that such an order
> would alter the status quo and thus require plaintiffs to establish "clear"
> entitlement to relief.  EOP Resp. at 4, 6.  Like the preservation order requiring
> EOP to preserve back-up tapes, which EOP concedes does not violate the
> "jurisdictional proscriptions of the FRA," id., conducting forensic imaging simply
> maintains the status quo by further preserving the *res* of this litigation so that the
> relief sought by plaintiffs, if they are ultimately held to be entitled to it, is not
> illusory.

*Id.* at 2.

Because the record on irreparable harm to Plaintiffs in not extending the Preservation

Order was already clear, the Magistrate Judge turned to the burden question before him.  He

_____

[3] The April 2008 Order and Report was captioned "First" because Judge Facciola stated he would issue a
"Second" report on the forensic imaging option after receiving the ordered information from Defendants.  It was not,
however, the first pronouncement on the backup tape issue, as it was preceded by the October 2007 Report, the
January 2008 Order, and the March 2008 Show Cause Order.

found a "minimal burden or disruption" to Defendants (with respect to both preserving .PST files and issuing a preservation notice to collect and preserve portable media), that the minimal burden did not outweigh the irreparable harm to Plaintiffs, and recommended that this Court therefore enter an order extending the Preservation Order to cover the .PST files and portable media. April 2008 Order and Report at 4-7.

Specifically, regarding the .PST files, the Magistrate Judge found that "it has become clear from the briefing that . . . remotely obtaining .PST files from employee workstations – [] may yield positive results while causing minimal burden or disruption to EOP and its employees." *Id.* at 4. He went on: "[t]he burden on EOP to conduct such a focused and automated procedure is minimal in terms of cost, labor, and employee downtime, and no e-mails preserved as a result of this procedure would be read or produced unless the plaintiffs prevail. Compared to the likelihood that e-mails at the heart of this litigation would be recovered and preserved, the procedure easily meets the standards required for injunctive relief." *Id.* at 5

Regarding the preservation notice, the Magistrate Judge suggested that the types of portable media that the Archive seeks to add to the Preservation Order were intended to be within the scope of the November Preservation Order from the start: "It is common for employees to copy data from their workstations onto portable media such as flash drives or floppy disks for purposes of preservation or remote access, but it appears that EOP does not consider such data to be within the scope of the [Preservation] Order." April 2008 Order and Report at 6. Therefore, he found that "[i]n light of the possibility that EOP employees have within their possession e-mails that are the subject of this litigation on portable media not otherwise covered by the Kennedy [November Preservation] Order, the Court recommends that an order be issued requiring EOP to issue a preservation notice to its employees directing them to

surrender any media in their possession . . that may contain e-mails sent or received between March 2003 and October 2005" and noted that such preservation is a common feature in modern litigation.  April 2008 Order and Report at 6-7 & n.6.

The Magistrate Judge also readdressed the issue of the cost burden to EOP of preserving forensic images of workstations.  He found that "[u]nfortunately, given the lack of precision" in EOP's prior response, which failed to quantify any cost to it of preserving forensic images, he still could not balance that specific burden and ordered Defendants to provide precise information regarding the number of employees and the number of hard drives presently at EOP that were there between March 2003 and October 2005.  *Id.* at 3.  In doing so, the Magistrate Judge rejected Defendants' previous conclusory statements of cost.  *Id.* at 3 n.1.

It is important to note that in the April 2008 Order and Report, the Magistrate Judge did not give Defendants a second chance to articulate a general burden in preserving forensic images. He only ordered Defendants to answer two precise questions:  (1) the number of current EOP employees who were employed between March 2003 and October 2005; and (2) the number of hard drives in the possession or custody of EOP that were in use between March 2003 and October 2005.  Presumably, this was because that basic information can be quantified by Defendants and then used by the Magistrate Judge to calculate any burden by multiplying that number by the per-person or per-unit costs estimated in either the Lakhani Declaration or in other widely accepted standards.

The Magistrate Judge also noted the inconsistencies in Ms. Payton's statements to the Court, and ordered Defendants *again* to answer additional questions probing the accuracy of Defendants' claims that the backup tapes "should" contain the missing emails.  "To resolve any ambiguities once and for all," the Magistrate Judge posed two additional questions to Defendants:

(3) "whether all back-up tapes created between March 2003 and October 2003 have been preserved"; and (4) "to the extent that they have not, to state the specific dates within that period for which no back-up tapes exist." April 2008 Order and Report at 8. The answers to these four questions, the Magistrate Judge noted, would form the basis for his recommendation on whether or not to order forensic imaging in addition to the .PST and portable media preservation. *Id.*

