# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., ) ) ) | |
| Defendants. ) | |
| NATIONAL SECURITY ARCHIVE, ) ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No: 1:07-cv-01577 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., ) ) ) | |
| Defendants. ) | |

## EOP DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR RECONSIDERATION BY THE MAGISTRATE JUDGE OF HIS FIRST REPORT AND RECOMMENDATION

### INTRODUCTION

The Court obviated any concern about an inability to provide effective relief on the merits by ordering on November 12, 2007, preservation of the disaster recovery back-up tapes in EOP defendants' possession or under their custody or control.  As EOP defendants have repeatedly explained, in briefs and through sworn declarations, the Office of Administration is preserving approximately 60,000 disaster recovery back-up tapes pursuant to the November 12 Order.  The number of tapes continues to grow as more tapes are created through the normal

disaster recovery back-up process, and this library of tapes should contain substantially all emails sent or received from 2003 to the present.  As a result, those tens of thousands of tapes provide security for the Court that, if required, the Attorney General is assured of a repository of back-up data for the purpose of restoring any allegedly missing email.  That security alone precludes the showing of irreparable harm required to justify the additional mandatory injunctive relief requested by NSA.  See EOP Defs.' Resp. [69] at 9-12; EOP Defs.' Obj. [72] at 13-16.

In an attempt to support its request for relief, NSA, in effect, pretends that the Court never issued the November 12, 2007 Order.[1]  But an appropriate analysis of irreparable harm for the purposes of NSA's motion for *additional* injunctive relief cannot be determined in isolation and must account for protections afforded by preservation of back-up media pursuant to the November 12 Order.  NSA may not rely on any pre-November 12, 2007 accounting of potential harm – as it attempts to do in its opposition briefing – because the circumstances are markedly changed: An ever-growing cache of disaster recovery back-up tapes that should contain substantially all emails from the period of time plaintiffs reference in this case, and more, are being preserved for future use, if appropriate.  In short, whatever the merits of plaintiff's fears of irreparable harm *pre*-November 12, those fears simply do not persist in the *post*-November 12,

---

[1]     CREW inexplicably submitted a purported "Opposition to Defendants' Motion for Reconsideration" [74], even though it had not filed a separate motion seeking any expansion of the November 12 Order and had not joined in NSA's emergency motion.  CREW's filing therefore amounts to an unsolicited additional brief, submitted absent any request for leave to file.  CREW's "opposition" must be stricken as a result.  Because CREW largely repeats what NSA argues in its opposition, EOP defendants provide references to CREW's opposition briefing in this Reply.  By doing so, however, EOP defendants do not waive their argument that CREW's filing is impermissible and amounts to a unilateral attempt by plaintiffs to expand their page limitations and file redundant briefing.

2007 context.  Thus no "law of the case" relying on pre-November 12 analyses of harm can compel the issuance of further relief now.

The majority of NSA's opposition is therefore easily refuted.  By recasting the EOP defendants' briefing [69, 72] to focus on asserted injury pre-November 12, NSA sets up a phantom framework for analyzing the irreparable harm required to justify additional, extraordinary preliminary relief.  See, e.g., NSA Opp'n [73] at 20.  Because NSA does not appropriately analyze the present potential for "irreparable harm" and instead relies on possible harm absent the issuance of the November 12 Order, NSA fails to justify with evidence of "extreme or serious damage" its request for the Workstation and Collection Notice Recommendations set forth in the First Report.  Judicial Watch v. Dep't of Commerce, 501 F. Supp. 2d 83, 91 (D.D.C. 2007).  For that reason, NSA's Motion to Extend TRO/Preservation Order and for Depositions [58] must be denied.

In the lone two pages of its opposition brief that NSA commits to discussing any "evidence" of irreparable harm to expand the scope of the November 12 Order, NSA fails to make the "greater . . . necessary showing" of harm to seek "the greater . . . scope of relief demanded."  Disability Rights Council of Greater Washington v. WMATA, 234 F.R.D. 4, 7 (D.D.C. 2006); see also NSA Opp'n [73] at 20-22.  To justify the Workstation and Collection Notice Recommendations aimed to retrieve email data principally for the March to October 2003 time frame, NSA apparently relies on an alleged "absence" of disaster recovery back-up tapes for the seven month period between March and October 2003.  See NSA Opp'n [73] at 21. As EOP defendants established, however, email information generated during that time period, as well as email information predating even March 2003, should be contained on the existing library of

disaster recovery back-up tapes.  <u>See, e.g.</u>, 3d Payton Decl. ¶¶ 11-12.  NSA has provided no

evidence (and neither unfounded suspicions nor unsupported speculation constitutes evidence) to

the contrary.

