UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>           **Plaintiff,**<br>     **v.**<br><br>**EXECUTIVE OFFICE OF THE PRESIDENT, et al.,**<br><br>           **Defendants.** | Civil Action No. 07-1707 (HHK/JMF) |
| **NATIONAL SECURITY ARCHIVE,**<br><br>           **Plaintiff,**<br>     **v.**<br><br>**EXECUTIVE OFFICE OF THE PRESIDENT, et al.,**<br><br>           **Defendants.** | Civil Action No. 07-1577 (HHK/JMF) |

**MEMORANDUM OPINION and
SECOND REPORT AND RECOMMENDATION**

**I.    Background**

This dispute involves claims by the National Security Archive ("the Archive" or "NSA") and Citizens for Responsibility and Ethics in Washington ("CREW") that several million e-mail messages have been improperly deleted from White House computer servers. Complaint for Declaratory, Injunctive, and Mandamus Relief ("NSA Complaint") at 13-14; Complaint for Declaratory, Injunctive, and Mandamus Relief ("CREW Complaint") at 13-14.[1]

---

[1] The cases were consolidated on November 12, 2007. All docket numbers cited herein refer to case no. 07-cv-1707.

One of the remedies sought by the plaintiffs is "an order requiring the defendants to recover and restore certain electronic communications created and/or received within the White House." NSA Complaint at 1.  Whether they are entitled to this relief is the subject of a dispositive motion pending before Judge Kennedy.[2]  The plaintiffs argue that certain actions must now be taken by the defendants to ensure that the relief, if ultimately granted by Judge Kennedy, does not become illusory.  In other words, the plaintiffs believe that there exists a universe of restorable e-mails, but that this universe will shrink with time unless affirmative steps are taken.  They argue that preserving the status-quo, *i.e.* keeping steady the universe of recoverable e-mails, requires that those affirmative steps be taken immediately.[3]

The question of what can and should be done in this regard has been the subject of numerous orders and recommendations.  See, e.g., Report and Recommendation, Oct. 19, 2007 [#11] (recommending that defendants be ordered to preserve existing back-up tapes); Order, Nov. 12, 2007 [#18] (ordering defendants to preserve existing back-up tapes); Memorandum Order, Jan. 8, 2008 [#46] (seeking additional information about the back-up tapes being preserved); Memorandum Order, Mar. 13, 2008 [#62] (seeking additional information about forensic imaging); Memorandum Order and First Report and Recommendation, Apr. 24, 2008 [#67] ("First Rep." or "First Report") (seeking additional information about back-up tapes and the universe of relevant employees and hard drives, recommending that defendants be ordered to collect and preserve data from workstations and portable media, and recommending that the

---

[2] The defendants' dispositive motion is not without merit, as evidenced by a recent decision in which Chief Judge Lamberth held that the Federal Records Act precluded private organizations from seeking to compel the retrieval of lost agency records.  CREW v. U.S. Dep't. of Homeland Sec., 527 F. Supp. 2d 101, 111-12 (D.D.C. 2007).

[3] See, e.g., Plaintiff's Motion for a Temporary Restraining Order [#4]; Plaintiff's [the Archive's] Motion for Leave to Serve Expedited Discovery Requests and to Compel Rule 26(f) Conference ("NSA Disc. Mot."); Plaintiff's [CREW's] Motion for Leave to Conduct Expedited Discovery and to Compel Rule 26(f) Conference [#14] ("CREW Disc. Mot."); Emergency Motion to Extend TRO/Preservation Order and for Depositions [#58] ("Motion for TRO").

Archive's request to take depositions be denied). Several issues remain in need of resolution and will be addressed in turn below.

## II. The Motion to Reconsider

In its First Report, this Court recommended that Judge Kennedy order the Executive Office of the President ("EOP") to: (1) "search the workstations, and any .PST files located therein, of any individuals who were employed between March 2003 and October 2005, and to collect and preserve all e-mails sent or received between March 2003 and October 2005;" and to (2) issue a preservation notice to its employees directing them to surrender any media in their possession – irrespective of the intent with which it was created – that may contain e-mails sent or received between March 2003 and October 2005, and for EOP to collect and preserve all such media." Id. at 4-7. The defendants have moved for reconsideration of both of these recommendations. Defendants' Responses to and Request for Reconsideration of the First Report and Recommendation on Plaintiff NSA's Motion to Extend TRO/Preservation Order [#69] ("Motion").

