**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXECUTIVE OFFICE OF THE PRESIDENT, et al., )<br>)<br>Defendants. )<br>_____) | Civil No. 07-01707 (HHK/JMF) |
| NATIONAL SECURITY ARCHIVE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXECUTIVE OFFICE OF THE PRESIDENT, et al., )<br>)<br>Defendants. )<br>_____) | Civil No. 07-01577 (HHK/JMF) |

## PLAINTIFF CREW'S REPLY IN SUPPORT OF ITS REQUEST FOR AN IMMEDIATE STATUS CONFERENCE

The opposition of the White House to CREW's request for a status conference rests on a false characterization of CREW's request as seeking merits discovery and conveniently ignores the obligation of the White House to update all three of its sworn declarations submitted in opposition to plaintiff's request that the Court expand the current preservation order. Hiding behind technical jargon,[1] the White House quite obviously does not want to acknowledge

---

[1] See, e.g., the White House's reference to "email inventory re-baseline efforts," Defendants' Response to CREW's Request For an Immediate Status Conference ("Ds' Resp.") at 1 (Document 85), to describe its process of confirming that emails are missing from White House servers.

publicly that the facts alleged in CREW's complaint are correct.  But however understandable the desire of the White House to avoid public scrutiny and likely public reaction may be, it is certainly not a basis to excuse its refusal to update the Court about relevant facts that bear directly on the pending issue of whether and how the current preservation order should be expanded.

      First, CREW's request is not for merits discovery or discovery of any kind.  Rather, CREW has requested that the Court schedule a status conference to address the White House's refusal to update the three declarations submitted by Theresa Payton in opposition to the pending request that the Court expand the preservation order.  As such, CREW seeks to have the defendants account directly to the Court, not to CREW, and not through any discovery process.  Moreover, as CREW explained in its opening brief, this is the most appropriate and effective way to air this issue, given the difficulty Magistrate Judge Facciola has already encountered in soliciting facts from the White House that are relevant and necessary to deciding the extent to which the current preservation order should be expanded.  See, e.g., Memorandum Opinion and Second Report and Recommendation, July 29, 2008, at pp. 5-6 (Document 84) (describing EOP's response to Court order to describe the costs that forensic imaging would entail as "inadequate," necessitating the need to order "more precise information.").  CREW's request cannot reasonably be equated with a request for discovery, merit based or otherwise, as its sole purpose is to aid the Court's resolution of a pending motion.

      Second, CREW's request does not "misapprehend[] the scope of 'interim and final relief to which it could be entitled for its FRA claim,"[2] but instead relates directly to the pending

---

[2] Ds' Resp. at 4.

motion to extend the preservation order and the failure of the White House to update its three declarations offered in opposition to that motion. In the first Declaration of Theresa Payton ("1st Payton Decl."), submitted on January 14, 2008 (Document 48-2), Ms. Payton advised the Court that OA had undertaken "an independent effort to determine whether there may be anomalies in Exchange email counts for any particular days," that the process was "underway" and that OA "expect[ed] the independent assessment to be completed in the near term." 1st Payton Decl. at ¶ 11. Moreover, in direct response to the Court's question of whether the back-up tapes contain the missing emails, Ms. Payton stated: "At this stage, this office does not know if any emails were not properly preserved in the archiving process." Id. at ¶ 12(d).

Two months later, the White House submitted the Second Declaration of Theresa Payton (March 21, 2008) ("2d Payton Decl.") (Document 64-2), pursuant to Judge Facciola's Order of March 18, 2008. In support of its contention that providing forensic copies would be too burdensome, the White House argued that the effort "would inevitably divert significant resources" from other "functions and projects," including "the current email inventory re-baseline efforts for the Presidential transition." 2nd Payton Decl. at ¶ 10.

