# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., ) ) ) | |
| Defendants. ) | |
| NATIONAL SECURITY ARCHIVE, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No: 1:07-cv-01577 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., ) ) ) | |
| Defendants. ) | |

## EOP DEFENDANTS' RENEWED LOCAL CIVIL RULE 72.3(b) OBJECTIONS TO THE MAGISTRATE JUDGE'S FIRST REPORT AND RECOMMENDATION AND DENIAL OF EOP DEFENDANTS' REQUEST FOR RECONSIDERATION OF THOSE RECOMMENDATIONS

EOP defendants renew each of their Local Civil Rule 72.3(b) objections to Magistrate

Judge Facciola's First Report and Recommendation [67].[1]  See EOP Defs.' Local Civil Rule

72.3(b) Objections [72]; EOP Defs.' Reply in Support of Local Civil Rule 72.3(b) Objections

---

[1] EOP defendants concur that it was appropriate to reject any other injunctive relief in connection with NSA's Motion for TRO, and to deny plaintiffs' motions for discovery and sanctions.  See Mem. Op. & 2d Report & Recommendation [84] at 11.

[77]; <u>see also</u> EOP Defs.' Request for Reconsideration [69, 70]; EOP Defs.' Response to NSA's

Limited Obj. [75]; EOP Defs.' Opp'n to NSA's Emerg. Mot. to Extend TRO/Preservation Or.

[60] (attached for the Court's convenience as Exhibits 1 through 5 respectively).  As set forth in

detail in those briefs, and fully incorporated herein, NSA did not (and cannot) establish the

irreparable harm necessary to justify further and expanded mandatory injunctive relief.  Because

EOP defendants have been preserving under court order – and will continue to preserve – an

ever-growing cache of disaster recovery back-up tapes that should contain substantially all

emails for the period of time alleged to be deficient, any request for expanded injunctive relief

must be denied.

     Based solely on an incorrect premise, however, the Magistrate Judge nonetheless

continues to recommend that the Court issue an injunctive order requiring EOP defendants to

"(1) search the workstations, and any .pst files located therein, of any individuals who were

employed between March 2003 and October 2005, and to collect and preserve all e-mails sent or

received between March 2003 and October 2005; and (2) issue a preservation notice to its

employees directing them to surrender any media in their possession – irrespective of the intent

with which it was created – that may contain e-mails sent or received between March 2003 and

October 2005, and for EOP to collect and preserve all such media."  Mem. Op. & 2d Report &

Recommendation [84] at 3 ("2d Report").  In rejecting EOP defendants' request for

reconsideration of the First Report and Recommendation, the Magistrate Judge relied exclusively

(1) on a finding that disaster recovery back-up tapes last-written between March 1, 2003 and

May 22, 2003 are not being preserved; and (2) on speculation that all emails sent or received in

that eleven-week period *may* not have been captured on the existing library of disaster recovery

back-up tapes.  See 2d Report [84] at 4 ("This argument [that the existing library of disaster

recovery back-up tape obviates any allegation of harm] is fundamentally flawed because it

presumes that all emails sent or received between March 1, 2003 and May 22, 2003, remained on

the EOP network on May 23, 2003, when the earliest existing back-up tape was created.").

     Putting aside the Magistrate Judge's speculation about the contents of the tapes,[2] even a

complete absence of disaster recovery back-up tapes containing emails sent or received in the

eleven-week period between March 1, 2003 and May 22, 2003, would not justify the onerous

injunctions recommended in the First Report and Recommendation (and renewed in the Second

Report and Recommendation).[3]  That is because NSA's representation about the .pst file stores,

---

[2]  As support for his presumption that the existing library of tapes may not contain emails sent or
received between March 1, 2003 and May 22, 2003, the Magistrate Judge posed a hypothetical
"scenario," in which "on April 2, 2003, an employee receives an email; one week later, the
employee moves that e-mail to a personal folder.  That e-mail would not be present on any back-
up tape currently being preserved, though it may still be present on that employee's
workstation."  2d Report at 4.  It is settled D.C. Circuit law that hypotheticals and speculation are
insufficient to support injunctive relief, let alone mandatory injunctive relief.  See Wisc. Gas Co.
v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985); Dist. 50, United Mine Workers of Am. v. Int'l
Union, United Mine Workers of Am., 412 F.R.D. 165, 167 (D.C. Cir. 1969).  Moreover, any
email moved to a personal folder that is itself on the "EOP Network" – even presuming that it
had not been maintained in the email inbox and that any back-up had not captured the email
while it resided in the inbox before having been moved to a "personal folder" – would have been
captured on a disaster recovery back-up of that Network and would have been preserved.  See
Payton Decl. ¶ 6; 3d Payton Decl. ¶ 12.  As EOP defendants explained, "the purpose of disaster
recovery back-up tapes . . . is to create a snapshot that 'captures all email information present on
the EOP Network in the journals, the .pst archives, and the customer mailboxes at the time the
back-up is created.' . . . Such a backup should also include email messages residing in a user's
inbox, sent folder, trash box, folders saved in the mailbox, as well as email information in the
journals and .pst file stores."  Defs.' Resp. to and Request for Reconsideration [69] at 12.

[3]  Indeed, the recommendations are not limited to any effort to preserve .pst files from that
eleven-week time period, although the stated basis for relief is anchored to the potential that
emails sent or received between March 1, 2003 and May 23, 2003 are not contained on the
existing library of back-up tapes.  For that reason, among others, the recommendation fails even

see, e.g., NSA Mot. [58], Ex. 7 (attached as Exhibit 6 here), reveals **not a single email** alleged to be missing on any day in March, April, or May. This simple, yet critical fact is controlling here: there is not a single email alleged to be missing that was sent or received between March 1, 2003 and May 22, 2003 from the .pst file stores. Accordingly, no back-up tapes or other repository of emails would be required for any restoration. Because NSA does not allege missing emails from March to May 2003, NSA is logically precluded from establishing irreparable harm stemming from a deficiency in the backup tapes during that same period. The Court, in turn, should not place onerous burdens on EOP defendants to preserve a "universe of recoverable e-mails" based on a period in which no emails are alleged to be missing..

     NSA's own representations – highlighting allegedly missing days in red and yellow – make plain that no irreparable harm is possible: In the following excerpt from the "chart" that grounds NSA's complaint and request for injunctive relief, there are no red or yellow days in the March to May time frame:

---

to narrowly tailor the injunction to remedy the specific harm presumed and exceeds any permissible bounds for further injunctive relief. See Aviation Consumer Action Project v. Washburn, 535 F.2d 101, 108 (D.C. Cir. 1976); Disability Rights Council of Greater Washington v. WMATA, 234 F.R.D. 4, 7 (D.D.C. 2006). Indeed, the recommendation failed even to address EOP defendants' showing that periodic preservation instructions could address any concerns about "losing" .pst files. See, e.g., Defs.' Resp. to and Request for Reconsideration [69] at 17.

**NSA Mot. [58], Ex. 7 (excerpt)**

(DRAFT) EOP-OA-OCIO - For Official Use Only

**EOP Exchange Environment - All Components**
**Summary - Messages per Day**

Low Threshold: 30%
High Threshold: 300%

| | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Days with Zero Msg: | 12 | 16 | 11 | 47 | 20 | 103 | 81 | 59 | 20 | 15 | 73 | 16 | 473 | |
| Total Days with Low Msg: | 28 | 30 | 7 | 9 | 14 | 29 | 5 | 10 | 24 | 39 | 10 | 24 | 229 | |

| Date | Day | Day Type | Actual Message Count | | | | | | | | | | | | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | | | |
| 01-Mar-03 | Sat | WE | 1,314 | | | | | | | | | | | 842 | 0 | 2,156 | 3,322 |
| 02-Mar-03 | Sun | WE | 1,604 | | | | | | | | | | | 686 | 0 | 2,290 | 2,771 |
| 03-Mar-03 | Mon | WD | 19,289 | | | | | | | | | | | 8,752 | 0 | 28,041 | 27,061 |
| 04-Mar-03 | Tue | WD | 19,949 | | | | | | | | | | | 8,250 | 1 | 28,199 | 26,764 |
| 05-Mar-03 | Wed | WD | 19,300 | | | | | | | | | | | 7,610 | 60 | 26,910 | 26,568 |
| 06-Mar-03 | Thu | WD | 18,780 | | | | | | | | | | | 7,560 | 75 | 26,340 | 26,271 |
| 07-Mar-03 | Fri | WD | 16,197 | | | | | | | | | | | 6,528 | 2 | 22,725 | 25,966 |
| 08-Mar-03 | Sat | WE | 1,366 | | | | | | | | | | | 972 | 0 | 2,338 | 2,573 |
| 09-Mar-03 | Sun | WE | 1,106 | | | | | | | | | | | 758 | 0 | 1,864 | 2,493 |
| 10-Mar-03 | Mon | WD | 19,250 | | | | | | | | | | | 7,406 | 2 | 26,656 | 25,794 |
| 11-Mar-03 | Tue | WD | 18,826 | | | | | | | | | | | 7,190 | 2 | 26,016 | 25,602 |
| 12-Mar-03 | Wed | WD | 19,276 | | | | | | | | | | | 7,168 | 4 | 26,444 | 25,176 |
| 13-Mar-03 | Thu | WD | 18,618 | | | | | | | | | | | 7,304 | 0 | 25,922 | 24,838 |
| 14-Mar-03 | Fri | WD | 16,494 | | | | | | | | | | | 6,806 | 0 | 23,300 | 24,880 |
| 15-Mar-03 | Sat | WE | 1,382 | | | | | | | | | | | 900 | 0 | 2,282 | 2,386 |
| 16-Mar-03 | Sun | WE | 1,596 | | | | | | | | | | | 834 | 0 | 2,430 | 2,355 |
| 17-Mar-03 | Mon | WD | 19,974 | | | | | | | | | | | 7,750 | 0 | 27,724 | 25,021 |
| 18-Mar-03 | Tue | WD | 20,076 | | | | | | | | | | | 7,822 | 0 | 27,898 | 25,156 |

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19-Mar-03 | Wed | WD | 19,730 | | | | | | | | | | | 8,260 | 9 | 27,990 | 25,888 |
| 20-Mar-03 | Thu | WD | 20,050 | | | | | | | | | | | 8,418 | 1 | 28,468 | 26,190 |
| 21-Mar-03 | Fri | WD | 16,184 | | | | | | | | | | | 7,510 | 1 | 23,694 | 26,424 |
| 22-Mar-03 | Sat | WE | 2,182 | | | | | | | | | | | 944 | 0 | 3,126 | 2,306 |
| 23-Mar-03 | Sun | WE | 2,664 | | | | | | | | | | | 786 | 0 | 3,450 | 2,376 |
| 24-Mar-03 | Mon | WD | 19,832 | | | | | | | | | | | 7,208 | 0 | 27,040 | 26,531 |
| 25-Mar-03 | Tue | WD | 19,376 | | | | | | | | | | | 8,068 | 8 | 27,444 | 26,457 |
| 26-Mar-03 | Wed | WD | 17,016 | | | | | | | | | | | 8,208 | 8 | 25,224 | 26,454 |
| 27-Mar-03 | Thu | WD | 18,208 | | | | | | | | | | | 7,358 | 0 | 25,566 | 26,360 |
| 28-Mar-03 | Fri | WD | 16,628 | | | | | | | | | | | 6,860 | 0 | 23,488 | 26,274 |
| 29-Mar-03 | Sat | WE | 1,366 | | | | | | | | | | | 1,016 | 0 | 2,382 | 2,492 |
| 30-Mar-03 | Sun | WE | 1,704 | | | | | | | | | | | 1,006 | 0 | 2,710 | 2,520 |
| 31-Mar-03 | Mon | WD | 18,902 | | | | | | | | | | | 7,396 | 0 | 26,298 | 26,254 |
| 01-Apr-03 | Tue | WD | 20,302 | | | | | | | | | | | 7,854 | 2 | 28,156 | 26,167 |
| 02-Apr-03 | Wed | WD | 20,126 | | | | | | | | | | | 7,586 | 0 | 27,712 | 26,165 |
| 03-Apr-03 | Thu | WD | 18,904 | | | | | | | | | | | 7,586 | 0 | 26,490 | 26,206 |
| 04-Apr-03 | Fri | WD | 17,632 | | | | | | | | | | | 7,682 | 0 | 25,314 | 26,213 |
| 05-Apr-03 | Sat | WE | 1,540 | | | | | | | | | | | 892 | 0 | 2,432 | 2,573 |
| 06-Apr-03 | Sun | WE | 2,322 | | | | | | | | | | | 902 | 0 | 3,224 | 2,585 |
| 07-Apr-03 | Mon | WD | 18,134 | | | | | | | | | | | 7,146 | 0 | 25,280 | 26,342 |
| 08-Apr-03 | Tue | WD | 19,292 | | | | | | | | | | | 7,784 | 3 | 27,076 | 26,273 |
| 09-Apr-03 | Wed | WD | 21,700 | | | | | | | | | | | 8,450 | 0 | 30,150 | 26,326 |
| 10-Apr-03 | Thu | WD | 20,660 | | | | | | | | | | | 8,572 | 0 | 29,232 | 26,512 |
| 11-Apr-03 | Fri | WD | 17,988 | | | | | | | | | | | 7,462 | 0 | 25,450 | 26,677 |
| 12-Apr-03 | Sat | WE | 1,686 | | | | | | | | | | | 1,142 | 0 | 2,828 | 2,755 |
| 13-Apr-03 | Sun | WE | 1,550 | | | | | | | | | | | 868 | 0 | 2,418 | 2,823 |
| 14-Apr-03 | Mon | WD | 20,296 | | | | | | | | | | | 7,658 | 0 | 27,954 | 26,785 |
| 15-Apr-03 | Tue | WD | 23,819 | | | | | | | | | | | 8,090 | 0 | 31,909 | 26,796 |
| 16-Apr-03 | Wed | WD | 25,353 | | | | | | | | | | | 7,894 | 2 | 33,247 | 26,997 |
| 17-Apr-03 | Thu | WD | 22,845 | | | | | | | | | | | 7,636 | 0 | 30,481 | 27,260 |
| 18-Apr-03 | Fri | WD | 13,569 | | | | | | | | | | | 6,020 | 1 | 19,589 | 27,360 |
| 19-Apr-03 | Sat | WE | 1,527 | | | | | | | | | | | 906 | 0 | 2,433 | 2,821 |
| 20-Apr-03 | Sun | WD | 1,236 | | | | | | | | | | | 698 | 0 | 1,934 | 2,735 |
| 21-Apr-03 | Mon | WD | 23,166 | | | | | | | | | | | 7,626 | 2 | 30,792 | 27,155 |
| 22-Apr-03 | Tue | WD | 20,697 | | | | | | | | | | | 8,780 | 0 | 29,477 | 27,343 |
| 23-Apr-03 | Wed | WD | 21,341 | | | | | | | | | | | 8,370 | 1 | 29,711 | 27,444 |
| 24-Apr-03 | Thu | WD | 17,860 | | | | | | | | | | | 8,656 | 25 | 26,516 | 27,669 |
| 25-Apr-03 | Fri | WD | 18,352 | | | | | | | | | | | 7,906 | 1 | 26,258 | 27,716 |
| 26-Apr-03 | Sat | WE | 1,438 | | | | | | | | | | | 1,074 | 0 | 2,512 | 2,545 |
| 27-Apr-03 | Sun | WE | 1,620 | | | | | | | | | | | 862 | 0 | 2,482 | 2,561 |
| 28-Apr-03 | Mon | WD | 24,251 | | | | | | | | | | | 7,598 | 0 | 31,849 | 27,855 |
| 29-Apr-03 | Tue | WD | 24,704 | | | | | | | | | | | 8,996 | 3 | 33,700 | 28,132 |
| 30-Apr-03 | Wed | WD | 23,554 | | | | | | | | | | | 8,218 | 2,097 | 31,772 | 28,409 |
| 01-May-03 | Thu | WD | 18,970 | | | | | | | | | | | 8,618 | 8,550 | 27,588 | 28,612 |
| 02-May-03 | Fri | WD | 16,348 | | | | | | | | | | | 7,602 | 7,602 | 23,950 | 28,667 |
| 03-May-03 | Sat | WE | 1,506 | | | | | | | | | | | 916 | 916 | 2,422 | 2,533 |

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | | | | | | | (DRAFT) EOP-OA-OCIO - For Official Use Only | | | | | | | | | | |

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-May-03 | Sun | WE | 1,344 | | | | | | | | | | | 966 | 966 | 2,310 | 2,532 |
| 05-May-03 | Mon | WD | 22,794 | 724 | | | | | | | | | | 8,602 | 9,326 | 32,120 | 28,599 |
| 06-May-03 | Tue | WD | 24,492 | 1,053 | | | | | | | | | | 9,122 | 10,182 | 34,667 | 28,941 |
| 07-May-03 | Wed | WD | 22,132 | 1,310 | | | | | | | | | | 8,472 | 9,782 | 31,914 | 29,321 |
| 08-May-03 | Thu | WD | 23,744 | 2,060 | | | | | | | | | | 15,904 | 17,974 | 41,708 | 29,409 |
| 09-May-03 | Fri | WD | 18,564 | 1,952 | | | | | | | | | | 9,130 | 11,091 | 29,646 | 30,033 |
| 10-May-03 | Sat | WE | 1,890 | 110 | | | | | | | | | | 1,156 | 1,266 | 3,156 | 2,417 |
| 11-May-03 | Sun | WE | 1,672 | 120 | | | | | | | | | | 988 | 1,108 | 2,780 | 2,458 |
| 12-May-03 | Mon | WD | 22,364 | 3,188 | | | | | | | | | | 8,268 | 11,469 | 33,820 | 30,243 |
| 13-May-03 | Tue | WD | 22,978 | 3,124 | | | | | | | | | | 8,846 | 11,976 | 34,948 | 30,536 |
| 14-May-03 | Wed | WD | 23,492 | 2,864 | | | | | | | | | | 8,028 | 10,894 | 34,384 | 30,588 |
| 15-May-03 | Thu | WD | 20,986 | 2,434 | | | | | | | | | | 7,576 | 10,028 | 30,996 | 30,745 |
| 16-May-03 | Fri | WD | 19,280 | 2,578 | | | | | | | | | | 9,421 | 12,003 | 31,279 | 30,770 |
| 17-May-03 | Sat | WE | 1,970 | 264 | | | | | | | | | | 1,437 | 1,705 | 3,671 | 2,504 |
| 18-May-03 | Sun | WE | 1,722 | 256 | | | | | | | | | | 1,533 | 1,789 | 3,511 | 2,658 |
| 19-May-03 | Mon | WD | 22,954 | 3,308 | | | | | | | | | | 11,405 | 14,717 | 37,667 | 31,355 |
| 20-May-03 | Tue | WD | 22,050 | 3,132 | | | | | | | | | | 12,787 | 15,929 | 37,969 | 31,699 |
| 21-May-03 | Wed | WD | 20,304 | 2,794 | | | | | | | | | | 12,678 | 15,479 | 35,776 | 32,123 |
| 22-May-03 | Thu | WD | 20,724 | 2,840 | | | | | | | | | | 13,362 | 16,202 | 36,926 | 32,427 |
| 23-May-03 | Fri | WD | 16,414 | 2,244 | | | | | | | | | | 11,085 | 13,333 | 29,743 | 32,947 |

NSA's Mot. [58], Ex. 7 at 1, 4-6.[4]  Simply put, even NSA's representation about "missing

emails" demonstrates that the .pst file stores for the March 1, 2003 to May 22, 2003 period are

complete, wholly removing the stated basis for expanded relief.  For that reason alone, the

Magistrate Judge's recommendations should be denied.

<u>**CONCLUSION**</u>

For the reasons set forth above, in addition to all the reasons set forth in the EOP

defendants' prior objections to the First Report and Recommendation, EOP defendants renew

their objections to the Magistrate Judge's Memorandum Order and First Report and

Recommendation and denial of EOP Defendants' Request for Reconsideration of those

Recommendations [69, 70] and respectfully request that NSA's Emergency Motion to Extend

TRO/Preservation Order and for Depositions [58] be denied.

//


//

---

[4]  Compare to NSA's allegation about missing emails shown in red and yellow.  <u>Id.</u>

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20-Dec-03 | Sat | WE | 583 | | | 48 | | | | | 505 | 420 | | | 1,173 | 1,616 | 8,019 |
| 21-Dec-03 | Sun | WE | 274 | | | 44 | | | | | 527 | 420 | | 244 | 1,112 | 1,553 | 7,568 |
| 22-Dec-03 | Mon | WD | 10,327 | 1,828 | | 334 | | | | | 3,624 | 2,852 | | 6,593 | 11,856 | 24,958 | 58,841 |
| 23-Dec-03 | Tue | WD | 11,363 | 1,369 | | 158 | | | | | 2,825 | 2,026 | | 7,016 | 4,706 | 24,747 | 56,215 |
| 24-Dec-03 | Wed | WD | 4,744 | 492 | | 106 | | | | | 1,264 | 496 | | 4,024 | 1,864 | 11,136 | 52,955 |
| 25-Dec-03 | Thu | FH | 2,001 | 128 | | 34 | | | | | 379 | 252 | | 1,303 | 524 | 4,067 | 7,184 |
| 26-Dec-03 | Fri | WE | 2,270 | 308 | | 70 | | | | | 595 | 518 | | 1,394 | 940 | 6,145 | 6,920 |
| 27-Dec-03 | Sat | WE | 1,519 | 157 | | 78 | | | | | 381 | 310 | | 1,000 | 597 | 3,505 | 5,823 |
| 28-Dec-03 | Sun | WE | 1,695 | 237 | | 46 | | | | | 382 | 272 | | 1,118 | 626 | 3,731 | 5,597 |
| 29-Dec-03 | Mon | WD | 20,775 | 1,608 | | 156 | | | | | 2,522 | 2,362 | | 6,683 | 9,964 | 34,138 | 50,722 |
| 30-Dec-03 | Tue | WD | 24,639 | 1,803 | 18 | 188 | | | | 388 | 2,081 | 1,746 | 15 | 6,311 | 10,311 | 37,189 | 47,244 |
| 31-Dec-03 | Wed | WD | 10,150 | 1,262 | 76 | 130 | | | | 1,200 | | | 25 | 4,590 | 5,753 | 17,439 | 44,596 |
| 01-Jan-04 | Thu | WD | 1,835 | 218 | 2 | 42 | | | | 84 | | | | 713 | 247 | 2,894 | 41,426 |
| 02-Jan-04 | Fri | WD | 10,840 | 1,306 | 82 | 174 | | | | 2,100 | | | 70 | 1,092 | 1,534 | 15,754 | 37,582 |
| 03-Jan-04 | Sat | WE | 1,916 | 249 | 26 | 48 | | | | 298 | | | | | 271 | 2,535 | 5,173 |
| 04-Jan-04 | Sun | WE | 2,408 | 271 | 36 | 36 | | | | 594 | | | 0 | | 290 | 3,143 | 4,586 |
| 05-Jan-04 | Mon | WD | 30,001 | 4,051 | 480 | 432 | | | | 5,408 | 7,374 | 5,235 | 260 | 759 | 4,200 | 53,990 | 34,568 |
| 06-Jan-04 | Tue | WD | 45,297 | 4,847 | 648 | 592 | | | | 5,584 | 7,588 | 5,754 | 990 | 15,316 | 3,892 | 80,716 | 34,032 |
| 07-Jan-04 | Wed | WD | 45,495 | 5,360 | 310 | 340 | | | | 3,232 | 7,440 | 5,133 | 620 | 16,353 | 4,418 | 84,313 | 35,798 |
| 08-Jan-04 | Thu | WD | 29,501 | 12,874 | 2,062 | 428 | | | | 3,112 | 7,880 | 5,250 | 640 | | 2,560 | 62,769 | 37,757 |
| 09-Jan-04 | Fri | WD | | 20,845 | 5,708 | 512 | | | | 3,244 | 6,260 | 4,272 | 630 | 238 | 46 | 41,757 | 38,561 |
| 10-Jan-04 | Sat | WE | 1,935 | 584 | 82 | | | | | 824 | 874 | 618 | 35 | 2,976 | 0 | 7,905 | 3,788 |
| 11-Jan-04 | Sun | WE | 3,720 | 598 | 72 | | | | | 766 | 1,044 | 462 | 35 | 2,266 | 35 | 8,483 | 4,077 |

-8-

Respectfully submitted this 15th day of August, 2008.

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
TAMRA T. MOORE (DC 488392)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 15, 2008, a true and correct copy of the foregoing EOP Defendants' Renewed Local Rule 72.3(b) Objections to the Magistrate Judge's First Report and Recommendation and Denial of EOP Defendants' Request for Reconsideration on Plaintiff NSA's Motion to Extend TRO/Preservation Order was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Helen H. Hong
HELEN H. HONG

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY<br>AND ETHICS IN WASHINGTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXECUTIVE OFFICE OF THE )<br>PRESIDENT, et al., )<br>)<br>Defendants. )<br>_____)<br>NATIONAL SECURITY ARCHIVE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EXECUTIVE OFFICE OF THE )<br>PRESIDENT, et al., )<br>)<br>Defendants. )<br>_____) | Civil Action No: 1:07-cv-01707 (HHK/JMF)<br><br><br><br><br>Civil Action No: 1:07-cv-01577 (HHK/JMF) |

**EOP DEFENDANTS' LOCAL RULE 72.3(b) OBJECTIONS TO THE
MAGISTRATE JUDGE'S FIRST REPORT AND RECOMMENDATION ON
PLAINTIFF NSA's MOTION TO EXTEND TRO/PRESERVATION ORDER**

**INTRODUCTION**

Plaintiff NSA's latest request for expanding the Court's preservation order strays from

the core issues presented in the consolidated complaints.  Although the complaints simply

(1) ask whether defendants should notify the Attorney General of any "unlawful removal . . . or

destruction of records" to initiate recovery action, 44 U.S.C. § 3106, and (2) question whether

defendants' record-keeping practices are adequate under the Federal Records Act ("FRA"),

plaintiff has repeatedly attempted to sidetrack the Court on questions only marginally relevant, if at all, to the issues presented in the complaints.  Indeed, no fewer than twenty-one filings have been exchanged, and five court orders have been issued, in response to motions for temporary injunctive relief, expedited discovery, and expansion of an order already in place.  Each of those voluminous filings boils down to one rather straightforward issue:  even if, as plaintiff alleges, some emails do not now exist in the EOP .pst file stores,[1] has the Court been assured that it will be able to order effective relief later?  The answer is undeniably yes.  The approximately 60,000 (and growing) disaster recovery back-up tapes under court-ordered preservation will allow the Court to order effective relief, if necessary, going forward.

As a result, plaintiff cannot demonstrate the "certain, great and actual" injury necessary to justify additional injunctive relief, Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985), let alone the "extreme or serious damage" required to obtain the mandatory injunction it requests in its Motion to Expand the TRO/Preservation Order [58].  Judicial Watch v. Dep't of Commerce, 501 F. Supp. 2d 83, 91 (D.D.C. 2007).  Thus, the recommendations in the April 24, 2008 First Report and Recommendation ("First Report") that would require the EOP defendants to (1) search for, collect, and copy .pst files through a remote query process from computer workstations and (2) collect any portable media that may contain emails from 2003 to 2005 from personnel at EOP FRA components, are entirely without basis in fact and unsupported in law

---

[1]     "EOP .pst file stores" are the .pst files stored on the EOP Network from the Office of Administration's email "archiving process" described in paragraph 5 of the Declaration of Theresa Payton [48-2].  A "personal storage table," or ".pst" file is the file type used to store electronically selected email messages sent or received via Microsoft Outlook.

under the four-factor test for injunctive relief required by the D.C. Circuit.[2]  A de novo analysis

of NSA's latest motion to expand the terms of the November 12, 2007 order should compel this

Court to reject the two recommendations reached in the "First Report."[3]  See LCvR 72.3(c)

(requiring de novo review of portions of report to which a non-movant objects).  At base,

expansion of the November 12, 2007 order is unjustified.  This Court must therefore deny NSA's

Motion to Extend TRO/Preservation Order and for Depositions [58].

This Court need not consider the recommendations in the First Report now, however,

because the EOP defendants requested on May 5, 2008 that the Magistrate Judge reconsider the

---

[2]     The Magistrate Judge does not in the First Report discuss the four-factor test required for
preliminary injunctive relief, just as NSA failed to address the standard in its motion.  EOP
defendants submit that the Magistrate Judge erred in his analysis, which appears to make the
burden calculus dispositive of the inquiry into the propriety of extraordinary injunctive relief.
That is not the appropriate test.  See also Defs.' Resp. to March 18, 2008 Or. [64] (March 21,
2008).  He fails, for example, to analyze the jurisdictional hurdles set forth in Defendants'
Consolidated Motion to Dismiss.  See Serono Labs, Inc. v. Shalala, 158 F.3d 1313, 1317-18
(D.C. Cir. 1998) (noting that failure to establish a substantial likelihood of success on the merits
"effectively decides the preliminary injunction issue" and vacating preliminary injunction where
plaintiff was not likely to succeed on the merits and the remaining factors were either "a wash"
or "inextricably linked to the merits").  The Magistrate Judge also fails to address that the public
interest is ill-served by imposing onerous burdens on the EOP defendants – taking government
employee time and taxpayer dollars from other pressing needs – and by enmeshing this Court in
the wasteful task of issuing duplicative orders.  Cf. McPeek v. Ashcroft, 202 F.R.D. 31, 34
(D.D.C. 2001) ("When employees are thus diverted from their ordinary duties, the function of
the agency suffers to the detriment of the taxpayers." ).

[3]     For the reasons set forth in the First Report, EOP defendants' opposition to the motion,
EOP defendants' request for reconsideration, and in this filing, the Magistrate Judge
appropriately concluded that expedited discovery and court-supervised depositions are not
justified under the law.  See First Report at 8-9.  EOP defendants do not challenge that
conclusion.  NSA filed limited objections to the Magistrate Judge's recommendation to deny
deposition relief on May 8, 2008 [71].  EOP Defendants intend to respond shortly to NSA's
limited objection because the Magistrate Judge appropriately concluded that no discovery is
permissible.

two recommendations set forth in the First Report, in part based on the additional information

provided to him about the approximately 60,000 disaster recovery back-up tapes (and

continually growing cache of tapes) preserved under the November 12, 2007 Order.  See EOP

Defs.' Responses and Request for Reconsideration [70].  The Magistrate Judge has not yet ruled

on the request for reconsideration.  In order to preserve arguments for appeal, however, see

LCvR 72.3, EOP defendants submit these objections, but respectfully request that the Court

abstain from issuing any order based on the First Report until the Magistrate Judge has had an

opportunity to consider EOP defendants' request for reconsideration.  Indeed, the Magistrate

Judge himself contemplates issuing a Second Report and Recommendation, and judicial

economy would be well-served by having all recommendations before the Court before

considering NSA's motion for preliminary injunctive relief.  See First Report at 4.

## BACKGROUND

I.      **The Federal Records Act**

        In order to put the recommendations of the First Report in context, a brief review of the

Federal Records Act is appropriate.

        The provisions of the FRA were enacted to establish "standards and procedures to assure

efficient and effective records management."  44 U.S.C. § 2902.  Those standards and

procedures were prescribed to attain "[a]ccurate and complete documentation of the policies and

transactions of the Federal Government" and for the "[j]udicious preservation and disposal of

records."  Id. § 2902(1), (5).  Consistent with these goals, the head of each Federal agency is

tasked to "make and preserve records containing adequate and proper documentation of the

organization, functions, policies, decisions, procedures, and essential transactions of the

agency[.]" Id. § 3101. Balanced against these obligations, agency heads are charged to provide for "economical and efficient management of the records of the agency." Id. § 3102. Accordingly, the FRA does not require an agency to "save 'every scrap of paper,'" Armstrong v. EOP, 1 F.3d 1274, 1287 (D.C. Cir. 1993), but simply those "to the extent required to document the organization, functions, policies, decisions, procedures and essential transactions of the agency." 36 C.F.R. § 1220.14 (2002) (emphasis added).

The reach of the FRA depends in part on whether a document is a "record" within the meaning of the FRA. 44 U.S.C. § 3301. Documentary materials are considered "records" subject to preservation when they meet two conditions: they are (1) "made or received by an agency . . . under Federal law or in connection with the transaction of agency business; and (2) are "preserved or are appropriate for preservation as evidence of agency organization and activities or because of the value of the information they contain." See 36 C.F.R. § 1222.34(b). Although electronic mail messages may meet the definition of records, id. § 1222.34(e), emails that are considered "personal papers," like other documents that are personal, do not have to be preserved. Id. § 1222.36 (defining personal records to include "personal correspondence . . . that are not prepared or used for, or circulated or communicated in the course of, transacting Government business," as well as "materials relating solely to an individual's private affairs . . . that do not relate agency business"). Similarly, duplicate or identical copies of documents that have been preserved may be deleted as documents with "no continuing value." See, e.g., id. § 1234.32(d)(2) (any copies of emails remaining in users' in-boxes are considered non-records if a copy has been preserved); § 1222.34 (defining non-records to include duplicates and extra copies of documents).

-5-

To facilitate economical and efficient preservation of records, agency heads and the Archivist are directed by the FRA to promulgate guidelines for disposal of non-records and schedules for records authorized for disposal.  <u>See</u> 44 U.S.C. §§ 3302, 3303, 3303a.  But the FRA does not demand absolute compliance with its prescriptions.  Rather, as the D.C. Circuit "recognize[d], of course, the determination of whether a variety of particular documents or computer entries are, in fact, records must be made by agency staff on a daily basis, and some innocent mistakes are bound to occur.  Consequently, the fact that some record material may have been destroyed does not compel a finding that the guidelines are arbitrary and capricious." <u>Armstrong v. EOP</u>, 924 F.2d 282, 297 n.14 (D.C. Cir. 1991).  Indeed, Congress's command to balance the economies of records management against the interest in preserving records cannot tolerate any alternative conclusion.  <u>See, e.g.</u>, <u>Rogers v. Peck</u>, 199 U.S. 425, 436 (1905) ("Statutes should be given a reasonable construction with a view to make effectual the legislative intent in their enactment.").

The FRA also incorporates enforcement mechanisms for the <u>unlawful</u> removal or destruction of records that should otherwise have been preserved.  <u>See, e.g.</u>, 44 U.S.C. § 3106.  If the head of the agency becomes aware or has reason to believe any "actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency" has occurred, she, along with the Archivist, may "initiate action through the Attorney General for the recovery of records[.]"  <u>Id.</u>  This administrative scheme is exclusive; a court cannot itself order the recovery or retrieval of records that may have been removed or destroyed, but must instead rely on the detailed processes set forth in the FRA and initiated by the agency heads, Archivist and Attorney General.  <u>See</u> <u>Armstrong</u>, 924 F.2d at 294.  Thus, relief under the

-6-

FRA would trigger, at most, obligations for defendants to initiate action through the Attorney

General, see Armstrong, 924 F.2d at 296, who would, in turn, determine what action was

appropriate under the circumstances.  44 U.S.C. § 3106.  A court therefore cannot order the

recovery or retrieval of any records.  Similarly, it follows from the D.C. Circuit's analysis of the

FRA and the Administrative Procedure Act that whether the Attorney General pursues – and

how or from what media he seeks to restore – any missing records is unreviewable as a matter

committed to his sole discretion.  See Heckler v. Chaney, 470 U.S. 821, 833 (1985); 5 U.S.C.

§ 701(a)(2).

## II.    Plaintiff's Motion and the Magistrate Judge's Memorandum Order and First Report and Recommendation

Against the backdrop of the FRA's actual requirements and the nature of the remedy it

provides, plaintiff's focus on the intricacies of technical questions about slack space, forensic

copying, remote querying, .pst files on computer workstations, and the like misses the mark.

The only material question on preliminary injunctive relief before the Court is an "extremely

narrow" one about the Court's ability, if necessary, to afford effective relief on the merits.  Or.

[11] at 2 (Oct. 19, 2007).  This question has been addressed – on numerous occasions – and

resolved by the Court's November 12, 2007 Order.  See also Defs' Opp'ns and Resps. to Court

Ors. at Dkt. Nos. 5, 12, 16, 48, 60, 61, 64, 65.  The approximately 60,000 (and growing) disaster

recovery back-up tapes in the Office of Administration's "possess[ion] or . . . custody or

control," Or. [18] at 2 (Nov. 12, 2007), "should contain substantially all the emails sent or

received in the 2003-2005 time period," Decl. of Theresa Payton [48-2] ¶ 12(d) (Jan. 15, 2008)

("Payton Decl."), and are under Court-ordered preservation.  The Court has thus satisfied any

-7-

need to ensure for itself the ability to afford effective future relief, and that should be the end of the matter.  See, e.g., Elec. Frontier Found. v. U.S. Dep't of Justice, 517 F. Supp. 2d 111, 117 (D.D.C. 2007) (presumption of good faith in agency declarations).

Notwithstanding, on March 11, plaintiffs CREW and NSA requested additional emergency relief, contending that Ms. Payton's declaration was inconsistent with her earlier-sworn testimony provided before the Committee on Oversight and Government Reform on February 26, 2008.  See, e.g., Pl. CREW's Mot. for Or. to Show Cause [57]; Pl. NSA's Emergency Mot. for TRO [58].  Plaintiffs each alleged, in some form, that OA knew emails were missing from the EOP .pst file stores and were not contained on backup tapes, and that OA was destroying, or permitting destruction of, other potential repositories of such emails.[4]  See, e.g., NSA Em. Mot. [58] at 2.

Although EOP defendants established that plaintiffs' doubts were unsupported and contradicted by the record, see Defs.' Opp'n to NSA's Emergency Mot. [60]; Defs.' Opp'n to Mot. to Show Cause [61], and that the disaster recovery tapes resolved any concerns about the Court's ability to afford relief, this Court ordered the EOP defendants to show cause "why it should not be ordered to create and preserve a forensic copy of any media that has been used or

---

[4]     For their allegations, plaintiffs appear to rely upon the unsworn written statements of Mr. Steven McDevitt, a former OA employee, and a chart prepared by Mr. McDevitt that purportedly reflects the days for which emails are missing from EOP .pst file stores for various components.  Plaintiffs do not acknowledge the manifestly incomplete nature of Mr. McDevitt's own work, which appears to identify "missing days" without categorizing by component hundreds of thousands of email messages within the relevant time period.  More importantly, in recommending the drastic and exceptional preliminary relief sought here, the Magistrate Judge appears to have ignored altogether the efforts of the OA—currently underway—to account for all emails through an exhaustive inventorying of the electronic email .pst file stores.  See 3d Payton Decl., Ex. 1.

-8-

is being used by a former or current employee who was employed at any time between March

2003 and October 2005."  Mem. Or. [62] (March 18, 2008).  Within three days, the EOP

defendants submitted the Supplemental Declaration of Theresa Payton, showing that forcing OA

to make forensic copies of computer workstations would be extremely burdensome, would not

yield a commensurate benefit, and that further relief was unwarranted.  See EOP Defs.' Resp. to

March 18, 2008 Or. [64].  Plaintiff NSA responded to the Supplemental Declaration, claiming

that Ms. Payton's statements were not truthful, complete or accurate, and submitting a

declaration by a purported e-discovery "expert" who had no apparent personal knowledge of OA

practices or policies and no apparent expertise in governmental issues not found in the

commercial sector.[5]  See NSA's Resp. to Or. [65]; Declaration of Al Lakhani ("Lakhani Decl.").

---

[5]      For the reasons discussed below, this Court should disregard and strike the Lakhani
Declaration submitted by NSA on March 25, 2008 [65-3] ("Lakhani Decl.").  Mr. Lakhani lacks
any personal knowledge of the Office of Administration's practices or policies.  Mr. Lakhani
avers, for example, that he does "not believe that all emails sent or received between October
2003 and October 2005 could be preserved on backup tapes[.]" Lakhani Decl. ¶ 6.  Mr. Lakhani
provides such testimony "based on [his] personal knowledge," despite his lack of personal
involvement with the creation of disaster recovery tapes for the 2003-2005 time period, lack of
access to the disaster recovery tapes, and absence of discussions with anyone within the Office
of Administration or the Office of the Chief Information Officer ("OCIO").  Accordingly,
Mr. Lakhani's speculation should be given no weight, especially in light of Ms. Payton's
unequivocal statements – based on discussions with her staff and personal knowledge gained in
her role as the Chief Information Officer for the Office of Administration – that the "backup
tapes should contain substantially all the emails sent or received in the 2003-2005 time period."
Payton Decl. ¶ 12(d); see also Kos Pharm. v. Andrx Corp., 369 F.3d 700, 719 (3d. Cir. 2004)
("District courts must exercise their discretion in 'weighing all the attendant factors, including
the need for expedition,' to assess whether, and to what extent, affidavits or other hearsay
materials are 'appropriate given the character and objectives of the injunctive proceeding.'")
(internal citation omitted).

In the First Report, the Magistrate Judge recommends substantially more.  First, he recommends that the "EOP be ordered to <u>search</u> the workstations, and any .pst files located therein, of any individuals who were employed between March 2003 and October 2005, and to <u>collect</u> and <u>preserve</u> all e-mails sent or received between March 2003 and October 2005."  First Report at 6 (emphases added).  He contemplates a "remote query" process for the collection, and then in-house copying of all located .pst files.  <u>Id.</u> at 5 ("Workstation Recommendation").  Second, he recommends an order requiring EOP to collect "any media" in its employees' possession that "may contain e-mails sent or received between March 2003 and October 2005, and for EOP to collect and preserve all such media."[6]  <u>Id.</u> at 7 ("Collection Notice Recommendation").

## <u>ARGUMENT</u>

The First Report recommends that EOP defendants locate, collect, take charge of, <u>copy</u> and preserve any email data – even if that data is likely already contained in the .pst file stores and stored on the disaster recovery back-up tapes, may still be in user in-boxes, could be quadruplicate copies, and may not even be federal records.  That search would appear to seek an "awfully expensive needle to justify searching a haystack."[7]  <u>McPeek v. Ashcroft</u>, 202 F.R.D. 31,

---

[6]    The Magistrate Judge further contemplates ordering in a Second Report "forensic copying" of computer workstations in use between 2003 and 2005, to trawl for any residual data of emails created or received in that time frame, even though EOP defendants explained that it is unlikely that forensic copying will be of <u>any</u> marginal benefit.  <u>See id.</u> at 4.  EOP defendants were ordered to submit answers to three additional questions by May 5, 2008.  EOP Defendants provided a declaration on May 5, the contents of which are incorporated here in full.

[7]    This is particularly so given defendants' pending motion to dismiss on threshold justiciability and jurisdictional grounds, and given that plaintiffs' allegations of missing emails therefore remain just that:  mere allegations.

34 (D.D.C. 2001).  The utility to be gained, if any, from the email data harvest is marginal at best because the 60,000 (and growing) disaster recovery back-up tapes dating back to May 23, 2003 should contain the email data from 2003 (and before) through 2005 (and after).  See Third Declaration of Theresa Payton ("3d Payton Decl.") [69] ¶¶ 9-11.

Further, even the FRA has not been held to require perfect, 100% preservation of all email records.  See Armstrong, 924 F.2d at 297 n.14.  And the FRA does not require that quadruplicate, triplicate or even mere duplicate copies of emails be preserved and maintained once a copy has been preserved.  Nor does the FRA require preservation of all email messages, whether personal or not, if they are not records within the meaning of the FRA.  Yet plaintiffs' continuing demands and the Magistrate Judge's questions, orders and First Report, suggest that EOP defendants must hunt down and harvest each and every byte of email data that may exist from the 2003 through 2005 time period.  These petitions are made even though the disaster recovery back-up tapes should contain substantially all relevant emails, and even though plaintiff has not established that the .pst file stores of the emails themselves are deficient.  And these demands have been lodged without regard for whether the bytes of data contain a quadruplicate copy of or a personal message that is not required to be preserved under the FRA.  Because the FRA provides room for "innocent mistakes" in records preservation in the first instance, Armstrong, 924 F.2d at 297 n.14, and does not require preservation of duplicates, it is patently unreasonable to require perfect (and indeed multiply-redundant) Court-ordered preservation of all bytes of email data as backups now.  The disaster recovery back-up tapes suffice.

The problems presented by the recommendations in the First Report are heightened because the Magistrate Judge would require the EOP defendants to remotely query current

workstations for .pst files and require employees to "surrender" all portable media, so that the EOP defendants may copy and preserve or maintain any email data themselves. See First Report at 7. The First Report never explains why preservation notices would be inadequate, particularly when the Magistrate Judge himself suggests that a duty to preserve may be fulfilled by issuing a "written legal hold (including a preservation notice to persons likely to have relevant information)." First Report at 7 n.6. These proposed burdens are only magnified when considering the time these tasks would take away from the EOP defendants' other pressing tasks, and plaintiff's continuing attempts to trench on the important prerogatives of Executive Branch components. Cf. Loving v. United States, 517 U.S. 748, 757 (1996) ("[I]t remains a basic principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another."). The FRA does not require the imposition of such onerous burdens, and particularly so when the Court's concerns about affording relief have already been addressed. Most fundamentally, the D.C. Circuit's stringent test for injunctive relief unambiguously rejects it. See, e.g., Emily's List v. Fed. Election Comm'n, 362 F. Supp. 2d 43, 51 (D.D.C. 2005) (preliminary injunction "is considered an extraordinary remedy" that should "be granted only upon a clear showing of entitlement").

The continuing excursions to gather any and all bytes of email data – and incursions on EOP defendants' limited resources – cannot be characterized as benign or to materially advance the Court's stated purpose for issuing any injunction. Compare Report and Recommendation [11] at 3 (Oct. 19, 2007) ("[T]he injunction will not injure the government or burden it in any way."). EOP defendants respectfully urge this Court to reject the recommendations in the First Report and to remain faithful to the strict test for affording extraordinary injunctive relief.

**I.    The November 12, 2007 Order Alleviates Any Potential Irreparable Harm Required to Justify Additional Injunctive Relief**

The D.C. Circuit requires reversal of orders granting preliminary injunctions where "the record does not show with any clarity" that irreparable harm will result.  See District, 412 F.R.D. at 167 (reversing grant of preliminary injunction for inadequate showing of irreparable injury). Not only is there a lack of "clarity" that irreparable harm will result here, there is an unambiguous declaration to the contrary.  But lest there remain any doubt, EOP defendants reiterate: "emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes."  Payton Decl. ¶ 12(c).[8]  This is true even though the emails may still be maintained in user in-boxes, are likely to have been stored in the .pst file stores, and though some emails may not even constitute "records" under the FRA.  This Court-ordered preservation of the set of disaster recovery back-up tapes, therefore, provides ample protection.  As explained above, the FRA requires no more and plaintiffs' complaints support no further relief.

Any confusion about what back-up tapes are being preserved by the Office of Administration is easily clarified.[9]  See First Report at 8.  In October 2003, the Office of

---

[8]    See also id, ¶ 12(d); Defs.' Opp'n to NSA's Emergency Motion to Extend TRO [60] at 5-6; Defs.' Opp'n to CREW's Mot. to Show Cause [61] at 18-19 (explaining that back-up tapes should contain all emails sent or received between 2003-2005); EOP Defs.' Resp. to March 18, 2008 Or. to Show Cause [64] at 4-6; NSA Mot., Ex. 4 (Hr'g Tr. at 121:2862-124:2937 ("certainly, with the backups, we have every reason to believe at this point that we will be able to get the documents we seek").

[9]    The recommendations in the First Report rise and fall on the validity of the Court's assumption that the disaster recovery backup tapes do not contain email data from March 2003 to October 2003.  See First Report at 7.  Because EOP defendants make clear that the universe of back-up tapes covered by the November 12, 2007 Order should contain emails sent or received between March 2003 and October 2003, the recommendations necessarily fall.  See 3d Payton Decl. ¶¶ 9-11.  Indeed, to the extent the Magistrate Judge continued to have questions about the

Administration stopped recycling disaster recovery back-up tapes.  Payton Decl. ¶ 12c.  Thus all

tapes that were in the Office of Administration's possession in October 2003, which includes

tapes to which data was written as early as May 23, 2003, have been – and will continue to be –

preserved.  See 3d Payton Decl. ¶¶ 9-11.  And as discussed more fully in EOP defendants'

response to the third question of the First Report submitted May 5, see EOP Defs.' Resp. [69],

there are approximately 438 disaster recovery back-up tapes to which data was written between

May 23, 2003 and September 29, 2003.  Id. ¶ 11.  And because NSA's allegations about missing

emails for the March 2003 to October 2003 time period identifies only one day – September 12,

2003 – as a day with potentially "no email counts," and even then only for a PRA entity that is

not subject to suit here, any concerns about "gaps" or "missing backup tapes" are unfounded.[10]

See EOP Defs.' Resp. [64] at 5.

      Significantly, moreover, by the very nature of the disaster recovery backup tapes used by

OA during this relevant time period, email information predating even March 2003 should be

contained on the existing library of disaster recovery back-up tapes.  That is because disaster

recovery back-up tapes capture the "files saved on the server, such as, for example, email

---

contents of the back-up tapes, it was inappropriate to impose the burdens of preserving
alternative potential repositories of emails without first clarifying any confusion.  The proper
course thus would have been to clarify the questions, only then determine whether alternative
orders would have been necessary, and finally to make recommendations about the appropriate
course.

[10]    Even for the FRA components that plaintiff alleges have an abnormally low email count
for certain days within this time period in August 2003, the emails may well be within the
hundreds of thousands of emails not previously categorized by component on the McDevitt
chart, but which have been identified through OA's ongoing multi-phase .pst file inventory
process.

databases and/or email environment information."  Payton Decl. ¶ 6.  The purpose of the disaster

recovery back-up tapes, therefore, is to create a snapshot that "captures all email information

present on the EOP Network in the journals, the .pst archives, and the customer mailboxes at the

time the back-up is created."  Id. ¶ 7.  A full set of disaster recovery backup tapes created in

October 2003, for instance, should contain email information present on the EOP network,

including Exchange servers, at the time of the backup, whatever their creation date.  Such a

backup should also include email messages residing in a user's inbox, sent folder, trash box,

folders saved in the mailbox, as well as email information in the journals and .pst files stores.

Accordingly, the disaster recovery backup process in use by EOP is not designed to capture just

that email information created during the 24 hours preceding a backup, or since the last full set

of backup tapes were created, but should capture emails sent or received in March 2003, for

example, still residing on the EOP network in October 2003.  See 3d Payton Decl. ¶ 12.  At base,

identifying a date on which data was last written to a disaster recovery back-up tape does not

determine what time period of data is captured on such a tape, because the tape will capture

earlier-created data that is present on the EOP Network at the time of the back-up.

       Thus, the existence of email information predating the date of creation of a tape on the

existing library of disaster recovery back-up tapes should allay concerns about "missing" emails

being unavailable on the disaster recovery back-up tapes in the event that the Court should

ultimately find relief warranted.  Plaintiff's concern about the absence of tapes created between

March 2003 and October 2003 is therefore unfounded.  Plaintiff and this Court should be assured

that the disaster recovery back-up tapes being preserved will provide an opportunity for full

relief if warranted – which would be limited, in any event, to an order requiring defendants to initiate action through the Attorney General.

## II. EOP Defendants' Objections to the Workstation Recommendation and the Collection Notice Recommendation

For all the reasons set forth above, expanding the scope of the November 12, 2007 Order is improper because plaintiff cannot establish irreparable harm. EOP defendants therefore object to the Workstation and Collection Notice Recommendations. See First Report at 4-7. Any search for and collection of .pst files on hard-drives or portable media is unwarranted because the disaster recovery back-up tapes contain email information sufficient to obviate any claims of harm.[11] Because the absence of irreparable injury, alone, is adequate to deny preliminary relief, see Wisc. Gas Co., 758 F.2d at 674, the Court is not required to analyze the other three factors in determining the propriety of injunctive relief.

Nonetheless, it is evident that the burdens that would be imposed by the Workstation and Collection Notice Recommendations would be significant. The First Report suggests that the "burden on EOP to conduct" a "focused and automated" search for .pst files and then to "copy .PST files located therein" would impose minimal burdens in "terms of cost, labor, and employee downtime."[12] First Report at 5. That is simply not so. The process for the Workstation

---

[11] To seek this relief, plaintiff would have to show "clearly" (1) that e-mails were not properly archived in the March 2003 to October 2005 time frame; (2) that those e-mails are absent from disaster recovery tapes for that period; and (3) that the hard drives will bear that e-mail information. Plaintiff altogether fails to do so. Even then, as established above, recovery and retrieval of information is not appropriate relief for the Court to provide.

[12] For this conclusion, the Court relies in part on the Lakhani Declaration, which was offered by Mr. Lakhani without any personal knowledge of the Office of Administration's technical capabilities and system. Mr. Lakhani's estimations about the costs and burdens

-16-

Recommendation alone is extensive and time consuming. These proposed burdens are only magnified when considering the time these tasks would take away from the EOP defendants' other pressing tasks. McPeek, 202 F.R.D. at 34 ("When employees are thus diverted from their ordinary duties, the function of the agency suffers to the detriment of the taxpayers."). Without doubt, some employees, including the OCIO leadership team, would be diverted from their pressing and important tasks of providing EOP components with unified enterprise services, coordination of compliance for mandated compliance programs, and safeguarding the EOP Network. See Payton Decl. ¶ 4; 3d Payton Decl. ¶ 8. The responsibilities of OCIO personnel are already extensive. This is especially true as the Presidential transition approaches. See 3d Payton Decl. ¶¶ 3, 14. In addition to considerations of diversion of resources, which are obviously immense, costs required by the Court's recommendation may include, at the least, obtaining additional electronic storage capacity for .pst files that would be copied and stored.

Similarly, requiring employees to give up portable media devices may require employees to alter their working practices. The recommendation covers any portable media, whether a laptop, external hard drive, flash drive or floppy disk. Requiring employees to surrender that media could impose significant administrative burdens and hinder their ability to provide effective service as a government employee. The EOP defendants, too, would potentially have to bear storage and inventorying burdens of collecting the external media from its employees,

---

associated with forensic imaging, copying and write-block copying are inaccurate. Lakhani Decl. ¶¶ 20-26. Mr. Lakhani's estimates appear to be associated with private, commercial applications, rather than the efforts required to copy files for computer workstations connected to the sensitive EOP Network.

copying and returning the media so the employees continue to have access to their data, and safeguarding it during the pendency of the litigation.[13]

Even a minimal burden would be outweighed by the absence of any utility to be gained from the recommended .pst file harvesting and copying process, or the recommended portable media collection. As explained above, these media are likely to be triplicate or quadruplicate copies of emails already contained in the .pst files stores and on the disaster recovery back-up tapes. And even then, it is unknown whether the .pst files would contain emails that are considered records, as opposed to personal files not subject to preservation under the FRA.

If the Court were to conclude that preserving .pst files on computer workstations and on portable media was proper – a conclusion wholly unsupported by the record and contradicted by the facts – requiring the EOP defendants to harvest and copy over the files themselves is unprecedented. Indeed, it would contradict the well-established rule that "[a]n injunction should be narrowly tailored to remedy the specific harm shown." Aviation Consumer Action Project v. Washburn, 535 F.2d 101, 108 (D.C. Cir. 1976). Although unwarranted, periodic instructions to EOP defendant employees to preserve any .pst files would adequately address any concerns about "losing" .pst files (however irrelevant or immaterial).

Finally, requiring harvesting and copying of .pst files would exceed the jurisdictional bounds of the FRA. The Magistrate Judge contends that he is maintaining the status quo by ensuring that the "res – i.e., e-mails – are not deleted prior to the resolution of defendants'

---

[13]     Of course, those burdens depend on the number of employees who have portable media devices containing .pst files of emails between March 2003 and October 2005. But any incremental burden, given the minimal benefit, is too much burden to support plaintiff's instant request.

dispositive motions," but it is likely that there is no additional "res" to protect here.  First Report

at 2.  As an initial matter, the disaster recovery back-up tapes adequately assure the Court that it

will be able to effective relief.  Therefore, under the FRA, any of the .pst files that constitute

duplicate copies of emails are not to be considered records (and therefore "res") under the FRA.

Moreover, as set forth in defendants' motion to dismiss, any Court order requiring the <u>retrieval</u>

of records exceeds the permissible scope of judicial relief under the FRA.  <u>See</u> Defs.' Mot. to

Dismiss at 12-13.  The Court of Appeals has held that the FRA precludes APA claims seeking

this sort of injunctive relief because under the FRA such relief can be sought, if at all, <u>only by</u>

<u>the government</u> through the FRA's detailed and exclusive administrative enforcement system.

<u>See</u> <u>Armstrong v. Bush</u>, 924 F.2d 282, 294 (D.C. Cir. 1991).  Only if the Attorney General

initiates action may the Attorney General determine what repository of email information – if

any – he will consult for any restoration or retrieval of records.  Plaintiff's motion and the

recommendations in the First Report would, in effect, have this Court "jump the gun" by

accumulating information now.

//


//


//


//


-19-

## CONCLUSION

For the reasons set forth above, EOP defendants object to the Magistrate Judge's

Memorandum Order and First Report and Recommendation and respectfully request that NSA's

Emergency Motion to Extend TRO/Preservation Order and for Depositions [58] be denied.

Respectfully submitted this 12th day of May, 2008.

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
TAMRA T. MOORE (DC 488392)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2008, a true and correct copy of the foregoing EOP
Defendants' Local Rule 72.3(b) Objections to the Magistrate Judge's First Report and
Recommendation on Plaintiff NSA's Motion to Extend TRO/Preservation Order was served
electronically by the U.S. District Court for the District of Columbia Electronic Document Filing
System (ECF) and that the document is available on the ECF system.


/s/ Helen H. Hong_____
HELEN H. HONG

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY | ) | |
| AND ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| | ) | |
| EXECUTIVE OFFICE OF THE | ) | |
| PRESIDENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NATIONAL SECURITY ARCHIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:07-cv-01577 (HHK/JMF) |
| | ) | |
| EXECUTIVE OFFICE OF THE | ) | |
| PRESIDENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**EOP DEFENDANTS' REPLY IN SUPPORT OF LOCAL RULE 72.3(b) OBJECTIONS
TO THE MAGISTRATE JUDGE'S FIRST REPORT AND RECOMMENDATION
ON PLAINTIFF NSA'S MOTION TO EXTEND TRO/PRESERVATION ORDER**

In EOP defendants' Local Rule 72.3(b) Objections [72], EOP defendants respectfully

requested that this Court refrain from considering the recommendations provided in the First

Report given that the Magistrate Judge has expressly contemplated issuing a Second Report and

Recommendation on NSA's motion for preliminary injunctive relief.  In their opposition briefs,

neither NSA nor CREW appears to contest EOP defendants' request that the Court refrain from

issuing any partial adjudication of NSA's motion.  The arguments raised by NSA (and addressed

by EOP defendants in their reply brief in support of their request for reconsideration) serve only to underscore that judicial economy would be well-served by having all recommendations before the Court before considering NSA's motion.

To the extent the Court nonetheless considers issuing a partial order on NSA's motion based on the Magistrate Judge's First Report, EOP defendants respectfully refer this Court to the reply brief filed in support of their request for reconsideration, attached as Exhibit 1 here. As shown in the objections [72] and the reply brief attached as Exhibit 1, NSA's Motion to Extend TRO/Preservation Order [58] must be denied in its entirety.

Respectfully submitted this 30th day of May, 2008.

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
TAMRA T. MOORE (DC 488392)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C. 20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 30, 2008, a true and correct copy of the foregoing EOP

Defendants' Reply in Support of Local Rule 72.3(b) Objections to the Magistrate Judge's First

Report and Recommendation on Plaintiff NSA's Motion to Extend TRO/Preservation Order was

served electronically by the U.S. District Court for the District of Columbia Electronic

Document Filing System (ECF) and that the document is available on the ECF system.


/s/ Helen H. Hong

HELEN H. HONG

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| NATIONAL SECURITY ARCHIVE, <br><br> Plaintiff, <br><br> v. <br><br> EXECUTIVE OFFICE OF THE PRESIDENT, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No: 1:07-cv-01577 (HHK/JMF) |

## EOP DEFENDANTS' REPLY IN SUPPORT OF REQUEST FOR RECONSIDERATION BY THE MAGISTRATE JUDGE OF HIS FIRST REPORT AND RECOMMENDATION

### INTRODUCTION

The Court obviated any concern about an inability to provide effective relief on the merits by ordering on November 12, 2007, preservation of the disaster recovery back-up tapes in EOP defendants' possession or under their custody or control. As EOP defendants have repeatedly explained, in briefs and through sworn declarations, the Office of Administration is preserving approximately 60,000 disaster recovery back-up tapes pursuant to the November 12 Order. The number of tapes continues to grow as more tapes are created through the normal

disaster recovery back-up process, and this library of tapes should contain substantially all emails sent or received from 2003 to the present. As a result, those tens of thousands of tapes provide security for the Court that, if required, the Attorney General is assured of a repository of back-up data for the purpose of restoring any allegedly missing email. That security alone precludes the showing of irreparable harm required to justify the additional mandatory injunctive relief requested by NSA. See EOP Defs.' Resp. [69] at 9-12; EOP Defs.' Obj. [72] at 13-16.

In an attempt to support its request for relief, NSA, in effect, pretends that the Court never issued the November 12, 2007 Order.[1]  But an appropriate analysis of irreparable harm for the purposes of NSA's motion for *additional* injunctive relief cannot be determined in isolation and must account for protections afforded by preservation of back-up media pursuant to the November 12 Order.  NSA may not rely on any pre-November 12, 2007 accounting of potential harm – as it attempts to do in its opposition briefing – because the circumstances are markedly changed: An ever-growing cache of disaster recovery back-up tapes that should contain substantially all emails from the period of time plaintiffs reference in this case, and more, are being preserved for future use, if appropriate.  In short, whatever the merits of plaintiff's fears of irreparable harm *pre*-November 12, those fears simply do not persist in the *post*-November 12,

---

[1]        CREW inexplicably submitted a purported "Opposition to Defendants' Motion for Reconsideration" [74], even though it had not filed a separate motion seeking any expansion of the November 12 Order and had not joined in NSA's emergency motion.  CREW's filing therefore amounts to an unsolicited additional brief, submitted absent any request for leave to file.  CREW's "opposition" must be stricken as a result.  Because CREW largely repeats what NSA argues in its opposition, EOP defendants provide references to CREW's opposition briefing in this Reply.  By doing so, however, EOP defendants do not waive their argument that CREW's filing is impermissible and amounts to a unilateral attempt by plaintiffs to expand their page limitations and file redundant briefing.

2007 context.  Thus no "law of the case" relying on pre-November 12 analyses of harm can compel the issuance of further relief now.

The majority of NSA's opposition is therefore easily refuted.  By recasting the EOP defendants' briefing [69, 72] to focus on asserted injury pre-November 12, NSA sets up a phantom framework for analyzing the irreparable harm required to justify additional, extraordinary preliminary relief.  See, e.g., NSA Opp'n [73] at 20.  Because NSA does not appropriately analyze the present potential for "irreparable harm" and instead relies on possible harm absent the issuance of the November 12 Order, NSA fails to justify with evidence of "extreme or serious damage" its request for the Workstation and Collection Notice Recommendations set forth in the First Report.  Judicial Watch v. Dep't of Commerce, 501 F. Supp. 2d 83, 91 (D.D.C. 2007).  For that reason, NSA's Motion to Extend TRO/Preservation Order and for Depositions [58] must be denied.

In the lone two pages of its opposition brief that NSA commits to discussing any "evidence" of irreparable harm to expand the scope of the November 12 Order, NSA fails to make the "greater . . . necessary showing" of harm to seek "the greater . . . scope of relief demanded."  Disability Rights Council of Greater Washington v. WMATA, 234 F.R.D. 4, 7 (D.D.C. 2006); see also NSA Opp'n [73] at 20-22.  To justify the Workstation and Collection Notice Recommendations aimed to retrieve email data principally for the March to October 2003 time frame, NSA apparently relies on an alleged "absence" of disaster recovery back-up tapes for the seven month period between March and October 2003.  See NSA Opp'n [73] at 21.  As EOP defendants established, however, email information generated during that time period, as well as email information predating even March 2003, should be contained on the existing library of

-3-

disaster recovery back-up tapes.  See, e.g., 3d Payton Decl. ¶¶ 11-12.  NSA has provided no

evidence (and neither unfounded suspicions nor unsupported speculation constitutes evidence) to

the contrary.

But even if that were not the case, the span of NSA's own representations about missing

emails limits the scope of its alleged harm here.  Despite NSA's prior regard for the 2005 chart

that is the source of its allegations about missing emails, NSA conspicuously divorces itself from

the 2005 chart in its opposition briefing when it claims that it may suffer "irreparable harm"

from the "obliteration of hundreds of days of important historical documents" from the March to

October 2003 time frame.  NSA Opp'n at 21; see also, e.g., id. at 16 (alleging without support

that "the acuteness of the public interest has only sharpened, because, for instance, *it has

emerged that no backup tapes exist for March and April of 2003*, meaning that there is a high

risk of destruction of records of the utmost importance") (emphasis added); 29 ("[A]nd the

records most at risk – *the records from the spring of 2003, a period for which there are no

backup tapes* – may be the records that are most important . . ..").  But NSA's representation

about "no email counts" for the March to October 2003 period is limited to only *one day* –

September 12, 2003 – and even then for the Presidential Records Act ("PRA")-covered Office of

the Vice President ("OVP"), which cannot be a defendant in this action.  See NSA's Mot. [58],

Ex. 7 ("EOP Exchange Environment – All Components; Summary – Messages per Day") ("2005

chart") at 6; EOP Defs.' Resp. [64] at 5; EOP Defs.' Obj. [72] at 14.  There are simply no days in

March, April, May, June or July 2003 alleged to have *any* missing email counts.  See NSA's Mot

[58], Ex. 7 at 1-6.  As a result, NSA cannot claim harm from "obliteration" of back-up media for

that time period because the .pst file stores are not even said to be deficient, and NSA provides

no evidence in its opposition or its motion to suggest otherwise. Accordingly, NSA cannot claim that its requested injunction fulfills this Circuit's instruction that "an injunction must be narrowly tailored to remedy the specific harm shown." Disability Rights Council of Greater Washington, 234 F.R.D. at 7 (quoting Nebraska Dep't of Health & Human Serv. v. Dep't of Health & Human Servs., 435 F.3d 326, 330 (D.C. Cir. 2006)). NSA plainly cannot prove harm for the March to October 2003 time period to justify the expanded relief it requests.

In the remainder of its opposition, NSA offers a belated attempt to tether its request for injunctive relief to the four factors required by this Circuit. NSA's efforts fail, however, because the burdens that would be imposed by the recommendations are impermissibly high; the public interest would be ill-served by wasting taxpayer funds on multiply-redundant data preservation and by diverting time and resources from the EOP defendants' other pressing tasks; and NSA's likelihood of success on the merits is, at a minimum, in doubt. Any preliminary injunctive relief, and particularly the kind of mandatory injunctive relief requested here, must be supported by more than a liberty with the facts, improper characterization of court orders, and repudiation of controlling law, as NSA attempts to do. Because NSA cannot show that it will be irreparably harmed absent expanded relief, and because it falters on the other three factors for preliminary injunctive relief as well, NSA's motion must be denied.

## ARGUMENT

**I.    The November 12, 2007 Order Alleviates Any Potential Irreparable Harm Required to Justify Additional Mandatory Injunctive Relief and Law of the Case Does Not Compel Otherwise**

EOP defendants established that the store of approximately 60,000 (and growing) disaster recovery back-up tapes under court-ordered preservation will allow the Court to order effective

relief, if necessary, going forward.  EOP defendants have provided briefing to that effect,

submitted two declarations from the Chief Information Officer for the Office of Administration

attesting to the same, and referenced sworn testimony from the Committee Hearing establishing

that the disaster recovery back-up tapes should contain substantially all emails sent or received

on the EOP Network between 2003 and 2005.  See, e.g., Decl. of Theresa Payton [48-2] ¶¶ 12(c),

12(d); 3d Decl. of Theresa Payton ¶¶ 9-11; NSA Mot. [58], Ex. 4 (Hr'g Tr. at 121:2862-

124:2937).  The November 12 Order served to confirm these assurances in a court-enforceable

mandate.  This is in accord with the assurances deemed adequate to obviate any claims of harm

in a similar context.  See Armstrong v. Bush, 807 F. Supp. 816, 823-24 (D.D.C. 1992) (finding

adequate for preliminary injunctive relief an order to "preserve all the current and existing

computer backup tapes in their custody" and further ordering only that defendants not "write-

over, erase, or destroy any of the information on the aforementioned tapes").

     To the extent that there existed any confusion about the library of disaster recovery back-

up tapes being preserved, EOP defendants further explained that (1) existing disaster recovery

back-up tapes should contain any email data on the EOP Network's Exchange email servers at

the time those servers were backed up, including email information in a user's inbox, sent folder,

*trash box*, and folders saved in a mailbox, plus email information in the journals and .pst file

stores, including email information then present on the EOP Network predating the date on

which data was written to a back-up tape; and (2) 438 back-up tapes last-written between

May 23 and September 29, 2003 were being preserved as well.  See, e.g., EOP Defs.' Obj. [72]

at 15; 3d Payton Decl. ¶¶ 11-12.  Those repeated commitments and explanations, and the Court's

November 12 Order, command rejection of NSA's continued insistence that "obliteration of

email data that is the subject matter of this case 'is a textbook example of irreparable harm.'"
NSA Opp'n [73] at 17; CREW Opp'n [74] at 12.  NSA cannot establish that it is threatened with
the "obliteration of email data" upon which it rests its request for expanded relief because that
email data should be contained on the thousands-large library of disaster recovery back-up tapes
under court-ordered preservation.  Plaintiff cannot compel a contrary result by turning a blind-
eye to the impact of the November 12 Order.

 The security provided by the November 12 Order was only confirmed in subsequent
briefing.  Contrary to NSA's representation, the Magistrate Judge's January 8, 2008 Order
provided no "second pronouncement on irreparable harm," NSA Opp'n [73] at 4-6, but rather
was issued to confirm that the Court would be able to afford effective relief in the future by
asking whether the "backups contain emails written and received between 2003-2005."[2]  Mem.
Or. [46] at 4.  Through the declaration of Theresa Payton, the EOP defendants confirmed that the
disaster recovery back-up process utilized by the Office of Administration was "consistent with

---

[2] For that reason, NSA may not complain that EOP defendants should have raised
"objections to the findings embodied" in the January 8, 2008 Order and that "law of the case"
therefore precludes such objections now.  NSA Opp'n [73] at 19.  Most principally, there was no
"finding" of irreparable harm embodied in the January 8 Order.  See Lightfoot, 246 F.R.D. at
333 (law of the case doctrine "applies only where an issue is . . . litigated and . . . decided").

 NSA litters its opposition with similarly sloppy characterizations or inaccurate readings
of the Court's orders, and EOP defendants respectfully refer the Court to the Orders for their
contents.  For example, NSA claims in its opposition that "the Magistrate Judge also noted
inconsistencies in Ms. Payton's statements to the Court, and ordered Defendants *again* to answer
additional questions probing the accuracy of Defendants' claims that the backup tapes 'should'
contain the missing emails."  NSA Opp'n [73] at 11.  The Magistrate Judge did not credit any
*inconsistencies*, but noted that he remained unclear about certain representations that had been
provided to date.  See First Report [67] at 8.  EOP defendants provided the Third Declaration in
an attempt to clarify further.  By not responding to every mis-characterization of the Orders,
EOP defendants do not waive any objections to NSA's inaccurate readings of them.

industry standards," and that "emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes."[3]  Payton Decl. ¶¶ 7, 12(c).  Nonetheless, on March 18, the Magistrate Judge surmised – without conclusively finding – that "*if* emails have not been properly archived as plaintiffs allege, and copies of those e-mails do not exist on back-up tapes, then the obliteration of the data upon which those e-mails may be reconstructed threatens the plaintiffs with irreparable harm."  Mem. Or. [62] at 2 (emphasis added).  In response, EOP defendants objected to the Magistrate Judge's hypothetical and instead established that NSA could not "clearly" show any entitlement to relief because it had not proven "(1) that e-mails were not properly archived in the October 2003 to October 2005 time frame; (2) that those e-mails are absent from disaster recovery tapes for that period; and finally, (3) that the hard drives will bear that e-mail information."  EOP Defs.' Resp. [64] at 5-6.  Then, as now, and throughout the "deliberative process" of the Magistrate Judge's consideration of NSA's motion, EOP defendants demonstrated that plaintiff had failed to show "that the back-up tapes are missing any

---

[3]     NSA makes the unsupportable claim that "[t]he First Payton Declaration . . . revealed that all the missing emails *may not* be on the backup tapes, because prior to October 2003, backup tapes were recycled."  NSA Opp'n [73] at 5 (emphasis in original).  To the contrary, that First Payton Declaration established that "emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes."  Payton Decl. [48-2] ¶ 12(c).  As explained in the Third Payton Declaration, the cessation of recycling back-up tapes in October 2003 did not mean that email information predating October 2003 had not been captured on the existing tapes.  Moreover, plaintiff's representations about missing emails were substantially limited for 2003, identifying only one "red day" in September 2003.  Thus for the reasons discussed <u>infra</u> at 11-12, given that plaintiff's representations about missing emails for the period predating October 2003 are significantly limited, no backup tapes are required for restoral of emails from that period for the purposes of this lawsuit.

e-mails," which NSA would have to clearly establish, among other factors, to seek further relief.

Id. at 5.[4]

NSA's scant two-page attempt to establish irreparable harm is facially inadequate as

well. See NSA Opp'n [73] at 20-22. NSA principally argues that 84 days of "destroyed back up

tapes" between March 1 and May 23, 2003 "shows that the risk of that threat is even greater than

previously thought," id. at 20, and speculates that there exists a "very high possibility that many

more backup tapes from March through October 2003 have likewise been destroyed." Id. at 21.[5]

As EOP defendants established, however, email information predating even March 2003 should

be contained on the existing library of disaster recovery back-up tapes. See, e.g., 3d Payton

Decl. ¶¶ 11-12. NSA has provided no evidence to the contrary or reason to doubt the sworn

testimony submitted by EOP defendants.[6] Evidently recognizing that it has provided no

---

[4] Given EOP defendants' repeated objections, it is curious that NSA claims that EOP defendants failed to object to any "finding of irreparable harm in the March 2008 Show Cause Order." NSA Opp'n [73] at 19; see also id. at 18; CREW Opp'n [74] at 12. From NSA's filing of its motion for emergency relief and throughout the "deliberative process" of the briefing on the motion, id. at 13, EOP defendants continuously objected that the November 12 Order provided ample protections and that NSA could not establish irreparable harm.

[5] See also CREW Opp'n [74] at 13 ("That the White House's limited collection of 438 backup tapes is incomplete is not, however, a matter of uncertainty or speculation. The backup tapes definitively do not contain all of the missing email."); 14 (claiming harm because "almost three months worth of backup tapes are missing (from March 1 to May 22, 2003)); 15 ("While confirming the existence of 438 tapes for the requested time period, the White House has not confirmed whether those tapes were made for each day between May 23, 2003 and September 29, 2003.").

[6] Plaintiff evidently seeks certainty about the very specific contents of each of the 60,000+ disaster recovery back-up tapes being preserved, suggesting that EOP defendants' representation that the library of tapes "should" contain substantially all emails sent or received between March 2003 and October 2005 is inadequate. But as Ms. Payton explained, the very purpose of the disaster recovery back-up tapes is to "reconstruct the data on the EOP Network" in the event of a

affirmative evidence of irreparable harm, NSA requests that the Court reject what it incorrectly

characterizes as demands by the EOP defendants for evidence of irreparable harm to a

"mathematical certainty," and completely ignore the sworn declarations and testimony showing

that NSA suffers no harm.  NSA Opp'n [73] at 21-22.  *No* evidence is a far cry, however, from

precision of mathematical certainty.  Under this Circuit's laws, NSA must establish that it will

suffer certain, great and actual injury before it may invoke this Court's extraordinary remedial

powers.  See Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  NSA has failed

wholly to do so.

Even if NSA could show that the existing library of back-up tapes does not have email

data for the March to October 2003 time frame, NSA's allegations themselves belie NSA's

conclusory claims of irreparable harm.  NSA's representation about "no email counts" for the

March to October 2003 period is limited to only *one day* – September 12, 2003 – and even then

for the PRA-covered Office of the Vice President.  See NSA's Mot. [58], Ex. 7 ("EOP Exchange

Environment – All Components; Summary – Messages per Day") ("2005 chart") at 6.  Despite

EOP defendants' repeated demonstration of the inconsistency of NSA's position – explaining

that the absence of even representations of missing emails for the relevant period means the

absence of a necessary precondition for the preservation of back-up media, see, e.g., EOP Defs.'

Resp. [64] at 5; EOP Defs.' Obj. [72] at 14 – NSA completely ignores the contradiction in its

---

"disaster or catastrophic incident that results in the partial or total loss of operating systems and
data."  Payton Decl. ¶ 7.  Providing the Court with specific and detailed information about the
contents of each of the 60,000+ tapes under preservation would, however, impose crushing
burdens now.  As Ms. Payton established, such burdens would be extraordinarily high.  See 3d
Payton Decl. ¶ 13.

opposition and effectively concedes the impact on its request for additional relief.  See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (arguments that are not addressed in an opposition are functionally conceded).  According to NSA's allegations, there are simply no days in March, April, May, June or July 2003 missing email counts for any FRA component.[7]  See NSA's Mot [58], Ex. 7 at 1-6.  As a result, NSA cannot claim harm from "obliteration" of back-up media for that time period because the .pst file stores are not even said to be deficient, and NSA provides no evidence in its opposition or its motion to justify expanded relief.[8]

---

[7]     "Low email" counts in August 2003 for two components – OSTP and ONDCP – cannot justify wholesale claims of irreparable harm for the seven month period either.

[8]     CREW also contends that it may establish that the disaster recovery back-up tapes are insufficient because (1) an OVP restore project located emails for a one week period between September 30 and October 6, 2003 on an October 21, 2003 generated set of back-up tapes, see CREW Opp'n [74] at 13, 15; (2) .pst file stores could have been deleted, CREW Opp'n [74] at 15; (3) some backup tapes may, by CREW's speculation, be unreadable, CREW Opp'n [74] at 15, 3 ("[T]he White House repeats the mantra at least eight times that its collection of backup tapes – admittedly and glaringly incomplete – 'should' contain all of the emails sent between 2003 and 2005."); and (4) because email erased from individual mailboxes would not be captured on a backup tape, CREW Opp'n [74] at 14.  Not one of those speculative claims supports expanding the scope of the November 12 Order.  First, an ability to restore September 30 through October 6, 2003 emails from a later-created October 21, 2003 set of back-up tapes serves to confirm, not undercut, what the EOP defendants have established through their sworn declarations: later-created tapes should contain earlier-sent or received emails.  Second, although CREW's allegations about .pst file stores are unsupported, those allegations are unrelated to an ability to restore information from disaster recovery back-up tapes from sources aside from the .pst file stores.  Indeed, the alleged deficiency of the .pst file stores is the fount of plaintiffs' complaints and reveals nothing about irreparable harm here.  Third, it appears that CREW seeks EOP defendants to now undertake the burdens associated with providing the Court detailed information about all 60,000+ tapes under preservation.  As Ms. Payton established, however, such burdens would be extraordinarily high.  See 3d Payton Decl. ¶ 13.  Nonetheless, the multiply-redundant preservation of continuously generated disaster recovery back-up tapes assures that the existing library will be adequate for any restoration projects if required in the future.  Finally, EOP defendants established that even "email erased from individual mailboxes,"

NSA's marginal effort to establish irreparable harm is particularly inadequate in light of the heightened showing of harm required for mandatory injunctions. Requiring EOP defendants to remotely query, collect, copy and store .pst files from workstations and to collect and preserve portable media, as the First Report contemplates, would undeniably command "some positive act" and alter the status quo. Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995); see also 42 Am. Jur. 2d Injunctions § 5 ("A mandatory injunction, as opposed to a prohibitory one, does not maintain the status quo, but rather compels the performance of an affirmative act."); 43A C.J.S. Injunctions § 13 ("A mandatory injunction is an extraordinary remedial process which commands the performance of some positive act."). Unlike the November 12 Order which can be read to prohibit EOP defendants from destroying, writing over or otherwise erasing the contents of the disaster recovery back-up tapes, NSA's request for additional relief cannot be considered prohibitory in nature.[9] EOP defendants would be commanded to undertake significantly burdensome actions, which, by this Circuit's laws, require a clear showing of extreme or serious damage. See, e.g., Judicial Watch, 501 F. Supp. 2d at 91.

Because NSA has no *evidence* to the contrary, NSA resorts to a sweeping, but inapplicable, theory of "law of the case" in an attempt to justify its motion. NSA essentially

---

and residing in trash boxes, is likely to be captured on back-ups. Id. at ¶ 12.

[9] Calling the action preservation of "res" does not change the result. See NSA Opp'n [73] at 16. The recommendations undeniably would impose on EOP defendants specific affirmative tasks to complete. In any case, EOP defendants demonstrated that the .pst files that would be collected if the First Report recommendations were adopted and imposed would unlikely be "res," but likely triplicate or quadruplicate copies, or even personal emails not covered by the FRA. See EOP Defs.' Obj. [72] at 18.

argues that irreparable harm has been established for the duration of this suit for any preliminary injunctive request going forward – no matter that there are changed circumstances or that the protections provided by the November 12 Order undoubtedly impact the irreparable-harm calculus for its current motion.  See, e.g., NSA Opp'n [73] at 17-22; CREW Opp'n [74] at 11-13.[10]  The "law of the case doctrine," however, cannot assist NSA because the doctrine is inapplicable where, as here, circumstances have changed and where the EOP defendants are not *challenging* the issuance of the November 12 Order, but rather, are *relying* in part on its issuance to demonstrate why NSA cannot seek further relief.[11]  See, e.g., Lightfoot v. District of Columbia, 246 F.R.D. 326, 333-34 (D.D.C. 2007) (rejecting "law of the case doctrine" and reconsidering motion on similar issues "in light of changed circumstances of this case"); LaShawn v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (emphasizing that D.C. Circuit applies "law of the case" doctrine only when the "*same issue* [is] presented a second time in the same case in the same court") (emphasis added); Beale v. District of Columbia, No. 04-

---

[10]     CREW goes so far to claim under "law of the case doctrine" that defendants "cannot challenge . . . whether or not emails are even missing."  CREW Opp'n [74] at 12.  Under CREW's all-encompassing view of the doctrine, the merits of its claims would be conclusively established as "law of the case," even though a dispositive motion is pending and, as CREW acknowledges itself, "defendants have not yet filed an answer."  Id.  That most certainly is not an appropriate application of the "law of the case doctrine" and illustrates just how far-reaching plaintiff's argument would be if accepted.  See Lightfoot, 246 F.R.D. at 333 (law of the case doctrine "applies only where an issue is . . . litigated and . . . decided").

[11]     Nor is "law of the case" the type of rigid jurisdictional doctrine that NSA wishes it to be; rather, it is a prudential doctrine meant to streamline *appeals* of orders from district court. Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 739 (D.C. Cir. 1995) (limiting law-of-the-case preclusion to context in which the "first *appeals* court has affirmatively decided the issue, be it explicitly or by necessary implication").  Indeed, district courts may review any non-final orders, for example, under Federal Rule of Civil Procedure 59 before any appeal has been taken.

959, 2008 WL 834459, * 6 (D.D.C. March 31, 2008) (additional facts and evidence make "law of the case doctrine" inapplicable). The "same issue" is therefore not before this Court and the "law of the case doctrine" cannot apply.

NSA thus raises a strawman by arguing at length that EOP defendants "waived any objection they had to the Court's adoption of the findings in the October 2007 Report." NSA Opp'n [73] at 1, 17-20; CREW Opp'n [74] at 11-13. EOP defendants are not challenging the Court's issuance of the November 12, 2007 Order now.[12] Rather, EOP defendants made express in their briefs [69, 72] that they *relied* in part on the November 12 Order to establish that NSA could not make the greater necessary showing of harm to justify the greater scope of relief it then demanded. See, e.g., Disability Rights Council of Greater Washington, 234 F.R.D. at 7; see also EOP Defs.' Obj. [72] at 13 (titling section "*November 12, 2007 Order* Alleviates Any Potential Irreparable Harm"); id. ("This *Court-ordered preservation* of the set of disaster recovery back-up tapes, therefore provides ample protection.") (emphases added). Because a library of disaster recovery back-up tapes that should contain emails from the 2003 to 2005 time period is being preserved, NSA can no longer complain of a threat of "obliteration of this backup media." Report and Recommendation [11] at 3. As a result, NSA may not rely on "law of the case" to transfer any findings of "irreparable harm" justifying the November 12 Order to support any further orders.

---

[12]    EOP defendants continue to maintain that preliminary injunctive relief was unnecessary as set forth in their opposition and objections to CREW's motion for a temporary restraining order. But EOP defendants' current objection to NSA's request for additional relief is not dependent on the previous objections to the issuance of an order in the first instance.

Nor may NSA contend that it may rely on a pre-November 12 showing of harm because the November 12 Order was supposedly intended to cover "the types of portable media that the Archive seeks to add to the Preservation Order."  NSA Opp'n [73] at 10, 22; see also CREW Opp'n [74] at 7.  Given that the preservation of disaster recovery back-up tapes resolves any concerns about being able to afford effective relief later, further injunctive relief would run afoul of the command that an injunction be limited to remedy a specific harm.  See Disability Rights Council of Greater Washington, 234 F.R.D. at 7.  Expanding the contours of the November 12 Order would yield marginal benefits at best.  See also EOP Defs.' Obj. [72] at 10-16; EOP Defs.' Resp. [69] at 9-12.

In any event, it was made clear by the Magistrate Judge and NSA's co-plaintiff CREW that the November 12 Order was meant to cover only "whatever backup media the *institution* of the Executive Office of the President, through the Office of Administration, . . . uses to preserve data that can be used forensically for [disaster] recovery."  Hr'g Tr. of Oct. 17, 2007 at 10:12-16 (attached as Ex. 4 to CREW Mot. for Discovery [14]) (emphasis added).  Indeed, CREW expressly disavowed any intent to seek preservation of the media NSA now seeks to sweep into the existing November 12 Order: "If individuals within the White House create separately their own DVDs [with emails], we had not intended that to be encompassed[.]"[13]  Id. at 10:17-19.  Given plaintiffs' expansive construction of the "law of the case doctrine," it is unclear why

---

[13]    See also id. at 10:2-11 (Magistrate Judge explaining difference between disaster recovery backup media and individually created DVDs); 9:2-8 ("Well, I think we'd all agree we would put DVDs and CDs in a very different category of disaster recovery tapes. . . .  CDs and DVDs, I agree – I think we all agree, do not fall within the definition of disaster recovery tapes."); 9:19-10:11 (same).

plaintiffs' application of the doctrine would not operate to preclude them from seeking preservation at this time of media that they explicitly disavowed in an earlier proceeding. Regardless, NSA cannot rely on claims of irreparable harm raised to support the November 12 Order to justify a significantly expanded one now.

***

EOP defendants identified the straightforward issue from NSA's motion currently before the Court:  even if, as plaintiff alleges, some emails do not now exist in the EOP .pst file stores, has the Court been assured that it will be able to order effective relief later?  Through the briefing on NSA's motion, EOP defendants have explained and established that the "answer is undeniably yes," and NSA cannot present a foundational argument to the contrary because it cannot prove irreparable harm in light of the November 12 Order.  EOP Defs.' Obj. [72] at 3. Nothing in NSA's opposition compels a contrary result.  NSA's Motion to Extend TRO/Preservation Order and for Depositions [58] must, as a result, be denied.

II.    **EOP Defendants Object to the Workstation Recommendation and the Collection Notice Recommendation Because They Would Impose Significant Burdens**

Given the absence of irreparable harm that may be claimed by NSA, EOP defendants established that imposing even a minimal burden pursuant to NSA's motion would be unjustified.  See EOP Defs.' Resp. [69] at 13-18; EOP Defs.' Obj. [72] at 16-18.  For that reason alone, delving into the specific burdens that would be imposed by the recommendations is unnecessary.

Nonetheless, EOP defendants submitted the Third Declaration of Theresa Payton establishing that the Office of Administration's time and resources would be significantly

-16-

diverted by the contemplated relief.  See 2d Payton Decl. ¶¶ 8-10; see also 3d Payton Decl.

¶¶ 13-14.  NSA attempts to dismiss the declarations simply by characterizing them as

"conclusory," NSA Opp'n [73] at 23, or "sweeping and unsubstantiated."  CREW Opp'n [74] at

18.  The recommendations on their face, however, undercut any contrary claim that they would

not impose any burden or harm on the government.[14]   For example, the Collection Notice

Recommendation would require 583 employees of EOP FRA components who also worked in an

EOP FRA component[15] sometime between March 2003 and October 2005 to "surrender any

media in their possession" – including any CDs, DVDs, laptops, external hard drives, thumb

drives, or floppy disks with .pst files of emails – to EOP defendants for the duration of this

lawsuit, regardless of how surrendering the media would impact the employee's performance of

---

[14]     NSA suggests that the Magistrate Judge concluded that the instant request for relief was justified in light "of the clear absence of any harm to the government."  NSA Opp'n [73] at 23.  The Magistrate Judge, of course, did not so hold.  In analyzing the propriety of the November 12 Order, the Magistrate Judge concluded that an order prohibiting defendants from destroying disaster recovery back-up tapes would impose no burden given defendants' representations that they had been preserving, and would continue to preserve, disaster recovery back-up tapes.  See Report and Recommendation [11] at 3.  In contrast, the recommendations here would impose significant and new obligations upon the Office of Administration.

[15]     Both NSA and CREW contend that EOP defendants' responses to the Magistrate Judge's questions are "significantly incomplete" given that figures for "EOP FRA" components were provided rather than FRA and PRA components combined.  But NSA itself limited its claims to "EOP, as well as its individual agency components that are subject to the Federal Records Act," NSA Compl. ¶ 7; CREW Compl. ¶ 9, and a court in this Circuit, too, expressly limited an injunctive order requiring preservation of backup tapes to FRA entities only.  See Armstrong v. Bush, 807 F. Supp. 816, 823-24 (D.D.C. 1992).  That is for good cause, because the Court lacks jurisdiction under the PRA.  See, e.g., Defs.' Mot. to Dismiss [39].  Indeed, plaintiffs disavowed any attempt to seek PRA compliance by EOP PRA entities in their opposition briefs to defendants' motion to dismiss.  See NSA's Opp'n to Defs.' Mot. to Dismiss [30] at 11; CREW's Opp'n to Defs.' Mot. to Dismiss [40] at 2.

his or her official duties.  And of course, EOP defendants would bear the burden and cost of storing and preserving that media and any .pst files located on them.

The Workstation Recommendation (and any forensic copying order) would impose significant burdens as well.  NSA suggests that the remote querying and forensic copying process would pose minimal costs, relying on the Lakhani declaration.  Although NSA claims that Mr. Lakhani's declaration "was limited to his own personal knowledge," NSA Opp'n [73] at 24, Ms. Payton established in her Third Declaration that a "leading U.S. computer forensics producer suggested that costs would not only include forensic services per unit" as Mr. Lakhani suggested, "but also specialized software and services commitments."  3d Payton Decl. ¶ 7 n.3. Mr. Lakhani's declaration therefore lacks consideration of forensic services for workstations connected to the sensitive EOP Network and for that reason alone must be stricken or disregarded.

NSA further contends that a preservation notice – rather than an order requiring EOP defendants to harvest and copy email data – is not a potential alternative because "[d]efendants never suggested this mode of preservation in their multiple submissions to the Magistrate Judge."  NSA Opp'n [73] at 27.  It is clear from the record, however, (1) that the Workstation and Collection Notice Recommendations were never countenanced before the First Report, providing no opportunity for EOP defendants to offer alternatives; and (2) that periodic instructions to EOP defendant employees to preserve any .pst files would adequately address any concerns about losing .pst files (however irrelevant or immaterial).  It cannot be that court-ordered enforcement of any preservation obligation is necessary in all circumstances as NSA contends.  See id.  NSA's contrary understanding would not only impose unwarranted burdens

-18-

on the judiciary, but is inconsistent with prevailing law.  See, e.g., Hester v. Bayer Corp., 206

F.R.D. 683, 686 (M.D. Ala. 2001) (calling orders to ensure compliance with litigation

responsibilities "a superfluous and wasteful task"); Schnall v. Annuity & Life Re (Holdings) Ltd.,

XL, No. 302-2133, 2004 WL 51117, *2 (D. Conn. Jan. 2, 2004) (same).

    At bottom, any burden, even if minimal (and obviously from the face of the

recommendations themselves the burden would be far from minimal) remains unjustified

because of the absence of any utility to be gained from the recommendations in the First Report.

As explained in the opening objections and request for reconsideration, the .pst files collected

from workstations or portable media are likely to be triplicate or quadruplicate copies that are

not required to be preserved under the FRA and therefore cannot be considered "res" for the

purposes of plaintiffs' suit.[16]  Nothing in NSA's opposition changes the analysis.

## III.    The Other Factors Counsel Against NSA's Requested Relief

    Ironically, despite reciting the terms of Federal Rule of Civil Procedure and Local Civil

Rule 72 and their prohibitions against litigants presenting "new initiatives to the district judge

that the party failed to raise before the Magistrate Judge," NSA Opp'n [73] at 27, NSA for the

first time attempts to satisfy the four-factor test for injunctive relief in its opposition.  But even

its belated efforts fail.  On the likelihood-of-success prong, for example, it remains that

---

[16]    As a result, requiring "retrieval" of those materials would exceed the jurisdictional
bounds of the FRA as EOP defendants established.  EOP Defs.' Resp. [69] at 4.  Even those
cases that have imposed limited preservation requirements of backup tapes have recognized that
such orders may be permitted only on a temporary basis to "preserve records until the Archivist
is able to ensure that federal records are not destroyed."  NSA Opp'n [73] at 28.  Given that the
.pst files at issue in NSA's motion are likely duplicates, ordering their collection and retrieval
would not serve to "preserve records."

defendants' challenge to the "standing of the Archive to seek, and the jurisdiction of this court to compel, restoration of electronic records" is an argument that is "not without merit, as evidenced by a recent decision in which Judge Richard J. Leon dismissed a similar case after holding that the court lacked jurisdiction to prevent the unlawful removal or destruction of records protected by the Federal Records Act."  Mem. Or. [46] at 3, n.2.  The motion to dismiss, now fully briefed, establishes that NSA's likelihood of success on the merits of its case is doubtful.

NSA also fails to establish that the public interest would be well-served by the issuance of an Order.  Indeed, NSA and CREW both rely heavily on the public's interest in the "preservation of *presidential* records," which cannot be part of this suit and may not justify NSA's request for relief.  CREW Opp'n [74] at Ex. 1 at 1 (emphasis added); see also id. at Ex. 2 at 5 (discussing "condition of White House records, as under the Presidential Records Act"); id. at Ex. 3 at 1 (describing stakes for democracy and "Presidential Records"); NSA Opp'n [73] at 29 (discussing importance of preserving records about the "nation's journey into war").  Despite plaintiffs' repeated insistence on injecting the atmospherics associated with Presidential records into this case, PRA-covered records are simply not – and cannot be – a part of this suit.

The public's interest in ensuring that interim injunctive relief is not abused would also be harmed by the issuance of expanded relief here.  Allowing a party to obtain emergency relief based on allegations alone – as NSA attempts to do – would greatly expand the possibility of Rule 65 abuse.  Allowing an expansion of the injunction without supporting evidence would harm defendants' institutional interests, and run afoul of the well-established presumption that government officials and agencies act in good faith and according to the dictates of law, no matter how inflammatory the mere allegation.  Indeed, NSA appears to have been emboldened

-20-

by plaintiffs' ability to secure an injunction in the first instance – despite the absence of credible *evidence*, as opposed to mere allegation, to support its request for emergency relief. To allow NSA to impose the significantly more burdensome obligations it requests now would likely encourage both plaintiffs to come to Court yet again, to seek additional unsupported relief. NSA's efforts, as established by EOP defendants throughout the briefing on NSA's motion, must be rejected.

## <u>CONCLUSION</u>

For the reasons set forth above, EOP Defendants request that the Magistrate Judge reconsider and reject the Workstation and Collection Notice Recommendations set forth in the First Report and Recommendation.

Respectfully submitted this 30th day of May, 2008.

> GREGORY G. KATSAS
> Acting Assistant Attorney General
>
> JEFFREY A. TAYLOR
> United States Attorney
>
> ELIZABETH J. SHAPIRO
> Assistant Branch Director
>
> /s/ Helen H. Hong
> HELEN H. HONG (CA SBN 235635)
> TAMRA T. MOORE (DC 488392)
> Trial Attorneys
> U.S. Department of Justice, Civil Division
> P.O. Box 883, 20 Massachusetts Ave., NW
> Washington, D.C. 20044
> Telephone: (202) 514-5838
> Fax: (202) 616-8460
> helen.hong@usdoj.gov
>
> Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2008, a true and correct copy of the foregoing EOP Defendants' Reply in Support of Request for Reconsideration of the Magistrate Judge's First Report and Recommendation was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Helen H. Hong

HELEN H. HONG

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY<br>AND ETHICS IN WASHINGTON,<br><br>               Plaintiff,<br><br>        v.<br><br>EXECUTIVE OFFICE OF THE<br>PRESIDENT, et al.,<br><br>          Defendants. | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| NATIONAL SECURITY ARCHIVE,<br><br>               Plaintiff,<br><br>        v.<br><br>EXECUTIVE OFFICE OF THE<br>PRESIDENT, et al.,<br><br>          Defendants. | Civil Action No: 1:07-cv-01577 (HHK/JMF) |

## DEFENDANTS' RESPONSES TO AND REQUEST FOR RECONSIDERATION OF THE FIRST REPORT AND RECOMMENDATION ON PLAINTIFF NSA's MOTION TO EXTEND TRO/PRESERVATION ORDER

### INTRODUCTION

Plaintiff NSA's latest request for expanding the Court's preservation order strays from the core issues presented in the consolidated complaints. Although the complaints simply (1) ask whether defendants should notify the Attorney General of any "unlawful removal . . . or destruction of records" to initiate recovery action, 44 U.S.C. § 3106, and (2) question whether defendants' record-keeping practices are adequate under the Federal Records Act ("FRA"), plaintiff would sidetrack the Court on questions only marginally relevant, if at all, to the issues

presented in the consolidated complaints.  Indeed, no fewer than twenty-one filings have been

exchanged, and five court orders have been issued, in response to motions for temporary

injunctive relief, expedited discovery, and expansion of an order already in place.  Each of those

voluminous filings boils down to one rather straightforward issue: even if, as plaintiffs allege,

some emails do not now exist in the EOP .pst file stores[1], has the Court been assured that it will

be able to order effective relief later?  The answer is undeniably yes.  The disaster recovery

back-up tapes under court-ordered preservation will allow the Court to order effective relief, if

necessary, going forward.

　　　As a result, NSA cannot demonstrate the "certain, great and actual" injury necessary to

justify additional injunctive relief, Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985),

let alone the "extreme or serious damage" required to obtain the mandatory injunction it requests

here.  Judicial Watch v. Dep't of Commerce, 501 F. Supp. 2d 83, 91 (D.D.C. 2007).  Yet,

plaintiff would have the inquiry detoured from an appropriate analysis of the Court's ability to

provide relief, to an improper analysis of how best to preserve likely duplicate and triplicate

copies of emails, if in fact, those copies can be harvested through an extremely burdensome,

time-consuming and disruptive process.  The Court's reconsideration of the straightforward issue

presented in NSA's latest motion should compel this Court to amend the conclusions reached in

---

1 "EOP .pst file stores" are the .pst files stored on the EOP Network from the Office of
Administration's email "archiving process" described in paragraph 5 of the Declaration of
Theresa Payton [48-2].  A "personal storage table," or ".pst," file is the file type used to store
electronically selected email messages sent or received via Microsoft Outlook.

the April 24, 2008 First Report and Recommendation ("First Report")[2] and to deny relief on

NSA's Motion to Extend TRO/Preservation Order and for Depositions [58].

## BACKGROUND

Under the FRA, agency heads must provide for "economical and efficient management of

the records of the agency."  44 U.S.C. § 3102.  The FRA does not require an agency to "save

'every scrap of paper,'" Armstrong v. EOP, 1 F.3d 1274, 1287 (D.C. Cir. 1993), but simply those

"to the extent required to document the organization, functions, policies, decisions, procedures

and essential transactions of the agency."  36 C.F.R. § 1220.14 (2002) (emphasis added).

Moreover, the FRA provides only limited remedies for the unlawful removal or destruction of

federal records.  The D.C. Circuit instructs that injunctive relief can be sought, if at all, only by

the government through the FRA's detailed and exclusive administrative enforcement system.

See Defs.' Resp. to March 18, 2008 Or. to Show Cause [64] at 4 (citing Armstrong v. Bush, 924

F.2d 282, 294 (D.C. Cir. 1991)).

---

2 For the reasons set forth in the First Report, defendants' opposition to the motion, and in this
filing, this Court appropriately concluded that expedited discovery and court-supervised
depositions are not justified under the law.  See First Report at 8-9.  Defendants do not challenge
that conclusion.

Against this backdrop of the FRA's actual requirements and the nature of the remedy it provides, plaintiff's focus on the intricacies of technical questions about "slack space," "forensic copying," "remote querying," and ".pst files" misses the mark. The only relevant question before the Court is an "extremely narrow" one about the Court's ability, if necessary, to preserve its ability to afford effective relief on the merits.[3] Or. [11] at 2 (Oct. 19, 2007). This question has been addressed -- on numerous occasions – and resolved by the Court's November 12, 2007 Order. The disaster recovery back-up tapes in the Office of Administration's "possess[ion] or . . . custody or control," Or. [18] at 2 (Nov. 12, 2007), "should contain substantially all the emails sent or received in the 2003-2005 time period," Decl. of Theresa Payton [48-2] ¶ 12d (Jan. 15, 2008) ("Payton Decl."), and are under court-ordered preservation. Or. [18] at 2. The Court has satisfied any need to ensure itself the ability to afford effective future relief, and that should be the end of the matter.

It is therefore remarkable that NSA continues to ask this Court to consider imposing extreme injunctive relief that would impose significant burdens on the Office of Administration ("OA"), while providing no marginal benefit to the plaintiffs or the Court. The history of plaintiffs' repeated requests for injunctive relief illuminates just how far plaintiffs have strayed from the Court's initial inquiry about preserving its ability to provide effective relief. In relevant part, after the Court ordered defendants to preserve its disaster recovery backup tapes, see Or. [18] at 2 (Nov. 12, 2007), plaintiffs raised unsupported doubts about the completeness of the

---

3   Even then, plaintiffs have provided no <u>evidence</u> to establish the predicate condition for any concern about the Court's ability to afford relief:  that there are missing emails to justify its request for injunctive relief.  See, e.g., Defs.' Opp'n to Mot. for TRO [4]; Defs.' Obj. to report

disaster recovery back-up tapes and sought, among other things, expedited discovery on this and other issues.  In response, this Court explained that "[t]o the extent that the missing emails are contained on the back-ups preserved pursuant to Judge Kennedy's order, there is simply no convincing need to expedite discovery."  Mem. Or. [46] at 3 (Jan. 8, 2008).  "If the missing emails are not on those back-ups," this Court posited, "emails that might now be retrievable from email account folders or 'slack space'" would be considered for preservation.  Id.  Thus, the Court requested a "<u>small amount of information</u> not currently in the record," and posed four questions to obtain that small amount of information.  Id. at 4 (emphasis added).

EOP defendants responded on January 15, 2008 with a declaration from Ms. Theresa Payton, Chief Information Officer for the Office of Administration.  Among other things, Ms. Payton explained that email sent or received between 2003 and 2005 should be on the disaster recovery back-up tapes under court-ordered preservation.  See Payton Decl. ¶ 12(c); see also id. ¶ 12(d) (explaining that "the back-up tapes should contain substantially all the emails sent or received in the 2003-2005 time period," which are the emails that are the subject of the lawsuit).

On March 11, plaintiffs CREW and NSA requested additional emergency relief, contending that Ms. Payton's declaration contradicted earlier-sworn testimony provided before the Committee on Oversight and Government Reform on February 26, 2008.  See, e.g., Pl. CREW's Mot. for Or. to Show Cause [57]; Pl. NSA's Emergency Mot. for TRO [58].  Plaintiffs each alleged, in some form, that OA knew emails were missing from the EOP .pst file stores and

and Recommendations [12].

were not contained on backup tapes, and that OA was destroying, or permitting destruction of, other potential repositories of such emails.[4]  See, e.g., NSA Em. Mot. [58] at 2.

Although defendants established that plaintiffs' doubts were unsupported and contradicted by the record, see Defs.' Opp'n to NSA's Emergency Mot. [60]; Defs.' Opp'n to Mot. to Show Cause [61], and that the disaster recovery tapes resolved any concerns about the Court's ability to afford relief, this Court ordered the EOP defendants to show cause "why it should not be ordered to create and preserve a forensic copy of any media that has been used or is being used by an former or current employee who was employed at any time between March 2003 and October 2005."  Mem. Or. [62] (March 18, 2008).  Within three days, the EOP defendants submitted the Supplemental Declaration of Theresa Payton, proving that no benefit would be gained by forcing OA to make forensic copies of computer workstations, and that further relief was unwarranted.  See EOP Defs.' Resp. to March 18, 2008 Or. [64].  Plaintiff

_____

[4] In doing so, plaintiffs relied, in part, upon the unsworn written statements of Mr. Steven McDevitt, a former OA employee, and a chart prepared by Mr. McDevitt that purportedly reflects the days for which emails are missing from EOP .pst file stores for various components. The plaintiffs ignored, however, Ms. Payton's sworn Congressional testimony that discredited Mr. McDevitt's unsworn testimony, see NSA Mot., Ex. 4 (Hrg't Tr. at 44:950-45:975 (describing three-phase process, including "promising trends" of being "able to identify and locate e-mails with exchange for days that were previously red"); 44:955-956 ("There are, in this phase one, some days that still show as red.  That is where phase two is going to come in."); 88:2049-89:2054 ("We still have, roughly, 17 million emails as we are going through this first pass that we have not attributed to a component, and in our phase two we will have enhanced technology which will allow us to read those messages at a lower level and attribute those to a component.|").  Indeed, members of the Committee acknowledged that such emails may not, in fact, be missing, pointing to OA's intensive, ongoing multi-phased efforts to examine and identify by component the existence of millions more emails than what the chart showed.  see, eg., id. at 18:376-379 ("Last Friday, she briefed the Committee staff that the 473 day gap has been reduced to 202.  So a substantial portion of the missing emails appear not to be missing at all, just filed in the wrong digital drawer.  The restoration recovery process continues and should

–6–

NSA responded to the Supplemental Declaration, claiming that Ms. Payton's statements were not truthful, complete or accurate, and submitting a declaration by a purported e-discovery "expert" who had no apparent personal knowledge of OA practices or policies and no apparent expertise in governmental issues not found in the commercial sector.[5]  See NSA's Resp. to Or. [65]; Declaration of Al Lakhani ("Lakhani Decl.").

In the Memorandum Order and First Report and Recommendation ("First Report"), this Court potentially recommends additional extreme injunctive relief.  Specifically, the First Report recommends that the "EOP be ordered to search the workstations, and any .pst files located therein, of any individuals who were employed between March 2003 and October 2005, and to collect and preserve all e-mails sent or received between March 2003 and October 2005."  First Report at 6 (emphases added) ("Workstation Recommendation").  The Court has also

---

continue.").
[5]  For the reasons discussed below, this Court should disregard and strike the Lakhani Declaration submitted by NSA on March 25, 2008 [65-3] ("Lakhani Decl.").  Mr. Lakhani lacks any personal knowledge of the Office of Administration's practices or policies.  Mr. Lakhani avers, for example, that he does "not believe that all emails sent or received between October 2003 and October 2005 could be preserved on backup tapes[.]" Lakhani Decl. ¶ 6.  Mr. Lakhani provides such testimony "based on [his] personal knowledge," despite his lack of personal involvement with the creation of disaster recovery tapes for the 2003-2005 time period, lack of access to the disaster recovery tapes, and absence of discussions with anyone within the Office of Administration or the OCIO.  Accordingly, Mr. Lakhani's speculation should be given no weight, especially in light of Ms. Payton's unequivocal statements – based on discussions with her staff and personal knowledge gained in her role as the Chief Information Officer for the Office of the Chief Information Officer – that the "backup tapes should contain substantially all the emails sent or received in the 2003-2005 time period."  Payton Decl. ¶ 12(d); see also Kos Pharm. v. Andrx Corp., 369 F.3d 700, 719 (3d. Cir. 2004) ("District courts must exercise their discretion in 'weighing all the attendant factors, including the need for expedition,' to assess whether, and to what extent, affidavits or other hearsay materials are 'appropriate given the character and objectives of the injunctive proceeding.'") (internal citation omitted).

recommended that EOP be ordered to issue a "collection" notice to its employees and to collect and preserve "any media" in EOP's employees' possession that "may contain e-mails sent or received between March 2003 and October 2005, . . . ." Id. at 7 ("Collection Notice Recommendation").

In addition to these recommendations, this Court has ordered the EOP defendants to provide responses to the following questions on or before May 5, 2008:

1.      "How many current EOP employees were employed at any time between March 2003 and October 2005?" First Report at 3.

2.      "How many hard drives are in the possession or custody of EOP that were in use between March 2003 and October 2005?" Id.

3.      "[W]hether all back-up tapes created between March 2003 and October 2003 have been preserved – and, to the extent that they have not, to state the specific dates within that period for which no back-up tapes exist." Id. at 8.

In the remainder of this brief, EOP defendants turn first to the request for reconsideration of the First Report, followed by responses to the questions posed in the First Report, as described more fully in the Third Declaration of Theresa Payton ("3d Payton Decl.") (attached as Exhibit 1).

## REQUEST FOR RECONSIDERATION OF THE FIRST REPORT

There is no factual or legal basis for granting additional injunctive relief. The relief already granted by the Court's November 12, 2007 Order, requiring the preservation of all back-

up tapes, alleviates any potential harm raised by plaintiffs.  Ms. Payton's declaration of January 15, 2008, is clear, supported by her sworn Congressional testimony, uncontradicted by credible evidence, and entitled as a general matter to great weight.  See Elec. Frontier Found. v. U.S. Dep't of Justice, 517 F. Supp.2d 111, 117 (D.D.C. 2007) (presumption of good faith in agency declarations).  The additional details provided in her Third Declaration, as well as the clarification about the disaster recovery back-up tapes below, affords no room for additional concerns.  There should be no question that the additional relief sought by NSA and recommended in the First Report is not warranted given the relief already granted by the Court's November 12, 2007 Order requiring the preservation of backup tapes.

**I.   The Court's November 2007 Order Requiring Preservation of Backup Tapes Resolves Any Alleged Concerns About the Court's Ability to Afford Effective Relief**

Significantly, injunctive relief is not appropriate where "the record does not show with any clarity" that irreparable harm will result.  See District 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am., 412 F.R.D. 165, 167 (D.C. Cir. 1969) (reversing grant of preliminary injunction for inadequate showing of irreparable injury).  Not only is there a lack of "clarity" that irreparable harm will result here[6], but there is an unambiguous declaration that proves otherwise.  Ms. Payton has stated that "emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes."  Payton Decl. ¶ 12(c).[7]  The Payton

---

6   This is particularly true given that all trends in OA's multi-phased analysis point to millions of additional emails that have been properly saved, but simply "mis-filed" (and, thus, not reflected on the McDevitt chart), and that these same emails may still be maintained in user in-boxes or sent folders.

7   See also id. ¶ 12(d); Defs.' Opp'n to NSA's Emergency Motion to Extend TRO [60] at 5-6;

Declaration is entitled to the great deference ordinarily accorded to agency or component

declarations.  As explained in prior filings (and incorporated fully here), no contradictions exist.

 See Defs.' Opp'n to NSA's Emergency Motion to Extend TRO [60] at 5-6; Defs.' Opp'n to

CREW's Mot. to Show Cause [61] at 18-19; EOP Defs.' Resp. to March 18, 2008 Or. To Show

Cause [64] at 4-6; see also Wisc. Gas Co., 758 F.2d at 674 ("Despite these well-settled

principles, the petitioners have premised their motions for stay upon unsubstantiated and

speculative allegations of recoverable economic injury . . . [T]his allegation is purely

hypothetical and will not be considered by this court.").  The preservation of the disaster

recovery back-up tapes assure that effective relief may be afforded going forward.  The Court's

previous order requiring OA to preserve all disaster recovery back-up tapes in its possession,

custody or control should allay any concerns about being able to afford relief in the event that

the court should ultimately find relief warranted.  As explained above, the FRA requires nothing

more for the Court to assure itself of an ability to afford relief and plaintiffs' complaints support

no further relief.

The recommendations in the First Report rise and fall on the validity of the Court's

assumption that the disaster recovery backup tapes do not contain email data from March 2003

to October 2003.  See First Report at 7.  Because defendants make clear that the universe of

---

Defs.' Opp'n to CREW's Mot. to Show Cause [61] at 18-19 (explaining that back-up tapes
should contain all emails sent or received between 2003-2005); EOP Defs.' Resp. to March 18,
2008 Or. to Show Cause [64] at 4-6; NSA Mot., Ex. 4 (Hr'g Tr. at 121:2862-124:2937
("certainly, with the backups, we have every reason to believe at this point that we will be able
to get the documents we seek"); id. at 59:1325-60:1327 (Payton "very confident" that back-up
tapes may be used to recover email data); id. at 61:1358-1368 (same).

back-up tapes covered by the November 12, 2007 Order should contain emails sent or received
between March 2003 and October 2003, the recommendations necessarily fall.  Accordingly the
recommendations contained in the First Report should be amended.

Any confusion about what back-up tapes are being preserved by the Office of
Administration is easily clarified.  See First Report at 8.  In October 2003, the Office of
Administration stopped recycling disaster recovery back-up tapes.  Payton Decl. ¶ 12c.  Thus all
tapes that were in the Office of Administration's possession in October 2003, which includes
tapes to which data was written as early as May 23, 2003, have been – and will continue to be –
preserved.  See 3d Payton Decl. ¶ ¶ 9-11.  And as discussed more fully in defendants' response
to the third question of the First Report, see infra, there are approximately 438 disaster recovery
back-up tapes to which data was written between May 23, 2003 and September 29, 2003.  Id.
¶ 11.  In any event, NSA's allegations about missing emails for the March 2003 to October 2003
time period identifies only one day – September 12, 2003 – as a day with potentially "no email
counts" and even then only for a PRA entity that is not subject to suit here.[8]  See EOP Defs.'
Resp. [64] at 5.

By the very nature of the disaster recovery backup tapes used by OA during this relevant
time period, email information predating even March 2003 should be contained on the existing
library of disaster recovery back-up tapes.  That is because disaster recovery back-up tapes
capture the "files saved on the server, such as, for example, email databases and/or email

---

8  Even for the FRA components that plaintiff alleges have an abnormally low email count for
certain days within this time period in August 2003, the emails may well be within the millions
not previously identified on the McDevitt chart but which have been identified through OA's

environment information." Payton Decl. ¶ 6. The purpose of the disaster recovery back-up tapes, therefore, is to create a snapshot that "captures all email information present on the EOP Network in the journals, the .pst archives, and the customer mailboxes at the time the back-up is created." Id. ¶ 7. A full set of disaster recovery backup tapes created in October 2003, for instance, should contain email information present on the EOP network, including Exchange servers, at the time of the backup, whatever their creation date. Such a backup should also include email messages residing in a user's inbox, sent folder, trash box, folders saved in the mailbox, as well as email information in the journals and .pst files stores. Accordingly, the disaster recovery backup system in use by EOP is not designed to capture just that email information created during the 24 hours preceding a backup, or since the last full set of backup tapes were created, but should capture emails sent or received in March 2003, for example, still residing on the EOP network in October 2003. See 3d Payton Decl. ¶ 12.

All said, these facts should allay any concerns about "missing" emails being unavailable on the disaster recovery back-up tapes if the Court determines that further relief is warranted. That would, at most, trigger obligations for the defendants to initiate action through the Attorney General, see Armstrong, 924 F.2d at 296, who would, in turn, determine what action was appropriate under the circumstances. 44 U.S.C. § 3106. By contrast, plaintiff would effectively have the Court "jump the gun" by harvesting additional media now. Because NSA has not demonstrated a credible basis for relief beyond the November 12, 2007 Order, further relief is unjustified and without basis in law.

---

ongoing multi-phase .pst file inventory process.

**II. Defendants Request Reconsideration of the Two Recommendations in the First Report**

For the reasons discussed above, the November 12 Order and the disaster recovery back-up tapes being preserved under it obviate any need for further relief.  Because the absence of irreparable injury, alone, is adequate to deny preliminary relief, see Wisc. Gas Co., 758 F.2d at 674, the Court is not required to analyze the other three factors in determining the propriety of injunctive relief.

The First Report, however, recommends additional extreme injunctive relief that would yield marginal benefits at best, while imposing substantial burdens and disruptions on the EOP defendants.  In the Workstation Recommendation, the First Report contemplates a "remote query" process for the collection, and then in-house copying of all located .pst files.  First Report at 5.  The Collection Notice Recommendation would require EOP employees to relinquish and surrender any portable media for EOP entities to preserve.  In effect, the First Report requires defendants to locate, collect, take charge of, copy and preserve any email data – even if that data is likely already to be contained in the EOP .pst file stores and stored on the disaster recovery back-up tapes, may still be in user in-boxes, could be quadruplicate copies, and may not even be federal records.  That search would create the proverbial "awfully expensive needle to justify searching a haystack."[9] McPeek v. Ashcroft, 202 F.R.D. 31, 34 (D.D.C. 2001).

At bottom, even the FRA has not been held to require perfect, 100% preservation of all email records.  See Armstrong, 924 F.2d at 297 n.14.  And the FRA certainly does not require

---

[9] This is particularly so given defendants' pending motion to dismiss on threshold justiciability and jurisdictional grounds.

that quadruplicate, triplicate or even mere duplicate copies of emails be preserved and

maintained.  See, e.g., 36 C.F.R. §§ 1234.32(d)(2), 1222.34.  Yet plaintiffs' continuing demands

and the recommendations in the First Report, suggest that defendants must hunt down and

harvest each and every byte of email data that may exist from the 2003 through 2005 time

period.  These petitions are made even though the disaster recovery back-up tapes should contain

substantially all relevant emails, and even though plaintiffs have not established that EOP's .pst

file stores of the emails themselves are deficient.  And these demands have been lodged without

regard for whether the bytes of data contain a quadruplicate copy of, or a personal message that

is not, a "record" under the FRA.  If the FRA provides room for "innocent mistakes" in records

preservation in the first instance, Armstrong, 924 F.2d at 297 n.14, and does not require

preservation of duplicates, it is unreasonable to require perfect (and indeed multiply-redundant)

Court-ordered preservation of all bytes of email data as backups now.  The disaster recovery

back-up tapes suffice.

      The problems presented by the recommendations in the First Report are further

heightened because they would require the EOP defendants to remotely query current

workstations for .pst files and surrender all portable media, so that the EOP defendants may copy

and preserve or maintain any email data themselves, rather than simply instructing defendants to

issue periodic notices reminding employees to save email data.  See First Report at 7.  The First

Report never explains why preservation notices would be inadequate, particularly when there is a

suggestion in the First Report that a duty to separately preserve such files, if any, may be

fulfilled by issuing a "written legal hold (including a preservation notice to persons likely to have relevant information)." First Report at 7 n.6.

The burdens that would be imposed by the Workstation and Collection Notice Recommendations would be significant. The First Report suggests that the "burden on EOP to conduct" a "focused and automated" search for .pst files and then to "copy .PST files located therein" would impose minimal burdens in "terms of cost, labor, and employee downtime."[10] First Report at 5. That is simply untrue. The process for the Workstation Recommendation alone is extensive and time consuming. These proposed burdens are only magnified when considering the time these tasks would take away from the EOP FRA defendants' other pressing tasks and plaintiffs' continuing attempts to trench on the important prerogatives of Executive Branch components. Cf. Loving v. United States, 517 U.S. 748, 757 (1996) ("[I]t remains a basic principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another."). Without doubt, some employees, including the OCIO leadership team, would be diverted from their pressing and important tasks of providing EOP components with unified enterprise services, coordination of compliance for mandated compliance programs, and safeguarding the EOP Network. Payton Decl. ¶ 6. The responsibilities of OCIO personnel are already extensive. This is especially true as the

---

[10] For this conclusion, the Court relies in part on the Lakhani Declaration, which was offered by Mr. Lakhani without any personal knowledge of the Office of Administration's technical capabilities and system. Mr. Lakhani's estimations about the costs and burdens associated with forensic imaging, copying and write-block copying are inaccurate. Lakhani Decl. ¶¶ 20-26. Mr. Lakhani's estimates appear to be associated with private, commercial applications, rather than the efforts required to copy files for computer workstations connected to the sensitive EOP Network.

Presidential transition approaches.  <u>See</u> 3d Payton Decl. ¶¶ 3, 14. In addition to considerations of labor and employee downtime, which are obviously immense, costs that would be required by the Court's recommendation would include, at the least, obtaining additional electronic storage capacity for .pst files that would be copied and stored.  <u>McPeek</u>, 202 F.R.D. at 34 ("When employees are thus diverted from their ordinary duties, the function of the agency suffers to the detriment of the taxpayers." ).

Similarly, requiring employees to give up portable media devices would require employees to alter their working practices.  The recommendation covers any portable media, whether a laptop, external hard drive, flash drive or floppy disk.  Requiring employees to surrender that media could impose significant administrative burdens and thwart their ability to provide effective service as a government employee.  The EOP defendants, too, would potentially have to bear storage and inventorying burdens of collecting the external media from its employees, copying and returning the media so the employees continue to have access to their data, and safeguarding it during the pendency of the litigation.[11]

The FRA does not require the imposition of such onerous burdens, and particularly so when the Court's concerns about affording effective relief have already been addressed.  The disaster recovery back-up tapes are adequate.  But most fundamentally, the D.C. Circuit's stringent test for injunctive relief unambiguously rejects the imposition of these additional

---

[11]  Of course, those burdens depend on the number of employees who have portable media devices containing .pst files of emails between March 2003 and October 2005.  But any incremental burden, given the minimal benefit, is too much burden to support plaintiffs' instant request.

burdens because the November 12 Order resolves any concerns.  See, e.g., Emily's List v. Fed.
Election Comm'n, 362 F. Supp. 2d 43, 51 (D.D.C. 2005) (preliminary injunction "is considered
an extraordinary remedy" that should "be granted only upon a clear showing of entitlement").

Even a minimal burden would be outweighed by the absence of any utility to be gained
from the recommended .pst file harvesting and copying process.  As explained above, the .pst
files are likely to be triplicate or quadruplicate copies of emails already contained on network
.pst file stores and on the disaster recovery back-up tapes.  And even then, it is unknown whether
the .pst files would contain emails that are considered records, as opposed to personal files not
subject to preservation under the FRA.

Even if the Court were to conclude that preserving .pst files on computer workstations and
on portable media was proper – a conclusion unsupported by the record and contradicted by the
facts – requiring the EOP defendants to harvest and copy over the files themselves is
unprecedented.  Indeed, it would contradict the well-established rule that "[a]n injunction should
be narrowly tailored to remedy the specific harm shown."  Aviation Consumer Action Project v.
Washburn, 535 F.2d 101, 108 (D.C. Cir. 1976).  Although unwarranted, periodic instructions to
EOP defendant employees to preserve any .pst files would adequately address any concerns
about "losing" .pst files (however irrelevant or immaterial).

Finally, requiring harvesting and copying of .pst files would exceed the jurisdictional
bounds of the FRA.  The Court suggests that an expanded order would simply maintain the status
quo by ensuring that the "res – i.e., e-mails – are not deleted prior to the resolution of
defendants' dispositive motions."  First Report at 2.  But as an initial matter, the disaster

recovery back-up tapes adequately assure the Court that it will be able to provide full and effective relief. Therefore, under the FRA, any of the .pst files that constitute duplicate copies of emails are not to be considered records under the FRA. Moreover, as set forth in defendants' motion to dismiss, any Court order requiring the <u>retrieval</u> of records exceeds the permissible scope of judicial relief under the FRA. <u>See</u> Defs.' Mot. to Dismiss at 12-13. The Court of Appeals has held that the FRA precludes APA claims seeking this sort of injunctive relief because under the FRA such relief can be sought, if at all, <u>only by the government</u> through the FRA's detailed and exclusive administrative enforcement system. <u>See</u> <u>Armstrong v. Bush</u>, 924 F.2d 282, 294 (D.C. Cir. 1991). Only if the Attorney General initiates action may the Attorney General determine what repository of email information – if any – he will consult for any restoration or retrieval of records.

Accordingly, the EOP defendants respectfully request that the Court reconsider the recommendations in the First Report and grant no further injunctive relief.

## <u>RESPONSES TO QUESTIONS IN THE FIRST REPORT</u>

Defendants submit responses to the questions posed in the First Report at pages 3 and 8. <u>See generally</u> 3d Payton Decl. However, for the foregoing reasons, it remains defendants' view that such responses are not required in order for the Court to conclude that forensic copying or imaging is unjustified under the law and should not be required here.[12] Nonetheless, defendants respectfully respond:

---

[12] Requiring forensic copies of computer workstations would not only impose an incredible burden, but also constitute affirmative, mandatory injunctive relief that would alter the status quo. <u>See</u> First Report at 2-3; <u>see also</u> <u>District 50, United Mine Workers of Am. v. Int'l Union,</u>

Question 1:    How many current EOP employees were employed at any time between March
               2003 and October 2005?

Response:      There are 583 individuals currently working at an EOP FRA agency who worked
               at an EOP FRA agency at some time between March 1, 2003 and October 31,
               2005.[13]  Of this figure, 524 are included as employees of an EOP FRA agency.
               The remaining 59 are included because, although contractors and not federal
               employees, they worked at an EOP FRA agency during the referenced time and
               currently work at an EOP FRA agency.  See 3d Payton Decl. ¶ 4.

Question 2:    How many hard drives are in the possession or custody of EOP that were in use
               between March 2003 and October 2005?

Response:      OA is not able to answer this question, as it does not now, and has not in the time
               referenced in the question, tracked the location of individual hard drives to
               individual users.  OA has been able, however, to determine the number of
               computer workstations currently hooked up to the EOP Network that are older
               workstation models that could have been used in the March 2003 to October 2005
               timeframe.  There are 545 workstations that may have been used in an EOP FRA
               component in the relevant time period.  That does not mean that the hard-drive in
               the workstation was in use at the same period. See 3d Payton Decl. ¶¶ 5-8.

Question 3:    To resolve any ambiguities once and for all, EOP is ordered to inform the Court
               on or before May 5, 2008, whether all back-up tapes created between March 2003
               and October 2003 have been preserved – and, to the extent that they have not, to
               state the specific dates within that time period for which no back-up tapes exist.

---

United Mine Workers of Am., 412 F.R.D. 165, 167 (D.C. Cir. 1969) (noting that the status quo is
the "last uncontested status which preceded the pending controversy"); Columbia Hosp. for
Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd., 15 F. Supp. 2d 1, 4 (D.D.C. 1997)
(quoting Phillip v. Fairfield Univ., 118 F.3d 131, 133 (2d Cir. 1997)), aff'd, 159 F.3d 636 (D.C.
Cir 1998) (when a movant seeks mandatory injunctive relief, i.e., an injunction that "would alter,
rather than preserve, the status quo . . . the moving party must meet a higher standard than in the
ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very
serious damage' will result from the denial of the injunction").  Thus, plaintiffs must establish a
heightened showing of irreparable harm, which they do not come close to establishing.  Even on
the "ordinary" showing of injury required for prohibitory injunctive relief, plaintiffs fail to
establish any entitlement to relief for the reasons set forth above.  Forensic imaging is not
necessary to provide the Court an opportunity to afford effective relief, if required.

[13]  These figures are current as of April 26, 2008.

Response:        OA is preserving 438 disaster recovery back-up tapes that were written to
                 between March 1, 2003 and September 30, 2003.  Of those 438 tapes, the earliest
                 date on which data was written on any of the 438 tapes is May 23, 2003.  The
                 latest date that data was written is September 29, 2003.  In total, OA is presently
                 preserving approximately 60,000 disaster recovery back-up tapes, and that
                 number is growing.  See 3d Payton Decl. ¶¶ 9-11.

                 Moreover, by the very nature of the disaster recovery backup tapes used by OA
                 during this relevant time period, email information predating even March 2003
                 should be contained on the existing library of approximately 60,000 disaster
                 recovery back-up tapes.  That is because disaster recovery back-up tapes capture
                 the "files saved on the server, such as, for example, email databases and/or email
                 environment information."  Payton Decl. ¶ 6.  The purpose of the disaster
                 recovery back-up tapes , therefore, is to create a snapshot that "captures all email
                 information present on the EOP Network in the journals, the .pst archives, and the
                 customer mailboxes at the time the back-up is created."  Id. ¶ 7.  A full set of
                 disaster recovery backup tapes created in October 2003, for instance, should
                 contain email information present on the EOP network, including Exchange
                 servers, at the time of the backup, whatever their creation date.  Such a backup
                 should also include email messages residing in a user's inbox, sent folder, trash
                 box, folders saved in the mailbox, as well as email information in the journals and
                 .pst files stores.  Accordingly, the disaster recovery backup system in use by EOP
                 is not designed to capture just that email information created during the 24 hours
                 preceding a backup, or since the last full set of backup tapes were created, but
                 should capture emails sent or received in March 2003, for example, still residing
                 on the EOP network in October 2003.  See 3d Payton Decl. ¶ 12.

       These responses do not change the conclusion, however, that forensic copying of

computer workstations should be rejected.  No benefit is likely, principally because the disaster

recovery back-up tapes contain the information that would be required for the Court to provide

effective relief in the future.  Moreover, as explained in the EOP Defendants' Response to the

March 18, 2008 Order [64], forensic copying is unlikely to capture residual data of emails sent or

received between 2003 and 2005.  See 2d Decl. of Theresa Payton [64-2] ¶¶ 4, 5.  At base, any

forensic copy capturing any "residual data" or "unallocated or slack space" on the 545 current

workstations that could have been used by EOP FRA components during the relevant time frame

is not likely to contain data generated between 2003 and 2005, let alone any email data from that

period.  Id.  For those reasons, defendants respectfully request that the Court reject, in any

Second Report and Recommendation, imposing the burdens of forensic copying computer

workstations that may have been used between March 2003 and October 2005.

## CONCLUSION

For the reasons set forth above, defendants request that the Court reconsider the

recommendations in the First Report and respectfully request that NSA's Emergency Motion to

Extend TRO/Preservation Order and for Depositions [58] be denied.

Respectfully submitted this 5th day of May, 2008.

> GREGORY G. KATSAS
> Acting Assistant Attorney General
>
> JEFFREY A. TAYLOR
> United States Attorney
>
> ELIZABETH J. SHAPIRO
> Assistant Branch Director
>
> /s/ Helen H. Hong
> HELEN H. HONG (CA SBN 235635)
> TAMRA T. MOORE (DC 488392)
> Trial Attorneys
> U.S. Department of Justice, Civil Division
> P.O. Box 883, 20 Massachusetts Ave., NW
> Washington, D.C.  20044
> Telephone: (202) 514-5838
> Fax: (202) 616-8460
> helen.hong@usdoj.gov
>
> Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2008, a true and correct copy of the foregoing

Defendants' Responses to and Request for Reconsideration of the First Report and

Recommendation on Plaintiff NSA's Motion to Extend TRO/Preservation Order was served

electronically by the U.S. District Court for the District of Columbia Electronic Document Filing

System (ECF) and that the document is available on the ECF system.


/s/ Helen H. Hong
HELEN H. HONG

EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY )
AND ETHICS IN WASHINGTON, )
                                         )
                    Plaintiff,           )
                                         )
            v.                           )   Civil Action No: 07-cv-01707
                                         )
EXECUTIVE OFFICE OF THE                  )
PRESIDENT, et al.,                       )
                                         )
                    Defendants.          )
_____  )
NATIONAL SECURITY ARCHIVE,               )
                                         )
                    Plaintiff,           )
                                         )
            v.                           )   Civil Action No: 1:07-cv-01577
(HHK/JMF)                                )
                                         )
EXECUTIVE OFFICE OF THE                  )
PRESIDENT, et al.,                       )
                                         )
                    Defendants.          )
_____  )

### THIRD DECLARATION OF THERESA PAYTON

I, Theresa Payton, declare as follows:

1.      My name is Theresa Payton and I currently hold the position of Chief

Information Officer (CIO) in the Office of Administration (OA), Executive Office of the

President (EOP).  In this capacity, I am responsible for providing strategic and

operational leadership within the Office of the Chief Information Officer (OCIO).  I have

held the position of CIO in OA since May 2006.

2.      I submit this Third Declaration in response to the Magistrate Judge John

M. Facciola's Memorandum Order and First Report and Recommendation ("First

Report") dated April 24, 2008 and in connection with Defendants' Responses to and

Request for Reconsideration of the First Report. The statements contained herein are

based on my personal knowledge and upon information made available to me by

members of my staff in the performance of my official duties.

   3.  The Office of the Chief Information Officer (OCIO) provides around-the-

clock technological support for all EOP components. OCIO provides both Federal and

Presidential components with services such as production support, application

development and support, intranet and office automation, email, disaster recovery

services, support for continuity of Operations (COOP), Enterprise Architecture,

Information Assurance, Federal Records Management, and technology assistance to the

White House Office of Records management. As part of this support, OCIO manages the

email accounts for the sensitive but unclassified network at the EOP for over 3000

customers. In addition to these responsibilities, we are currently preparing the people,

process and technology for the Presidential transition to the next administration.

<strong><u>Responding to the Court's Questions</u></strong>

**A.**  *Question 1: "How many current EOP employees were employed at any time between March 2003 and October 2005?"*

   4.  Based on information from OA's Human Resources Division, I understand

that there are 583 individuals who presently work at EOP FRA components who also

worked in an FRA component sometime between March 2003 and October 2005.

**B.**  *Question 2: "How many hard drives are in the possession or custody of EOP that were in use between March 2003 and October 2005?"*

   5.  As part of its core administrative responsibilities, OA delivers

workstations, which include hard drives and CPUs, to the components. To my

2

knowledge, OA has not historically tracked hard drive information regarding assignments to individuals using a workstation within each component. Like security specialists elsewhere, between March 2003 and October 2005, OA did not have an established asset management process, which would have included activities such as tracking hard drive assignments within each EOP component.[1] OA does not know what hard drives these 583 individuals used during that timeframe or if the hard drives are still in existence. Accordingly, OA is unable to directly respond to the court's request for the number of hard drives that were in use between March 2003 and October 2005.

6.    However, the closest proxy available to approximate the information requested by the Court is that OA has been able to identify 545 workstations, not hard drives, that may have been in use at the EOP between March 2003 and October 2005. OA used a research process to identify these workstations by which OA has manually reviewed manufacturer dates for workstation models and manually reviewed the network through a query process for older workstation models.[2] The results of this review were then cross-referenced to the EOP workstation serial number and then compared to a vendor report, generating a list of potential workstations that may have been in use at the EOP between March 2003 and October 2005. The limitations of this process should be noted, however. Of the 545 workstations, we are presently aware that 527 are in the possession of components that have technology staff and budget that allow them to move and configure assets to meet their component's mission. Therefore, OCIO would not

---

[1] Until recently, security specialists did not have access to rigorous standards and policies covering IT asset management. IT Asset management principles merge traditional financial practices with security concerns, such as the tracking and inventory of computer hard drives. *See, e.g.*, ISO/IEC 27002, *Information Technology-Security Techniques-Code of practice for Information Security Management* at Section 7 (*Asset Management*) (2005, amended 2007) (This new international ISO standard for Security Management includes extensive policies and guidelines governing the management of IT assets, ranging from inventory and classification to use, labeling, tracking, and handling).

[2] This query process was explained in the declaration provided on March 21, 2008.

3

ordinarily know if hard drives had been reconfigured, removed or transferred to another workstation over time.

7.     Additionally, the normal maintenance and software upgrades significantly increase the likelihood that OA would need to pursue a rigorous forensics process to provide meaningful information from these 545 workstations. Our preliminary estimate based on initial market research indicates that the cost of performing this process for all 545 workstations would be extremely costly in the aggregate.[3] This estimate does not include additional direct and indirect costs such as OA staff, integration services, oversight, quality assurance, and delivering the output to the court. These financial and staff burdens are extraordinary.

8.     For example, if required to undertake some or all of the tasks implicated by the Court's First Report, numerous OCIO employees, including the OCIO leadership team, would be diverted from essential tasks of providing service to the EOP components, including planning for the Presidential transition. In some cases, leadership resources have spent 100 percent of their time dedicated to this inquiry rather than attending to other operational priorities.

**C.     Question 3: "[W]hether all back-up tapes created between March 2003 and October 2003 have been preserved – and, to the extent they have not, [] state the specific dates within that period for which no back-up tapes exist."**

9.     Upon review of the Court's First Report, OCIO took steps to respond to the inquiry on the number of disaster recovery back-up tapes created between March 1 and September 30, 2003. Given the method in which the back-up system provides information about the tapes, OCIO is not able to determine the specific creation date of

---

[3] A leading U.S. computer forensics producer suggested that costs would not only include forensic services per unit but also specialized software and services commitments. The producer provides to a wide range of Federal departments and agencies and has published formal pricing on the GSA schedule.

4

the tape (eg., first use) but can determine a date the tape was "written to" as it was used during this targeted timeframe.

10.     According to the disaster recovery back-up tape system, there are 438 disaster recovery back-up tapes that were written to between March 1 and September 30, 2003. The tapes – now totaling approximately 60,000 in number, and growing each month – have been preserved in a controlled-access tape vault since tape recycling stopped on October 1, 2003.

11.     Due to the disaster recovery back-up tape process, each of the 438 tapes is likely to contain data written to it on multiple days. The data written to it may also cover multiple days that were present on the EOP network when the backup was made. (For example, a file from 2001 present on a backed up server in the EOP network in 2003, would be found on a 2003 disaster recovery back-up tape). At this juncture, based on our due diligence, and according to the disaster recovery back-up tape system, the earliest date on which data was written on any of the 438 tapes is May 23, 2003; the latest date that data was written was September 29, 2003.

12.     Even without determining what specific information may be on those 438 tapes, a full set of disaster recovery backup tapes created in October 2003, for instance, should contain email information present on the EOP network, including Exchange servers, at the time of the backup, whatever their creation date. Such a backup should also include email messages residing in a user's inbox, sent folder, trash box, folders saved in the mailbox, as well as email information in the journals and .pst file stores. The disaster recovery backup system in use by EOP is not designed to capture just that email information created during the 24 hours preceding a backup, or since the last full set of

5

backup tapes were created, but should capture emails sent or received in March 2003, for example, still residing on the EOP network in October 2003.

13.     The burden associated with providing the court more detailed information regarding the content on the 438 tapes is extraordinary. This burden includes financial resources to fund additional equipment, make copies of the tapes, procure software, deliver integration services, and support staff. Significant senior management oversight will be needed to procure qualified resources to perform the work, retain the integrity of the tapes, manage the overall process and report back findings to the court upon completion. The burden also requires OA personnel that would need to be diverted from core mission and Presidential transition planning activities.

14.     Finally, the Court's proposals in the First Report would divert OA from its comprehensive, measured, process-driven, and cost-effective approach to address Federal Records Act compliance within the EOP for FRA components.[4] We expect OA's approach to be more accurate, and if any restoral process is ever required, the information gained from the approach will identify and focus the efforts on a targeted universe of tapes for restoral. We believe this approach balances the extraordinary financial and human resource burdens with a comprehensive plan to address these matters.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, the foregoing to be true and correct.

---

[4] For details regarding OA's approach, please refer to the written testimony provided to the House Committee on Oversight and Government Reform February 26, 2008. A copy of this written testimony is attached.

6

Executed the day of ___5___ May, 2008

THERESA PAYTON
Chief Information Officer
Office of Administration, Executive Office
of the President

7

**Testimony of Theresa Payton**

**Chief Information Office, Office of Administration**

**Before the**

**House Committee on Oversight and Government Reform**

**February 26, 2008**

Good morning Chairman Waxman, Ranking Member Davis, and members of the Committee on Oversight and Government Reform. I am Theresa Payton and I am the current Chief Information Officer (CIO) in the Office of Administration (OA) at the Executive Office of the President (EOP). I have been in this role since May 2006. I am glad to be here today to discuss the status of the White House efforts to preserve emails. I will summarize my remarks and ask that my full statement be included in the record.

Let me begin by saying that the Executive Office of the President is committed to maintaining a thorough and reliable archiving process for Presidential and Federal records. We believe that we have such a process currently in place. Work is underway to improve that process significantly and we fully expect such improvements to be implemented before the end of this Administration. We are also committed to having a robust and reliable system to quickly recover from any disasters that may affect the EOP network. We are confident that our disaster recovery system meets industry standards and has been responsibly managed. Before I discuss the EOP archiving process and disaster recovery system and address what I believe are the Committee's concerns regarding these activities, I would like to provide some background on my office and on the EOP email systems used by this Administration.

1

The Office of the Chief Information Officer (OCIO) provides around-the-clock technological support for all EOP components. OCIO provides components with services such as production support, application development and support, intranet and office automation, email, disaster recovery services, support for Continuity of Operations (COOP), Enterprise Architecture, Information Assurance, Federal Records Management, and technology assistance to the White House Office of Records Management. As part of this support, OCIO manages the email accounts for the sensitive but unclassified network at the EOP for over 3000 customers.

I have had numerous conversations with my staff and have reviewed OCIO documents pre-dating my arrival in May 2006. The portions of my written testimony relating to matters occurring before my arrival derive principally from those sources. It appears that the current Administration used Lotus Notes as its email platform at the beginning of the first term. By 2002, the decision was made to replace Lotus Notes with Microsoft Exchange. The transition from Notes mail to Exchange mail occurred over a two year period from 2002 through 2004.

From the start of the current Administration, the EOP has had a process for archiving email sent from or received by the EOP network. This archiving process has evolved over time as new technologies emerged and industry practices evolved. When Lotus Notes was the email platform, the archiving process relied on the ARMS system. ARMS was launched in 1994. At a general level, if a customer received email from outside of the EOP network (a non-EOP account), ARMS would archive the email during a scan of the customer's email account. If a customer sent or received email inside the EOP network using Lotus Notes, a copy of the email was sent to ARMS for archiving.

During the transition from Notes email to Exchange mail, the OCIO attempted to create a system to allow ARMS to serve the same archiving function for Exchange as it had for Lotus

2

Notes. This project, called EIS, was eventually abandoned due to various technical and system performance reasons. ARMS was a custom-designed application, and I understand that it was discovered that it just could not be effectively integrated with Microsoft Exchange—despite the best efforts of OCIO.

In place of ARMS, the OCIO developed an archiving process that used the journaling function inherent in Microsoft Exchange. Under that process, and in very general terms, whenever email is sent or received by an EOP Exchange customer, a copy of that email is automatically created and stored on a journal to which customers should not have access. Journaled emails are then archived on a separate server in what is referred to as a Personal Storage Table or "PST" file. This process today separates archived email by respective EOP component to facilitate preservation under the Federal Records Act or the Presidential Records Act.

We are aware that the Committee has expressed concerns about allegations that EOP emails were not properly archived between 2003 and 2005. I am aware of a chart created by OCIO staff in late 2005 to early 2006 that identifies dates and EOP components for which email counts were thought to be low or non-existent during the 2003-2005 time period. Since that time, the OCIO staff came to have reservations about the tool used to collect the data in the chart. OCIO thus hired a contractor to perform a comprehensive re-inventory of existing archived messages by component and date. This re-inventory effort is nearly complete. OCIO has also begun an analysis of potential anomalies. Once both the re-inventory and analysis are complete, we will have a separate team do a quality assurance review to confirm the accuracy of the results. This process of re-inventory, analysis, and quality assurance is complex, labor intensive, and time-consuming. At this stage, OCIO does not know if any emails were not properly preserved

3

in the archiving process. Once we complete our review, we will share the results with NARA. If there are any anomalies that cannot be resolved, we will work with NARA to discuss the details of a recovery effort and may seek additional help to ensure that the requirements of both the Presidential Records Act and the Federal Records Act are met during the transition of this Administration.

The EOP has continued to seek ways to improve the archiving process through new technology and updated procedures. For example, beginning in 2005, the OCIO undertook an internal review of record keeping procedures. OCIO made changes to and documented additional standard operating procedures as our internal review revealed areas where we could improve both the accuracy and performance of our archiving process.

After the transition to Microsoft Exchange, the EOP also considered implementing a hardware and software system called ECRMS (Electronic Communications Records Management System) in order to improve and expand the existing message archiving process already in place. However, in late 2006, after consulting staff in OCIO, I determined that ECRMS required additional investments and modifications if it was to fulfill the EOP's requirements for records management and archiving. While testing the process of loading email records into the ECRMS system, the team also found performance issues. For several reasons, including the need for additional modifications, the identified performance issues, and projected costs, the deployment of ECRMS was cancelled. Some of the hardware, software, and technical expertise gathered during the project were then used by OCIO for other projects.

The EOP is currently in the process of deploying Documentum$^{TM}$ and its platform extensions for records management, a DoD-approved system that meets NARA guidelines and will meet the EOP's requirements for records management and archiving. The Documentum$^{TM}$

system is widely used in the Federal Government and we expect will be less costly to implement than other systems considered, including ECRMS. We conducted a technology pilot in late 2007 to confirm that the technology will meet EOP requirements and we believe that the deployment of the Documentum™ system will meet the EOP's records management and archiving needs for the foreseeable future and will address many, if not all, of the alleged concerns raised about the current archiving process.

In addition to the archiving process to preserve emails, the EOP has had a disaster recovery system in place since the start of the Administration to backup our network for protection in the event of a catastrophe or system failure. The EOP Network has been and continues to be regularly backed up onto disaster recovery backup tapes as part of the EOP's disaster recovery system.

From April 2001 to October 2003, in accordance with industry standards and best practices, OCIO used a "Grandfather-Father-Son" approach to backups where three generations of full disaster recovery tapes were kept offsite. Under this approach, whenever a new generation of backups was created, the oldest set of tapes was available to be recycled.

We understand concerns have been raised that the recycling of backup tapes from 2001 to 2003 may have resulted in the loss of EOP emails. Let me be clear: whether or not disaster recovery tapes were recycled would not affect whether emails were preserved by the archiving process. The archiving process and disaster recovery system are separate functions with different purposes. The disaster recovery system is not the system designed to preserve and archive email communications. The disaster recovery tapes would, however, contain email information on the EOP system at the time of a backup, in addition to a backup copy of the email archives, as well as much other information. Therefore, in the event that an email was not

5

preserved by the archiving process, it may, nonetheless, be available on the disaster recovery tapes.

In September or early October 2003, OA ceased its practice of recycling disaster recovery tapes. OA continues to preserve its disaster recovery tapes to the present day. Since October of 2003, the OCIO has stored its backup tapes in a secured vault that meets the storage guidelines provided by the tape manufacturer and NARA. Of course, the EOP also continues to preserve emails through its normal archiving process, as it has since the start of the Administration.

In closing, I would like to reiterate that the OCIO is committed to maintaining a thorough and reliable archiving process for Presidential and Federal email records. We fully intend to complete our analysis of the archiving process, address any and all identified anomalies, and deploy the Documentum$^{TM}$ system as the EOP's email archiving and records-keeping solution for the foreseeable future. We look forward to continuing our partnership with NARA to ensure the EOP's Presidential and Federal email records are properly preserved throughout this and any future Administration and transitioned to NARA as appropriate.

Thank you. I will be glad to answer your questions.

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>      Plaintiff,<br><br>  v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No: 1:07-cv-01707 (HHK/JMF)<br>)<br>)<br>)<br>)<br>)<br>) |
| NATIONAL SECURITY ARCHIVE,<br><br>      Plaintiff,<br><br>  v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No: 1:07-cv-01577 (HHK/JMF)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' RESPONSE TO NSA'S LIMITED OBJECTION TO THE MAGISTRATE JUDGE'S PROPOSED FINDING AND RECOMMENDATION DENYING PLAINTIFF NSA'S REQUEST FOR DEPOSITIONS

The Magistrate Judge appropriately rejected NSA's request to conduct the far-reaching

depositions of the Chief Information Officer for the Office of Administration, a "current or

former employee that OA can produce as a competent witness," and a National Archives and

Records Administration witness.  See NSA's Mem. of P.&A. in Support of Emergency Mot. to

Extend TRO/Preservation Or. & for Deps. [58-2] at 16 ("NSA's Emerg. Mot.").  As the

defendants established in their opposition to the request for depositions, see Opp'n to Mot. to

Extend TRO [60] at 3-6; Opp'n to Mot. for Or. to Show Cause [61] at 15-18, incorporated in full

here, NSA's emergency application for expedited discovery rests on inaccurate and unfounded

claims of inconsistency between statements in the first Declaration of Theresa Payton and

testimony elicited at the February 26, 2008 hearing before House of Representatives Committee

on Government Oversight and Reform.  Inconsistencies simply do not exist to support NSA's

effort to conduct burdensome deposition discovery.

 Significantly, too, as explained by the Magistrate Judge, any "purported 'contradictions'"

in the declaration "have no bearing" on the emergency relief otherwise requested to expand the

contours of the November 12, 2007 injunctive order.[1] Opp'n to Mot. to Extend TRO [60] at 7;

see also In re Fannie Mae Derivative Lit., 227 F.R.D. 142, 143 (D.D.C. 2005) (rejecting

expedited discovery requests that "appear to be a thinly veiled attempt to circumvent the normal

litigation process").  NSA seeks to conduct merits discovery, for example, on the adequacy of an

email archiving process and the timing of the Office of Administration's investigations into the

email archiving process.  See, e.g., EOP Defs.' Opp'n to NSA's Emergency Mot. [60] at 7;

Mem. Or. and First Report and Recommendation [67] at 9 (Apr. 24, 2008) ("First Report").  As

---

[1] NSA brought its request for depositions through an application for a temporary
restraining order.  See NSA's Emerg. Mot. [58-1].  EOP defendants established that NSA could
not meet its burden under the four-factor test mandated by the D.C. Circuit.  See Defs.' Opp'n to
NSA's Emergency Mot. [60] at 3.  Even construed as a motion for expedited discovery,
however, NSA's request must be rejected.  Because NSA's purported need for discovery – to
clarify alleged contradictions on the merits of its claims – is unrelated to its request to expand the
preliminary injunction order, its discovery demands must be judged under the more strict Notaro
test for expedited discovery.  The court did not in Disability Rights Council of Greater
Washington v. WMATA, 234 F.R.D. 4 (D.D.C. 2006), as plaintiffs suggest, "reject the more
stringent Notaro test" in favor of a reasonableness test where discovery requests are unrelated to
a motion for preliminary injunction.  NSA's Limited Obj. [3] at 3; see also Defs.' Consolidated
Opp'n to Pls.' Mot. for Leave to Conduct Expedited Discovery [16] at 16-20.  "Judged by either
standard," however, NSA is not entitled to discovery.  First Report at 9.

such, the Magistrate Judge properly concluded that he "cannot recommend the taking of the

depositions sought," because the Court has sufficient information to assure itself that it may

provide effective relief, if warranted, later.  See First Report at 9 ("The central focus a[t] this

point is preserving the *res*; coupled with the [Nov. 12, 2007] Order, this can be accomplished . . .

based on the *information already provided by the parties in their many briefs*, the

recommendations made here, and any future recommendation that I make[.]") (emphasis added).

      The Magistrate Judge's recommendation to deny depositions is consistent with the well-

established practice of staying all discovery during the pendency of a dispositive motion.  See,

e.g., Patterson v. United States, 901 F.2d 927, 929 (11th Cir. 1990) (holding that a district court

did not abuse its discretion in entering protective order prohibiting discovery pending

determination of motion to dismiss or for summary judgment); Klingschmitt v. Winter, Civ. No.

06-1832, Slip. Or. (D.D.C. Feb. 28, 2007) (HHK) (granting motion for protective order to stay

discovery during pendency of motion to dismiss).  This is particularly true where a plaintiff

seeks, as NSA does here, discovery from the Executive Branch that could be obviated by a

pending jurisdictional motion.  See, e.g., Cheney v. U.S. Dist. Court for the Dist. of Columbia,

542 U.S. 367, 385 (2004) ("The high respect that is owed to the office of the Chief Executive . . .

is a matter that should inform the conduct of the entire proceeding, including the timing and

scope of discovery.") (quoting Clinton v. Jones, 520 U.S. 681, 707 (1997)).  "[J]urisdiction is

power to declare the law," and without it, "the only function remaining to the court is that of

announcing the fact and dismissing the cause."  Steel Co. v. Citizens for a Better Env't, 523 U.S.

83, 94 (1998).  Defendants' currently pending motion to dismiss on jurisdictional grounds

supports, and in fact compels, the Magistrate Judge's recommendation that permitting

depositions would be unwarranted and intrusive.[2]

      Nothing in NSA's Limited Objection to the Magistrate Judge's Proposed Finding and

Recommendation alters the conclusion that NSA's requested depositions (or compelled hearing

testimony) are impermissible under controlling law.[3]  As the Magistrate Judge explained, this

Court has the necessary facts and law before it to assure itself that it may provide effective relief

on the merits, if warranted, in the future, without any need to impose the significant burdens

associated with expedited discovery.  See First Report at 8-9.  The court-ordered preservation of

an approximately 60,000 (and growing) cache of disaster recovery back-up tapes fully resolves

any question about the Court's ability to order effective relief.  See generally EOP Defs.' LCvR

72.3(b) Objections to First Report [72].

---

[2]     Similarly, as defendants explained in their consolidated opposition to plaintiffs' motion for expedited discovery, plaintiffs' claims arise under the APA and are therefore generally limited to record review.  Accordingly, it would serve no purpose to permit plaintiff to seek discovery of additional extra-record materials now.  For this reason, courts generally refuse to permit discovery to proceed in actions brought under the APA.  See Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1, 7 (D.C. Cir. 1998) (the APA "limits review to the administrative record, except where there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review") (internal quotation and citations omitted); see also Trudeau v. FTC, 384 F. Supp. 2d 281, 293-94 (D.D.C. 2005), aff'd, 456 F.3d 178 (D.C. Cir. 2006).

[3]     The scope of NSA's "limited" objection is unclear.  Although NSA purportedly pursues "court-supervised depositions," NSA does not identify the parties it seeks to depose or what topics from its original motion it continues to seek to explore.  See NSA's Limited Obj. at 1, 4. Under Local Civil Rule 72.3(b), NSA bears the burden of "specifically identify[ing] the portions of the proposed findings and recommendations to which objection is made and the basis for the objection," or risk waiving those objections. LCvR 72.3(b).  Although NSA does not provide specific objections and bases for objections covering the subjects and persons it sought to depose in the original motion, defendants incorporate their responses to those requests in full here.

Nonetheless, NSA contends that the EOP defendants' alleged "failure to answer the
Magistrate Judge's April 24th questions is a new and significant development" supporting its
need for expedited discovery.[4]  NSA's Limited Obj. at 3.  That alleged failure to answer the
questions is simply not so.  EOP defendants responded with a six-page *Third* Declaration of
Theresa Payton and a 21-page filing, in relevant part (1) explaining that the disaster recovery
back-up tapes obviate any claim of harm; and (2) identifying 438 disaster recovery back-up tapes
under preservation for the March 2003 to October 2003 time period.  See EOP Defs.' Response
and Request for Reconsideration [69].  No deposition testimony is thus necessary or appropriate
to assess the propriety of expanding the November 12, 2007 order.  Nor would NSA's sweeping
demands for deposition testimony on the broad topics set forth in its motion shed light on the
issues addressed in the Third Declaration.  A deposition or compelled hearing testimony would
not identify, for example, "the specific dates within that period for which no tapes exist" as NSA
seeks to develop, because the EOP defendants already explained that "the burden associated with
providing the court more detailed information regarding the content of the 438 tapes is
extraordinary."  Third Declaration of Theresa Payton [69] ¶¶ 13-14.

Finally, even if the Court rejects the Magistrate Judge's recommendation to expand the
November 12, 2007 Order, discovery is not warranted as NSA contends.  See NSA's Limited
Obj. at 3.  EOP defendants explained in their Local Rule 72.3(b) objections [72] that the status

---

[4]     NSA cites Dimension Data North Am., Inc. v. Netstar-1, Inc., 226 F.R.D. 528 (E.D.N.C.
2005) as support for its proposition that new developments may support *continuing* requests for
expedited discovery.  Dimension Data nowhere provides that moving targets for relief are
appropriate, as plaintiff argues here.  In Dimension Data, the court denied a motion for expedited
discovery, stating simply that future motions could be filed and entertained if the circumstances
warranted.

-5-

quo maintained through court-ordered preservation of "media, no matter how described, presently in [defendants'] possess[ion], or under their custody or control, that were created with the intention of preserving data in the event of its inadvertent destruction" fully resolves any question about the Court's ability to provide effective relief.  Or. [18] at 2.  No deposition testimony is necessary – or permissible – to affirm that conclusion.

//

//

//

//

//

//

//

//

## CONCLUSION

For the reasons set forth above, this Court should reject NSA's objection [71] to the

Magistrate Judge's recommendation to deny expedited discovery and to deny NSA's request for

a hearing calling Ms. Payton as a witness.  No expedited discovery or compulsion to attend a

hearing is appropriate.

Respectfully submitted this 19th day of May, 2008.


GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong_____
HELEN H. HONG (CA SBN 235635)
TAMRA T. MOORE (DC 488392)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C.  20044
Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2008, a true and correct copy of the foregoing Defendants' Response to NSA's Limited Objection to the Magistrate Judge's Proposed Finding and Recommendation Denying Plaintiff NSA's Request for Depositions was served electronically by the U.S. District Court for the District of Columbia Electronic Document Filing System (ECF) and that the document is available on the ECF system.

/s/ Helen H. Hong
HELEN H. HONG

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | ) ) ) | |
| Defendants. | ) ) | |
| NATIONAL SECURITY ARCHIVE, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No: 1:07-cv-01577 (HHK/JMF) |
| EXECUTIVE OFFICE OF THE PRESIDENT, et al., | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' OPPOSITION TO NSA's "EMERGENCY" MOTION TO EXTEND TRO/PRESERVATION ORDER AND FOR DEPOSITIONS

## INTRODUCTION

Plaintiff National Security Archive's ("NSA") "emergency" motion appears to be pretext to obtain a hearing on its motion for expedited discovery.[1]  Having failed to convince the Court

---

[1]  NSA counsel never disclosed to defendants' counsel in the March 10 and 11 conferences that NSA would seek emergency relief in the instant motion.  Rather, during the telephone conferences on March 10 and 11, NSA stated that it intended to file a motion for deposition of OA and NARA officials, and an order expanding the scope of the preservation order.  Counsel's failure to disclose that NSA would file an application for temporary injunctive relief is a violation of Local Civil Rule 65.1(a) and alone justifies rejection of NSA's emergency demands.

through four prior motions to grant a hearing on its motion for expedited discovery,[2] NSA now attempts to force a hearing by invoking the extraordinary, emergency powers of the Court.[3]  But, NSA provides no support for its pretextual request for extraordinary relief and fails to satisfy the exacting standard for granting such relief.  Like its joint plaintiff in this consolidated action Citizens for Responsibility and Ethics in Washington ("CREW"), NSA misconstrues certain facts, and ignores others, that would otherwise undermine its request for "emergency" relief.[4] As demonstrated more fully below, there should be no doubt as to the truthfulness or accuracy of Ms. Payton's statements and there are no exigencies warranting either "emergency" depositions or an "emergency" enlargement of the Court's existing preservation order.

Given NSA's failure to justify extraordinary relief, the principal objective of NSA's "emergency" motion is clear:  obtaining a hearing on expedited discovery, to include taking the depositions of senior level officials at the Office of Administration and the National Archives and Records Administration (NARA) that would be nothing more than fishing expeditions.  NSA provides no credible facts to support its request for emergency relief.  Rather, NSA predicates its

---

[2]  See NSA's Motion for Expedited Discovery [5] (requesting hearing and expedited discovery); NSA Resp. to Decl. of Theresa Payton [50] (same); CREW Mot. for Discovery [14] (same); CREW's Mem. in Support of Pl. NSA's Request for Hr'g [53] (same).

[3]  NSA also seeks to rely on the related Local Civil Rule 65.1(d), which provides that a hearing on any preliminary injunction application shall be heard by a court no later than 20 days after the filing of the application.  Of course, courts may exercise discretion to deny an application for injunctive relief without a hearing on the merits "when the record is sufficient to demonstrate a lack of right to relief."  Smith v. Harvey, No. 06-1117, 2006  WL 202026 at *2 (D.D.C. July 17, 2006).  Given the utter lack of support for NSA's "emergency" motion, the Court should exercise its discretion to deny the application for relief without a hearing.

[4]  For a more in-depth discussion of the unsupportable nature of plaintiffs' allegations against Ms. Payton, see also "Defendants Opposition to CREW's Motion to Show Cause Why Defendants Should Not be Held in Contempt and for Sanctions," which will be filed shortly.

–2–

"emergency" motion upon exigencies of its own making and, from there, bootstraps a request for expedited depositions that is also without merit. For the reasons stated below, NSA's request for "emergency" relief must fail.[5]

## **ARGUMENT**

When deciding whether to grant emergency injunctive relief, including a temporary restraining order, the district court must follow a well-settled standard: the movant must show irreparable injury, a likelihood of success on the merits, his interests and those of the public would be harmed if the restraining order were not imposed, and that the defendant would suffer no harm upon granting the emergency relief. See, e.g., Washington Metropolitan Area Transit Authority v. Holiday Tours, 559 F.2d 841, 843 (D.C.Cir.1977). No single factor is dispositive. Here, the absence of any evidence to satisfy the elements for such extreme relief compels denial of NSA's "emergency" motion.

The Court need only examine the structure of NSA's "emergency" motion to conclude that NSA's argument for emergency depositions or an enlargement of the preservation order is legally and factually unsupportable. Indeed, NSA makes only passing reference to the strict standard for emergency injunctive relief and does so at page 20 of its 23-page motion, in tacit recognition that its arguments would not pass muster under this exacting standard. Measured against the well-established four-factor test for analyzing requests for emergency injunctive

---

[5] Alternatively, to the extent this Court seeks to reach the merits of NSA's motion, defendants respectfully request that this Court convert NSA's "emergency motion" to a motion considered in the normal course as governed by Local Civil Rule 7.

relief – an exercise NSA avoids with respect to its request for emergency depositions –  the

request should be rejected.

Substantively, NSA's motion fails because it has not and cannot demonstrate irreparable

harm or a likelihood of success on the merits.  This is true because, as discussed below, NSA

relies entirely on manufactured conflicts between the Declaration of Theresa Payton submitted

January 15, 2008 and statements and documents provided at a February 26, 2008 hearing before

the United States House of Representatives Committee on Oversight and Government Reform

("Committee Hearing").  As described more fully in defendants' opposition to CREW's Motion

For An Order To Show Cause, Ms. Payton's declaration is entirely consistent with recent

statements and documents adduced at the Committee Hearing.  Given the large number of

misstatements and mischaracterizations by NSA in its "emergency" motion, defendants will

address just a representative few in demonstrating that NSA is not entitled to any relief

whatsoever.

For instance, NSA relies upon and cites to the unsworn and un-cross-examined written

statements from former Office of Administration employee Steven McDevitt in support of its

contention that Ms. Payton's statements about the preparation of the 2005 "chart" are untruthful

and inaccurate.  Specifically, NSA, like its joint plaintiff CREW, challenges the veracity of

Ms. Payton's statement that she was "aware of a chart created by a former employee within

OCIO[.]"  Payton Decl. ¶ 10.  That statement challenged by NSA is an accurate recitation of

Ms. Payton's understanding.  Furthermore, the statement is corroborated (not contradicted) by

an unsworn statement by the very person upon whom NSA relies – Steven McDevitt – who

–4–

informed Congress that he "was responsible for designing the chart[.]"  NSA Mot., Ex. 10

("Resp. from Steven McDevitt (Part 2 of 2)" at 4 (response to question 19)).  Notwithstanding

the efforts of the "team" working under Mr. McDevitt to gather data that may ultimately have

populated Mr. McDevitt's chart, even Mr. McDevitt acknowledged that the chart was designed

and created under his direction and leadership.  See id. ("I . . . had a leading role in the definition

and execution of the analysis.").  NSA evidently fails to identify these statements in order to

marshal support for its motion and otherwise impugn Ms. Payton's veracity.  Incomplete

characterization of fact, however, does not justify emergency relief.  As stated above,

Ms. Payton's declaration was then, and remains today, truthful and accurate.  No conflict – other

than those created by NSA or its joint plaintiff CREW – exists to justify the emergency relief

NSA seeks.

       NSA's request for emergency relief is also predicated on supposed contradictions

between Ms. Payton's declaration and documents and statements adduced at the hearing

"regarding whether any emails . . . can be restored from back-up tapes."  NSA Mot. at 7.

Contrary to NSA's contention, there is no evidence that "the search for presidential records from

the Office of the Vice President . . . revealed that emails were indeed deleted from both the

archive and disaster recovery tapes."  NSA Mot. at 21.  Like its co-plaintiff CREW, NSA

mischaracterizes the document upon which it relies and incompletely quotes Ms. Payton's

hearing statements without providing a proper context.  First, no evidence from the Committee

Hearing – whether the unsworn and un-cross-examined statement of Mr. McDevitt or the

documents disclosed at the hearing – establishes that emails are not recoverable from back-up

tapes.  Quite to the contrary, the documentary evidence confirms that email from "70 OVP mailboxes" was restored from the disaster recovery back-up tapes themselves.  NSA Mot., Ex. 6 ("Sources of Supplemental Information: document entitled "Exchange MST Activity Plan").  This is consistent with Ms. Payton's response to a question from Congressman Tierney when Ms. Payton testified, under oath, that 70 OVP mailboxes and approximately 17,000 OVP emails for a one week period had been restored from the disaster recovery back-up tapes.  See NSA Mot., Ex. 4 (Hr'g Tr. at 90:2087-2089).[6]  This is also consistent with her sworn testimony throughout the testimony, when she confirmed that she had "every reason to believe" that emails would be recoverable from the disaster recovery back-up tapes.  See NSA Mot., Ex. 4 (Hr'g Tr. at 121:2862-124:2937 (noting that email restore for OVP mailboxes had been successful, and Ms. Payton agreeing under oath that "certainly with the backups, we have every reason to believe at this point that we will be able to get the documents we seek"); id. at 59:1325-60:1327 (testifying that she is "very confident" that backup tapes may be used to recover email data); id. at 61:1358-1368 (same)).  Those assurances alone are sufficient grounds to reject NSA's request for emergency relief.

Even if inconsistencies truly existed, however – a notion that is unsupported and should unequivocally be rejected -- such inconsistencies as identified in NSA's motion would be immaterial to the four questions posed by the Court for the purpose of determining whether

---

[6] It should be noted that NSA quotes from this exchange between Cong. Tierney and Ms. Payton, concluding from it that emails "are in fact missing from *both* the EOP network *and* the back-up tapes."  NSA Mot. at 9.  However, NSA conveniently omits the portion of Ms. Payton's testimony that immediately follows where she states, under oath, that "70 mailboxes were restored and 17,000 e-mails . . . ."

emergency relief should be granted.[7]  Purported "contradictions" about whether "any emails are missing," "regarding the OA's analysis of missing emails," the adequacy of an email archiving process, and "regarding the timing of OA's email analysis" have no bearing on what additional media, if any, must be preserved as NSA requests.  Those supposed "contradictions" are instead directed to something else entirely:  the very merits of NSA's complaint.  Even accepting as true NSA's version of the alleged contradictions – allegations that OA categorically rejects – the contours of any preservation order remain the same.  That is because the preservation order entered in this case was premised on an assumption that "e-mails have been deleted."  Report and Recommendation of Oct. 19, 2007 [11] at 3.  No discovery is necessary to confirm a state of affairs that has already been assumed to be the case.

Finally, NSA's declared need for emergency relief now is undercut by the fact that NSA asserted no such need two-months ago when it raised identical concerns about defendants' response to the Court's January 8, 2008 inquiries, but did not invoke the Court's emergency powers.  See Natural Resources Defense Council v. Pena, 147 F.3d 1012, 1026 (D.C. Cir. 2006) (delay in seeking emergency relief undercuts request for relief).  Because NSA has failed to establish irreparable harm or a likelihood that it will succeed on the merits, the Court should reject outright NSA's meritless request for any emergency relief.[8]

---

[7] Here, specifically, NSA requests that the November 12, 2007 preservation order should be enlarged to include not just disaster recovery back-up tapes, but "all media in EOP that may contain FRA-regulated email files[.]"  NSA Mot. at 23.

[8] Alternatively, at a minimum, the Court should convert the "emergency" motion to a motion for consideration in the

## **CONCLUSION**

For the reasons set forth above, plaintiff NSA's "Emergency" Motion to Extend

TRO/Preservation Order and for Depositions must be denied.

Respectfully submitted this 14th day of March, 2008.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

/s/ Helen H. Hong
HELEN H. HONG (CA SBN 235635)
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883, 20 Massachusetts Ave., NW
Washington, D.C. 20044
        Telephone: (202) 514-5838
Fax: (202) 616-8460
helen.hong@usdoj.gov

Counsel for Defendants

---

ordinary course under LCvR 7.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2008, a true and correct copy of the foregoing

Defendants' Opposition to NSA's "Emergency" Motion to Extend TRO/Preservation Order and

for Depositions was served electronically by the U.S. District Court for the District of Columbia

Electronic Document Filing System (ECF) and that the document is available on the ECF

system.

/s/ Helen H. Hong _____
HELEN H. HONG

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY | ) | |
| AND ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| | ) | |
| EXECUTIVE OFFICE OF THE | ) | |
| PRESIDENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| NATIONAL SECURITY ARCHIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:07-cv-01577 (HHK/JMF) |
| | ) | |
| EXECUTIVE OFFICE OF THE | ) | |
| PRESIDENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PROPOSED] ORDER DENYING NSA's EMERGENCY MOTION TO EXTEND
TRO/PRESERVATION ORDER AND FOR DEPOSITIONS**

Upon consideration of the papers filed by all the parties, it is hereby

ORDERED that NSA's Emergency Motion to Extend TRO/Preservation Order and for

Depositions [58] be, and hereby is, DENIED.

Dated this _____ day of _____, 2008.

_____
HONORABLE HENRY H. KENNEDY
United States District Court Judge

# EXHIBIT 6

# EXHIBIT 7

(DRAFT) EOP-OA-OCIO - For Official Use Only

# EOP Exchange Environment - All Components
## Summary - Messages per Day

| Low Threshold: | 30% |
|---|---|
| High Threshold: | 300% |

|  | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Days with Zero Msg: | 12 | 16 | 11 | 47 | 20 | 103 | 81 | 59 | 20 | 15 | 73 | 16 | 473 | |
| Total Days with Low Msg: | 28 | 30 | 7 | 9 | 14 | 29 | 5 | 10 | 24 | 39 | 10 | 24 | 229 | |

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01-Jan-03 | Wed | FH | 864 | | | | | | | | | | | 1,125 | 0 | 1,989 | 1,989 |
| 02-Jan-03 | Thu | WD | 10,542 | | | | | | | | | | | 8,583 | 0 | 19,125 | 19,125 |
| 03-Jan-03 | Fri | WD | 8,004 | | | | | | | | | | | 6,987 | 0 | 14,991 | 19,125 |
| 04-Jan-03 | Sat | WE | 1,470 | | | | | | | | | | | 1,173 | 0 | 2,643 | 1,989 |
| 05-Jan-03 | Sun | WE | 1,572 | | | | | | | | | | | 966 | 0 | 2,538 | 2,316 |
| 06-Jan-03 | Mon | WD | 1,566 | | | | | | | | | | | 8,805 | 0 | 10,371 | 17,058 |
| 07-Jan-03 | Tue | WD | 7,824 | | | | | | | | | | | 9,441 | 0 | 17,265 | 14,829 |
| 08-Jan-03 | Wed | WD | 12,280 | | | | | | | | | | | 11,241 | 0 | 23,521 | 15,438 |
| 09-Jan-03 | Thu | WD | 12,640 | | | | | | | | | | | 10,635 | 0 | 23,275 | 17,055 |
| 10-Jan-03 | Fri | WD | 14,660 | | | | | | | | | | | 1,935 | 0 | 16,595 | 18,091 |
| 11-Jan-03 | Sat | WE | 1,168 | | | | | | | | | | | | 0 | 1,168 | 2,390 |
| 12-Jan-03 | Sun | WE | 2,292 | | | | | | | | | | | | 0 | 2,292 | 2,085 |
| 13-Jan-03 | Mon | WD | 15,912 | | | | | | | | | | | 2,148 | 0 | 18,060 | 17,878 |
| 14-Jan-03 | Tue | WD | 17,460 | | | | | | | | | | | 9,897 | 0 | 27,357 | 17,900 |
| 15-Jan-03 | Wed | WD | 9,306 | | | | | | | | | | | 10,914 | 0 | 20,220 | 18,951 |
| 16-Jan-03 | Thu | WD | 9,650 | | | | | | | | | | | 10,539 | 5 | 20,189 | 19,078 |
| 17-Jan-03 | Fri | WD | 14,364 | | | | | | | | | | | 10,905 | 0 | 25,269 | 19,179 |
| 18-Jan-03 | Sat | WE | 990 | | | | | | | | | | | 1,868 | 0 | 2,858 | 2,126 |
| 19-Jan-03 | Sun | WE | 1,464 | | | | | | | | | | | 1,720 | 0 | 3,184 | 2,248 |
| 20-Jan-03 | Mon | FH | 3,486 | | | | | | | | | | | 2,824 | 0 | 6,310 | 2,382 |
| 21-Jan-03 | Tue | WD | 21,027 | | | | | | | | | | | 13,908 | 0 | 34,935 | 19,687 |
| 22-Jan-03 | Wed | WD | 13,115 | | | | | | | | | | | 15,172 | 0 | 28,287 | 20,859 |
| 23-Jan-03 | Thu | WD | 21,093 | | | | | | | | | | | 45,692 | 0 | 66,785 | 21,390 |
| 24-Jan-03 | Fri | WD | 17,268 | | | | | | | | | | | 46,888 | 0 | 64,156 | 24,416 |
| 25-Jan-03 | Sat | WE | 1,842 | | | | | | | | | | | 1,716 | 0 | 3,558 | 2,873 |
| 26-Jan-03 | Sun | WE | 3,117 | | | | | | | | | | | 1,428 | 0 | 4,545 | 2,949 |
| 27-Jan-03 | Mon | WD | 15,108 | | | | | | | | | | | 10,788 | 0 | 25,896 | 26,900 |
| 28-Jan-03 | Tue | WD | 17,870 | | | | | | | | | | | 11,493 | 0 | 29,363 | 26,841 |
| 29-Jan-03 | Wed | WD | 18,550 | | | | | | | | | | | 11,937 | 0 | 30,487 | 26,981 |
| 30-Jan-03 | Thu | WD | 19,490 | | | | | | | | | | | 13,412 | 0 | 32,902 | 27,166 |
| 31-Jan-03 | Fri | WD | 16,678 | | | | | | | | | | | 13,304 | 0 | 29,982 | 27,891 |

HOGR60K -000002-C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01-Feb-03 | Sat | WE | 4,584 | | | | | | | | | | | 2,524 | 0 | 7,108 | 3,233 |
| 02-Feb-03 | Sun | WE | 2,092 | | | | | | | | | | | 1,984 | 0 | 4,076 | 3,729 |
| 03-Feb-03 | Mon | WD | 18,374 | | | | | | | | | | | 15,316 | 0 | 33,690 | 28,680 |
| 04-Feb-03 | Tue | WD | 16,876 | | | | | | | | | | | 15,036 | 0 | 31,912 | 29,907 |
| 05-Feb-03 | Wed | WD | 18,156 | | | | | | | | | | | 14,400 | 0 | 32,556 | 30,678 |
| 06-Feb-03 | Thu | WD | 16,970 | | | | | | | | | | | 15,160 | 0 | 32,130 | 31,153 |
| 07-Feb-03 | Fri | WD | 15,164 | | | | | | | | | | | 10,840 | 0 | 26,004 | 31,620 |
| 08-Feb-03 | Sat | WE | 1,334 | | | | | | | | | | | 1,724 | 0 | 3,058 | 3,900 |
| 09-Feb-03 | Sun | WE | 1,178 | | | | | | | | | | | 1,648 | 0 | 2,826 | 4,110 |
| 10-Feb-03 | Mon | WD | 16,878 | | | | | | | | | | | 13,428 | 0 | 30,306 | 32,115 |
| 11-Feb-03 | Tue | WD | 18,530 | | | | | | | | | | | 15,580 | 0 | 34,110 | 32,759 |
| 12-Feb-03 | Wed | WD | 18,986 | | | | | | | | | | | 13,872 | 0 | 32,858 | 33,115 |
| 13-Feb-03 | Thu | WD | 17,374 | | | | | | | | | | | 7,742 | 2 | 25,116 | 33,780 |
| 14-Feb-03 | Fri | WD | 13,630 | | | | | | | | | | | 6,998 | 64 | 20,628 | 34,039 |
| 15-Feb-03 | Sat | WE | 1,096 | | | | | | | | | | | 1,469 | 0 | 2,565 | 4,169 |
| 16-Feb-03 | Sun | WE | 1,106 | | | | | | | | | | | 740 | 0 | 1,846 | 4,137 |
| 17-Feb-03 | Mon | FH | 2,292 | | | | | | | | | | | 1,036 | 0 | 3,328 | 3,988 |
| 18-Feb-03 | Tue | WD | 8,934 | | | | | | | | | | | 2,324 | 0 | 11,258 | 33,795 |
| 19-Feb-03 | Wed | WD | 17,110 | | | | | | | | | | | 6,840 | 0 | 23,950 | 32,549 |
| 20-Feb-03 | Thu | WD | 16,088 | | | | | | | | | | | 7,702 | 38 | 23,790 | 32,320 |
| 21-Feb-03 | Fri | WD | 14,620 | | | | | | | | | | | 6,928 | 5 | 21,548 | 30,058 |
| 22-Feb-03 | Sat | WE | 1,516 | | | | | | | | | | | 1,052 | 0 | 2,568 | 3,657 |
| 23-Feb-03 | Sun | WE | 1,610 | | | | | | | | | | | 910 | 0 | 2,520 | 3,547 |
| 24-Feb-03 | Mon | WD | 20,962 | | | | | | | | | | | 7,572 | 0 | 28,534 | 27,815 |
| 25-Feb-03 | Tue | WD | 19,556 | | | | | | | | | | | 7,942 | 9 | 27,498 | 27,954 |
| 26-Feb-03 | Wed | WD | 19,420 | | | | | | | | | | | 7,682 | 27 | 27,102 | 27,856 |
| 27-Feb-03 | Thu | WD | 19,102 | | | | | | | | | | | 8,196 | 0 | 27,298 | 27,678 |
| 28-Feb-03 | Fri | WD | 16,973 | | | | | | | | | | | 6,896 | 2 | 23,869 | 27,383 |
| 01-Mar-03 | Sat | WE | 1,314 | | | | | | | | | | | 842 | 0 | 2,156 | 3,322 |
| 02-Mar-03 | Sun | WE | 1,604 | | | | | | | | | | | 686 | 0 | 2,290 | 2,771 |
| 03-Mar-03 | Mon | WD | 19,289 | | | | | | | | | | | 8,752 | 0 | 28,041 | 27,061 |
| 04-Mar-03 | Tue | WD | 19,949 | | | | | | | | | | | 8,250 | 1 | 28,199 | 26,764 |
| 05-Mar-03 | Wed | WD | 19,300 | | | | | | | | | | | 7,610 | 60 | 26,910 | 26,568 |
| 06-Mar-03 | Thu | WD | 18,780 | | | | | | | | | | | 7,560 | 75 | 26,340 | 26,271 |
| 07-Mar-03 | Fri | WD | 16,197 | | | | | | | | | | | 6,528 | 2 | 22,725 | 25,966 |
| 08-Mar-03 | Sat | WE | 1,366 | | | | | | | | | | | 972 | 0 | 2,338 | 2,573 |
| 09-Mar-03 | Sun | WE | 1,106 | | | | | | | | | | | 758 | 0 | 1,864 | 2,493 |
| 10-Mar-03 | Mon | WD | 19,250 | | | | | | | | | | | 7,406 | 2 | 26,656 | 25,794 |
| 11-Mar-03 | Tue | WD | 18,826 | | | | | | | | | | | 7,190 | 2 | 26,016 | 25,602 |
| 12-Mar-03 | Wed | WD | 19,276 | | | | | | | | | | | 7,168 | 4 | 26,444 | 25,176 |
| 13-Mar-03 | Thu | WD | 18,618 | | | | | | | | | | | 7,304 | 0 | 25,922 | 24,838 |
| 14-Mar-03 | Fri | WD | 16,494 | | | | | | | | | | | 6,806 | 0 | 23,300 | 24,880 |
| 15-Mar-03 | Sat | WE | 1,382 | | | | | | | | | | | 900 | 0 | 2,282 | 2,386 |
| 16-Mar-03 | Sun | WE | 1,596 | | | | | | | | | | | 834 | 0 | 2,430 | 2,355 |
| 17-Mar-03 | Mon | WD | 19,974 | | | | | | | | | | | 7,750 | 0 | 27,724 | 25,021 |
| 18-Mar-03 | Tue | WD | 20,076 | | | | | | | | | | | 7,822 | 0 | 27,898 | 25,156 |

HOGR1eOA - 000003 - C

**(DRAFT) EOP-OA-OCIO - For Official Use Only**

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19-Mar-03 | Wed | WD | 19,730 | | | | | | | | | | | 8,260 | 9 | 27,990 | 25,988 |
| 20-Mar-03 | Thu | WD | 20,050 | | | | | | | | | | | 8,418 | 1 | 28,468 | 26,190 |
| 21-Mar-03 | Fri | WD | 16,184 | | | | | | | | | | | 7,510 | 1 | 23,694 | 26,424 |
| 22-Mar-03 | Sat | WE | 2,182 | | | | | | | | | | | 944 | 0 | 3,126 | 2,306 |
| 23-Mar-03 | Sun | WE | 2,664 | | | | | | | | | | | 786 | 0 | 3,450 | 2,376 |
| 24-Mar-03 | Mon | WD | 19,832 | | | | | | | | | | | 7,208 | 0 | 27,040 | 26,531 |
| 25-Mar-03 | Tue | WD | 19,376 | | | | | | | | | | | 8,068 | 8 | 27,444 | 26,457 |
| 26-Mar-03 | Wed | WD | 17,016 | | | | | | | | | | | 8,208 | 8 | 25,224 | 26,454 |
| 27-Mar-03 | Thu | WD | 18,208 | | | | | | | | | | | 7,358 | 0 | 25,566 | 26,360 |
| 28-Mar-03 | Fri | WD | 16,628 | | | | | | | | | | | 6,860 | 0 | 23,488 | 26,274 |
| 29-Mar-03 | Sat | WE | 1,366 | | | | | | | | | | | 1,016 | 0 | 2,382 | 2,492 |
| 30-Mar-03 | Sun | WE | 1,704 | | | | | | | | | | | 1,006 | 0 | 2,710 | 2,520 |
| 31-Mar-03 | Mon | WD | 18,902 | | | | | | | | | | | 7,396 | 0 | 26,298 | 26,254 |
| 01-Apr-03 | Tue | WD | 20,302 | | | | | | | | | | | 7,854 | 2 | 28,156 | 26,167 |
| 02-Apr-03 | Wed | WD | 20,126 | | | | | | | | | | | 7,586 | 0 | 27,712 | 26,165 |
| 03-Apr-03 | Thu | WD | 18,904 | | | | | | | | | | | 7,586 | 0 | 26,490 | 26,205 |
| 04-Apr-03 | Fri | WD | 17,632 | | | | | | | | | | | 7,682 | 0 | 25,314 | 26,213 |
| 05-Apr-03 | Sat | WE | 1,540 | | | | | | | | | | | 892 | 0 | 2,432 | 2,573 |
| 06-Apr-03 | Sun | WE | 2,322 | | | | | | | | | | | 902 | 0 | 3,224 | 2,585 |
| 07-Apr-03 | Mon | WD | 18,134 | | | | | | | | | | | 7,146 | 0 | 25,280 | 26,342 |
| 08-Apr-03 | Tue | WD | 19,292 | | | | | | | | | | | 7,784 | 3 | 27,076 | 26,273 |
| 09-Apr-03 | Wed | WD | 21,700 | | | | | | | | | | | 8,450 | 0 | 30,150 | 26,326 |
| 10-Apr-03 | Thu | WD | 20,660 | | | | | | | | | | | 8,572 | 0 | 29,232 | 26,512 |
| 11-Apr-03 | Fri | WD | 17,988 | | | | | | | | | | | 7,462 | 0 | 25,450 | 26,677 |
| 12-Apr-03 | Sat | WE | 1,686 | | | | | | | | | | | 1,142 | 0 | 2,828 | 2,755 |
| 13-Apr-03 | Sun | WE | 1,550 | | | | | | | | | | | 868 | 0 | 2,418 | 2,823 |
| 14-Apr-03 | Mon | WD | 20,296 | | | | | | | | | | | 7,658 | 0 | 27,954 | 26,785 |
| 15-Apr-03 | Tue | WD | 23,819 | | | | | | | | | | | 8,090 | 0 | 31,909 | 26,796 |
| 16-Apr-03 | Wed | WD | 25,353 | | | | | | | | | | | 7,894 | 2 | 33,247 | 26,997 |
| 17-Apr-03 | Thu | WD | 22,845 | | | | | | | | | | | 7,636 | 0 | 30,481 | 27,260 |
| 18-Apr-03 | Fri | WD | 13,569 | | | | | | | | | | | 6,020 | 1 | 19,589 | 27,360 |
| 19-Apr-03 | Sat | WE | 1,527 | | | | | | | | | | | 906 | 0 | 2,433 | 2,821 |
| 20-Apr-03 | Sun | WE | 1,236 | | | | | | | | | | | 698 | 0 | 1,934 | 2,735 |
| 21-Apr-03 | Mon | WD | 23,166 | | | | | | | | | | | 7,626 | 2 | 30,792 | 27,155 |
| 22-Apr-03 | Tue | WD | 20,697 | | | | | | | | | | | 8,780 | 0 | 29,477 | 27,343 |
| 23-Apr-03 | Wed | WD | 21,341 | | | | | | | | | | | 8,370 | 1 | 29,711 | 27,444 |
| 24-Apr-03 | Thu | WD | 17,860 | | | | | | | | | | | 8,656 | 25 | 26,516 | 27,669 |
| 25-Apr-03 | Fri | WD | 18,352 | | | | | | | | | | | 7,906 | 1 | 26,258 | 27,716 |
| 26-Apr-03 | Sat | WE | 1,438 | | | | | | | | | | | 1,074 | 0 | 2,512 | 2,545 |
| 27-Apr-03 | Sun | WE | 1,620 | | | | | | | | | | | 862 | 0 | 2,482 | 2,561 |
| 28-Apr-03 | Mon | WD | 24,251 | | | | | | | | | | | 7,598 | 0 | 31,849 | 27,855 |
| 29-Apr-03 | Tue | WD | 24,704 | | | | | | | | | | | 8,996 | 3 | 33,700 | 28,132 |
| 30-Apr-03 | Wed | WD | 23,554 | | | | | | | | | | | 8,218 | 2,097 | 31,772 | 28,409 |
| 01-May-03 | Thu | WD | 18,970 | | | | | | | | | | | 8,618 | 8,550 | 27,588 | 28,612 |
| 02-May-03 | Fri | WD | 16,348 | | | | | | | | | | | 7,602 | 7,602 | 23,950 | 28,667 |
| 03-May-03 | Sat | WE | 1,506 | | | | | | | | | | | 916 | 916 | 2,422 | 2,533 |

HOGR b0A-00004-

**(DRAFT) EOP-OA-OCIO - For Official Use Only**

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-May-03 | Sun | WE | 1,344 | | | | | | | | | | | 966 | 966 | 2,310 | 2,532 |
| 05-May-03 | Mon | WD | 22,794 | 724 | | | | | | | | | | 8,602 | 9,326 | 32,120 | 28,599 |
| 06-May-03 | Tue | WD | 24,492 | 1,053 | | | | | | | | | | 9,122 | 10,182 | 34,667 | 28,941 |
| 07-May-03 | Wed | WD | 22,132 | 1,310 | | | | | | | | | | 8,472 | 9,782 | 31,914 | 29,321 |
| 08-May-03 | Thu | WD | 23,744 | 2,060 | | | | | | | | | | 15,904 | 17,974 | 41,708 | 29,409 |
| 09-May-03 | Fri | WD | 18,564 | 1,952 | | | | | | | | | | 9,130 | 11,091 | 29,646 | 30,033 |
| 10-May-03 | Sat | WE | 1,890 | 110 | | | | | | | | | | 1,156 | 1,266 | 3,156 | 2,417 |
| 11-May-03 | Sun | WE | 1,672 | 120 | | | | | | | | | | 988 | 1,108 | 2,780 | 2,458 |
| 12-May-03 | Mon | WD | 22,364 | 3,188 | | | | | | | | | | 8,268 | 11,469 | 33,820 | 30,243 |
| 13-May-03 | Tue | WD | 22,978 | 3,124 | | | | | | | | | | 8,846 | 11,976 | 34,948 | 30,536 |
| 14-May-03 | Wed | WD | 23,492 | 2,864 | | | | | | | | | | 8,028 | 10,894 | 34,384 | 30,688 |
| 15-May-03 | Thu | WD | 20,986 | 2,434 | | | | | | | | | | 7,576 | 10,028 | 30,996 | 30,745 |
| 16-May-03 | Fri | WD | 19,280 | 2,578 | | | | | | | | | | 9,421 | 12,003 | 31,279 | 30,770 |
| 17-May-03 | Sat | WE | 1,970 | 264 | | | | | | | | | | 1,437 | 1,705 | 3,671 | 2,504 |
| 18-May-03 | Sun | WE | 1,722 | 256 | | | | | | | | | | 1,533 | 1,789 | 3,511 | 2,658 |
| 19-May-03 | Mon | WD | 22,954 | 3,308 | | | | | | | | | | 11,405 | 14,717 | 37,667 | 31,355 |
| 20-May-03 | Tue | WD | 22,050 | 3,132 | | | | | | | | | | 12,787 | 15,929 | 37,969 | 31,699 |
| 21-May-03 | Wed | WD | 20,304 | 2,794 | | | | | | | | | | 12,678 | 15,479 | 35,776 | 32,123 |
| 22-May-03 | Thu | WD | 20,724 | 2,840 | | | | | | | | | | 13,362 | 16,202 | 36,926 | 32,427 |
| 23-May-03 | Fri | WD | 16,414 | 2,244 | | | | | | | | | | 11,085 | 13,333 | 29,743 | 32,947 |
| 24-May-03 | Sat | WE | 1,178 | 222 | | | | | | | | | | 1,500 | 1,722 | 2,900 | 2,856 |
| 25-May-03 | Sun | WE | 1,134 | 130 | | | | | | | | | | 1,329 | 1,461 | 2,593 | 2,904 |
| 26-May-03 | Mon | FH | 3,272 | 230 | | | | | | | | | | 2,028 | 2,258 | 5,530 | 2,918 |
| 27-May-03 | Tue | WD | 20,865 | 2,760 | | | | | | | | | | 10,379 | 13,141 | 34,004 | 33,188 |
| 28-May-03 | Wed | WD | 20,608 | 2,788 | | | | | | | | | | 8,880 | 11,672 | 32,276 | 33,204 |
| 29-May-03 | Thu | WD | 20,242 | 3,276 | | | | | | | | | | 8,320 | 11,640 | 31,838 | 33,231 |
| 30-May-03 | Fri | WD | 13,984 | 3,132 | | | | | | | | | | 7,462 | 10,642 | 24,578 | 33,454 |
| 31-May-03 | Sat | WE | 1,322 | 360 | | | | | | | | | | 1,128 | 1,488 | 2,810 | 3,208 |
| 01-Jun-03 | Sun | WE | 1,826 | 388 | | | | | | | | | | 1,092 | 1,480 | 3,306 | 3,251 |
| 02-Jun-03 | Mon | WD | 17,903 | 4,996 | | | | | | | | | | 8,394 | 13,468 | 31,293 | 33,487 |
| 03-Jun-03 | Tue | WD | 20,254 | 6,026 | | | | | | | | | | 8,148 | 14,282 | 34,428 | 33,444 |
| 04-Jun-03 | Wed | WD | 19,880 | 5,056 | | | | | | | | | | 8,848 | 14,043 | 33,784 | 33,431 |
| 05-Jun-03 | Thu | WD | 19,878 | 4,958 | | | | | | | | | | 8,690 | 13,812 | 33,526 | 33,530 |
| 06-Jun-03 | Fri | WD | 17,756 | 4,750 | | | | | | | | | | 8,446 | 13,328 | 30,952 | 33,099 |
| 07-Jun-03 | Sat | WE | 1,317 | 322 | | | | | | | | | | 1,126 | 1,460 | 2,765 | 3,362 |
| 08-Jun-03 | Sun | WE | 1,571 | 424 | | | | | | | | | | 1,234 | 1,658 | 3,229 | 3,318 |
| 09-Jun-03 | Mon | WD | 23,782 | 5,354 | | | | | | | | | | 9,504 | 15,008 | 38,640 | 33,168 |
| 10-Jun-03 | Tue | WD | 23,334 | 6,746 | | | | | | | | | | 10,422 | 17,447 | 40,502 | 33,421 |
| 11-Jun-03 | Wed | WD | 23,314 | 6,428 | | | | | | | | | | 12,632 | 19,154 | 42,374 | 33,714 |
| 12-Jun-03 | Thu | WD | 22,162 | 5,940 | | | | | | | | | | 12,631 | 18,767 | 40,733 | 34,134 |
| 13-Jun-03 | Fri | WD | 17,348 | 5,248 | | | | | | | | | | 11,685 | 17,141 | 34,281 | 34,647 |
| 14-Jun-03 | Sat | WE | 1,288 | 306 | | | | | | | | | | 1,467 | 1,783 | 3,061 | 3,368 |
| 15-Jun-03 | Sun | WE | 1,664 | 346 | | | | | | | | | | 1,476 | 1,830 | 3,486 | 3,301 |
| 16-Jun-03 | Mon | WD | 21,998 | 5,962 | | | | | | | | | | 12,699 | 18,811 | 40,659 | 34,805 |
| 17-Jun-03 | Tue | WD | 24,217 | 5,970 | | | | | | | | | | 13,720 | 19,828 | 43,907 | 34,962 |
| 18-Jun-03 | Wed | WD | 23,025 | 6,330 | | | | | | | | | | 14,331 | 20,862 | 43,686 | 35,275 |

HOGR6OA-000005 - C

**(DRAFT) EOP-OA-OCIO - For Official Use Only**

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19-Jun-03 | Thu | WD | 22,011 | 6,366 | | | | | | | | | | 9,467 | 16,122 | 37,844 | 35,691 |
| 20-Jun-03 | Fri | WD | 19,963 | 5,360 | | | | | | | | | | 7,394 | 13,015 | 32,717 | 35,739 |
| 21-Jun-03 | Sat | WE | 1,516 | 364 | | | | | | | | | | 876 | 1,248 | 2,756 | 3,298 |
| 22-Jun-03 | Sun | WE | 1,734 | 410 | | | | | | | | | | 1,002 | 1,426 | 3,146 | 3,282 |
| 23-Jun-03 | Mon | WD | 24,628 | 7,082 | | | | | | | | | | 8,142 | 15,484 | 39,852 | 35,896 |
| 24-Jun-03 | Tue | WD | 23,616 | 7,014 | | | | | | | | | | 8,648 | 15,938 | 39,278 | 36,094 |
| 25-Jun-03 | Wed | WD | 25,446 | 7,102 | | | | | | | | | | 9,308 | 16,600 | 41,856 | 36,357 |
| 26-Jun-03 | Thu | WD | 23,834 | 7,080 | | | | | | | | | | 9,598 | 16,830 | 40,512 | 36,836 |
| 27-Jun-03 | Fri | WD | 17,918 | 5,976 | | | | | | | | | | 8,518 | 14,844 | 32,412 | 37,270 |
| 28-Jun-03 | Sat | WE | 1,326 | 364 | | | | | | | | | | 1,210 | 1,598 | 2,900 | 3,070 |
| 29-Jun-03 | Sun | WE | 1,544 | 494 | | | | | | | | | | 1,328 | 1,828 | 3,366 | 3,081 |
| 30-Jun-03 | Mon | WD | 20,718 | 6,556 | | | | | | | | | | 26,862 | 33,843 | 54,136 | 37,662 |
| 01-Jul-03 | Tue | WD | 21,652 | 6,014 | | | | | | | | | | 28,324 | 34,562 | 55,990 | 38,804 |
| 02-Jul-03 | Wed | WD | 20,716 | 6,254 | | | | | | | | | | 9,290 | 15,956 | 36,260 | 39,882 |
| 03-Jul-03 | Thu | WD | 16,418 | 4,846 | | | | | | | | | | 7,566 | 13,255 | 28,830 | 40,006 |
| 04-Jul-03 | Fri | FH | 2,118 | 494 | | | | | | | | | | 1,372 | 1,912 | 3,984 | 3,089 |
| 05-Jul-03 | Sat | WE | 1,368 | 276 | | | | | | | | | | 1,098 | 1,418 | 2,742 | 3,188 |
| 06-Jul-03 | Sun | WE | 1,838 | 452 | | | | | | | | | | 1,178 | 1,714 | 3,468 | 3,186 |
| 07-Jul-03 | Mon | WD | 20,754 | 6,952 | | | | | | | | | | 7,402 | 15,132 | 35,108 | 40,235 |
| 08-Jul-03 | Tue | WD | 20,610 | 6,980 | | | | | | | | | | 9,738 | 17,145 | 37,328 | 40,049 |
| 09-Jul-03 | Wed | WD | 20,604 | 6,766 | | | | | | | | | | 8,996 | 16,277 | 36,366 | 39,882 |
| 10-Jul-03 | Thu | WD | 18,990 | 6,448 | | | | | | | | | | 8,728 | 15,640 | 34,166 | 39,566 |
| 11-Jul-03 | Fri | WD | 18,534 | 5,798 | | | | | | | | | | 7,904 | 14,431 | 32,236 | 39,220 |
| 12-Jul-03 | Sat | WE | 2,403 | 488 | | | | | | | | | | 1,740 | 2,294 | 4,631 | 3,212 |
| 13-Jul-03 | Sun | WE | 2,982 | 364 | | | | | | | | | | 1,648 | 2,062 | 4,994 | 3,387 |
| 14-Jul-03 | Mon | WD | 39,459 | 6,978 | | | | | | | | | | 11,468 | 19,063 | 57,905 | 39,113 |
| 15-Jul-03 | Tue | WD | 35,275 | 7,724 | | | | | | | | | | 9,650 | 17,858 | 52,649 | 40,020 |
| 16-Jul-03 | Wed | WD | 26,294 | 7,154 | | | | | | | | | | 10,386 | 17,896 | 43,834 | 40,481 |
| 17-Jul-03 | Thu | WD | 25,936 | 7,042 | | | | | | | | | | 9,428 | 17,014 | 42,406 | 40,488 |
| 18-Jul-03 | Fri | WD | 33,483 | 6,358 | | | | | | | | | | 8,764 | 15,546 | 48,605 | 40,728 |
| 19-Jul-03 | Sat | WE | 2,541 | 440 | | | | | | | | | | 1,232 | 1,674 | 4,213 | 3,554 |
| 20-Jul-03 | Sun | WE | 2,712 | 630 | | | | | | | | | | 1,174 | 1,811 | 4,516 | 3,716 |
| 21-Jul-03 | Mon | WD | 32,250 | 8,408 | | | | | | | | | | 8,776 | 17,463 | 49,434 | 41,565 |
| 22-Jul-03 | Tue | WD | 34,625 | 7,414 | | | | | | | | | | 10,264 | 17,962 | 52,303 | 42,069 |
| 23-Jul-03 | Wed | WD | 36,146 | 7,670 | | | | | | | | | | 9,510 | 17,494 | 53,326 | 42,755 |
| 24-Jul-03 | Thu | WD | 34,658 | 7,428 | | | | | | | | | | 8,458 | 16,277 | 50,544 | 43,358 |
| 25-Jul-03 | Fri | WD | 31,666 | 6,102 | | | | | | | | | 128 | 7,410 | 13,770 | 45,306 | 43,886 |
| 26-Jul-03 | Sat | WE | 1,898 | 414 | | | | | | | | | 4 | 1,026 | 1,467 | 3,342 | 3,868 |
| 27-Jul-03 | Sun | WE | 2,578 | 516 | | | | | | | | | 16 | 814 | 1,366 | 3,924 | 3,917 |
| 28-Jul-03 | Mon | WD | 37,272 | 7,420 | | | | | | | | | 170 | 7,992 | 15,611 | 52,854 | 44,565 |
| 29-Jul-03 | Tue | WD | 39,627 | 7,058 | | | | | | | | | 564 | 8,302 | 15,631 | 55,551 | 44,497 |
| 30-Jul-03 | Wed | WD | 38,739 | 7,446 | | | | | | | | | 902 | 9,070 | 16,705 | 56,157 | 44,474 |
| 31-Jul-03 | Thu | WD | 36,488 | 6,800 | | | | | | | 355 | | 1,626 | 9,192 | 16,887 | 54,461 | 45,541 |
| 01-Aug-03 | Fri | WD | 29,742 | 6,010 | | | | | | | 314 | | 1,406 | 7,652 | 14,461 | 45,124 | 46,875 |
| 02-Aug-03 | Sat | WE | 1,998 | 448 | | | | | | | 37 | | 156 | 990 | 1,527 | 3,629 | 3,983 |
| 03-Aug-03 | Sun | WE | 2,247 | 500 | | | | | | | 31 | | 80 | 1,104 | 1,683 | 3,962 | 4,092 |

HUGR00A - 000006

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-Aug-03 | Mon | WD | 28,578 | 5,572 | | | | | | 336 | | 1,390 | | 7,964 | 14,494 | 43,840 | 46,788 |
| 05-Aug-03 | Tue | WD | 30,704 | 5,884 | | | | | | 444 | | 1,938 | | 8,593 | 15,661 | 47,563 | 47,220 |
| 06-Aug-03 | Wed | WD | 32,040 | 5,694 | | | | | | 382 | | 1,800 | | 8,526 | 15,240 | 48,442 | 47,732 |
| 07-Aug-03 | Thu | WD | 32,696 | 5,598 | | | | | | 350 | | 2,154 | | 8,881 | 15,389 | 49,679 | 48,335 |
| 08-Aug-03 | Fri | WD | 27,068 | 4,080 | | | | | | 330 | 163 | 1,994 | | 7,854 | 12,968 | 41,489 | 49,111 |
| 09-Aug-03 | Sat | WE | 2,898 | 464 | | | | | | 14 | 36 | 68 | | 1,590 | 2,187 | 5,070 | 4,151 |
| 10-Aug-03 | Sun | WE | 3,300 | 706 | | | | | | 33 | 24 | 2 | | 1,569 | 2,389 | 5,634 | 4,206 |
| 11-Aug-03 | Mon | WD | 32,680 | 5,726 | | | | | | 501 | 264 | 16 | | 8,752 | 15,971 | 47,939 | 49,574 |
| 12-Aug-03 | Tue | WD | 36,201 | 4,900 | | | | | | 553 | 222 | 6 | | 9,360 | 15,811 | 51,242 | 49,075 |
| 13-Aug-03 | Wed | WD | 33,510 | 4,588 | | | | | | 569 | 270 | 6 | | 13,867 | 20,036 | 52,810 | 49,005 |
| 14-Aug-03 | Thu | WD | 34,068 | 4,568 | | | | | | 453 | 319 | 6 | | 23,036 | 28,959 | 62,450 | 49,454 |
| 15-Aug-03 | Fri | WD | 28,972 | 4,894 | | | | | | 407 | 192 | 12 | | 19,774 | 25,804 | 54,251 | 50,456 |
| 16-Aug-03 | Sat | WE | 3,542 | 492 | | | | | | 28 | 13 | 2 | | 5,294 | 5,889 | 9,371 | 4,286 |
| 17-Aug-03 | Sun | WE | 3,679 | 552 | | | | | | 45 | 11 | 2 | | 6,144 | 6,837 | 10,433 | 4,931 |
| 18-Aug-03 | Mon | WD | 33,540 | 5,412 | | | | | | 431 | 406 | 16 | | 21,584 | 24,628 | 61,391 | 50,738 |
| 19-Aug-03 | Tue | WD | 34,867 | 4,904 | | | | | | 732 | 685 | 8 | | 19,568 | 16,988 | 60,764 | 51,336 |
| 20-Aug-03 | Wed | WD | 33,519 | 4,474 | | | | | | 529 | 1,109 | 12 | | 19,532 | 16,722 | 59,175 | 51,759 |
| 21-Aug-03 | Thu | WD | 25,901 | 4,702 | | | | | | 351 | 1,076 | 2 | | 17,184 | 17,095 | 49,216 | 52,052 |
| 22-Aug-03 | Fri | WD | 14,396 | 3,730 | | | | | | 460 | 1,157 | 26 | | 16,493 | 22,531 | 36,262 | 51,985 |
| 23-Aug-03 | Sat | WE | 1,689 | 480 | | | | | | 26 | 139 | 2 | | 1,736 | 2,473 | 4,072 | 5,671 |
| 24-Aug-03 | Sun | WE | 2,793 | 560 | | | | | | 24 | 134 | 2 | | 1,792 | 2,611 | 5,305 | 5,782 |
| 25-Aug-03 | Mon | WD | 33,311 | 4,468 | | | | | | 465 | 1,411 | 14 | | 16,293 | 23,467 | 55,962 | 51,533 |
| 26-Aug-03 | Tue | WD | 27,805 | 4,506 | | | | | | 244 | 1,768 | 6 | | 22,306 | 29,275 | 56,635 | 51,688 |
| 27-Aug-03 | Wed | WD | 28,006 | 4,632 | | | | 685 | | 265 | 2,000 | 6 | | 21,325 | 29,397 | 56,919 | 51,743 |
| 28-Aug-03 | Thu | WD | 31,650 | 2,389 | | | | 976 | | 298 | 2,101 | 12 | | 18,141 | 22,628 | 55,567 | 51,781 |
| 29-Aug-03 | Fri | WD | 27,820 | 1,760 | | | | 828 | | 231 | 180 | 6 | | 24,670 | 3,810 | 55,495 | 51,836 |
| 30-Aug-03 | Sat | WE | 2,708 | 171 | | | | 45 | | 17 | 1 | 4 | | 1,802 | 296 | 4,748 | 5,935 |
| 31-Aug-03 | Sun | WE | 2,330 | 216 | | | | 155 | | 15 | 1 | 6 | | 756 | 291 | 3,481 | 6,074 |
| 01-Sep-03 | Mon | FH | 6,266 | 310 | | | | 90 | | 52 | 1 | 2 | | 1,352 | 754 | 8,073 | 6,014 |
| 02-Sep-03 | Tue | WD | 28,640 | 3,110 | | | | 931 | | 256 | 5 | 18 | | 6,279 | 4,605 | 39,239 | 52,803 |
| 03-Sep-03 | Wed | WD | 37,979 | 8,312 | | | | 1,280 | | 504 | 7 | 20 | | 5,350 | 15,297 | 53,452 | 52,365 |
| 04-Sep-03 | Thu | WD | 6,879 | 6,628 | | | | 1,149 | | 481 | 10 | 10 | | 5,039 | 13,056 | 20,196 | 52,628 |
| 05-Sep-03 | Fri | WD | 36,521 | 6,052 | | | | 1,121 | | 586 | 9 | 12 | | 7,364 | 8,793 | 51,645 | 51,077 |
| 06-Sep-03 | Sat | WE | 5,202 | 568 | | | | 81 | | 54 | 97 | 126 | | 1,270 | 1,000 | 7,398 | 6,243 |
| 07-Sep-03 | Sun | WE | 6,556 | 588 | | | | 81 | | 95 | 280 | 456 | | 1,138 | 1,621 | 9,194 | 6,502 |
| 08-Sep-03 | Mon | WD | 44,186 | 6,966 | | | | 1,010 | 378 | 495 | 2,759 | 3,814 | | 10,212 | 18,825 | 69,820 | 51,611 |
| 09-Sep-03 | Tue | WD | 26,590 | 6,768 | | | | 1,137 | 1,222 | 534 | 2,940 | 3,904 | | 10,529 | 21,959 | 53,624 | 52,763 |
| 10-Sep-03 | Wed | WD | 50,493 | 7,236 | | | | 1,353 | 2,033 | 593 | 2,868 | 4,022 | | 17,883 | 19,573 | 86,481 | 52,888 |
| 11-Sep-03 | Thu | WD | 49,649 | 772 | | | | 1,099 | 2,550 | 648 | 2,773 | 3,630 | | 16,212 | 12,101 | 77,333 | 54,660 |
| 12-Sep-03 | Fri | WD | 45,914 | | | | | 1,218 | 2,504 | 637 | 2,828 | 3,794 | | 15,979 | 11,081 | 72,874 | 55,444 |
| 13-Sep-03 | Sat | WE | 3,609 | 460 | | | | 56 | 382 | 51 | 254 | 468 | | 1,406 | 1,633 | 6,666 | 6,897 |
| 14-Sep-03 | Sun | WE | 4,416 | 590 | | | | 88 | 260 | 70 | 219 | 338 | | 1,304 | 1,651 | 7,285 | 6,597 |
| 15-Sep-03 | Mon | WD | 53,042 | 7,218 | | | | 1,232 | 3,150 | 926 | 3,024 | 3,778 | | 12,878 | 20,439 | 85,248 | 56,424 |
| 16-Sep-03 | Tue | WD | 5,318 | 7,014 | | | | 1,021 | 2,898 | 968 | 2,935 | 3,462 | | 14,204 | 18,353 | 37,820 | 57,679 |
| 17-Sep-03 | Wed | WD | 12,922 | 6,752 | | | | 1,359 | 2,472 | 999 | 3,348 | 4,066 | | 11,182 | 30,663 | 43,100 | 56,472 |
| 18-Sep-03 | Thu | WD | 15,729 | 2,640 | | | | 250 | 658 | 425 | 901 | 1,186 | | 3,984 | 21,903 | 25,773 | 55,626 |

HOGR6OA-000007 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19-Sep-03 | Fri | WD | 14,624 | 2,350 | | | | 233 | 572 | 363 | 708 | 1,014 | | 3,388 | 19,940 | 23,252 | 54,392 |
| 20-Sep-03 | Sat | WE | 4,406 | 474 | | | | 58 | 78 | 88 | 197 | 360 | | 1,326 | 5,483 | 6,987 | 6,247 |
| 21-Sep-03 | Sun | WE | 6,208 | 552 | | | | 73 | 186 | 145 | 188 | 384 | | 1,538 | 8,075 | 9,274 | 6,571 |
| 22-Sep-03 | Mon | WD | 59,100 | 7,914 | | | | 1,239 | 2,626 | 1,168 | 2,917 | 3,944 | | 11,406 | 79,520 | 90,314 | 53,707 |
| 23-Sep-03 | Tue | WD | 42,531 | 7,500 | | | | 1,174 | 3,132 | 1,165 | 2,931 | 3,848 | | 14,527 | 63,366 | 76,808 | 55,515 |
| 24-Sep-03 | Wed | WD | 37,230 | 7,384 | | | | 1,580 | 2,757 | 1,054 | 3,302 | 3,876 | | 19,844 | 50,014 | 76,827 | 56,577 |
| 25-Sep-03 | Thu | WD | 59,172 | 7,226 | | | | 1,339 | 2,343 | 1,050 | 2,963 | 4,018 | | 19,143 | 78,442 | 97,254 | 57,625 |
| 26-Sep-03 | Fri | WD | 52,834 | 5,928 | | | | 950 | 2,574 | 972 | 2,816 | 3,594 | | 14,904 | 70,816 | 84,572 | 59,819 |
| 27-Sep-03 | Sat | WE | 5,718 | 414 | | | | 90 | 278 | 139 | 419 | 316 | | 1,728 | 7,628 | 9,102 | 7,012 |
| 28-Sep-03 | Sun | WD | 5,132 | 412 | | | | 81 | 202 | 119 | 427 | 454 | | 1,512 | 6,732 | 8,339 | 7,496 |
| 29-Sep-03 | Mon | WD | 61,168 | 6,912 | | | | 1,141 | 2,804 | 1,186 | 3,531 | 4,124 | | 18,951 | 81,501 | 99,817 | 61,349 |
| 30-Sep-03 | Tue | WD | 59,314 | 1,266 | | | | 1,261 | 2,583 | 1,263 | 3,667 | 4,240 | | 7,931 | 74,128 | 81,525 | 63,272 |
| 01-Oct-03 | Wed | WD | 58,032 | 0 | | | | 1,212 | 1,399 | 1,189 | 3,377 | 4,246 | | 7,294 | 64,690 | 76,749 | 65,387 |
| 02-Oct-03 | Thu | WD | 56,298 | 1 | | | | 1,022 | 1,174 | 1,036 | 3,755 | 7,328 | | 5,995 | 66,031 | 76,608 | 66,552 |
| 03-Oct-03 | Fri | WD | 26,816 | 8 | | | | 1,093 | 940 | 841 | 3,280 | 7,512 | | 6,008 | 34,770 | 46,470 | 69,372 |
| 04-Oct-03 | Sat | WE | 2,143 | 26 | | | | 58 | 99 | 60 | 325 | 776 | | 697 | 2,873 | 4,184 | 8,031 |
| 05-Oct-03 | Sun | WE | 2,458 | 1 | | | | 51 | 55 | 133 | 390 | 832 | | 1,055 | 3,313 | 4,974 | 7,629 |
| 06-Oct-03 | Mon | WD | 23,688 | 426 | | | | 940 | 1,277 | 896 | 3,457 | 7,360 | | 6,246 | 32,962 | 44,290 | 69,113 |
| 07-Oct-03 | Tue | WD | 29,602 | 7,482 | | | | 1,420 | 1,286 | 1,001 | 3,642 | 8,480 | | 6,198 | 46,386 | 59,111 | 67,837 |
| 08-Oct-03 | Wed | WD | 21,725 | 6,810 | | | | 1,273 | 1,334 | 1,011 | 2,990 | 8,244 | | 6,269 | 37,207 | 49,656 | 68,111 |
| 09-Oct-03 | Thu | WD | 21,332 | 3,217 | | | | 1,290 | 1,159 | 1,065 | 3,477 | 7,676 | | 6,617 | 33,311 | 45,833 | 68,270 |
| 10-Oct-03 | Fri | WD | 23,837 | 2,749 | | | | 1,188 | 1,067 | 954 | 3,086 | 7,080 | | 5,998 | 34,639 | 45,959 | 64,695 |
| 11-Oct-03 | Sat | WE | 2,097 | 168 | | | | 93 | 45 | 74 | 366 | 716 | | 788 | 2,907 | 4,347 | 7,101 |
| 12-Oct-03 | Sun | WE | 2,540 | 213 | | | | 53 | 56 | 88 | 349 | 588 | | 770 | 3,474 | 4,657 | 6,812 |
| 13-Oct-03 | Mon | FH | 9,086 | 608 | | | | 197 | 207 | 287 | 1,007 | 1,548 | | 1,686 | 12,046 | 14,626 | 6,483 |
| 14-Oct-03 | Tue | WD | 28,502 | 4,149 | | | | 1,248 | 1,341 | 1,050 | 3,686 | 8,676 | | 10,047 | 42,316 | 58,699 | 62,197 |
| 15-Oct-03 | Wed | WD | 27,101 | 4,147 | | | | 1,209 | 1,304 | 1,129 | 3,719 | 8,652 | | 12,182 | 40,884 | 59,443 | 63,296 |
| 16-Oct-03 | Thu | WD | 24,298 | 3,741 | | | | 1,123 | 1,460 | 1,042 | 3,227 | 7,876 | | 12,058 | 37,321 | 54,825 | 64,156 |
| 17-Oct-03 | Fri | WD | 21,561 | 2,997 | | | | 1,043 | 1,254 | 964 | 3,176 | 4,970 | | 9,810 | 32,951 | 45,775 | 65,685 |
| 18-Oct-03 | Sat | WE | 2,304 | 317 | | | | 109 | 144 | 114 | 464 | 610 | | 1,284 | 3,714 | 5,346 | 7,388 |
| 19-Oct-03 | Sun | WE | 2,436 | 362 | | | | 102 | 141 | 104 | 484 | 548 | | 1,364 | 3,876 | 5,541 | 7,205 |
| 20-Oct-03 | Mon | WD | 24,400 | 3,270 | | | | 1,199 | 1,502 | 1,010 | 3,728 | 3,804 | | 12,710 | 37,352 | 51,623 | 66,870 |
| 21-Oct-03 | Tue | WD | 71,715 | 3,956 | | | | 1,347 | 1,274 | 1,090 | 3,885 | 4,664 | | 12,118 | 42,399 | 100,049 | 64,834 |
| 22-Oct-03 | Wed | WD | 44,155 | 3,513 | | | | 1,163 | 1,456 | 932 | 3,629 | 4,286 | | 13,798 | 13,284 | 72,932 | 66,057 |
| 23-Oct-03 | Thu | WD | 42,711 | 3,205 | | | | 1,278 | 1,399 | 745 | 4,155 | 3,534 | | 14,066 | 13,367 | 71,093 | 65,852 |
| 24-Oct-03 | Fri | WD | 48,397 | 2,817 | | | | 1,148 | 1,292 | 780 | 3,222 | 3,280 | | 12,700 | 12,314 | 73,636 | 64,475 |
| 25-Oct-03 | Sat | WE | 17,692 | 234 | | | | 66 | 61 | 54 | 512 | 390 | | 1,376 | 1,190 | 20,385 | 6,791 |
| 26-Oct-03 | Sun | WE | 19,561 | 171 | | | | 81 | 107 | 74 | 488 | 270 | | 1,424 | 1,566 | 22,176 | 8,044 |
| 27-Oct-03 | Mon | WD | 403,743 | 3,199 | | | | 1,455 | 1,688 | 1,105 | 3,921 | 4,236 | | 14,174 | 25,509 | 433,521 | 63,900 |
| 28-Oct-03 | Tue | WD | 33,656 | 4,564 | | | | 1,447 | 1,898 | 1,065 | 3,869 | 4,472 | | 14,126 | 17,051 | 65,097 | 81,463 |
| 29-Oct-03 | Wed | WD | 28,911 | 3,788 | | | | 1,347 | 1,777 | 1,431 | 4,043 | 4,452 | | 17,450 | 15,575 | 63,199 | 80,598 |
| 30-Oct-03 | Thu | WD | 49,497 | 3,701 | | | | 1,398 | 1,502 | 1,071 | 3,508 | 4,266 | | 14,502 | 13,883 | 79,445 | 79,885 |
| 31-Oct-03 | Fri | WD | 25,736 | 2,868 | | | | 1,060 | 195 | 1,066 | 2,928 | 3,884 | | 13,130 | 9,114 | 50,870 | 80,035 |
| 01-Nov-03 | Sat | WE | 7,921 | 576 | | | | 1 | 0 | 0 | 391 | 555 | | | 953 | 9,444 | 9,582 |
| 02-Nov-03 | Sun | WE | 12,456 | 512 | | | | 0 | 0 | 0 | 365 | 561 | | | 887 | 13,894 | 10,166 |
| 03-Nov-03 | Mon | WD | 69,463 | 3,922 | | | | 0 | 0 | 0 | 3,756 | 6,549 | | 5,516 | 8,035 | 89,206 | 80,266 |

HOGR6OA-000008 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-Nov-03 | Tue | WD | 43,117 | 3,397 | | | | | | | 4,172 | 6,005 | | 9,328 | 21,288 | 66,019 | 82,630 |
| 05-Nov-03 | Wed | WD | 38,122 | 3,475 | | | | | | | 3,843 | 6,225 | | 7,767 | 9,811 | 59,432 | 82,994 |
| 06-Nov-03 | Thu | WD | 49,875 | 3,268 | | | | | | | 4,103 | 6,033 | | 8,252 | 7,458 | 71,531 | 83,508 |
| 07-Nov-03 | Fri | WD | 79,676 | 3,340 | | | | | | | 3,310 | 6,321 | | 7,571 | 6,761 | 100,218 | 84,861 |
| 08-Nov-03 | Sat | WE | 39,814 | 278 | | | | | | | 398 | 633 | | 940 | 676 | 42,063 | 11,157 |
| 09-Nov-03 | Sun | WE | 40,271 | 256 | | | | | | | 401 | 608 | | 992 | 688 | 42,526 | 15,348 |
| 10-Nov-03 | Mon | WD | 108,440 | 3,194 | | | | | | | 3,721 | 5,925 | | 7,096 | 7,140 | 128,376 | 87,716 |
| 11-Nov-03 | Tue | FH | 74,074 | 1,638 | | | | | | | 1,246 | 2,160 | | 2,338 | 3,067 | 81,456 | 20,172 |
| 12-Nov-03 | Wed | WD | 185,690 | 3,958 | | | | | | | 4,412 | 6,651 | | 7,686 | 9,138 | 208,397 | 91,384 |
| 13-Nov-03 | Thu | WD | 29,900 | 3,531 | | | | | | | 3,871 | 6,009 | | 8,475 | 7,570 | 51,786 | 99,223 |
| 14-Nov-03 | Fri | WD | 60,465 | 3,389 | | | | | | | 3,500 | 6,027 | | 7,297 | 7,085 | 80,678 | 99,063 |
| 15-Nov-03 | Sat | WE | 3,869 | 381 | | | | | | | 508 | 585 | | 1,119 | 937 | 6,462 | 26,981 |
| 16-Nov-03 | Sun | WE | 3,538 | 441 | | | | | | | 503 | 705 | | 1,136 | 956 | 6,323 | 27,105 |
| 17-Nov-03 | Mon | WD | 33,353 | 12,724 | | | | | | | 4,049 | 5,662 | | 8,252 | 17,065 | 64,040 | 100,900 |
| 18-Nov-03 | Tue | WD | 34,007 | 4,818 | | | | | | | 4,189 | 6,495 | | 8,602 | 9,209 | 58,111 | 101,554 |
| 19-Nov-03 | Wed | WD | 51,265 | 4,004 | | | | | | | 4,096 | 6,543 | | 8,721 | 8,222 | 74,629 | 99,347 |
| 20-Nov-03 | Thu | WD | 29,257 | 3,712 | | | | | | | 3,909 | 7,059 | | 8,585 | 7,774 | 52,522 | 99,436 |
| 21-Nov-03 | Fri | WD | 27,788 | 3,351 | | | | | | | 3,510 | 6,006 | | 7,735 | 6,943 | 48,390 | 98,459 |
| 22-Nov-03 | Sat | WE | 3,700 | 374 | | | | | | | 550 | 651 | | 852 | 936 | 6,127 | 27,192 |
| 23-Nov-03 | Sun | WE | 2,884 | 422 | | | | | | | 502 | 570 | | 1,014 | 931 | 5,392 | 25,608 |
| 24-Nov-03 | Mon | WD | 49,854 | 3,581 | | | | | | | 4,086 | 6,554 | | 8,137 | 7,785 | 72,212 | 97,130 |
| 25-Nov-03 | Tue | WD | 60,344 | 3,407 | | | | | | | 4,254 | 6,827 | | 8,576 | 7,974 | 83,408 | 78,114 |
| 26-Nov-03 | Wed | WD | 34,583 | 2,346 | | | | | | | 2,634 | 5,217 | | 6,539 | 5,116 | 51,319 | 79,077 |
| 27-Nov-03 | Thu | FH | 4,302 | 258 | | | | | | | 495 | 537 | | 1,139 | 757 | 6,731 | 23,743 |
| 28-Nov-03 | Fri | WE | 10,322 | 507 | | | | | | | 1,106 | 1,221 | | 2,956 | 1,650 | 16,112 | 22,042 |
| 29-Nov-03 | Sat | WE | 3,862 | 216 | | | | | | | 472 | 468 | | 742 | 688 | 5,760 | 21,503 |
| 30-Nov-03 | Sun | WE | 5,406 | 288 | | | | | | | 702 | 636 | | 943 | 1,001 | 7,975 | 21,168 |
| 01-Dec-03 | Mon | WD | 60,715 | 8,128 | | | | | | | 12,479 | 6,293 | | 9,101 | 21,284 | 96,716 | 80,016 |
| 02-Dec-03 | Tue | WD | 23,732 | 8,314 | | | | | | | 12,575 | 30,546 | | 9,624 | 30,691 | 84,791 | 80,458 |
| 03-Dec-03 | Wed | WD | 49,102 | 8,046 | | | | | | | 4,277 | 4,444 | | 8,667 | 21,146 | 74,536 | 81,562 |
| 04-Dec-03 | Thu | WD | 47,230 | 6,885 | | | | | | | 4,258 | 4,172 | | 9,546 | 20,879 | 72,091 | 82,451 |
| 05-Dec-03 | Fri | WD | 51,926 | 3,708 | | | | | | | 3,236 | 3,922 | | 7,207 | 14,438 | 69,999 | 82,484 |
| 06-Dec-03 | Sat | WE | 7,668 | 324 | | | | | | | 592 | 442 | | 1,252 | 2,168 | 10,278 | 20,630 |
| 07-Dec-03 | Sun | WE | 7,093 | 339 | | | | | | | 172 | 136 | | 1,505 | 2,016 | 9,245 | 17,740 |
| 08-Dec-03 | Mon | WD | 44,434 | 3,447 | | | | | | | 3,139 | 3,818 | | 8,788 | 15,513 | 63,626 | 80,706 |
| 09-Dec-03 | Tue | WD | 33,485 | 3,586 | | | | | | | 4,461 | 4,028 | | 9,352 | 17,549 | 54,912 | 76,897 |
| 10-Dec-03 | Wed | WD | 28,254 | 3,465 | | | | | | | 3,797 | 3,858 | | 9,678 | 17,154 | 49,052 | 75,676 |
| 11-Dec-03 | Thu | WD | 29,244 | 2,963 | | | | | | | 4,383 | 3,616 | | 8,067 | 15,707 | 48,293 | 66,823 |
| 12-Dec-03 | Fri | WD | 26,403 | 3,428 | | | | | | | 3,544 | 4,040 | | 7,788 | 14,797 | 45,203 | 66,629 |
| 13-Dec-03 | Sat | WE | 2,572 | 334 | | | | | | | 532 | 400 | | 1,189 | 2,442 | 5,027 | 8,041 |
| 14-Dec-03 | Sun | WE | 4,479 | 422 | | | | | | | 657 | 452 | | 1,503 | 2,825 | 7,513 | 7,897 |
| 15-Dec-03 | Mon | WD | 31,356 | 3,388 | | | | | | | 4,165 | 4,292 | | 8,943 | 16,582 | 52,144 | 64,658 |
| 16-Dec-03 | Tue | WD | 34,904 | 3,327 | | | | | | | 3,816 | 3,952 | | 5,290 | 12,583 | 51,289 | 63,997 |
| 17-Dec-03 | Wed | WD | | 3,369 | | 266 | | | | | 3,711 | 3,542 | | | 7,261 | 10,888 | 63,634 |
| 18-Dec-03 | Thu | WD | 32,666 | 3,488 | | 270 | | | | | 3,688 | 3,442 | | | 7,462 | 43,534 | 60,092 |
| 19-Dec-03 | Fri | WD | 24,880 | 2,819 | | 242 | | | | | 3,509 | 3,476 | | | 6,596 | 34,926 | 59,590 |

HOGP6OA 000000

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 20-Dec-03 | Sat | WE | 6 | 583 | | 48 | | | | | 565 | 420 | | 1,173 | | 1,616 | 8,019 |
| 21-Dec-03 | Sun | WE | 30 | 274 | | 44 | | | | | 527 | 420 | | 286 | 1,112 | 1,553 | 7,568 |
| 22-Dec-03 | Mon | WD | 10,327 | 1,828 | | 334 | | | | | 3,024 | 2,852 | | 6,593 | 11,656 | 24,958 | 58,841 |
| 23-Dec-03 | Tue | WD | 11,363 | 1,359 | | 158 | | | | | 2,825 | 2,026 | | 7,016 | 4,706 | 24,747 | 56,215 |
| 24-Dec-03 | Wed | WD | 4,744 | 492 | | 106 | | | | | 1,284 | 486 | | 4,024 | 1,864 | 11,136 | 52,955 |
| 25-Dec-03 | Thu | FH | 2,001 | 128 | | 34 | | | | | 379 | 252 | | 1,303 | 524 | 4,097 | 7,184 |
| 26-Dec-03 | Fri | WE | 2,270 | 308 | | 70 | | | | | 585 | 518 | | 1,394 | 940 | 5,145 | 6,920 |
| 27-Dec-03 | Sat | WE | 1,519 | 157 | | 78 | | | | | 381 | 310 | | 1,060 | 597 | 3,505 | 5,823 |
| 28-Dec-03 | Sun | WE | 1,696 | 237 | | 46 | | | | | 362 | 272 | | 1,118 | 626 | 3,731 | 5,597 |
| 29-Dec-03 | Mon | WD | 20,775 | 1,608 | | 158 | | | | | 2,522 | 2,392 | | 6,683 | 9,954 | 34,138 | 50,722 |
| 30-Dec-03 | Tue | WD | 24,639 | 2,081 | 18 | 188 | | | | 388 | 874 | 1,746 | 15 | 6,311 | 10,311 | 37,189 | 47,244 |
| 31-Dec-03 | Wed | WD | 10,150 | 1,262 | 76 | 136 | | | | 1,200 | 0 | | 25 | 4,590 | 5,753 | 17,439 | 44,599 |
| 01-Jan-04 | Thu | WD | 1,835 | 218 | 2 | 42 | | | | 84 | | | | 713 | 247 | 2,894 | 41,426 |
| 02-Jan-04 | Fri | WD | 10,840 | 1,396 | 82 | 174 | | | | 2,100 | | | 70 | 1,092 | 1,534 | 15,754 | 37,582 |
| 03-Jan-04 | Sat | WE | 1,916 | 249 | 26 | 48 | | | | 296 | | | | | 271 | 2,535 | 5,173 |
| 04-Jan-04 | Sun | WE | 2,409 | 271 | 38 | 38 | | | | 384 | | | 5 | | 290 | 3,145 | 4,398 |
| 05-Jan-04 | Mon | WD | 30,001 | 4,051 | 480 | 422 | | | | 5,408 | 7,374 | 5,235 | 260 | 759 | 4,200 | 53,990 | 34,568 |
| 06-Jan-04 | Tue | WD | 45,297 | 4,847 | 648 | 592 | | | | 5,584 | 7,688 | 5,754 | 990 | 15,316 | 3,892 | 86,716 | 34,032 |
| 07-Jan-04 | Wed | WD | 45,495 | 5,390 | 310 | 340 | | | | 3,232 | 7,440 | 5,133 | 620 | 16,353 | 4,418 | 84,313 | 35,798 |
| 08-Jan-04 | Thu | WD | 29,501 | 12,974 | 2,982 | 428 | | | | 3,112 | 7,880 | 5,250 | 640 | 2 | 2,560 | 62,769 | 37,757 |
| 09-Jan-04 | Fri | WD | | 20,845 | 5,706 | 512 | | | | 3,244 | 6,260 | 4,272 | 680 | 236 | 46 | 41,757 | 38,561 |
| 10-Jan-04 | Sat | WE | | 1,935 | 584 | 82 | | | | 824 | 874 | 618 | 35 | 2,976 | 0 | 7,928 | 3,788 |
| 11-Jan-04 | Sun | WE | | 3,720 | 598 | 72 | | | | 296 | 1,044 | 462 | 35 | 2,266 | 35 | 8,493 | 4,077 |
| 12-Jan-04 | Mon | WD | 18,124 | 35 | 6,072 | 1,076 | | 1,123 | 1,468 | 1,728 | 6,827 | 5,514 | 40 | 14,810 | 1,804 | 56,817 | 38,369 |
| 13-Jan-04 | Tue | WD | 42,444 | 16,393 | 6,576 | 1,260 | | 1,325 | 1,313 | 1,592 | 8,146 | 6,246 | 30 | 16,661 | 18,142 | 101,986 | 38,628 |
| 14-Jan-04 | Wed | WD | 522 | 5 | 6,868 | 1,640 | | 1,365 | 1,344 | 1,650 | 8,062 | 5,262 | 25 | 101 | 1,614 | 26,844 | 41,442 |
| 15-Jan-04 | Thu | WD | 18,998 | 16,916 | 7,012 | 1,732 | | 1,284 | 1,270 | 1,828 | 7,382 | 5,535 | 20 | 7,909 | 1,590 | 69,886 | 42,328 |
| 16-Jan-04 | Fri | WD | 361 | 17,705 | 118 | 18 | | | 24 | 68 | 8 | 72 | 15 | 91 | 120 | 18,500 | 43,792 |
| 17-Jan-04 | Sat | WE | 29 | 2,750 | 4 | 10 | | | 2 | 8 | 0 | 6 | | 22 | 26 | 2,831 | 4,175 |
| 18-Jan-04 | Sun | WE | 27 | 2,620 | | 8 | | | 4 | 4 | | | | 2 | 3 | 2,661 | 4,296 |
| 19-Jan-04 | Mon | FH | 193 | 8,360 | 30 | 18 | | | 5 | 24 | 4 | 3 | 15 | 9 | 53 | 8,661 | 4,407 |
| 20-Jan-04 | Tue | WD | 9,508 | 9,085 | 3,020 | 464 | | 489 | 661 | 1,340 | 3,534 | 2,478 | 10 | 14,644 | 830 | 45,233 | 43,934 |
| 21-Jan-04 | Wed | WD | 27,516 | 22,210 | 6,842 | 3,990 | | 1,275 | 43 | 2,902 | 8,852 | 6,207 | 40 | 18,340 | 178 | 98,217 | 45,139 |
| 22-Jan-04 | Thu | WD | 27,893 | 18,785 | 6,212 | 2,850 | | 1,286 | 1,306 | 120 | 8,380 | 5,970 | 20 | 16,696 | 1,549 | 89,518 | 50,261 |
| 23-Jan-04 | Fri | WD | 26,234 | 13,160 | 6,092 | 2,940 | | 1,247 | 1,298 | 1,934 | 1,802 | 6,414 | 15 | 15,361 | 1,542 | 76,497 | 52,442 |
| 24-Jan-04 | Sat | WE | 2,659 | 3,930 | 684 | 328 | | 144 | 72 | 498 | 1,632 | 1,236 | 5 | 4,024 | 83 | 15,212 | 4,832 |
| 25-Jan-04 | Sun | WE | 2,606 | 4,190 | 524 | 388 | | 162 | 81 | 534 | 2,076 | 1,068 | 45 | 4,176 | 81 | 15,850 | 6,133 |
| 26-Jan-04 | Mon | WD | 37,497 | 14,955 | 11,236 | 2,306 | | 2,188 | 1,103 | 5,022 | 11,016 | 8,400 | 470 | 23,880 | 1,169 | 118,073 | 53,708 |
| 27-Jan-04 | Tue | WD | 25,317 | 13,310 | 6,592 | 1,082 | | 1,259 | 1,126 | 1,814 | 9,306 | 4,647 | | 12,896 | 1,448 | 77,349 | 58,126 |
| 28-Jan-04 | Wed | WD | 7,093 | 5,185 | 1,838 | 440 | | | 397 | 1,060 | 2,472 | 1,638 | 210 | 5,737 | 554 | 26,070 | 60,240 |
| 29-Jan-04 | Thu | WD | | 0 | 986 | 320 | | 227 | 276 | 748 | 1,001 | 903 | 155 | 1,828 | 399 | 6,444 | 60,694 |
| 30-Jan-04 | Fri | WD | 737 | | 5,372 | 1,846 | | 1,029 | 1,312 | 3,432 | 6,828 | 5,502 | 685 | 15,440 | 1,613 | 42,183 | 60,881 |
| 31-Jan-04 | Sat | WE | 3,068 | | 332 | 312 | | 124 | 97 | 944 | 850 | 693 | 70 | 1,478 | 114 | 7,968 | 7,480 |
| 01-Feb-04 | Sun | WE | 6 | 1,805 | 270 | 270 | | 72 | 105 | 872 | 718 | 777 | 55 | 1 | 128 | 4,945 | 8,083 |
| 02-Feb-04 | Mon | WD | | 22,340 | 6,258 | 2,914 | | | | 4,628 | 8,260 | 5,472 | 860 | 1 | 107 | 50,733 | 62,272 |
| 03-Feb-04 | Tue | WD | | 22,015 | 5,812 | 3,138 | | | | 4,264 | 7,388 | 5,877 | 785 | 1 | 167 | 49,280 | 62,100 |

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-Feb-04 | Wed | WD | 4 | 39,940 | 6,012 | 3,044 | | | | 3,468 | | 5,034 | 845 | 1 | 54 | 58,348 | 60,130 |
| 05-Feb-04 | Thu | WD | 5 | 21,885 | 6,118 | 3,350 | 158 | | | 3,832 | | 5,304 | 990 | | 145 | 41,623 | 58,764 |
| 06-Feb-04 | Fri | WD | 1 | 19,345 | 5,970 | 3,570 | 204 | | | 3,780 | | 5,415 | 810 | | 117 | 39,095 | 57,651 |
| 07-Feb-04 | Sat | WE | 0 | | 324 | 656 | 16 | | | 148 | | | 35 | | 1 | 1,179 | 8,283 |
| 08-Feb-04 | Sun | WE | | | 318 | 506 | 24 | | | 308 | | | 85 | | 10 | 1,241 | 7,533 |
| 09-Feb-04 | Mon | WD | 4 | 19,525 | 6,062 | 3,958 | 180 | | | 3,320 | | 3,069 | 940 | | 76 | 37,058 | 57,511 |
| 10-Feb-04 | Tue | WD | 6,993 | 17,990 | 5,464 | 4,317 | 118 | 212 | 360 | 1,665 | 749 | 5,946 | 835 | 1,439 | 3,479 | 46,088 | 56,471 |
| 11-Feb-04 | Wed | WD | 34,215 | 6,652 | | 5,265 | | 1,456 | 1,718 | 936 | 4,462 | 6,414 | | 10,761 | 19,564 | 71,879 | 53,529 |
| 12-Feb-04 | Thu | WD | 64,285 | 8,478 | | 5,818 | | 1,451 | 1,630 | 873 | 4,754 | 6,360 | | 11,392 | 21,709 | 105,041 | 55,899 |
| 13-Feb-04 | Fri | WD | 9,367 | 4,847 | | 5,149 | | 1,270 | 1,290 | 919 | 4,431 | 5,685 | | 10,335 | 16,655 | 43,293 | 57,749 |
| 14-Feb-04 | Sat | WE | 88 | 277 | | 630 | | 99 | 77 | 77 | 778 | 579 | | 1,799 | 1,692 | 4,404 | 6,728 |
| 15-Feb-04 | Sun | WE | 36 | 278 | | 538 | | 114 | 46 | 39 | 830 | 492 | | 1,298 | 1,567 | 3,671 | 6,902 |
| 16-Feb-04 | Mon | FH | 69 | 738 | | 1,442 | | 217 | 217 | 242 | 1,136 | 1,221 | | 4,553 | 3,589 | 9,835 | 7,015 |
| 17-Feb-04 | Tue | WD | 13,548 | 4,262 | | 6,040 | | 1,389 | 1,508 | 865 | 4,733 | 6,570 | | 11,344 | 17,241 | 50,259 | 59,054 |
| 18-Feb-04 | Wed | WD | 35,844 | 3,932 | | 5,957 | | 1,449 | 1,476 | 1,027 | 4,452 | 8,463 | | 13,254 | 16,939 | 75,854 | 59,319 |
| 19-Feb-04 | Thu | WD | 40,292 | 3,931 | 2,527 | 6,013 | | 1,464 | 1,602 | 679 | 4,723 | 8,121 | | 11,806 | 16,734 | 81,158 | 58,142 |
| 20-Feb-04 | Fri | WD | 52,654 | 7,828 | 2,914 | 5,643 | | 1,267 | 1,400 | 783 | 4,153 | 7,638 | | 9,664 | 19,744 | 93,944 | 57,702 |
| 21-Feb-04 | Sat | WE | 3,279 | 1,226 | 213 | 798 | | 75 | 125 | 35 | 541 | 543 | | 1,154 | 2,526 | 7,989 | 7,145 |
| 22-Feb-04 | Sun | WE | 3,726 | 854 | 258 | 500 | | 123 | 209 | 65 | 624 | 669 | | 1,290 | 2,401 | 8,408 | 6,342 |
| 23-Feb-04 | Mon | WD | 37,022 | 10,156 | 3,219 | 6,300 | 6 | 1,447 | 1,560 | 1,031 | 4,655 | 7,617 | | 21,096 | 23,741 | 94,109 | 58,620 |
| 24-Feb-04 | Tue | WD | 36,161 | 8,975 | 3,315 | 6,848 | 2 | 1,422 | 1,697 | 1,092 | 5,327 | 8,052 | | 16,514 | 23,749 | 89,405 | 57,359 |
| 25-Feb-04 | Wed | WD | 75,936 | 4,911 | 3,230 | 6,506 | 3 | 1,651 | 1,712 | 1,169 | 2,797 | 7,299 | | 11,152 | 17,060 | 116,363 | 57,993 |
| 26-Feb-04 | Thu | WD | 67,681 | 3,847 | 2,603 | 5,136 | 2 | 1,364 | 1,373 | 946 | 1 | 5,331 | | 10,016 | 11,620 | 98,300 | 62,745 |
| 27-Feb-04 | Fri | WD | 43,277 | 3,560 | 2,148 | 5,192 | 4 | 1,188 | 1,324 | 755 | 1 | 6,108 | | 9,320 | 10,909 | 72,897 | 67,580 |
| 28-Feb-04 | Sat | WE | 7,128 | 478 | 314 | 1,278 | 6 | 239 | 279 | 118 | | 1,257 | | 1,556 | 1,955 | 12,653 | 5,516 |
| 29-Feb-04 | Sun | WE | 8,578 | 398 | 171 | 1,116 | | 108 | 142 | 87 | 29 | 786 | | 1,308 | 1,515 | 12,723 | 6,036 |
| 01-Mar-04 | Mon | WD | 57,183 | 4,367 | 2,539 | 4,610 | 4 | 1,148 | 1,155 | 803 | 3,427 | 5,253 | | 9,904 | 14,314 | 90,393 | 69,196 |
| 02-Mar-04 | Tue | WD | 54,658 | 4,567 | 2,789 | 5,830 | 4 | 1,339 | 1,363 | 956 | 4,779 | 7,455 | | 9,544 | 17,187 | 93,284 | 71,284 |
| 03-Mar-04 | Wed | WD | 32,929 | 3,328 | 2,285 | 4,370 | 4 | 1,057 | 1,119 | 810 | 3,467 | 5,606 | | 8,847 | 13,065 | 63,824 | 73,600 |
| 04-Mar-04 | Thu | WD | 39,590 | 3,968 | 5,065 | 6,992 | 2 | 1,280 | 1,365 | 3,562 | 1,742 | 4,385 | | 5,821 | 19,341 | 73,772 | 73,888 |
| 05-Mar-04 | Fri | WD | 43,732 | 5,521 | 3,889 | 8,526 | 4 | 1,787 | 1,928 | 4,919 | 3,302 | 9,392 | | 9,903 | 27,044 | 92,903 | 75,580 |
| 06-Mar-04 | Sat | WE | 3,903 | 436 | 226 | 1,220 | | 106 | 130 | 71 | 693 | 2,043 | | 1,532 | 2,163 | 10,360 | 6,900 |
| 07-Mar-04 | Sun | WE | 6,067 | 743 | 182 | 752 | | 103 | 106 | 48 | 523 | 1,299 | | 962 | 2,025 | 10,785 | 7,920 |
| 08-Mar-04 | Mon | WD | 76,981 | 8,942 | 1,775 | 7,273 | 2 | 1,285 | 1,531 | 946 | 4,891 | 9,155 | | 10,284 | 22,906 | 123,065 | 78,412 |
| 09-Mar-04 | Tue | WD | 78,055 | 4,458 | | 7,848 | 2 | 1,336 | 1,474 | 1,059 | 4,951 | 7,179 | | 9,916 | 19,041 | 116,278 | 82,938 |
| 10-Mar-04 | Wed | WD | 72,613 | 4,855 | | 6,868 | 4 | 1,574 | 1,673 | 1,081 | 4,621 | 8,493 | | 10,212 | 18,916 | 111,994 | 86,633 |
| 11-Mar-04 | Thu | WD | 60,561 | 4,431 | 145 | 6,638 | 2 | 1,296 | 1,646 | 1,002 | 4,521 | 8,562 | | 9,891 | 18,046 | 98,695 | 88,744 |
| 12-Mar-04 | Fri | WD | 57,017 | 5,105 | 2,042 | 6,716 | 2 | 1,407 | 1,615 | 846 | 3,754 | 6,678 | | 9,582 | 17,698 | 94,764 | 88,410 |
| 13-Mar-04 | Sat | WE | 4,233 | 549 | 133 | 944 | | 72 | 104 | 37 | 489 | 861 | | 2,222 | 1,865 | 9,644 | 8,981 |
| 14-Mar-04 | Sun | WE | 3,646 | 491 | 200 | 958 | | 99 | 146 | 65 | 471 | 777 | | 1,038 | 1,941 | 7,891 | 9,563 |
| 15-Mar-04 | Mon | WD | 43,313 | 3,914 | 2,324 | 7,558 | 2 | 1,316 | 1,543 | 896 | 4,170 | 7,988 | | 9,657 | 17,107 | 82,661 | 91,119 |
| 16-Mar-04 | Tue | WD | 42,156 | 3,936 | 2,213 | 7,182 | 2 | 1,274 | 1,762 | 924 | 4,660 | 7,041 | | 9,908 | 18,280 | 81,058 | 90,696 |
| 17-Mar-04 | Wed | WD | 47,077 | 3,813 | 2,025 | 7,361 | 4 | 1,383 | 1,643 | 1,082 | 4,406 | 7,668 | | 10,115 | 17,830 | 86,597 | 92,236 |
| 18-Mar-04 | Thu | WD | 49,020 | 3,982 | 2,264 | 6,618 | 4 | 1,372 | 1,487 | 1,051 | 4,575 | 7,761 | | 11,397 | 17,421 | 89,531 | 92,773 |
| 19-Mar-04 | Fri | WD | 39,107 | 3,250 | 2,223 | 6,902 | 2 | 1,303 | 1,381 | 1,052 | 3,616 | 6,975 | | 9,454 | 16,064 | 75,265 | 93,192 |
| 20-Mar-04 | Sat | WE | 3,729 | 417 | 137 | 946 | | 73 | 93 | 91 | 504 | 537 | | 1,649 | 1,772 | 8,176 | 10,057 |

HOGR6OA-000011 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21-Mar-04 | Sun | WE | 3,583 | 397 | 126 | 1,214 | | 148 | 183 | 85 | 477 | 816 | | 1,697 | 2,073 | 8,726 | 10,080 |
| 22-Mar-04 | Mon | WD | 45,858 | 4,281 | 2,271 | 8,228 | 4 | 1,488 | 1,413 | 951 | 4,052 | 8,547 | | 10,948 | 17,443 | 88,041 | 92,258 |
| 23-Mar-04 | Tue | WD | 49,672 | 4,697 | 2,706 | 8,648 | 130 | 1,424 | 1,439 | 1,017 | 4,599 | 9,261 | | 17,068 | 18,860 | 100,661 | 91,955 |
| 24-Mar-04 | Wed | WD | 30,071 | 4,770 | 2,414 | 9,074 | 162 | 1,661 | 1,491 | 1,042 | 4,980 | 10,455 | | 24,866 | 19,417 | 99,986 | 92,517 |
| 25-Mar-04 | Thu | WD | 32,559 | 4,451 | 2,164 | 8,570 | 99 | 1,366 | 1,368 | 987 | 4,331 | 10,605 | | 20,361 | 18,356 | 86,861 | 91,248 |
| 26-Mar-04 | Fri | WD | 48,186 | 4,365 | 1,946 | 8,711 | 117 | 1,267 | 1,602 | 1,156 | 3,698 | 8,595 | | 10,328 | 18,333 | 89,971 | 90,677 |
| 27-Mar-04 | Sat | WE | 3,546 | 323 | 135 | 1,082 | 36 | 174 | 122 | 115 | 484 | 846 | | 1,480 | 1,857 | 8,343 | 10,120 |
| 28-Mar-04 | Sun | WE | 2,926 | 357 | 125 | 934 | 22 | 103 | 127 | 90 | 378 | 822 | | 1,393 | 1,685 | 7,277 | 9,581 |
| 29-Mar-04 | Mon | WD | 41,512 | 5,128 | 2,464 | 8,738 | 114 | 1,333 | 1,740 | 1,892 | 4,194 | 9,702 | | 29,186 | 21,505 | 106,003 | 91,530 |
| 30-Mar-04 | Tue | WD | 38,305 | 5,246 | 2,525 | 8,820 | 103 | 1,448 | 1,794 | 1,961 | 4,666 | 8,601 | | 30,865 | 22,149 | 104,334 | 92,311 |
| 31-Mar-04 | Wed | WD | 49,760 | 5,495 | 2,129 | 8,623 | 96 | 1,313 | 1,508 | 1,818 | 4,522 | 8,338 | | 12,233 | 21,329 | 95,835 | 92,863 |
| 01-Apr-04 | Thu | WD | 62,617 | 9,358 | 2,266 | 7,952 | 151 | 1,241 | 1,917 | 1,837 | 4,528 | 9,219 | | 10,895 | 35,984 | 111,981 | 94,464 |
| 02-Apr-04 | Fri | WD | 37,605 | 7,444 | 2,026 | 4,222 | 118 | 1,205 | 1,405 | 1,762 | 3,684 | 7,623 | | 12,321 | 20,012 | 79,415 | 96,374 |
| 03-Apr-04 | Sat | WE | 3,906 | 850 | 258 | 0 | 27 | 114 | 94 | 181 | 416 | 783 | | 2,107 | 1,830 | 8,736 | 8,900 |
| 04-Apr-04 | Sun | WD | 4,038 | 750 | 211 | | 13 | 94 | 112 | 114 | 429 | 588 | | 2,082 | 1,860 | 8,431 | 8,697 |
| 05-Apr-04 | Mon | WD | 45,935 | 4,628 | 2,030 | | 110 | 1,261 | 1,446 | 1,615 | 4,148 | 8,406 | | 16,012 | 17,984 | 85,591 | 95,700 |
| 06-Apr-04 | Tue | WD | 50,977 | 4,822 | 1,892 | | 119 | 1,158 | 1,422 | 1,587 | 4,326 | 7,938 | | 18,830 | 15,545 | 93,071 | 93,826 |
| 07-Apr-04 | Wed | WD | 38,406 | 4,075 | 1,721 | | 111 | 1,227 | 1,595 | 1,954 | 4,260 | 8,865 | | 16,424 | 16,450 | 78,638 | 92,666 |
| 08-Apr-04 | Thu | WD | 51,509 | 3,997 | 1,864 | 8,175 | 168 | 1,148 | 1,505 | 1,663 | 4,290 | 8,973 | | 13,397 | 21,488 | 96,689 | 90,996 |
| 09-Apr-04 | Fri | WD | 31,124 | 2,351 | 976 | 7,337 | 71 | 797 | 925 | 1,516 | 2,929 | 6,635 | | 9,683 | 14,073 | 64,344 | 90,898 |
| 10-Apr-04 | Sat | WE | 4,595 | 362 | 104 | 1,164 | 5 | 93 | 104 | 120 | 351 | 729 | | 1,680 | 2,086 | 9,307 | 8,403 |
| 11-Apr-04 | Sun | WE | 4,699 | 418 | 72 | 986 | 5 | 68 | 98 | 142 | 319 | 612 | | 1,972 | 2,008 | 9,391 | 8,361 |
| 12-Apr-04 | Mon | WD | 44,896 | 2,256 | 1,320 | 9,600 | 98 | 880 | 1,307 | 1,546 | 3,569 | 7,659 | | 11,243 | 16,539 | 84,374 | 89,377 |
| 13-Apr-04 | Tue | WD | 48,628 | 2,980 | 2,167 | 11,506 | 121 | 1,248 | 1,964 | 1,795 | 4,324 | 8,832 | | 12,472 | 21,187 | 96,037 | 89,462 |
| 14-Apr-04 | Wed | WD | 45,058 | 2,324 | 1,979 | 10,766 | 99 | 1,149 | 2,085 | 1,875 | 4,547 | 9,150 | | 12,977 | 20,809 | 92,009 | 90,211 |
| 15-Apr-04 | Thu | WD | 43,137 | 2,850 | 1,777 | 10,124 | 134 | 1,143 | 1,842 | 1,825 | 4,364 | 9,198 | | 13,563 | 20,295 | 89,957 | 90,482 |
| 16-Apr-04 | Fri | WD | 44,944 | 2,618 | 1,644 | 9,847 | 127 | 1,244 | 1,591 | 1,984 | 3,877 | 9,094 | | 10,953 | 19,108 | 87,923 | 90,503 |
| 17-Apr-04 | Sat | WE | 7,486 | 953 | 113 | 1,286 | 48 | 112 | 170 | 109 | 424 | 858 | | 1,548 | 2,608 | 13,107 | 8,548 |
| 18-Apr-04 | Sun | WE | 7,889 | 909 | 166 | 1,180 | 14 | 167 | 163 | 107 | 500 | 735 | | 824 | 2,583 | 12,654 | 9,165 |
| 19-Apr-04 | Mon | WD | 67,385 | 13,725 | 2,004 | 10,046 | 93 | 1,171 | 2,106 | 1,836 | 4,148 | 8,427 | 18 | 10,533 | 31,385 | 121,492 | 91,136 |
| 20-Apr-04 | Tue | WD | 49,612 | 14,457 | 2,062 | 10,119 | 100 | 1,271 | 2,431 | 2,186 | 4,441 | 8,466 | 112 | 11,602 | 33,792 | 106,859 | 92,809 |
| 21-Apr-04 | Wed | WD | 47,726 | 9,758 | 2,110 | 10,338 | 87 | 1,239 | 2,590 | 2,029 | 4,084 | 9,573 | 106 | 11,021 | 29,099 | 100,661 | 93,119 |
| 22-Apr-04 | Thu | WD | 47,547 | 4,776 | 2,076 | 10,866 | 98 | 1,174 | 2,171 | 1,884 | 4,313 | 9,032 | 162 | 9,831 | 23,359 | 93,930 | 93,602 |
| 23-Apr-04 | Fri | WD | 39,319 | 4,729 | 1,949 | 9,888 | 80 | 1,097 | 1,424 | 1,719 | 3,347 | 7,812 | 1,444 | 9,269 | 19,813 | 82,077 | 93,956 |
| 24-Apr-04 | Sat | WE | 4,206 | 1,472 | 243 | 864 | 14 | 76 | 77 | 117 | 447 | 702 | 76 | 2,148 | 2,758 | 10,442 | 9,656 |
| 25-Apr-04 | Sun | WE | 3,929 | 1,059 | 157 | 1,054 | 19 | 97 | 107 | 82 | 368 | 1,089 | 112 | 2,118 | 2,351 | 10,191 | 9,918 |
| 26-Apr-04 | Mon | WD | 56,139 | 13,077 | 2,143 | 11,014 | 120 | 1,182 | 1,545 | 2,169 | 4,047 | 8,739 | 2,072 | 9,901 | 30,810 | 112,148 | 93,561 |
| 27-Apr-04 | Tue | WD | 104,691 | 7,715 | 2,256 | 11,388 | 131 | 1,101 | 1,634 | 2,062 | 4,634 | 8,865 | 2,346 | 16,394 | 26,307 | 163,217 | 93,868 |
| 28-Apr-04 | Wed | WD | 44,043 | 4,848 | 2,297 | 11,132 | 146 | 1,257 | 1,706 | 2,375 | 4,453 | 8,268 | 2,574 | 25,975 | 23,790 | 109,074 | 96,812 |
| 29-Apr-04 | Thu | WD | 68,539 | 4,648 | 2,325 | 9,966 | 140 | 1,294 | 1,737 | 2,083 | 4,567 | 8,501 | 3,364 | 8,632 | 22,382 | 115,796 | 97,474 |
| 30-Apr-04 | Fri | WD | 54,151 | 5,170 | 2,004 | 8,664 | 117 | 853 | 1,530 | 1,803 | 3,947 | 7,908 | 4,660 | 7,065 | 20,586 | 97,672 | 97,665 |
| 01-May-04 | Sat | WE | 4,994 | 542 | 172 | 1,184 | 23 | 96 | 93 | 129 | 403 | 546 | 280 | 1,424 | 2,014 | 9,886 | 10,282 |
| 02-May-04 | Sun | WE | 6,847 | 523 | 164 | 1,100 | 22 | 74 | 117 | 82 | 499 | 669 | 338 | 1,597 | 1,998 | 12,032 | 10,426 |
| 03-May-04 | Mon | WD | 55,550 | 4,129 | 2,112 | 7,146 | 77 | 1,160 | 1,274 | 1,814 | 4,273 | 8,829 | 4,882 | 11,649 | 18,731 | 102,895 | 98,588 |
| 04-May-04 | Tue | WD | 42,921 | 4,953 | 2,518 | 9,500 | 139 | 1,362 | 1,703 | 2,173 | 4,771 | 9,186 | 5,318 | 12,616 | 22,867 | 97,160 | 99,453 |
| 05-May-04 | Wed | WD | 44,297 | 4,657 | 2,533 | 9,674 | 176 | 1,176 | 1,524 | 2,532 | 4,140 | 8,979 | 6,292 | 11,825 | 22,332 | 97,805 | 99,658 |

HOGR6OA-000012 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06-May-04 | Thu | WD | 42,746 | 4,502 | 2,512 | 9,672 | 125 | 1,179 | 1,608 | 2,499 | 4,575 | 7,859 | 7,660 | 10,693 | 22,644 | 95,630 | 100,616 |
| 07-May-04 | Fri | WD | 41,577 | 4,335 | 2,156 | 7,875 | 74 | 1,340 | 1,530 | 2,382 | 3,596 | 7,120 | 7,614 | 14,150 | 20,090 | 93,749 | 100,563 |
| 08-May-04 | Sat | WE | 3,146 | 313 | 78 | 1,052 | 15 | 82 | 82 | 155 | 430 | 570 | 418 | 2,167 | 1,745 | 8,508 | 10,876 |
| 09-May-04 | Sun | WE | 3,914 | 536 | 139 | 1,104 | 31 | 80 | 108 | 125 | 385 | 720 | 462 | 1,447 | 1,969 | 9,051 | 10,776 |
| 10-May-04 | Mon | WD | 39,934 | 4,527 | 2,506 | 9,080 | 91 | 1,310 | 1,835 | 2,510 | 4,445 | 9,072 | 9,940 | 10,984 | 22,738 | 96,234 | 102,033 |
| 11-May-04 | Tue | WD | 41,114 | 4,580 | 2,295 | 9,750 | 99 | 1,310 | 1,697 | 2,615 | 4,762 | 9,186 | 9,522 | 11,615 | 23,410 | 98,545 | 102,626 |
| 12-May-04 | Wed | WD | 42,184 | 4,654 | 2,333 | 10,062 | 104 | 1,373 | 1,624 | 2,585 | 4,111 | 8,751 | 11,990 | 12,176 | 22,610 | 101,947 | 102,752 |
| 13-May-04 | Thu | WD | 39,752 | 4,274 | 1,907 | 8,744 | 112 | 1,215 | 1,545 | 2,451 | 4,295 | 9,039 | 12,404 | 12,471 | 21,576 | 98,209 | 103,249 |
| 14-May-04 | Fri | WD | 36,588 | 3,408 | 1,962 | 8,351 | 92 | 1,136 | 1,493 | 2,223 | 3,992 | 8,034 | 11,804 | 9,443 | 19,465 | 88,526 | 103,661 |
| 15-May-04 | Sat | WE | 3,650 | 304 | 83 | 1,270 | 12 | 81 | 117 | 117 | 330 | 399 | 758 | 1,187 | 1,758 | 8,308 | 10,734 |
| 16-May-04 | Sun | WE | 2,357 | 246 | 95 | 622 | 13 | 94 | 64 | 90 | 217 | 468 | 886 | 1,098 | 1,095 | 6,250 | 10,134 |
| 17-May-04 | Mon | WD | 41,798 | 4,423 | 2,354 | 9,849 | 128 | 1,236 | 1,887 | 2,837 | 4,293 | 8,931 | 12,674 | 11,379 | 23,750 | 101,789 | 103,691 |
| 18-May-04 | Tue | WD | 42,221 | 4,692 | 2,219 | 9,838 | 124 | 1,387 | 1,973 | 2,708 | 4,611 | 9,132 | 13,204 | 11,989 | 24,256 | 104,098 | 102,706 |
| 19-May-04 | Wed | WD | 41,212 | 4,762 | 2,190 | 11,895 | 137 | 1,377 | 1,979 | 2,948 | 4,562 | 8,913 | 13,802 | 12,232 | 25,531 | 106,009 | 102,568 |
| 20-May-04 | Thu | WD | 40,595 | 4,187 | 1,891 | 11,572 | 100 | 1,242 | 1,754 | 2,648 | 4,570 | 9,630 | 12,318 | 10,665 | 23,697 | 101,372 | 102,836 |
| 21-May-04 | Fri | WD | 34,769 | 3,523 | 1,790 | 8,378 | 75 | 1,157 | 1,375 | 1,921 | 4,163 | 8,898 | 12,914 | 9,531 | 18,762 | 88,494 | 103,208 |
| 22-May-04 | Sat | WE | 3,584 | 323 | 78 | 1,446 | 8 | 82 | 122 | 141 | 418 | 492 | 662 | 2,252 | 2,015 | 9,608 | 9,334 |
| 23-May-04 | Sun | WE | 4,257 | 338 | 113 | 1,366 | 16 | 91 | 76 | 140 | 323 | 603 | 840 | 1,249 | 1,831 | 9,412 | 9,229 |
| 24-May-04 | Mon | WD | 41,346 | 4,550 | 1,901 | 9,785 | 85 | 1,329 | 1,499 | 2,464 | 4,115 | 9,072 | 15,558 | 12,109 | 22,109 | 103,813 | 103,528 |
| 25-May-04 | Tue | WD | 39,431 | 4,711 | 2,146 | 9,704 | 125 | 1,500 | 1,490 | 2,926 | 4,788 | 9,066 | 16,334 | 13,222 | 23,752 | 105,443 | 103,112 |
| 26-May-04 | Wed | WD | 40,305 | 4,607 | 2,005 | 9,488 | 86 | 1,657 | 1,681 | 3,029 | 4,171 | 7,830 | 15,508 | 12,936 | 23,475 | 103,303 | 100,223 |
| 27-May-04 | Thu | WD | 36,551 | 4,240 | 2,044 | 9,870 | 110 | 1,292 | 1,519 | 3,292 | 4,858 | 8,274 | 16,064 | 11,539 | 24,118 | 99,653 | 99,934 |
| 28-May-04 | Fri | WD | 33,033 | 3,828 | 1,805 | 8,736 | 62 | 1,028 | 1,104 | 2,752 | 3,304 | 8,016 | 11,218 | 9,421 | 19,481 | 84,307 | 99,127 |
| 29-May-04 | Sat | WE | 3,300 | 305 | 93 | 1,302 | 7 | 50 | 80 | 148 | 294 | 522 | 748 | 1,542 | 1,761 | 8,391 | 9,132 |
| 30-May-04 | Sun | WE | 3,404 | 246 | 67 | 1,080 | 7 | 36 | 64 | 116 | 210 | 432 | 776 | 1,479 | 1,375 | 7,919 | 8,945 |
| 31-May-04 | Mon | FH | 9,116 | 1,593 | 189 | 2,406 | 17 | 9,770 | 153 | 278 | 6,736 | 969 | 1,872 | 19,699 | 10,714 | 52,798 | 8,431 |
| 01-Jun-04 | Tue | WD | 43,081 | 5,347 | 2,271 | 10,928 | 114 | 1,460 | 1,624 | 3,357 | 4,845 | 9,092 | 15,372 | 11,835 | 31,355 | 109,326 | 98,215 |
| 02-Jun-04 | Wed | WD | 41,867 | 5,202 | 2,210 | 10,986 | 93 | 1,546 | 1,662 | 3,298 | 5,199 | 15,637 | 14,900 | 11,854 | 31,798 | 114,454 | 98,855 |
| 03-Jun-04 | Thu | WD | 37,269 | 5,111 | 2,376 | 10,678 | 126 | 1,407 | 1,544 | 3,204 | 4,905 | 20,197 | 16,934 | 11,711 | 30,615 | 115,462 | 99,732 |
| 04-Jun-04 | Fri | WD | 33,420 | 3,959 | 2,227 | 9,576 | 150 | 1,190 | 1,540 | 2,842 | 4,188 | 17,756 | 15,526 | 10,806 | 26,775 | 103,180 | 100,775 |
| 05-Jun-04 | Sat | WE | 4,267 | 531 | 170 | 2,466 | 14 | 88 | 137 | 170 | 449 | 1,620 | 1,254 | 1,862 | 3,308 | 13,028 | 13,361 |
| 06-Jun-04 | Sun | WE | 4,732 | 472 | 116 | 1,490 | 7 | 77 | 137 | 164 | 466 | 1,878 | 1,446 | 1,787 | 2,781 | 12,772 | 13,863 |
| 07-Jun-04 | Mon | WD | 38,616 | 4,630 | 2,156 | 9,308 | 53 | 1,285 | 1,452 | 3,605 | 5,687 | 20,743 | 15,456 | 12,579 | 31,544 | 115,570 | 101,272 |
| 08-Jun-04 | Tue | WD | 40,833 | 5,186 | 2,236 | 9,612 | 86 | 1,305 | 1,657 | 4,409 | 5,158 | 18,888 | 15,432 | 13,394 | 33,385 | 118,196 | 102,289 |
| 09-Jun-04 | Wed | WD | 42,565 | 5,037 | 1,947 | 9,994 | 67 | 1,219 | 1,541 | 4,102 | 4,607 | 19,581 | 14,638 | 12,004 | 31,322 | 117,302 | 103,324 |
| 10-Jun-04 | Thu | WD | 45,326 | 5,922 | 2,640 | 9,372 | 82 | 1,424 | 1,669 | 5,007 | 4,802 | 15,504 | 15,452 | 13,515 | 34,356 | 120,715 | 104,132 |
| 11-Jun-04 | Fri | FH | 17,083 | 1,721 | 493 | 3,122 | 22 | 223 | 307 | 924 | 1,139 | 2,091 | 4,434 | 4,886 | 8,168 | 36,445 | 14,276 |
| 12-Jun-04 | Sat | WE | 4,339 | 497 | 122 | 1,184 | 12 | 72 | 80 | 190 | 384 | 861 | 1,186 | 2,022 | 2,439 | 10,949 | 16,493 |
| 13-Jun-04 | Sun | WE | 4,826 | 673 | 186 | 934 | 13 | 80 | 85 | 333 | 303 | 866 | 1,248 | 1,558 | 2,635 | 11,105 | 16,757 |
| 14-Jun-04 | Mon | WD | 49,817 | 5,494 | 2,945 | 11,924 | 75 | 1,317 | 1,907 | 5,583 | 5,362 | 9,831 | 15,370 | 13,435 | 37,986 | 123,060 | 106,249 |
| 15-Jun-04 | Tue | WD | 47,549 | 5,568 | 2,613 | 11,346 | 53 | 1,426 | 1,845 | 6,484 | 5,387 | 9,043 | 14,164 | 13,306 | 39,434 | 118,784 | 107,431 |
| 16-Jun-04 | Wed | WD | 49,486 | 5,547 | 3,018 | 10,268 | 91 | 1,564 | 1,636 | 7,241 | 5,131 | 9,279 | 15,034 | 13,054 | 39,503 | 121,349 | 108,247 |
| 17-Jun-04 | Thu | WD | 49,107 | 5,393 | 2,764 | 10,766 | 47 | 1,401 | 1,712 | 7,417 | 5,307 | 9,681 | 14,952 | 13,068 | 40,398 | 121,615 | 109,099 |
| 18-Jun-04 | Fri | WD | 44,238 | 4,698 | 2,751 | 10,594 | 78 | 1,217 | 1,433 | 6,789 | 4,436 | 9,515 | 13,976 | 12,385 | 35,966 | 112,110 | 110,224 |
| 19-Jun-04 | Sat | WE | 3,748 | 493 | 138 | 1,272 | 9 | 48 | 83 | 387 | 391 | 663 | 882 | 2,869 | 2,873 | 10,983 | 17,243 |
| 20-Jun-04 | Sun | WE | 3,786 | 559 | 179 | 1,070 | 12 | 97 | 75 | 469 | 430 | 858 | 1,034 | 1,683 | 3,087 | 10,252 | 17,380 |

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21-Jun-04 | Mon | WD | 44,815 | 5,292 | 2,517 | 11,372 | 83 | 1,187 | 1,680 | 8,134 | 5,019 | 9,542 | 14,312 | 13,142 | 41,587 | 117,095 | 111,536 |
| 22-Jun-04 | Tue | WD | 49,786 | 5,793 | 2,795 | 11,180 | 117 | 1,318 | 1,674 | 8,818 | 5,164 | 9,395 | 15,568 | 13,835 | 43,899 | 125,443 | 112,274 |
| 23-Jun-04 | Wed | WD | 44,734 | 5,506 | 2,543 | 9,996 | 88 | 1,266 | 1,570 | 9,503 | 4,641 | 9,473 | 14,934 | 13,316 | 42,732 | 117,570 | 113,385 |
| 24-Jun-04 | Thu | WD | 41,494 | 5,323 | 2,335 | 9,714 | 66 | 1,273 | 1,682 | 10,472 | 5,140 | 9,205 | 13,992 | 13,089 | 45,562 | 113,785 | 114,177 |
| 25-Jun-04 | Fri | WD | 32,837 | 3,935 | 1,921 | 8,476 | 86 | 1,038 | 1,465 | 8,318 | 4,241 | 7,978 | 13,074 | 11,016 | 36,775 | 94,385 | 114,962 |
| 26-Jun-04 | Sat | WE | 4,197 | 557 | 174 | 1,160 | 21 | 120 | 169 | 664 | 469 | 828 | 1,238 | 1,842 | 3,793 | 11,439 | 17,464 |
| 27-Jun-04 | Sun | WE | 3,019 | 435 | 108 | 1,176 | 6 | 85 | 126 | 537 | 383 | 718 | 1,260 | 1,319 | 3,146 | 9,172 | 17,769 |
| 28-Jun-04 | Mon | WD | 35,630 | 4,947 | 2,169 | 8,674 | 113 | 1,269 | 1,778 | 9,643 | 4,572 | 8,323 | 15,272 | 11,377 | 42,078 | 103,767 | 115,522 |
| 29-Jun-04 | Tue | WD | 38,767 | 5,115 | 2,370 | 8,738 | 86 | 1,502 | 1,594 | 10,182 | 5,142 | 8,298 | 15,108 | 12,075 | 44,000 | 108,977 | 114,904 |
| 30-Jun-04 | Wed | WD | 42,079 | 4,783 | 2,278 | 9,184 | 124 | 1,302 | 1,656 | 10,661 | 4,941 | 7,893 | 14,490 | 12,045 | 44,851 | 111,436 | 114,885 |
| 01-Jul-04 | Thu | WD | 42,312 | 5,098 | 2,933 | 9,116 | 50 | 1,626 | 1,485 | 11,368 | 5,326 | 9,999 | 13,833 | 12,410 | 46,779 | 115,556 | 114,726 |
| 02-Jul-04 | Fri | WD | 32,509 | 5,229 | 2,066 | 7,526 | 50 | 955 | 1,168 | 8,862 | 2,854 | 6,579 | 11,968 | 9,456 | 35,486 | 89,222 | 114,731 |
| 03-Jul-04 | Sat | WE | 2,572 | 788 | 74 | 684 | 12 | 72 | 60 | 476 | 301 | 405 | 830 | 1,161 | 2,840 | 7,435 | 14,016 |
| 04-Jul-04 | Sun | WE | 2,800 | 642 | 64 | 688 | 5 | 46 | 68 | 485 | 289 | 360 | 624 | 1,178 | 2,690 | 7,249 | 13,395 |
| 05-Jul-04 | Mon | FH | 4,155 | 563 | 157 | 1,248 | 24 | 95 | 129 | 806 | 390 | 744 | 1,794 | 1,988 | 3,878 | 12,093 | 12,781 |
| 06-Jul-04 | Tue | WD | 45,772 | 6,219 | 2,163 | 9,645 | 89 | 1,371 | 1,688 | 12,352 | 5,059 | 8,286 | 16,162 | 11,223 | 50,329 | 120,029 | 113,909 |
| 07-Jul-04 | Wed | WD | 47,385 | 6,571 | 2,468 | 18,175 | 136 | 1,559 | 1,837 | 15,073 | 5,357 | 9,681 | 17,894 | 11,880 | 62,656 | 138,016 | 114,011 |
| 08-Jul-04 | Thu | WD | 44,994 | 8,076 | 2,578 | 18,828 | 82 | 1,493 | 1,768 | 14,113 | 5,281 | 9,447 | 18,582 | 12,265 | 61,919 | 137,507 | 115,162 |
| 09-Jul-04 | Fri | WD | 39,867 | 7,231 | 2,315 | 18,568 | 149 | 1,477 | 1,437 | 13,212 | 4,749 | 9,681 | 14,762 | 12,707 | 56,764 | 126,155 | 116,095 |
| 10-Jul-04 | Sat | WE | 3,853 | 622 | 91 | 2,212 | 9 | 79 | 50 | 704 | 401 | 753 | 1,100 | 2,329 | 4,117 | 12,203 | 10,075 |
| 11-Jul-04 | Sun | WE | 4,660 | 768 | 114 | 1,840 | 26 | 73 | 102 | 875 | 459 | 774 | 1,378 | 2,000 | 4,636 | 13,069 | 10,215 |
| 12-Jul-04 | Mon | WD | 45,616 | 6,493 | 2,809 | 20,236 | 75 | 1,317 | 1,689 | 15,273 | 5,326 | 10,116 | 15,148 | 12,961 | 62,434 | 137,059 | 116,624 |
| 13-Jul-04 | Tue | WD | 44,791 | 5,537 | 2,922 | 19,908 | 74 | 1,551 | 1,919 | 16,850 | 5,390 | 10,251 | 16,188 | 12,995 | 64,958 | 138,376 | 117,361 |
| 14-Jul-04 | Wed | WD | 43,879 | 5,429 | 2,835 | 10,476 | 74 | 1,463 | 1,960 | 16,607 | 4,931 | 10,116 | 16,032 | 12,156 | 58,962 | 125,958 | 118,302 |
| 15-Jul-04 | Thu | WD | 43,818 | 5,503 | 2,634 | 10,295 | 84 | 1,411 | 1,605 | 15,687 | 4,797 | 9,471 | 16,600 | 11,782 | 55,979 | 123,687 | 118,635 |
| 16-Jul-04 | Fri | WD | 38,259 | 4,859 | 2,373 | 9,527 | 49 | 1,560 | 1,552 | 13,897 | 3,697 | 7,989 | 14,844 | 11,327 | 49,069 | 109,933 | 118,744 |
| 17-Jul-04 | Sat | WE | 4,024 | 580 | 248 | 1,499 | 42 | 138 | 109 | 821 | 522 | 774 | 1,426 | 2,437 | 4,280 | 12,620 | 10,433 |
| 18-Jul-04 | Sun | WE | 3,159 | 422 | 142 | 1,412 | 9 | 132 | 104 | 1,288 | 423 | 643 | 1,484 | 1,525 | 5,241 | 10,743 | 10,615 |
| 19-Jul-04 | Mon | WD | 46,741 | 5,831 | 2,755 | 10,013 | 101 | 1,480 | 1,603 | 17,821 | 4,910 | 9,883 | 17,328 | 11,562 | 60,608 | 130,028 | 118,629 |
| 20-Jul-04 | Tue | WD | 45,170 | 5,482 | 2,797 | 11,238 | 85 | 2,013 | 1,704 | 16,860 | 5,157 | 9,249 | 17,238 | 12,939 | 59,707 | 129,932 | 119,310 |
| 21-Jul-04 | Wed | WD | 42,825 | 5,430 | 2,890 | 10,989 | 97 | 1,501 | 1,581 | 17,655 | 4,759 | 9,524 | 17,562 | 12,906 | 60,169 | 127,719 | 119,546 |
| 22-Jul-04 | Thu | WD | 41,897 | 5,529 | 2,449 | 8,805 | 65 | 1,531 | 1,560 | 17,168 | 4,619 | 9,249 | 17,700 | 12,777 | 57,676 | 123,349 | 120,080 |
| 23-Jul-04 | Fri | WD | 35,844 | 4,746 | 2,104 | 8,114 | 111 | 1,182 | 1,390 | 13,916 | 4,230 | 7,962 | 15,680 | 12,001 | 48,611 | 107,280 | 120,584 |
| 24-Jul-04 | Sat | WE | 2,939 | 892 | 69 | 1,101 | 41 | 77 | 96 | 899 | 390 | 516 | 1,786 | 1,813 | 4,265 | 10,619 | 10,669 |
| 25-Jul-04 | Sun | WE | 3,082 | 807 | 69 | 918 | 19 | 118 | 68 | 811 | 355 | 408 | 1,738 | 1,540 | 3,826 | 9,933 | 10,578 |
| 26-Jul-04 | Mon | WD | 35,794 | 4,707 | 2,007 | 8,036 | 76 | 1,246 | 1,462 | 14,350 | 4,596 | 8,757 | 14,286 | 12,992 | 50,073 | 108,309 | 121,262 |
| 27-Jul-04 | Tue | WD | 37,405 | 4,695 | 1,965 | 8,506 | 118 | 1,077 | 1,673 | 13,969 | 5,162 | 9,666 | 14,418 | 13,150 | 51,394 | 111,804 | 121,501 |
| 28-Jul-04 | Wed | WD | 37,743 | 4,364 | 2,031 | 9,246 | 76 | 1,227 | 1,638 | 13,802 | 4,470 | 8,953 | 14,224 | 12,795 | 50,251 | 110,569 | 121,650 |
| 29-Jul-04 | Thu | WD | 41,050 | 4,554 | 2,207 | 9,153 | 87 | 1,483 | 1,499 | 13,918 | 4,511 | 7,654 | 13,897 | 13,186 | 49,526 | 113,199 | 121,605 |
| 30-Jul-04 | Fri | WD | 38,743 | 4,554 | 2,228 | 7,566 | 78 | 1,276 | 1,301 | 12,347 | 4,294 | 7,854 | 12,231 | 11,075 | 44,612 | 103,547 | 121,481 |
| 31-Jul-04 | Sat | WE | 4,820 | 866 | 142 | 1,342 | 8 | 85 | 196 | 1,047 | 388 | 609 | 1,844 | 1,655 | 4,838 | 13,002 | 10,663 |
| 01-Aug-04 | Sun | WE | 4,912 | 779 | 112 | 1,558 | 27 | 174 | 121 | 1,136 | 452 | 834 | 1,374 | 1,549 | 5,023 | 13,028 | 11,281 |
| 02-Aug-04 | Mon | WD | 44,727 | 5,203 | 1,971 | 10,200 | 81 | 1,314 | 1,454 | 14,200 | 4,257 | 9,108 | 14,972 | 12,962 | 50,728 | 120,449 | 122,235 |
| 03-Aug-04 | Tue | WD | 41,895 | 4,957 | 2,211 | 8,912 | 113 | 1,498 | 1,511 | 14,194 | 4,437 | 8,388 | 15,972 | 13,886 | 50,586 | 117,974 | 122,145 |
| 04-Aug-04 | Wed | WD | 38,938 | 4,471 | 1,928 | 9,250 | 73 | 1,317 | 1,604 | 14,843 | 3,730 | 8,752 | 15,278 | 15,650 | 49,935 | 115,834 | 122,043 |
| 05-Aug-04 | Thu | WD | 41,629 | 4,366 | 2,180 | 6,665 | 81 | 1,328 | 1,721 | 17,970 | 3,998 | 7,516 | 13,626 | 14,420 | 58,804 | 115,500 | 120,933 |

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06-Aug-04 | Fri | WD | 37,567 | 4,069 | 2,250 | 4,183 | 44 | 2,163 | 1,390 | 21,352 | 3,361 | 8,091 | 12,904 | 12,129 | 62,920 | 109,503 | 119,833 |
| 07-Aug-04 | Sat | WE | 4,604 | 485 | 90 | 680 | 21 | 114 | 65 | 1,319 | 362 | 498 | 778 | 1,896 | 5,034 | 10,912 | 11,902 |
| 08-Aug-04 | Sun | WE | 5,489 | 550 | 244 | 642 | 18 | 106 | 140 | 1,269 | 440 | 561 | 1,234 | 1,660 | 5,141 | 12,353 | 11,741 |
| 09-Aug-04 | Mon | WD | 41,985 | 4,491 | 2,230 | 4,595 | 61 | 1,401 | 1,434 | 18,584 | 4,648 | 9,239 | 15,354 | 13,226 | 59,019 | 117,248 | 119,000 |
| 10-Aug-04 | Tue | WD | 43,882 | 4,767 | 2,191 | 4,711 | 96 | 1,561 | 1,415 | 17,827 | 4,789 | 8,115 | 15,140 | 13,183 | 58,282 | 117,677 | 118,010 |
| 11-Aug-04 | Wed | WD | 40,492 | 4,876 | 2,106 | 4,677 | 123 | 1,325 | 1,607 | 18,000 | 4,235 | 7,999 | 14,968 | 13,770 | 58,195 | 114,178 | 116,975 |
| 12-Aug-04 | Thu | WD | 42,071 | 3,955 | 1,970 | 4,491 | 85 | 1,487 | 1,615 | 16,226 | 3,448 | 7,577 | 14,314 | 13,810 | 53,972 | 111,049 | 116,386 |
| 13-Aug-04 | Fri | WD | 34,614 | 3,475 | 1,773 | 4,274 | 68 | 1,344 | 1,234 | 14,259 | 533 | 7,647 | 13,054 | 10,888 | 47,512 | 93,163 | 115,754 |
| 14-Aug-04 | Sat | WE | 5,649 | 546 | 100 | 599 | 11 | 101 | 130 | 1,247 | 25 | 714 | 754 | 1,574 | 4,993 | 11,450 | 11,651 |
| 15-Aug-04 | Sun | WE | 4,151 | 540 | 89 | 537 | 11 | 55 | 109 | 1,193 | 23 | 931 | 938 | 1,236 | 4,626 | 9,813 | 11,505 |
| 16-Aug-04 | Mon | WD | 40,104 | 4,979 | 1,726 | 4,688 | 46 | 1,212 | 1,063 | 17,333 | 535 | 7,553 | 12,802 | 12,652 | 55,560 | 104,693 | 114,916 |
| 17-Aug-04 | Tue | WD | 35,820 | 4,573 | 2,305 | 5,010 | 115 | 1,188 | 1,268 | 17,843 | 664 | 2,265 | 11,431 | 12,520 | 57,886 | 95,022 | 113,649 |
| 18-Aug-04 | Wed | WD | 34,119 | 4,576 | 2,095 | 5,372 | 115 | 1,407 | 1,324 | 17,299 | 810 | 2,417 | 10,672 | 12,647 | 58,028 | 92,853 | 111,903 |
| 19-Aug-04 | Thu | WD | 31,646 | 4,006 | 1,734 | 4,902 | 58 | 1,244 | 1,339 | 16,879 | 6,054 | 2,299 | 9,882 | 12,958 | 56,427 | 93,001 | 110,160 |
| 20-Aug-04 | Fri | WD | 30,001 | 4,317 | 1,634 | 3,470 | 71 | 1,314 | 1,285 | 14,854 | 14,285 | 1,804 | 9,379 | 11,484 | 48,445 | 93,898 | 108,643 |
| 21-Aug-04 | Sat | WE | 3,402 | 671 | 102 | 219 | 5 | 98 | 93 | 991 | 1,260 | 166 | 602 | 1,526 | 3,639 | 9,155 | 11,389 |
| 22-Aug-04 | Sun | WE | 4,158 | 952 | 148 | 166 | 13 | 85 | 93 | 1,018 | 1,472 | 229 | 736 | 1,485 | 3,931 | 10,555 | 11,206 |
| 23-Aug-04 | Mon | WD | 33,522 | 4,659 | 2,052 | 5,362 | 74 | 1,357 | 1,656 | 16,193 | 15,000 | 2,374 | 10,584 | 12,468 | 50,818 | 105,301 | 107,974 |
| 24-Aug-04 | Tue | WD | 32,165 | 5,202 | 1,618 | 8,100 | 122 | 1,300 | 1,443 | 17,141 | 15,331 | 2,518 | 10,429 | 13,163 | 53,786 | 108,532 | 107,823 |
| 25-Aug-04 | Wed | WD | 37,211 | 4,572 | 1,770 | 7,922 | 113 | 1,573 | 1,396 | 17,247 | 14,472 | 2,452 | 11,260 | 12,836 | 53,720 | 112,824 | 107,660 |
| 26-Aug-04 | Thu | WD | 40,807 | 4,646 | 1,982 | 8,041 | 139 | 1,519 | 1,437 | 17,249 | 6,258 | 2,597 | 11,535 | 12,951 | 54,740 | 109,161 | 107,772 |
| 27-Aug-04 | Fri | WD | 39,965 | 4,352 | 1,865 | 7,526 | 115 | 1,464 | 1,224 | 15,255 | 3,776 | 2,487 | 9,920 | 14,175 | 49,270 | 102,124 | 107,570 |
| 28-Aug-04 | Sat | WE | 7,731 | 1,169 | 167 | 1,065 | 14 | 87 | 132 | 1,192 | 438 | 231 | 732 | 2,327 | 5,148 | 15,285 | 11,284 |
| 29-Aug-04 | Sun | WE | 9,782 | 1,202 | 264 | 1,254 | 20 | 160 | 195 | 1,588 | 407 | 244 | 1,245 | 2,247 | 6,194 | 18,608 | 11,569 |
| 30-Aug-04 | Mon | WD | 35,111 | 4,576 | 1,831 | 7,326 | 103 | 1,471 | 1,427 | 17,824 | 4,624 | 2,725 | 12,103 | 12,843 | 55,587 | 101,964 | 107,499 |
| 31-Aug-04 | Tue | WD | 34,821 | 4,737 | 1,846 | 5,301 | 88 | 1,397 | 1,309 | 17,845 | 5,019 | 2,961 | 9,866 | 12,554 | 30,267 | 97,744 | 106,575 |
| 01-Sep-04 | Wed | WD | 34,473 | 4,180 | 1,789 | 5,124 | 104 | 1,613 | 1,183 | 18,328 | 5,502 | 2,413 | 7,984 | 12,587 | 27,121 | 95,280 | 105,563 |
| 02-Sep-04 | Thu | WD | 34,483 | 4,486 | 2,226 | 5,188 | 115 | 1,605 | 1,450 | 17,501 | 4,495 | 2,379 | 8,758 | 11,847 | 25,330 | 94,533 | 104,536 |
| 03-Sep-04 | Fri | WD | 30,554 | 3,788 | 1,712 | 4,754 | 72 | 1,525 | 1,034 | 14,997 | 3,821 | 2,457 | 6,199 | 10,078 | 21,857 | 80,991 | 103,487 |
| 04-Sep-04 | Sat | WE | 7,268 | 970 | 206 | 938 | 14 | 101 | 146 | 1,529 | 294 | 173 | 424 | 1,642 | 3,662 | 13,705 | 12,266 |
| 05-Sep-04 | Sun | WE | 6,501 | 1,215 | 197 | 687 | 8 | 152 | 98 | 1,062 | 198 | 148 | 372 | 1,573 | 3,217 | 12,211 | 12,616 |
| 06-Sep-04 | Mon | FH | 14,742 | 2,018 | 255 | 1,513 | 30 | 231 | 193 | 2,449 | 456 | 370 | 967 | 2,317 | 6,385 | 25,541 | 12,598 |
| 07-Sep-04 | Tue | WD | 47,102 | 6,245 | 2,337 | 6,575 | 127 | 1,571 | 1,643 | 21,378 | 5,542 | 3,355 | 10,751 | 12,322 | 34,577 | 118,948 | 101,263 |
| 08-Sep-04 | Wed | WD | 48,458 | 6,490 | 2,537 | 6,630 | 120 | 1,513 | 1,903 | 23,056 | 5,239 | 3,379 | 10,621 | 13,179 | 37,078 | 123,125 | 101,329 |
| 09-Sep-04 | Thu | WD | 48,745 | 5,913 | 2,493 | 6,668 | 50 | 1,475 | 1,713 | 21,821 | 4,596 | 2,785 | 10,605 | 13,096 | 35,705 | 119,960 | 101,800 |
| 10-Sep-04 | Fri | WD | 45,513 | 5,386 | 2,223 | 6,412 | 92 | 1,309 | 1,601 | 19,612 | 4,161 | 2,992 | 9,647 | 12,224 | 33,161 | 111,172 | 102,269 |
| 11-Sep-04 | Sat | WE | 6,326 | 828 | 136 | 977 | 20 | 129 | 113 | 1,453 | 405 | 257 | 662 | 1,823 | 3,933 | 13,129 | 14,036 |
| 12-Sep-04 | Sun | WE | 6,475 | 791 | 179 | 982 | 17 | 121 | 170 | 1,931 | 327 | 270 | 778 | 2,131 | 4,191 | 14,172 | 14,222 |
| 13-Sep-04 | Mon | WD | 45,116 | 5,882 | 2,350 | 6,656 | 120 | 1,283 | 1,789 | 22,738 | 5,102 | 3,063 | 9,584 | 12,274 | 36,583 | 115,957 | 103,217 |
| 14-Sep-04 | Tue | WD | 45,917 | 5,984 | 2,675 | 6,705 | 93 | 1,611 | 1,763 | 22,033 | 5,556 | 3,387 | 9,406 | 14,023 | 36,889 | 119,153 | 103,810 |
| 15-Sep-04 | Wed | WD | 47,525 | 5,795 | 2,508 | 6,220 | 78 | 1,744 | 1,872 | 21,725 | 5,173 | 3,111 | 9,714 | 13,565 | 36,310 | 119,030 | 105,080 |
| 16-Sep-04 | Thu | WD | 45,374 | 5,285 | 2,432 | 6,595 | 96 | 1,678 | 1,726 | 20,762 | 5,142 | 3,485 | 8,806 | 12,304 | 35,071 | 113,685 | 106,458 |
| 17-Sep-04 | Fri | WD | 42,229 | 5,322 | 2,446 | 6,568 | 132 | 1,506 | 1,585 | 21,037 | 4,638 | 2,718 | 8,674 | 12,317 | 34,594 | 109,172 | 107,546 |
| 18-Sep-04 | Sat | WE | 6,551 | 991 | 160 | 1,116 | 7 | 127 | 112 | 1,550 | 399 | 263 | 764 | 1,970 | 4,414 | 14,010 | 14,707 |
| 19-Sep-04 | Sun | WE | 5,891 | 1,088 | 155 | 921 | 9 | 124 | 109 | 1,375 | 359 | 278 | 1,134 | 1,985 | 4,039 | 13,428 | 15,246 |
| 20-Sep-04 | Mon | WD | 46,975 | 6,425 | 2,410 | 6,434 | 129 | 1,534 | 1,989 | 21,795 | 5,352 | 3,357 | 9,766 | 12,701 | 37,073 | 118,867 | 108,350 |

HOGR6OA-000015

**(DRAFT) EOP-OA-OCIO - For Official Use Only**

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|------|-----|----------|-----|-----|-----|-----|-------|-----|-----|-----|-------|------|------|-----|-------------|------------------------|---------------------------|
| 21-Sep-04 | Tue | WD | 50,239 | 5,929 | 2,780 | 6,374 | 101 | 1,552 | 1,742 | 22,976 | 6,259 | 3,162 | 10,652 | 12,557 | 37,262 | 124,323 | 109,064 |
| 22-Sep-04 | Wed | WD | 39,517 | 6,579 | 2,152 | 5,504 | 72 | 1,298 | 1,558 | 19,185 | 4,527 | 2,745 | 8,814 | 10,692 | 32,756 | 102,643 | 109,895 |
| 23-Sep-04 | Thu | WD | 58,499 | 6,033 | 3,211 | 7,684 | 106 | 1,834 | 2,204 | 28,086 | 6,249 | 3,957 | 11,599 | 16,160 | 43,174 | 145,622 | 109,360 |
| 24-Sep-04 | Fri | WD | 42,970 | 5,261 | 2,288 | 5,629 | 88 | 1,388 | 1,564 | 19,670 | 4,684 | 3,362 | 9,185 | 11,404 | 31,830 | 107,493 | 111,279 |
| 25-Sep-04 | Sat | WE | 5,103 | 563 | 156 | 1,185 | 18 | 96 | 115 | 1,658 | 369 | 263 | 688 | 1,795 | 4,143 | 12,009 | 15,565 |
| 26-Sep-04 | Sun | WE | 6,844 | 737 | 183 | 894 | 23 | 158 | 124 | 1,629 | 481 | 219 | 1,045 | 1,637 | 3,877 | 13,974 | 15,201 |
| 27-Sep-04 | Mon | WD | 44,703 | 5,673 | 2,520 | 6,271 | 150 | 1,550 | 1,619 | 23,889 | 5,328 | 3,329 | 9,673 | 11,756 | 36,247 | 116,461 | 111,561 |
| 28-Sep-04 | Tue | WD | 47,580 | 6,116 | 2,721 | 6,477 | 101 | 1,483 | 2,379 | 23,722 | 5,875 | 3,232 | 10,392 | 12,780 | 38,623 | 122,858 | 112,324 |
| 29-Sep-04 | Wed | WD | 43,961 | 5,877 | 2,520 | 7,316 | 90 | 1,480 | 3,053 | 25,373 | 5,120 | 3,308 | 10,241 | 12,845 | 41,160 | 121,184 | 113,646 |
| 30-Sep-04 | Thu | WD | 40,551 | 5,520 | 2,281 | 6,403 | 151 | 1,160 | 2,983 | 20,798 | 4,762 | 3,114 | 9,305 | 12,608 | 36,282 | 109,636 | 115,009 |
| 01-Oct-04 | Fri | WD | 46,383 | 5,039 | 2,706 | 6,335 | 112 | 1,246 | 2,003 | 21,881 | 5,077 | 3,343 | 9,203 | 12,266 | 27,050 | 115,594 | 115,804 |
| 02-Oct-04 | Sat | WE | 6,751 | 884 | 170 | 1,131 | 42 | 94 | 371 | 1,473 | 404 | 229 | 719 | 1,811 | 4,319 | 14,079 | 14,687 |
| 03-Oct-04 | Sun | WE | 5,515 | 943 | 117 | 854 | 24 | 120 | 239 | 1,917 | 460 | 230 | 1,068 | 1,543 | 3,618 | 13,030 | 14,728 |
| 04-Oct-04 | Mon | WD | 51,239 | 6,733 | 2,951 | 7,086 | 185 | 1,394 | 1,939 | 23,792 | 4,812 | 3,536 | 10,650 | 12,227 | 29,834 | 126,544 | 117,625 |
| 05-Oct-04 | Tue | WD | 50,028 | 6,557 | 2,625 | 7,681 | 109 | 1,391 | 1,927 | 26,571 | 5,859 | 3,308 | 11,354 | 13,328 | 32,051 | 130,738 | 118,071 |
| 06-Oct-04 | Wed | WD | 45,876 | 6,027 | 2,485 | 6,890 | 143 | 1,455 | 1,664 | 23,553 | 5,297 | 3,005 | 10,912 | 12,740 | 28,698 | 120,047 | 118,661 |
| 07-Oct-04 | Thu | WD | 46,425 | 5,513 | 2,549 | 7,071 | 116 | 1,342 | 1,811 | 21,667 | 5,380 | 3,426 | 10,890 | 13,120 | 28,698 | 119,310 | 118,507 |
| 08-Oct-04 | Fri | WD | 28,673 | 6,410 | 1,647 | 4,526 | 93 | 1,018 | 979 | 15,861 | 3,663 | 2,042 | 6,599 | 8,615 | 14,931 | 80,126 | 118,474 |
| 09-Oct-04 | Sat | WE | 23,063 | 1,203 | 992 | 2,941 | 54 | 436 | 647 | 8,415 | 1,996 | 1,003 | 4,020 | 4,829 | 9,400 | 49,599 | 13,479 |
| 10-Oct-04 | Sun | WE | 7,049 | 1,573 | 187 | 778 | 13 | 80 | 140 | 1,437 | 320 | 216 | 625 | 1,488 | 2,181 | 13,946 | 18,038 |
| 11-Oct-04 | Mon | FH | 19,076 | 3,465 | 800 | 2,163 | 67 | 316 | 540 | 4,524 | 1,173 | 676 | 2,228 | 4,118 | 6,686 | 39,146 | 18,004 |
| 12-Oct-04 | Tue | WD | 44,154 | 6,443 | 2,522 | 6,516 | 130 | 1,446 | 1,784 | 22,566 | 5,490 | 2,846 | 10,841 | 14,163 | 22,490 | 118,900 | 116,973 |
| 13-Oct-04 | Wed | WD | 46,833 | 6,174 | 2,794 | 6,937 | 125 | 1,554 | 1,939 | 22,151 | 5,434 | 3,145 | 10,290 | 12,752 | 23,680 | 120,128 | 116,960 |
| 14-Oct-04 | Thu | WD | 41,353 | 5,474 | 3,247 | 6,361 | 153 | 1,393 | 1,657 | 19,940 | 5,383 | 3,047 | 9,748 | 12,740 | 21,822 | 110,496 | 117,017 |
| 15-Oct-04 | Fri | WD | 42,737 | 4,714 | 2,177 | 5,490 | 122 | 1,542 | 1,264 | 19,582 | 5,212 | 2,784 | 9,474 | 10,996 | 18,951 | 106,084 | 116,850 |
| 16-Oct-04 | Sat | WE | 6,671 | 935 | 199 | 1,023 | 22 | 140 | 211 | 1,835 | 472 | 183 | 731 | 1,992 | 2,388 | 14,414 | 20,353 |
| 17-Oct-04 | Sun | WE | 8,009 | 1,189 | 205 | 1,092 | 41 | 105 | 139 | 1,674 | 383 | 221 | 924 | 2,196 | 1,996 | 16,178 | 20,398 |
| 18-Oct-04 | Mon | WD | 47,796 | 5,845 | 2,656 | 6,480 | 98 | 1,505 | 1,680 | 22,557 | 5,498 | 3,418 | 9,475 | 12,924 | 20,462 | 119,932 | 116,687 |
| 19-Oct-04 | Tue | WD | 51,153 | 6,128 | 2,923 | 6,619 | 115 | 1,596 | 1,569 | 22,043 | 5,057 | 3,179 | 10,344 | 13,671 | 19,778 | 124,397 | 116,743 |
| 20-Oct-04 | Wed | WD | 44,955 | 5,821 | 2,331 | 6,572 | 59 | 1,237 | 3,455 | 20,507 | 5,244 | 3,054 | 10,191 | 14,280 | 23,689 | 117,706 | 116,747 |
| 21-Oct-04 | Thu | WD | 45,677 | 5,828 | 2,362 | 6,394 | 90 | 1,501 | 2,111 | 20,733 | 5,208 | 2,883 | 10,708 | 13,219 | 20,520 | 116,714 | 117,540 |
| 22-Oct-04 | Fri | WD | 41,508 | 5,786 | 2,092 | 6,646 | 140 | 1,244 | 1,294 | 17,767 | 5,034 | 2,504 | 8,774 | 12,931 | 19,179 | 105,720 | 116,018 |
| 23-Oct-04 | Sat | WE | 8,361 | 1,758 | 166 | 1,172 | 21 | 127 | 129 | 1,959 | 383 | 296 | 886 | 2,463 | 2,413 | 17,721 | 20,704 |
| 24-Oct-04 | Sun | WE | 9,682 | 1,455 | 149 | 1,083 | 21 | 139 | 126 | 1,901 | 429 | 309 | 1,059 | 2,516 | 2,161 | 18,849 | 21,339 |
| 25-Oct-04 | Mon | WD | 42,270 | 5,958 | 2,005 | 6,242 | 115 | 1,217 | 1,612 | 19,456 | 5,329 | 2,864 | 9,728 | 12,004 | 14,809 | 108,800 | 115,925 |
| 26-Oct-04 | Tue | WD | 43,112 | 6,685 | 1,855 | 6,576 | 115 | 1,277 | 1,479 | 19,786 | 5,383 | 3,194 | 9,592 | 12,160 | 15,309 | 111,214 | 115,522 |
| 27-Oct-04 | Wed | WD | 42,076 | 6,310 | 1,902 | 6,773 | 140 | 1,552 | 1,270 | 19,870 | 4,933 | 2,918 | 9,187 | 12,487 | 14,044 | 109,418 | 114,909 |
| 28-Oct-04 | Thu | WD | 43,600 | 5,509 | 1,626 | 5,990 | 114 | 1,434 | 1,538 | 19,020 | 4,994 | 2,740 | 8,683 | 12,322 | 13,777 | 107,570 | 114,290 |
| 29-Oct-04 | Fri | WD | 41,365 | 4,800 | 1,794 | 6,229 | 55 | 1,234 | 1,319 | 18,110 | 4,568 | 2,683 | 7,884 | 12,898 | 12,444 | 102,939 | 114,181 |
| 30-Oct-04 | Sat | WE | 12,062 | 2,398 | 182 | 1,227 | 15 | 117 | 180 | 1,491 | 459 | 320 | 637 | 2,104 | 3,258 | 21,192 | 21,880 |
| 31-Oct-04 | Sun | WE | 10,138 | 1,820 | 192 | 1,004 | 11 | 97 | 125 | 1,652 | 413 | 247 | 668 | 1,953 | 2,496 | 18,320 | 22,671 |
| 01-Nov-04 | Mon | WD | 32,928 | 4,377 | 1,334 | 5,368 | 114 | 1,401 | 1,201 | 18,373 | 3,804 | 2,462 | 9,311 | 10,682 | 10,819 | 91,355 | 113,515 |
| 02-Nov-04 | Tue | WD | 31,303 | 4,355 | 1,455 | 5,811 | 108 | 1,241 | 2,615 | 16,983 | 3,971 | 2,255 | 8,152 | 11,123 | 13,717 | 89,372 | 111,663 |
| 03-Nov-04 | Wed | WD | 41,019 | 5,029 | 1,805 | 6,029 | 135 | 1,508 | 1,233 | 17,629 | 3,833 | 2,498 | 8,696 | 11,055 | 11,537 | 100,469 | 109,486 |
| 04-Nov-04 | Thu | WD | 52,191 | 5,402 | 2,108 | 6,209 | 169 | 1,340 | 1,587 | 19,504 | 5,115 | 2,913 | 8,912 | 10,865 | 13,882 | 116,315 | 108,455 |
| 05-Nov-04 | Fri | WD | 39,574 | 4,273 | 2,013 | 5,989 | 127 | 1,406 | 1,392 | 18,865 | 4,883 | 2,730 | 10,359 | 10,221 | 12,219 | 101,832 | 108,298 |

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06-Nov-04 | Sat | WE | 6,343 | 486 | 132 | 1,075 | 30 | 155 | 155 | 1,412 | 340 | 228 | 567 | 1,358 | 1,155 | 12,281 | 23,258 |
| 07-Nov-04 | Sun | WE | 5,437 | 511 | 117 | 897 | 32 | 133 | 149 | 1,619 | 425 | 241 | 659 | 1,675 | 1,260 | 11,895 | 19,112 |
| 08-Nov-04 | Mon | WD | 46,420 | 5,189 | 2,212 | 6,881 | 146 | 1,444 | 1,771 | 22,224 | 6,166 | 2,990 | 10,714 | 13,324 | 14,292 | 119,481 | 109,440 |
| 09-Nov-04 | Tue | WD | 48,971 | 5,073 | 2,253 | 7,781 | 93 | 1,523 | 1,687 | 23,563 | 5,752 | 2,884 | 11,230 | 13,424 | 13,391 | 124,234 | 109,942 |
| 10-Nov-04 | Wed | WD | 50,394 | 4,991 | 2,442 | 6,659 | 137 | 1,458 | 1,734 | 24,242 | 5,908 | 2,908 | 10,520 | 12,664 | 13,577 | 124,057 | 110,209 |
| 11-Nov-04 | Thu | FH | 21,386 | 1,417 | 729 | 2,950 | 89 | 452 | 511 | 5,858 | 1,434 | 795 | 3,388 | 5,123 | 3,773 | 44,132 | 16,356 |
| 12-Nov-04 | Fri | WD | 39,559 | 4,983 | 2,103 | 6,020 | 107 | 1,417 | 1,393 | 19,403 | 4,842 | 2,333 | 9,243 | 11,674 | 12,043 | 103,077 | 110,400 |
| 13-Nov-04 | Sat | WE | 5,270 | 632 | 103 | 1,089 | 17 | 87 | 97 | 1,676 | 380 | 212 | 916 | 4,249 | 1,189 | 14,728 | 19,442 |
| 14-Nov-04 | Sun | WE | 5,002 | 468 | 96 | 890 | 24 | 137 | 92 | 1,530 | 490 | 261 | 1,080 | 3,079 | 1,090 | 13,149 | 19,477 |
| 15-Nov-04 | Mon | WD | 48,917 | 5,872 | 2,413 | 6,494 | 116 | 1,438 | 1,803 | 24,084 | 5,080 | 2,838 | 11,669 | 16,624 | 13,800 | 127,348 | 110,242 |
| 16-Nov-04 | Tue | WD | 51,234 | 5,398 | 2,492 | 7,661 | 100 | 1,309 | 1,874 | 25,782 | 5,518 | 2,906 | 11,196 | 13,779 | 13,922 | 129,249 | 110,633 |
| 17-Nov-04 | Wed | WD | 48,914 | 5,593 | 2,458 | 7,211 | 123 | 1,395 | 1,894 | 26,401 | 5,859 | 3,141 | 11,611 | 14,111 | 14,572 | 128,711 | 110,888 |
| 18-Nov-04 | Thu | WD | 44,069 | 4,785 | 2,541 | 7,156 | 120 | 1,493 | 1,645 | 25,103 | 5,514 | 2,684 | 11,283 | 12,574 | 12,363 | 118,967 | 111,467 |
| 19-Nov-04 | Fri | WD | 36,490 | 4,649 | 1,963 | 5,809 | 148 | 1,251 | 1,358 | 21,627 | 5,525 | 3,104 | 10,875 | 12,047 | 11,670 | 104,846 | 111,586 |
| 20-Nov-04 | Sat | WE | 8,117 | 986 | 270 | 1,062 | 18 | 172 | 180 | 3,585 | 530 | 463 | 888 | 2,105 | 1,825 | 18,376 | 19,141 |
| 21-Nov-04 | Sun | WE | 5,690 | 553 | 197 | 1,162 | 20 | 176 | 160 | 2,150 | 507 | 294 | 888 | 2,155 | 1,350 | 13,952 | 19,214 |
| 22-Nov-04 | Mon | WD | 37,841 | 4,339 | 2,075 | 6,000 | 151 | 1,297 | 1,725 | 25,453 | 5,509 | 3,309 | 10,652 | 12,019 | 12,477 | 110,370 | 111,540 |
| 23-Nov-04 | Tue | WD | 39,446 | 4,235 | 1,961 | 6,171 | 149 | 1,486 | 1,557 | 24,391 | 4,824 | 3,165 | 11,696 | 12,439 | 9,927 | 111,520 | 111,622 |
| 24-Nov-04 | Wed | WD | 26,539 | 2,572 | 1,105 | 5,161 | 93 | 975 | 1,003 | 17,062 | 3,354 | 2,547 | 8,823 | 10,705 | 4,743 | 79,939 | 111,638 |
| 25-Nov-04 | Thu | FH | 3,417 | 294 | 79 | 933 | 18 | 91 | 102 | 1,318 | 467 | 203 | 1,078 | 2,433 | 504 | 10,433 | 18,669 |
| 26-Nov-04 | Fri | WE | 9,285 | 863 | 201 | 1,984 | 21 | 282 | 377 | 4,296 | 1,235 | 500 | 1,855 | 4,737 | 1,662 | 25,636 | 17,846 |
| 27-Nov-04 | Sat | WE | 3,663 | 409 | 58 | 744 | 18 | 92 | 68 | 1,027 | 358 | 148 | 580 | 3,020 | 560 | 10,185 | 18,554 |
| 28-Nov-04 | Sun | WE | 4,832 | 524 | 82 | 1,076 | 15 | 157 | 169 | 1,803 | 445 | 219 | 1,116 | 3,056 | 871 | 13,494 | 17,553 |
| 29-Nov-04 | Mon | WD | 47,688 | 5,685 | 2,477 | 7,167 | 119 | 1,487 | 1,742 | 25,233 | 5,248 | 2,803 | 11,626 | 13,052 | 9,417 | 124,327 | 110,655 |
| 30-Nov-04 | Tue | WD | 43,835 | 5,628 | 2,470 | 6,375 | 131 | 1,611 | 1,678 | 24,298 | 5,634 | 3,334 | 12,052 | 13,049 | 9,615 | 120,095 | 112,595 |
| 01-Dec-04 | Wed | WD | 49,770 | 4,729 | 2,370 | 6,278 | 120 | 1,481 | 1,553 | 23,317 | 4,961 | 3,031 | 10,998 | 13,305 | 6,982 | 121,913 | 114,402 |
| 02-Dec-04 | Thu | WD | 60,452 | 5,044 | 2,710 | 6,071 | 130 | 1,562 | 1,890 | 25,562 | 5,477 | 2,870 | 11,573 | 13,473 | 7,307 | 136,814 | 115,664 |
| 03-Dec-04 | Fri | WD | 57,880 | 4,967 | 2,325 | 5,622 | 140 | 1,535 | 1,453 | 23,357 | 4,852 | 3,016 | 10,907 | 17,215 | 6,655 | 133,269 | 116,869 |
| 04-Dec-04 | Sat | WE | 6,531 | 1,118 | 160 | 969 | 5 | 165 | 117 | 1,511 | 571 | 239 | 850 | 3,618 | 1,249 | 15,854 | 17,115 |
| 05-Dec-04 | Sun | WE | 5,368 | 874 | 110 | 804 | 28 | 125 | 201 | 2,144 | 541 | 261 | 1,053 | 3,079 | 1,120 | 14,588 | 17,439 |
| 06-Dec-04 | Mon | WD | 49,592 | 3,541 | 2,548 | 6,039 | 142 | 1,461 | 1,691 | 25,700 | 5,088 | 3,105 | 10,811 | 21,216 | 3,407 | 130,934 | 118,719 |
| 07-Dec-04 | Tue | WD | 42,670 | 3,528 | 2,331 | 5,707 | 106 | 1,429 | 1,574 | 24,924 | 5,288 | 3,449 | 11,071 | 17,806 | 1,885 | 119,883 | 119,392 |
| 08-Dec-04 | Wed | WD | 44,295 | 4,571 | 2,202 | 6,116 | 95 | 1,377 | 1,700 | 25,194 | 4,851 | 2,933 | 10,538 | 14,120 | 1,967 | 117,992 | 119,136 |
| 09-Dec-04 | Thu | WD | 44,547 | 4,329 | 2,267 | 5,605 | 189 | 1,466 | 1,645 | 25,010 | 4,864 | 3,038 | 10,454 | 16,281 | 2,025 | 119,695 | 118,780 |
| 10-Dec-04 | Fri | WD | 42,664 | 3,898 | 2,451 | 5,827 | 187 | 1,386 | 1,188 | 23,028 | 4,690 | 2,690 | 9,601 | 12,118 | 1,391 | 109,728 | 118,831 |
| 11-Dec-04 | Sat | WE | 5,581 | 493 | 249 | 889 | 35 | 162 | 213 | 2,126 | 440 | 219 | 851 | 2,758 | 261 | 14,016 | 15,040 |
| 12-Dec-04 | Sun | WE | 4,356 | 382 | 135 | 759 | 25 | 201 | 120 | 2,017 | 449 | 263 | 1,001 | 1,916 | 137 | 11,624 | 14,968 |
| 13-Dec-04 | Mon | WD | 41,873 | 4,515 | 2,260 | 5,935 | 144 | 1,445 | 1,447 | 25,945 | 4,998 | 2,568 | 10,346 | 17,128 | 1,634 | 118,604 | 119,200 |
| 14-Dec-04 | Tue | WD | 44,495 | 4,675 | 2,780 | 6,499 | 130 | 1,558 | 1,611 | 26,274 | 5,117 | 2,906 | 10,229 | 14,099 | 1,836 | 120,373 | 118,714 |
| 15-Dec-04 | Wed | WD | 42,554 | 4,041 | 2,244 | 6,245 | 131 | 1,336 | 1,417 | 26,163 | 4,739 | 2,708 | 9,844 | 13,168 | 1,618 | 114,590 | 118,221 |
| 16-Dec-04 | Thu | WD | 39,783 | 4,375 | 1,930 | 5,958 | 87 | 1,456 | 1,767 | 25,901 | 4,897 | 2,661 | 10,271 | 12,780 | 1,959 | 111,866 | 117,437 |
| 17-Dec-04 | Fri | WD | 37,684 | 3,960 | 1,835 | 5,938 | 49 | 1,336 | 2,048 | 24,105 | 3,966 | 2,690 | 10,002 | 25,055 | 2,348 | 118,668 | 117,042 |
| 18-Dec-04 | Sat | WE | 4,414 | 367 | 179 | 1,121 | 12 | 156 | 155 | 1,949 | 371 | 229 | 615 | 2,211 | 208 | 11,779 | 14,816 |
| 19-Dec-04 | Sun | WE | 3,941 | 370 | 133 | 855 | 12 | 100 | 108 | 2,424 | 604 | 195 | 728 | 2,126 | 143 | 11,596 | 14,156 |
| 20-Dec-04 | Mon | WD | 36,475 | 4,133 | 1,823 | 5,391 | 113 | 1,039 | 1,411 | 29,168 | 4,836 | 2,760 | 8,867 | 11,779 | 1,648 | 107,795 | 117,810 |
| 21-Dec-04 | Tue | WD | 31,358 | 3,823 | 2,835 | 5,232 | 100 | 1,136 | 1,206 | 21,753 | 4,340 | 4,132 | 9,910 | 11,953 | 1,416 | 97,778 | 117,687 |

HOGR6OA-000017 - C

Casse 1:07-cv-01707-HHK-JMF Document 569-2 Filed 03/15/2008 Page 18 of 24

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22-Dec-04 | Wed | WD | 26,014 | 3,244 | 2,753 | 4,590 | 102 | 1,080 | 1,138 | 21,793 | 3,643 | 3,244 | 9,017 | 11,554 | 1,322 | 88,172 | 116,904 |
| 23-Dec-04 | Thu | WD | 14,421 | 2,183 | 1,618 | 3,396 | 95 | 853 | 716 | 14,204 | 2,613 | 1,205 | 5,477 | 8,336 | 815 | 55,117 | 117,361 |
| 24-Dec-04 | Fri | FH | 2,411 | 355 | 134 | 687 | 44 | 86 | 170 | 1,192 | 438 | 164 | 2,473 | 2,046 | 196 | 10,200 | 14,308 |
| 25-Dec-04 | Sat | WE | 1,346 | 231 | 30 | 421 | 8 | 43 | 91 | 639 | 313 | 82 | 3,131 | 1,410 | 94 | 7,745 | 12,593 |
| 26-Dec-04 | Sun | WE | 2,765 | 389 | 120 | 759 | 14 | 62 | 104 | 1,125 | 218 | 141 | 418 | 1,765 | 115 | 7,880 | 12,322 |
| 27-Dec-04 | Mon | WD | 13,870 | 1,448 | 1,006 | 2,745 | 66 | 473 | 533 | 11,481 | 2,247 | 953 | 3,943 | 8,429 | 605 | 47,194 | 114,085 |
| 28-Dec-04 | Tue | WD | 17,249 | 1,680 | 894 | 3,558 | 54 | 633 | 603 | 14,947 | 2,267 | 1,375 | 4,263 | 9,131 | 668 | 56,654 | 110,025 |
| 29-Dec-04 | Wed | WD | 21,612 | 1,784 | 1,184 | 3,997 | 75 | 554 | 594 | 16,992 | 2,656 | 1,527 | 4,805 | 9,736 | 702 | 65,516 | 106,686 |
| 30-Dec-04 | Thu | WD | 23,537 | 1,634 | 1,012 | 3,641 | 38 | 656 | 547 | 14,648 | 2,092 | 1,416 | 3,725 | 7,959 | 659 | 60,905 | 103,718 |
| 31-Dec-04 | Fri | FH | 7,231 | 583 | 210 | 1,247 | 19 | 133 | 107 | 2,055 | 415 | 199 | 727 | 2,567 | 115 | 15,493 | 11,698 |
| 01-Jan-05 | Sat | WE | 2,864 | 325 | 106 | 779 | 38 | 76 | 66 | 842 | 340 | 140 | 355 | 1,939 | 25 | 7,870 | 12,078 |
| 02-Jan-05 | Sun | WE | 5,409 | 504 | 180 | 1,279 | 44 | 109 | 99 | 1,652 | 367 | 237 | 706 | 2,631 | 17 | 13,217 | 11,279 |
| 03-Jan-05 | Mon | WD | 44,684 | 4,607 | 3,682 | 5,905 | 228 | 1,134 | 1,298 | 22,771 | 4,168 | 2,617 | 9,343 | 12,821 | 275 | 113,258 | 97,859 |
| 04-Jan-05 | Tue | WD | 46,287 | 4,713 | 3,669 | 6,071 | 282 | 1,429 | 1,255 | 25,384 | 4,904 | 2,659 | 10,217 | 13,296 | 177 | 120,166 | 96,877 |
| 05-Jan-05 | Wed | WD | 45,829 | 4,505 | 4,234 | 6,690 | 228 | 1,444 | 1,462 | 26,044 | 4,702 | 2,890 | 10,108 | 13,953 | 207 | 122,089 | 96,893 |
| 06-Jan-05 | Thu | WD | 46,556 | 3,144 | 3,913 | 6,738 | 242 | 1,398 | 1,400 | 28,911 | 5,356 | 2,796 | 10,030 | 13,785 | 215 | 124,269 | 97,120 |
| 07-Jan-05 | Fri | WD | 44,959 | 5,945 | 4,440 | 6,882 | 260 | 1,498 | 1,185 | 27,486 | 5,172 | 3,063 | 10,846 | 12,964 | 152 | 124,700 | 97,375 |
| 08-Jan-05 | Sat | WE | 4,570 | 433 | 228 | 1,138 | 56 | 148 | 73 | 4,268 | 414 | 356 | 793 | 2,273 | 7 | 14,750 | 11,142 |
| 09-Jan-05 | Sun | WE | 5,614 | 448 | 254 | 1,163 | 56 | 137 | 125 | 3,760 | 466 | 327 | 1,326 | 2,246 | 11 | 15,922 | 11,215 |
| 10-Jan-05 | Mon | WD | 50,800 | 4,550 | 4,735 | 6,924 | 240 | 1,614 | 1,468 | 32,322 | 5,197 | 3,541 | 12,112 | 13,974 | 181 | 137,477 | 98,206 |
| 11-Jan-05 | Tue | WD | 50,818 | 4,621 | 5,194 | 6,751 | 322 | 1,794 | 1,680 | 30,061 | 5,650 | 3,322 | 12,910 | 13,104 | 219 | 136,227 | 99,255 |
| 12-Jan-05 | Wed | WD | 47,921 | 5,202 | 4,630 | 7,115 | 368 | 1,682 | 1,617 | 30,012 | 8,864 | 2,790 | 12,728 | 14,829 | 2,755 | 137,758 | 100,136 |
| 13-Jan-05 | Thu | WD | 50,426 | 5,342 | 4,712 | 6,963 | 284 | 1,571 | 1,652 | 32,219 | 12,054 | 2,848 | 17,645 | 27,676 | 6,286 | 163,392 | 101,423 |
| 14-Jan-05 | Fri | WD | 43,490 | 4,805 | 3,966 | 6,496 | 260 | 1,395 | 1,305 | 27,330 | 11,184 | 4,144 | 15,718 | 16,264 | 5,575 | 136,357 | 104,285 |
| 15-Jan-05 | Sat | WE | 7,376 | 892 | 272 | 1,370 | 52 | 217 | 198 | 4,124 | 1,566 | 542 | 1,623 | 3,098 | 818 | 21,330 | 11,645 |
| 16-Jan-05 | Sun | WE | 5,917 | 605 | 268 | 1,043 | 20 | 197 | 171 | 2,821 | 924 | 480 | 1,167 | 2,676 | 468 | 16,289 | 12,600 |
| 17-Jan-05 | Mon | FH | 23,174 | 2,749 | 1,058 | 2,537 | 82 | 404 | 283 | 5,625 | 1,704 | 1,152 | 3,189 | 6,166 | 901 | 48,123 | 13,070 |
| 18-Jan-05 | Tue | WD | 63,254 | 5,789 | 4,162 | 6,830 | 226 | 1,722 | 1,595 | 34,220 | 11,770 | 5,810 | 18,867 | 13,649 | 6,023 | 167,894 | 105,119 |
| 19-Jan-05 | Wed | WD | 68,710 | 7,823 | 3,562 | 3,746 | 162 | 1,497 | 1,302 | 29,939 | 8,376 | 5,114 | 18,898 | 19,609 | 4,357 | 168,738 | 109,244 |
| 20-Jan-05 | Thu | FH | 24,784 | 8,240 | | | 76 | 416 | 371 | 4,452 | 3,050 | 1,880 | 5,397 | 9,234 | 1,542 | 57,900 | 15,996 |
| 21-Jan-05 | Fri | WD | 82,608 | 23,965 | | | 230 | 1,589 | 1,368 | 41,408 | 10,456 | 5,880 | 24,102 | 20,794 | 6,001 | 212,400 | 114,225 |
| 22-Jan-05 | Sat | WE | 9,446 | 3,340 | | | 28 | 151 | 120 | 4,394 | 916 | 600 | 1,652 | 3,500 | 467 | 24,147 | 20,345 |
| 23-Jan-05 | Sun | WE | 10,204 | 3,445 | | | 18 | 179 | 176 | 4,226 | 920 | 624 | 2,018 | 2,860 | 479 | 24,670 | 21,839 |
| 24-Jan-05 | Mon | WD | 103,294 | 29,561 | | 1 | 378 | 1,436 | 1,680 | 47,108 | 11,316 | 6,292 | 23,801 | 10,334 | 5,979 | 235,201 | 120,000 |
| 25-Jan-05 | Tue | WD | 83,752 | 27,215 | | | 272 | 1,752 | 1,464 | 51,530 | 11,498 | 6,298 | 24,537 | 11,400 | 3,792 | 219,718 | 131,118 |
| 26-Jan-05 | Wed | WD | 69,177 | 23,105 | | | 216 | 1,530 | 2,089 | 52,741 | 11,132 | 5,658 | 24,932 | 18,164 | 309 | 208,744 | 140,763 |
| 27-Jan-05 | Thu | WD | 58,931 | 19,675 | | | 320 | 1,414 | 2,139 | 50,286 | 11,746 | 5,680 | 24,195 | 24,318 | 361 | 198,704 | 149,258 |
| 28-Jan-05 | Fri | WD | 54,646 | 18,960 | | | 262 | 1,348 | 1,600 | 30,979 | 10,602 | 5,640 | 21,974 | 22,278 | 239 | 168,289 | 157,423 |
| 29-Jan-05 | Sat | WE | 5,860 | 3,530 | | | 32 | 94 | 180 | 1,412 | 924 | 554 | 1,932 | 3,984 | 1 | 18,502 | 24,185 |
| 30-Jan-05 | Sun | WE | 9,403 | 3,830 | | | 46 | 151 | 246 | 2,465 | 1,118 | 602 | 2,119 | 4,114 | 13 | 24,094 | 25,259 |
| 31-Jan-05 | Mon | WD | 79,159 | 28,500 | | | 242 | 1,549 | 2,730 | 28,563 | 10,914 | 6,462 | 24,350 | 21,872 | 281 | 204,341 | 158,027 |
| 01-Feb-05 | Tue | WD | 82,755 | 30,070 | | | 296 | 1,580 | 1,907 | 57,557 | 12,062 | 6,722 | 24,114 | 16,732 | 249 | 233,795 | 163,292 |
| 02-Feb-05 | Wed | WD | 82,331 | 31,700 | | | 240 | 1,523 | 1,862 | 40,284 | 10,470 | 6,390 | 25,098 | 12,850 | 200 | 212,748 | 169,808 |
| 03-Feb-05 | Thu | WD | 73,471 | 30,250 | | | 354 | 1,504 | 1,754 | 35,628 | 11,602 | 6,308 | 24,726 | 9,959 | 204 | 195,556 | 175,080 |
| 04-Feb-05 | Fri | WD | 65,523 | 28,560 | | | 214 | 1,593 | 1,896 | 53,618 | 11,666 | 5,816 | 22,825 | 19,264 | 4,239 | 210,975 | 179,258 |
| 05-Feb-05 | Sat | WE | 6,918 | 3,315 | | | 48 | 137 | 174 | 5,228 | 906 | 1,048 | 2,122 | 4,046 | 465 | 23,942 | 26,365 |

2/6/2006 - 4:13 PM -- Page 17 of 23

HOGR6OA-000018 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06-Feb-05 | Sun | WE | 6,983 | 2,560 | | | 60 | 236 | 280 | 4,966 | 1,066 | 616 | 2,752 | 3,494 | 558 | 23,013 | 27,307 |
| 07-Feb-05 | Mon | WD | 67,370 | 28,380 | | | 288 | 1,742 | 3,674 | 59,858 | 10,802 | 6,404 | 22,531 | 27,005 | 5,619 | 228,054 | 184,297 |
| 08-Feb-05 | Tue | WD | 79,289 | 31,810 | | | 260 | 1,506 | 4,712 | 59,084 | 11,016 | 6,074 | 23,565 | 31,194 | 5,751 | 248,510 | 189,593 |
| 09-Feb-05 | Wed | WD | 71,863 | 33,965 | | 9,640 | 212 | 1,545 | 3,340 | 58,204 | 10,764 | 6,958 | 23,289 | 28,604 | 5,439 | 248,384 | 196,119 |
| 10-Feb-05 | Thu | WD | 80,620 | 33,396 | | 11,231 | 202 | 1,933 | 3,596 | 53,248 | 11,220 | 5,918 | 22,981 | 28,530 | 5,729 | 252,875 | 202,522 |
| 11-Feb-05 | Fri | WD | 94,802 | 28,440 | | 14,080 | 140 | 5,439 | 1,619 | 35,082 | 10,674 | | 21,945 | 24,426 | 5,586 | 236,647 | 207,755 |
| 12-Feb-05 | Sat | WE | 12,346 | 3,700 | | 3,044 | 19 | 1,703 | 176 | 3,368 | 950 | | 2,290 | 3,966 | 506 | 31,562 | 28,041 |
| 13-Feb-05 | Sun | WE | 10,059 | 3,900 | | 3,026 | 23 | 1,718 | 216 | 2,902 | 816 | | 3,190 | 3,944 | 428 | 29,794 | 29,092 |
| 14-Feb-05 | Mon | WD | 89,105 | 15,120 | | 16,178 | 129 | 10,022 | 1,677 | 43,839 | 10,292 | | 23,745 | 28,768 | 5,470 | 238,875 | 213,547 |
| 15-Feb-05 | Tue | WD | 67,781 | | | 16,352 | 133 | 10,276 | 1,781 | 41,998 | 11,322 | | 24,880 | 28,590 | 12,503 | 203,113 | 214,880 |
| 16-Feb-05 | Wed | WD | 64,317 | | | 21,852 | 188 | 10,823 | 1,894 | 35,582 | 11,550 | | 25,608 | 28,708 | 16,768 | 200,522 | 216,953 |
| 17-Feb-05 | Thu | WD | 66,150 | | | 27,846 | 141 | 10,219 | 1,591 | 20,836 | 11,974 | | 24,285 | 26,724 | 15,956 | 189,766 | 218,813 |
| 18-Feb-05 | Fri | WD | 54,728 | 6,785 | | 15,068 | 129 | 9,287 | 1,583 | 42,522 | 10,178 | 5,934 | 14,242 | 24,442 | 5,502 | 184,898 | 217,361 |
| 19-Feb-05 | Sat | WE | 5,868 | 2,690 | | 2,370 | 31 | 1,392 | 153 | 2,650 | 768 | 472 | 1,108 | 5,310 | 404 | 22,812 | 24,966 |
| 20-Feb-05 | Sun | WE | 7,622 | 4,905 | | 2,294 | 32 | 1,348 | 169 | 3,064 | 576 | 722 | 1,030 | 3,552 | 336 | 25,314 | 24,799 |
| 21-Feb-05 | Mon | FH | 12,977 | 7,555 | | 3,646 | 84 | 2,350 | 305 | 6,634 | 1,880 | 1,262 | 2,708 | 7,102 | 999 | 46,503 | 24,879 |
| 22-Feb-05 | Tue | WD | 48,994 | 29,375 | | 13,408 | 153 | 9,118 | 1,407 | 49,688 | 11,484 | 6,060 | 12,490 | 27,448 | 5,967 | 209,625 | 214,974 |
| 23-Feb-05 | Wed | WD | 51,637 | 27,330 | | 12,416 | 125 | 8,755 | 1,396 | 52,102 | 10,096 | 5,278 | 13,861 | 25,490 | 5,301 | 208,486 | 214,443 |
| 24-Feb-05 | Thu | WD | 52,235 | 26,490 | | 11,570 | 113 | 8,539 | 1,424 | 46,624 | 7,968 | 5,704 | 11,492 | 23,262 | 4,186 | 195,421 | 214,430 |
| 25-Feb-05 | Fri | WD | 55,756 | 29,860 | | 3,524 | 148 | 9,057 | 1,406 | 49,724 | 10,056 | 6,378 | 10,948 | 24,828 | 5,167 | 201,685 | 214,257 |
| 26-Feb-05 | Sat | WE | 7,368 | 3,800 | | | 46 | 1,831 | 209 | 3,532 | 974 | 692 | 922 | 4,506 | 501 | 23,880 | 27,282 |
| 27-Feb-05 | Sun | WE | 7,501 | 4,735 | | | 27 | 1,536 | 222 | 3,862 | 1,092 | 686 | 1,220 | 4,334 | 564 | 25,215 | 27,879 |
| 28-Feb-05 | Mon | WD | 70,405 | 35,900 | | | 111 | 10,473 | 1,553 | 49,621 | 10,520 | 6,422 | 11,887 | 29,094 | 4,063 | 225,986 | 216,015 |
| 01-Mar-05 | Tue | WD | 148,967 | 39,875 | | | 157 | 10,666 | 1,821 | 31,629 | 12,584 | 7,372 | 23,574 | 30,546 | 6,540 | 307,191 | 217,154 |
| 02-Mar-05 | Wed | WD | 146,584 | 38,505 | | | 119 | 10,581 | 1,988 | 31,580 | 11,816 | 6,648 | 24,402 | 28,232 | 6,272 | 300,455 | 221,017 |
| 03-Mar-05 | Thu | WD | 133,964 | 36,475 | | | 145 | 9,731 | 1,898 | 40,725 | 10,868 | 6,772 | 25,774 | 30,314 | 5,633 | 296,666 | 225,633 |
| 04-Mar-05 | Fri | WD | 104,957 | 33,445 | | | 111 | 3,901 | 1,698 | 44,763 | 10,256 | 6,336 | 24,097 | 26,022 | 5,356 | 255,586 | 230,954 |
| 05-Mar-05 | Sat | WE | 12,740 | 3,155 | | | 30 | 730 | 196 | 3,821 | 1,046 | 618 | 2,540 | 4,312 | 548 | 29,188 | 28,004 |
| 06-Mar-05 | Sun | WE | 11,070 | 3,285 | | | 24 | 703 | 234 | 3,526 | 938 | 514 | 2,794 | 4,110 | 500 | 27,198 | 28,587 |
| 07-Mar-05 | Mon | WD | 132,546 | 33,675 | | | 124 | 4,603 | 1,934 | 47,814 | 11,696 | 6,980 | 25,222 | 28,932 | 6,092 | 293,526 | 233,302 |
| 08-Mar-05 | Tue | WD | 150,542 | 37,915 | | 5 | 129 | 3,118 | 2,146 | 42,687 | 12,090 | 7,048 | 27,126 | 28,950 | 6,411 | 311,756 | 236,748 |
| 09-Mar-05 | Wed | WD | 130,922 | 36,360 | | | 115 | 1,973 | 2,058 | 43,293 | 10,756 | 6,554 | 27,934 | 29,372 | 5,654 | 289,337 | 240,077 |
| 10-Mar-05 | Thu | WD | 122,582 | 34,390 | | | 129 | 1,641 | 2,055 | 39,399 | 11,328 | 6,824 | 26,178 | 24,356 | 5,932 | 268,882 | 242,232 |
| 11-Mar-05 | Fri | WD | 115,834 | 31,480 | | | 118 | 1,416 | 1,785 | 39,440 | 10,378 | 6,704 | 23,268 | 21,000 | 5,354 | 251,423 | 243,075 |
| 12-Mar-05 | Sat | WE | 12,092 | 3,385 | | | 20 | 165 | 263 | 2,832 | 908 | 598 | 2,162 | 3,652 | 499 | 26,077 | 29,052 |
| 13-Mar-05 | Sun | WE | 12,944 | 3,895 | | | 23 | 230 | 319 | 2,808 | 856 | 634 | 2,784 | 7,846 | 460 | 32,339 | 28,442 |
| 14-Mar-05 | Mon | WD | 130,276 | 36,690 | | | 126 | 1,861 | 1,918 | 48,872 | 11,728 | 6,616 | 25,798 | 23,012 | 6,191 | 286,897 | 243,863 |
| 15-Mar-05 | Tue | WD | 141,282 | 39,940 | | | 176 | 1,936 | 2,170 | 59,332 | 12,464 | 6,920 | 24,793 | 26,772 | 6,544 | 315,785 | 246,380 |
| 16-Mar-05 | Wed | WD | 133,084 | 35,050 | | 5 | 145 | 1,849 | 1,837 | 53,358 | 11,740 | 6,598 | 23,694 | 25,058 | 6,263 | 292,418 | 252,310 |
| 17-Mar-05 | Thu | WD | 134,400 | 34,910 | | | 150 | 1,521 | 1,648 | 44,340 | 12,132 | 7,136 | 24,358 | 24,458 | 6,881 | 285,053 | 257,147 |
| 18-Mar-05 | Fri | WD | 91,470 | 30,060 | | | 131 | 1,610 | 1,452 | 45,834 | 9,520 | 6,490 | 21,451 | 22,032 | 4,931 | 230,050 | 262,162 |
| 19-Mar-05 | Sat | WE | 9,654 | 3,910 | | | 18 | 247 | 190 | 3,228 | 978 | 488 | 2,177 | 5,134 | 539 | 26,024 | 28,725 |
| 20-Mar-05 | Sun | WE | 17,120 | 6,220 | | | 34 | 227 | 212 | 4,200 | 962 | 822 | 2,739 | 4,686 | 495 | 37,222 | 29,082 |
| 21-Mar-05 | Mon | WD | 111,770 | 32,130 | | | 134 | 1,737 | 1,805 | 48,911 | 9,934 | 6,116 | 24,387 | 22,486 | 5,191 | 259,410 | 264,538 |
| 22-Mar-05 | Tue | WD | 120,828 | 35,680 | | | 159 | 1,860 | 1,850 | 53,026 | 10,398 | 6,802 | 27,618 | 23,308 | 5,402 | 281,529 | 264,282 |
| 23-Mar-05 | Wed | WD | 114,267 | 33,340 | | 14,440 | 134 | 1,880 | 1,473 | 48,521 | 10,166 | 5,934 | 25,946 | 23,422 | 5,099 | 279,523 | 267,877 |

HOGR6OA-000019 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 24-Mar-05 | Thu | WD | 110,711 | 30,835 | | 13,608 | 235 | 1,431 | 1,361 | 48,008 | 9,614 | 6,222 | 23,894 | 22,322 | 4,951 | 268,241 | 271,429 |
| 25-Mar-05 | Fri | WD | 61,884 | 17,700 | | 12,278 | 126 | 1,031 | 926 | 31,640 | 9,072 | 4,544 | 17,106 | 17,026 | 4,701 | 173,333 | 275,070 |
| 26-Mar-05 | Sat | WE | 9,846 | 2,380 | | 2,416 | 28 | 110 | 125 | 3,160 | 854 | 414 | 1,478 | 3,314 | 445 | 24,125 | 28,393 |
| 27-Mar-05 | Sun | WE | 12,362 | 3,310 | | 2,348 | 29 | 126 | 138 | 3,062 | 810 | 532 | 1,841 | 3,256 | 434 | 27,814 | 28,424 |
| 28-Mar-05 | Mon | WD | 104,134 | 30,005 | | 15,914 | 103 | 1,372 | 1,483 | 47,680 | 9,860 | 6,246 | 22,328 | 20,112 | 5,204 | 259,237 | 273,652 |
| 29-Mar-05 | Tue | WD | 100,356 | 34,680 | | 16,920 | 143 | 1,706 | 1,951 | 51,060 | 10,474 | 6,450 | 24,805 | 24,106 | 5,714 | 272,651 | 275,315 |
| 30-Mar-05 | Wed | WD | 87,314 | 33,840 | | 17,158 | 178 | 1,793 | 1,952 | 51,420 | 9,878 | 6,350 | 23,757 | 22,448 | 5,215 | 256,088 | 273,588 |
| 31-Mar-05 | Thu | WD | 70,319 | 39,155 | | 18,676 | 136 | 1,848 | 1,832 | 51,774 | 10,408 | 6,442 | 22,339 | 21,048 | 5,485 | 243,977 | 271,370 |
| 01-Apr-05 | Fri | WD | 71,821 | 35,900 | | 16,470 | 152 | 1,814 | 1,842 | 47,612 | 9,640 | 6,620 | 20,085 | 22,720 | 5,045 | 234,676 | 268,735 |
| 02-Apr-05 | Sat | WE | 17,357 | 6,740 | | 4,040 | 26 | 198 | 251 | 5,912 | 976 | 906 | 2,567 | 4,002 | 522 | 42,975 | 28,748 |
| 03-Apr-05 | Sun | WE | 10,167 | 4,025 | | 2,860 | 23 | 174 | 274 | 3,486 | 852 | 656 | 3,094 | 3,258 | 517 | 28,869 | 30,472 |
| 04-Apr-05 | Mon | WD | 77,308 | 35,120 | | 16,476 | 117 | 1,652 | 2,115 | 52,810 | 10,424 | 6,750 | 24,444 | 23,932 | 5,844 | 251,148 | 267,690 |
| 05-Apr-05 | Tue | WD | 70,871 | 35,990 | | 17,486 | 154 | 1,904 | 2,153 | 56,750 | 11,214 | 7,016 | 24,635 | 25,080 | 6,163 | 253,253 | 265,571 |
| 06-Apr-05 | Wed | WD | 53,571 | 31,570 | | 16,516 | 135 | 1,746 | 1,612 | 53,884 | 10,880 | 7,370 | 23,583 | 22,748 | 6,030 | 223,615 | 262,646 |
| 07-Apr-05 | Thu | WD | 50,050 | 30,370 | | 14,472 | 172 | 1,740 | 1,911 | 51,322 | 10,964 | 6,244 | 24,125 | 22,208 | 5,989 | 213,578 | 259,359 |
| 08-Apr-05 | Fri | WD | 44,617 | 24,060 | | 13,200 | 134 | 1,482 | 1,505 | 49,304 | 9,412 | 5,392 | 22,115 | 20,238 | 4,970 | 191,459 | 256,594 |
| 09-Apr-05 | Sat | WE | 4,739 | 2,040 | | 2,672 | 20 | 153 | 160 | 2,906 | 762 | 492 | 1,908 | 3,866 | 414 | 19,718 | 30,681 |
| 10-Apr-05 | Sun | WE | 5,528 | 2,970 | | 2,340 | 26 | 175 | 174 | 2,888 | 680 | 416 | 1,986 | 3,216 | 352 | 20,379 | 29,886 |
| 11-Apr-05 | Mon | WD | 59,295 | 29,590 | | 15,750 | 181 | 1,667 | 1,790 | 55,992 | 12,010 | 6,755 | 24,290 | 112,214 | 6,281 | 319,534 | 253,596 |
| 12-Apr-05 | Tue | WD | 60,380 | 32,375 | | 15,720 | 125 | 1,760 | 2,011 | 58,156 | 11,846 | 6,515 | 25,550 | 95,586 | 6,338 | 310,024 | 255,228 |
| 13-Apr-05 | Wed | WD | 59,565 | 31,105 | | 16,520 | 146 | 1,762 | 1,991 | 52,522 | 11,880 | 6,835 | 24,422 | 23,454 | 6,218 | 230,202 | 254,940 |
| 14-Apr-05 | Thu | WD | 72,750 | 35,560 | | 18,018 | 148 | 1,626 | 1,775 | 53,014 | 12,228 | 6,549 | 25,485 | 23,616 | 6,303 | 250,971 | 251,829 |
| 15-Apr-05 | Fri | WD | 59,708 | 32,340 | | 16,282 | 106 | 1,536 | 1,973 | 49,294 | 11,552 | 5,685 | 21,488 | 20,332 | 6,127 | 220,296 | 250,125 |
| 16-Apr-05 | Sat | WE | 4,926 | 2,770 | | 3,030 | 29 | 126 | 172 | 3,160 | 848 | 412 | 1,988 | 3,154 | 450 | 20,615 | 28,391 |
| 17-Apr-05 | Sun | WE | 5,531 | 2,205 | | 2,098 | 21 | 160 | 120 | 3,222 | 654 | 371 | 2,514 | 2,916 | 336 | 19,812 | 27,715 |
| 18-Apr-05 | Mon | WD | 62,479 | 34,300 | | 15,128 | 127 | 1,534 | 2,149 | 56,336 | 11,750 | 6,042 | 23,770 | 23,690 | 6,170 | 237,305 | 249,637 |
| 19-Apr-05 | Tue | WD | 68,415 | 35,180 | | 16,032 | 175 | 1,802 | 2,338 | 55,972 | 10,544 | 7,053 | 25,555 | 25,126 | 5,762 | 248,192 | 248,532 |
| 20-Apr-05 | Wed | WD | 78,730 | 32,685 | | 16,350 | 121 | 1,733 | 2,217 | 55,268 | 11,408 | 6,455 | 26,304 | 23,728 | 6,470 | 254,999 | 246,865 |
| 21-Apr-05 | Thu | WD | 77,195 | 31,160 | | 16,910 | 137 | 1,535 | 2,168 | 54,480 | 11,868 | 6,158 | 23,715 | 23,874 | 6,191 | 249,200 | 245,639 |
| 22-Apr-05 | Fri | WD | 64,391 | 26,570 | | 13,776 | 92 | 1,334 | 1,923 | 46,178 | 10,082 | 6,098 | 24,177 | 62,387 | 5,278 | 257,008 | 244,687 |
| 23-Apr-05 | Sat | WE | 6,769 | 3,100 | | 2,530 | 19 | 78 | 166 | 3,568 | 916 | 424 | 2,342 | 5,614 | 480 | 25,526 | 25,538 |
| 24-Apr-05 | Sun | WE | 7,340 | 2,375 | | 2,570 | 31 | 74 | 268 | 3,346 | 926 | 486 | 2,191 | 6,666 | 499 | 26,273 | 25,714 |
| 25-Apr-05 | Mon | WD | 62,711 | 9,080 | | 10,930 | 116 | 556 | 1,728 | 55,086 | 10,382 | 5,430 | 22,245 | 75,154 | 5,354 | 253,418 | 248,871 |
| 26-Apr-05 | Tue | WD | 87,671 | 33,600 | | 16,744 | 151 | 1,597 | 1,990 | 65,576 | 10,942 | 6,250 | 25,542 | 134,983 | 5,698 | 385,046 | 248,580 |
| 27-Apr-05 | Wed | WD | 125,555 | 34,495 | | 17,576 | 160 | 1,617 | 2,129 | 57,428 | 12,056 | 6,718 | 27,548 | 34,310 | 6,315 | 319,592 | 254,199 |
| 28-Apr-05 | Thu | WD | 126,578 | 33,035 | | 17,244 | 87 | 1,454 | 842 | 51,528 | 5,114 | 2,784 | 24,209 | 26,336 | 2,622 | 289,211 | 257,375 |
| 29-Apr-05 | Fri | WD | 117,262 | 29,350 | | 14,986 | 127 | 1,655 | 3,069 | 46,630 | 9,200 | 5,814 | 21,746 | 26,338 | 4,886 | 276,177 | 259,636 |
| 30-Apr-05 | Sat | WE | 10,270 | 2,010 | | 1,988 | 23 | 114 | 651 | 3,344 | 810 | 626 | 2,116 | 7,306 | 437 | 29,258 | 25,521 |
| 01-May-05 | Sun | WE | 9,012 | 1,675 | | 1,928 | 28 | 240 | 554 | 3,924 | 824 | 440 | 1,883 | 6,944 | 435 | 27,452 | 23,806 |
| 02-May-05 | Mon | WD | 121,382 | 26,550 | | 15,884 | 108 | 3,210 | 4,048 | 49,708 | 11,268 | 6,382 | 24,905 | 33,934 | 5,919 | 297,379 | 261,711 |
| 03-May-05 | Tue | WD | 130,668 | 34,315 | | 17,034 | 149 | 2,890 | 4,072 | 53,768 | 11,638 | 6,540 | 26,035 | 30,450 | 6,117 | 317,559 | 264,023 |
| 04-May-05 | Wed | WD | 117,398 | 32,185 | | 16,574 | 138 | 2,654 | 3,748 | 58,054 | 10,310 | 6,106 | 24,888 | 28,180 | 5,193 | 300,215 | 267,238 |
| 05-May-05 | Thu | WD | 122,552 | 31,850 | | 16,004 | 142 | 2,928 | 3,994 | 54,487 | | 6,460 | 24,695 | 30,528 | 386 | 293,640 | 271,068 |
| 06-May-05 | Fri | WD | 80,780 | 21,325 | | 11,816 | 124 | 2,646 | 3,396 | 46,742 | | 5,638 | 22,565 | 24,740 | 262 | 219,772 | 275,071 |
| 07-May-05 | Sat | WE | 24,970 | 7,335 | | 3,902 | 23 | 290 | 558 | 4,416 | | 844 | 1,956 | 5,582 | 40 | 49,876 | 23,629 |
| 08-May-05 | Sun | WE | 21,434 | 6,045 | | 3,104 | 30 | 246 | 504 | 3,874 | | 852 | 2,985 | 6,388 | 61 | 45,462 | 27,399 |

HOGR60A-000020 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09-May-05 | Mon | WD | 92,844 | 25,580 | | 13,316 | 168 | 3,270 | 3,584 | 49,630 | | 5,524 | 24,539 | 28,808 | 337 | 247,263 | 276,487 |
| 10-May-05 | Tue | WD | 111,269 | 33,395 | | 15,274 | 171 | 3,006 | 3,830 | 50,784 | | 6,038 | 25,073 | 26,391 | 315 | 275,231 | 272,873 |
| 11-May-05 | Wed | WD | 116,439 | 32,920 | | 16,120 | 144 | 3,314 | 3,700 | 46,212 | 9,660 | 4,464 | 26,069 | 16,106 | 336 | 275,148 | 271,134 |
| 12-May-05 | Thu | WD | 126,145 | 32,895 | | 16,390 | 198 | 2,970 | 4,767 | 44,911 | 11,838 | 3,332 | 14,271 | 15,902 | 453 | 273,619 | 273,381 |
| 13-May-05 | Fri | WD | 112,192 | 30,830 | | 16,175 | 108 | 2,950 | 4,026 | 40,733 | 10,390 | 2,736 | 14,200 | 15,020 | 388 | 249,360 | 274,514 |
| 14-May-05 | Sat | WE | 8,994 | 2,690 | | 2,294 | 19 | 222 | 290 | 3,026 | 924 | 259 | 992 | 2,518 | 5 | 22,228 | 30,534 |
| 15-May-05 | Sun | WE | 14,436 | 4,175 | | 2,474 | 24 | 340 | 472 | 4,034 | 1,190 | 346 | 1,258 | 3,086 | 64 | 31,835 | 30,736 |
| 16-May-05 | Mon | WD | 116,764 | 31,440 | | 16,276 | 107 | 3,148 | 3,780 | 49,444 | 10,832 | 3,265 | 21,337 | 24,440 | 374 | 280,833 | 275,967 |
| 17-May-05 | Tue | WD | 124,090 | 34,165 | | 19,728 | 131 | 2,740 | 3,776 | 48,377 | 12,158 | 3,169 | 24,779 | 28,282 | 362 | 301,395 | 278,143 |
| 18-May-05 | Wed | WD | 116,166 | 32,150 | | 12,646 | 104 | 2,868 | 3,684 | 53,448 | 11,168 | 2,992 | 25,858 | 29,194 | 393 | 290,278 | 280,803 |
| 19-May-05 | Thu | WD | 106,872 | 28,845 | | 10,816 | 138 | 2,900 | 3,822 | 53,622 | 11,568 | 3,068 | 23,785 | 27,654 | 277 | 273,090 | 282,567 |
| 20-May-05 | Fri | WD | 106,906 | 23,810 | | 10,763 | 88 | 2,430 | 3,678 | 42,604 | 9,966 | 2,818 | 25,308 | 27,630 | 416 | 256,001 | 283,762 |
| 21-May-05 | Sat | WE | 13,933 | | | 1,675 | 16 | 162 | 314 | 1,928 | 976 | 212 | 1,773 | 6,668 | 27 | 27,657 | 32,239 |
| 22-May-05 | Sun | WE | 14,593 | | | 2,074 | 6 | 254 | 518 | 2,304 | 912 | 294 | 2,010 | 4,047 | 58 | 27,012 | 32,505 |
| 23-May-05 | Mon | WD | 121,348 | | | 10,466 | 105 | 2,642 | 3,896 | 32,291 | 11,886 | 3,066 | 26,878 | 21,652 | 230 | 234,230 | 283,711 |
| 24-May-05 | Tue | WD | 122,274 | 6,416 | | 11,021 | 77 | 2,968 | 4,584 | 24,883 | 11,642 | 3,974 | 17,033 | 23,862 | 288 | 228,734 | 282,752 |
| 25-May-05 | Wed | WD | 105,963 | 6,510 | | 9,804 | 136 | 1,993 | 3,242 | 21,173 | 9,232 | 3,074 | 13,727 | 10,435 | 332 | 185,289 | 274,936 |
| 26-May-05 | Thu | WD | 93,456 | 6,859 | | 9,435 | 109 | 1,349 | 2,888 | 47,321 | 7,134 | 3,655 | 14,282 | 11,308 | 342 | 197,796 | 268,221 |
| 27-May-05 | Fri | WD | 71,872 | 4,648 | | 6,758 | 94 | 1,237 | 1,696 | 35,801 | 4,116 | 2,510 | 11,045 | 13,130 | 246 | 152,907 | 263,650 |
| 28-May-05 | Sat | WE | 5,555 | 341 | | 1,183 | 32 | 88 | 60 | 2,000 | 361 | 137 | 858 | 2,790 | 20 | 13,425 | 32,598 |
| 29-May-05 | Sun | WE | 8,130 | 527 | | 1,008 | 8 | 76 | 125 | 1,819 | 338 | 164 | 808 | 4,017 | 65 | 17,020 | 30,618 |
| 30-May-05 | Mon | FH | 12,660 | 697 | | 1,496 | 17 | 260 | 159 | 3,455 | 395 | 276 | 2,509 | 2,743 | 29 | 24,667 | 29,314 |
| 31-May-05 | Tue | WD | 93,665 | 6,389 | | 8,632 | 103 | 1,514 | 1,865 | 45,518 | 6,000 | 3,003 | 13,444 | 19,153 | 331 | 199,286 | 255,387 |
| 01-Jun-05 | Wed | WD | 57,606 | 5,668 | | 7,713 | 147 | 1,561 | 1,868 | 44,234 | 7,786 | 2,517 | 14,493 | 18,043 | 248 | 161,636 | 249,162 |
| 02-Jun-05 | Thu | WD | 49,034 | 6,161 | | 7,816 | 118 | 1,464 | 1,837 | 30,235 | 5,815 | 2,646 | 13,949 | 16,272 | 226 | 135,347 | 241,869 |
| 03-Jun-05 | Fri | WD | 44,158 | 5,064 | | 7,093 | 139 | 1,342 | 1,719 | 23,656 | 5,428 | 2,436 | 13,080 | 13,130 | 183 | 117,245 | 233,538 |
| 04-Jun-05 | Sat | WE | 3,190 | 594 | | 1,492 | 18 | 114 | 111 | 1,432 | 481 | 238 | 1,074 | 2,838 | 20 | 11,582 | 28,798 |
| 05-Jun-05 | Sun | WE | 3,488 | 601 | | 1,012 | 19 | 149 | 110 | 1,778 | 357 | 278 | 1,152 | 2,439 | 12 | 11,383 | 24,543 |
| 06-Jun-05 | Mon | WD | 56,188 | 6,118 | | 8,173 | 99 | 1,429 | 2,035 | 27,241 | 6,597 | 2,989 | 13,203 | 15,386 | 218 | 139,458 | 228,141 |
| 07-Jun-05 | Tue | WD | 65,434 | 7,113 | | 9,073 | 97 | 1,220 | 2,160 | 28,616 | 6,406 | 3,581 | 13,959 | 18,187 | 488 | 155,846 | 222,468 |
| 08-Jun-05 | Wed | WD | 61,772 | 6,677 | | 7,952 | 117 | 1,305 | 1,946 | 27,929 | 6,063 | 2,867 | 13,141 | 15,126 | 409 | 144,895 | 216,184 |
| 09-Jun-05 | Thu | WD | 61,211 | 6,863 | | 8,941 | 83 | 1,282 | 1,907 | 28,032 | 6,336 | 3,191 | 13,258 | 15,559 | 245 | 146,663 | 209,329 |
| 10-Jun-05 | Fri | WD | 57,232 | 5,988 | | 7,990 | 88 | 1,284 | 1,696 | 27,188 | 5,691 | 3,358 | 12,592 | 12,665 | 197 | 135,772 | 202,647 |
| 11-Jun-05 | Sat | WE | 4,057 | 476 | | 1,435 | 12 | 74 | 137 | 1,683 | 492 | 265 | 1,064 | 2,017 | 32 | 11,712 | 20,757 |
| 12-Jun-05 | Sun | WE | 5,917 | 713 | | 1,392 | 34 | 114 | 193 | 1,989 | 426 | 271 | 1,458 | 1,894 | 30 | 14,401 | 19,588 |
| 13-Jun-05 | Mon | WD | 61,793 | 7,082 | | 8,485 | 122 | 1,140 | 1,971 | 28,855 | 6,013 | 3,321 | 14,999 | 7,145 | 192 | 140,926 | 196,668 |
| 14-Jun-05 | Tue | WD | 62,866 | 6,686 | | 8,520 | 149 | 1,430 | 2,208 | 29,697 | 6,482 | 3,023 | 14,445 | 7,787 | 137 | 143,293 | 189,305 |
| 15-Jun-05 | Wed | WD | 59,289 | 7,051 | | 9,136 | 126 | 1,263 | 2,258 | 28,365 | 6,382 | 3,463 | 14,876 | 10,105 | 255 | 142,314 | 180,984 |
| 16-Jun-05 | Thu | WD | 56,989 | 6,592 | | 8,651 | 91 | 1,266 | 1,876 | 27,900 | 5,899 | 3,095 | 14,104 | 16,224 | 130 | 142,587 | 173,196 |
| 17-Jun-05 | Fri | WD | 49,979 | 6,286 | | 8,361 | 80 | 1,149 | 1,765 | 24,194 | 4,615 | 3,208 | 12,158 | 14,313 | 166 | 126,108 | 166,333 |
| 18-Jun-05 | Sat | WE | 2,710 | 408 | | 906 | 12 | 87 | 107 | 1,724 | 433 | 198 | 972 | 2,085 | 10 | 9,642 | 17,651 |
| 19-Jun-05 | Sun | WE | 3,472 | 370 | | 1,003 | 19 | 105 | 137 | 1,628 | 418 | 187 | 1,264 | 2,221 | 27 | 10,824 | 15,649 |
| 20-Jun-05 | Mon | WD | 67,744 | 7,403 | | 8,948 | 121 | 1,519 | 1,908 | 27,844 | 6,598 | 3,733 | 14,005 | 16,064 | 128 | 155,887 | 159,496 |
| 21-Jun-05 | Tue | WD | 66,736 | 6,818 | | 8,943 | 171 | 1,309 | 2,039 | 30,816 | 5,946 | 3,387 | 14,790 | 16,053 | 81 | 157,008 | 155,373 |
| 22-Jun-05 | Wed | WD | 65,262 | 6,765 | | 8,791 | 142 | 1,312 | 2,135 | 30,586 | 6,206 | 5,216 | 13,245 | 16,026 | 134 | 155,686 | 151,598 |
| 23-Jun-05 | Thu | WD. | 65,652 | 7,024 | | 8,308 | 102 | 1,271 | 1,972 | 29,127 | 6,072 | 3,699 | 13,133 | 17,792 | 129 | 154,152 | 150,040 |

HOGR6OA-000021 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 24-Jun-05 | Fri | WD | 52,188 | 5,863 | | 7,211 | 115 | 1,159 | 1,408 | 26,487 | 5,321 | 3,139 | 13,211 | 14,263 | 83 | 130,365 | 147,743 |
| 25-Jun-05 | Sat | WE | 5,113 | 703 | | 1,253 | 28 | 101 | 149 | 1,764 | 433 | 170 | 1,037 | 2,675 | 17 | 13,426 | 13,851 |
| 26-Jun-05 | Sun | WE | 7,041 | 724 | | 1,185 | 16 | 128 | 141 | 2,214 | 476 | 274 | 1,163 | 2,385 | 7 | 15,747 | 13,851 |
| 27-Jun-05 | Mon | WD | 62,785 | 7,059 | | 9,061 | 142 | 1,217 | 1,878 | 29,173 | 5,926 | 3,663 | 13,238 | 15,460 | 97 | 149,602 | 146,557 |
| 28-Jun-05 | Tue | WD | 65,558 | 6,930 | | 9,141 | 169 | 1,410 | 1,987 | 32,039 | 6,096 | 3,607 | 14,367 | 17,612 | 160 | 158,916 | 146,709 |
| 29-Jun-05 | Wed | WD | 63,656 | 6,559 | | 9,413 | 135 | 1,303 | 1,725 | 30,913 | 5,536 | 3,590 | 14,830 | 16,473 | 131 | 154,133 | 144,690 |
| 30-Jun-05 | Thu | WD | 67,178 | 7,219 | | 9,464 | 145 | 1,451 | 1,906 | 30,564 | 5,751 | 3,089 | 14,599 | 17,926 | 150 | 159,292 | 144,315 |
| 01-Jul-05 | Fri | WD | 53,896 | 5,619 | | 7,401 | 80 | 1,033 | 1,504 | 20,502 | 4,700 | 2,272 | 11,185 | 13,525 | 129 | 121,717 | 145,512 |
| 02-Jul-05 | Sat | WE | 4,176 | 594 | | 1,011 | 24 | 71 | 126 | 2,115 | 405 | 166 | 736 | 4,099 | 17 | 13,523 | 12,340 |
| 03-Jul-05 | Sun | WE | 7,404 | 874 | | 1,446 | 14 | 64 | 178 | 1,336 | 357 | 256 | 790 | 3,851 | 4 | 16,570 | 12,582 |
| 04-Jul-05 | Mon | FH | 8,244 | 824 | | 1,560 | 11 | 100 | 209 | 1,764 | 455 | 266 | 1,433 | 3,462 | 0 | 18,328 | 13,231 |
| 05-Jul-05 | Tue | WD | 45,448 | 4,657 | | 6,749 | 71 | 1,159 | 1,389 | 21,546 | 4,633 | 2,637 | 11,730 | 13,342 | 0 | 113,381 | 146,066 |
| 06-Jul-05 | Wed | WD | 57,100 | 5,893 | | 7,734 | 178 | 1,411 | 1,639 | 25,661 | 5,685 | 3,153 | 13,690 | 15,129 | 0 | 137,273 | 143,831 |
| 07-Jul-05 | Thu | WD | 70,690 | 7,256 | | 9,036 | 131 | 1,574 | 1,821 | 25,185 | 6,289 | 3,422 | 13,079 | 16,052 | 0 | 154,535 | 143,430 |
| 08-Jul-05 | Fri | WD | 66,735 | 7,210 | | 8,387 | 75 | 323 | 1,589 | 23,440 | 5,310 | 3,227 | 12,066 | 15,099 | 0 | 143,461 | 143,845 |
| 09-Jul-05 | Sat | WE | 7,728 | 626 | | 1,351 | 31 | | 135 | 1,691 | 448 | 238 | 1,280 | 2,501 | 0 | 16,029 | 13,797 |
| 10-Jul-05 | Sun | WE | 8,353 | 633 | | 1,259 | 16 | | 126 | 1,964 | 397 | 243 | 1,368 | 2,566 | 0 | 16,925 | 14,277 |
| 11-Jul-05 | Mon | WD | 67,025 | 7,078 | | 8,489 | 169 | | 1,915 | 27,002 | 6,480 | 3,382 | 12,685 | 17,213 | 0 | 151,438 | 144,249 |
| 12-Jul-05 | Tue | WD | 71,085 | 7,672 | | 8,256 | 169 | | 1,868 | 27,388 | 6,755 | 4,067 | 12,683 | 17,063 | 0 | 156,966 | 144,803 |
| 13-Jul-05 | Wed | WD | 68,576 | 6,670 | | 8,555 | 88 | | 1,637 | 26,641 | 6,801 | 3,590 | 13,915 | 16,639 | 0 | 153,112 | 145,522 |
| 14-Jul-05 | Thu | WD | 72,847 | 7,227 | | 9,056 | 123 | | 1,841 | 26,515 | 6,754 | 3,993 | 12,944 | 16,128 | 0 | 157,428 | 146,090 |
| 15-Jul-05 | Fri | WD | 64,620 | 6,596 | | 8,459 | 100 | | 1,600 | 22,180 | 5,929 | 2,830 | 11,520 | 14,317 | 0 | 138,151 | 146,886 |
| 16-Jul-05 | Sat | WE | 8,336 | 809 | | 1,410 | 20 | | 138 | 1,503 | 407 | 280 | 988 | 2,475 | 0 | 16,364 | 14,557 |
| 17-Jul-05 | Sun | WE | 7,414 | 741 | | 1,390 | 23 | | 114 | 1,625 | 455 | 260 | 1,185 | 2,705 | 0 | 15,912 | 15,304 |
| 18-Jul-05 | Mon | WD | 69,491 | 6,784 | | 8,395 | 105 | | 1,800 | 25,751 | 6,228 | 3,419 | 11,847 | 15,753 | 0 | 149,573 | 147,500 |
| 19-Jul-05 | Tue | WD | 80,504 | 8,378 | | 9,094 | 77 | | 2,071 | 27,306 | 7,066 | 3,121 | 13,108 | 16,030 | 0 | 166,755 | 147,168 |
| 20-Jul-05 | Wed | WD | 78,179 | 8,343 | | 9,154 | 111 | | 1,896 | 25,658 | 6,281 | 3,028 | 12,431 | 16,387 | 0 | 161,468 | 147,681 |
| 21-Jul-05 | Thu | WD | 77,684 | 8,144 | | 9,713 | 153 | | 1,980 | 25,989 | 6,678 | 2,962 | 12,651 | 15,496 | 0 | 161,450 | 147,985 |
| 22-Jul-05 | Fri | WD | 58,379 | 5,730 | | 7,020 | 83 | | 1,605 | 21,310 | 5,286 | 2,823 | 11,620 | 13,861 | 0 | 127,717 | 148,369 |
| 23-Jul-05 | Sat | WE | 5,524 | 843 | | 1,405 | 23 | | 237 | 1,491 | 461 | 239 | 867 | 2,225 | 0 | 13,315 | 15,869 |
| 24-Jul-05 | Sun | WE | 7,175 | 818 | | 1,461 | 11 | | 313 | 1,740 | 446 | 233 | 1,183 | 1,985 | 0 | 15,365 | 15,857 |
| 25-Jul-05 | Mon | WD | 72,570 | 7,288 | | 8,657 | 69 | | 2,153 | 24,645 | 5,975 | 3,020 | 12,459 | 12,909 | 0 | 149,745 | 148,230 |
| 26-Jul-05 | Tue | WD | 71,879 | 7,536 | | 8,574 | 156 | | 2,361 | 28,220 | 6,166 | 3,228 | 13,216 | 3,808 | 0 | 145,144 | 148,237 |
| 27-Jul-05 | Wed | WD | 72,741 | 7,820 | | 8,623 | 131 | | 2,478 | 28,832 | 6,050 | 3,166 | 13,255 | | 0 | 143,096 | 147,513 |
| 28-Jul-05 | Thu | WD | 71,252 | 7,016 | | | 129 | 3 | 2,053 | 26,601 | 6,782 | 2,459 | 6,014 | | 0 | 122,309 | 124,432 |
| 29-Jul-05 | Fri | WD | 64,475 | | | | 128 | 1,515 | 1,787 | 22,754 | 5,960 | | 4,224 | | 0 | 100,843 | 113,784 |
| 30-Jul-05 | Sat | WE | 7,253 | | | | 10 | 98 | 190 | 1,732 | 430 | | 455 | | 0 | 10,168 | 10,581 |
| 31-Jul-05 | Sun | WE | 7,929 | | | | 20 | 78 | 198 | 1,792 | 488 | | 363 | | 0 | 10,868 | 10,860 |
| 01-Aug-05 | Mon | WD | 62,855 | | | | 165 | 1,440 | 1,766 | 24,115 | 5,688 | | 4,568 | | 0 | 100,597 | 114,202 |
| 02-Aug-05 | Tue | WD | 57,780 | | | | 128 | 1,565 | 1,682 | 24,204 | 5,251 | | 4,619 | | 0 | 95,229 | 113,522 |
| 03-Aug-05 | Wed | WD | 51,445 | | | | 113 | 1,442 | 1,694 | 24,098 | 5,711 | | 4,694 | | 0 | 89,197 | 113,984 |
| 04-Aug-05 | Thu | WD | 50,314 | | | | 132 | 1,417 | 1,508 | 24,066 | 5,936 | | 4,259 | | 0 | 87,632 | 113,175 |
| 05-Aug-05 | Fri | WD | 44,491 | | | | | 1,270 | 1,713 | 20,003 | 5,070 | | 4,012 | | 0 | 76,559 | 111,498 |
| 06-Aug-05 | Sat | WE | 5,963 | | | | | | | 1,568 | 440 | | 304 | | 0 | 8,275 | 10,559 |
| 07-Aug-05 | Sun | WE | 6,493 | | | | | | | 1,871 | 427 | | 316 | | 0 | 9,107 | 10,200 |
| 08-Aug-05 | Mon | WD | 34,110 | | | | | | | | 5,477 | | 4,465 | | 0 | 44,052 | 82,386 |

HOGR6OA-000022 - C

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09-Aug-05 | Tue | WD | 24,459 | | | | | | | | 5,436 | | 4,354 | | 0 | 34,249 | 80,279 |
| 10-Aug-05 | Wed | WD | | | | | | | | | 3,092 | | | | 0 | 3,092 | 6,026 |
| 11-Aug-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 12-Aug-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 13-Aug-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 14-Aug-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 15-Aug-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 16-Aug-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 17-Aug-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 18-Aug-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 19-Aug-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 20-Aug-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 21-Aug-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 22-Aug-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 23-Aug-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 24-Aug-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 25-Aug-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 26-Aug-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 27-Aug-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 28-Aug-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 29-Aug-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 30-Aug-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 31-Aug-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 01-Sep-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 02-Sep-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 03-Sep-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 04-Sep-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 05-Sep-05 | Mon | FH | | | | | | | | | | | | | 0 | 0 | 0 |
| 06-Sep-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 07-Sep-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 08-Sep-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 09-Sep-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 10-Sep-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 11-Sep-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 12-Sep-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 13-Sep-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 14-Sep-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 15-Sep-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 16-Sep-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 17-Sep-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 18-Sep-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 19-Sep-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 20-Sep-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 21-Sep-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 22-Sep-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 23-Sep-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |

HOGR5QA 000032

(DRAFT) EOP-OA-OCIO - For Official Use Only

| Date | Day | Day Type | WHO | OVP | OPD | NSC | PFIAB | CEA | CEQ | OMB | ONDCP | OSTP | USTR | OA | Issue Files | Actual Msg Count Total | Predicted Msg Count Total |
|------|-----|----------|-----|-----|-----|-----|-------|-----|-----|-----|-------|------|------|----|-------------|------------------------|---------------------------|
| 24-Sep-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 25-Sep-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 26-Sep-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 27-Sep-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 28-Sep-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 29-Sep-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 30-Sep-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 01-Oct-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 02-Oct-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 03-Oct-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 04-Oct-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 05-Oct-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 06-Oct-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 07-Oct-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 08-Oct-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 09-Oct-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 10-Oct-05 | Mon | FH | | | | | | | | | | | | | 0 | 0 | 0 |
| 11-Oct-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 12-Oct-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 13-Oct-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 14-Oct-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 15-Oct-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 16-Oct-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 17-Oct-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 18-Oct-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 19-Oct-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 20-Oct-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 21-Oct-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 22-Oct-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 23-Oct-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 24-Oct-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 25-Oct-05 | Tue | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 26-Oct-05 | Wed | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 27-Oct-05 | Thu | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 28-Oct-05 | Fri | WD | | | | | | | | | | | | | 0 | 0 | 0 |
| 29-Oct-05 | Sat | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 30-Oct-05 | Sun | WE | | | | | | | | | | | | | 0 | 0 | 0 |
| 31-Oct-05 | Mon | WD | | | | | | | | | | | | | 0 | 0 | 0 |

HOGR6OA-000024 - C