In response to the four Court-ordered questions, Defendants submitted the Third Declaration of Theresa Payton, along with a "Request for Reconsideration of the First Report and Recommendation." [69, 69-2] (May 5, 2008). This "Request for Reconsideration" urged reconsideration of findings and conclusions reached long before the April 2008 Order and Report, including the finding of a risk of irreparable harm, and the prior finding that preservation of the status quo does not exceed the scope of the FRA nor require a greater showing than that needed for traditional injunctive relief. Not surprisingly, in the Third Payton Declaration, Defendants did not answer the Magistrate Judge's two questions regarding employees and hard drives, and did not answer the two questions regarding the backup tapes — the only things they were ordered to do under the April Order and Report. Instead of responding to the Court's order seeking the "number of current EOP employees employed at any time between March 2003 and October 2005," the Third Payton Declaration provided the Court with the number of EOP "FRA component" employees: 583. Third Payton Decl. ¶ 4. Instead of providing the Court with the number of "hard drives [] in the possession or custody of EOP that were in use between March 2003 and October 2005," the Third Payton Declaration admitted to the Court that, because it did not track hard drive information, it "does not know what hard drives these 583 individuals used during that timeframe or if the hard drives are still in existence."[4] *Id.* ¶ 5 Instead of answering

---

[4]Ms. Payton also made conclusory statements of the kind already rejected by the Magistrate Judge regarding the cost and burden of "provid[ing] meaningful information" about the workstations. *Compare* Third

the Court's order for "whether *all* back-up tapes created between March 2003 and October 2003 have been preserved," the Third Payton Declaration stated that there are 438 tapes from that period, without any explanation of whether that number actually encompasses substantially all or a very small fraction of all the back-up tapes that were generated in that period. *Id.* ¶ 10. And finally, instead of answering the Court's order for the "specific dates within that period for which no back-up tapes exist," the Third Payton Declaration stated that "the earliest date on which data was written on any of the 438 tapes is May 23, 2003; the latest date that data was written was September 29, 2003." *Id.* ¶ 11. So although the Court now knows that there are at least 84 days within that period for which there are no backup tapes, the Court does not know, because Defendants have again refused to answer the question, how many more backup tapes are missing from that period and the dates of those additional missing tapes.

## ARGUMENT

### I.    THE PRESERVATION RECOMMENDED BY THE MAGISTRATE JUDGE SHOULD BE ADOPTED BECAUSE THE THREAT OF IRREPARABLE HARM TO PLAINTIFFS OUTWEIGHS THE BURDEN ON DEFENDANTS

This Court's review of the recommendations in the Magistrate Judge's April 2008 Report is conducted *de novo*. Fed. R. Civ. P. 72(b)(2),(3); LCvR 72.3(c); *Page v. Pension Benefit Guar. Corp.*, 498 F. Supp. 2d 223, 225 (D.D.C. 2007). The Magistrate Judge's recommendations are based on a deliberative process that has been fully briefed over the last few months and reflects the Magistrate Judge's careful balancing of the factors relevant to injunctive relief, including his

---

(continued...)

Payton Decl. ¶7 & n.3 (process of providing information on workstations "would be extremely costly in the aggregate" and "extraordinary"); *id.* ¶8 (process would require "numerous OCIO employees") *with* April 2008 Order and Report at 3 n.1 (faulting the "lack of precision" in EOP responses that described processes as "time consuming and labor intensive," taking "hundreds of hours of work" and imposing "significant" burdens that "cannot be quantified at this time"). Any burden in providing meaningful information is solely the result of OA's failure to track that information.

balancing of the specific burdens raised by Defendants in their Objections.  For the reasons

stated below, as well as for the reasons first laid out in detail in the Archive's Emergency Motion,

the exhibits thereto, and the Archive's Reply to the March 2008 Show Cause Order, that Report

should be adopted in full.[5]

### A. The April 2008 Report Applied the Correct Standard for Evaluating Injunctive Relief

Defendants argue that the Magistrate Judge failed to acknowledge or apply the correct

four-part standard for judging injunctive relief.[6]  Objections [72] at 3 n.2.  The standard for

assessing injunctive relief calls on the court to "examine whether: (1) there is a substantial

likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an

injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the

public interest will be furthered by the injunction."  *Serono Labs, Inc. v. Shalala*, 158 F.3d 1313,

1317-18 (D.C. Cir. 1998).  The Magistrate Judge has invoked and consistently applied that

standard throughout these proceedings, including in his most recent Report.[7]  April 2008 Order

---

[5] Defendants' "Motion for Reconsideration" should be denied because, although they may "characterize their . . . motion as requesting 'reconsideration' of Magistrate Judge Facciola's R & R, [they] should have styled their motion as one that presented the district court with 'objections' to the R & R under Federal Rule of Civil Procedure 72(b)."  *Sloan v. HUD*, 196 F.Supp. 2d 16, 17 n.1 (D.D.C. 2002).  Defendants' "motion would seem to suggest that Magistrate Judge Facciola should review his own R & R, but . . there is no provision in the Federal Rules of Civil Procedure by which to seek 'reconsideration' of a report and recommendation from a magistrate judge."  *Id.*  (internal quotation mark omitted); *see also* Comment to LCvR 72.3 ("the Rule is intended to make clear that objections to the magistrate judge's proposed findings and recommendations should not be called motions for reconsideration and are to be directed to the district judge.");  Fed. R. Civ. P. 72(b) (similar); *see also* Fed. R. Civ. P. 72(a) (same for order of magistrate judge); LCvR 72.2(b) (same); *Comment* to LCvR 72.2 (same).  Insofar as Defendants persist in treating this as a Motion for Reconsideration directed at Magistrate Judge Facciola, they are in violation of Local Civil Rule 7(m)'s requirement that counsel confer prior to the filing of *any* nondispositive motion, and a motion that does not comply with this rule "will be denied."  *United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Auth.*, 456 F.Supp. 2d 46, 52 (D.D.C. 2006); *see also United States ex rel. Hockett v. Columbia/HCA Healthcare*, 498 F.Supp. 2d 25, 35 n.4 (D.D.C. 2007) ("The rule does not contain a futility exception, and it is always the best practice to consult even where the other party's opposition, as a general matter, is little more than a foregone conclusion.")