But even if that were not the case, the span of NSA's own representations about missing

emails limits the scope of its alleged harm here.  Despite NSA's prior regard for the 2005 chart

that is the source of its allegations about missing emails, NSA conspicuously divorces itself from

the 2005 chart in its opposition briefing when it claims that it may suffer "irreparable harm"

from the "obliteration of hundreds of days of important historical documents" from the March to

October 2003 time frame.  NSA Opp'n at 21; <u>see also, e.g.</u>, <u>id.</u> at 16 (alleging without support

that "the acuteness of the public interest has only sharpened, because, for instance, *it has

emerged that no backup tapes exist for March and April of 2003*, meaning that there is a high

risk of destruction of records of the utmost importance") (emphasis added); 29 ("[A]nd the

records most at risk – *the records from the spring of 2003, a period for which there are no

backup tapes* – may be the records that are most important . . ..").  But NSA's representation

about "no email counts" for the March to October 2003 period is limited to only *one day* –

September 12, 2003 – and even then for the Presidential Records Act ("PRA")-covered Office of

the Vice President ("OVP"), which cannot be a defendant in this action.  <u>See</u> NSA's Mot. [58],

Ex. 7 ("EOP Exchange Environment – All Components; Summary – Messages per Day") ("2005

chart") at 6; EOP Defs.' Resp. [64] at 5; EOP Defs.' Obj. [72] at 14.  There are simply no days in

March, April, May, June or July 2003 alleged to have *any* missing email counts.  <u>See</u> NSA's Mot

[58], Ex. 7 at 1-6.  As a result, NSA cannot claim harm from "obliteration" of back-up media for

that time period because the .pst file stores are not even said to be deficient, and NSA provides

no evidence in its opposition or its motion to suggest otherwise.  Accordingly, NSA cannot claim

that its requested injunction fulfills this Circuit's instruction that "an injunction must be narrowly

tailored to remedy the specific harm shown."  <u>Disability Rights Council of Greater Washington</u>,

234 F.R.D. at 7 (quoting <u>Nebraska Dep't of Health & Human Serv. v. Dep't of Health & Human

Servs.</u>, 435 F.3d 326, 330 (D.C. Cir. 2006)).  NSA plainly cannot prove harm for the March to

October 2003 time period to justify the expanded relief it requests.

    In the remainder of its opposition, NSA offers a belated attempt to tether its request for

injunctive relief to the four factors required by this Circuit.  NSA's efforts fail, however, because

the burdens that would be imposed by the recommendations are impermissibly high; the public

interest would be ill-served by wasting taxpayer funds on multiply-redundant data preservation

and by diverting time and resources from the EOP defendants' other pressing tasks; and NSA's

likelihood of success on the merits is, at a minimum, in doubt.  Any preliminary injunctive relief,

and particularly the kind of mandatory injunctive relief requested here, must be supported by

more than a liberty with the facts, improper characterization of court orders, and repudiation of

controlling law, as NSA attempts to do.  Because NSA cannot show that it will be irreparably

harmed absent expanded relief, and because it falters on the other three factors for preliminary

injunctive relief as well, NSA's motion must be denied.

## <u>ARGUMENT</u>

**I.    The November 12, 2007 Order Alleviates Any Potential Irreparable Harm Required
to Justify Additional Mandatory Injunctive Relief and Law of the Case Does Not
Compel Otherwise**

    EOP defendants established that the store of approximately 60,000 (and growing) disaster

recovery back-up tapes under court-ordered preservation will allow the Court to order effective

relief, if necessary, going forward. EOP defendants have provided briefing to that effect,

submitted two declarations from the Chief Information Officer for the Office of Administration

attesting to the same, and referenced sworn testimony from the Committee Hearing establishing

that the disaster recovery back-up tapes should contain substantially all emails sent or received

on the EOP Network between 2003 and 2005. See, e.g., Decl. of Theresa Payton [48-2] ¶¶ 12(c),

12(d); 3d Decl. of Theresa Payton ¶¶ 9-11; NSA Mot. [58], Ex. 4 (Hr'g Tr. at 121:2862-

124:2937). The November 12 Order served to confirm these assurances in a court-enforceable

mandate. This is in accord with the assurances deemed adequate to obviate any claims of harm

in a similar context. See Armstrong v. Bush, 807 F. Supp. 816, 823-24 (D.D.C. 1992) (finding

adequate for preliminary injunctive relief an order to "preserve all the current and existing

computer backup tapes in their custody" and further ordering only that defendants not "write-

over, erase, or destroy any of the information on the aforementioned tapes").