The defendants argue that the two recommendations are unnecessary, and thus impermissible as injunctive relief, because all e-mails sent or received between March 2003 and October 2005 "should [be] contain[ed]" within the back-up tapes currently being preserved.[4] Motion at 11. Based on new information[5] provided by the defendants, it now appears to be the case that no back-up tapes are being preserved that were created between the relevant time

---

[4] The defendants raise other arguments that have already been addressed in the First Report. See, e.g., Motion at 18 ("[A]ny Court order requiring the retrieval of records exceeds the permissible scope of judicial relief under the" Federal Records Act ("FRA").); First Rep. at 2 ("[M]aintaining the status quo by further preserving the *res* of this litigation" does not exceed the jurisdictional bounds of the FRA.).

[5] To "resolve any ambiguities once and for all," EOP was ordered to inform the Court "whether all back-up tapes created between March 2003 and October 2003 have been preserved – and, to the extent that they have not, to state the specific dates within that period for which no back-up tapes exist." First Rep. at 8. The response is included in the Third Declaration of Theresa Payton [#69-2] ("Third Decl.") at 4-6.

3

period of March 1, 2003, and May 22, 2003.  Third Decl. at ¶ 11.  It is the defendants' position, however, that "substantially all" e-mails sent or received during that time period are present on existing back-up tapes because all e-mails present on the EOP network are captured when a back-up tape is created – not only those e-mails sent or received in the preceding 24 hours.  Motion at 11-12, 14.  This, argues the defendants, should "allay any concerns about 'missing' emails being unavailable on the disaster recovery back-up tapes."  Id. at 12.

      This argument is fundamentally flawed because it presumes that all e-mails sent or received between March 1, 2003, and May 22, 2003, remained on the EOP network on May 23, 2003, when the earliest existing back-up tape was created.  Consider the following scenario: on April 2, 2003, an employee receives an e-mail; one week later, the employee moves that e-mail to a personal folder.  That e-mail would not be present on any back-up tape currently being preserved, though it may still be present on that employee's workstation.  As discussed in the First Report, this scenario is not far-fetched; to the contrary, it is common practice for employees to move e-mails to personal folders.  First Rep. at 4.  It may be literally true that the existing back-up tapes contain e-mails sent or received prior to May 23, 2003, but the defendants' assertion that "substantially all" of those e-mails are on the back-up tapes is pure speculation.  Motion at 14.  The defendants provide no evidence, such as sampling or other statistical data, to support that assertion.  See McPeek v. Ashcroft, 202 F.R.D. 31, 34 (D.D.C. 2001).

      It is the defendants' position that the Court's recommendations cannot be supported by the possibility that some e-mails that were not captured on existing back-up tapes might be recovered by a search of individual workstations and portable media, or that too few e-mails would be recovered to justify the expense.  Motion at 12-14.  It remains the Court's position, however, that every reasonable effort must be made to preserve the *res* of this lawsuit, *i.e.* the

4

historical records that the plaintiffs may establish were required by law to have been preserved. See Report and Recommendation, Oct. 19, 2007 [#11] ("[T]he threat of such obliteration is a text book example of irreparable harm."). As explained in the First Report, the minimal burdens[6] imposed on the defendants by the recommendations are vastly outweighed by the likelihood that e-mails[7] will be preserved, the public interest[8] that would be furthered by preserving those e-mails, and the likelihood of the plaintiff's success on the merits. First Rep. at 4-7. See also Serono Labs, Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). The defendants' motion for reconsideration will be denied.