Most recently, on May 5, 2008, the White House submitted the Third Declaration of Theresa Payton ("3rd Payton Decl.") (Document 69-2), in which it contended that "[t]he burden associated with providing the court more detailed information regarding the content on the 438 tapes is extraordinary." 3rd Payton Decl. at ¶ 13. Ms. Payton continued as follows:

> the Court's proposals in the First Report would divert OA
> from its comprehensive, measured, process-driven, and cost-
> effective approach to address Federal Records Act compliance
> within the EOP for FRA components. We expect OA's
> approach to be more accurate, *and if any restoral process
> is ever required, the information gained from the approach*

>     *will identify and focus the efforts on a targeted universe
>     of tapes for restoral.*  We believe this approach balances
>     the extraordinary financial and human resource burdens
>     with a comprehensive plan to address these matters.

Id. at ¶ 14 (footnote omitted) (emphasis added).

Having admitted expressly that the information gained from the "restoral process" -- the process of identifying and confirming missing emails -- would help "identify and focus the efforts on a targeted universe of tapes for restoral," the White House cannot be heard to complain now that supplying that very information is not relevant to the Court's consideration of what additional preservation efforts should be mandated.  As a necessary consequence, the White House has a duty to inform the Court of the progress it has made in the so-called "restoral process," a duty that bears directly on a pending issue before the Court.  Likewise, having argued that it should not have to bear the burden of additional preservation obligations because it is involved in an "email inventory rebaseline effort," the White House has an obligation to update the Court on the status of the effort given that OA's part is finished and the actual email restoration will be performed by an outside contractor.  And the White House has a similar obligation to update its now inaccurate response that it "does not know if any emails were not properly preserved in the archiving process" to the Court's question of whether the back-ups contain the missing emails.  The White House chose to present this declaration testimony to the Court in the first place, properly deeming it relevant to the Court's consideration of the motion to expand the preservation order.  Now that subsequent events have rendered this information inaccurate, the White House has a duty to update the Court, which is all that CREW is seeking.[3]

---

[3] Notably, defendants do not challenge their general duty to update the Court, an obligation that Rule 11 imposes on all litigants.  See Fed. R. Civ. P. 11(b) and (c) advisory

Third, the White House argues that a status conference is not warranted because "CREW's entire request is premised on an unwarranted and wholly unsupported fear that defendants will not 'sufficiently protect the integrity of backup tapes . . . '" Ds' Resp. at 3, *quoting* CREW's Request at 4. Misleading quotations from CREW's brief, however, cannot change the true premise of CREW's request: the defendants' failure to fulfill their duty to update the Court. Morever, CREW's referenced concern about protecting the integrity of the tapes relates to the email restoration project that, if it uses the original backup tapes, may place their integrity and further preservation at risk. But this is just one of the many consequences of the White House's actions that warrant judicial consideration in light of the current preservation order.

Finally, the White House characterizes CREW's request as "predicated on erroneous assumptions," Ds' Resp. at 6, but fails to point out a single error in the factual basis for CREW's request. Should the Court find it helpful, CREW will be happy to provide further documentation. In the final analysis, however, this is precisely the kind of issue that is best addressed at a status conference, and this is precisely why CREW has requested that the Court schedule such a conference.

---

committee notes (1993 Amendments) ("a litigant's obligations . . . are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court . . ."); Innkeepers' Telemanagement & Equipment Corp. v. Hummert Management Group, Inc., 1994 U.S. Dist. LEXIS 16075, *14 (N.D. Ill. 1994).

## CONCLUSION

From the outset of this litigation, the White House has adamantly refused to answer to the Court for any of its actions and refused to acknowledge what it now knows to a certainty to be true: millions of emails are missing from White House servers, many if not most generated during critical periods of this administration. Having put information before this Court that is misleading at best and false at worst, the White House has an obligation to correct the record. Plaintiff seeks a status conference to effectuate this end. Accordingly, for the foregoing reasons and those set forth in CREW's opening brief, CREW respectfully requests that the Court schedule a status conference at the earliest possible date.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20530
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff CREW

Dated: July 31, 2008