[6] The Magistrate Judge has also considered Defendants' arguments regarding standing, but has not deemed them to stand in the way of preliminary injunctive relief.  January 2008 Order [46] at 3 n.2.

[7] In any event, a magistrate judge's failure to explicitly refer to the correct standard does not prohibit a district court from adopting his recommendations, because the magistrate judge's legal conclusions are reviewed *de*

and Report [67] at 3 (citing *Serono Labs*, 158 F.3d at 1317-1318); *see also* Transcript of October 17 Hearing Before Magistrate Judge Facciola at 14:22-15:7 (Judge Facciola: "Now, in terms of irreparable harm and the public interest, would you concede that obviously if information is destroyed that is at the very heart of a lawsuit, that the harm threatened, at least, to the Plaintiffs is irreparable and that there is a public interest in its preservation at least until Judge Kennedy can act?"); October 2007 Report at 3; March 2008 Show Cause Order at 3.

Defendants are also incorrect that the relief contemplated by the Magistrate Judge in his April 2008 Order and Report amounts to a mandatory injunction that should have been judged under a stricter standard. *See* Motion for Reconsideration at 2; Objections at 2, 18-19; EOP Defendants' Response to March 18, 2008 Order to Show Cause. [64] (Mar. 21, 2008). The Archive already debunked this misstatement of the law once, Reply on March 18, 2008 Order to Show Cause [65] 6-9, and the Magistrate Judge agreed, holding that the forms of relief sought "would preserve, rather than alter, the status quo by ensuring that the *res* – i.e. e-mails – are not deleted" prior to adjudication. April 24 Order and Report at 2. "EOP's argument that the status quo is altered because affirmative action is contemplated would necessarily cast any efforts to preserve the subject matter of a lawsuit as alterations of the status quo because some form of affirmative action is always necessary to preserve the *res*." *Id.* at 2-3.

The relief recommended by the Magistrate Judge will require Defendants to preserve the *res*, which is fully consistent with "[t]he purpose of a preliminary injunction[, which] is merely

---

(continued...)

*novo* and any errors can be deemed harmless. *Beale v. District of Columbia*, Civil Action No. 04-959, 2008 U.S. Dist. LEXIS 25837, at *13 n.2. (D.D.C. Mar. 31, 2008) (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 100 (D.C. Cir. 2001); *Tagayun v. Lever & Stolzenberg*, 239 Fed. Appx. 708, 709 (3d Cir. 2007)). Even if Magistrate Judge Facciola *had* failed to state the correct standard, it therefore would not require that the matter be referred back to him or that the recommendation not be adopted. *Id.* Defendants also incorrectly assert that the Archive did not acknowledge the four-part test for injunctive relief in its motion, which the Archive most certainly did do. *See* Mem. of Points & Authorities in Support of Emergency Motion to Extend TRO [58] (Mar. 11, 2008) at 20.

to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  An injunction is only mandatory where it "asks [the] Court to require defendant to take affirmative steps to reverse" the present state of affairs, which would "alter, not preserve, the *status quo*." *Veitch v. Danzig*, 135 F.Supp. 2d 32, 35 (D.D.C. 2001) (Jackson, J.).  Preservation orders, including those that require copying files to ensure their preservation, merely aim to preserve the status quo.  *In re Nat'l Security Agency Telecomms. Records Litig.*, MDL Docket No. 06-1791 (VRW), 2007 WL 3306579, at *1 (N.D. Cal. 2007).  Defendants misstate the law when they argue that the Archive seeks something other than traditional preliminary injunctive relief, judged under the traditional standard.

**B. The Archive Has Established That the Factors Weigh In Favor of the Recommended Relief**

**1. *Probability of Success on the Merits and Public Interest***

Plaintiffs' probability of success on the merits in this case has already been found sufficient to justify injunctive relief.  *See* October 2007 Report at 4.  Nothing has changed to alter that conclusion.  Indeed, facts have emerged that increase the necessity of a broader preservation order to protect the public interest, which already has been found to tilt heavily in favor of preservation of email data, as "there is no public interest in the destruction of the backup media," while, "[t]o the contrary, there is a public interest in their preservation, at least until this Court rules, since the e-mails at issue may have historical and public importance."  October 2007 Report at 3.  The acuteness of the public interest has only sharpened, because, for instance, it has emerged that no backup tapes exist for March and April of 2003, meaning that there is a high risk of destruction of records of the utmost importance to the public regarding the opening days of the war in Iraq through the May 1, 2003 "mission accomplished" speech given by the President Bush aboard the USS *Abraham Lincoln* and beyond.