To the extent that there existed any confusion about the library of disaster recovery back-

up tapes being preserved, EOP defendants further explained that (1) existing disaster recovery

back-up tapes should contain any email data on the EOP Network's Exchange email servers at

the time those servers were backed up, including email information in a user's inbox, sent folder,

*trash box*, and folders saved in a mailbox, plus email information in the journals and .pst file

stores, including email information then present on the EOP Network predating the date on

which data was written to a back-up tape; and (2) 438 back-up tapes last-written between

May 23 and September 29, 2003 were being preserved as well. See, e.g., EOP Defs.' Obj. [72]

at 15; 3d Payton Decl. ¶¶ 11-12. Those repeated commitments and explanations, and the Court's

November 12 Order, command rejection of NSA's continued insistence that "obliteration of

email data that is the subject matter of this case 'is a textbook example of irreparable harm.'" NSA Opp'n [73] at 17; CREW Opp'n [74] at 12. NSA cannot establish that it is threatened with the "obliteration of email data" upon which it rests its request for expanded relief because that email data should be contained on the thousands-large library of disaster recovery back-up tapes under court-ordered preservation. Plaintiff cannot compel a contrary result by turning a blind-eye to the impact of the November 12 Order.

The security provided by the November 12 Order was only confirmed in subsequent briefing. Contrary to NSA's representation, the Magistrate Judge's January 8, 2008 Order provided no "second pronouncement on irreparable harm," NSA Opp'n [73] at 4-6, but rather was issued to confirm that the Court would be able to afford effective relief in the future by asking whether the "backups contain emails written and received between 2003-2005."[2] Mem. Or. [46] at 4. Through the declaration of Theresa Payton, the EOP defendants confirmed that the disaster recovery back-up process utilized by the Office of Administration was "consistent with

---

[2]    For that reason, NSA may not complain that EOP defendants should have raised "objections to the findings embodied" in the January 8, 2008 Order and that "law of the case" therefore precludes such objections now. NSA Opp'n [73] at 19. Most principally, there was no "finding" of irreparable harm embodied in the January 8 Order. See Lightfoot, 246 F.R.D. at 333 (law of the case doctrine "applies only where an issue is . . . litigated and . . . decided").

NSA litters its opposition with similarly sloppy characterizations or inaccurate readings of the Court's orders, and EOP defendants respectfully refer the Court to the Orders for their contents. For example, NSA claims in its opposition that "the Magistrate Judge also noted inconsistencies in Ms. Payton's statements to the Court, and ordered Defendants *again* to answer additional questions probing the accuracy of Defendants' claims that the backup tapes 'should' contain the missing emails." NSA Opp'n [73] at 11. The Magistrate Judge did not credit any *inconsistencies*, but noted that he remained unclear about certain representations that had been provided to date. See First Report [67] at 8. EOP defendants provided the Third Declaration in an attempt to clarify further. By not responding to every mis-characterization of the Orders, EOP defendants do not waive any objections to NSA's inaccurate readings of them.

industry standards," and that "emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes."[3]  Payton Decl. ¶¶ 7, 12(c).  Nonetheless, on March 18, the Magistrate Judge surmised – without conclusively finding – that "*if* emails have not been properly archived as plaintiffs allege, and copies of those e-mails do not exist on back-up tapes, then the obliteration of the data upon which those e-mails may be reconstructed threatens the plaintiffs with irreparable harm."  Mem. Or. [62] at 2 (emphasis added).  In response, EOP defendants objected to the Magistrate Judge's hypothetical and instead established that NSA could not "clearly" show any entitlement to relief because it had not proven "(1) that e-mails were not properly archived in the October 2003 to October 2005 time frame; (2) that those e-mails are absent from disaster recovery tapes for that period; and finally, (3) that the hard drives will bear that e-mail information."  EOP Defs.' Resp. [64] at 5-6.  Then, as now, and throughout the "deliberative process" of the Magistrate Judge's consideration of NSA's motion, EOP defendants demonstrated that plaintiff had failed to show "that the back-up tapes are missing any

---

[3]    NSA makes the unsupportable claim that "[t]he First Payton Declaration . . . revealed that all the missing emails *may not* be on the backup tapes, because prior to October 2003, backup tapes were recycled."  NSA Opp'n [73] at 5 (emphasis in original).  To the contrary, that First Payton Declaration established that "emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes."  Payton Decl. [48-2] ¶ 12(c).  As explained in the Third Payton Declaration, the cessation of recycling back-up tapes in October 2003 did not mean that email information predating October 2003 had not been captured on the existing tapes.  Moreover, plaintiff's representations about missing emails were substantially limited for 2003, identifying only one "red day" in September 2003.  Thus for the reasons discussed <u>infra</u> at 11-12, given that plaintiff's representations about missing emails for the period predating October 2003 are significantly limited, no backup tapes are required for restoral of emails from that period for the purposes of this lawsuit.

e-mails," which NSA would have to clearly establish, among other factors, to seek further relief. Id. at 5.[4]