## III.   Forensic Imaging

Upon initial consideration of the Archive's Motion for TRO, this Court raised the possibility of ordering the forensic imaging of data on certain workstations. Memorandum Order, Mar. 18, 2008 [#62] at 2. Forensic imagining would have the same effect (preservation of data on slack space) as the remedy sought by the Archive in the Motion for TRO, but it would not require workstations to be quarantined. Id. It was acknowledged that this approach was "not without its costs," and that those costs needed to be balanced against other factors. Id. at 2-3 (citing Serono Labs, 158 F.3d at 1317-18). To assist the Court in conducting this balancing test, EOP was ordered to "describ[e] the costs that would be incurred and any other facts that would

---

[6] The defendants take issue with the Court's assessment of the burdens associated with implementation of the recommendations. Motion at 15-16. Unfortunately, they once again fail to provide anything more than generalizations. See, e.g., Id. at 15 (describing the costs as "significant," and "extensive and time-consuming"); Id. at 16 (describing labor and employee downtime as "obviously immense"). See also First Rep. at 3 n.1 (providing examples of the defendants' imprecise descriptions of costs). Compare Motion at 15-16 with First Rep. at 5; Declaration of Al Lakhani [#65-3] at ¶¶ 21-22.

[7] The Court acknowledges that it is impossible to attach a precise weight to each e-mail that may be preserved. It must be noted, however, that the e-mails themselves are the subject of this lawsuit, whereas e-mails in most civil cases only have evidentiary value.

[8] As evidenced by the enactment of the Federal Records Act, the public has a sizeable interest in the preservation of government records. See Am. Friends Serv. Comm. v. Webster, 720 F.2d 29, 48-57 (D.C. Cir. 1983).

bear on the burden of such an obligation. Id. at 3. The response was inadequate, however, so EOP was ordered to provide "more precise information concerning the costs of the proposed preservation order," and to indicate: (1) the number of current EOP employees who were employed at any time between March 2003 and October 2005; and (2) the number of hard drives in the possession or custody of EOP that were in use between March 2003 and October 2005. First Rep. at 3.

Though the defendants have once again failed to describe the potential costs in precise terms[9], they have proffered that there are "583 individuals currently working at an EOP FRA agency who worked at an EOP FRA agency at some time" during the relevant time period, and that there are "545 workstations that may have been used" during the relevant time period.[10] Motion at 19. According to the Archive, the "typical cost of forensic imaging a 100 GB hard drive is between $400 and $1,000 and it takes approximately two to three hours to complete the imaging." Declaration of Al Lakhani [#65-3] at ¶ 24. This process could therefore cost as much as $545,000 and take up to 1,635 hours to complete.[11]

If the Court's prior recommendations are implemented, the primary additional benefit of forensic imaging would be the preservation of data on the slack space of hard drives. The continued use of a hard drive gradually causes data contained within slack space to become unsalvageable, however. It must therefore be presumed that a large percentage of relevant data

---

[9] See, e.g., Third Decl. at ¶ 7 (forensic imaging would be "extremely costly in the aggregate," and "extraordinarily" burdensome to employees).

[10] The defendants proffer that EOP does not "track[] the location of individual hard drives to individual users," and thus cannot provide an answer as to the number of hard drives in its possession that were in use during the relevant time period. Id.

[11] EOP did not keep records tracking which hard drives were used by which individuals, Third Decl. at ¶ 5, so it is impractical, if not impossible, to conduct forensic imaging on a subset of employees, such as principals, or to even estimate which computers are more likely than others to contain relevant data.

6

(created three to five years ago) that once resided on slack space might now be irrevocably lost. The Court takes no position on whether forensic imaging would be appropriate at a later stage of the litigation, but at this time – with a dispositive motion pending – the limited potential benefit and high potential burden cannot justify its use as injunctive relief. It is therefore recommended that Judge Kennedy grant no further relief in connection with the Motion for TRO beyond the recommendations made in the First Report.

## IV.     The Discovery Motions

The Court now turns to the plaintiffs' discovery motions.

### A.      Expedited Discovery

The plaintiffs have moved for "an order expediting the commencement of discovery." NSA Disc. Mot. at 1. See also CREW Disc. Mot. at 1. They are seeking "expedited targeted discovery" relating to all aspects of defendants' past and present practices of backing up e-mail; that information would in turn be used to determine: (1) the universe of e-mails, if any, not currently being preserved on back-up tapes, and (2) "what additional steps can and should be taken to replicate" those e-mails not currently being preserved on back-up tapes. CREW Disc. Mot. at 2, 9. See also NSA Disc. Mot. at 9 (discovery sought to "explore . . . recover[ing] the missing records from other sources, including individual workstations, or through other forensic means").