**2. *The Threat of Irreparable Harm Resulting from Destruction of the Missing Emails Already Has Been Found, Has Only Increased With Time, and Cannot Be Objected to Now***

*The Finding of Irreparable Harm in the Preservation Order is the Law of the Case and Was Not Appealed.*   In issuing the Preservation Order on November 12, 2007, Order [18] (Nov. 12, 2007), this Court adopted the October 2007 Report in whole [11], overruling Defendants' objections.[8]   *See* Defendants' Local Rule 72.3(b) Objections to Report and Recommendation on Plaintiff's Motion for a Temporary Restraining Order [12] (Oct. 23, 2007).   The report adopted by the Court specifically held that the threat of obliteration of the email data that is the subject matter of this case "is a text book example of irreparable harm."  October 2007 Report at 3.

When the Court adopted the findings in the October 2007 Report, they became the law of the case, and "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see also LaShawn v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (*en banc*) (under law of case doctrine, "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.").

Moreover, Defendants waived any objection they had to the Court's adoption of the findings in the October 2007 Report when they failed to move for reconsideration of, and failed

---

[8] While the Court rejected those objections in adopting the October 2007 Report, Defendants only offer the very same arguments and the very same authorities in their objections to the present April 2008 Order and Report, with no argument for why the Court should now sustain the same objections it already has overruled. *Compare* Defendants' Local Rule 72.3(b) Objections to Report and Recommendation on Plaintiff's Motion for a Temporary Restraining Order [12] (Oct. 23, 2007) *with* EOP Defendants' Local Rule 72.3(b) Objections to the Magistrate Judge's First Report and Recommendation on Plaintiff NSA's Motion to Extend TRO/Preservation Order [72] (May 12, 2008).

to appeal, the Preservation Order granting the preliminary injunction.[9] *See* 28 U.S.C.

§ 1292(a)(1) (appeal may be had from "[i]nterlocutory orders . . . granting, continuing,

modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions");

Report and Recommendation [11] (Oct. 19, 2007) at 1. n.1 (motion for TRO was treated as one

for preliminary injunction); *see also In re Dist. No. 1, Pac. Coast Dist., Marine Engineers'*

*Beneficial Assoc.,* 723 F.2d 70, 74-75 (D.C. Cir. 1983) (even where motion captioned as seeking

TRO, order can be treated as appealable preliminary injunction based on its duration, effect).

 *Defendants Also Waived Objection to the March 2008 Show Cause Order Reiterating the*

*Presence of Irreparable Harm.*  Since the October 2007 Report, the Magistrate Judge has

reiterated that the obliteration of email data at issue in this case constitutes irreparable harm and

has consistently applied the proper balancing of that harm against any burden on Defendants.  In

the March 2008 Show Cause Order, he again found that "the obliteration of data upon which

those e-mails may be reconstructed threatens the plaintiffs with irreparable harm," and that "the

irreparable harm faced by the plaintiffs" must be weighed against the costs to Defendants.  *Id.* at

2.  Where a magistrate judge issues an order such as this under Rule 72(a), but a party "did not

file timely objections – or any objections at all – to that order with the district court," those

objections are waived, at both the district and circuit court levels.[10]  *Collett v. Socialist People's*

---

 [9] It is worth noting that if Defendants had appealed the November Preservation Order, the Court of Appeals would have reviewed it for abuse of discretion, with particular deference given to the court's balancing of the factors. *See Nat'l Wildlife Fed'n v. Burford,* 835 F.2d 305, 319 (D.C. Cir. 1987); *FTC v. H.J. Heinz Co.,* 246 F.3d 708, 713 (D.C. Cir. 2001); *Found. on Econ. Trends v. Heckler,* 756 F.2d 143, 151-52 (D.C. Cir. 1985).

 [10] It should be noted that Defendants' mere reiteration of their arguments to the Magistrate Judge do not constitute objections to the district court.  *See* Fed. R. Civ. P. 72(a),(b); LCvR 72.2, 72.3.  If Defendants had objected to the district court about the propriety of the Magistrate Judge's questions, his orders would have been entitled to deference.  Fed. R. Civ. P. 72(a), LCvR 72.2(c); *Beale v. District of Columbia,* Civil Action No. 04-959, 2008 U.S. Dist. LEXIS 25837, at *10 (D.D.C. Mar. 31, 2008) ("Upon review of a nondispositive order, 'the magistrate judge's decision is entitled to great deference' and will not be disturbed 'unless found to be clearly erroneous or contrary to law.'") (quoting *Boca Investerings P'ship v. United States,* 31 F. Supp. 2d 9, 11 (D.D.C. 1998)); *Neuder v. Batelle Pac. Northwest Nat'l Lab.,* 194 F.R.D. 289, 292 (D.D.C. 2000) (same).

*Libyan Arab Jamahiriya*, Case No. 05-5466, 2006 U.S. App. LEXIS 13279, at *2 (D.C. Cir.

2006); *see also* Fed. R. Civ. P. 72(a); LCvR 72.2(b).