NSA's scant two-page attempt to establish irreparable harm is facially inadequate as well. See NSA Opp'n [73] at 20-22. NSA principally argues that 84 days of "destroyed back up tapes" between March 1 and May 23, 2003 "shows that the risk of that threat is even greater than previously thought," id. at 20, and speculates that there exists a "very high possibility that many more backup tapes from March through October 2003 have likewise been destroyed." Id. at 21.[5] As EOP defendants established, however, email information predating even March 2003 should be contained on the existing library of disaster recovery back-up tapes. See, e.g., 3d Payton Decl. ¶¶ 11-12. NSA has provided no evidence to the contrary or reason to doubt the sworn testimony submitted by EOP defendants.[6] Evidently recognizing that it has provided no

---

[4]    Given EOP defendants' repeated objections, it is curious that NSA claims that EOP defendants failed to object to any "finding of irreparable harm in the March 2008 Show Cause Order." NSA Opp'n [73] at 19; see also id. at 18; CREW Opp'n [74] at 12. From NSA's filing of its motion for emergency relief and throughout the "deliberative process" of the briefing on the motion, id. at 13, EOP defendants continuously objected that the November 12 Order provided ample protections and that NSA could not establish irreparable harm.

[5]    See also CREW Opp'n [74] at 13 ("That the White House's limited collection of 438 backup tapes is incomplete is not, however, a matter of uncertainty or speculation. The backup tapes definitively do not contain all of the missing email."); 14 (claiming harm because "almost three months worth of backup tapes are missing (from March 1 to May 22, 2003)); 15 ("While confirming the existence of 438 tapes for the requested time period, the White House has not confirmed whether those tapes were made for each day between May 23, 2003 and September 29, 2003.").

[6]    Plaintiff evidently seeks certainty about the very specific contents of each of the 60,000+ disaster recovery back-up tapes being preserved, suggesting that EOP defendants' representation that the library of tapes "should" contain substantially all emails sent or received between March 2003 and October 2005 is inadequate. But as Ms. Payton explained, the very purpose of the disaster recovery back-up tapes is to "reconstruct the data on the EOP Network" in the event of a

affirmative evidence of irreparable harm, NSA requests that the Court reject what it incorrectly

characterizes as demands by the EOP defendants for evidence of irreparable harm to a

"mathematical certainty," and completely ignore the sworn declarations and testimony showing

that NSA suffers no harm.  NSA Opp'n [73] at 21-22.  *No* evidence is a far cry, however, from

precision of mathematical certainty.  Under this Circuit's laws, NSA must establish that it will

suffer certain, great and actual injury before it may invoke this Court's extraordinary remedial

powers.  See Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  NSA has failed

wholly to do so.

      Even if NSA could show that the existing library of back-up tapes does not have email

data for the March to October 2003 time frame, NSA's allegations themselves belie NSA's

conclusory claims of irreparable harm.  NSA's representation about "no email counts" for the

March to October 2003 period is limited to only *one day* – September 12, 2003 – and even then

for the PRA-covered Office of the Vice President.  See NSA's Mot. [58], Ex. 7 ("EOP Exchange

Environment – All Components; Summary – Messages per Day") ("2005 chart") at 6.  Despite

EOP defendants' repeated demonstration of the inconsistency of NSA's position – explaining

that the absence of even representations of missing emails for the relevant period means the

absence of a necessary precondition for the preservation of back-up media, see, e.g., EOP Defs.'

Resp. [64] at 5; EOP Defs.' Obj. [72] at 14 – NSA completely ignores the contradiction in its

---

"disaster or catastrophic incident that results in the partial or total loss of operating systems and
data."  Payton Decl. ¶ 7.  Providing the Court with specific and detailed information about the
contents of each of the 60,000+ tapes under preservation would, however, impose crushing
burdens now.  As Ms. Payton established, such burdens would be extraordinarily high.  See 3d
Payton Decl. ¶ 13.

opposition and effectively concedes the impact on its request for additional relief.  See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (arguments that are not addressed in an opposition are functionally conceded).  According to NSA's allegations, there are simply no days in March, April, May, June or July 2003 missing email counts for any FRA component.[7]  See NSA's Mot [58], Ex. 7 at 1-6.  As a result, NSA cannot claim harm from "obliteration" of back-up media for that time period because the .pst file stores are not even said to be deficient, and NSA provides no evidence in its opposition or its motion to justify expanded relief.[8]

---

[7]     "Low email" counts in August 2003 for two components – OSTP and ONDCP – cannot justify wholesale claims of irreparable harm for the seven month period either.