It is clear, however, that these motions have been overtaken by events: this Court has since determined that there likely are e-mails not currently being preserved on back-up tapes, and has made recommendations to Judge Kennedy of what steps might be appropriate in light of that determination. Moreover, some of the information that the plaintiffs seek is now publicly available in the form of documents and testimony released by the House Committee on

7

Oversight and Government Reform.  See Plaintiff CREW'S Memorandum of Points and Authorities in Support of Plaintiff's Motion to Show Cause Why Defendants Should Not Be Held in Contempt and for Sanctions [#57-2] ("Contempt Memo") at 5-6 (summarizing the documents released by the Committee, and noting that "the Democratic committee staff also released a report summarizing their findings" based on more than 20,000 pages of internal e-mails and documents received from EOP and the National Archives and Records Administration).  There remains no persuasive reason to stray from the ordinary course by expediting discovery.[12]  See Wash. Bancorp. v. Wafic Said, No. 88-CV-3111, 1988 WL 120829, at *1 (D.D.C. Nov. 2, 1988) (internal quotation omitted) ("Expedited discovery may be granted if a party shows that there exists some unusual circumstances or conditions which would be likely to prejudice the plaintiff if he were compelled to await for the required period.").

    **B.**    **Rule 26(f) Conference**

On October 18, 2007, the Archive and CREW each requested a meeting with the defendants pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.  NSA Disc. Mot. at 4; CREW Disc. Mot. at 5.  Eight days later, with defendants having responded that they were "considering" the requests, the plaintiffs filed motions to compel a Rule 26(f) conference.  NSA Motion at 1; CREW Motion at 1.  Rule 26(f) requires the parties to meet and confer to:

> consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan.

---

[12] The Court also notes that the plaintiffs' "primary purpose" for obtaining expedited discovery – to "restor[e] the missing emails," Plaintiff's [CREW's] Reply in Support of Plaintiff's Motion for Leave to Conduct Expedited Discovery and Motion to Compel Rule 26(f) Conference [#19] at 12 – goes "beyond the scope" of their discovery motions and this referral.  Memorandum Order, Jan. 8, 2008 [#46] at 3.

Fed. R. Civ. P. 26(f)(2). This meeting is to occur "as soon as practicable--and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due." Fed. R. Civ. P. 26(f)(1). The Court sees no reason to diverge from the schedule set forth in the Federal Rules of Civil Procedure. Id.

### V.    Contempt and Sanctions

CREW moves the Court to "order defendants to show cause why they should not be held in contempt for violating the Court's Memorandum Order of January 8, 2008 (Document 46) and for sanctions." Plaintiff CREW'S Motion to Show Cause Why Defendants Should Not Be Held in Contempt and for Sanctions [#57] at 1. In short, CREW argues that defendants should be held in civil contempt for allegedly false and misleading statements submitted by Theresa Payton as part of the defendants' Notice of Filing [#48]. Contempt Memo at 2-3. The remedies sought by CREW include "an award of attorneys' fees and costs as well as permitting the plaintiffs to take the deposition of Ms. Payton at the defendants' expense." Id. at 17. The specific allegations of wrongdoing need not be addressed because the remedies sought by CREW are unavailable.

First, CREW seeks "costs and attorneys' fees associated with this motion and any subsequent hearing the Court may hold, as well those costs and attorneys' fees associated with its motion for expedited discovery." Id. But "the Government is shielded by sovereign immunity from attorney's fee liability 'except to the extent it has waived its immunity.'" In re Turner, 14 F.3d 637, 640 (D.C. Cir. 1994) (per curiam) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983)). See also Lane v. Pena, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text."). The Court is not aware of any waiver of sovereign immunity that would allow attorneys' fees to be awarded against the government under these circumstances, and none has been cited by CREW.