       *The Court Should Not Condone Defendants' Dilatory Conduct in Seeking*

*Reconsideration of the Irreparable Harm Finding.*  Instead of appealing the findings adopted by

this Court in the November Preservation Order, or objecting to the finding of irreparable harm in

the March 2008 Show Cause Order, Defendants waited to raise these issues in their Objections to

the April 2008 Order and Report.  But Rule 72(b) is not "'a vehicle for presenting theories or

arguments that could have been advanced earlier.'" *Footbridge Ltd. Trust v. Zhang*, Civil Action

No. 04-347, 2007 U.S. Dist. LEXIS 44195, at *4 (D.D.C. 2007) (quoting *New York v. United*

*States*, 880 F. Supp. 37, 38 (D.D.C. 1995)).  This principle precludes a party from failing to

object to a magistrate judge's orders and instead waiting to object to a later report and

recommendation, because "[i]t would be fundamentally unfair to permit a litigant to set its case

in motion before the magistrate, wait to see which way the wind was blowing, and – having

received an unfavorable recommendation – shift gears before the district court." *Aikens v.*

*Shalala*, 956 F.Supp. 14, 23 (D.D.C. 1997) (quoting *Patterson-Leitch Co. v. Mass. Mun.*

*Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1987)).

       Yet Defendants have done just that:  not only did they fail to answer the questions

compelled by the January 2008 and March 2008 Show Cause Orders, they also waited to raise

objections to the findings embodied in those orders until the Magistrate Judge issued his April

2008 Order and Report.  The rules governing practice before magistrate and district judges are

designed to prevent just this kind of "sandbagging" behavior, as the Supreme Court has warned.

*Thomas v. Arn*, 474 U.S. 140, 148 (1985).  "Parties must take before the magistrate, not only

their best shot, but all of their shots." *Footbridge*, 2007 U.S. Dist. LEXIS 44195, at *4 (quoting

*Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987)). Yet after months aimed at eliciting information so that the Magistrate Judge could weigh the burden on Defendants against the irreparable harm he had found to exist, and six months after the Court adopted his finding that the *same* obliteration of email data at issue today poses a threat of irreparable harm, Defendants complain to this Court for the first time since October that there is no irreparable harm at all. The finding of irreparable harm, first made in the October 2007 Report, then adopted by this Court, then reiterated in the March 2008 Show Cause Order, has long since become the law of this case, and any opportunity to appeal from or object to these findings has been waived.

*The Same Risk of Irreparable Harm Continues to Exist and Has Only Increased.* In November, this Court adopted the Magistrate Judge's finding that "the threat of [email data] obliteration is a text book example of irreparable harm." October 2007 Report at 3. Reiterating this finding, the March 2008 Show Cause Order found that "the obliteration of data upon which those e-mails may be reconstructed threatens the plaintiffs with irreparable harm." March 2008 Show Cause Order at 2. The April 2008 Order and Report found that .PST copying and an expanded Preservation Notice would help address the threatened harm by "ensuring that the *res* – *i.e.* e-mails – are not deleted prior to the resolution of defendants' dispositive motions" and by increasing "the likelihood that e-mails at the heart of this litigation would be recovered and preserved" following adjudication on the merits. April 2008 Order and Report at 2, 5.

This consistent finding that the threat of irreparable harm still remains is undoubtedly correct. Indeed, information revealed by Defendants since the issuance of the November Preservation Order shows that the risk of that threat is even greater than previously thought. The Third Payton Declaration made clear that at least 84 days of relevant backup tapes have been

destroyed. Third Payton Declaration at ¶ 11 ("the earliest date on which data was written on any of the 438 tapes [that exist for the period March through October 2003] is May 23, 2003; the latest date that data was written was September 29, 2003.") And that number does not take into account the very high possibility that many more backup tapes from March through October 2003 have likewise been destroyed, because Defendants failed to answer the Court's specific request for the specific dates within that period for which no backup tapes exist. The Defendants stated only that there were 438 tapes, and not whether those 438 tapes represent all, some or very few of the days between May 23 and September 29, 2003.[11] Having failed to answer the question directly, it can only be inferred that there are many more tapes missing than Defendants would like to reveal.[12]

Given what is now known from their own filings, it is disingenuous, to put it kindly, that the Defendants continue to maintain that the missing emails "should" be on the backup tapes, Third Payton Declaration ¶ 12, or "may well be" found. Motion for Reconsideration at 11 n.8. Defendants themselves have revealed that it is more likely than not that many have already been destroyed and may now only be available on employee workstations and portable media. The irreparable harm of obliteration of hundreds of days of important historical documents is too great for this Court to accept unsupported claims of possible preservation, especially when there is so much evidence that negates that possibility.

---

[11] It is also not possible to reverse calculate the number of days missing from that period by subtracting the number of days between March and October from the number of tapes, because, for example, it is unknown whether on any given day it took one or twenty tapes to back up the servers.

[12] It bears noting that Defendants have been able to produce detailed information about the burdens of data preservation in the past when it suited them. *See Alexander v. FBI*, 188 F.R.D. 111, 116-118 (D.D.C. 1998) (Lamberth, J.) (EOP and OA submitted two declarations describing in detail the cost and time likely to be incurred in order to restore back-up tapes and search for emails).