[8]     CREW also contends that it may establish that the disaster recovery back-up tapes are insufficient because (1) an OVP restore project located emails for a one week period between September 30 and October 6, 2003 on an October 21, 2003 generated set of back-up tapes, see CREW Opp'n [74] at 13, 15; (2) .pst file stores could have been deleted, CREW Opp'n [74] at 15; (3) some backup tapes may, by CREW's speculation, be unreadable, CREW Opp'n [74] at 15, 3 ("[T]he White House repeats the mantra at least eight times that its collection of backup tapes – admittedly and glaringly incomplete – 'should' contain all of the emails sent between 2003 and 2005."); and (4) because email erased from individual mailboxes would not be captured on a backup tape, CREW Opp'n [74] at 14.  Not one of those speculative claims supports expanding the scope of the November 12 Order.  First, an ability to restore September 30 through October 6, 2003 emails from a later-created October 21, 2003 set of back-up tapes serves to confirm, not undercut, what the EOP defendants have established through their sworn declarations: later-created tapes should contain earlier-sent or received emails.  Second, although CREW's allegations about .pst file stores are unsupported, those allegations are unrelated to an ability to restore information from disaster recovery back-up tapes from sources aside from the .pst file stores.  Indeed, the alleged deficiency of the .pst file stores is the fount of plaintiffs' complaints and reveals nothing about irreparable harm here.  Third, it appears that CREW seeks EOP defendants to now undertake the burdens associated with providing the Court detailed information about all 60,000+ tapes under preservation.  As Ms. Payton established, however, such burdens would be extraordinarily high.  See 3d Payton Decl. ¶ 13.  Nonetheless, the multiply-redundant preservation of continuously generated disaster recovery back-up tapes assures that the existing library will be adequate for any restoration projects if required in the future.  Finally, EOP defendants established that even "email erased from individual mailboxes,"

NSA's marginal effort to establish irreparable harm is particularly inadequate in light of the heightened showing of harm required for mandatory injunctions. Requiring EOP defendants to remotely query, collect, copy and store .pst files from workstations and to collect and preserve portable media, as the First Report contemplates, would undeniably command "some positive act" and alter the status quo. Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995); see also 42 Am. Jur. 2d Injunctions § 5 ("A mandatory injunction, as opposed to a prohibitory one, does not maintain the status quo, but rather compels the performance of an affirmative act."); 43A C.J.S. Injunctions § 13 ("A mandatory injunction is an extraordinary remedial process which commands the performance of some positive act."). Unlike the November 12 Order which can be read to prohibit EOP defendants from destroying, writing over or otherwise erasing the contents of the disaster recovery back-up tapes, NSA's request for additional relief cannot be considered prohibitory in nature.[9] EOP defendants would be commanded to undertake significantly burdensome actions, which, by this Circuit's laws, require a clear showing of extreme or serious damage. See, e.g., Judicial Watch, 501 F. Supp. 2d at 91.

Because NSA has no *evidence* to the contrary, NSA resorts to a sweeping, but inapplicable, theory of "law of the case" in an attempt to justify its motion. NSA essentially

and residing in trash boxes, is likely to be captured on back-ups. Id. at ¶ 12.

[9] Calling the action preservation of "res" does not change the result. See NSA Opp'n [73] at 16. The recommendations undeniably would impose on EOP defendants specific affirmative tasks to complete. In any case, EOP defendants demonstrated that the .pst files that would be collected if the First Report recommendations were adopted and imposed would unlikely be "res," but likely triplicate or quadruplicate copies, or even personal emails not covered by the FRA. See EOP Defs.' Obj. [72] at 18.

-12-

argues that irreparable harm has been established for the duration of this suit for any preliminary injunctive request going forward – no matter that there are changed circumstances or that the protections provided by the November 12 Order undoubtedly impact the irreparable-harm calculus for its current motion.  See, e.g., NSA Opp'n [73] at 17-22; CREW Opp'n [74] at 11-13.[10]  The "law of the case doctrine," however, cannot assist NSA because the doctrine is inapplicable where, as here, circumstances have changed and where the EOP defendants are not *challenging* the issuance of the November 12 Order, but rather, are *relying* in part on its issuance to demonstrate why NSA cannot seek further relief.[11]  See, e.g., Lightfoot v. District of Columbia, 246 F.R.D. 326, 333-34 (D.D.C. 2007) (rejecting "law of the case doctrine" and reconsidering motion on similar issues "in light of changed circumstances of this case"); LaShawn v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (emphasizing that D.C. Circuit applies "law of the case" doctrine only when the "*same issue* [is] presented a second time in the same case in the same court") (emphasis added); Beale v. District of Columbia, No. 04-

---

[10]    CREW goes so far to claim under "law of the case doctrine" that defendants "cannot challenge . . . whether or not emails are even missing."  CREW Opp'n [74] at 12.  Under CREW's all-encompassing view of the doctrine, the merits of its claims would be conclusively established as "law of the case," even though a dispositive motion is pending and, as CREW acknowledges itself, "defendants have not yet filed an answer."  Id.  That most certainly is not an appropriate application of the "law of the case doctrine" and illustrates just how far-reaching plaintiff's argument would be if accepted.  See Lightfoot, 246 F.R.D. at 333 (law of the case doctrine "applies only where an issue is . . . litigated and . . . decided").