9

Instead, CREW argues that a court's inherent power in a civil contempt proceeding is sufficient authority to permit an award of attorneys' fees against the government. Plaintiff CREW'S Reply in Support of Plaintiff's Motion to Show Cause Why Defendants Should Not Be Held in Contempt and for Sanctions [#63] at 12. Our Court of Appeals has declined to address this issue, United States v. Waksberg, 112 F.3d 1225, 1227 (D.C. Cir. 1997) (invoking the doctrine of constitutional avoidance), but judges of this Court have held that "when it comes to monetary sanctions against the government, 'the doctrine of sovereign immunity prevails over inherent judicial power.'" Alexander v. F.B.I., 541 F. Supp. 2d 274, 301 (D.D.C. 2008) (quoting United States v. Waksberg, 881 F. Supp. 36, 39-41 (D.D.C. 1995), vacated on other grounds, 112 F.3d 1225 (D.C. Cir.1997)).[13] Cf. Am. Rivers v. U.S. Army Corps of Eng'rs, 274 F. Supp. 2d 62, 69 (D.D.C. 2003) (rejecting assertion of sovereign immunity with respect to coercive, as opposed to compensatory, contempt fines). Other circuits have ruled similarly. See, e.g., United States v. Horn, 29 F.3d 754, 763 (1st Cir. 1994) ("[I]f Congress has not waived the sovereign's immunity in a given context, the courts are obliged to honor that immunity."); Coleman v. Espy, 986 F.2d 1184, 1191-92 (8th Cir. 1993) (sovereign immunity bars compensatory contempt sanctions against the United States); Barry v. Bowen, 884 F.2d 442, 443-44 (9th Cir. 1989) (noting that the district court's imposition of compensatory contempt sanctions against the government likely violated the doctrine of sovereign immunity, but reversing on other grounds). Cf. In re Graham, 981 F.2d 1135, 1139-40 (10th Cir. 1992) (sanctions provision of the

---

[13] CREW argues that there is contrary law from this Court, citing to Cobell v. Norton, 226 F. Supp. 2d 1, 154-55 (D.D.C. 2002). It is true that Chief Judge Lamberth held in Cobell that the Court's "inherent power to award expenses, including attorneys' fees, to a prevailing party in a civil contempt proceeding trumps [the sovereign immunity] doctrine." Id. at 154. But the contempt award resulting from that decision was vacated by the Court of Appeals, albeit on unrelated grounds. Cobell v. Norton, 334 F.3d 1128, 1145-47 (D.C. Cir. 2003). Moreover, in an opinion written five years after Cobell, the Chief Judge came to the opposite conclusion. Alexander, 541 F. Supp. 2d at 299 ("[S]overeign immunity precludes an award of monetary sanctions against an agency of the federal government, whether premised on Section 1927 or a court's inherent power.").

bankruptcy statute does not permit the imposition of attorneys' fees against the government). CREW has not presented any argument that would justify straying from this jurisprudence.

Second, CREW argues that the deposition of Ms. Payton should be compelled. Civil contempt is "a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance." N.L. R. B. v. Blevins Popcorn Co., 659 F.2d 1173, 1184 (D.C. Cir. 1981). The allegedly misleading and false statements were made in response to the Court's attempt to determine "whether the missing emails are contained on the back-ups preserved pursuant to Judge Kennedy's order." Memorandum Order, Jan. 8, 2008 [#46] at 3. As discussed above in greater detail, the Court has now determined that not all e-mails sent or received during the relevant time period are contained on the back-up tapes. Compelling the deposition of Ms. Payton would therefore provide no remedial benefit and is thus unavailable here as a sanction.

## VI. Conclusion

For the reasons stated above, the defendants' motion to reconsider will be denied; it is recommended that Judge Kennedy award no relief in connection with the Motion for TRO beyond the recommendations made in the First Report; the plaintiffs' discovery motions will be denied; and CREW's motion concerning contempt will be denied. An Order accompanies this Memorandum Opinion.

Date:   July 29, 2008                               /s/
                                           JOHN M. FACCIOLA
                                           UNITED STATES MAGISTRATE JUDGE