Furthermore, Defendants simply misstate the law in demanding that the Archive demonstrate irreparable harm to a mathematical certainty. As the Supreme Court has made clear:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing.

*Camenisch*, 451 U.S. at 395. *See also Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) (plaintiff's showing for injunctive relief need not be "absolutely certain, wholly without doubt"). This is particularly true given the fact that most evidence is in the peculiar possession of the Defendants, who, as the record amply reflects, are incapable of confirming to this Court, without the aid of unsupported inferences, that the emails actually are being preserved.

### 3. *The Magistrate Judge Correctly Decided that the Recommended Preservation Measures Impose a Minimal Burden on Defendants That is Justified By the Risk of Harm To Be Prevented*

With the other injunctive relief factors already present, the only factor addressed for the first time in the April 2008 Order and Report was the burden that the recommended relief would impose on Defendants. The Magistrate Judge correctly found that the burden of .PST copying "is minimal in terms of cost, labor, and employee downtime," such that "the procedure easily meets the standards required for injunctive relief." April 2008 Order and Report at 5. As to issuing a preservation notice for portable media, the Magistrate Judge suggested that the November Preservation Order was meant to reach such media in the first instance, and should be explicitly extended "[i]n light of the possibility" that "EOP does not consider such data to be within the scope of the Kennedy [November Preservation] Order." *Id*. at 6. Insofar as the

original Preservation Order was intended to encompass such portable media, it has already been found by the Court to be justified in light of "the clear absence of any harm to the government." October 2007 Report at 4. Moreover, the Magistrate Judge's most recent report acknowledges that the burden of the proposed preservation notice is minimal and is frequently imposed "as a common feature of modern litigation." April 2008 Order and Report at 7. In addition, the burden that would be imposed on Defendants by forensic imaging is also minimal, as evidenced by their repeated failure to quantify the burden, or even describe it in non-conclusory terms. Each of the specific kinds of burden asserted by Defendants in their Objections was already considered by the Magistrate Judge when he issued his recommendations.

The Magistrate Judge's finding is supported by the record. Defendants did not offer any evidence as to the burden that would be imposed, other than inadequate, conclusory assertions. Defendants offer no specific evidence of their own, as they fail to identify specific costs or burdens imposed by the recommended relief that would outweigh the irreparable harm sought to be prevented. In fact, Defendants have even failed to give the Court the simple factual data that would allow it to calculate that burden itself. Instead, Defendants have only provided this Court with the same conclusory statements regarding burden that have already been rejected by the Magistrate Judge. *See supra* at 13 n.4.

Against this dearth of evidence, the Archive presented factual support for the finding that, to the extent the Defendants will incur any burden, it will be minimal. The Lakhani Declaration established that the costs of different methods of copying email data to ensure its preservation were both knowable and reasonable, and that, based on information made public by OA, the remote copying option could most likely be accomplished at minimal cost. Lakhani Decl. ¶¶ 23-26, 21-22. The Lakhani Declaration is probative on the issue of burden and entitled to

consideration by the Court, notwithstanding Defendants' urging that the Court should "disregard and strike" the Lakhani Declaration, Motion for Reconsideration [69] at 7 n.5; Objections [72] at 9 n.5. Motions to strike "are strongly disfavored," are "considered an exceptional remedy," and "the proponent of such a motion must carry a formidable burden."[13] *United States ex rel. Pogue v. Diabetes Treatment Centers of America*, 474 F.Supp. 2d 75, 79 (D.D.C. 2007) (internal quotations and citations omitted). Defendants have not carried that formidable burden, and the only authority they cite is a case freely acknowledging that "[i]t is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (quoting *Camenisch*, 451 U.S. at 395 (1981)). Because courts must "weigh[] all the attendant factors, including the need for expedition" in determining whether and to what extent to rely on certain evidence, *id.* at 719, the Magistrate Judge was justified in making use of the Declaration, which furthered the interest in expedition by providing information that Defendants had failed to provide when asked to do so. Mr. Lakhani made clear that his affidavit was limited to his own personal knowledge, consisting of his knowledge of electronic data preservation applied to Defendants' statements in this litigation, which he specifically disclosed. *See* Lakhani Decl. ¶ 4 & n.2.

## II.     ALL FACTORS WEIGH IN FAVOR OF ISSUING THE RECOMMENDED PRESERVATION MEASURES

Having established that there is a risk of irreparable harm to the Plaintiffs and that the contemplated relief would impose minimal burdens on Defendants, the Magistrate Judge correctly determined that the factors weighed in favor of injunctive relief in the form he

---

[13] Moreover, Defendants waived any objection to the Declaration by failing to timely object to it, even though a full month elapsed between the filing of the Declaration and its adoption in the April 24 Report. *See Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 96 n.5 (D.C. Cir. 1995) (failure to timely move to strike waives defects in affidavit).

recommended.  As discussed above, the Preservation Order should be issued by this Court.  All of Defendants' other arguments to the contrary are inapposite.