[11]    Nor is "law of the case" the type of rigid jurisdictional doctrine that NSA wishes it to be; rather, it is a prudential doctrine meant to streamline *appeals* of orders from district court. Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 739 (D.C. Cir. 1995) (limiting law-of-the-case preclusion to context in which the "first *appeals* court has affirmatively decided the issue, be it explicitly or by necessary implication").  Indeed, district courts may review any non-final orders, for example, under Federal Rule of Civil Procedure 59 before any appeal has been taken.

959, 2008 WL 834459, * 6 (D.D.C. March 31, 2008) (additional facts and evidence make "law of the case doctrine" inapplicable). The "same issue" is therefore not before this Court and the "law of the case doctrine" cannot apply.

NSA thus raises a strawman by arguing at length that EOP defendants "waived any objection they had to the Court's adoption of the findings in the October 2007 Report." NSA Opp'n [73] at 1, 17-20; CREW Opp'n [74] at 11-13. EOP defendants are not challenging the Court's issuance of the November 12, 2007 Order now.[12] Rather, EOP defendants made express in their briefs [69, 72] that they *relied* in part on the November 12 Order to establish that NSA could not make the greater necessary showing of harm to justify the greater scope of relief it then demanded. See, e.g., Disability Rights Council of Greater Washington, 234 F.R.D. at 7; see also EOP Defs.' Obj. [72] at 13 (titling section "*November 12, 2007 Order* Alleviates Any Potential Irreparable Harm"); id. ("This *Court-ordered preservation* of the set of disaster recovery back-up tapes, therefore provides ample protection.") (emphases added). Because a library of disaster recovery back-up tapes that should contain emails from the 2003 to 2005 time period is being preserved, NSA can no longer complain of a threat of "obliteration of this backup media." Report and Recommendation [11] at 3. As a result, NSA may not rely on "law of the case" to transfer any findings of "irreparable harm" justifying the November 12 Order to support any further orders.

---

[12]     EOP defendants continue to maintain that preliminary injunctive relief was unnecessary as set forth in their opposition and objections to CREW's motion for a temporary restraining order. But EOP defendants' current objection to NSA's request for additional relief is not dependent on the previous objections to the issuance of an order in the first instance.

Nor may NSA contend that it may rely on a pre-November 12 showing of harm because the November 12 Order was supposedly intended to cover "the types of portable media that the Archive seeks to add to the Preservation Order."  NSA Opp'n [73] at 10, 22; see also CREW Opp'n [74] at 7.  Given that the preservation of disaster recovery back-up tapes resolves any concerns about being able to afford effective relief later, further injunctive relief would run afoul of the command that an injunction be limited to remedy a specific harm.  See Disability Rights Council of Greater Washington, 234 F.R.D. at 7.  Expanding the contours of the November 12 Order would yield marginal benefits at best.  See also EOP Defs.' Obj. [72] at 10-16; EOP Defs.' Resp. [69] at 9-12.

In any event, it was made clear by the Magistrate Judge and NSA's co-plaintiff CREW that the November 12 Order was meant to cover only "whatever backup media the *institution* of the Executive Office of the President, through the Office of Administration, . . . uses to preserve data that can be used forensically for [disaster] recovery."  Hr'g Tr. of Oct. 17, 2007 at 10:12-16 (attached as Ex. 4 to CREW Mot. for Discovery [14]) (emphasis added).  Indeed, CREW expressly disavowed any intent to seek preservation of the media NSA now seeks to sweep into the existing November 12 Order: "If individuals within the White House create separately their own DVDs [with emails], we had not intended that to be encompassed[.]"[13]  Id. at 10:17-19.  Given plaintiffs' expansive construction of the "law of the case doctrine," it is unclear why

---

[13]     See also id. at 10:2-11 (Magistrate Judge explaining difference between disaster recovery backup media and individually created DVDs); 9:2-8 ("Well, I think we'd all agree we would put DVDs and CDs in a very different category of disaster recovery tapes. . . .  CDs and DVDs, I agree – I think we all agree, do not fall within the definition of disaster recovery tapes."); 9:19-10:11 (same).

plaintiffs' application of the doctrine would not operate to preclude them from seeking

preservation at this time of media that they explicitly disavowed in an earlier proceeding.

Regardless, NSA cannot rely on claims of irreparable harm raised to support the November 12

Order to justify a significantly expanded one now.

***

EOP defendants identified the straightforward issue from NSA's motion currently before

the Court:  even if, as plaintiff alleges, some emails do not now exist in the EOP .pst file stores,

has the Court been assured that it will be able to order effective relief later?  Through the

briefing on NSA's motion, EOP defendants have explained and established that the "answer is

undeniably yes," and NSA cannot present a foundational argument to the contrary because it

cannot prove irreparable harm in light of the November 12 Order.  EOP Defs.' Obj. [72] at 3.