**A.  The Recommended Relief is Appropriate to Effectuate the Intent of the November Preservation Order**

As the Magistrate Judge stated in his April 2008 Order and Report, the November Preservation Order that this Court already imposed would seem to reach the kind of portable media commonly used by employees and whose preservation "is a common feature of modern litigation."  April 2008 Order and Report at 6-7.  Nonetheless, Defendants have interpreted it to apply only to backup tapes.  For this reason alone, adoption of the Magistrate Judge's preservation notice recommendation is necessary to ensure that the Court's prior order receives its full effect.

The need for both forms of recommended relief – the preservation notice and the remote copying of .PST files – as well as the additional measure of forensic imaging, is further highlighted by Defendants' revelation that they are construing their preservation obligations to apply only to what they have chosen to identify as "EOP FRA components."  *See, e.g.,* Third Payton Decl. ¶¶ 4, 14.  Yet the question of which EOP components are governed by the Federal Records Act has yet to be litigated in this case.  The Magistrate Judge specifically noted that this is one of the substantial questions raised by this case, October 2007 Report at 4, and it is the subject of protracted litigation in a separate case before Judge Kollar-Kotelly.  *See Citizens for Responsibility and Ethics in Washington v. Office of Administration*, Civil Action No. 07-964 (CKK) (filed in D.D.C. May 23, 2007).  This Court's November Preservation Order, in the most unequivocal terms, orders that *all* Defendants "shall preserve media," November Preservation Order at 2, and Defendants OA and EOP are clearly part of that order.  By construing this Court's Order not to include portable media and, possibly, to not include entities that Defendants

do not deem to be "EOP FRA components," Defendants have skirted the fundamental principle

that "[j]udicial orders are to be obeyed, not ignored." *Banks v. Office of the Senate Sergeant-at-*

*Arms*, 222 F.R.D. 7, 11 (D.D.C. 2004) (Facciola, J.).

Defendants have attempted to excuse any purported gaps in data preservation by arguing

that "the FRA has not been held to require perfect, 100% preservation of all email records."

Objections at 11. The extent of Defendants' compliance with the FRA, or lack thereof, will be

determined when this case is adjudicated on the merits. The issue now before the Court is

whether to tolerate the threat of irreparable harm in the form of destruction of the *res* pending

adjudication. It is one thing to say that compliance with the FRA, in the first instance, need not

be perfect, and quite another thing to say that it is acceptable to aim for haphazard preservation

of the *res* before FRA compliance can even be addressed on the merits.[14]

### B.     The Magistrate Judge Considered and Recommended Narrow Measures Aimed at Minimizing the Burden on Defendants

Defendants argue that the Magistrate Judge's recommendations must not be adopted

because he failed to consider less burdensome alternatives. He clearly did consider less

burdensome alternatives, however, because he acknowledged that "[a]part from the issue of

forensic imaging, it has become clear from the briefing that a preservation option is available . . .

that may yield positive results while causing minimal burden or disruption to EOP and its

employees." April 2008 Order and Report at 4. The whole purpose of the April 2008 Order and

---

[14] Defendants also repeatedly argue that the recommended relief seeks to preserve an "awfully expensive needle to justify searching a haystack." Objections at 10 (quoting *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001)). They have made that point to Judge Facciola, who authored *McPeek* in the first place, and he has not deemed it worth mention. *See* EOP Defendants' Response to March 18, 2008 Order to Show Cause. The response to Defendants' point is twofold: (1) Judge Facciola found that the process will impose a "minimal burden," and Defendants still have not provided any non-conclusory evidence that it actually will be expensive; and (2) what is sought is not a single, measly needle but millions of Federal Records on matters of historical importance, records that are the property of the American people and which Defendants had a statutory duty to preserve properly in the first instance.

Report was to recommend preservation measures that the Magistrate Judge deemed to be less burdensome than those requested by the Archive.

Defendants also suggest that Magistrate Judge never explained why the mere issuance of letters instructing EOP employees not to destroy data would be inappropriate. Objections at 12. First, the Magistrate Judge had already rejected the notion that promises of preservation at the individual employee level were sufficient, opting instead for recommending court-ordered preservation, on the grounds that promises of preservation come with no consequences for failure to preserve. October 2007 Report at 2. Moreover, Defendants never suggested this mode of preservation in any of their multiple submissions to the Magistrate Judge. Rule 72(b) "does not permit a litigant to present new initiatives to the district judge" that the party failed to raise before the magistrate judge. *Aikens*, 956 F. Supp. at 19.

### C. Nothing in the FRA Prohibits the Recommended Relief

Defendants' argument that the recommended Order amounts to a "retrieval" and therefore "exceeds the permissible scope of judicial relief under the FRA," EOP response at 4, is hardly new and not the least bit convincing. The Magistrate Judge recognized that the relief he recommended to this Court is "[l]ike the preservation order requiring EOP to preserve back-up tapes, which EOP concedes does not violate the 'jurisdictional proscriptions of the FRA,'" because the relief he recommends, like the relief already adopted by this Court, "simply maintains the status quo by further preserving the *res* of this litigation." April 2008 Order and Report at 2.