Nothing in NSA's opposition compels a contrary result.  NSA's Motion to Extend

TRO/Preservation Order and for Depositions [58] must, as a result, be denied.

## II.    EOP Defendants Object to the Workstation Recommendation and the Collection Notice Recommendation Because They Would Impose Significant Burdens

Given the absence of irreparable harm that may be claimed by NSA, EOP defendants

established that imposing even a minimal burden pursuant to NSA's motion would be

unjustified.  See EOP Defs.' Resp. [69] at 13-18; EOP Defs.' Obj. [72] at 16-18.  For that reason

alone, delving into the specific burdens that would be imposed by the recommendations is

unnecessary.

Nonetheless, EOP defendants submitted the Third Declaration of Theresa Payton

establishing that the Office of Administration's time and resources would be significantly

-16-

diverted by the contemplated relief.  See 2d Payton Decl. ¶¶ 8-10; see also 3d Payton Decl.

¶¶ 13-14.  NSA attempts to dismiss the declarations simply by characterizing them as

"conclusory," NSA Opp'n [73] at 23, or "sweeping and unsubstantiated."  CREW Opp'n [74] at

18.  The recommendations on their face, however, undercut any contrary claim that they would

not impose any burden or harm on the government.[14]   For example, the Collection Notice

Recommendation would require 583 employees of EOP FRA components who also worked in an

EOP FRA component[15] sometime between March 2003 and October 2005 to "surrender any

media in their possession" – including any CDs, DVDs, laptops, external hard drives, thumb

drives, or floppy disks with .pst files of emails – to EOP defendants for the duration of this

lawsuit, regardless of how surrendering the media would impact the employee's performance of

---

[14]     NSA suggests that the Magistrate Judge concluded that the instant request for relief was justified in light "of the clear absence of any harm to the government."  NSA Opp'n [73] at 23. The Magistrate Judge, of course, did not so hold.  In analyzing the propriety of the November 12 Order, the Magistrate Judge concluded that an order prohibiting defendants from destroying disaster recovery back-up tapes would impose no burden given defendants' representations that they had been preserving, and would continue to preserve, disaster recovery back-up tapes.  See Report and Recommendation [11] at 3.  In contrast, the recommendations here would impose significant and new obligations upon the Office of Administration.

[15]     Both NSA and CREW contend that EOP defendants' responses to the Magistrate Judge's questions are "significantly incomplete" given that figures for "EOP FRA" components were provided rather than FRA and PRA components combined.  But NSA itself limited its claims to "EOP, as well as its individual agency components that are subject to the Federal Records Act," NSA Compl. ¶ 7; CREW Compl. ¶ 9, and a court in this Circuit, too, expressly limited an injunctive order requiring preservation of backup tapes to FRA entities only.  See Armstrong v. Bush, 807 F. Supp. 816, 823-24 (D.D.C. 1992).  That is for good cause, because the Court lacks jurisdiction under the PRA.  See, e.g., Defs.' Mot. to Dismiss [39].  Indeed, plaintiffs disavowed any attempt to seek PRA compliance by EOP PRA entities in their opposition briefs to defendants' motion to dismiss.  See NSA's Opp'n to Defs.' Mot. to Dismiss [30] at 11; CREW's Opp'n to Defs.' Mot. to Dismiss [40] at 2.

his or her official duties.  And of course, EOP defendants would bear the burden and cost of storing and preserving that media and any .pst files located on them.

The Workstation Recommendation (and any forensic copying order) would impose significant burdens as well.  NSA suggests that the remote querying and forensic copying process would pose minimal costs, relying on the Lakhani declaration.  Although NSA claims that Mr. Lakhani's declaration "was limited to his own personal knowledge," NSA Opp'n [73] at 24, Ms. Payton established in her Third Declaration that a "leading U.S. computer forensics producer suggested that costs would not only include forensic services per unit" as Mr. Lakhani suggested, "but also specialized software and services commitments."  3d Payton Decl. ¶ 7 n.3. Mr. Lakhani's declaration therefore lacks consideration of forensic services for workstations connected to the sensitive EOP Network and for that reason alone must be stricken or disregarded.

NSA further contends that a preservation notice – rather than an order requiring EOP defendants to harvest and copy email data – is not a potential alternative because "[d]efendants never suggested this mode of preservation in their multiple submissions to the Magistrate Judge."  NSA Opp'n [73] at 27.  It is clear from the record, however, (1) that the Workstation and Collection Notice Recommendations were never countenanced before the First Report, providing no opportunity for EOP defendants to offer alternatives; and (2) that periodic instructions to EOP defendant employees to preserve any .pst files would adequately address any concerns about losing .pst files (however irrelevant or immaterial).  It cannot be that court-ordered enforcement of any preservation obligation is necessary in all circumstances as NSA contends.  See id.  NSA's contrary understanding would not only impose unwarranted burdens

-18-

on the judiciary, but is inconsistent with prevailing law.  See, e.g., Hester v. Bayer Corp., 206

F.R.D. 683, 686 (M.D. Ala. 2001) (calling orders to ensure compliance with litigation

responsibilities "a superfluous and wasteful task"); Schnall v. Annuity & Life Re (Holdings) Ltd.,

XL, No. 302-2133, 2004 WL 51117, *2 (D. Conn. Jan. 2, 2004) (same).