Other courts have similarly rejected the notion that they cannot order preservation of the very records at issue in an FRA case pending adjudication on the merits. *See, e.g., Citizens for Responsibility & Ethics in Washington v. DHS*, Civil Action No. 06-883, 2007 U.S. Dist. LEXIS

91901, at *30 n.15 (D.D.C. 2007) ("in some circumstances the Court may, temporarily, order an agency to preserve records until the Archivist is able to ensure that federal records are not destroyed."); *Armstrong v. Executive Office of President*, 810 F. Supp. 335, 349 (D.D.C. 1993) (enjoining defendants "from removing, deleting or altering their electronic records systems until such time as the Archivis[t] takes action . . . to prevent the destruction of federal records, including those records saved on backup tapes."); *aff'd.*, 1 F.3d 1274, 1288 n.12 (D.C. Cir. 1993) ("Similarly unpersuasive is the appellants' argument that the district court should not have enjoined the defendant agencies from destroying any electronic records until new guidelines were in place.").

### D. The Equities Weigh Heavily in Favor of the Recommended Preservation Measures

Defendants have argued that implementing the preservation measures recommended by the Magistrate Judge would divert resources from their attempts to reconstruct and restore EOP email archives. But Defendants' failure to properly archive emails in the first instance certainly should not excuse them from preserving the email data now. "[O]ne of the basic principles of equity in connection with the granting or denying applications for preliminary injunctions is the matter of balance of convenience," and where a defendant resists an application for injunction on the grounds that it will cause defendant delay that "could have been avoided" but for defendant's own actions, "the balance of convenience heavily weighs in favor of the plaintiff." *Local Division 1098, Amalg. Assoc. of Street Elec. Railway & Motor Coach Employees of America, AFL-CIO v. Eastern Greyhound Lines*, 225 F. Supp. 28, 30-31 (D.D.C. 1963).

Most fundamentally, the public interest weighs heavily in this case. The records at issue in this case relate to matters of historical importance, and the records that are most at risk – the records from the spring of 2003, a period for which there are no backup tapes – may be the

records that are most important, as they deal with the nation's journey into war.[15] The Supreme Court has warned that in a case such as this, "[m]ore is involved than the settlement of a private controversy without appreciable consequences to the public. …Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Virginian Ry. Co. v. System Fed'n*, 300 U.S. 515, 552 (1937).

## CONCLUSION

For the foregoing reasons, as well as those cited by the Archive in its Memorandum of Points and Authorities in Support of Emergency Motion to Extend TRO/Preservation Order and For Depositions and its Reply on March 18, 2008 Show Cause Order, as well as the reasons stated by the Magistrate Judge in his April 2008 Order and Report, this Court should overrule Defendants' objections, adopt the findings and recommendations of the Magistrate Judge, grant the Archive's Emergency Motion to extend the TRO/Preservation Order, and order the relief recommended by the Magistrate Judge.[16]

---

[15] Emails can no longer be regarded as mere message slips, but have instead become the primary form of communication for many members of a busy society. To discount the importance of email is thus to ignore reality. History provides us with perspective about why the emails at issue in this case are important. Contemporary audiences can learn much from White House records from the months prior to the sinking of the Lusitania, from the autumn of 1941, from the months before the Gulf of Tonkin incident, or from any other period preceding the nation's entry into war. The public interest in preservation of records such as those lays bare the flimsiness in the government's arguments that "innocent mistakes" in preservation are acceptable or that the Magistrate Judge's recommendations amount to hunting for needles in a haystack.

[16] The Archive has raised limited objections to the findings and recommendations in the Magistrate Judge's April 2008 Order and Report. *See* Objection to Report and Recommendations Denying Plaintiff NSA's Request for Depositions [71] (May 8, 2008). Specifically, the Archive notes that the Magistrate Judge ruled that if all of the relief recommend in the April 2008 Order and Report were adopted, as well as all further relief to be recommended in the Magistrate Judge's upcoming report and recommendation, then depositions would not be necessary. Consequently, to the extent that any of the recommended relief is not adopted, depositions would remain necessary.

Respectfully Submitted,

DATED: May 19, 2008

**_Attorneys for Plaintiff The National_**
**_Security Archive_**

  /s/ Sheila L. Shadmand

JOHN B. WILLIAMS (D.C. Bar No. 257667)
SHEILA L. SHADMAND (D.C. Bar No. 465842)
THOMAS A. BEDNAR (D.C. Bar No. 493640)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
202.879.3939

MEREDITH FUCHS (D.C. Bar No. 450325)
THE NATIONAL SECURITY ARCHIVE
The Gelman Library
2130 H Street, N.W., Suite 701
Washington, D.C., 20037
202.994.7059

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 19th day of May, 2008, I caused a copy of the foregoing

Opposition to Defendants' Objections, Responses and Request for Reconsideration of the First

Report and Recommendation on Plaintiff NSA's Motion to Extend TRO/Preservation Order to

be served electronically by the United States District Court for the District of Columbia's

Electronic Case Filing ("ECF") system and that this document is available on the ECF system.


           /s/ Sheila L. Shadmand
           Sheila L. Shadmand