At bottom, any burden, even if minimal (and obviously from the face of the

recommendations themselves the burden would be far from minimal) remains unjustified

because of the absence of any utility to be gained from the recommendations in the First Report.

As explained in the opening objections and request for reconsideration, the .pst files collected

from workstations or portable media are likely to be triplicate or quadruplicate copies that are

not required to be preserved under the FRA and therefore cannot be considered "res" for the

purposes of plaintiffs' suit.[16]  Nothing in NSA's opposition changes the analysis.

## III.    The Other Factors Counsel Against NSA's Requested Relief

Ironically, despite reciting the terms of Federal Rule of Civil Procedure and Local Civil

Rule 72 and their prohibitions against litigants presenting "new initiatives to the district judge

that the party failed to raise before the Magistrate Judge," NSA Opp'n [73] at 27, NSA for the

first time attempts to satisfy the four-factor test for injunctive relief in its opposition.  But even

its belated efforts fail.  On the likelihood-of-success prong, for example, it remains that

---

[16]    As a result, requiring "retrieval" of those materials would exceed the jurisdictional
bounds of the FRA as EOP defendants established.  EOP Defs.' Resp. [69] at 4.  Even those
cases that have imposed limited preservation requirements of backup tapes have recognized that
such orders may be permitted only on a temporary basis to "preserve records until the Archivist
is able to ensure that federal records are not destroyed."  NSA Opp'n [73] at 28.  Given that the
.pst files at issue in NSA's motion are likely duplicates, ordering their collection and retrieval
would not serve to "preserve records."

defendants' challenge to the "standing of the Archive to seek, and the jurisdiction of this court to compel, restoration of electronic records" is an argument that is "not without merit, as evidenced by a recent decision in which Judge Richard J. Leon dismissed a similar case after holding that the court lacked jurisdiction to prevent the unlawful removal or destruction of records protected by the Federal Records Act."  Mem. Or. [46] at 3, n.2.  The motion to dismiss, now fully briefed, establishes that NSA's likelihood of success on the merits of its case is doubtful.

NSA also fails to establish that the public interest would be well-served by the issuance of an Order.  Indeed, NSA and CREW both rely heavily on the public's interest in the "preservation of *presidential* records," which cannot be part of this suit and may not justify NSA's request for relief.  CREW Opp'n [74] at Ex. 1 at 1 (emphasis added); see also id. at Ex. 2 at 5 (discussing "condition of White House records, as under the Presidential Records Act"); id. at Ex. 3 at 1 (describing stakes for democracy and "Presidential Records"); NSA Opp'n [73] at 29 (discussing importance of preserving records about the "nation's journey into war").  Despite plaintiffs' repeated insistence on injecting the atmospherics associated with Presidential records into this case, PRA-covered records are simply not – and cannot be – a part of this suit.

The public's interest in ensuring that interim injunctive relief is not abused would also be harmed by the issuance of expanded relief here.  Allowing a party to obtain emergency relief based on allegations alone – as NSA attempts to do – would greatly expand the possibility of Rule 65 abuse.  Allowing an expansion of the injunction without supporting evidence would harm defendants' institutional interests, and run afoul of the well-established presumption that government officials and agencies act in good faith and according to the dictates of law, no matter how inflammatory the mere allegation.  Indeed, NSA appears to have been emboldened

by plaintiffs' ability to secure an injunction in the first instance – despite the absence of credible *evidence*, as opposed to mere allegation, to support its request for emergency relief.  To allow NSA to impose the significantly more burdensome obligations it requests now would likely encourage both plaintiffs to come to Court yet again, to seek additional unsupported relief. NSA's efforts, as established by EOP defendants throughout the briefing on NSA's motion, must be rejected.

## <u>CONCLUSION</u>

For the reasons set forth above, EOP Defendants request that the Magistrate Judge reconsider and reject the Workstation and Collection Notice Recommendations set forth in the First Report and Recommendation.

Respectfully submitted this 30th day of May, 2008.

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
TAMRA T. MOORE (DC 488392)
Trial Attorneys
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2008, a true and correct copy of the foregoing EOP Defendants' Reply in Support of Request for Reconsideration of the Magistrate Judge's First Report and Recommendation was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Helen H. Hong

HELEN H. HONG